IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON | § | |
| | § | APRIL 21, 2020 |
| *Defendant.* | § | |

**PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

To the United States District Court for the District of Connecticut:

The applicant, plaintiff Oliver Luck, hereby respectfully applies, pursuant to Conn. Gen. Stat. §§ 52-278a, *et seq.*, and in accordance with Rule 64 of the Federal Rules of Civil Procedure and Rule 4(c) of the Local Rules of Civil Procedure for District of Connecticut, for a prejudgment remedy against defendant Vincent K. McMahon ("McMahon"), in the amount and to the extent described below. In support hereof, the undersigned represents as follows:

1.  Mr. Luck commenced this action with the filing of his Complaint on April 16, 2020.

2.  As described below and in the accompanying declaration of Mr. Luck, dated April 20, 2020, there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims, or setoffs (and as limited by the Guaranty, as defined in paragraphs 5 and 6 below), will be rendered in this matter in favor of Mr. Luck. To secure said judgment, Mr. Luck seeks an order from this Court directing that a prejudgment remedy be granted to secure the sum of $23.8 million against McMahon, as more fully described below.

**Summary of Plaintiff's Claims**

3.  On May 30, 2018, Mr. Luck entered into a five-year Contract for Employment as

Commissioner and CEO (the "Employment Contract," attached as Exhibit 1 to Mr. Luck's declaration) with Alpha Entertainment LLC ("Alpha"). As set forth in the Employment Contract, Mr. Luck agreed to serve as the Commissioner and CEO of the XFL, a professional football league, from July 1, 2018 to June 20, 2023.

4. The Employment Contract provides that Mr. Luck is to receive, *inter alia*, an annual base salary of $5,000,000 per contract year and a guaranteed annual bonus of $2,000,000 payable on the last day of each contract year, subject to his continued employment on the scheduled payment date.

5. McMahon, as the controlling owner of Alpha, personally, unconditionally, and irrevocably guaranteed Alpha's performance of its agreements and obligations to Mr. Luck under the Employment Contract, including, but not limited to, payment of Mr. Luck's base salary and guaranteed annual bonuses, in a document attached as Exhibit A to the Employment Contract (the "Guaranty").

6. Under the Guaranty, McMahon's obligations to Mr. Luck are unconditional, absolute, continuing, and irrevocable. Further, McMahon waived all "circumstances that may . . . constitute a legal or equitable discharge or defense" to any action to enforce the Guaranty.

7. The Employment Contract provides that Mr. Luck could be terminated "for Cause" or "without Cause." A termination for Cause entitles Mr. Luck to be paid only for previously accrued salary and vested employee benefits, while a termination without Cause entitles Mr. Luck to receive a lump sum cash payment consisting of, *inter alia*, Mr. Luck's base salary and guaranteed annual bonuses that would otherwise be payable throughout the remaining duration of the Employment Contract.

8. By letter dated April 9, 2020, Alpha wrongfully terminated Mr. Luck's employment

-- purportedly for Cause -- effective immediately, and repudiated the Employment Contract (the "Termination Letter," attached as Exhibit 2 to Mr. Luck's declaration). Upon information and belief, McMahon approved the Termination Letter.

9. The allegations set forth in the Termination Letter are pretextual and devoid of merit. As described in Mr. Luck's declaration, and in his response letter to the Termination Letter dated April 16, 2020 (the "Response Letter," attached as Exhibit 3 to Mr. Luck's declaration), Mr. Luck did not commit any act or omission as Commissioner and CEO of the XFL that would qualify for termination with Cause, and Mr. Luck wholly disputes and rejects the allegations in the Termination Letter. The following are two examples of the baseless allegations in the Termination Letter, the others also being fully addressed in the Response Letter.

    a. One example of a baseless allegation in the Termination Letter relates to the signing of a wide receiver, Antonio Callaway ("Callaway"), supposedly in violation of XFL policy or directives issued by McMahon. However, Callaway was not precluded from signing to play in the XFL by any XFL policy in place at the time, all of which were approved by McMahon. To the contrary, McMahon had *instructed* Mr. Luck to upgrade the quality of receivers in the XFL. The signing of Callaway, which Mr. Luck informed McMahon about (without any objection by him) prior to the signing, did just that. And, when McMahon told Mr. Luck, during the week of January 26, 2020, that he wanted Callaway terminated, Mr. Luck promptly followed that instruction.

    b. Another baseless allegation in the Termination Letter accuses Mr. Luck of being disengaged from the XFL following the cancellation of the season in

March 2020. To the contrary, Mr. Luck remained engaged in the football operations of the XFL throughout the COVID-19 pandemic until his termination on April 9, 2020. While Mr. Luck was not physically present in the XFL office because of the public health crisis, Mr. Luck continued to communicate with McMahon via text messages, McMahon's preferred method of communication, and McMahon was aware of Mr. Luck's efforts as evidenced by his responses. Mr. Luck also worked with other XFL staff members to finalize the 2021 football budget requested by McMahon, which was submitted on March 27, 2020. Mr. Luck also was part of the XFL's COVID-19 working group to monitor the impact of COVID-19 on the XFL's operations. Included in this effort, Mr. Luck gathered intel from college athletic administrators about the possibility of college football being pushed into the spring of 2021. Further, Mr. Luck prepared a video at McMahon's request thanking XFL fans for their support.

10. During Mr. Luck's time as Commissioner and CEO of the XFL, neither Alpha nor McMahon provided him with written notice of any purported belief that he was not executing his responsibilities with competence or diligence, nor did either provide notice that any of his actions or omissions constituted "Cause" under the Employment Agreement. They did not give him thirty days' written notice to effect the cure of any alleged deficiencies in his job performance, as required by the Employment Agreement, despite the fact that the supposed deficiencies described in the Termination Letter, if accurate, all would have been susceptible to cure.

11. By April 10, 2020, Alpha had suspended operations of the XFL and laid off most of its staff. On April 13, 2020, Alpha filed for Chapter 11 bankruptcy protection in the United

States Bankruptcy Court for the District of Delaware.[1]

12. Alpha wrongfully terminated and repudiated the Employment Contract for pretextual and meritless reasons, and failed to provide written notice and a thirty (30) day opportunity to cure. McMahon is now unconditionally and irrevocably obligated, under the Guaranty, to pay Mr. Luck in full for all base salary, bonuses, and other forms of compensation due to him throughout the remaining duration of the Employment Contract. McMahon has failed to perform his obligations under the Guaranty.

13. The amount due to Mr. Luck totals no less than $23.8 million, which is equal to (i) approximately $800,000 in base salary due for the remaining two months of the 2019-20 contract year; (ii) a $2 million bonus for the 2019-20 contract year; (iii) $15 million in base salary due for the final three years of the Employment Contract; and (iv) $6 million in guaranteed bonuses for the final three years of the Employment Contract. Mr. Luck is also owed additional amounts for benefits through June 30, 2023 under the Employment Contract.

## The Requested Relief

14. Accordingly, Mr. Luck requests a prejudgment remedy in the amount of $23.8 million, for an attachment and/or garnishment of the defendant's assets, whether real or personal, tangible or intangible, or any kind whatsoever, including, but not limited to:

    (a)   all assets of McMahon; and

    (b)   any and all assets of obligations in the name of third persons or entities that are owed to or being held for the benefit of McMahon.

15. Mr. Luck further seeks an order requiring McMahon to disclose assets sufficient to

---

[1] In this Application, Mr. Luck does not seek any relief, remedy, or recovery against Alpha or the bankruptcy estate of Alpha.

satisfy said prejudgment remedy, in accordance with Conn. Gen. Stat. § 52-278n and the accompanying Motion for Disclosure of Assets.

WHEREFORE, plaintiff Oliver Luck respectfully requests that this Application be granted in full, together with such other and further relief as the Court deems proper.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

/s/ *Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed Bar No. ct30935)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, CT 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com

**AND**

/s/ *Paul J. Dobrowski*
Paul J. Dobrowski  (phv10563)
Vanessa L. Pierce (phv10561)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4061 Washington Avenue, Suite 200
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com

***HIS ATTORNEYS***

## CERTIFICATE OF SERVICE

      I hereby certify that on April 21, 2020, a copy of the foregoing Plaintiff's Application for Prejudgment Remedy was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                         */s/ Andrew M. Zeitlin*
                                                   Andrew M. Zeitlin (Fed. Bar. No. ct21386)
                                                   SHIPMAN & GOODWIN LLP
                                                   300 Atlantic Street
                                                   Stamford, CT 06901
                                                   Telephone: (203) 324-8100
                                                   Facsimile: (203) 324-8199
                                                   Email: azeitlin@goodwin.com