**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON | § | |
| | § | MAY 22, 2020 |
| *Defendant.* | § | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

 */s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, CT 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com

**AND**

 */s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4061 Washington Avenue, Suite 200
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com

*HIS ATTORNEYS*

**Table of Contents**

PRELIMINARY STATEMENT ....................................................................................1

COUNTER-STATEMENT OF FACTS .......................................................................1

    A.  Employment Contract and Guaranty ....................................................1

    B.  The Hiring of Antonio Callaway Was Not A Material Business Decision
        Nor an Internal Violation of XFL "Policy" ........................................3

    C.  Luck's Personal Use of the XFL Phone did not Violate XFL Policy ..............5

    D.  Luck Performed his XFL Duties Post-March 13, 2020 ........................6

ARGUMENT ..............................................................................................................7

I.      Alpha is Not a Required Party ...........................................................7

    A.  Federal Civil Procedure Rule 19 Does Not Require Alpha as a Party ...........7

    B.  Alpha Is Not a Required Party Because Complete Relief Can Be
        Accorded Between Luck and McMahon ............................................8

    C.  Alpha Is Not a Required Party Because Its Absence Has No Effect ...................10

        1.  Any Harm to Alpha Is Not Caused by its Absence, and its
            Interests Are Adequately Protected ............................................10

        2.  No Substantial Risk of Inconsistent Obligations Exists ...........................12

    D.  Alpha is Not a Required Party to Luck's Requests for
        Declaratory Judgment ...................................................................14

    E.  Rule 19(b) Factors Do Not Require Alpha's Presence ...........................14

II.     Probable Cause Exists to Grant the Prejudgment Remedy Application ..................17

III.    Luck is Entitled to All Guaranteed Annual Bonuses ..................................22

    A.  McMahon's Non-Static Assets have No Bearing on Whether Luck is
        Entitled to a Prejudgment Remedy ....................................................22

    B.  A Prejudgment Remedy Hearing, Which is Required by Statute,
        Adequately Protects McMahon's Right to Due Process, and No
        Bond is Required...........................................................................24

CONCLUSION ...........................................................................................................25

Page(s)

Cases

*19 Perry St., LLC v. Unionville Water Co.*,
 294 Conn. 611 (2010)..................................................................................... 19, 20

*Bank of Boston Connecticut v. Schlesinger*,
 220 Conn. 152 (1991)............................................................................................ 8

*Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.*,
 32 Conn. App. 118 (1993)................................................................................... 23

*C and H Electric, Inc. v. Town of Bethel*,
 312 Conn. 843 (2014).......................................................................................... 19

*Charest v. Fed. Nat. Mortg. Ass'n*,
 9 F. Supp. 3d 114 (D. Mass. 2014) ..................................................................... 16

*Chemical Bank v. Dana*,
 4 F. App'x 1 (2d Cir. 2001) ................................................................................. 24

*Connecticut v. Doehr*,
 501 U.S. 1 (19991)............................................................................................... 24

*CP Solutions PTE, Ltd. v. Gen. Elec. Co.*,
 553 F.3d 156 (2d Cir. 2009)............................................................... 14, 15, 16, 17

*Crouse-Hinds Co. v. InterNorth, Inc.*,
 634 F.2d 690 (2d Cir. 1980) ("in an action to set aside ...................................... 10

*D'Amico v. Doe*,
 2005 WL 850961 (D. Conn. Jan. 20, 2005) ........................................................ 14

*Delgado v. Plaza Las Americas, Inc.*,
 139 F.3d 1 (1st Cir. 1998) ................................................................................... 12

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*,
 932 F.3d 843 (9th Cir. 2019).......................................................................... 11, 15

*Doctor's Assocs., Inc. v. Charles Zuchowski*,
 2012 WL 13034345 (D. Conn. July 2, 2012)...................................................... 16

*Duval v. Albano*,
 2017 WL 3053157 (S.D.N.Y. July 18, 2017) ....................................................... 9

*Earl B. v. Commissioner of Children and Families*,
 288 Conn. 163 (2008)..................................................................................... 18, 19

*Errico v. Stryker Corp.*,
 281 F.R.D. 182 (S.D.N.Y. 2012) ........................................................................ 15

*Gaudio v. Griffin Health Servs. Corp.*,
 249 Conn. 523 (1999)..................................................................................... 17, 18

*Gerard v. Bolliger Mobility, LLC*,
 2013 WL 1277281 (Conn. Super. Ct. Mar. 11, 2013)......................................... 25

*Gibbs Wire & Steel Co., Inc. v. Johnson*,
 255 F.R.D. 326 (D. Conn. 2009).................................................................... 11, 12

*Giordano v. Giordano*,
 39 Conn. App. 183 (1995)................................................................................... 25

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
 960 F. Supp. 701 (S.D.N.Y. 1997)...................................................................... 13

*Hanks v. Powder Ridge Restaurant Corp.*,
    276 Conn. 314 (2005)......................................................................................... 19, 20

*In re Metal Ctr., Inc.*,
    31 B.R. 458 (Bankr. D. Conn. 1983).................................................................. 16

*Johnson v. Smithsonian Inst.*,
    189 F.3d 180 (2d Cir. 1999)........................................................................... 11, 12

*Kalisch-Jarico, Inc. v. New York*,
    58 N.Y.2d 377 (1983) ......................................................................................... 19

*Kern v. Palmer College of Chiropractic*,
    757 N.W.2d 651 (Iowa 2008).............................................................................. 22

*Lang ex rel. Morgan v. Astrue*,
    2008 WL 4829946 (S.D.N.Y. Nov. 5, 2008) ..................................................... 11

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)............................................................................... 15

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006)........................................................................Passim

*Matthiessen v. Vanech*,
    266 Conn. 822 (2003)......................................................................................... 19

*N.L.R.B. v. E.D.P. Med. Computer Sys., Inc.*,
    6 F.3d 951 (2d Cir. 1993)................................................................................... 24

*Nat'l Tax Credit Partners, L.P. v. Havlik*,
    20 F.3d 705 (7th Cir.1994)................................................................................. 16

*Republic of the Phil. v. Pimentel*,
    553 U.S. 851 ......................................................................................... 7, 14, 15, 16

*PMJ Capital Corp. v. Bauco*,
    2018 WL 485973 (S.D.N.Y. Jan. 18, 2018) ........................................................ 9

*Queenie, Ltd. V. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003)............................................................................... 16

*Quinn v. Fishkin*,
    117 F. Supp. 3d 134 (D. Conn. 2015) ............................................................... 14

*Result Shipping Co. v. Ferruzzi Trading USA Inc.*,
    56 F.3d 394 (2d Cir. 1995)................................................................................. 25

*Sever v. Glickman*,
    298 F. Supp. 2d 267 (D. Conn. 2004) ............................................................ 8, 13

*Shaumyan v. O'Neill*,
    987 F.2d 122 (2d Cir. 1993)............................................................................... 25

*Travelers Indem. Co. v. Household Int'l, Inc.*,
    775 F. Supp. 518 (D. Conn. 1991) ..................................................................... 13

*Union & New Haven Tr. Co. v. Hejaz Grotto Bldg. Assoc. Inc.*,
    2 Conn. Supp. 153 (Super. Ct. 1935) ................................................................... 8

*Williams v. Housing Authority of the City of Bridgeport*,
    327 Conn. 338 (2017)......................................................................................... 19

*Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC*,
    164 F. Supp. 3d 273 (D. Conn. 2016) .............................................................. 7, 8

*Yamaha Motor Corp., U.S.A. v. Ferrarotti*,
    242 F.R.D. 178 ............................................................................................... 12, 13

Statutes

Conn. Gen. Stat. 46b-140(j)(2) ................................................................................. 19
Conn. Gen. Stat. § 52-278d(a) ................................................................................. 22
Conn. Gen. Stat. § 52-278d ................................................................................. 24, 25
Conn. Gen. Stat. § 52-278d(e) ................................................................................. 25

Rules

Federal Civil Procedure Rule 19 ........................................................................... Passim

Plaintiff Oliver Luck respectfully submits this reply memorandum of law in further support of his Application for Prejudgment Remedy (the "Application") (ECF No. 22). For the reasons set forth below, the Court should grant the Application.

## PRELIMINARY STATEMENT

Oliver Luck's application for prejudgment remedy, and the evidence he will present at the hearing of this matter, demonstrate that his claims meet the probable cause standard. Despite its rhetoric and hyperbole, defendant Vincent K. McMahon's opposition is insufficient to refute the obvious: Luck's termination—which occurred just days before the XFL shut down and filed for bankruptcy—was not the result of any conduct resembling cause under Luck's Employment Contract. Rather, Luck's termination was simply a transparent attempt by McMahon to avoid his obligations under the Guaranty. Alpha Entertainment, LLC is not a required party to this action, and all other arguments offered by McMahon to delay or deny Luck the relief to which he is entitled should be rejected.

## COUNTER-STATEMENT OF FACTS

In addition to the factual statements and exhibits attached to the Application and Memorandum of Law in Support of the Application, all of which are incorporated herein, Luck submits the following counter-statements of facts.

### A. Employment Contract and Guaranty

Certain essential facts are uncontested. Under his Employment Contract, Luck's duties are defined:

> Mr. Luck will have authority, duties and responsibilities consistent with the commissioners of the major U.S. professional sports leagues (including oversight of all football and business-related operations), and will be the senior-most executive of the XFL. Mr. Luck will have **full authority to hire, dismiss, replace or reassign any employee**, consultant or contractor

> of the XFL, all of whom will report, directly or indirectly, to Mr. Luck, subject to Mr. McMahon's preapproval for **material** business decisions.

Ex 1 at 1 (emphasis added).[1]

The Guaranty expressly states that McMahon guarantees, as "primary" payments to Luck of all amounts due. Additionally, the terms of the Guaranty provide:

> The obligation of the Guarantor hereunder shall be absolute, unconditional, continuing and irrevocable and shall remain in full force and effect until the full performance by the Obligor of all its agreements and its obligations under the Transaction Documents, **irrespective of . . . any other circumstances that may otherwise constitute a legal or equitable discharge or defense of the Guarantor, all of which are hereby waived by the Guarantor**.

Ex 1 at Ex. A (emphasis added). The reasons for Luck's termination are therefore irrelevant to finding McMahon liable for payment to Luck.

Even if the Court considers McMahon's alleged defenses, McMahon's arguments fail. McMahon cherry-picks the "for cause" termination provision in the Employment Contract, selectively quoting certain language he finds helpful while omitting other language. Opp. at 3 McMahon's reliance now on his abridged version of the provision, accompanied by misrepresentations of fact and law, is pretextual and baseless as Luck's actions did not amount to gross negligence and did not involve an intentional failure to follow XFL policy.

First, Luck had full authority to "hire, dismiss, replace or reassign all employees of XFL, subject to McMahon's pre-approval for *material* business decisions." Ex. 1 at 1 (emphasis added). Hiring Antonio Callaway certainly was not a material business decision; further it met XFL guidelines approved by McMahon. Second, XFL policy discouraged (but did not prohibit) personal use of XFL phones at the discretion of the employee. As the senior-most executive of the XFL,

---

[1] Unless otherwise noted, all references to exhibits shall refer to the exhibits attached to Plaintiff's Declaration in Support of Plaintiff's Application for Prejudgment Remedy (ECF No. 23).

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

Luck determined in his discretion and good faith judgment that utilizing his XFL phone for personal purposes was in the best interests of the XFL because it allowed him to work more efficiently. Third, after March 13, 2020, Luck continued to devote substantially all of his business time to XFL matters remotely when the XFL closed its offices on Sunday, March 16, 2020 due to the pandemic.

Neither McMahon nor Alpha ever provided Luck with written notice of any violation of XFL policy or a 30-day opportunity to cure as required by his Employment Contract. Additionally, McMahon ignores significant predicate language in the Employment Contract, which requires that any "for cause" termination involve conduct that is "materially and detrimentally injurious to the interest, property, operations, business or reputation of Alpha." Ex. 1 at 3. As will be shown at the hearing of this matter, the facts set forth in Luck's Declaration regarding the Callaway hiring are accurate in all material respects. McMahon's misleading accusations regarding Luck's Declaration are mere hyperbole and a thinly-veiled attempt to mislead the Court.

### B. The Hiring of Antonio Callaway Was Not A Material Business Decision Nor an Intentional Violation of XFL "Policy"

Luck's Employment Contract provided him with full authority to hire and fire any XFL employee subject to McMahon's pre-approval for material business decisions. The hiring of Antonio Callaway certainly was not a material business decision nor an intentional violation of XFL "policy."

Initially Luck, in conjunction with other XFL employees and consultants, considered and reviewed over 2000 potential players for the league. They selected over 1000 players for the XFL player pools; over 500 players were selected by XFL teams. Luck authorized the execution of employment contracts for these players at salaries exceeding $22 million, in the aggregate. The

hiring of any one player—Callaway or anyone else—certainly does not constitute a material business decision.

Unlike the express unambiguous terms of Luck's Employment Contract, the XFL "policy" regarding McMahon's "approval for all player's (sic) with questionable or problematic backgrounds" was never formalized as a written XFL policy. Even the language of the "policy" as quoted from McMahon's brief proves that the "policy" is ambiguous, vague, discretionary and subject to interpretation on its face. See Opp. at 4. For example, what constitutes "questionable or problematic backgrounds"? In fact, McMahon's enunciated principle that he wanted "men of good character" is even more amorphous.

Because of the ambiguous nature of this supposed XFL "policy," and as will be demonstrated at the hearing, Luck recommended to McMahon that they clarify it with objective criteria to enable football operations and human resources to vet potential XFL players. McMahon verbally agreed to the following criteria, as the cause(s) for which a player would be ineligible for the XFL player pool: (a) a felony conviction; (b) a conviction for dealing drugs; (c) multiple convictions for misdemeanors that established a pattern or habit; or (d) a credible allegation of sexual assault or domestic violence had been made against him. Callaway passed these McMahon-approved criteria.

Moreover, on January 11, 2020, prior to Callaway's signing, McMahon texted Luck and agreed that Luck should "bring in" some ex-NFL receivers. In response to McMahon's expressed concern about the poor quality of XFL receivers, on January 13 and 16, 2020 Luck notified McMahon that he was able to sign ex-NFL receiver Antonio Callaway as a player for the XFL.

Less than two weeks later and before the start of the XFL's inaugural season, on January 28th at approximately 11:15 p.m., McMahon advised Luck to terminate Callaway as an XFL

employee. Luck immediately contacted Callaway's head coach, Marc Trestman, to begin the process of terminating Callaway and, thereby, complying with McMahon's instructions. The next morning, at Luck's direction, XFL consultant Eric Galko informed Callaway's agent of this decision. Approximately one hour later, on January 29, Callaway hurt his knee in practice. At 6:30 p.m. the same day, Luck advised McMahon that "we are in the process of removing Callaway from Tampa Bay." Pursuant to Section 7 of the Standard Player Contract, Callaway was placed on the "Injured Reserve" list, effectively ending his employment. Callaway never played a down for the XFL.

Luck's hiring of Callaway and Callaway's injury were, most assuredly, not an intentional violation of XFL policy. Importantly, after January 29, 2020, neither McMahon nor Alpha advised Luck orally or in writing that Luck had violated any XFL policy by virtue of Callaway's hiring, or injury. The first mention of any sort of policy violation was in Luck's termination letter of April 9, 2020—more than two months after the event in question.

### C. Luck's Personal Use of the XFL Phone did not Violate XFL Policy

McMahon also asserts that Luck violated the XFL's Employee Handbook and Code of Business Conduct (the "Handbook") by using his phone for personal use. Opp. at 22. Yet, the XFL policy regarding use of XFL phones for personal matters was not absolute. McMahon fails to alert the Court to the Handbook's section specifically discussing use of XFL telephones See Ex. A, at 20 attached hereto. While personal use of XFL phones is "discouraged," *id.*, the Handbook states "Employees should practice **discretion** in using XFL telephones when making personal calls and **may** be required to reimburse the XFL for charges resulting from their personal use of the telephone." *Id.* (emphasis added). Similarly, the Handbook's "General Requirements" section regarding XFL Technology upon which McMahon relies states that employees are to exercise

"good judgment regarding appropriate use of XFL Technology in accordance with XFL policies, standards, and guidelines." *Id* at 15.

Luck used his discretion and good judgment when utilizing his phone for both business and personal purposes because doing so was in the best interests of the XFL. When Luck joined the XFL in July 2018 as its fifth employee, there was no XFL policy regarding use of XFL phones and technology. Luck made the good-faith decision to transport his personal contacts from his old phone to his XFL phone. Those contacts assisted in, for example, recruitment of XFL employees, players and coaches whom Luck knew prior to his employment by the XFL. However, by transporting his personal contacts to his XFL phone, all of Luck's personal information automatically transported to the XFL phone and included Luck's football contacts that he had accumulated for the prior nine (9) years. Most importantly, neither Alpha nor McMahon provided written notice to Luck that his personal use of his XFL phone violated XFL policy.

### D.  Luck Performed his XFL Duties Post-March 13, 2020

After returning to Indiana on the evening of Friday, March 13, Luck devoted substantially all of his business time to the performance of his XFL duties. His activities included, but are not limited to; the weekly telephone conferences with XFL executives; gathering and analyzing details about the National Football League's impending Collective Bargaining Agreement; engaging with XFL football operations personnel regarding strategy for the re-signing of certain XFL quarterbacks; engaging with XFL football operations personnel regarding closure and securing of all practice facilities and, to a lesser extent, game facilities, weight rooms and /or storage facilities; tracking the XFL players who were being signed by NFL teams; and, at McMahon's request, creating a thank you video directed to XFL fans; and putting together a football-operations budget.

**ARGUMENT**

## I.     Alpha is Not a Required Party

Alpha is not a required party to Luck's lawsuit against McMahon. To induce Luck to enter into his Employment Contract with Alpha, McMahon irrevocably and unconditionally guaranteed, as ***primary obligor,*** Alpha's performance, including payment, of its obligations under the Employment Contract. McMahon agreed that his obligations were enforceable, *irrespective* of any defenses or Luck's enforcement of the Employment Contract. Alpha is not a required party to fully resolve this dispute between Luck and McMahon based on the Guaranty, nor does Alpha's absence impact any interest it may have in the Employment Contract it already has rejected in bankruptcy. Finally, Alpha's absence will not change or impact McMahon's obligations under the Guaranty.

### A.  Federal Civil Procedure Rule 19[2] Does Not Require Alpha as a Party

Rule 19 is two-fold and culminates in a factors-based, case-specific analysis. *See Republic of the Phil. v. Pimentel*, 553 U.S. 851, 862-63 (2008). First, Rule 19(a) addresses persons required to be joined "if [f]easible." FED. R. CIV. P. 19(a); *Pimentel*, 553 U.S. at 862. A party is "required to be joined if feasible" only if: (1) in the non-party's absence, the court cannot accord complete relief among the existing parties; or (2) the absent party claims an interest in the litigation and his absence may either: (a) as a practical matter impair or impede his ability to protect that interest, or (b) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. FED. R. CIV. P. 19(a); *see also Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC*, 164 F. Supp. 3d 273, 286 (D. Conn. 2016).

---

[2] As a preliminary matter, McMahon improperly refers to the prior version of Rule 19, which was amended in 2007. Relevant here, the word "required" replaced the word "necessary" in Rule 19(a), and the word "indispensable" was altogether deleted from the Rule as redundant. *Pimentel*, 553 U.S. at 863; *see also* 2007 Advis. Comm. Notes Fed. R. Civ. P. 19. Although the text changed, the Rule "has the same design and, to some extent, the same tension." 553 U.S. at 863.

If the Court determines that a party is required, but joinder is not feasible, then the Court

considers the Rule 19(b) factors. Importantly, "[c]ourts are loathe to grant motions to dismiss of

this type [and] a 12(b)(7) motion will not be granted because of a vague possibility that persons

who are not parties may have an interest in the action." *Sever v. Glickman*, 298 F. Supp. 2d 267,

275 (D. Conn. 2004).

Also, Connecticut courts look to federal jurisprudence in determining whether a party is

necessary or indispensable, so the Court need not resolve whether to apply state or federal law to

this issue. 164 F. Supp. at 286.[3]

## B. Alpha Is Not a Required Party Because Complete Relief Can Be Accorded Between Luck and McMahon

Rule 19(a)(1)(A) is "concerned only with those who are already parties" to the lawsuit.

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006). Even when

there is "no question that further litigation . . . is inevitable" between an absent and an existing

party, the absent party is not required under Rule 19(a)(1)(A) if the court can accord complete

relief among the current parties. *Id*. In *MasterCard Int'l Inc.*, MasterCard sued Federation

Internationale de Football Association ("FIFA") after FIFA entered into a contract with Visa,

effective January 1, 2007, granting Visa exclusive sponsorship rights for FIFA competitions

through 2014. MasterCard alleged that FIFA breached a contract with MasterCard which granted

MasterCard exclusive sponsorship rights for all FIFA competitions between 2007 and 2014.

MasterCard also sought to enjoin FIFA from performing the Visa contract *Id.* at 380-81. Visa

---

[3] Under longstanding state law, Alpha is not a required party. A creditor is not required to proceed first against a principal debtor where the creditor holds an absolute guaranty. *Union & New Haven Tr. Co. v. Hejaz Grotto Bldg. Assoc. Inc.*, 2 Conn. Supp. 153, 154 (Super. Ct. 1935) Similarly, where a guaranty and indemnity agreement permitted a cause of action separate and independent from a mortgage agreement, a plaintiff was not first required to proceed against the party to the mortgage agreement. *Bank of Boston Connecticut v. Schlesinger*, 220 Conn. 152, 157–58 (1991).

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

claimed MasterCard could only receive partial relief without Visa because it still held contractual rights to the sponsorship, and Visa would sue FIFA to enforce their contract. *Id.* at 385. Despite this "inevitable" litigation between MasterCard and Visa, the Second Circuit held that Visa's presence was not required to accord MasterCard complete relief *as to FIFA*. *Id.* Complete relief between MasterCard and FIFA was also available without Visa's presence as a party if FIFA prevailed. *Id.* at 385 n. 6.

Similarly, in *PMJ Capital Corp. v. Bauco*, No. 16-cv-6242 (AJN), 2018 WL 485973 (S.D.N.Y. Jan. 18, 2018), *appeal withdrawn,* No. 18-502, 2018 WL 2386816 (2d Cir. Apr. 11, 2018), the defendants guaranteed the borrower's obligations under a loan with the plaintiff. When the borrower defaulted, the lender sued the guarantors only. *Id.* *1. Recognizing that "the beneficiary of a guarantee typically may choose to sue the guarantor alone" under New York law, the court found the lender could obtain complete relief from the guarantors and the borrower was not a required party. *Id.* *5. *See also Duval v. Albano*, No. 16 civ. 7810 (KPF), 2017 WL 3053157, at *13 (S.D.N.Y. July 18, 2017) (party to purchase agreement not a required party in suit on guaranty for payment of purchase price).

Here, Luck's lawsuit is based solely on McMahon's obligations under the Guaranty he executed in favor of Luck. McMahon expressly agreed to the Guaranty as *primary* obligor, and he provided a guaranty of payment, which Luck could pursue without first pursuing Alpha. Ex. 1at Ex. A ¶ 1. If Luck prevails in this lawsuit and is granted his requested relief, McMahon will be obligated to pay under the Guaranty. Likewise, if McMahon prevails in avoiding his absolute, unconditional, continuing and irrevocable Guaranty, he will not be obligated to pay Luck. Alpha's presence is unnecessary to accord complete relief as to Luck or McMahon.

## C.  Alpha Is Not a Required Party Because Its Absence Has No Effect

A party is required under Rule 19(a)(1)(B) only if it claims an interest in the litigation and its absence may either: (a) as a practical matter impair or impede his ability to protect that interest, or (b) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. FED. R. CIV. P. 19. It is not enough that a non-party have "even a very strong interest" in the litigation, or that it may be "adversely affected by the outcome of the litigation." *MasterCard Int'l*, 471 F.3d at 387. Rather, it must be "***because of*** that party's absence from the litigation" that it would be impaired from protecting its interests. *Id.* (emphasis in original). Similarly, the substantial risk of inconsistent obligations to the existing party must be "***caused by*** the nonparty's absence in the case." *Id.* at 388 (emphasis in original).

### 1.    Any Harm to Alpha Is Not Caused by its Absence, and its Interests Are Adequately Protected

Simply because an absent party has a contract with an existing party does not mean the absent party has an interest in the litigation that it cannot protect. *See MasterCard Int'l*, 471 F.3d at 386-87. *Cf. Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) ("in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable") (internal citation and quotation omitted).

In *MasterCard Int'l*, the Second Circuit held that any harm Visa might suffer would not be caused by its absence from the MasterCard/FIFA litigation. 471 F.3d at 387.[4] Although Visa may have had an interest that would be impaired by the litigation, such harm "would result from FIFA's alleged conduct in awarding Visa sponsorship rights it could not legally give" and not from its

---

[4] The *MasterCard Int'l*, opinion cites to the pre-2007 numbering of Rule 19(a)(2)(i). While Rule 19(a)(2)(i) has been amended and renumbered as Rule 19(a)(1)(B)(i), the substance remains the same. *See MasterCard Int'l*, 471 F.3d at 385 (citing FED. R. CIV. P. 19(a)).

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

absence in litigation about a contract to which Visa was a stranger. *Id*. Thus, the Second Circuit declined to broaden both Rule 19 and the principle in *Crouse-Hinds* to include a matter that "may impact a separate contract involving a different party." *Id*.

Similar to the situation in *MasterCard Int'l*, neither Luck's contract with Alpha nor Alpha's obligations under the Employment Contract is the basis of Luck's lawsuit. Rather, McMahon's promise of payment as primary obligor to Luck is the agreement that is the subject of this suit. Luck seeks no recovery from Alpha, directly or indirectly, through this lawsuit.

Moreover, if "the nonparties' interests are adequately represented by a[n existing] party, the suit will not impede or impair the nonparties' interests, and therefore the nonparties will not be considered necessary." *Gibbs Wire & Steel Co., Inc. v. Johnson*, 255 F.R.D. 326, 329 (D. Conn. 2009) (alterations in original) (internal quotation omitted). The following factors have been considered relevant: "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 852 (9th Cir. 2019) *("Dine Citizens")*. Further, an absent party is not required when: (a) the absent and existing party do not have competing interests, but instead both share the same interest in the outcome of a litigation, (b) the existing party is represented by competent counsel, and (c) there is no reason to believe the absent party would prosecute (or defend) a case more effectively than the existing party. *Lang ex rel. Morgan v. Astrue*, No. 05-CV-7263, 2008 WL 4829946, at *2 (S.D.N.Y. Nov. 5, 2008). Additionally, a non-party is not required under Rule 19 merely because the plaintiff needs evidence from the non-party and the defendant would have to defend the absent party's actions at trial. *Johnson v. Smithsonian*

*Inst.*, 189 F.3d 180, 188-89 (2d Cir. 1999), *abrogated on other grounds by Casella v. U.S.*, 642 Fed. App'x 54, 55 (2d Cir. 2016) (internal citations omitted); *see also Gibbs Wire & Steel Co.*, 255 F.R.D. at 330 (whether additional share7holders may be called for evidence does not make them necessary parties).

McMahon and Alpha have virtually identical interests: the avoidance of paying Luck the approximately $23.8 million owed to him. If present, Alpha (like McMahon) would argue that it is not obligated to pay Luck any amounts because he was allegedly terminated for cause. In fact, McMahon's lead counsel, Jerry S. McDevitt, wrote and signed the April 9, 2020 letter wherein Alpha purported to terminate Luck for cause. Ex. 2. Presumably, McDevitt had (and still has) full access to the supposed evidentiary support to defend the alleged grounds for wrongfully terminating Luck for cause. Even if he does not, neither the need for discovery from Alpha (nor McMahon's need to defend Alpha's actions at trial) makes Alpha a required party.

### 2.     No Substantial Risk of Inconsistent Obligations Exists

Rule 19(a)(1)(B)(ii) presents the same requirement: the substantial risk to an existing party of incurring double, multiple, or otherwise inconsistent obligations must be caused by the nonparty's absence from the litigation. FED. R. CIV. P. 19(a)(1)(B)(ii); *MasterCard Int'l*, 471 F.3d at 388. However, Rule 19(a)(1)(B)(ii) is only concerned with the risk to the existing parties, not to the absent party. FED. R. CIV. P. 19(a)(1)(B)(ii).

Inconsistent obligations are not the same as inconsistent adjudications or results. *Yamaha Motor Corp., U.S.A. v. Ferrarotti*, 242 F.R.D. 178, 183 n. 4 (D. Conn. 2007) (citing *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)). "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Ferrarotti*, 242 F.R.D. at 183 n. 4 (internal citation omitted). In

contrast, an inconsistent adjudication or result occurs when a successful defense of a claim in one forum fails on another claim from the same incident in another forum. *Id.* The plaintiff in *Ferrarotti* argued that it would be subjected to multiple lawsuits and possibly inconsistent judgments because it would be forced to seek contribution or indemnification from the absent parties with whom defendants had service contracts. *Id*. at 182. The *Ferrarotti* court rejected that argument.

McMahon is not at risk of double, multiple or inconsistent obligations and any risk to him at all is not a result of Alpha's absence. Instead, it is the result of McMahon's refusal to honor the Guaranty wherein he irrevocably and unconditionally guaranteed, as primary obligor, the due and punctual payment and performance by Alpha of all of its agreements and obligations to Luck. Ex. 1 at Ex. A ¶ 1. Alpha's presence in this lawsuit will not remedy that fact.

Notably, neither of the cases cited by McMahon for the proposition that Alpha is a necessary party "because it is a party to the contract that is the subject of Luck's lawsuit," involve liability based solely on a guaranty. In *Sever, supra*, the court found that the non-party was not required because he was not a party to any alleged contract with existing parties. 298 F. Supp. 2d. at 275. While the court acknowledged that a "party to a contract which is the subject of the litigation is considered a 'necessary' party," this well-established principle means only—"a direct party to the contract which is under dispute . . . is a necessary party." *Id. (*quoting *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997)). In *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518 (D. Conn. 1991), the court ruled that absent party Travelers Illinois—the actual issuer of an insurance policy—was an indispensable party to a lawsuit against the insured seeking reimbursement under the policy. *See id.* at 528. Simply, Travelers Indemnity was not a party to the insurance policy upon which it was suing. *See id.* at 525.

### D.  Alpha is Not a Required Party to Luck's Requests for Declaratory Judgment

Similarly, Alpha is not a required party to either of Luck's requests for a declaration that: (1) McMahon's obligations under the Guaranty are as primary obligor, and (2) McMahon has waived all defenses and discharges to Luck's enforcement of the Guaranty. First, complete relief can be accorded without Alpha as to the obligations McMahon owes Luck under the Guaranty and the defenses he waived. *See D'Amico v. Doe*, No. civ .A.3:03CV2164, 2005 WL 850961, at *1 (D. Conn. Jan. 20, 2005), *on reconsideration sub nom. D'Amico v. John Doe 1*, No. CIVA3:03CV2164, 2005 WL 840521 (D. Conn. Apr. 11, 2005) (elaborating reasons for abiding by original decision). Second, the declaratory judgment would not determine any of Alpha's rights. Third, Luck's request for a declaration of McMahon's obligations under the Guaranty, and McMahon's available defenses, would fully resolve McMahon's obligations to Luck under the Guaranty. *See Quinn v. Fishkin*, 117 F. Supp. 3d 134, 144-45 (D. Conn. 2015) (defendant not at risk of inconsistent obligations where neither plaintiff nor the absent party could reinstate an underlying lawsuit against defendant no matter the result of the declaratory judgment).

### E.  Rule 19(b) Factors Do Not Require Alpha's Presence

Even assuming, *arguendo*, that Alpha is required, dismissal under Rule 19 for nonjoinder of a required person is not automatic. *See Pimentel*, 553 U.S. at 862-63. The Second Circuit has rejected a bright-line rule that all parties to a contract are "indispensable" under Rule 19(b), which would require dismissal of a lawsuit wherein they cannot be joined. *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 & n.2 (2d Cir. 2009) (using "indispensable" for the sake of convenience, but in all other respects, citing to the present version of Rule 19). Rule 19(b) outlines the nonexclusive factors for consideration of whether to proceed without a required party where joinder is not feasible. FED. R. CIV. P. 19(a), (b); *Pimentel*, 553 U.S. at 862 (the factors are

introduced as being "for the court to consider"). The factors for consideration are: (1) the extent to which a judgment rendered in the person's absence might prejudice the absent or existing party; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. FED. R. CIV. P. 19(b).

Rule 19(b) directs the court to determine whether the action should proceed "in equity or good conscience." The analysis is "flexible" and reviewed by the Second Circuit for abuse of discretion. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013). Thus, "the determination whether to proceed will turn upon factors that are case specific." *Pimentel*, 553 U.S. at 862-63. The result: "Required persons may turn out not to be required for the action to proceed after all." *Id.* at 863.

The first factor largely duplicates the determination of whether the absent party is required under Rule 19(a). *Dine Citizens*, 932 F.3d at 857; *see also Errico v. Stryker Corp.*, 281 F.R.D. 182, 187 (S.D.N.Y. 2012) ("[a]nalysis of this factor overlaps considerably with the Rule 19(a) analysis, as both require the Court to determine the potential prejudice to existing and absent parties."). Any prejudice to a plaintiff who chooses not to join a non-party should not trouble the court because "it is prejudice the plaintiff is willing to bear." *CP Solutions PTE, Ltd.*, 553 F.3d at 159. Additionally, when an absent party and existing party are represented by the same counsel and do not have adverse interests, there is no prejudice. *Id*. at 160.

Alpha is not a required party, and neither McMahon nor Alpha will be prejudiced by Alpha's absence. Because McMahon agreed that his obligations under the Guaranty are absolute irrespective of Luck's enforcement of the Employment Contract, McMahon anticipated Luck's

lawsuit under the Guaranty without Alpha. McMahon and Alpha also have aligned interests that undoubtedly will be protected with the counsel they share Mr. McDevitt.

Further, Alpha would not be prejudiced by a judgment rendered in its absence because it would not be subject to the judgment. *See Charest v. Fed. Nat. Mortg. Ass'n*, 9 F. Supp. 3d 114, 135 (D. Mass. 2014) (no prejudice to proceeding without the absent party when that party filed for bankruptcy, likely barring any direct action against the absent party).[5] Where it is unlikely that the plaintiff will pursue any claims against the non-party because recovery is unlikely due to bankruptcy, the non-party is not prejudiced by its absence; simply, a plaintiff would not be "eager for the chance to procure blood from a stone".[6] *CP Solutions PTE, Ltd.*, 553 F.3d at 160. Indeed, if Luck is successful against McMahon under the Guaranty, Alpha would be relieved from any obligation to pay Luck under the Employment Contract.

As to the second factor, Luck's lawsuit is already limited to McMahon. When a plaintiff seeks to hold the defendant liable "only by virtue of [the defendant's] own duties and actions" and not those of others, prejudice is minimized. *Id.* at 159-60 (plaintiff offered to amend its complaint to allege only existing defendant breached the contract). Here, Luck seeks to hold only McMahon liable per the terms of the Guaranty and any judgment would be limited to him.

The third factor focuses on the "public stake in settling disputes by wholes, whenever possible." *Pimantel*, 553 U.S. at 870; *see also Doctor's Assocs., Inc. v. Charles Zuchowski*, No. 3:12-CV-195, 2012 WL 13034345, at *5 (D. Conn. July 2, 2012) (judgment adequate when

---

[5] Bankruptcy's automatic stay does not apply to guarantors. See *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707 (7th Cir.1994); *In re Metal Ctr., Inc.*, 31 B.R. 458, 463 (Bankr. D. Conn. 1983). Moreover, for the automatic stay to apply to non-debtors, like McMahon, the claim against the non-debtor must have an immediate adverse economic consequence on the debtor's estate. *Queenie, Ltd. V. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). There is no adverse consequence to Alpha if Luck prevails.
[6] In the Alpha bankruptcy filings, McMahon asserts he is solely entitled to all of Alpha's assets because their value does not exceed the $9 million in McMahon's secured loans to Alpha. Thus, according to McMahon, there is no blood for Luck to squeeze out of the Alpha turnip.

complete relief possible without absent party). It is designed to avoid piecemeal litigation. *CP Solutions PTE, Ltd.*, 553 F.3d at 160. This factor weighs against dismissal—Luck's lawsuit based on the Guaranty can be resolved without Alpha, which is not a party to the Guaranty and is in bankruptcy.

As to the fourth factor, it is likely Luck would not have an adequate remedy if the suit were dismissed for nonjoinder—McMahon is the only party to the Guaranty and if Luck pursues claims under his Employment Contract against Alpha, those must be pursued in a bankruptcy proceeding where Alpha has already rejected his Employment Contract.

Here, the flexible analysis of the Rule 19(b) factors weighs heavily in favor of proceeding without Alpha, and allowing Luck to litigate his claims to enforce McMahon's absolute, unconditional, continuing, and irrevocable Guaranty. Any potential prejudice to Alpha or McMahon by proceeding without Alpha in a lawsuit based on the Guaranty is far outweighed by the unfairness to Luck in dismissing this lawsuit. Alpha's presence is not required to hold McMahon to his obligations under the Guaranty, and any request to delay this lawsuit pending a lifting of the bankruptcy stay or any motion to dismiss it on the basis that Alpha is a required party under Rule 19 should be denied.

## II.   Probable Cause Exists to Grant the Prejudgment Remedy Application

Luck more than meets the required probable cause standard. A hearing on this matter will show that Alpha's proffered reasons for termination were meritless, pretextual and designed to relieve McMahon from his payment obligations under the Guaranty.

As a threshold matter, McMahon wrongly asserts that Alpha's decision to terminate Luck is entitled to substantial deference. Opp. at 19. In so doing, McMahon severely mischaracterizes *Gaudio v. Griffin Health Servs. Corp.*, 249 Conn. 523 (1999). There, the plaintiff, who was

terminated after restraining a violent psychiatric hospital patient, claimed that the defendant employer breached an implied contract not to terminate him without just cause. *Id.* at 526. At trial, the jury found that the defendant did not have just cause to terminate the plaintiff and rendered a verdict in his favor. *Id.* at 529-30. On appeal, the defendant argued that the jury could not reasonably have concluded that it committed a breach. *Id.* at 538. The Supreme Court disagreed and held that the jury reasonably could have concluded that the defendant did not possess just cause for the termination but was instead motivated by its desire to avoid legal liability. *Id.* at 542.

Because no "proper" reason was proffered for the plaintiff's dismissal and because the termination was not made in "good faith" but was done in an "arbitrary and capricious manner", the jury found the termination to be wrongful. *Id.* at 540-43. The Connecticut Supreme Court upheld the jury's finding. *Id.* at 543. *Gaudio* does not stand for the proposition that an employer's decision to terminate is entitled to substantial deference; instead, it supports Luck's position that an employer such as Alpha cannot proffer pretextual reasons for a termination and then be relieved of its obligations under an agreement.

Under the Employment Contract, Luck can only be terminated for cause based upon six enumerated reasons; further, Luck's for cause termination must be the result of conduct that is "materially and demonstrably injurious to the interest, property, operations, business or reputation of Alpha." Ex. 1 at 3. Reason number three is "Mr. Luck's willful and intentional material misconduct in performance of his duties or gross negligence of his duties (other than due to any illness or disability), including an intentional failure to follow any applicable XFL policies or directives." *Id.* McMahon's argument that willful misconduct and gross negligence are "entirely different ground[s] to terminate" is simply inaccurate. Opp. at 21. If that were the case, then those provisions would have been separately enumerated. *See, e.g., Earl B. v. Commissioner of Children*

*and Families*, 288 Conn. 163, 177-78 (2008) (noting that various possible dispositions under Conn. Gen. Stat. 46b-140(j)(2) are listed in separate and distinct subsections). Clearly, the drafters knew how to create separate grounds for termination by drafting six specific bases for a cause termination.

Even if the Court finds that the two grounds are separate, the standard for proving gross negligence under Connecticut law is a high one. As the Connecticut Supreme Court has stated, it requires "conduct that 'betokens a reckless indifference to the rights of others.'" *C and H Electric, Inc. v. Town of Bethel,* 312 Conn. 843, 869 (2014) (quoting *Kalisch-Jarico, Inc. v. New York,* 58 N.Y.2d 377, 385 (1983)).[7] Further, "'gross negligence' is commonly defined as very great or excessive negligence, or as the want of, failure to exercise, even slight or scant care or 'slight diligence.'" *Hanks v. Powder Ridge Restaurant Corp.,* 276 Conn. 314, 338 (2005). It means "more than momentary thoughtlessness, inadvertence or error of judgment; hence, it requires proof of something more than the lack of ordinary care. It implies an extreme departure from the ordinary standard of care, aggravated disregard for the rights and safety of others, or negligence substantially and appreciably greater than ordinary negligence." *19 Perry St., LLC v. Unionville Water Co.*, 294 Conn. 611, 631 (2010) (quoting 57A Am. Jur. 2d 296–97, Negligence § 227 (2004)). "This court has construed gross negligence to mean no care at all, or the omission of such care which even the most inattentive and thoughtless seldom fail to make their concern, evincing a reckless temperament and lack of care, practically [willful] in its nature." *Id*. (quoting *Hanks,*

---

[7] "Typically, recklessness has been cast in terms of serious harm." *Williams v. Housing Authority of the City of Bridgeport,* 327 Conn. 338, 381 (2017). Under Connecticut law, recklessness is "a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." *Hanks v. Powder Ridge Restaurant Corp.,* 276 Conn. 314, 337 (2005) (quoting *Matthiessen v. Vanech,* 266 Conn. 822, 832 (2003) [internal quotation marks omitted]).

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

19

276 Conn. at 352 (*Norcott, J.,* dissenting)). The evidence presented at the hearing will show that Luck never intentionally failed to follow an XFL policy or directive, and thus there was no basis for his termination.

To try to justify Luck's termination, McMahon relies heavily on the events surrounding the hiring of Antonio Callaway. Opp. at 21-22. While Luck vehemently disputes McMahon's assertion of the facts, it is undisputed that these events took place in January 2020, more than two months *before* Luck was terminated. If Luck's actions surrounding Callaway were so egregious as to warrant a "for cause" termination—and not reasonably susceptible to cure as required by the Contract (see Ex. 1 at 3)—then Alpha surely would have terminated Luck promptly. Instead, in a convenient attempt to relieve itself and McMahon from any further obligation to pay Luck the substantial sums still due on his Employment Contract, Alpha waited until the day before it terminated all of its employees (and two business days before it declared bankruptcy) to suddenly decide that Callaway's hiring warranted Luck's termination for cause.

Additionally, McMahon's argument that Luck's alleged violation was not reasonably susceptible to cure fails. The policy violation, according to McMahon, occurred when Luck hired Callaway. It could be cured—and was cured—when Luck promptly caused Callaway's agent to be notified of Callaway's termination. Even if the XFL was exposed to "potential liability for worker's compensation payments" (Opp. at 24), this was *not* a violation of XFL policy by Luck and has no bearing on this case.

McMahon also argues that Luck violated the XFL's Handbook by using his phone for personal use. Opp. at 22. Yet, McMahon fails to even alert the Court to the Handbook's "Use of Phone and Mail Systems" section:

> Personal use of XFL telephones is discouraged. Employees should practice discretion in using XFL telephones when making personal calls and may be

> required to reimburse the XFL for charges resulting from their personal use of the telephone.

See Ex. A at 20. Even if, *arguendo*, Luck violated a "technology policy," it certainly would have been susceptible to cure and Alpha should have provided written notice to Luck and thirty (30) days to cure. Further, McMahon makes no attempt to explain how this alleged conduct was "materially and demonstrably injurious to the interest, property, operations, business or reputation of Alpha," as necessary to terminate Luck for cause. Ex. 1 at 3.

Finally, McMahon argues that Luck's termination was proper because he allegedly did not devote substantially all of his business time to performance of XFL duties. Opp. at 23. As set forth above, and as will be further demonstrated at the hearing, Luck continued to fulfill his obligations and responsibilities as Commissioner and CEO of the XFL throughout the COVID-19 pandemic until his wrongful termination, and Luck disputes McMahon's characterization. Nevertheless, even if McMahon's assertions were true—which they are not—they would have been susceptible to cure pursuant to the Employment Contract. Yet again, Alpha never provided Luck with any written notice to cure this alleged performance deficiency. Here too, McMahon does not even attempt to argue that Luck's actions or inactions in this regard were "materially and demonstrably injurious to the interest, property, operations, business or reputation of Alpha" as necessary for a termination for cause; indeed, such an argument cannot succeed, because Alpha terminated operations contemporaneously with Luck's termination.

The evidence will show that Luck's termination was wrongful, pretextual, and done solely to relieve McMahon of his obligation to pay Luck.[8] Luck's prejudgment remedy application should be granted.

### III.   Luck is Entitled to All Guaranteed Annual Bonuses

McMahon disingenuously argues that Luck is not entitled to receive his future bonuses because he was not employed on the dates those bonuses were due to be paid. In essence, he argues that Alpha can breach the Contract, prevent Luck from being employed on the scheduled payment date by wrongfully terminating him, and thereby relieve McMahon and Alpha of their obligation to pay Luck the *guaranteed* annual bonuses provided for in the Employment Contract as guaranteed by McMahon. Opp. at 25. Under this flawed interpretation, Alpha could terminate Luck on June 29, 2023—one day prior to the end of the contract year—and thus be relieved (and also relieve McMahon) of the obligation to pay Luck his guaranteed annual bonus because he would no longer be employed on the scheduled payment date. McMahon's argument is meritless.

### A.   McMahon's Non-Static Assets Have No Bearing on Whether Luck is Entitled to a Prejudgment Remedy

McMahon further argues that a prejudgment remedy is not warranted here because McMahon has a "clear ability to pay any possible judgment" and because "no exigent circumstances" exist. Opp. at 26-28. Such an argument is not supported by Connecticut law, and nowhere does the prejudgment remedy statute require, or suggest, that the Court should take into account the defendant's alleged assets or exigent circumstances. The prejudgment remedy standard is clear and well established, Conn. Gen. Stat. § 52-278d(a), and an application for a prejudgment

---

[8] McMahon also mistakenly relies on *Kern v. Palmer College of Chiropractic*, 757 N.W.2d 651 (Iowa 2008). Opp. at 19. *Kern* has not been cited (much less adopted) by a Connecticut court or the Second Circuit, and has no bearing on this case. In any event, the *Kern* court held that it was not required to give substantial deference to an employers termination where a specific definition of cause is provided. *Id* at 660.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

remedy "shall be granted" whenever there is "probable cause that such a judgment will be rendered in the matter in the plaintiff's favor." *Id.*

The cases McMahon cites in support of his position are entirely distinguishable. In *Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.*, 32 Conn. App. 118 (1993), the plaintiff's interest was already secured by a construction performance bond. Because the plaintiff subcontractor's interest was already adequately secured by that bond and no evidence was presented that it needed additional security to safeguard its probable judgment, the trial court did not err in denying a prejudgment remedy. *Id.* at 132. Here, there is no bond or other security that is already protecting Luck's interests.

McMahon argues that, because he owns a substantial amount of publicly traded non-static WWE stock, Luck is adequately protected and is not entitled to additional security. Opp. at 26. Even if that were the standard, and it is not, Luck and the Court have no knowledge regarding (a) any encumbrances on the WWE's stock; (b) the value of all other claims currently pending against McMahon;[9] (c) the amount of McMahon's liabilities (both current and contingent); (d) the value of McMahon's stock holdings at the conclusion of this action; and (e) the value of McMahon's assets and liabilities when the Court ultimately enters a judgment in this case. Succinctly, Luck is entitled to a prejudgment remedy regardless of McMahon's current net worth or assets, and McMahon is not immune to the prejudgment remedy statute simply because he currently owns substantial stock in a public company.

Further, "exigent circumstances" have no bearing on a court's decision to grant a prejudgment remedy application, and the Second Circuit has already rejected such an argument on

---

[9] There are currently multiple shareholder lawsuits pending against both McMahon and WWE, including *Merholz v. McMahaon*, 3:20-cv-00557, currently pending before this Court.

facts similar to those here. In *Chemical Bank v. Dana*, 4 F. App'x 1, 6 (2d Cir. 2001), the defendant executed a personal guaranty for all liabilities of a corporation she formed. After the defendant's corporation defaulted on its obligations to the plaintiff, the plaintiff sued the defendant under the guaranty and obtained a prejudgment attachment on the defendant's home. The defendant argued that granting the prejudgment attachment was error because "no exigent circumstances existed." *Id.* at 5.

The Second Circuit rejected that argument, stating that "the District Court did not need to find exigent circumstances to grant the attachment in a dispute between a creditor and a debtor in addition to finding probable cause that [the plaintiff] would succeed on the merits." *Id.* at 6 (internal citation omitted). Similarly, Luck need not show exigent circumstances to obtain relief under the prejudgment remedy statute, and McMahon's argument to the contrary has no basis in Connecticut law.

**B. A Prejudgment Remedy Hearing, Which is Required by Statute, Adequately Protects McMahon's Right to Due Process, and No Bond is Required**

McMahon's argument that a prejudgment remedy, issued after a hearing, would violate his due process rights is also without merit. Opp. at 28. McMahon's multiple citations to *Connecticut v. Doehr*, 501 U.S. 1 (19991), are inapplicable here because the prejudgment remedy statute at issue in *Doehr* authorized a prejudgment attachment *without prior notice or hearing*. *Id.* at 4. It is well established that "[d]ue process generally requires that notice and an opportunity to be heard occur prior to the deprivation of any property interest." *N.L.R.B. v. E.D.P. Med. Computer Sys., Inc.*, 6 F.3d 951, 956 (2d Cir. 1993). Here, Luck is not requesting an *ex parte* attachment of McMahon's property. The post-*Doehr* version of the prejudgment remedy statute, Conn. Gen. Stat. § 52-278d, requires a hearing in the circumstances presented here; that hearing is sufficient to protect McMahon's due process rights.

Additionally, it is well settled that a court need not require a plaintiff to post a bond to obtain a prejudgment remedy and that the lack of a bond does not violate McMahon's right to due process. Based on the specific language of § 52-278d, the Court's considerations will include: (1) the nature of the property; (2) the method of retention of the property; and (3) the potential harm to the defendant's interest. Whether to order plaintiff to post a bond is up to the court's discretion. *Giordano v. Giordano,* 39 Conn. App. 183, 204 (1995). Thus, when a prejudgment attachment is ordered, a defendant seeking a bond must present evidence that actual harm to the defendant could be caused as a result of the attachment. *See Gerard v. Bolliger Mobility, LLC*, 2013 WL 1277281 (Conn. Super. Ct. Mar. 11, 2013).

The Second Circuit has already held that due process does not require a plaintiff to post a bond to obtain a prejudgment remedy. *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 402 (2d Cir. 1995); *Shaumyan v. O'Neill,* 987 F.2d 122, 128–29 (2d Cir. 1993). While McMahon acknowledges this point in his opposition, see Opp. at n.5, he nevertheless requests that the Court ignore controlling precedent due to the assets McMahon claims to currently own. As discussed above, this argument is not based on Connecticut law, see section IV, *supra*, and is not part of the express statutory considerations for granting a request for a bond. *See* Conn. Gen. Stat. § 52-278d(e). McMahon is not entitled to special treatment by the Court simply because he apparently owns a lot of publicly traded stock.

## CONCLUSION

For all the foregoing reasons, as we well as those in Plaintiff's Memorandum of Law in Support of Prejudgment Remedy Application and those that will be demonstrated at the hearing of this matter, the Court should grant Plaintiff's Application for Prejudgment Remedy in full.

*Signature page to follow.*

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

 */s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, CT 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com

**AND**

 */s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4061 Washington Avenue, Suite 200
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com

***HIS ATTORNEYS***

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Andrew M. Zeitlin
Andrew M. Zeitlin

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**