# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK, | : | CASE NO. 3:20-cv-00516-VAB |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON, | : | |
| | : | |
| Defendant. | : | JUNE 17, 2020 |

## <u>DEFENDANT VINCENT K. MCMAHON'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY</u>

Jerry S. McDevitt
Curtis B. Krasik
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT  06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

*Attorneys for Defendant Vincent K. McMahon*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     Luck's Position Is Contrary To The Contract And The Guaranty......................................2

II.    Luck's Position Is Contrary To Connecticut Law. .............................................................3

III.   Luck's Position Is Contrary To New York Law Even If It Applied...................................5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Oil Co. v. Valenti,*
    179 Conn. 349 (1979) ...........................................................................................5

*Bank of North America v. Shapiro,*
    298 N.Y.S.2d 399 (App. Div. 1969) .....................................................................6

*Barclays Business Credit, Inc. v. Freyer,*
    No. CV 960152347S, 1997 WL 255248 (Conn. Super. Ct. May 6, 1997) ..............5

*Carriage House I-Enfield Ass'n, Inc. v. Johnston,*
    160 Conn. App. 226 (2015) ...................................................................................3

*Chemical Bank v. Geller,*
    727 F.2d 61 (2d Cir. 1984).....................................................................................5

*Connecticut National Bank v. Douglas,*
    221 Conn. 530 (1992) ............................................................................................5

*Local 1303-362 of Council 4 v. KGI Bridgeport Co.,*
    No. 3:12CV1785, 2013 WL 4735584 (D. Conn. Sept. 3, 2013) .............................4

*Madigan v. Housing Authority of East Hartford,*
    156 Conn. App. 339 (2015) ...................................................................................4

*Manufacturers Hanover Trust Co. v. Green,*
    464 N.Y.S.2d 474 (App. Div. 1983)......................................................................6

*One Country, LLC v. Johnson,*
    137 Conn. App. 810 (2012) ...............................................................................3, 5

*Perry v. Cohen,*
    126 Conn. 457 (1940) ............................................................................................3

*Regency Savings Bank v. Westmark Partners,*
    59 Conn. App. 160 (2000) .....................................................................................2

*Royal Equities Operating, LLC v. Rubin,*
    62 N.Y.S.3d 337 (App. Div. 2017)........................................................................6

*TD Bank, N.A. v. School Street Plaza, LLC,*
    No. HHDCV106016282, 2012 WL 386467 (Conn. Super. Ct. Jan. 10, 2012) ...................2, 4

*Ursa Minor Limited. v. Aon Financial Products, Inc*,
    No. 00CIV-2474, 2000 WL 1010278 (S.D.N.Y. July 21, 2000) ...............................................5

*Welch v. Stonybrook Gardens Cooperative, Inc.*,
    158 Conn. App. 185 (2015) .........................................................................................................3

Luck's argument is a desperate attempt to avoid the inescapable conclusion that Alpha is an indispensable party and that he was properly terminated for Cause under the Employment Contract.   This case is remarkably simple:   Luck's Affidavit has admitted that McMahon directed him to terminate Callaway and that Luck had an opportunity to instruct Callaway's head coach to terminate Callaway.  The evidence is crystal clear that Luck did not terminate Callaway, who was subsequently injured in practice, resulting in substantial costs to the XFL.[1]

Faced with this certain evidence, Luck now takes the extreme position that McMahon was obligated to pay him $35 million under the Guaranty *no matter what*—regardless of whether Luck performed *any work* under the Employment Contract, committed acts that justified his termination for Cause under the Contract, or *himself* decided to terminate the Contract immediately after it was executed.  Luck's position is that the Guaranty was akin to a promissory note that entitled him to receive $35 million no matter what he did.  Given that view, it is no wonder that Luck abandoned his duties as Commissioner and CEO of the XFL in March 2020.

Luck's absurd interpretation is directly contrary to the Guaranty, the Employment Contract, and applicable Connecticut law.  Luck does not and cannot cite *a single case* holding a guarantor liable where the underlying contract was not breached by the obligor and no money was actually owed under the underlying contract.  To the contrary, Luck's own cited cases confirm that he must prove that he is owed money from Alpha under the Employment Contract to establish a *prima facie* case for breach of the Guaranty.  There is no need to consider the Guaranty if he cannot meet that burden.  Because Luck was terminated for Cause, there are no payments owed by Alpha under the Contract and nothing for McMahon to guarantee.

---

[1] The evidence concerning the other grounds for Luck's termination for Cause will be equally clear.

## I.     Luck's Position Is Contrary To The Contract And The Guaranty.

Luck erroneously argues that the Court should ignore the Employment Contract and treat the Guaranty as if it were a standalone promissory note for a sum certain.  As is made clear at the beginning and the end of the Employment Contract, the Contract and the Guaranty are part of the *same agreement* and must be considered together to determine whether any amounts are owed. *See* Contract at 1 (providing that "[t]his Contract will be legally binding on and enforceable against Mr. Luck and Alpha" upon execution of *both* the Contract and Guaranty attached as Exhibit A to the Contract); *id.* at 5 ("This Contact, the Guaranty and the CNNA together embody the entire understanding of Mr. Luck, Alpha, and Mr. McMahon.").  Indeed, Luck's own cited case states that "[s]ince the guaranty contract secures a principal or primary obligation, the liability of the guarantor also depends upon a construction and application of the primary contract." *TD Bank, N.A. v. Sch. St. Plaza, LLC*, No. HHDCV106016282, 2012 WL 386467, at *6 (Conn. Super. Ct. Jan. 10, 2012) (quotation marks omitted); *Regency Sav. Bank v. Westmark Partners*, 59 Conn. App. 160, 164–65 (2000) (stating that when a contract and guarantee "are connected by reference and subject matter, both are to be considered in determining the real intent of the parties").

Here, the Guaranty expressly conditions McMahon's liability under the Guaranty on Alpha's breach of the Employment Contract and its failure to pay amounts owed under the Employment Contract.  *See* Guaranty, Recitals (guaranteeing "the performance by [Obligor] of its agreements and obligations under the Employment Contract"); *id.* ¶ 1 (guaranteeing "the due and punctual payment a[n]d performance by the Obligor" under the Contract"); *id.* ¶ 2 (providing that Guarantor's obligations cease upon "the full performance by Obligor" of its obligations

under the Contract).  Because Alpha has paid Luck everything he is owed under the Employment Contract, there is nothing due to Luck and therefore nothing for McMahon to guarantee.

Luck's position that McMahon's obligations under the Guaranty are untethered to Employment Contract would lead to patently absurd and unreasonable results.

- Luck's interpretation would render the language of the Employment Contract superfluous and would make its detailed termination for Cause provisions completely pointless.

- Luck's interpretation would mean that McMahon would be obligated to pay him the full $35 million regardless of whether he performed *any* work under the Contract or committed criminal acts that would justify his termination for Cause.[2]

- Luck's interpretation would mean that *he* could terminate the Contract at any time and for any reason and still receive the full $35 million contrary to the provision limiting Luck's entitlement to previously Accrued Obligations in the event Luck terminates the Contract "without Good Reason."  Contract at 4.

*See Welch v. Stonybrook Gardens Coop., Inc.*, 158 Conn. App. 185, 198 (2015) ("We will not construe a contract's language in such a way that it would lead to an absurd result.").

## II.    Luck's Position Is Contrary To Connecticut Law.

Luck's position is also contradicted by the Connecticut cases that he cites.  Those cases require a plaintiff to establish that the principal obligor has defaulted on the underlying contract to hold a guarantor liable under a guaranty.  *See Perry* v. *Cohen*, 126 Conn. 457, 459 (1940) (stating that "***default of the maker or indorser*** to pay the note" causes the guarantor to become liable to the holder) (emphasis added) (quotation marks omitted); *One Country, LLC v. Johnson*, 137 Conn. App. 810, 816 (2012) (stating that a guarantor "contracts to fulfill an obligation ***upon the default of the principal obligor***") (emphasis added) (quotation marks omitted).

---

[2] Luck's suggestion that Court could decline to enforce the Guaranty on public policy grounds if Luck engaged in criminal behavior misapprehends the law.  A court can decline to enforce a contract on public policy grounds if the *contact itself* requires an illegal act.  *See Carriage House I-Enfield Ass'n, Inc. v. Johnston*, 160 Conn. App. 226, 245 (2015) ("Contracts that are illegal may defy public policy, in which case they are void and unenforceable.").

Luck's reliance on *TD Bank, N.A. v. School Street Plaza, LLC* illustrates the point.  In that case, the Court recognized that "a guaranty is an undertaking by a guarantor to answer for payment of some debt, or performance of some contract, of another person ***in the event of default***."  2012 WL386467 at *5 (emphasis added) (quotation marks omitted).  The Court stated that "[t]o establish *a prima facie* case of entitlement to recover on a guaranty, the plaintiff must show (1) that it is ***owed a debt from a third party***; (2) that the defendant made a guaranty of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant."  *Id.* at *5 (emphasis added) (quotation marks and alterations omitted).  The plaintiff must establish "that it is owed a debt from the borrower" because "***the liability of the guarantor is based on the liability of the debtor***."  *Id.* at *6 (emphasis added) (quotation marks omitted).

Luck wrongly claims that he has established a *prima facie* case merely because Alpha has not made payments of amounts referenced in the Employment Contract.  The failure to make such payments does not constitute a default unless Luck establishes that they are ***actually owed*** by Alpha under the Contract.  Because such payments are not owed because Luck was terminated for Cause, McMahon is not liable under the Guaranty.[3]  *See Local 1303-362 of Council 4 v. KGI Bridgeport Co.*, No. 3:12CV1785, 2013 WL 4735584, at *7 (D. Conn. Sept. 3, 2013) (holding that plaintiffs could not establish breach of the guaranty because the plaintiffs "have failed to establish the necessary predicate debt" and "[b]ecause there is no debt owed by the third party, *i.e.*, KGI Bridgeport, the City of Bridgeport cannot be liable as a guarantor").

Finally, Luck's reliance on Connecticut cases enforcing waivers of defenses in guarantees are entirely inapposite because there was no question in those cases that the primary obligor had

---

[3] Under Connecticut law, Luck also has the burden of proving that Alpha breached the Employment Contract by terminating him without Cause, *Madigan v. Hous. Auth. of E. Hartford*, 156 Conn. App. 339, 355 n.2, 357 (2015), which makes Alpha an indispensable party to this action.

defaulted and a debt was owed to the plaintiff under the underlying contract. *See One Country, LLC*, 137 Conn. App. at 816–21 ("[T]he defendants do not dispute that One Country, LLC was indebted to the plaintiff at the time he made the $300,000 settlement payment to the bank.").[4]

### III.   Luck's Position Is Contrary To New York Law Even If It Applied

Although Luck's reliance on New York law is misplaced because the Contract and the Guaranty are governed by Connecticut law, Luck's position is contrary to New York law as well.

Luck disregards the Second Circuit case previously cited by McMahon that makes clear that a waiver of defenses in a guarantee does not require a guarantor to pay the plaintiff for amounts that are not actually owed under the underlying contract. *See Chem. Bank v. Geller*, 727 F.2d 61, 63–64 (2d Cir. 1984) ("Although the guarantees are 'unconditional' and without regard to [debtor's] defenses, ***they do not require the guarantors to pay [plaintiff] without regard to the amount of [debtor's] obligation***.") (emphasis added) (applying New York law).

Luck also fails to recognize that the District Court's decision in *Ursa Minor Limited. v. Aon Financial Products, Inc.* contradicts his position. Although the Court there held that a guarantee's waiver of defenses foreclosed an argument that the underlying contract was invalid or unenforceable, it recognized that the plaintiffs were still required to "demonstrate a prima facie case against the debtor in order to recover" under the guarantee and that "[h]ere the record reflects a prima facie case against the debtor, Escobel, whom both parties agree defaulted on the Loan." No. 00CIV-2474, 2000 WL 1010278, at *6–7 (S.D.N.Y. July 21, 2000).[5]

---

[4] *See also Connecticut National Bank v. Douglas,* 221 Conn. 530, 545 (1992) (holding that waiver of defenses in guarantee precluded defendant from raising a defense based on the *impairment of the secured collateral*); *Am. Oil Co. v. Valenti*, 179 Conn. 349, 352 (1979) (holding that guarantee precluded defendant from raising defense *based on entry of nonsuit in case against the principal debtor*); *Barclays Bus. Credit, Inc. v. Freyer*, No. CV 960152347S, 1997 WL 255248, at *2 (Conn. Super. Ct. May 6, 1997) (applying Virgin Islands law to hold that waiver of guarantee precluded defenses based on *impairment of collateral, estoppel, and economic duress*).

[5] The other New York cases cited by Luck enforcing waivers of defenses in guarantees are inapposite because there was no question in those cases the plaintiff had met its *prima facie* burden of establishing that the debtor defaulted

DEFENDANT VINCENT K. MCMAHON

By:  */s/ Jerry S. McDevitt*

Jerry S. McDevitt *(pro hac vice)*
Curtis B. Krasik *(pro hac vice)*
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

## CERTIFICATION OF SERVICE

I hereby certify that, on June 17, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)

---

on the underlying contract.  *See Royal Equities Operating, LLC v. Rubin*, 62 N.Y.S.3d 337, 338 (App. Div. 2017) (enforcing guarantee where "plaintiff made a prima facie showing of the tenant's default and the amount owed— $1,740,818.60—under the lease's accelerated rent provision" and "the guarantor defendants failed to refute plaintiff's calculations as to the amount owed"); *Mfrs. Hanover Tr. Co. v. Green*, 464 N.Y.S.2d 474, 475–76 (App. Div. 1983) (enforcing guarantee where defendant "does not deny that the partnerships defaulted on the loans which are now due and payable"); *Bank of N. Am. v. Shapiro*, 298 N.Y.S.2d 399 (App. Div. 1969) (enforcing waiver of defenses in guarantee against claim that an unpaid loan to the debtor was unauthorized).