# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OLIVER LUCK,<br>*Plaintiff*,<br><br>v.<br><br>VINCENT K. MCMAHON,<br>*Defendant.* | No. 3:20-cv-516 (VAB) |

RULING AND ORDER ON MOTION FOR PREJUDGMENT REMEDY
AND MOTION FOR DISCLOSURE OF ASSETS

On April 16, 2020, Oliver Luck ("Plaintiff") sued Vincent K. McMahon ("Defendant") to recover approximately $23.8 million in salary and bonuses allegedly owed for Mr. Luck's employment contract as Commissioner and CEO (the "Employment Contract") with Alpha Entertainment LLC ("Alpha"), which Mr. McMahon allegedly personally guaranteed, and which Mr. Luck alleges was wrongfully terminated for cause.

Pending are Mr. Luck's Motion for a Prejudgment Remedy-Redacted **[ECF No. 21]**, Sealed Motion for Disclosure of Assets **[ECF No. 25]**, Motion for Prejudgment Remedy-Unredacted **[ECF No. 58]**, and Motion for Disclosure of Assets **[ECF No. 61]**. Mr. Luck's first two motions, **[ECF Nos. 21 and 25]**, are **MOOT**[1] because the latter two motions, **[ECF Nos. 58 and 61]** have superseded it.

For the following reasons, the case is **STAYED** and the pending motions are **DENIED** without prejudice to refiling following the conclusion of bankruptcy proceedings involving Alpha.

---

[1] The Court notes that in a telephonic hearing and conference held on May 13, 2020, it granted the parties' numerous motions to seal the Complaint and filings "only with respect to the sealing of Mr. McMahon's unnecessary personally identifying information," and ordered the parties to "refile all sealed documents as unsealed documents." Minute Entry, ECF No. 48 (May 13, 2020).

1

I.  **BACKGROUND**

Mr. Luck is a citizen of Indiana, and Mr. McMahon is a citizen of Connecticut. Alpha is a limited liability company, based in Connecticut, and recently declared bankruptcy.

On May 30, 2018, Mr. Luck entered into an employment contract (the "Employment Contract") with Alpha, agreeing to serve as the Commissioner and CEO of the XFL, a new United States professional football league.

Mr. McMahon, as the controlling owner of Alpha, provided to Mr. Luck a guaranty, Exhibit A to the Employment Contract (the "Guaranty"), wherein he "irrevocably and unconditionally guarantee[d] . . . the due and punctual payment and performance by the obligor of all of its agreements and obligations under the Transaction Documents," which include the Guaranty, the Employment Contract, and other documents. Ex. 1 to Compl., Ex. A: Guaranty, ECF No. 57 at 13 (May 30, 2018) ("Guaranty"). The Guaranty was "a guaranty of payment and not of collection." *Id.* The Guaranty further stated:

> The obligations of the Guarantor hereunder shall be absolute, unconditional, continuing and irrevocable and shall remain in full force and effect until the full performance by the Obligor of all of its agreements and its obligations under the Transaction Documents, irrespective of the validity, regularity or enforceability of any Transaction Document, any amendment or other modification or change thereto, the absence of any action to enforce the same, any waiver or consent by the Executive or the Obligor with respect to any provision of any Transaction Document, the recovery of any judgment against the Obligor or any action to enforce the same, any dissolution, liquidation or termination of the Obligor, or any other circumstances that may otherwise constitute a legal or equitable discharge or defense of the Guarantor, all of which are hereby waived by the Guarantor. The Guarantor further waives any right of set-off or counterclaim it may have against the Executive arising from any other obligations that the Executive may have to the Obligor or the Guarantor. This Guaranty shall be binding upon the Guarantor and shall inure to the benefit of the Executive and, in each case, their respective estates, heirs, executors, legatees, devisees, personal representatives, successors and permitted assigns.

*Id.*

Under the Employment Contract, Mr. Luck had "full authority to hire, dismiss, replace or reassign any employee, consultant or contractor of the XFL . . . subject to Mr. McMahon's preapproval for material business decisions." Ex. 1 to Compl.: Contract for Employment as Commissioner and CEO at 1, ECF No. 57 (May 30, 2018) ("Employment Contract"). Mr. Luck had to "devote substantially all of his business time to the performance of his duties to the XFL[.]" *Id.* Mr. Luck was to serve as Commissioner and CEO of the XFL for an initial list of July 1, 2018 to June 30, 2023. His base salary was $5,000,000, and he received a "guaranteed annual bonus" of $2,000,000 "on the last day of each Contract Year, subject to his continued employment on the scheduled payment date." *Id.* at 2.

The Employment Contract stated that Alpha could terminate Mr. Luck "at any time, with or without Cause," and set forth six grounds for termination for cause, including "Mr. Luck's willful and intentional material misconduct in performance of his duties or gross negligence of his duties . . . , including an intentional failure to follow any applicable XFL policies or directives," and "Mr. Luck's willful disregard of the lawful instructions of Mr. McMahon concerning Mr. Luck's material duties hereunder." *Id.* at 3. Alpha was not required to provide thirty days written notice to Mr. Luck if the act or omission was "not reasonably susceptible to cure." *Id.* Upon termination for cause, Mr. Luck was only entitled to payment of "previously accrued salary and any vested employee benefits," whereas upon termination without cause, Mr. Luck is entitled to a lump sum cash payment within sixty days of termination. *Id.* The lump sum amount would be equal to:

> (i) the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30,

>   2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations plus (iii) the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination.

*Id.*

On April 9, 2020, Alpha terminated Mr. Luck's employment allegedly for cause, including for Mr. Luck's alleged gross negligence and willful disregard of Mr. McMahon's lawful instructions concerning Mr. Luck's material duties. In a termination letter, Alpha provided several non-exhaustive examples of Mr. Luck's alleged gross negligence and violation of XFL policies: (1) alleged violation of the policy of "not signing players with problematical backgrounds and history" when Mr. Luck entered into a contract with Antonio Callaway and offered him "a very substantial signing bonus of $125,000;" (2) alleged failure to timely carry out Mr. McMahon's directive to terminate Mr. Callaway's services once Mr. McMahon learned what Mr. Luck did, which led to the XFL's liability for Mr. Callaway's injury at practice; and (3) alleged failure to devote substantially all business time to XFL duties after March 13, 2020, when Mr. Luck left Connecticut for Indiana following the XFL's cancellation of the rest of its season due to the COVID-19 pandemic, and failed to exhibit "any of the vigor and work ethic required of a CEO of a start-up enterprise in these trying times." Ex. 2 to Compl.: Termination Letter from Alpha to Mr. Luck, ECF No. 57 at 21–22 (Apr. 9, 2020).

On April 16, 2020, Mr. Luck sued Mr. McMahon for breach of the Guaranty, and sought $23.8 million in salary and bonuses allegedly owed under the Employment Contract, as well as a declaratory judgment against Mr. McMahon. Redacted Compl., ECF No. 1 (Apr. 16, 2020); Compl., ECF No. 57 (May 13, 2020) (unredacted Complaint filed in accordance with the Court's orders related to various motions to seal filed by both parties).

On April 21, 2020, Mr. Luck filed sealed documents moving for a prejudgment remedy and disclosure of assets. Mot. for a Prejudgment Remedy-Redacted, ECF No. 21 (Apr. 21, 2020); Sealed Mot. for Disclosure of Assets, ECF No. 25 (Apr. 21, 2020).

On May 12, 2020, Mr. McMahon opposed Mr. Luck's motions. Sealed Def.'s Mem. of Law in Opp'n to Pl.'s Application for Prejudgment Remedy, ECF No. 44 (May 12, 2020); Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Disclosure of Assets, ECF No. 45 (May 12, 2020).

On May 13, 2020, the Court held a telephonic status conference, and granted in part and denied in part several motions to seal filed by the parties, ECF Nos. 2, 29, 34, 43. Minute Entry, ECF No. 48 (May 13, 2020). The motions to seal were granted only with respect to the sealing of Mr. McMahon's unnecessary personally identifying information. *Id.* The Court ordered the parties to "refile all sealed documents as unsealed documents," but to redact and refile any documents accordingly. *Id.*

On the same day, Mr. McMahon refiled his oppositions to Mr. McMahon's motions, Def.'s Opp'n to Pl.'s Application for Prejudgment Remedy, ECF No. 50 (May 13, 2020) ("Def.'s Opp'n"); Def.'s Opp'n to Pl.'s Mot. for Disclosure of Assets, ECF No. 51 (May 13, 2020) ("Def.'s Opp'n – Assets"); and Mr. Luck refiled his motions, Pl.'s Application for Prejudgment Remedy, ECF No. 58 (May 13, 2020) ("Pl.'s Mot."); Pl.'s Mot. for Disclosure of Assets, ECF No. 61 (May 13, 2020) ("Pl.'s Mot. – Assets"); Mem. of Law in Supp. of Pl.'s Mot., ECF No. 63 (May 13, 2020) ("Pl.'s Mem.").

On May 23, 2020, Mr. Luck filed a reply. Corrected Reply Mem., ECF No. 71 (May 23, 2020) ("Pl.'s Reply").

On May 29, Mr. McMahon filed a sur-reply. Def.'s Surreply Br. in Opp'n to Pl.' s Mot., ECF No. 72 (May 29, 2020) ("Def.'s Surreply").

On June 10, the Court held a hearing by videoconference on the pending motions. Minute Entry, ECF No. 73 (June 10, 2020). At the hearing, the Court granted leave for both parties to file additional briefs. *Id.*

On June 15, 2020, Mr. Luck filed an additional memorandum. Add'l Mem. of Law In Further Supp. of Pl.'s Mot., ECF No. 74 (June 15, 2020) ("Pl.'s Add'l Mem.").

On June 17, 2020, in response, Mr. McMahon filed his supplemental memorandum. Def.'s Suppl. Mem. in Opp'n to Pl.'s Mot., ECF No. 76 (June 17, 2020) ("Def.'s Suppl. Mem.").

## II. STANDARD OF REVIEW

### A. Rule 19 and Necessary Joinder

Rule 19 of the Federal Rules of Civil Procedure "provides that a person or entity is a necessary party if:"

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 134 (2d Cir. 2020) (quoting Fed. R. Civ. P. 19(a)). "A necessary party must be joined as a party to the action unless joinder would deprive the court of subject matter jurisdiction." *Id.* (citing Fed. R. Civ. P. 19(a)). In those circumstances where joinder is "not feasible," under Fed. R. Civ. P. 19(b), "the court must assess whether 'in equity and good conscience, the action should proceed among the existing parties or should be dismissed' by considering the factors provided in Rule 19(b)." *Id.* at 134–135 (quoting Fed. R. Civ. P. 19(b)).

**B. A Pre-Judgment Remedy**

Rule 64 of the Federal Rules of Civil Procedure provides that, in a federal court, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. "[A] prejudgment remedy is intended to secure the satisfaction of a judgment should the plaintiff prevail." *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013). Connecticut law "provides for an expansive prejudgment remedy, and it is under Connecticut law that [a plaintiff's prejudgment remedy] application must be reviewed." *New England Health Care Emps. Welfare Fund v. iCare Mgmt., LLC*, 792 F. Supp. 2d 269, 274 (D. Conn. 2011); *see also Edelstein v. Lucas Brand Equity, LLC*, No. 3:16CV01353 (WWE), 2017 WL 2399583, at *4 (D. Conn. June 2, 2017) (Federal courts in Connecticut "utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action.").

Under Connecticut law, a prejudgment remedy shall be granted if a court "finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought." Conn. Gen. Stat. § 52-278d(a).

> Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence. The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Under this standard, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits.

*TES Franchising, LLC v. Feldman*, 286 Conn. 132, 137 (2008) (quotation marks and citations omitted). The probable cause standard is modest, and "not as demanding as proof by a fair preponderance of the evidence." *Id.* "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Id.* (citation omitted). It is "a flexible common sense standard" that "does not demand that a belief be correct or more likely true than false." *Id.* (citation omitted). "[T]he trial court's function [under this standard] is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." *Id.* (citation omitted). The trial court has "broad discretion" to make this determination, and "a prejudgment remedy hearing is not contemplated to be a full scale trial on the merits." *Id.* at 143.

In addition, the statute "requires that a trial court make a probable cause determination as to both the validity of the plaintiff's claim and the amount of the remedy sought." *Id.* at 145–46 (citation omitted). "[T]he party seeking the prejudgment remedy must present evidence that is sufficient to enable the court to determine the probable amount of the damages involved." *Id.* at 146 (citation and internal quotation marks omitted). "Although the likely amount of damages need not be determined with mathematical precision ... the plaintiff bears the burden of presenting evidence that affords a reasonable basis for measuring her loss." *Id.* (internal quotations and alterations omitted). Nonetheless, the "court may grant a prejudgment remedy order that authorizes an attachment for an amount less than that sought in the application for prejudgment remedy as long as there is probable cause that a judgment in that lesser amount, taking into account any defenses, counterclaims or setoffs, will be rendered in the plaintiff's favor." *Conn. Light & Power Co. v. Gilmore*, 89 Conn. App. 164, 176 (2005).

Finally, under Conn. Gen. Stat. § 52-278n, "the court may, on motion of a party, order an appearing defendant to disclose property in which he has an interest or debts owing to him sufficient to satisfy a prejudgment remedy." Conn. Gen. Stat. § 52-278n(a). "Generally, under Connecticut law, a disclosure of assets is ordered if a prejudgment remedy is ordered." *Wachovia Bank, N.A. v. Cummings*, No. 309CV957SRU, 2010 WL 466160, at *9 (D. Conn. Feb. 8, 2010); *see also* Conn. Gen. Stat. § 52–278n(c) (authorizing same).

## III. DISCUSSION

Mr. Luck has sued Mr. McMahon for his alleged breach of the Guaranty and failure to pay Mr. Luck's salary and bonus under the Employment Contract, "[b]ecause Alpha wrongfully terminated and repudiated the Employment Contract without cause." Compl. ¶¶ 12–15.

Before reaching the merits of Mr. Luck's motion for a prejudgment remedy, the Court must decide first whether Mr. Luck has failed to join an indispensable party, Alpha, because if so, the Court must stay the case until Alpha's bankruptcy proceeding is resolved and it can be joined to this action.

### A. The Issue of Necessary Joinder

"Because Rule 19 protects the rights of an absentee party, . . . courts may consider this issue sua sponte even if it is not raised by the parties to the action." *Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n Inc.*, 471 F.3d 377, 382–83 (2d Cir. 2006) (collecting cases). "A party is necessary under Rule 19(a)(1) only if in that party's absence 'complete relief cannot be accorded *among those already parties*.'" *Id.* at 385 (emphasis in original) (quoting Fed. R. Civ. P. 19(a)(1) pre-2007 amendment, when "existing" replaced "already"). "[N]ecessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired because of that party's absence from the litigation." *Id.* at 387 (emphasis and citation omitted).

9

Where joinder is not feasible under Rule 19(a), under Rule 19(b), there are "four considerations that will ordinarily be among those relevant to the analysis of whether a party is 'indispensable.'" *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 133 (2d Cir. 2013). They are:

> (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.

*Id.* (quoting *CP Sols. Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam)).

In his opposition to Mr. Luck's motion for a prejudgment remedy, Mr. McMahon argues that Mr. Luck's application is not supported by probable cause because he has failed to join an indispensable party, Alpha. Def.'s Opp'n at 14. Mr. McMahon asserts that Alpha "is a necessary party . . . because it is a party to the contract that is the subject of Luck's lawsuit," and "Luck's own allegations in the Complaint make clear that whether Alpha validly terminated Luck for cause is the central issue in this case." *Id.* at 15 (citations omitted).

Although "Alpha cannot feasibly be joined in this lawsuit because it has filed for bankruptcy and is subject to the automatic stay," Mr. McMahon argues that as an indispensable party, proceeding without Alpha would significantly prejudice both his interests and those of Alpha. *Id.* at 15–16. Mr. McMahon offers the following example to demonstrate prejudice to Alpha: "if the Court ruled in [his] favor and found that the [Employment] Contract was validly terminated, then Luck could attempt to pursue an action against Alpha and re-litigate the same issues to Alpha's detriment." *Id.* at 17. According to Mr. McMahon, the case should be dismissed, because the Court "cannot shape a judgment or relief in this case to lessen or mitigate the prejudice to Alpha if a judgment were rendered in its absence." *Id.* at 18. Alternatively, Mr.

10

McMahon argues that Mr. Luck's action "should be stayed pending resolution of the bankruptcy case." *Id.* at 18 n.3 (collecting cases).

In reply, Mr. Luck argues that "Alpha's presence is unnecessary to accord complete relief as to Luck or McMahon," because his lawsuit "is based solely on McMahon's obligations under the Guaranty . . . which Luck could pursue without first pursuing Alpha." Pl.'s Reply at 9. Mr. Luck asserts that "neither Luck's contract with Alpha nor Alpha's obligations under the Employment Contract is the basis of Luck's lawsuit." *Id.* at 11. In his view, "[a] guaranty of payment is an absolute and unconditional promise to satisfy the underlying obligation." Pl.'s Add'l Mem. at 4 (citations omitted).[

Furthermore, Mr. Luck contends that Alpha and Mr. McMahon have "virtually identical interests," and Mr. McMahon "is not at risk of double, multiple or inconsistent obligations and any risk to him at all is not a result of Alpha's absence." Pl.'s Reply at 12–13. Mr. Luck emphasizes that "[b]ecause McMahon agreed that his obligations under the Guaranty are absolute irrespective of Luck's enforcement of the Employment Contract, McMahon anticipated Luck's lawsuit under the Guaranty without Alpha." *Id.* at 15–16. According to Mr. Luck, "the flexible analysis of the Rule 19(b) factors weigh[] heavily in favor of proceeding without Alpha[.]" *Id.* at 17. In his additional memorandum, Mr. Luck emphasizes that "[u]pon Alpha's nonpayment, McMahon's liability for payment became absolute under his Guaranty." Pl.'s Add'l Mem. at 4.

Mr. McMahon responds that Mr. Luck "must prove that Alpha is liable for unpaid obligations under the [Employment] Contract in order to establish McMahon's liability under the Guaranty," which "only applies to Alpha's payment of obligations that are actually owed to Luck under the [Employment] Contract." Def.'s Surreply at 1. Because Alpha terminated Mr. Luck for

11

cause and "does not owe any further obligations to Luck under the Contract," Mr. McMahon contends that neither does he owe anything to Mr. Luck under the Guaranty. *Id.* at 2. Thus, Mr. McMahon argues that Alpha is indispensable as a party because "the Contract to which the Guaranty applies is the subject of this litigation," and especially because "Luck's claim in this case necessarily turns on whether Alpha had Cause to terminate the Contract." *Id.* at 4.

Mr. McMahon emphasizes that "the Guaranty expressly conditions McMahon's liability under the Guaranty on Alpha's breach of the Employment Contract and its failure to pay amounts owed under the Employment Contract." Def.'s Suppl. Mem. at 2. He asserts that Alpha's "failure to make [] payments does not constitute a default unless Luck establishes they are actually owed by Alpha under the contract." *Id.* at 4 (emphasis omitted). In response to Mr. Luck's additional memorandum, Mr. McMahon contends that "Luck's reliance on Connecticut cases enforcing waivers of defenses in guarantees are entirely inapposite because there was no question in those cases that the primary obligor had defaulted and a debt was owed to the plaintiff under the underlying contract." *Id.* at 4–5.

In Mr. McMahon's view, "Alpha plainly has an interest in this Court's determination of whether it had Cause to terminate the Contract regardless of whether it is bound by a judgment." Def.'s Surreply at 5. Furthermore, Mr. McMahon notes that "Alpha is a separate legal entity" with "unique defenses and counterclaims that [he] cannot assert." *Id.* at 5–6. Thus, he submits that "[d]ismissal or stay of this action until the bankruptcy case has concluded would ensure that the interest of Alpha and McMahon are not prejudiced and that McMahon is not distracted by this litigation and able to focus on Alpha's reorganization." *Id.* at 7 (footnote omitted).

The Court agrees.

First, in analyzing this case under Rule 19(a), although Mr. Luck is suing based on "[Mr.] McMahon's obligations under the Guaranty," *see* Pl.'s Reply at 9, Mr. McMahon only guaranteed "the due and punctual payment a[n]d performance by [Alpha] of all its agreements and obligations," which was "a guaranty of payment and not of collection[,]" Guaranty, ECF No. 57 at 13. In other words, because Alpha had terminated Mr. Luck for cause, even if allegedly wrongfully, the Guaranty also may have ended, because Mr. Luck was not entitled to any additional payment beyond "previously accrued salary and any vested employee benefits." Employment Contract at 3.

To prevail against Mr. McMahon as a guarantor, Mr. Luck thus would have to establish that Alpha still had an obligation to him and breached that obligation under the Employment Contract. *See CCT Commc'ns, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 135 n.14 (2017) (emphasizing the "general rule that termination of a contract discharges the remaining obligations of all parties thereto" (citing *Weiss v. Smulders*, 313 Conn. 227, 242 (2014)); *Murphy v. Schwaner*, 84 Conn. 420, 297 (1911) ("From the nature of the contract of a guarantor or surety, their liability is ordinarily measured by that of the principal." (citations omitted)); *Cadle Co. of Conn. v. C.F.D. Dev. Corp.*, 44 Conn. App. 409, 413 (1997) ("[T]here would be no basis for a judgment against the guarantors on the note or the guarantee because the liability of the guarantor is based on the liability of the debtor." (citations omitted)); *Cadlerock Joint Venture II, L.P. v. Milazzo*, 2011 WL 5925101 (Conn. Super. Ct. Sept. 27, 2011) ("Since the guaranty contract secures a principal or primary obligation, the liability of the guarantor depends on the construction and application of the primary contract." (citations and internal alterations omitted)).

13

The Connecticut Appellate Court's decision in *One Country LLC v. Johnson*, 137 Conn.App. 810 (2012), is not to the contrary. Indeed, as the court recognized there,

> [t]he express language in the defendants' backstop guarantee agreements is plain and broad, providing absolute and unconditional protection to the plaintiff in the event of a default by One Country, LLC, in the performance of its obligations to the bank in connection with the acquisition and constructions loans for 1 Country Road in Westport.

*Id.* at 818. In other words, the obligations under the guarantee only arose "in the event of a default" on the underlying obligations of the contract being guaranteed. *See Chem. Bank v. Geller*, 727 F.2d 61, 63–64 (2d Cir. 1984) ("Although the guarantees are 'unconditional' and without regard to [debtor's] defenses, they do not require the guarantors to pay [plaintiff] without regard to the amount of [debtor's] obligation."); *People's United Bank, N.A. v. Patterson*, No. FBTCV166055720S, 2016 WL 6237654, at *1 (Conn. Super. Ct. Sept. 28, 2016) ("In order to establish a prima facie claim for breach of a written guaranty plaintiff must prove: (1) plaintiff is owed a debt from a third party, (2) defendant guaranteed payment of the debt and (3) the debt has not been paid.").

As a result, this is "an action that could in the future impact a third party's rights under a separate contract." *Mastercard*, 471 F.3d at 387. And "'[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule19(a).'" *Visión en Análisis y Estrategia, S.A. de C.V. v. Andersen*, 662 F. App'x 29, 32 (2d Cir. 2016) (summary order) (quoting *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002)).

Alpha thus is a necessary party because the issue of whether Alpha validly terminated Mr. Luck for cause under the Employment Contract, to which the Guaranty applies, must be resolved, and Alpha's absence in this action "impede[s] [its] ability to protect" its "interest

14

relating to the subject of the action." *See* Fed. R. Civ. P. 19(a)(1)(B)(i); *Mastercard*, 471 F.3d at 386 ("[B]ecause the absent non-party was a party to the contract at issue, its ability to protect its interest in that contract would have been seriously impaired if it were not made a party to the action." (citing *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980)).

Additionally, under Rule 19(b), Alpha is indispensable because "a party to a contract at issue 'is the paradigm of an indispensable party.'" *Mazzio v. Kane*, No. 14-CV-616 (ARR) (MDG), 2014 WL 2866040, at *7 (E.D.N.Y. June 24, 2014) (quoting *Travelers Indem. Co. v. Household Int'l Inc.*, 775 F. Supp 518, 527 (D. Conn. 1991)); *see also Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."). Alpha cannot properly protect its interests as a non-party namely because it is a separate legal entity with possibly differing defenses and counterclaims from Mr. McMahon as guarantor, and Alpha cannot now seek to protect its interest because it is currently in bankruptcy proceedings. *See In re Alpha Entm't LLC*, No. 20-10940 (Bankr. D. Del. Apr. 13, 2020) (Alpha's bankruptcy proceedings).

Because Alpha is in bankruptcy proceedings, under 11 U.S.C. § 362(a)(1), an automatic stay of judicial proceedings for bankruptcy petitions filed under 11 U.S.C. §§ 301, 302, or 303 is required. 11 U.S.C. § 301 covers voluntary bankruptcy petitions. The automatic stay "prevents the commencement or continuation, after a bankruptcy petition has been filed, of lawsuits and proceedings to recover a claim against the debtor that arose before the filing of the petition." *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 516 (2d Cir. 1998) (citing 11 U.S.C. § 362(a)); *see also Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) ("[A]n answer that asserts

a counterclaim against a plaintiff who becomes a bankruptcy debtor is an 'action or proceeding against the debtor' within the meaning of § 362(a)(1), notwithstanding the fact that the plaintiff initiated the lawsuit."). "In determining whether an action is 'against the debtor,' [the court] look[s] to the debtor's status 'at the time of the original proceeding,' not to 'which party is ahead at a particular stage in the litigation.'" *In re Haworth*, 356 F. App'x 529, 531 (2d Cir. 2009) (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)).

In any event, "'the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (citations omitted) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing *Landis*, 299 U.S. at 254)); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.") (citations omitted); *Hicks v. City of N.Y.*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003) ("It is well established that district courts have discretionary authority to stay a case when the interests of justice so require." (citations omitted)).

Although Mr. Luck argues that the stay should not be applied to Mr. McMahon's case because "[t]here is no adverse consequence to Alpha if Luck prevails," Pl.'s Reply at 16 n.6, for the reasons discussed above, the Court disagrees. Moreover, as Mr. McMahon rightly points out, "if the Court ruled in McMahon's favor and found that the [Employment] Contract was validly terminated, then Luck could attempt to pursue an action against Alpha and re-litigate the same issues to Alpha's detriment." Def.'s Opp'n at 17.

16

Because it would be efficient and in the interests of justice to apply the stay to this litigation brought against Mr. McMahon, the stay will apply to this case. *See Dietz*, 136 S. at 1892 (noting a court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases").

Accordingly, the Court will stay the case until Alpha can be joined as an indispensable party, pending the resolution of the bankruptcy proceedings

### B. Prejudgment Remedy

Because the case is stayed, the Court will not address Mr. Luck's motion for prejudgment remedy at this time, but will instead deny the motions for prejudgment remedy and disclosure of assets without prejudice to renewal.

### IV. CONCLUSION

For the reasons explained above, the Court **STAYS** the case until Alpha can be joined as an indispensable party to the action and **DENIES without prejudice** Mr. Luck's motions for prejudgment remedy and disclosure of assets.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of June, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge