UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK, | : | CASE NO. 3:20-cv-00516-VAB |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON and ALPHA ENTERTAINMENT LLC, | : | |
| | : | |
| Defendants. | : | DECEMBER 10, 2020 |

## DEFENDANTS' MEMORANDUM FOR DISCOVERY CONFERENCE

Pursuant to the Court's Chambers Practices, Defendants Vincent K. McMahon ("McMahon") and Alpha Entertainment LLC ("Alpha") (collectively, "Defendants") submit this memorandum in advance of the Discovery Conference scheduled for December 17, 2020. For the reasons set forth below, the Court should compel Plaintiff Oliver Luck ("Luck") to provide the passcode for the iPhone owned by Alpha and issued to Luck solely for his business use as Commissioner and CEO of the XFL and order that the iPhone be provided to the expert retained by Defendants for forensic imaging and analysis. Despite Defendants' efforts to resolve this issue, Luck has repeatedly stated that he will not provide the passcode to Alpha's iPhone.

## I.    Luck Is Legally Obligated to Disclose the Passcode to Alpha's iPhone.

Under Connecticut law, which governs Luck's Employment Contract, Luck is *legally obligated* to disclose the passcode to *Alpha's* iPhone. *See* Conn. Gen. Stat. § 31-40x(c)(1) (requiring "an employee or applicant provide such employer with a user name and password, password or any other authentication means for accessing" any "electronic communications device supplied or paid for, in whole or in part, by such employer.").

## II.   The Passcode to Alpha's iPhone Is Necessary to Obtain Relevant Evidence.

Luck must provide the passcode for *Alpha's* iPhone because Defendants are entitled to have *Alpha's* iPhone forensically imaged and examined by their own expert and to examine the full contents of the iPhone. *See* Fed. R. Civ. P. 34(a)(1) (authorizing a party or its representative to "inspect, copy, test, or sample" any "electronically stored information" or "designated tangible things"). Defendants do not have to rely on the forensic image of *Alpha's* iPhone made by Luck's expert and are not limited to reviewing only the selective contents from *Alpha's* iPhone that Lucks deems relevant enough to produce. The *full contents* of the iPhone are critically important to Luck's claims, Defendants' defenses, and Alpha's counterclaims in this case for several reasons.

1

*First*, the full contents of the iPhone are critical to establishing that Luck violated applicable XFL technology policies and therefore breached his Employment Contract with Alpha and was properly terminated for cause under that contract. Both the XFL Employee Handbook & Code of Conduct—a policy promulgated and signed by Luck himself and distributed to all employees—and the XFL Technology Acceptable Use Policy provided:

> All XFL Technology is the property of the XFL. ***Use of such XFL Technology is to be used for XFL related business only; users must not store or transmit any non-business-related files, including but not limited to personal data*** such as documents, spreadsheets, reports, presentations, images, videos or music files, databases and application source code.

Ex. A at 15 (emphasis added); Ex. B at 1 (emphasis added). XFL Technology included the company-issued iPhone that Luck used to make phone calls, send text messages, and store and transmit emails and documents. Luck already has admitted using Alpha's iPhone "for both business and personal purposes" but is attempting to conceal the full extent of his violations of the XFL's technology policies. (ECF No. 71 at 5-6.) Indeed, Luck claims that he did not violate these policies because his use of the iPhone reflected an exercise of "good judgment" that was "in the best interests of the XFL." (*Id.*) Defendants are entitled to test these assertions through a forensic examination and analysis of the iPhone conducted by their own expert.

Forensic examination and analysis of the full contents of Alpha's iPhone by Defendants' own expert is necessary for both qualitative and quantitative reasons.[1] Defendants are entitled to examine the full contents of the iPhone to show the range of non-XFL related matters for which Luck used the iPhone—including *transaction of business unrelated to the XFL*. Defendants also are entitled to review the full contents of the iPhone to show the *extent* to which Luck used it for non-XFL related matters as compared to XFL related matters. And Defendants are entitled to

---

[1] A forensic examination will reveal emails sent and received by Luck, text messages, call logs, and calendar entries.

examine the full contents of the iPhone to show the timing of Luck's activities—including whether his involvement in non-XFL related matters interfered with the conduct of XFL related business. The passcode to the iPhone is necessary to unlock this evidence and conduct such an analysis. Luck's refusal to provide it conceals the nature and full extent of his violations of XFL policies.

*Second*, the full contents of Alpha's iPhone are relevant to showing that Luck was properly terminated for cause under his Employment Contract because he grossly neglected his duties after March 13, 2020—when Luck effectively abandoned his responsibilities as XFL Commissioner and CEO and returned home to Indiana despite the existential threat to the league posed by the COVID-19 pandemic. Examination of the data on the iPhone will show Luck's activities during this critical time period when he was not in the office and demonstrate that he failed to "devote substantially all of his business time to the performance of his duties to the XFL" as required by his Employment Contract. (ECF No. 57, Ex. 1 at 1.)

*Third*, the full contents of Alpha's iPhone are relevant to showing that Luck was properly terminated for cause under his Employment Contract because he failed to comply with the XFL's player personnel policy and McMahon's directives. Examination of the data on the iPhone is relevant to establishing Luck's knowledge of the XFL's policy and his violations of that policy by hiring Antonio Callaway and failing to terminate him in accordance with McMahon's directives.

*Fourth*, forensic imaging and analysis of the iPhone by Defendants' expert is necessary to preserve its contents and determine whether Luck has deleted or altered relevant evidence. In its April 9, 2020 letter terminating Luck for cause, Alpha advised Luck that he was "in possession of a phone which is owned by Alpha which should be returned to the company." (ECF No. 57, Ex. 2 at 2.) Rather than promptly complying with this directive, Luck's counsel contacted Alpha's bankruptcy counsel to ask whether XFL policies prohibited his personal use of the iPhone before

he returned it to Alpha. Ex. C. In addition to demonstrating Luck's ignorance of the very policies that he established and was responsible for enforcing, Luck's inquiry and his delay in returning the iPhone to Alpha calls into question whether he deleted or modified data to conceal the full extent of his violations. Defendants' counsel inquired whether Luck deleted or erased any information from the iPhone before providing it to his expert and returning it to Alpha, but received no response. Luck's refusal to answer these questions has only heightened concerns that data may have been deleted or wiped from the iPhone. Such concerns can only be investigated through a forensic analysis conducted by Defendants' own expert.[2]

## III. Luck Has No Basis for Refusing to Provide the Passcode to Alpha's iPhone.

During meet and confer discussions, Luck offered no justification for his refusal to comply with Connecticut law and provide the passcode other than making vague claims that the iPhone contains unspecified "private and confidential" materials. (ECF No. 101 at 6.) That very argument establishes that Luck failed to follow the specific policy governing its use which he promulgated.

*First*, the iPhone is *owned by Alpha* and is *Alpha's property*—it is not Luck's phone.

*Second*, Connecticut law requires employees to provide passcodes for accessing employer-issued devices to employers such as Alpha. *See* Conn. Gen. Stat. § 31-40x(c)(1).

*Third,* the applicable XFL technology policies that Luck established and was responsible for enforcing make clear that Alpha could monitor the use of XFL devices and that employees had *no expectation of privacy* in the use of those devices:

> All XFL Technology and the information, materials, and data produced, stored, transmitted or processed thereon are the property of the XFL**.** ***Employees should have no expectation of privacy in their use of these systems.***

---

[2] Prompt forensic imaging of the iPhone is also necessary to ensure that settings on the iPhone do not lead to the automatic deletion or modification of relevant data.

> All users of XFL Technology which include all employees, temporary staffing, freelancers and consultants are subject to auditing and monitoring by authorized personnel. Monitoring of such services include, but is not limited to usage of computer, network and systems, Internet usage, email, instant messaging, voice and video services, data access, storage and transmission, databases, applications and 3rd party cloud service providers.

Ex. A at 15 (emphasis added); Ex. B at 3 (emphasis added). Luck therefore cannot claim any valid privilege or privacy interest in the contents of the iPhone owned and issued by Alpha. *See Teran v. Mut. Sec. Credit Union*, No. 3:16-CV-00466, 2017 WL 11477128, at *4 (D. Conn. Sept. 29, 2017) (Bryant, J.) (holding that employee emails on an employer's computer were not protected because the employer's policy "expressly stated that computer files and the email system furnished to employees were company property, and that computer usage and files were subject to monitoring without exception"); *see also Rissetto v. Clinton Essex Warren Washington Bd. of Coop. Ed. Servs.*, No. 8:15-CV-720, 2018 WL 3579862, at *6 (N.D.N.Y. Jul. 25, 2018) ("[T]he majority of courts have accorded great weight to the existence of an employer's computer usage policy, regardless of whether the employer engages in actual monitoring.") (collecting cases).

Although courts have sometimes limited forensic examinations of *personal* devices owned by individual employees to protect *irrelevant* personal information, such cases have no application here because (i) the iPhone is *not* Luck's personal device—it is Alpha's property and its use is subject to monitoring by Alpha, and (ii) any personal information on the iPhone is *not* irrelevant—it is critical to demonstrating the nature and extent of Luck's violations of XFL policies and to refuting Luck's own assertions in this case.

Accordingly, the Court should order Luck to disclose the passcode for the iPhone and order that the iPhone be provided to Defendants' expert so that it can be forensically imaged and its full contents can be reviewed by Defendants.

DEFENDANTS VINCENT K. MCMAHON
and ALPHA ENTERTAINMENT LLC

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt
Curtis B. Krasik
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

## **CERTIFICATION OF SERVICE**

I hereby certify that, on December 10, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)