**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK, | : | CASE NO. 3:20-cv-00516-VAB |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON and ALPHA | : | |
| ENTERTAINMENT LLC, | : | |
| | : | |
| Defendants. | : | JANUARY 8, 2021 |

**DEFENDANTS' MEMORANDUM REGARDING DISCOVERY DISPUTES**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 5

ARGUMENT ............................................................................................................................. 8

I.    The Proper Scope of Discovery ................................................................................... 9

    A.    This Court's Prior Decision .............................................................................. 9

    B.    Luck's Employment Contract ........................................................................... 9

    C.    Grounds for Luck's Termination for Cause .................................................... 10

II.    Discovery Regarding Luck's Violation of XFL Policy and McMahon's Directives by Hiring Antonio Callaway. ...................................................................... 11

    A.    Circumstances Constituting Cause ................................................................. 11

    B.    Defendants' Response to Luck's Discovery Requests .................................... 12

    C.    The Full Contents of Alpha's Phone Are Central to this Issue ...................... 13

II.    Discovery Regarding Luck's Failure to Follow McMahon's Directive to Terminate Antonio Callaway .................................................................................... 13

    A.    Circumstances Constituting Cause ................................................................. 13

    B.    Defendants' Response to Luck's Discovery Requests .................................... 14

    C.    The Full Contents of Alpha's Phone Are Central to this Issue ...................... 14

III.    Discovery Regarding Luck's Violations of the XFL Technology Policies .............. 14

    A.    Circumstances Constituting Cause ................................................................. 14

    B.    Defendants' Response to Luck's Discovery Requests .................................... 15

    C.    The Full Contents of Alpha's Phone Are Central to this Issue ...................... 16

    D.    Luck's Arguments for Preventing Defendants from Accessing and Reviewing the Full Contents of Alpha's iPhone Lack Merit. ...................... 22

        1.    Luck's Proposed Stipulation Is Insufficient ...................................... 22

        2.    Luck's Production of Selective Contents from Alpha's iPhone is Insufficient ........................................................................................ 23

        3.    Luck Has No Privilege or Privacy Interest in the Contents of Alpha's iPhone ................................................................................... 24

        4.    Luck's Argument Regarding Notice and Cure Is Improper ............. 27

        5.    Luck's Contract Interpretation Arguments Are Improper ................ 29

IV.    Discovery Regarding Luck's Gross Neglect of His Duties After March 13, 2020 ............................................................................................................................ 30

    A.    Circumstances Constituting Cause ................................................................. 30

    B.    Defendants' Response to Luck's Discovery Requests .................................... 30

C. The Full Contents of Alpha's Phone Are Central to this Issue..................... 31

IV. Luck's Discovery Requests Seek Disclosure of Irrelevant Information and Would Impose Undue Burden and Expense on Defendants..................... 31

 A. Documents Regarding Luck Unrelated To The Bases For His Termination..................... 32

 B. Documents Regarding The Actions of McMahon and Other XFL Employees..................... 33

 C. Documents Regarding WWE ..................... 36

 D. Documents Regarding the XFL's Financial Performance..................... 37

CONCLUSION..................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernhard-Thomas Building Sys, LLC v. Weitz Co., LLC,*
No. 3:04-CV-1317, 2011 WL 3586061 (D. Conn. Aug. 16, 2011) ........................................28

*Bullard v. Wastequip Manufacturing Co. LLC,*
No. CV1401309, 2015 WL 12766467 (C.D. Cal. Apr. 14, 2015)...........................................34

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
575 U.S. 768 (2015)...............................................................................................................26

*ESPN, Inc. v. Office of Comm'r of Baseball,*
76 F. Supp. 2d 383, 409 (S.D.N.Y. 1999) .............................................................................18

*Grand Light & Supply Co. v. Honeywell, Inc.,*
771 F.2d 672 (2d Cir. 1985)...................................................................................................27

*Hernandez v. Saybrook Buick GMC, Inc.,*
No. 3:20-CV-00438, 2020 WL 7137417 (D. Conn. Dec. 4, 2020) ........................................26

*Hybrid Athletics, LLC v. Hylete, Inc.,*
No. 3:17-CV-1767, 2019 WL 6317953 (D. Conn. Nov. 26, 2019) .................................20, 21

*Learning Care Grp, Inc. v. Armetta,*
315 F.R.D. 433 (D. Conn. 2016) ...........................................................................................21

*Luttinger v. Rosen,*
164 Conn. 45 (1972) ..............................................................................................................28

*Major Oldsmobile, Inc. v. General Motors Corp.,*
No. 95-7595, 1996 WL 280452 (2d Cir. May 17, 1996).........................................................34

*NCA Investors Liquidated Trust v. Dimenna,*
No. 3:16-CV-156, 2019 WL 2720746 (D. Conn. June 27, 2019) ..........................................21

*Rissetto v. Clinton Essex Warren Washington Board of Cooperative
Educational Services,*
No. 8:15-CV-720, 2018 WL 3579862 (N.D.N.Y. Jul. 25, 2018) ...........................................25

*Saluja v. Local 1199 United Healthcare Workers East,*
No. CV 06-5051, 2007 WL 3232475 (E.D.N.Y. Nov. 1, 2007)..............................................34

*Semac Electric Co. v. Skanska USA Building Inc.,*
195 Conn. App. 695 (2020) ..............................................................................................27, 28

*Terán v. Mutual Security Credit Union*,
    No. 3:16-CV-00466, 2017 WL 11477128 (D. Conn. Sept. 29, 2017) ...................................25

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
    164 F.3d 619 (2d Cir. 1998) ........................................................................................35

*Wells Fargo Bank, N.A.Trustee v. Konover*,
    No. 3:05-CV-1924, 2010 WL 11561491 (D. Conn. June 22, 2010) .......................................20

*WHS Sales Corp. v. Cinmar, L.P.*,
    No. 06 CIV. 1938, 2007 WL 486603 (S.D.N.Y. Feb. 13, 2007)............................................27

**Statutes**

Conn. Gen. Stat. § 31-40x..............................................................................................26

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................31

Fed. R. Civ. P. 34 .......................................................................................................23

Fed. R. Civ. P. 34, Advisory Committee Notes, 2015 Amendment ...............................................13

Fed. R. Civ. P. 37 .........................................................................................................8

Pursuant to the Court's Order entered on December 17, 2020 (ECF. No. 111), Defendants Vincent K. McMahon ("McMahon") and Alpha Entertainment LLC ("Alpha") (collectively, "Defendants") respectfully submit this memorandum regarding discovery disputes in advance of the discovery conference scheduled for January 12, 2020.

## PRELIMINARY STATEMENT

This is a simple case.  Oliver Luck ("Luck") had a contract to serve as the CEO and Commissioner of the XFL, a spring football league conceived and financed largely by McMahon. Under that contract, Luck received an annual salary of $5 million and, if still employed on June 20 of each year, a bonus of $2 million.  Luck's contract obligated him to devote substantially all of his business time to the performance of his duties to the XFL and to follow any applicable XFL policies or directives.  Under his contract, Luck agreed that he could be terminated at any time with or without cause.  If terminated with cause, Luck was entitled only to previously accrued salary and any vested employee benefits.  Significantly, even if terminated without cause, Luck's right to any severance payments, including the aggregate amount of base salary and annual bonus otherwise payable, was expressly contingent upon several conditions, including "the absence of circumstances that would constitute Cause."  (ECF No. 94-1 at 3-4.)

In the midst of the XFL's inaugural season, the COVID pandemic caused the cancellation of the league's schedule and eliminated its major sources of revenue—ticket sales and merchandise sales at games.  Despite this sudden loss of revenue, Alpha remained responsible to pay the continued costs of operation, including player and coach salaries, stadium lease costs, and the substantial monies to Luck to guide the XFL through the crisis and the threat to its very existence.

On March 13, 2020, Luck, however, left town and went home without ever advising McMahon that he was doing so and never returned in the ensuing weeks when McMahon and other

staff members dealt with the crisis and attempted to determine if there was a viable path forward for the league.  Luck did not even make a single phone call to McMahon during this period, did not attend conference calls on pressing XFL business matters, and otherwise largely disengaged from the XFL.  The evidence and documents produced by Defendants will show that Luck instead used his Alpha-issued phone to conduct business with other entities in violation of his contract and XFL policy instead of performing his XFL duties.   Indeed, Luck granted interviews with newspapers in West Virginia during this period telling them he did not have much to do and was spending his time taking long bike rides.  (Ex. 1.)

Luck's actions during this crisis compounded dissatisfaction with the performance of his contract at the onset of the season when Luck consistently ignored the XFL's policy and McMahon's plain directives not to sign players with bad reputations because of drug histories, sexual assaults, criminal arrests, and other misconduct.  Contrary to filings Luck has made with this Court, Luck was acutely aware of this XFL policy, which McMahon regarded as central to building a brand of quality players with good character who could be marketed to the public. Defendants will produce reams of information showing that Luck knew of this policy and that McMahon specifically told him not to sign several players with bad reputations before Luck once again not only ignored those directives but agreed to pay Antonio Callaway a large signing bonus. Defendants will produce all documents regarding Luck's failure to comply with these directives, including documents proving that he deliberately misled McMahon by not telling him specific information that had been brought to Luck's attention about Callaway's history by other executives who knew that Callaway did not qualify to be hired under the XFL's policy.  When McMahon was shown a news article which reported on the league hiring Callaway, he specifically told Luck to terminate Callaway immediately.  In an initial declaration filed with this Court that was misleading

in multiple material respects, Luck admitted that McMahon gave him this instruction and falsely suggested that he carried out McMahon's instruction.  In a more recent declaration in support of his renewed prejudgment remedy application, Luck changed his story by yet another false version of events to conceal his failure to follow McMahon's directives.  Defendants will produce all records in their possession proving that Luck did not carry out that directive and the severe financial consequences of that failure for Alpha.

As a result, Alpha exercised its unqualified right to terminate Luck's contract and did so prior to the date a $2 million bonus payment otherwise would have been due.  On April 9, 2020, Alpha sent Luck a letter advising him that the termination was for cause, and although not required to do so, provided Luck with what was expressly stated to be a non-exhaustive list of reasons constituting cause.

In the termination letter, Alpha also demanded that Luck return a company owned and issued iPhone.  Luck refused to do so and has since admitted that he continued to use the phone for obvious non-XFL business purposes in violation of the very XFL technology policies that he promulgated, while affirmatively concealing the contents of the phone from Defendants.  In furtherance of his deceptive behavior, Luck (who has a law degree), through his counsel, continuously represented to Defendants' counsel, Alpha's bankruptcy counsel, and this Court that no data had been deleted from the phone after being terminated.  After this Court required those representations to be set forth in a spoliation stipulation, Luck only recently admitted that data had in fact been deleted from the phone after months of representations that all data had been preserved.  Thus, Luck has now admitted destruction of the very evidence showing non-XFL business use of the phone, an independent reason constituting cause, yet he continues to conceal the full nature and extent of his violations of the policies regarding the use of that phone.

Accordingly, once the simple nature of this case is understood, Luck must show that the above actions do not constitute "cause" as defined in his contract.  In a case where the issue is whether Luck committed acts constituting cause, the focal point of the case and discovery must be on Luck's actions and his actions alone.  Because focus on those facts does not favor Luck, he has attempted to create a punitive discovery burden on Defendants and a non-party, World Wrestling Entertainment, Inc. ("WWE"), about irrelevant matters to distract attention from his acts and to make this case very expensive to litigate.  Defendants therefore ask the Court to confine discovery within its proper bounds and on the narrow and specific acts of Luck that Defendants contend were and are "cause" under his contract.

## ARGUMENT

Defendants request that the Court overrule Luck's objections to Defendants' discovery requests seeking the passcode and access to the full contents of Alpha's iPhone so that they can conduct a forensic review and examination of those contents.  (Ex. 2, Alpha's IROG 1; Ex. 3, McMahon's IROG 1; Ex. 4, Alpha's RFPs 1-2; Ex. 5, McMahon's RFPs 1-2.)  As explained in detail below, the full contents of Alpha's iPhone are essential to establishing each of the circumstances constituting cause for Luck's termination.[1]

Defendants further request that the Court sustain their objections to Luck's improper discovery requests seeking (i) all documents concerning Luck regardless of whether they relate to

---

[1] Defendants reserve the right to later challenge Luck's objections to Defendants' other discovery requests, including his failure to admit matters that are undisputed based on documents available to Luck (*see, e.g.,* Ex. 6, Alpha's RFAs 9-12, 54-56, 62-66), and to seek fees and expenses for proving such matters to be true.  *See* Fed. R. Civ. P. 37(c)(2) ("If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof.").

the bases for his termination, (ii) documents regarding the activities of McMahon and other XFL executives, (iii) documents regarding WWE—a *non-party* to this litigation, and (iv) documents regarding Alpha's financial condition.  As explained in detail below, such requests are irrelevant because they do not relate to the grounds for Luck's termination at issue in this case and would impose a wholly unnecessary and expensive discovery burden on Defendants that is not proportional to the needs of the case.

## I.        The Proper Scope of Discovery

The scope of discovery in this action is defined by whether there is "an absence of circumstances that would constitute Cause" under Luck's contract.  (ECF No. 94-1 at 3-4.)

### A.        This Court's Prior Decision

This Court held in its prior decision that Alpha was an indispensable party in this action and that, to prevail against McMahon, Luck "would have to establish that Alpha still had an obligation to him and breached that obligation under the Employment Contract."  (ECF No. 79 at 13.)  The Court therefore concluded that "***the issue of whether Alpha validly terminated Mr. Luck for cause under the Employment Contract***, to which the Guaranty applies, must be resolved." (*Id.* at 14 (emphasis added).)  Accordingly, this Court has already recognized that the central focus of this case is on whether Alpha had cause to terminate Luck under the Employment Contract. The fact that Luck's right to any additional monies under that contract is also expressly conditioned on the absence of circumstances constituting cause only reinforces that decision.

### B.        Luck's Employment Contract

On May 30, 2018, Luck entered into the Employment Contract with Alpha.   The Employment Contract provided that Luck was to serve as the "Commissioner and CEO" of a new professional football league known as the XFL and was responsible for "all football and business-

related operations" of the XFL.  (ECF No. 94-1 at 1.)  The Employment Contract required Luck to "devote ***substantially all*** of his business time to the performance of his duties to the XFL" and provided that his other activities must "***not interfere*** with the performance of his duties to the XFL."  (*Id.* (emphasis added).)  The Employment Contract provided that, in exchange for the performance of Luck's obligations, Alpha would pay Luck a Base Salary of $5 million per Contract Year and a "Guaranteed Annual Bonus" of $2 million if he remained employed "on the last day of each Contract Year," which was June 30 of each year.  (*Id.* at 2.)

The Employment Contract provided that Luck's employment "may be terminated by Alpha ***at any time***, with or without cause."  (*Id.* at 3 (emphasis added).)  It provided that Alpha had "Cause" to terminate Luck's employment for several reasons, including Luck's "gross negligence of his duties (other than due to illness or disability), ***including an intentional failure to follow any applicable XFL policies or directives***."  (*Id.* (emphasis added.))  The Employment Contract stated that Alpha was not required to provide Luck with prior written notice or an opportunity to cure prior to his termination "[i]f the act or omission that would otherwise constitute Cause hereunder is not reasonably susceptible to cure."  (*Id.*)  Moreover, the contract expressly conditioned the receipt of additional payments by Luck following any termination on "***the absence of circumstances that would constitute Cause***" with no qualifier as to whether the circumstances constituting cause were susceptible to cure.  (*Id.* at 3-4 (emphasis added).)

### C.   Grounds for Luck's Termination for Cause

On April 9, 2020, Alpha sent Luck a letter notifying him that his Employment Contract was being "terminated, effectively immediately, for cause."  (ECF No. 94-1 at 2.)  The termination letter stated that it "is not intended to be, nor is it, an exhaustive and comprehensive statement of all facts justifying Alpha's decision to terminate your contract for cause.  Should you decide to

challenge or contest this termination as lacking cause, we reserve all rights to offer all evidence demonstrating cause to terminate." (*Id*.)

Defendants contend in this action that Alpha had cause to terminate Luck for the following reasons: (i) Luck violated the XFL's player personnel policy and McMahon's directives by hiring Antonio Callaway in the first place; (ii) Luck disregarded McMahon's directives by failing to immediately terminate Antonio Callaway; (iii) Luck repeatedly violated the XFL's technology policies; and (iv) Luck grossly neglected the performance of his duties after March 13, 2020. The same actions also form the basis for Alpha's counterclaims against Luck. (ECF No. 126.) Accordingly, these actions necessarily frame the proper scope of discovery in this case.[2]

As described below, Defendants have agreed to produce all documents in their possession regarding each of these circumstances constituting cause for termination. Luck, however, has attempted to block essential discovery regarding these circumstances by seeking to prevent Defendants from accessing the full contents of Alpha's own iPhone.

## II. Discovery Regarding Luck's Violation of XFL Policy and McMahon's Directives by Hiring Antonio Callaway.

### A. Circumstances Constituting Cause

Alpha properly terminated Luck for cause for violating the XFL's player personnel policy and McMahon's directives by hiring Antonio Callaway. XFL policy required background checks for all potential players in the league and McMahon's approval to hire any players who had bad reputations due to questionable or problematic backgrounds—a policy that was critically important to the development of the XFL's brand. Luck acknowledged this policy in his own public

---

[2]  Given that Luck has already admitted using his Alpha-issued phone for reasons prohibited by XFL policies he promulgated and continues to conceal the full nature and extent of his violations, it is virtually certain that forensic examination of that phone will supplement existing grounds for cause and demonstrate additional cause.

statements.  Luck also has now admitted that when he sought to hire players with a history of drug problems or sexual assault allegations and disclosed those issues to McMahon, McMahon instructed Luck not to hire them because they did not meet the XFL's policy.  (Ex. 6, Alpha's RFAs 6, 7-18.)  Nevertheless, Luck proceeded to hire Antonio Callaway, a player that Luck knew had a lengthy history of similar misconduct, while affirmatively concealing that history from McMahon in violation of the XFL's policy.  Indeed, Luck has admitted that he never disclosed Callaway's history of drug problems and sexual assault allegations to McMahon when he advised McMahon that he had hired Callaway.  (Ex. 6, Alpha's RFAs 24-26, 38-30.)  Luck also misled other XFL executives who questioned Luck's decision to hire Callaway into believing that he had told McMahon about Callaway's history.[3]

## B. Defendants' Response to Luck's Discovery Requests

Defendants have agreed to produce all non-privileged documents found after a reasonable search regarding Luck's failure to comply with the XFL player personnel policy and McMahon's directives by hiring Antonio Callaway.  Specifically, Defendants will produce:

- All documents regarding the XFL's policy not to hire players with bad reputations due to questionable or problematic backgrounds.

- All documents showing Luck's knowledge of the XFL's player personnel policy (including Luck's knowledge that the XFL policy for hiring players was not limited to the criteria for disqualification set forth in his declarations filed with the Court).

- All documents showing Luck's knowledge that Antonio Callaway did not meet the XFL's player personnel policy (including Luck's knowledge of Callaway's history of misconduct and McMahon's instructions to Luck not sign other players with similar allegations misconduct against them).

- All documents showing Luck's hiring of Antonio Callaway in violation of the XFL's policy and McMahon's directives (including Luck's failure to disclose to

---

[3] A more plenary display of the actual evidence on these issues is contained in the Alpha's application for a prejudgment remedy.  (ECF No. 128.)

McMahon Callaway's lengthy history of misconduct before hiring him and Luck's misleading of XFL executives who questioned Luck's decision).

Defendants therefore have agreed to produce all documents in their possession relating to the circumstances constituting cause for Luck's termination on this ground.[4]

### C.      The Full Contents of Alpha's Phone Are Central to this Issue

Examination of the full contents of Alpha's iPhone is central to this ground for termination because the phone is likely to contain text messages and additional evidence showing Luck's knowledge of the XFL's policy and hiring of Antonio Callaway in violation of the policy.

## II.     Discovery Regarding Luck's Failure to Follow McMahon's Directive to Terminate Antonio Callaway

### A.      Circumstances Constituting Cause

Alpha properly terminated Luck for cause for disregarding McMahon's directives by failing to immediately terminate Antonio Callaway.  Although Luck's declarations filed with this Court are false and misleading in material respects, Luck admits that McMahon directed him to terminate Callaway and that he did not terminate Callaway before Callaway suffered a knee injury in practice.  (ECF No. 59 ¶ 14; ECF No. 116 ¶ 14.)  Luck's failure to follow McMahon's directive caused damages to Alpha because it required Alpha to honor Callaway's contract, including payment of a $125,000 signing bonus, and to pay for Callaway's medical expenses.

---

[4] Defendants' responses to Luck's requests for production fully complied with Rule 34 by specifically stating the limits that have controlled their search for relevant and responsive materials.  *See* Fed. R. Civ. P. 34, Advisory Committee Notes, 2015 Amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.").

### B.     Defendants' Response to Luck's Discovery Requests

Defendants have agreed to produce all non-privileged documents found after a reasonable search regarding Luck's failure to follow McMahon's directive to immediately terminate Antonio Callaway.  Specifically, Defendants will produce:

- All documents and communications regarding Antonio Callaway.

- All documents regarding the damages caused by Luck's failure to promptly terminate Antonio Callaway, including Callaway's contract with the XFL and the costs incurred by Alpha.

Defendants therefore have agreed to produce all documents in their possession relating to the circumstances constituting cause for Luck's termination on this ground.

### C.     The Full Contents of Alpha's Phone Are Central to this Issue

Examination of the full contents of Alpha's iPhone is central to this ground for termination because the phone likely contains evidence of Luck's failure to immediately terminate Callaway in accordance with McMahon's directive, including text messages and call logs that will be critical to refuting Luck's version of events in his declarations submitted with the Court.[5]

## III.   Discovery Regarding Luck's Violations of the XFL Technology Policies

### A.     Circumstances Constituting Cause

Luck also violated the XFL technology policy signed and promulgated by Luck himself in his capacity and Commissioner and CEO.  Both the XFL Employee Handbook & Code of Conduct, signed by Luck, and the XFL Technology Acceptable Use Policy provided:

> All XFL Technology is the property of the XFL.  ***Use of such XFL Technology is to be used for XFL related business only; users must not store or transmit any non-business-related files, including but not limited to personal data*** such as documents, spreadsheets, reports, presentations, images, videos or music files, databases and application source code.

---

[5] Aside from the documents produced by Defendants and the contents of Alpha's phone, the only other relevant evidence on this issue will come from witness testimony.

(Ex. 7 at 15 (emphasis added); Ex. 8 at 1 (emphasis added)).  Luck was issued an iPhone by Alpha solely for use on XFL-related business.  Luck has already admitted using Alpha's iPhone "regularly and routinely, both for personal and work-related purposes" in "violation of XFL policy."[6]  (ECF No. 101 at 2; ECF No. 106 at 4.)  Luck also has admitted that he used his iPhone to send emails and transmit documents unrelated to the XFL's business and to perform work for other persons and entities while he was employed by Alpha.  (Ex. 6, Alpha's RFAs 47-52.)  Luck nevertheless has attempted to conceal the full nature and extent of his violations of the policy—including the extent to which he used Alpha's phone for other business purposes unrelated to the XFL—by refusing to disclose the passcode to the iPhone and seeking to block Defendants' access to the full contents of the iPhone.

### B.      Defendants' Response to Luck's Discovery Requests

Defendants have agreed to produce all non-privileged documents found after a reasonable search regarding Luck's violation of the XFL technology policies.  Such documents include:

- Copies of the XFL Technology Use Policy and the XFL Employee Handbook & Code of Business Conduct promulgated by Luck.

- Emails in Alpha's possession reflecting Luck's violation of the XFL technology policy through use of Alpha's phone and computers for matters unrelated to XFL business, including transaction of other business unrelated to the XFL.

Defendants therefore have agreed to produce all documents in their possession establishing that Luck intentionally violated these policies.  Without access to the full contents of Alpha's iPhone,

---

[6] Despite previously admitting that his conduct violated the XFL's policy, Luck now refuses to acknowledge in response to requests for admission that he was required to adhere to the XFL's technology policies.  (Ex. 6, Alpha's RFAs at 40, 42.)  But the XFL's technology policies applied to "all employees" and Luck was indisputably an XFL employee.  (Ex. 7 at 17.)

however, Defendants cannot establish the full nature and extent of Luck's violations, which Luck has consistently attempted to conceal.

### C.       The Full Contents of Alpha's Phone Are Central to this Issue

Defendants are entitled to access the full contents of the Alpha's iPhone and to conduct a complete forensic examination and analysis of those contents to show (i) the nature of Luck's violations of the XFL technology policy (including the range of non-XFL matters for which Luck used the phone such as the transaction of other business unrelated to the XFL), (ii) the extent of Luck's violations (including the extent to which Luck used the phone for non-XFL related matters as compared to XFL related matters), and (3) the timing of Luck's activities (including whether they interfered with the conduct of business for the XFL in breach of his Employment Contract).

Forensic examination of the contents of the iPhone by Defendants and any backup copies is also necessary to assist in determining the nature and extent to which Luck deleted relevant evidence.  As set forth in detail below, *from the inception of this case*, Luck's lead Texas counsel has repeatedly misrepresented to Defendants' counsel, Alpha's bankruptcy counsel, and the Court that the full contents of the phone had been preserved and that nothing had been deleted.  Contrary to such representations, and only after entry of a court order concerning spoliation, Luck has now *admitted* that contents of the phone were deleted after he was terminated and before he provided the phone to his own expert and returned it to Alpha's bankruptcy counsel.

| DATE | EVENT |
|---|---|
| April 9, 2020 | Alpha notifies Luck that his contract was being terminated for cause and asks him to return the iPhone to Alpha.  (ECF No. 94-2 at 2.) |
| April 17, 2020 | Defendants' counsel asks Luck's counsel about returning the iPhone to Alpha and instructs Luck's counsel to ensure that the evidence on the iPhone is preserved.  (Ex. 9.) |
| April 20, 2020 | Luck's counsel states that he intends to discuss the return of the iPhone with Alpha's bankruptcy counsel and states: "***You can rest assured that Mr. Luck has taken steps to preserve evidence including texts on his phone.***"  (Ex. 10.) |

| DATE | EVENT |
|---|---|
| May 1, 2020 | Luck's counsel asks Alpha's bankruptcy counsel whether the XFL had a technology policy that prohibited personal use of the iPhone.  (Ex. 11.) |
| May 4, 2020 | Alpha's bankruptcy counsel sends Luck's counsel relevant portions of the XFL technology policy prohibiting personal use of the iPhone and asks Luck's counsel to confirm that he would be returning the iPhone "in an unaltered state." (Ex. 11.) |
| May 4, 2020 | Luck's counsel ignores Alpha's bankruptcy counsel's request for confirmation that the iPhone would be returned in an unaltered state and claims that "based on the case law I've read, Oliver had an expectation of privacy even with the policy." (Ex. 11.)  Luck's counsel has never identified any such case law. |
| May 4, 2020 | Defendants' counsel also provides Luck's counsel with the relevant portions of the XFL technology policy and states: "[T]he XFL phone in the possession of your client should be safeguarded against the deletion of anything on that phone, including anything he considers personal.  The phone itself is evidence in this case which we will at the appropriate time wish to examine and have examined by experts.  Please act accordingly." (Ex. 12.) |
| May 5, 2020 | Luck's counsel sends the iPhone to Alpha's bankruptcy counsel by FedEx. (Ex. 13.) |
| June 12, 2020 - June 14, 2020 | Defendants' counsel asks Luck's counsel three separate times whether the contents of Alpha's iPhone were preserved without any deletions.  (Ex. 14.) |
| June 14, 2020 | After ignoring Defendants' counsel questions, Luck's counsel finally responds:  ***"We have preserved all contents."***  (Ex. 14.) |
| Sept. 9, 2020 | Defendants' counsel sends a letter to Luck's counsel requesting the passcode to Alpha's iPhone to ensure the evidence on the phone is preserved.  (Ex. 15.) |
| Sept. 9, 2020 | Luck's counsel refuses to disclose the passcode to Alpha's iPhone and reiterates: *"**As I am sure you are aware, I previously advised Mr. McDevitt that we have already taken a forensic image of Mr. Luck's phone to preserve its contents for litigation**."* (Ex. 16.) |
| Sept. 17, 2020 | Defendants' counsel reiterates request for the passcode and again asks "whether any data was deleted or wiped from the phone prior to [Luck's] expert making a forensic image or prior to the time the phone was returned to Alpha's bankruptcy lawyer." (Ex. 17.) |
| Sept. 17, 2020 | Luck's counsel responds that he does not agree with Defendants' position regarding the passcode but does not answer the question about whether data was deleted from the iPhone.  (Ex. 18.) |
| Sept. 17, 2020 | In response to further inquiries regarding the preservation of the evidence on the iPhone, Luck's counsel states: ***"My client has already preserved the evidence.  So please refrain from making specious statements."***  (Ex. 19.) |

| DATE | EVENT |
|---|---|
| Dec. 7, 2020 | Luck's counsel writes to Defendants' counsel: ***"I want to make clear for the record that I previously told Mr. McDevitt and/or Alpha's bankruptcy counsel that Plaintiff's counsel retained a third party expert who imaged the contents of the iPhone, without deletion,  before it was sent to Alpha."*** (Ex. 20.) |
| Dec. 8, 2020 | In a Joint Motion for Discovery Conference filed with the Court, Luck's counsel proposes a "stipulation that Luck used the iPhone, regularly and routinely, both for personal and work-related purposes" in order to avoid disclosure of the passcode.  (ECF No. 101 at 2.)  Luck's counsel further represents to the Court:  ***"Luck's counsel previously advised Defendants' counsel and/or Alpha's bankruptcy counsel that it retained a third party expert who has already imaged the contents of Mr. Luck's iPhone and that no deletions have been made."*** (*Id.* at 6.) |
| Dec. 17, 2020 | During a discovery conference, the Court recognizes that there could be "spoliation issues" to the extent that "information was deleted" from the iPhone. (ECF No. 125 at 14-15.)  In response to such concerns, Luck's lead Texas counsel claims to be the most familiar with the status of the iPhone and represents to the Court: "***I have told opposing counsel since April that we have done a forensic image by a third-party expert and that all of the material has been maintained with no deletions***." (*Id.* at 12.) Luck's counsel reiterates to the Court that "we have imaged the phone" and ***"we have done nothing with the contents."*** (*Id.* at 19.)  Luck's counsel further states that Luck is willing to stipulate that no deletions were made to the contents of the phone:  "***And we will further agree -- and I believe we are essentially on the record, your Honor, so this is a representation to the Court by counsel.  We will further agree that we did nothing to delete any emails or contents or texts.  So the Court and opposing counsel can rest easy.***" (*Id.* at 20.)  Luck's counsel makes these misrepresentations to the Court while Luck himself, an attorney familiar with the consequences of making false representations to the Court, is present for the conference.  Luck does not correct his counsel's misrepresentations to the Court. |
| Dec. 17, 2020 | Based on the representations made by Luck's counsel, the Court directs the parties to "submit a proposed stipulation agreement regarding any potential spoliation of data on Mr. Luck's Alpha-issued cellphone by December 18, 2020." (ECF No. 111.) |

| DATE | EVENT |
|---|---|
| Dec. 18, 2020 | The parties do not agree on a stipulation because Luck refuses to stipulate that no data was deleted from the phone since receipt of his termination letter on April 9, 2020. To the contrary, Luck's counsel sends Defendants' counsel a proposed stipulation admitting for the first time that data was *in fact deleted* from the iPhone after receiving his termination letter and before sending it to Alpha's bankruptcy counsel nearly a month later. Specifically, Luck's proposed stipulation admits: (i) Luck *continued to use* Alpha's iPhone "in the ordinary course, including to receive text messages and telephone calls" even *after he was terminated from Alpha's employment* despite being directed to return the iPhone to Alpha in his termination letter, (ii) emails were deleted from Alpha's iPhone and some subset may have been *permanently deleted*; and (iii) *text messages were deleted* from Alpha's iPhone, including the contents of an entire text entire text thread (the contents of which are unknown to Defendants) before sending the iPhone to Alpha's bankruptcy counsel on May 5, 2020. (ECF No. 114-2.) |
| Dec. 20, 2020 | Luck's lead Texas counsel sends an off-the-record email communication to the Court acknowledging his misrepresentations: "I write to apologize to you and opposing counsel for statements I made during the discovery conference held on Thursday December 18, 2020. ***During the hearing, I erroneously represented to the Court that nothing had been deleted from Mr. Luck's iPhone prior to sending it to Alpha Entertainment, LLC's bankruptcy counsel on May 6, 2020. Previously, I made the same representation to counsel for Mr. McMahon.*** Until the end of the hearing, I believed that representation of fact to be accurate in all respects." (Ex. 21.) |
| Dec. 23, 2020 | The Court enters the following: "Due to the parties' failure to reach an agreement regarding the spoliation stipulation ordered by the Court, *see* ECF No. 111, and the misrepresentations or misunderstandings of Plaintiff's counsel at the Discovery Conference on December 17, 2020 as to the previous deletion of information on the Alpha-issued cellphone, the Court orders that Plaintiff's counsel obtain the passcode and provide it to Defendants' counsel by December 24, 2020 at 12:00 p.m. in order to properly preserve the evidence on the cellphone while the underlying merits of the passcode issue are considered." (ECF. No. 124.) |
| Dec. 23, 2020 | Luck's counsel provides the passcode to Alpha's iPhone to Defendants' counsel. |
| Dec. 28, 2020 | Defendants' expert takes custody of Alpha's iPhone from Alpha's bankruptcy counsel. |
| Dec. 29, 2020 | Defendants' expert makes forensic images of the iPhone and its SIM card using standard forensic tools and processes in order to preserve the information on the iPhone. |

Although Luck's lead Texas counsel has finally acknowledged his misrepresentations to Defendants' counsel and the Court, there has been no explanation for why such misrepresentations were repeatedly made since the inception of this case.  There are only three possible explanations: (i) Luck's counsel never even asked Luck whether any information was deleted from the phone but represented that nothing was deleted anyway, (ii) Luck was asked by his counsel whether any information was deleted from the phone and lied to his counsel, or (iii) Luck told his counsel that information was deleted from the phone and his counsel simply decided to misrepresent the facts. Although the most probable explanation is that Luck lied to his own counsel, each of these possibilities is troubling and will be a subject for further discovery.  *See Hybrid Athletics, LLC v. Hylete, Inc.*, No. 3:17-CV-1767, 2019 WL 6317953, at *5 (D. Conn. Nov. 26, 2019) (Bolden, J.) (imposing spoliation sanctions where plaintiff "has not offered a sufficient excuse or explanation for [plaintiff's] deletion of possibly relevant e-mails").

Equally troubling is Luck's attempt to minimize the significance of the misrepresentations made to Defendants' counsel and the Court by claiming that the information deleted from the phone involved a "family chat" and "junk-type" emails and texts.  (ECF No. 114-2.)  Indeed, Luck's most recent attempt to trivialize these misrepresentations is his claim that "his wife, Kathy Luck, deleted a text string" on Alpha's iPhone because "it included pictures of their then-5 month old granddaughter's 'dirty diaper.'"  (Ex. 22, Alpha's IROG 9(c).)  *First*, the deletion of *any* contents of Alpha's iPhone raises spoliation concerns because *any* evidence demonstrating that Luck used the phone for purposes unrelated to the XFL's business establishes a violation of the XFL's technology policies and therefore constitutes "cause" under his Employment Contract. *Second,* the fact that Luck allowed non-XFL employees, including his wife, to access the contents on Alpha's iPhone and to delete contents on Alpha's iPhone demonstrates a further violation of

the XFL's policies.   *Third,* Luck's text messages with his family members could contain information about XFL matters that would be relevant to the issues in this case.   *Fourth*, Luck's lengthy history of misrepresentations regarding whether any information was deleted from the phone calls into question his current representations about the nature and extent of the deletions that were actually made.   Defendants are not required to rely on Luck's representations regarding the extent of those deletions and are entitled to have their expert conduct a forensic examination and analysis of the entire contents of the phone and any backup copies in an effort to determine whether any other improper deletions were made.   *Fifth*, Luck's belated admission that materials on the phone that he considered to be personal were deleted raises the question of why Luck continues to vigorously oppose disclosure of the remaining full contents of the phone.   The only reasonable inferences from Luck's persistent efforts to conceal the contents of the phone from Defendants are that the phone contains information that is fatal to his case, that even more information was deleted than Luck now admits, or both.

Based on Luck's actions, Defendants reserve the right to seek spoliation sanctions against Luck at the appropriate time following completion of a forensic examination of the phone by their expert and development of a full record.   *See Hybrid Athletics,* 2019 WL 6317953, at *4–5 (Bolden, J.) (imposing sanctions in the form of an adverse inference instruction at the time of trial based on plaintiff's spoliation of evidence by deleting possibly relevant emails); *NCA Inv'rs Liquidated Tr. v. Dimenna,* No. 3:16-CV-156, 2019 WL 2720746, at *12 (D. Conn. June 27, 2019) (Bolden, J.) (awarding attorney's fees and costs as a sanction for plaintiff's spoliation of evidence by destroying documents and agreeing to consider further sanctions of an adverse jury instruction and dismissal at a later time); *Learning Care Grp, Inc. v. Armetta*, 315 F.R.D. 433, 437-39, 441 (D. Conn. 2016) (Bolden, J.) (observing that evidence from a technology expert would be useful

in examining spoliation issue and awarding reasonable costs and attorney's fees as a sanction for plaintiff's spoliation of evidence on laptop).

**D.    Luck's Arguments for Preventing Defendants from Accessing and Reviewing the Full Contents of Alpha's iPhone Lack Merit.**

Each of Luck's arguments for resisting disclosure of the passcode to Alpha's iPhone and preventing Defendants from accessing and reviewing its full contents lack merit.

**1.    Luck's Proposed Stipulation Is Insufficient**

Luck has argued that Defendants should not have access to the full contents of Alpha's iPhone because Luck has offered to stipulate that "Luck used the iPhone regularly and routinely, both for personal and work-related purposes." (ECF No. 101 at 2.) In reality, Luck's proposed stipulation is just another tact designed to conceal the full nature and extent of Luck's violations of the XFL's technology policies and is very misleading in its connotation.

*First*, Luck's proposed stipulation that Luck used Alpha's iPhone for "personal" purposes in violation of the XFL's technology policies is deliberately misleading. Luck's proposed stipulation conspicuously does not admit that he used the phone to conduct business with other entities unrelated to the XFL's business and reads as if he only used it for XFL business and to communicate with family members. Luck has now conceded in response to requests for admission that he used Alpha's iPhone to send emails, transmit documents, and perform work for other persons or entities while he was employed by Alpha (Ex. 6, Alpha's RFAs 50-52), but the extent to which he used the phone to do so remains unknown.

*Second*, Luck's proposed stipulation does not admit that his use of Alpha's iPhone for non-XFL related purposes constituted cause under his Employment Contract. Ignoring the plain language of the operative policies, Luck claims that his conduct merely establishes a "technical violation of XFL policy" and "does not concede that regular and routine use of the XFL-issued

iPhone constituted 'cause' to terminate his employment." (ECF No. 106 at 4.) Luck's refusal to make such concessions shows exactly why Defendants need access to the full contents of Alpha's iPhone—to demonstrate the full nature and extent of Luck's violations of XFL policy and why they did in fact constitute cause.

### 2. Luck's Production of Selective Contents from Alpha's iPhone is Insufficient

Luck also has argued that Defendants should not have access to the full contents of Alpha's iPhone because Luck has "retained a third party expert who has already imaged the contents" and that Luck "will provide the appropriate responsive contents of the iPhone to legitimate Requests for Production for which there are no objections." (ECF No. 101 at 6.)

*First*, Luck's argument is backwards—Luck should not be permitted to access and review the full contents of *Alpha's* property while simultaneously denying Alpha the right to access and review the full contents of *its own* property.

*Second,* Luck's argument ignores that Defendants are entitled to have *Alpha's* iPhone forensically examined by their own expert and to review its full contents. Defendants do not have to rely on the forensic image of Alpha's iPhone made by Luck's expert and are not limited to reviewing only the selective contents from Alpha's iPhone that Lucks deems relevant enough to produce after certain contents have been deleted. *See* Fed. R. Civ. P. 34(a)(1) (authorizing a party or its representative to "inspect, copy, test, or sample" any "electronically stored information" or "designated tangible things").

*Third,* Luck's argument is expressly based on the false premise that his expert "imaged the contents of Mr. Luck's iPhone and that no deletions have been made." (ECF. No. 101 at 6.) Since Luck has now admitted that there were deletions, Defendants are entitled to have their own expert

conduct a forensic examination and analysis of the phone's contents and any backup copies of the contents of that phone in an effort to determine the nature and extent of any deletions.

### 3. Luck Has No Privilege or Privacy Interest in the Contents of Alpha's iPhone

Luck has argued that Defendants should not have access to the full contents of Alpha's iPhone based on vague and unsupported claims that it contains "private and confidential materials."  (ECF No. 101 at 6-7; ECF. No. 106 at 3-4.)  Luck also has erroneously argued that Defendants should not have full access to the contents of Alpha's iPhone because it contains communications protected by the attorney-client privilege.  (Ex. 2, Alpha's IROG 1; Ex. 3, McMahon's IROG 1; Ex. 4, Alpha's RFPs 1-2; Ex. 5, McMahon's RFPs 1-2.)

*First*, Luck has no privacy-based interest in the contents of *Alpha's* iPhone because it is *owned by Alpha* and is *Alpha's property*—it is not Luck's phone.   The XFL technology policies that Luck established and was responsible for enforcing make clear that Alpha could monitor the use of XFL devices and that employees had *no expectation of privacy* in the use of those devices.

> All XFL Technology and the information, materials, and data produced, stored, transmitted or processed thereon are the property of the XFL**.  *Employees should have no expectation of privacy in their use of these systems.*
>
> All users of XFL Technology which include all employees, temporary staffing, freelancers and consultants are subject to auditing and monitoring by authorized personnel.  Monitoring of such services include, but is not limited to usage of computer, network and systems, Internet usage, email, instant messaging, voice and video services, data access, storage and transmission, databases, applications and 3rd party cloud service providers.

(Ex. 7 at 15 (emphasis added); Ex. 8 at 3 (emphasis added)).

Luck therefore cannot claim any valid privilege or privacy interest in the contents of the iPhone owned and issued by Alpha.  Indeed. Judge Bryant has rejected similar claims of privacy

and privilege regarding emails on an employer's work computer where the employer had a policy
nearly identical to the XFL's policy:

> [Plaintiff] was aware that [defendant] had an email policy which expressly stated
> that computer files and the email system furnished to employees were company
> property, and that computer usage and files were subject to monitoring without
> exception. Plaintiff therefore had ***no reasonable expectation that his emails with
> his wife were confidential, and the emails therefore are not privileged.*** Because
> the [plaintiff's] emails were not at their inception confidential, ***they were never
> privileged.***

*Terán v. Mut. Sec. Credit Union*, No. 3:16-CV-00466, 2017 WL 11477128, at *4 (D. Conn. Sept.

29, 2017) (Bryant, J.) (emphasis added);[7] *Rissetto v. Clinton Essex Warren Washington Bd. of

Coop. Educ. Servs.*, No. 8:15-CV-720, 2018 WL 3579862, at *6 (N.D.N.Y. Jul. 25, 2018)

("[C]ourts often hold that where there is a policy reserving for the employer's right to search and/or

monitor computer usage and/or informing the employee that she has no reasonable expectation of

privacy, there is no reasonable expectation of privacy regardless whether the employer actually

performed monitoring of computer usage.") (collecting cases). Indeed, despite Luck's counsel's

attempt to justify his delay in returning the phone to Alpha's bankruptcy counsel based on claims

that the case law he had read supported recognition of a privacy interest in the contents of the phone

notwithstanding Alpha's policy to the contrary, ***Luck has cited no such case law***.

---

[7] Because Luck had no reasonable expectation of confidentiality in the contents of Alpha's
iPhone, Luck similarly cannot claim attorney-client privilege over their contents. Even if the
phone did contain privileged communications, Defendants have confirmed with their forensic
expert that any potentially privileged communications can be segregated from other contents of
the phone. Defendants also have sent a proposal to Luck that would allow him to identify and log
any privileged communications on the phone based on the forensic image of the phone that he
made before it was returned to Alpha's bankruptcy counsel so that such communications could be
segregated. Luck's concerns that there may be privileged communications on the phone after it
was returned to Alpha's bankruptcy counsel are largely illusory. Defendants have confirmed with
their expert that, upon taking custody of the phone from Alpha's bankruptcy counsel on December
28, 2020, the SIM card was removed while the phone was off, the phone was placed in a Faraday
cage to put it into airplane mode, and the phone has been stored in a secure environment without
access to any network. As a result, there should be no risk that emails sent or received from Luck's
personal email account after May 5, 2020 would be accessible from the phone.

*Second*, Luck is *legally obligated* to disclose the passcode to *Alpha's* iPhone under applicable Connecticut law.  *See* Conn. Gen. Stat. § 31-40x(c)(1) (requiring "an employee or applicant provide such employer with a user name and password, password or any other authentication means for accessing" any "electronic communications device supplied or paid for, in whole or in part, by such employer").  This statute requires Luck to disclose the passcode to the phone because it is undisputed that (i) Luck was an employee of Alpha, (ii) Alpha was Luck's employer, and (iii) the phone is a device that was supplied and paid for by Alpha.  Although Luck has argued that the statute does not apply because he was terminated and is no longer Alpha's employee, Luck's interpretation impermissibly adds words to the plain text of the statute—there is nothing in the statute that limits its requirements to *current* employees of their *current* employer.  *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 768 (2015) (rejecting interpretation of statute that "asks us to add words to the law").  Moreover, Luck's interpretation of the statute would lead to absurd results.  For example, it would mean that an employee is required to disclose the passcode to an employer's phone the day before he was terminated but not immediately after he was terminated.  It would mean that a current employee could not prevent an employer from accessing its own phone but that a terminated employee could.  It also would mean that the common practice among employers of requiring employees to return employer-owned devices along with their passcodes following termination would be prohibited.  This Court must avoid such a nonsensical interpretation of the statute that is contrary to its plain meaning.  *See Hernandez v. Saybrook Buick GMC, Inc.*, No. 3:20-CV-00438, 2020 WL 7137417, at *8 (D. Conn. Dec. 4, 2020) (Bolden, J.) (recognizing that statutes "should be interpreted in a way that avoids absurd results" (internal quotation marks and citations omitted)).

*Third,* Luck's claim of a privacy interest in the contents of Alpha's iPhone is further

undermined by his claim that "personal" text messages with his family members were deleted from the phone before providing it to his expert or returning it to Alpha's bankruptcy counsel.  (ECF No. 114-2.)  Given that these messages were already deleted, it is obvious that Luck's position is not motivated by some desire to protect private communications with family members.

### 4.     Luck's Argument Regarding Notice and Cure Is Improper

Luck also has argued that Defendants should not have access to the full contents of Alpha's iPhone because they did not provide Luck with written notice and an opportunity to cure his violations of the XFL technology policies before terminating him.  (ECF No. 110.)

*First*, Luck's argument is an improper argument on the merits of the claims in this case that should not be decided in the context of a discovery dispute.  The merits of Luck's argument regarding notice and cure should be decided only after discovery is completed based on a fully developed record.  *See Wells Fargo Bank, N.A. Tr. v. Konover*, No. 3:05-CV-1924, 2010 WL 11561491, at *9 (D. Conn. June 22, 2010) ("However the merits of this dispute may ultimately be resolved at trial, it cannot properly be a grounds for refusing to compel discovery concerning allegations set forth in a complaint."); *WHS Sales Corp. v. Cinmar, L.P.*, No. 06 CIV. 1938, 2007 WL 486603, at *1 (S.D.N.Y. Feb. 13, 2007) ("To preclude the discovery sought by defendants would require me to conclude that defendants' theory has no merit" and "it will be more efficient to permit the disputed discovery to proceed so that the record is fully developed when the matter is presented.").  Indeed, the only case cited by Luck on this point resolved the notice and cure issue only after a full trial on the merits.  *See Semac Elec. Co. v. Skanska USA Bldg. Inc.,* 195 Conn. App. 695 (2020) (resolving the issue after the case was tried to the court)

*Second*, Luck's argument ignores the provisions of his Employment Contract providing that prior written notice and an opportunity to cure is not required "[i]f the act or omission that

would otherwise constitute Cause hereunder is not reasonably susceptible to cure."  (ECF No. 94-1 at 3.)  By contrast, the contract in the case cited by Luck contained no such provision.  *See Semac*, 195 Conn. App. at 718 (stating that the contract in that case "expressly provided that Semac was afforded a forty-eight hour cure period, and did not provide for any exceptions or qualifications to that requirement").  Defendants therefore are entitled to discover the full contents of Alpha's iPhone to show the nature and extent of Luck's violations of the XFL's policies which Luck has concealed from Defendants and to demonstrate those prior violations were "not reasonably susceptible to cure" or that providing notice and an opportunity to cure would have been futile.  *See Bernhard-Thomas Bldg. Sys, LLC v. Weitz Co., LLC*, No. 3:04-CV-1317, 2011 WL 3586061, at *6 n.4 (D. Conn. Aug. 16, 2011) (holding that strict compliance with contractual notice and cure provision "would have been futile"); *Luttinger v. Rosen*, 164 Conn. 45, 47 (1972) ("The law does not require the performance of a futile act.").

*Third*, Luck's argument overlooks the provision of his Employment Agreement expressly conditioning his entitlement to the payments he is seeking in this action on "the absence of circumstances that would constitute Cause."  (ECF No. 94-1 at 3-4.)  Luck therefore must establish the absence of circumstance constituting cause to recover any additional payments regardless of whether his violations were reasonably susceptible to cure.

### 5.    Luck's Contract Interpretation Arguments Are Improper

Luck has asserted other baseless objections to providing Defendants with access to the full contents of Alpha's iPhone that depend on the merits of his interpretation of the Employment Contract.  As with his notice and cure argument, Luck's arguments on the merits of the claims in

this case should not be decided in the context of a discovery dispute.   In any event, Luck's interpretation of the Employment Contract is incorrect.

*First*, Luck erroneously contends that Defendants should not have access to the full contents of Alpha's iPhone because his personal use of the iPhone was not "materially and demonstrably injurious to the interest, property, operations, business or reputation of Alpha." (Exs. 2-3, IROG 1; Exs. 4-5, RFPs 1-2.)   But the Employment Contract makes clear that conduct "which is materially and demonstrably injurious to the interest, property, operations, business or reputation of Alpha" *is, by definition*, any of the specified grounds for cause which follow those words.   (ECF 94-1 at 3.)   The clause relied upon by Luck is a non-restrictive clause that does not limit the enumerated grounds for cause but rather describes those grounds.   Accordingly, an "intentional failure to follow any applicable XFL policies," such as Luck's failure to follow the XFL technology policy, constitutes grounds for cause.   (*Id.*)

*Second*, Luck incorrectly claims that Defendants should not have access to the full contents of Alpha's iPhone because his personal use of the iPhone was not a "willful" act as defined in the Employment Contract.   (Exs. 2-3, IROG 1; Exs. 4-5, RFPs 1-2.)   But Luck incorrectly claims that his actions had to be "willful" as defined by the Employment Contract in order to constitute cause. The Employment Contract provides that Luck could be terminated for cause for "willful and intentional material misconduct in the performance of his duties *or* gross negligence of his duties, *including an intentional failure to follow any applicable XFL policies or directives."*   (ECF No. 94-1 at 3.)   The use of the word "or" indicates that this clause is disjunctive and that Luck could be terminated for cause for *either* willful misconduct *or* gross negligence, which was specifically defined to include a failure to follow any applicable XFL policies.   Accordingly, Luck could be

terminated for cause for violating the XFL technology policy even if such conduct was not found to be "willful" as defined by the Employment Contract.

But even if the Court were to accept Luck's erroneous interpretation of the Employment Contract, discovery of the full contents of Alpha's phone would be necessary to show that Luck's improper use of the phone was in fact "willful" as defined by the contract and was indeed conduct "which was materially and demonstrably injurious to the interest, property, operations, business or reputation of Alpha."  (ECF No. 94-1 at 3.)  Luck cannot claim that these contractual provisions are not satisfied while simultaneously shielding access to the evidence that shows that they are.

## IV.  Discovery Regarding Luck's Gross Neglect of His Duties After March 13, 2020

### A.  Circumstances Constituting Cause

Alpha also properly terminated Luck for cause because he grossly neglected his duties after March 13, 2020.  After March 13, 2020, Luck effectively abandoned his responsibilities as XFL Commissioner and CEO and returned home despite the existential threat to the league posed by the COVID-19 pandemic.  Luck has admitted leaving the XFL's headquarters and returning home to Indiana during this critical time period.  Luck largely disengaged from the XFL's operations, admittedly missed important meetings held by videoconference to determine whether there was a viable path forward for the league (Ex. 6, RFAs 57-62), and instead chose to prioritize other business activities for other entities over the XFL in breach of his contractual obligation to "devote substantially all of his business time to the performance of his duties to the XFL" and not to allow other activities to "interfere with the performance of his duties to the XFL"  (ECF No. 94-1 at 1.)

### B.  Defendants' Response to Luck's Discovery Requests

Defendants have agreed to produce all non-privileged documents found after a reasonable search regarding Luck's gross neglect of his duties after March 13, 2020.  Such documents include:

- Emails sent by Luck after March 13, 2020.

- Communications between Luck and McMahon after March 13, 2020.

- Documents reflecting that Luck failed to perform his duties, including his failure to attend XFL COVID-19 working group meetings held by video conference and weekly XFL business operations meetings held by Zoom and his prioritization of other business activities over his work for the XFL.

Defendants therefore have agreed to produce all documents in their possession relating to the circumstances constituting cause for Luck's termination on this ground.

### C.   The Full Contents of Alpha's Phone Are Central to this Issue

Examination of the full contents of Alpha's iPhone are central to this ground for termination because the phone will show Luck's activities during the critical time period after March 13, 2020 when he was not in the office and demonstrate that he failed to "devote substantially all of his business time to the performance of his duties to the XFL" as required by his Employment Contract.  (ECF No. 94-1 at 1.)  Indeed, Luck has claimed in response to discovery requests that he cannot produce documents regarding his work schedule and plans because they "were recorded on the calendar that [he] had access to from my Alpha issued iPhone."  (Ex. 2, Alpha's IROG 4.)  The fact that Luck cannot produce his schedule or calendar in response to discovery requests because they reside on the phone that he claims Defendants cannot access just proves exactly why Defendants require access to the phone's contents.

### IV.   Luck's Discovery Requests Seek Disclosure of Irrelevant Information and Would Impose Undue Burden and Expense on Defendants

Luck's discovery requests attempt to distract from the narrow issues in this case by seeking information that is wholly irrelevant to bases for his termination for cause and by attempting to create an unnecessary burden and expense on Defendants and third parties that is entirely disproportional to the needs of this case.  *See* Fed. R. Civ. P. 26(b)(1) (providing that scope of

discovery is limited to non-privileged matters "relevant to any party's claim or defense and proportional to the needs of the case" taking into consideration "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").   Indeed, Luck's requests seek to unnecessarily increase the already asymmetrical burden of discovery on Defendants in this action.

## A.      Documents Regarding Luck Unrelated To The Bases For His Termination

Luck has improperly requested all documents relating to Luck and his performance during his entire tenure as CEO and Commissioner of the XFL from his hiring on May 30, 2018 to his termination on April 9, 2020.  For example, Luck has requested that Defendants produce:

- All documents and communications regarding Luck (RFP 1)

- All documents regarding Luck's performance of his duties (RFP 5)

- All documents regarding Luck's responsibilities and authority (RFP 6)

- All communications with WWE employees or officers regarding Luck (RFP 19)

- All communications with XFL or Alpha employees regarding Luck (RFP 24)

Luck's requests are irrelevant and overbroad to the extent that they seek information that is unrelated to the bases for Luck's termination for cause—*i.e.*, Luck's violation of XFL policies and McMahon's directives and gross neglect of his duties after March 13, 2020.   Luck's overall performance throughout his tenure as CEO is not relevant to the specific grounds for his termination and would only serve expand the scope and increase the cost of this litigation by unnecessarily injecting extraneous issues into this case.  Moreover, Luck's requests are unduly burdensome because they seek to require Defendants to incur the time and expense of collecting, searching, and producing potentially thousands of documents that are unrelated to central issue of whether cause exists under Luck's contract.  Indeed, Luck's position during the meet and confer

between the parties was that Defendants should have to search for and produce any document that even mentions Luck's name—no matter how trivial the reference and regardless of whether it has any relevance to the issues in this case.  Such a position is untenable and should be rejected.

### B. Documents Regarding The Actions of McMahon and Other XFL Employees

Luck has improperly requested documents and information regarding McMahon's activities for the XFL and WWE, the activities of other XFL executives, and whether other XFL employees violated company policies and were terminated for cause.  For example, Luck has requested that Defendants provide:

- All documents regarding work done by other XFL executives after March 13, 2020 (RFPs 7 and 11)

- All documents regarding work done by McMahon for the XFL after March 13, 2020 (RFP 8)

- All documents regarding work done by McMahon for WWE after March 13, 2020 (RFP 9)

- Identities of all other persons who were issued phones by Alpha or McMahon (IROG 1)

- Identities of all other persons who used such phones for personal matters or matters unrelated to the business of the XFL (IROG 2)

- Identities of all other persons who were terminated for cause and the reasons for their termination (IROG 3)

- Disciplinary measures taken against other XFL employees (IROG 4)

*First*, Luck's requests are improper because the activities of *other* XFL executives or employees are completely irrelevant to the issue of whether *Luck* was properly terminated for cause under his Employment Contract.  Luck negotiated the terms of his Employment Contract and its termination for cause provisions with Defendants.  But even assuming that other XFL employees had employment contracts with the exact same termination for cause provisions

contained in Luck's Employment Contract and were not terminated for engaging in the same conduct as Luck, Alpha would still have the legal right to terminate Luck if there was a basis to terminate him for cause under the terms of his Employment Contract. *See Bullard v. Wastequip Mfg. Co. LLC*, No. CV1401309, 2015 WL 12766467, at \*24 (C.D. Cal. Apr. 14, 2015) (holding that the fact the defendant did not terminate other employees "is irrelevant in determining whether it terminated [plaintiff] for cause" because there is no evidence as to whether other employees "had similar employment agreements, or whether their employment was otherwise governed by the same definition of 'cause' found in the agreement" and plaintiff "cites no authority for the proposition that because other employees were disciplined rather than terminated under similar circumstances, [defendant] had no legal right to terminate him if 'cause' existed as that term is defined in the Agreement"); *Saluja v. Local 1199 United Healthcare Workers E.*, No. CV 06-5051, 2007 WL 3232475, at \*1 (E.D.N.Y. Nov. 1, 2007) (finding that "employer's treatment of others is of doubtful relevance" where employer terminated an employee for just cause).

Luck has attempted to justify such requests on the grounds that they are relevant to showing whether his termination was pretextual. But his termination cannot be pretextual if circumstances constituting cause under his contract exist. The Employment Contract specifically granted Alpha the right to terminate Luck "at any time" and to terminate him for cause if any of the specified grounds for cause existed. (ECF No. 94-1.) Moreover, a party's motivation for terminating a contract is irrelevant if there is a legitimate basis for termination under the contract. *See Major Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 95-7595, 1996 WL 280452, at \*3 (2d Cir. May 17, 1996) ("As long as a party has the legal right to terminate its obligation under the contract, it is legally irrelevant whether [the party] was also motivated by reasons which would not themselves constitute valid grounds for termination of the contract.") (internal quotation marks and citation

omitted); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 164 F.3d 619, 619 (2d Cir. 1998) (rejecting plaintiff's argument that defendant was justified in terminating agreement for cause only if plaintiff's breach was in fact its true reason for the termination and agreeing that plaintiff's nonpayment provided a "reason to terminate for cause and made any allegations of other improper motives irrelevant to a determination of good faith performance"); *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 679 (2d Cir. 1985) (holding that "termination was proper within the terms of the contract" regardless of motive for termination) (applying Connecticut law); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 409 (S.D.N.Y. 1999) ("There is no doubt that motive is irrelevant to the issue of whether a nonbreaching party properly terminated a contract where that party has established an independent legal right to terminate."). As Alpha's prejudgment remedy papers demonstrate, the evidence supporting Luck's termination for cause for the Callaway incident and the other specified grounds—including the documentary evidence, the testimony of multiple witnesses, and Luck's own admissions—is overwhelming. (ECF No. 129.) Given the strength of such evidence, it is no wonder that Luck is embarking on a fishing expedition to discover the activities of other employees.

*Second*, Luck's requests ignore the fact that *he* was hired to be the CEO and Commissioner of the XFL. Luck's was "the senior most executive of the XFL" responsible for "all football and business related operations" of the XFL, and all employees of the XFL reported "directly or indirectly" to him. (ECF No. 94-1 at 1.) As its CEO and Commissioner, Luck was responsible for enforcing the XFL's policies and ensuring compliance with those policies. Accordingly, *Luck*—not McMahon—is the one who should have knowledge of whether other XFL employees were performing their duties and whether they were terminated or disciplined for non-compliance

with XFL policies and directives.  If those policies were not enforced by Luck, then that would be just another example of gross negligence in the performance of his duties.

*Third*, Luck's requests seeking discovery into *McMahon's* activities for the XFL and WWE are wholly irrelevant.  McMahon was an owner—not an officer or employee—of the XFL. McMahon hired Luck to be the CEO and Commissioner of the XFL and entrusted him with the day-to-day management and operation of the league.  Discovery into McMahon's activities for the XFL or WWE is irrelevant to whether cause exists under Luck's Employment Contract.  And discovery into McMahon's activities for *WWE*—an entirely different company that is not a party to this case—is not only irrelevant but is clearly intended only to harass McMahon.

*Fourth*, Luck's requests are also unduly burdensome and disproportionate to the needs of this case because they seek to require Defendants to incur the time and expense of collecting, searching, and producing thousands of documents regarding the activities of McMahon and other XFL employees that have no bearing on the issue of whether cause for termination exists under Luck's Employment Contract.

### C.   Documents Regarding WWE

Luck has also improperly requested production of numerous documents regarding WWE— an entirely different company from the XFL and a third party to this action.  For example, Luck has requested that Defendants produce:

- All documents regarding work done by McMahon for WWE after March 13, 2020 (RFP 9)

- All communications with WWE employees or officers regarding Luck (RFP 19)

- All communications with WWE employees or officers regarding their involvement in the XFL (RFP 20)

- All documents advising WWE employees that they must follow the policies and directives of the XFL (RFP 21)

Discovery into McMahon's work for WWE or the activities of WWE employees is wholly irrelevant to whether *Luck* was properly terminated for cause under his Employment Contract with *Alpha* and whether there are circumstances constituting cause.  Moreover, such requests are unduly burdensome and disproportionate to the needs of the case because they seek discovery of communications with employees of WWE—*a non-party*.

### D.    Documents Regarding the XFL's Financial Performance

Luck also has improperly requested production of numerous documents relating to the XFL's financial performance.  For example, Luck has requested that Defendants produce:

- Documents showing the ownership composition of Alpha (RFP 25)

- All documents regarding the impact of COVID-19 on Alpha's financial performance  (RFP 27)

- All financial statements relating to Alpha from January 1, 2018 through April 30, 2018 (RFP 28)

- All documents concerning any cost-cutting measures taken by Alpha during the period of February 1, 2020 to April 30, 2020 (RFP 29)

Discovery into Alpha's financial performance is also completely irrelevant to the issue of whether cause exists under Luck's Employment Contract and particularly irrelevant given that Luck only seeks relief in this action from McMahon under the Guaranty.  To the extent that Luck is attempting to suggest that there was a financial motivation behind Luck's termination for cause or that Luck's termination for cause was pretextual, any such claim is irrelevant for the reasons stated above:  the only relevant issue is whether there were circumstances that constituted cause for Luck's termination under his Employment Contract.  (*See* Section IV.C.)  In addition, the discovery that Luck seeks would impose a wholly unnecessary discovery burden on Alpha, a

bankrupt entity, and relates to information that Luck can obtain from publicly available filings in Alpha's bankruptcy proceeding in any event.

## CONCLUSION

For the reasons set forth above, the Court should sustain Defendants' objections to Luck's discovery requests, overrule Luck's objections to Defendants' discovery requests concerning the Alpha-owned iPhone, and order that Defendants be permitted to access and examine the full contents of the Alpha-owned iPhone.

DEFENDANTS VINCENT K. MCMAHON
and ALPHA ENTERTAINMENT LLC

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt
Curtis B. Krasik
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that, on January 8, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)