**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
|     *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON and | § | |
| ALPHA ENTERTAINMENT LLC | § | |
| | § | January 22, 2021 |
|     *Defendants.* | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Oliver Luck, by and through his undersigned attorneys, as and for his Complaint against Defendants, Vincent K. McMahon ("McMahon") and Alpha Entertainment LLC ("Alpha") (collectively, the "Defendants"), hereby alleges as follows, based on knowledge of his own actions, and on information and belief as to all other matters:

### I.    INTRODUCTION

1. This lawsuit concerns Defendants' bad faith attempt to avoid payment of $23.8 million owed to Mr. Luck by virtue of his Employment Contract (as defined *infra*) with Alpha and a guaranty (the "Guaranty") executed by McMahon.[1] Despite fulfilling his obligations as Commissioner and CEO of the XFL, a professional football league, Mr. Luck was wrongfully terminated by Alpha on April 9, 2020,[2] allegedly for cause. Defendants' termination was a sham

---

[1] Luck seeks monetary recovery from McMahon only; Luck seeks no monetary relief against Alpha except for any amount as a set-off or recoupment in response to Alpha's counterclaim on file herein.

[2] Moreover, on April 13, 2020, Alpha filed its petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 20-10940 (LSS). At the same time, Alpha filed its Eleventh Omnibus Motion for Entry of an Order Authorizing the Debtor to Reject Certain Executory Contracts Effective at the Petition Date, by which Alpha sought and obtained an order from the Bankruptcy Court authorizing it to reject, *inter alia*, the Employment Contract (as defined below) under 11 U.S.C. §365(a), effective as of the date of the filing of the bankruptcy on April 13, 2020. (*In re Alpha Entertainment LLC*, Case No. 20-10940, ECF No. 22 (Bankr. D. Del.)). Under 11 U.S.C. § 365(g)(1), the rejection of an executory contract "constitutes a breach of such contract . . . immediately before the date of the filing of the petition."

designed to evade McMahon's obligations under the Guaranty for payment of Mr. Luck's salary and bonuses. McMahon, as primary obligor, guaranteed Alpha's performance of its obligations under the Employment Contract. Despite McMahon's knowledge of Alpha's bad faith termination of Mr. Luck, McMahon failed to perform his obligation to make payment under the Guaranty. In addition, under the Guaranty, McMahon waived all defenses and discharges, legal or equitable, to his obligations under the Guaranty; such obligations are effective regardless of the validity or enforceability of the Employment Contract.

2. Mr. Luck brings this action for (1) a declaratory judgment against Alpha for his wrongful termination under the Employment Contract (as defined *infra*) and in violation of the implied duty of good faith and fair dealing; and (2) breach of contract, breach of the implied duty of good faith and fair dealing, and a declaratory judgment against McMahon.

## II. THE PARTIES

3. Plaintiff, Oliver Luck, is a citizen of Indiana.

4. Defendant, Vincent K. McMahon, is a citizen of Connecticut.

5. Nominal Defendant, Alpha Entertainment LLC, is a citizen of Connecticut and Delaware as its members at the time this action commenced were Vincent K. McMahon, a citizen of Connecticut, and World Wrestling Entertainment, Inc., a citizen of Delaware and Connecticut.

## II. JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity between the Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this judicial district. Additionally, Mr. Luck performed a

substantial part of his employment obligations, and Alpha and McMahon breached their obligations, in this judicial district. Thus, venue is also proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted occurred in this judicial district.

### III.     BACKGROUND FACTS

**A.     The Employment Contract**

8.     On May 30, 2018, Mr. Luck entered into a five-year Employment Contract with Alpha. *See* Ex. 1. As set forth in the Employment Contract, Mr. Luck agreed to serve as the Commissioner and CEO of the XFL, a professional football league, from July 1, 2018 to June 30, 2023. *Id*. at p. 2. The Employment Contract provides that Mr. Luck is to receive, *inter alia*, an annual base salary of $5,000,000 per contract year, paid monthly, and a guaranteed annual bonus of $2,000,000 payable on the last day of each contract year. *Id*. Under the Guaranty, McMahon—as the then-controlling owner of Alpha and primary (if not exclusive) funder of XFL operations—personally, unconditionally, absolutely, continually and irrevocably, guaranteed Alpha's performance of its agreements and obligations to Mr. Luck under the Employment Contract including, but not limited to, payment of Mr. Luck's base salary and guaranteed annual bonuses. *See* Ex. A to Ex. 1. Further, McMahon waived all "circumstances that may . . . constitute a legal or equitable discharge or defense" to any action to enforce the Guaranty. *Id*.

9.     The Employment Contract provides that Mr. Luck could be terminated "for Cause" or "without Cause." Ex. 1 at p. 3. The definition of "Cause" includes "Mr. Luck's willful and intentional material misconduct in performance of his duties or gross negligence of his duties." *Id*. As defined in the Employment Contract, an act or omission is considered "willful" only when done, or omitted to be done, by Mr. Luck in bad faith or without the reasonable belief that it is in the best interest of the XFL. *Id*. Under Connecticut law, gross negligence requires "a reckless

3

indifference to the rights of others" that involves a "conscious choice" and "knowledge of serious danger."

10. A termination for Cause entitles Mr. Luck to be paid only for previously accrued salary and vested employee benefits, while a termination without Cause entitles Mr. Luck to receive a lump sum cash payment consisting of, *inter alia*, Mr. Luck's base salary and guaranteed annual bonuses that would otherwise be payable throughout the remaining duration of the Employment Contract. *Id*. Further, pursuant to the Employment Contract, if the act or omission that would otherwise constitute Cause under the Employment Contract was reasonably susceptible to cure, Alpha was required to give Mr. Luck written notice and thirty (30) days to cure. *Id*.

**B.     The Termination Letter**

11. In a letter (the "Termination Letter") dated April 9, 2020, which was approved by McMahon, Alpha wrongfully terminated Mr. Luck's employment—purportedly for Cause—effective immediately. Ex. 2. Defendants' actions constitute a repudiation and breach of the Employment Contract and the Guaranty, all in violation of their implied duties of good faith. The Termination Letter set forth pretextual and meritless allegations related to Mr. Luck's acts or omissions as Commissioner and CEO of the XFL. *Id*. The Termination Letter falsely accused Mr. Luck of "gross negligence," "willful disregard of the lawful instructions of McMahon concerning [his] material duties," and "not devot[ing] all of [his] business time to the performance of [his XFL] duties since March 13th." *Id*. Mr. Luck wholly disputes and rejects the allegations in the Termination Letter and responded to the baseless allegations in writing (the "Response Letter"). Ex. 3.

12. As set forth in his Response Letter, throughout Mr. Luck's tenure as Commissioner and CEO of the XFL, he worked diligently and cooperatively with McMahon and others to

establish, build, and promote the XFL. *Id*. Mr. Luck oversaw issues relating to football game-play personnel, football operations, football safety, and football rule innovation. *Id*. All of Mr. Luck's acts as Commissioner and CEO of the XFL were done in good faith and with the reasonable belief that such acts were in the best interests of the XFL and Alpha. *Id*.

13. The Termination Letter contains numerous inaccuracies. For example, the Termination Letter falsely states that Mr. Luck violated XFL policy and directives issued by McMahon when Mr. Luck signed wide receiver Antonio Callaway ("Callaway"). Ex. 2. Contrary to the claim in the Termination Letter, the XFL had no policy in place at the time that would have disqualified Callaway when he signed to play in the XFL. *See* Ex. 3. Moreover, under the express terms of the Employment Contract, Luck had full authority to hire any XFL employee such as Callaway:

> Mr. Luck will have authority, duties and responsibilities consistent with the commissioners of the major U.S. professional sports leagues (including oversight of all football and business-related operations) and will be the senior-most executive of the XFL. Mr. Luck **will have full authority to hire, dismiss, replace or reassign any employee, consultant or contractor of the XFL**, all of whom will report, directly or indirectly, to Mr. Luck, subject to Mr. McMahon's preapproval for material business decisions. Mr. Luck will report exclusively and directly to Mr. McMahon.

Ex. 1 at p. 1 (emphasis added*)*. The hiring and firing of Callaway were not material business decisions.

14. Further, McMahon was made aware of the signing of Callaway in advance and did not object at the time. *Id*. In fact, McMahon had instructed Mr. Luck to upgrade the quality of receivers in the XFL, and the signing of Callaway accomplished that goal. *Id*. When McMahon told Mr. Luck on or about January 28, 2020 that he wanted Callaway terminated, Mr. Luck promptly followed McMahon's directive. *Id*. At no time did Mr. Luck intentionally violate an XFL policy or directive.

15. The Termination Letter also falsely states that, from March 13, 2020 until the date of termination on April 9, 2020, Mr. Luck had been disengaged from his XFL responsibilities. Ex. 2. The XFL suspended play on Thursday, March 12, 2020 and Mr. Luck was scheduled to be out of the XFL offices on March 13, 2020 to travel to Seattle for an XFL game on Saturday, March 14, 2020. However, Mr. Luck stayed and performed his duties from the XFL offices on March 13, 2020 and travelled home to Indianapolis for the weekend. While the COVID-19 pandemic and resulting XFL and government orders prohibited Mr. Luck from returning to the XFL offices after March 15, 2020, Mr. Luck continued to fulfill his obligations and responsibilities to the XFL and Alpha until his termination on April 9, 2020. *See* Ex. 3.

16. During this time, Mr. Luck communicated with McMahon and others at the XFL via text message and they were well aware of Mr. Luck's efforts related to the XFL, as evidenced by their responses to the text messages. *Id*. For example, Mr. Luck communicated with college athletic administrators regarding the possibility of the college football season being moved to the spring of 2021, and Mr. Luck shared this information with McMahon. *Id*. Mr. Luck worked with numerous other XFL employees and representatives regarding the shutdown of XFL operations and facilities and had numerous conversations regarding the possibility of signing certain XFL players for the 2021 season. *Id*. Mr. Luck also worked with other XFL staff members to finalize the 2021 football budget request by McMahon, and submitted it on March 27, 2020. *Id*. Since early-March 2020, Mr. Luck was part of the XFL's COVID-19 working group to monitor the impact of the virus on the XFL's operations. *Id*. Further, Mr. Luck prepared a video, at McMahon's request, thanking XFL fans for their support. *Id*.

17. Mr. Luck and McMahon had a meeting scheduled for April 3, 2020, but that meeting was cancelled by McMahon's office. *Id*. All of the evidence supports Mr. Luck's claim

that he was very much engaged in the XFL operations after March 13, 2020 and continued to devote substantially all of his business time to his XFL duties. The allegations in the Termination Letter are simply a false narrative motivated by Defendants' improper intent to avoid Mr. McMahon's contractual obligations to pay Mr. Luck under the Guaranty.

18.     The Termination Letter also claims, without merit, that the manner and method that Mr. Luck used to locate teams and negotiate term sheets with venues, was grossly negligent. Ex. 2. The selection of venues, however, along with the negotiation of terms sheets, were a joint effort by numerous XFL employees and consultants. Ex. 3. McMahon was kept apprised of the site selections and negotiations. *Id*. No cities or stadiums were selected, or agreements signed, without McMahon's prior authorization and approval. *Id*.

19.     On April 10, 2020, one day after sending Mr. Luck the Termination Letter, Alpha suspended operations of the XFL and laid off virtually its entire staff. On April 13, 2020, Alpha filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.

20.     Nevertheless, after the Termination Letter was sent and in their continuing bad faith efforts to avoid McMahon's payment responsibilities under the Guaranty, Defendants began contending that Mr. Luck violated XFL policy regarding use of his XFL-issued iPhone. However, Mr. Luck's use of his iPhone for personal matters was done in the best interests of the XFL and was not materially and demonstrably injurious to the interest, property, operations or business reputations of Alpha or the XFL.

**C.     By Failing to Provide Written Notice and 30 Days Opportunity to Cure, Alpha Repudiated and Breached the Employment Contract**

21.     During Mr. Luck's time as Commissioner and CEO of the XFL, neither Alpha nor McMahon provided Mr. Luck with written notice of any purported belief that he was not executing

7

his responsibilities with competence or diligence, nor did either provide written notice that any of Mr. Luck's acts or omissions constituted "Cause" under the Employment Contract. *See* Ex. 1 at p. 3. Despite the fact that the supposed deficiencies in performance described in the Termination Letter, if accurate, would have been susceptible to cure, neither Alpha nor McMahon provided Mr. Luck with the required thirty (30) day written notice to effect the cure. Therefore, when Alpha failed to provide the required written notice to cure and then summarily terminated Mr. Luck's employment purportedly for Cause, Alpha repudiated and materially breached the Employment Contract.

22. As but one example of Defendants' disregard for the Employment Contract's written notice requirement, Defendants now allege that Mr. Luck violated XFL policy and McMahon's alleged directives regarding the hiring and firing of Callaway on two separate occasions in January 2020. Yet, it is uncontroverted that Defendants never provided Mr. Luck with the requisite written notice that he had violated any XFL policy or directive and a thirty (30) day opportunity to cure.

23. Even after Callaway was effectively terminated by being placed on the XFL's Injured Reserve list, Defendants did not provide written notice to Mr. Luck that he had failed to follow a McMahon directive or any XFL policy. In fact, the first official written notice that Luck had allegedly violated an XFL policy or directive was not provided until Defendants terminated Mr. Luck two and one-half months after the "Callaway situation" was resolved. Thus, Defendants' utilization of the "Callaway situation" as a ground for termination with Cause, the Termination Letter and Defendants' failure to provide Mr. Luck with written notice and an opportunity to cure constitute bad faith under Connecticut law.

24. Another example that underscores both the spuriousness of Alpha's grounds for Cause termination, and its contempt for providing written notice and an opportunity to cure as required under the Employment Contract, is Alpha's incorrect assertion that Mr. Luck was not devoting substantially all of his business time to his XFL duties from March 13 to April 9, 2020. Such alleged non-performance could easily have been cured following written notice. Yet, Alpha never provided Mr. Luck with *any* notice and the first time Mr. Luck was informed that his conduct constituted cause for termination under the Employment Contract was when he received the Termination Letter. Likewise, Mr. Luck's personal use of the iPhone issued to him by Alpha could easily have been cured following notice. Again, Alpha never provided Mr. Luck with any notice, but waited until after this lawsuit was pending to assert that his personal use of the iPhone was a ground for termination with Cause.

25. Alpha breached the implied duty of good faith and fair dealing in the Employment Contract. As guarantor and primary obligor, McMahon also breached the implied duty of good faith and fair dealing by failing to perform his duties under the Guaranty despite his knowledge and approval that (a) Alpha breached, repudiated and wrongfully terminated the Employment Contract without cause, and (b) McMahon waived all defenses to enforcement of the Guaranty.

### IV. CLAIMS FOR RELIEF

### COUNT ONE - DECLARATORY JUDGMENT

26. Plaintiff incorporates herein by reference all preceding paragraphs.

27. In accordance with 28 U.S.C. § 2201, an actual controversy exists between Mr. Luck and Alpha.

28. Mr. Luck seeks, and is entitled to, a declaration that Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract without Cause.

29.     Mr. Luck seeks, and is entitled to, a declaration that, in violation of the implied duty of good faith and fair dealing, Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract without Cause.

## COUNT TWO - DECLARATORY JUDGMENT

30.     Plaintiff incorporates herein by reference all preceding paragraphs.

31.     In accordance with 28 U.S.C. § 2201, an actual controversy exists between Mr. Luck and Mr. McMahon.

32.     Mr. Luck seeks, and is entitled to, a declaration that McMahon has waived all defenses and discharges, legal or equitable, to Mr. Luck's enforcement of the Guaranty.

33.     Further, Mr. Luck seeks, and is entitled to, a declaration that McMahon's obligations under the Guaranty are as primary obligor such that McMahon is primarily responsible to Mr. Luck for all amounts owed to him under the Employment Contract.

## COUNT THREE - BREACH OF CONTRACT

34.     Plaintiff incorporates herein by reference all preceding paragraphs.

35.     Because Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract without cause, all future salary, bonuses, and other compensation are now immediately due and payable to Mr. Luck.

36.     Mr. McMahon has breached his obligations under the Guaranty by failing to pay all amounts owed to Mr. Luck.

37.     As a result, Mr. Luck has suffered damages in an amount exceeding the minimum jurisdictional amounts of this Court.

## COUNT FOUR – BREACH OF THE IMPLIED DUTY OF GOOD FAITH

38.     Plaintiff incorporates herein by reference all preceding paragraphs.

39. Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract in violation of the implied duty of good faith and fair dealing in an effort to avoid paying Mr. Luck the amounts owed under the Guaranty. McMahon directed and assisted Alpha in the wrongful termination, breach and/or repudiation of the Employment Agreement, in an effort to avoid paying Mr. Luck the amounts owed under the Guaranty. McMahon has continued to ignore his obligations under the Guaranty by refusing to pay Luck. Thus, McMahon has breached the duty of good faith and fair dealing implied in the Guaranty.

40. As a result of McMahon's conduct, Mr. Luck has suffered damages in an amount in excess of the minimum jurisdictional limits of the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, based on Defendants' conduct complained of herein, Mr. Luck asks that this Court enter judgment in his favor, and against Alpha, and award to Mr. Luck the Declaratory Judgment as set forth above in Count One.

Further, based on the Defendants' conduct complained of herein, Mr. Luck asks that this Court enter judgment in Mr. Luck's favor, and against McMahon, and award to Mr. Luck:

a. Actual damages;

b. Reasonable attorneys' fees, expenses, and costs of court;

c. All pre- and post-judgment interest as allowed by law at the highest rate allowed by law, including interest pursuant to Conn. Gen. Stat. § 37-3a; and

d. Declaratory Judgment, as set forth above in Count Two.

Mr. Luck further prays for all other relief to which he may be entitled.

## DEMAND FOR JURY TRIAL

Mr. Luck requests a trial by jury for all issues so triable pursuant to FED. R. CIV. P. 38(b) and 38(c).

**PLAINTIFF OLIVER LUCK**

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com

**AND**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email:  pjd@doblaw.com
Email:  vpierce@doblaw.com
Email : jmchazlett@doblaw.com

*HIS ATTORNEYS*

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 22, 2021 a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    /s/ Andrew M. Zeitlin
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT 06901-3522
Telephone: 203-324-8100
Facsimile: 203-324-8199
azeitlin@goodwin.com

9446733v1