**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK, | : | CASE NO. 3:20-cv-00516-VAB |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON and ALPHA | : | |
| ENTERTAINMENT LLC, | : | |
| | : | |
| Defendants. | : | FEBRUARY 5, 2021 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH CLAIMS
IN THE SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL ALLEGATIONS ...................................................................................................... 2

    I.     Luck's Employment Contract ................................................................... 2

    II.    Luck's Termination for Cause .................................................................. 3

    III.    Luck's Lawsuit.......................................................................................... 4

          A.     The Initial Complaint ................................................................... 4

          B.     This Court's Ruling....................................................................... 5

          C.     The Amended Complaint .............................................................. 5

          D.     The Discovery Disputes Between The Parties.............................. 5

          E.     The Second Amended Complaint ................................................. 6

LEGAL STANDARD..................................................................................................................... 7

ARGUMENT ................................................................................................................................... 8

    I.     Luck Cannot Assert A Breach of the Implied Covenant of Good Faith Claim Against McMahon Because He Is Not A Party To The Employment Contract.................................................................................................... 8

    II.    Luck Cannot Assert A Breach of the Implied Covenant of Good Faith Claim To Achieve A Result Contrary To The Clearly Expressed Terms of the Employment Contract and the Guaranty....................................... 9

    III.    Luck Cannot Assert A Breach of the Implied Covenant of Good Faith Claim Because He Has Failed to Plead Facts Establishing Bad Faith................. 12

    IV.    Luck's Breach of the Implied Covenant of Good Faith Claims Are Unnecessary and Duplicative of His Breach of Contract Claims. ........................ 15

CONCLUSION............................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arch Insurance Co. v. Centerplan Construction Co., LLC*,
    No. 3:16-CV-01891, 2018 WL 6519063 (D. Conn. Dec. 11, 2008) ......................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................7

*Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc.*,
    132 Conn. App. 85 (2011), *aff'd*, 311 Conn. 123 (2014) ..................................................8, 13

*Brass v. American Film Technologies, Inc.*,
    987 F.2d 142 (2d Cir. 1993)...............................................................................................7

*Bruno v. Whipple*,
    138 Conn. App. 496 (2012) .................................................................................................8

*Casper v. Combustion Engineering, Inc.*,
    No. CV 97-0570516S, 1998 WL 389215 (Conn. Super. Ct. June 23, 1998)..........................15

*Dunn v. Signorelli*,
    No. 3:10-CV-1037, 2012 WL 4512564 (D. Conn. Sept. 30, 2012) ......................................11

*Eis v. Meyer*,
    213 Conn. 29 (1989) .......................................................................................................... 9

*Eno Farms Cooperative Ass'n v. Corporation for Independent Living*,
    No. 3:06-CV-1983, 2007 WL 3308016 (D. Conn. Nov. 13, 2007)........................................7

*GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*,
    No. 3:14-CV-01222, 2017 WL 4227654 (D. Conn. Sept. 22, 2017).....................................12

*Geysen v. Securitas Security Services USA, Inc.*,
    322 Conn. 385 (2016) ........................................................................................................14

*Grand Light & Supply Co., Inc. v. Honeywell, Inc.*,
    771 F.2d 672 (2d Cir. 1985)...............................................................................................11

*In re Joint Eastern & Southern District Asbestos Litigation*,
    14 F.3d 726 (2d Cir. 1993).................................................................................................16

*Kollar v. Allstate Insurance Co.*,
No. 3:16-CV-01927, 2017 WL 3222535 (D. Conn. July 28, 2017) ..................................10, 13

*Li Poa v. Stamford Hospital*,
No. 095027372, 2011 WL 6945670 (Conn. Super. Ct. Nov. 18, 2011) ..................................8

*Macomber v. Travelers Property & Casualty Corp.*,
261 Conn. 620 (2002) ..................................................................................................................8

*Magnan v. Anaconda Industries, Inc.*,
193 Conn. 558 (1984) ................................................................................................................10

*Major Oldsmobile, Inc. v. General Motors Corp.*,
No. 95-7595, 1996 WL 280452 (2d Cir. May 17, 1996) ..........................................................10

*O & G Industries, Inc. v. Litchfield Insurance Group, Inc.*,
No. LLICV126006448S, 2013 WL 3871341 (Conn. Super. Ct. July 1, 2013) ........................16

*Richards v. Direct Energy Services, LLC*,
246 F. Supp. 3d 538 (D. Conn. 2017), *aff'd*,
915 F.3d 88 (2d Cir. 2019)........................................................................................................14

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013)...........................................................................................................7

*Sidorova v. East Lyme Board of Education*,
158 Conn. App. 872 (2015) ...................................................................................................... 13

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
No. 97-9056, 1998 WL 667836 (2d Cir. Sept. 14, 1998) .........................................................10

*Thompson v. Advanced Armament Corp., LLC*,
614 F. App'x 523 (2d Cir. 2015) ..............................................................................................10

*Umbach v. Carrington Investment Partners*,
No. 3:08 CV 484, 2009 WL 413346 (D. Conn. Feb. 18, 2009)................................................16

*West v. Access Control Related Enterprises, LLC*,
No. N17C-11-137, 2019 WL 2385863 (Del. Super. Ct. June 5, 2019) ....................................11

*Woodard v. Reliance Worldwide Corp.*,
819 F. App'x 48 (2d Cir. 2020) ........................................................................................... 11, 14

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................................1, 7

Defendants Vincent K. McMahon ("McMahon") and Alpha Entertainment LLC ("Alpha") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the breach of the implied covenant of good faith and fair dealing claims in the Second Amended Complaint filed by Plaintiff Oliver Luck ("Luck") (ECF No. 145).[1]

## PRELIMINARY STATEMENT

Luck's Second Amended Complaint seeks to add breach of the implied covenant of good faith claims against Defendants in a belated attempt to justify his overly broad and burdensome discovery requests that are wholly unrelated to the central issue in this case of whether there were circumstances constituting cause under Luck's Employment Contract.

Luck's newly asserted breach of the implied covenant of good faith claims fail to state a claim for several reasons. *First*, Luck cannot assert a breach of the implied covenant of good faith claim against McMahon because he was not a party to the Employment Contract that Luck alleges was terminated in bad faith. *Second*, Luck's breach of the implied covenant of good faith claim seeks to achieve a result contrary to the express terms of the Employment Contract (which permitted Alpha to terminate Luck for cause based on any of the specifically enumerated grounds) and the Guaranty (which provided for liability only in the event that amounts were owed under the Employment Contract). *Third*, Luck cannot assert a breach of the implied covenant of good faith claim because he fails to plead sufficient facts to establish that Alpha or McMahon acted with bad

---

[1] Defendants note that Luck also has asserted a breach of the implied covenant of good faith defense and other affirmative defenses to Alpha's counterclaims (ECF No. 150). Alpha intends to amend its counterclaims to assert additional breaches of contract and policy violations by Luck. If Luck reasserts his breach of the implied covenant of good faith defense and his other affirmative defenses to Alpha's amended counterclaims, then Alpha intends to move the strike those defenses because they are legally insufficient. *See* Fed. R. Civ. P. 12(f)(2).

faith.  **Fourth**, Luck's breach of the implied covenant of good faith claims are unnecessary and duplicative of his breach of contract claims.

Accordingly, if Luck engaged in actions constituting cause under the Employment Contract, then Defendants cannot be liable on a bad faith claim for exercising the contractual right to terminate the contract and any further payment obligations to Luck under that contract.  If Luck did not engage in actions constituting cause under the Employment Contract, then his bad faith claims are merely duplicative and redundant of his breach of contract claims.  Either way, the Court should grant Defendants' motion to dismiss Luck's breach of the implied covenant of good faith and fair dealing claims with prejudice.

## FACTUAL ALLEGATIONS

### I.        Luck's Employment Contract

On May 30, 2018, Luck entered into the Employment Contract with Alpha.  (Second Am. Compl. Ex. 1.)  The Employment Contract provided that Luck was to serve as the "Commissioner and CEO" of a new professional football league known as the XFL and was responsible for "all football and business-related operations" of the XFL.  (*Id.* at 1.)  The Employment Contract required Luck to "devote **substantially all** of his business time to the performance of his duties to the XFL" and provided that his other activities must "**not interfere** with the performance of his duties to the XFL." (*Id.* (emphasis added).)  The Employment Contract provided that, in exchange for the performance of Luck's obligations, Alpha would pay Luck a Base Salary of $5 million per Contract Year and a "Guaranteed Annual Bonus" of $2 million if he remained employed "on the last day of each Contract Year," which was June 30 of each year.  (*Id.* at 2.)

The Employment Contract provided that Luck's employment "may be terminated by Alpha **at any time**, with or without cause."  (*Id.* at 3 (emphasis added).)  It provided that Alpha had

-2-

"Cause" to terminate Luck's employment for several reasons, including Luck's "gross negligence of his duties (other than due to illness or disability), ***including an intentional failure to follow any applicable XFL policies or directives***." (*Id.* (emphasis added).) The Employment Contract stated that Alpha was not required to provide Luck with prior written notice or an opportunity to cure prior to his termination "[i]f the act or omission that would otherwise constitute Cause hereunder is not reasonably susceptible to cure." (*Id.*) Moreover, the Employment Contract expressly conditioned the receipt of additional payments by Luck following any termination on "***the absence of circumstances that would constitute Cause***" with no qualification as to whether the circumstances constituting cause were susceptible to cure. (*Id.* at 3-4 (emphasis added).)

## II.    Luck's Termination for Cause

On April 9, 2020, Alpha sent Luck a letter notifying him that his Employment Contract was being "terminated, effectively immediately, for cause" and providing a non-exclusive list of grounds constituting cause. (Second Am. Compl. Ex. 2 at 1-2.)

***First,*** Alpha contended that Luck violated the XFL's policy and McMahon's directive against hiring players with bad reputations due to their questionable or problematic backgrounds by signing Antonio Callaway. Luck knew that Callaway had a lengthy history of drug use and sexual misconduct and affirmatively concealed that information from McMahon. (*Id.* at 1-2.)

***Second***, Alpha contended that Luck violated McMahon's directives to immediately terminate Callaway from the XFL after McMahon learned of Callaway's history. Instead of terminating him, Luck allowed Callaway to continue to practice where he suffered a severe knee injury that obligated Alpha to honor Callaway's contract and pay for his medical expenses. Once again, Luck thereafter failed to disclose to McMahon the consequences of his failure to carry out McMahon's directives. (*Id.* at 2.)

-3-

**Third**, Alpha contended that Luck grossly neglected his duties after March 13, 2020 by largely abandoning his responsibilities as Commissioner and CEO, leaving the XFL's offices and returning home to Indiana, disengaging from the XFL's operations and its efforts to determine whether there was a viable path for the league in the face of the existential threat posed by the COVID-19 pandemic, failing to initiate even a single phone call to McMahon to report on any work-related activities, and failing to substantially devote all of his business time to the performance of his XFL duties as required by his Employment Contract. (*Id.*)

Alpha's termination letter stated that it "is not intended to be, nor is it, an exhaustive and comprehensive statement of all facts justifying Alpha's decision to terminate your contract for cause. Should you decide to challenge or contest this termination as lacking cause, we reserve all rights to offer all evidence demonstrating cause to terminate." (*Id.*) Alpha's termination letter also reminded Luck that his "obligations under the Confidentiality, Non-Solicitation and Non-Competition Agreement survive termination" and that he was in "possession of a phone which is owned by Alpha which should be returned to the company." (*Id.*)

**Fourth**, after the termination letter was sent and this action was commenced, Defendants learned and Luck admitted that he "regularly and routinely" used his Alpha-issued iPhone for non-XFL related business in "violation" of the XFL's technology policies. (ECF No. 106 at 4.) Defendants therefore also contend that Luck's violations of the XFL's technology policies constitute cause for termination under his Employment Contract. (Second Am. Compl. ¶ 20.)

## III.   Luck's Lawsuit

### A.   The Initial Complaint

On April 16, 2020, Luck filed a Complaint solely against McMahon asserting two claims: (1) a breach of contract claim alleging that McMahon failed to pay amounts owed to Luck under

the Guaranty of the Employment Contract; and (2) a declaratory judgment claim seeking a declaration that McMahon waived all defenses under the Guaranty and is primarily responsible for amounts allegedly owed to Luck under the Employment Contract.  (ECF No. 1, Compl. ¶¶ 12-19.)

**B.      This Court's Ruling**

On June 26, 2020, after extensive briefing and oral argument, this Court ruled that Alpha was an indispensable party in this action and rejected Luck's second claim in his Complaint that McMahon was liable under the Guaranty regardless of whether Alpha breached the Employment Contract or whether there were circumstances constituting cause under the contract.  The Court held that, to prevail against McMahon, Luck "would have to establish that Alpha still had an obligation to him and breached that obligation under the Employment Contract."  (ECF No. 79 at 13.)  The Court therefore concluded that "***the issue of whether Alpha validly terminated Mr. Luck for cause under the Employment Contract***, to which the Guaranty applies, must be resolved." (*Id.* at 14 (emphasis added).)  Because Alpha had filed for bankruptcy, the Court stayed this action until Alpha could be joined as an indispensable party.  (*Id.* at 17.)

**C.      The Amended Complaint**

On November 11, 2020, Luck filed an Amended Complaint in this action restating his breach of contract and declaratory judgment claims against McMahon and adding a declaratory judgment claim against Alpha seeking a declaration "that Alpha wrongfully terminated and repudiated the Employment Contract without cause."  (ECF No. 94, Am. Compl. ¶¶ 13-23.)

**D.      The Discovery Disputes Between The Parties**

After the issues were framed by the Amended Complaint, Luck then served broad and burdensome discovery requests on Defendants that went far beyond the scope needed to resolve whether any of the aforementioned "causes" existed under his Employment Contract.  During

discovery conferences, Luck attempted to justify these requests on the grounds that they were relevant to a claim that the termination of his Employment Contract was supposedly pretextual or motivated by improper reasons.  Defendants cited numerous cases demonstrating that pretext and motivation are not relevant in a for-cause termination case.  (ECF No. 137 at 34-35; ECF No. 144 at 2.)

In his final memorandum regarding the pending discovery disputes filed on January 15, 2020, Luck argued for the very first time that the disputed discovery he sought from Defendants was relevant to a breach of the implied covenant of good faith claim that he had never even asserted.  (ECF No. 143 at 4-8, n.4.)  Defendants then advised the Court of their intent to move to dismiss any such claims and respond to Luck's newly-minted and most recent attempt to redefine the case improperly.  (ECF No. 147.)

### E.   The Second Amended Complaint

On January 22, 2020, after the parties had completed briefing on the outstanding discovery disputes, Luck filed a Second Amended Complaint adding a breach of the implied covenant of good faith claim for the first time in an attempt to justify his previously served discovery requests. (ECF No. 145, Second Am. Compl. ¶ 25; Count One ¶ 29, Count Four ¶¶ 38-40.)  The Second Amended Complaint adds to the declaratory judgment claim against Alpha a request for a "declaration that, in violation of the implied duty of good faith and fair dealing, Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract without Cause." (*Id.* Count One ¶ 29.)  The Second Amended Complaint also adds an entirely new count for breach of the implied covenant of good faith against McMahon alleging:

> Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract in violation of the implied duty of good faith and fair dealing in an effort to avoid paying Mr. Luck the amounts owed under the Guaranty. McMahon directed and assisted Alpha in the wrongful termination, breach and/or

repudiation of the Employment Agreement, in an effort to avoid paying Mr. Luck the amounts owed under the Guaranty.  McMahon has continued to ignore his obligations under the Guaranty by refusing to pay Luck.  Thus, McMahon has breached the duty of good faith and fair dealing implied in the Guaranty.

(*Id.* Count Four ¶ 39.)  Defendants now move to dismiss the breach of implied covenant of good faith claims in the Second Amended Complaint.

## LEGAL STANDARD

A complaint that fails to "state a claim upon which relief can be granted" must be dismissed.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering a motion to dismiss, the Court is not required to "to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  On a motion to dismiss, courts can consider "documents attached to the complaint as an exhibit or incorporated in it by reference" and "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  "[J]udicial notice may be taken of court filings and rulings." *Eno Farms Coop. Ass'n v. Corp. for Indep. Living*, No. 3:06-CV-1983, 2007 WL 3308016, at *6 n.9 (D. Conn. Nov. 13, 2007).

## ARGUMENT

**I.      Luck Cannot Assert A Breach of the Implied Covenant of Good Faith Claim Against McMahon Because He Is Not A Party To The Employment Contract**

Luck cannot assert a breach of the implied covenant of good faith claim against McMahon. Luck's breach of the implied covenant claim against McMahon is based on his allegations that McMahon "directed and assisted" Alpha in the wrongful termination of the Employment Contract. (Second Am. Compl. ¶ 39.)  But Luck cannot assert a breach of the implied covenant claim against McMahon based on his alleged conduct in connection with the Employment Contract because McMahon is not a party to that contract.  *See Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 638 (2002) ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.") (internal quotation marks and citation omitted); *Bruno v. Whipple*, 138 Conn. App. 496, 510 (2012) ("[A] person cannot be held liable for breach of the implied covenant of good faith and fair dealing without being a party to a contract."); *Li Poa v. Stamford Hosp.*, No. 095027372, 2011 WL 6945670, at *4 n.3 (Conn. Super. Ct. Nov. 18, 2011) ("Nor has this court found any authority for the proposition that [defendant] can be found to have breached the covenant of good faith and fair dealing by interfering with the plaintiff's contractual entitlement to benefits allegedly owed by [another defendant].").  And although McMahon is a party to the Guaranty, Luck does not allege any conduct by McMahon in connection with the Guaranty that would give rise to a breach of the implied covenant of good faith claim.  Luck's allegations that McMahon "has continued to ignore his obligations under the Guaranty by refusing to pay Luck" (Second Am. Compl. ¶ 39) is nothing more than an ordinary breach of contract claim, which McMahon denies.  *See Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Conn., Inc.*, 132 Conn. App. 85, 99 (2011) ("[A] plaintiff cannot state a claim for breach of the implied covenant simply by alleging a breach of contract, in and of itself."), *aff'd*,

311 Conn. 123 (2014).  Accordingly, Luck's breach of the implied covenant of good faith claims against McMahon must be dismissed.

## II.  Luck Cannot Assert A Breach of the Implied Covenant of Good Faith Claim To Achieve A Result Contrary To The Clearly Expressed Terms of the Employment Contract and the Guaranty.

Luck cannot assert breach of the implied covenant of good faith claims against Alpha or McMahon in an attempt to achieve a result contrary to the clearly expressed terms of the Employment Contract and the Guaranty as already interpreted by the Court.  As this Court held, Luck must demonstrate the absence of cause under the Employment Contract in order to hold McMahon liable under the Guaranty.  Luck cannot circumvent the express terms of these contracts or this Court's holding by seeking to impose liability on Defendants under a bad faith theory if cause existed under the Employment Contract.

*First*, Luck cannot seek to hold Defendants liable on a breach of the implied covenant of good faith claim by alleging that his termination for cause was "pretextual" or motivated by a desire to avoid paying him (Second Am. Compl. ¶¶ 1, 11, 17, 20, 25, 39) because the Employment Contract expressly permitted Alpha to terminate Luck for cause if any of the specifically enumerated grounds for cause under the contract existed.

As the Connecticut Supreme Court and this Court have recognized, the implied covenant of good faith and fair dealing "cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy."  *Eis v. Meyer*, 213 Conn. 29, 36–38 (1989) (internal quotation marks and citation omitted) (upholding dismissal of breach of the implied covenant of good faith claim because "the terms concerning the termination of the easement, were clearly set forth in the instrument of conveyance" and "[t]o imply a covenant of good faith and fair dealing in this case would achieve a result contrary to the

express language of the easement");  *Magnan v. Anaconda Indus., Inc.,* 193 Conn. 558, 566–67 (1984) (upholding dismissal of breach of implied covenant of good faith claim where employer exercised its contractual right to terminate employee at will); *see also Kollar v. Allstate Ins. Co.*, No. 3:16-CV-01927, 2017 WL 3222535, at *5 (D. Conn. July 28, 2017) (Bolden, J.) ("[A] claim for breach of the implied covenant of good faith and fair dealing must be based on the terms of the contract and cannot be applied to achieve a result contrary to the express terms." (quoting *Beckenstein Enters.-Prestige Park, LLC v. Keller*, 115 Conn. App. 680, 693-94 (2009))).

A party therefore does not breach the implied covenant of good faith and fair dealing by exercising its contractual right to terminate a contract for cause even if the termination is motivated by other reasons.  *See Thompson v. Advanced Armament Corp., LLC*, 614 F. App'x 523, 525 (2d Cir. 2015) ("[A] defendant would violate the implied covenant if it compelled a plaintiff's violation of a for-cause-termination provision in order to justify termination.  Absent such purposeful sabotage, however, *a termination for cause cannot breach the implied covenant, even if motivated by reasons unrelated to cause*.") (emphasis added); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, No. 97-9056, 1998 WL 667836, at *1 (2d Cir. Sept. 14, 1998) (rejecting plaintiff's argument that "[defendant] was justified in terminating the agreement 'for cause' only if [plaintiff's] breach was in fact its true reason for termination" and agreeing with the district court that "[plaintiff's] nonpayment furnished a good faith reason to terminate for cause and made any allegations of other improper motives irrelevant to a determination of good faith performance"); *Major Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 95-7595, 1996 WL 280452, at *3  (2d Cir. May 17, 1996) ("[E]ven if there were such ulterior motives on the part of [the defendant], these motives would not have affected its right to terminate the Dealer Agreement.  As long as a party has the legal right to terminate its obligation under the contract, it is legally irrelevant whether [the party] was also

-10-

motivated by reasons which would not themselves constitute valid grounds for termination of the contract.") (internal quotation marks and citation omitted); *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 679 (2d Cir. 1985) (holding that, under Connecticut law, good faith requirements "may not be used to override explicit contractual terms" and "where the contract expressly provides for termination on thirty days notice, no good faith requirement should be implied to override the contractual provisions"); *see also Dunn v. Signorelli*, No. 3:10-CV-1037, 2012 WL 4512564, at *2 (D. Conn. Sept. 30, 2012) (Chatigny, J.) ("[T]he requirement of good faith and fair dealing cannot be applied to limit the parties' agreed upon termination rights."); *West v. Access Control Related Enters., LLC*, No. N17C-11-137, 2019 WL 2385863, at *2–3 (Del. Super. Ct. June 5, 2019) (dismissing breach of implied covenant of good faith claim where severance agreement "explicitly defined" the term "Cause" and "[t]he definition does not create a gap in the contract for the Court to fill").

Here, the Employment Contract specifically defined the grounds on which Luck could be terminated for cause. Defendants have articulated with specificity the actions taken by Luck that constitute cause for his termination under the Employment Contract. Luck does not allege that Defendants "compelled" him to engage in these actions in order to justify his termination. Under Luck's implied covenant of good faith theory, however, Defendants could still be liable to pay Luck the entire contract regardless of whether there was cause under the Employment Contract. Allowing an implied covenant of good faith claim to trump the explicit terms of the Employment Contract would achieve a result contrary to the terms of that contract which permitted Alpha to terminate Luck for cause. *See Woodard v. Reliance Worldwide Corp.*, 819 F. App'x 48, 49 (2d Cir. 2020) ("Allowing [plaintiff's] implied covenant claim to go forward would undo the contract's terms and create an independent contractual right that was never negotiated by the parties."). If

cause existed under the Employment Contract, then Defendants cannot be held liable under a bad faith theory for exercising the legal right to terminate Luck for cause under the contract. If cause did not exist under the Employment Contract, then Luck's claim is merely duplicative and redundant of his breach of contract claim. (*See* Section IV, *infra.*)

**Second**, allowing Luck's implied covenant of good faith claim to proceed would also achieve a result contrary to the express terms of the Guaranty. This Court has already held that Luck must establish that Alpha improperly terminated Luck for cause and owed amounts to Luck under the Employment Contract in order for McMahon to be liable under the Guaranty. (ECF No. 79 at 13-14.) This Court expressly rejected Luck's arguments that the Guaranty waived Luck's obligation to demonstrate the absence of cause under the Employment Contract or that McMahon could be liable regardless of whether there was cause under contract. (*Id.*) Accordingly, holding McMahon liable for breach of the implied covenant of good faith under these circumstances would be contrary to the terms of the Guaranty, which conditioned McMahon's liability on Alpha's breach of the Employment Contract and its failure to pay amounts owed under the Employment Contract, and would violate the law of the case as set forth by this Court in its prior ruling. *See GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, No. 3:14-CV-01222, 2017 WL 4227654, at *4 (D. Conn. Sept. 22, 2017) (Bolden, J.) ("Under the long-standing law of the case doctrine principle, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (internal quotation marks and citation omitted).

III.    **Luck Cannot Assert A Breach of the Implied Covenant of Good Faith Claim Because He Has Failed to Plead Facts Establishing Bad Faith.**

Luck cannot assert a breach of the implied covenant of good faith claim because he has failed to plead sufficient facts to establish that Alpha or McMahon acted with bad faith.

"[T]o state a legally sufficient claim for breach of the implied covenant sounding in contract, the plaintiff must allege that the defendant acted in bad faith.  If the plaintiff fails to set forth allegations that the defendant acted in bad faith, a claim for breach of the implied covenant will not lie."  *Blumberg Assocs.*, 132 Conn. App. at 99 (citation omitted).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.  Bad faith means more than mere negligence; it involves a dishonest purpose."  *Id.* at 100 (internal quotation marks, ellipses and citation omitted).  "A mere conclusory allegation of bad faith unsupported by any factual allegations, is insufficient to sustain the claim."  *Kollar*, 2017 WL 3222535, at *7 (Bolden, J.) (internal quotation marks and citation omitted).  Rather, a plaintiff "is required to provide 'particularized facts' to support his claim" for breach of the implied covenant of good faith.  *Id.*

Luck's conclusory allegations that Defendants acted in bad faith because Alpha wrongfully terminated the Employment Contract for cause and McMahon has refused to pay amounts allegedly owed under the Guaranty (Second Am. Compl. ¶¶ 1, 11, 17, 20, 23, 25, 39) are plainly insufficient to state a claim for breach of the implied covenant of good faith.  *See Blumberg Assocs.*, 132 Conn. App. at 100-01 (holding that implied covenant of good faith claim based on allegation that defendant terminated agreement without "cause" as defined by the agreement was insufficient because the plaintiff "failed to set forth *any* factual allegations that [the defendant], in terminating the agreement, committed a fraud, sought to mislead or deceive the plaintiff, acted with an improper motive, or did so with a dishonest purpose"); *Sidorova v. E. Lyme Bd. of Educ.*, 158 Conn. App. 872, 892–93 (2015) (holding that plaintiff failed to allege bad faith when plaintiff

-13-

alleged that her "termination from employment by defendants was wrongful" because the plaintiff was dismissed "without first giving her notice" and "affording her the right to a hearing").

Luck's allegations that his Employment Contract was terminated in order to avoid paying him amounts owed under the Guaranty (Second Am. Compl. ¶¶ 1, 17, 20, 39) are likewise insufficient to establish a breach of the implied covenant of good faith. As this Court has recognized, the implied covenant of good faith "does not undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's expected benefit" and "[f]or this reason, the covenant will be breached only in a narrow range of cases." *Richards v. Direct Energy Servs., LLC*, 246 F. Supp. 3d 538, 557–58 (D. Conn. 2017) (Bolden, J.) (internal quotaiton marks and citation omitted), *aff'd*, 915 F.3d 88 (2d Cir. 2019). If Luck engaged in actions constituting cause under the Employment Contract, then there is nothing wrongful or sinister in Defendants taking steps to terminate any further payment obligations to Luck under that contract. *See Woodard*, 819 F. App'x at 49–50 (upholding dismissal of breach of implied covenant of good faith and fair dealing claim alleging that defendant intentionally delayed terminating the plaintiff's employment in order to avoid paying a bonus under the contract because "even assuming that [defendant] purposefully waited to avoid having to pay [plaintiff] the bonus, that conduct alone does not constitute a breach of the implied covenant in these circumstances").[2] In reality, Luck's bad faith claim merely rehashes his prior position rejected by the Court that

---

[2] Luck has previously cited *Geysen v. Securitas Security Services USA, Inc.*, 322 Conn. 385 (2016) as support for a breach of the implied covenant of good faith claim. (ECF No. 143 at 6-7.) *Geysen* is distinguishable because the termination of the plaintiff's employment in that case was done to avoid paying commissions that were *already owed* and that the plaintiff had reasonably expected to receive based on work that he had *already performed* under the contract. *Id.* at 405-06 & n.15. The termination of Luck's Employment Contract did not deprive Luck of compensation for services that Luck already performed. To the contrary, it is undisputed that Luck received full compensation for his services through the termination of the Employment Contract.

McMahon should pay Luck regardless of whether cause exists—only now he claims that it somehow would constitute bad faith not to do so.

## IV.   Luck's Breach of the Implied Covenant of Good Faith Claims Are Unnecessary and Duplicative of His Breach of Contract Claims.

Given the absence of factual allegations necessary to plead bad faith, Luck's breach of the implied covenant of good faith claims are impermissibly duplicative of his breach of contract claims. Luck's breach of the implied covenant of good faith claims are based on the same factual allegations as his breach of contract claims—that Alpha improperly terminated his Employment Contract for cause and that McMahon has failed to pay him amounts owed under the Guaranty. Luck's breach of the implied covenant of good faith claims also seek the same relief as his breach of contract claims—monetary damages for the amounts allegedly owed under the Employment Contract. Luck's entitlement to recovery of any payments in this action is governed exclusively by the Employment Contract—either Luck is owed additional monies under the Employment Contract or he is not. Accordingly, Luck's breach of the implied covenant of good faith claims are entirely duplicative of his breach of contract claims. *See Arch Ins. Co. v. Centerplan Constr. Co., LLC*, No. 3:16-CV-01891, 2018 WL 6519063, at *16 (D. Conn. Dec. 11, 2008) (dismissing breach of covenant of good faith counterclaim because the allegations in support of it "are essentially identical to those relied upon for their breach of contract counterclaim, making the counterclaim duplicative"); *Casper v. Combustion Eng'g, Inc.*, No. CV 97-0570516S, 1998 WL 389215, at *8 (Conn. Super. Ct. June 23, 1998) (striking breach of implied covenant of good faith claim because it "contains no separate allegation as to how, other than by terminating his employment, the Corporate Defendants violated the covenant of good faith and fair dealing").

Moreover, Luck's claim seeking a declaratory judgment that Defendants breached the implied covenant of good faith is not an independent cause of action and is unnecessary and

duplicative of his other claims in this action.  *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (stating that "a request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights" and is not an "independent cause of action"); *Umbach v. Carrington Inv. Partners,* No. 3:08 CV 484, 2009 WL 413346, at *4 (D. Conn. Feb. 18, 2009) (dismissing a declaratory judgment claim where plaintiff alleged overlapping substantive causes of action); *O & G Indus., Inc. v. Litchfield Ins. Grp., Inc.*, No. LLICV126006448S, 2013 WL 3871341, at *6 (Conn. Super. Ct. July 1, 2013) (striking a declaratory judgment claim because "there is no need for this court to declare the rights of the parties because the court's interpretation of the contract under the plaintiff's breach of contract claim will determine the parties' rights").

## CONCLUSION

For the reasons set forth above, the Court should grant Defendants' motion to dismiss Luck's breach of the implied covenant of good faith and fair dealing claims in the Second Amended Complaint with prejudice.

DEFENDANTS VINCENT K. MCMAHON
and ALPHA ENTERTAINMENT LLC

By:  */s/ Jerry S. McDevitt*
Jerry S. McDevitt
Curtis B. Krasik
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP

-16-

242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

## CERTIFICATE OF SERVICE

I hereby certify that, on February 5, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 _/s/ Jeffrey P. Mueller_____
Jeffrey P. Mueller (ct27870)

-17-