UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

OLIVER LUCK,
    *Plaintiff*,

v.

VINCENT K. MCMAHON and ALPHA ENTERTAINMENT LLC,
    *Defendant.*

No. 3:20-cv-00516 (VAB)

**RULING AND ORDER ON DISCOVERY DISPUTES**

Oliver Luck ("Plaintiff") and Vincent K. McMahon and Alpha Entertainment LLC (together, "Defendants") have submitted discovery disputes for the Court's resolution. *See* Pl.'s Brief Position Statement for Dec. 17, 2020 Disc. Conf., ECF No. 106 (Dec. 10, 2020) ("Pl.'s First Disc. Mem."); Defs.' Mem. for Disc. Conf., ECF No. 107 (Dec. 10, 2020) ("Defs.' First Disc. Mem."); Pl.'s Suppl. Position Statement for Dec. 17, 2020 Disc. Conf., ECF No. 110 (Dec. 16, 2020) ("Pl.'s Second Disc. Mem."); Pl.'s Brief Position Statement for Jan. 12, 2021 Disc. Conf., ECF No. 136 (Jan. 8, 2020) ("Pl.'s Third Disc. Mem."); Defs.' Mem. re Disc. Disputes, ECF No. 137 (Dec. 10, 2020) ("Defs.' Second Disc. Mem."); Pl.'s Additional Mem. re Disc. Disputes, ECF No. 143 (Jan. 15, 2021) ("Pl.'s Fourth Disc. Mem."); Defs.' Suppl. Mem. re Disc. Disputes, ECF No. 144 (Jan. 15, 2021) ("Defs.' Third Disc. Mem.").

As discussed below, the Court rules as follows:

Mr. Luck's objection to the discovery of the passcode for the Alpha-issued iPhone is overruled. Defendants may use the previously provided passcode to access the contents of the Alpha-issued iPhone upon the development and implementation of a system to segregate and remove privileged content with Mr. Luck.

1

Defendants' objections to Mr. Luck's discovery requests are overruled. Defendants shall comply with Mr. Luck's discovery requests 1, 5, 6, 7, 8, 9, 11, 12, 16, 17, 18, 19, 24, 25, 26, 27, 28, and 29. Defendants also are ordered to provide complete answers to Mr. Luck's interrogatories 1, 2, and 4.

The parties are ordered, by **March 8, 2021**, to file a proposed scheduling order, including dates for the close of discovery, a post-discovery telephonic status conference, the filing of dispositive motions, any responses or replies to any dispositive motions, the joint trial memorandum, and a trial-ready date.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Mr. Luck alleges that he "agreed to be the Commissioner and CEO for the new professional football league known as the XFL." Am. Compl., ECF No. 94 ¶ 7 (Nov. 16, 2020). On May 30, 2018, Mr. Luck allegedly "entered into the Contract for Employment as Commissioner and CEO." *Id.* (citing Ex. 1 to Am. Compl., ECF No. 94-1 (Nov. 16, 2020) ("Employment Contract")).

Mr. Luck alleges that "[o]n April 9, 2020, Alpha wrongfully terminated Mr. Luck's employment allegedly for cause, effective immediately, and repudiated the Employment Contract." *Id.* ¶ 11.

Mr. Luck alleges that Mr. McMahon "was the controlling owner of Alpha during the entire period Mr. Luck was employed by Alpha and when Mr. Luck was . . . terminated by Alpha." *Id.* ¶ 8. Mr. McMahon also allegedly was "a primary obligor, [and] personally, unconditionally, and irrevocably guaranteed Alpha's performance of its agreements and obligations under the Employment Contract, including, but not limited to, payment of Mr. Luck's base salary and

guaranteed annual bonus." *Id.* (citing Ex. A to Ex. 1 of Am. Compl., ECF No. 94-1 at 7 (Nov. 16, 2020) ("Guaranty")).

Allegedly, "[Mr.] McMahon executed the Guaranty in favor of Mr. Luck for payment and performance of Alpha's obligations under the Employment Contract" and "waived any legal or equitable defenses to Mr. Luck's enforcement of the Guaranty." *Id.* ¶ 10

### B. Procedural Background

Familiarity with the early procedural history of this action is assumed. *See* Ruling and Order on Mot. for PreJ. Remedy and Mot. for Disclosure of Assets, ECF No. 79 (June 26, 2020).

On June 26, 2020, the Court administratively closed the case due to "the ongoing bankruptcy proceeding of Alpha Entertainment, an indispensable party" to this action. Order Administratively Closing Case, ECF No. 80 (June 26, 2020).

On October 20, 2020 Mr. Luck moved to lift the stay and amend his Complaint. Mot. to Lift Stay, ECF No. 90 (Oct. 20, 2020); Mot. to Amend, ECF No. 91 (Oct. 20, 2020).

On November 11, 2020, the Court granted these motions. Order, ECF No. 93 (Nov. 11, 2020).

On November 16, 2020, Mr. Luck filed his Amended Complaint. Am. Compl., ECF No. 94 (Nov. 16, 2020).

On December 8, 2020, the parties jointly moved for a discovery conference. Joint Mot. for Disc. Conf., ECF No. 101 (Dec. 8, 2020). The next day, the Court granted the parties' motion. Order, ECF No. 104 (Dec. 9, 2020).

On December 10, 2020, Mr. Luck and Defendants filed position statements in advance of the December 17, 2020 discovery conference. Pl.'s First Disc. Mem.; Defs.' First Disc. Mem.

3

On December 15, 2020, Mr. Luck moved for leave to file a supplemental position statement for the 2017 discovery conference. Pl.'s Mot. for Leave to File Suppl. to Position Statement for Dec. 17, 2020 Disc. Conf., ECF No. 108 (Dec. 15, 2020). The next day, the Court granted this motion and Mr. Luck filed his supplemental statement. Order, ECF No. 109 (Dec. 16, 2020); Pl.'s Second Disc. Mem.

On December 17, 2020, the Court held a discovery conference, Min. Entry, ECF No. 123 (Dec. 23, 2020), and issued an order requesting the parties submit a proposed stipulation agreement regarding any potential spoliation issues with Mr. Luck's Alpha-issued cellphone and setting deadlines related to an additional discovery conference, Order, ECF No. 111 (Dec. 17, 2020).

On December 23, 2020, the Court issued the following order regarding the passcode issue:

> Due to the parties' failure to reach an agreement regarding the spoliation stipulation ordered by the Court, *see* ECF No. 111, and the misrepresentations or misunderstandings of Plaintiff's counsel at the Discovery Conference on December 17, 2020 as to the previous deletion of information on the Alpha-issued cellphone, the Court orders that Plaintiff's counsel obtain the passcode and provide it to Defendants' counsel by December 24, 2020 at 12:00 p.m. in order to properly preserve the evidence on the cellphone while the underlying merits of the passcode issue are considered. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). The issue of whether any information obtained from the cellphone can be used in the litigation or is properly discoverable will await the Discovery Conference on January 12, 2021 and possibly other proceedings.
>
> During the interim period before the January 12, 2021 Discovery Conference, Defendants shall designate a technology professional who will ensure the preservation of the information on the cellphone. This designee shall not share the information on the cellphone with any other persons, including counsel for Defendants, or otherwise alter the information preserved on the cellphone, unless or until instructed by the Court. Counsel for Defendants shall submit a declaration confirming compliance with this order by January 8, 2021. If the Court ultimately resolves the passcode issue in

4

> Plaintiff's favor, the technology designee will be directed to destroy any and all information or copies obtained from the cellphone under this order.

Order, ECF No. 124 (Dec. 23, 2020) (emphasis omitted).

On January 7, 2020, Defendants filed an Answer to the Amended Complaint. Answer, ECF No. 126 (Jan. 7, 2021).

On January 8, 2020, Mr. Luck and Defendants filed position statements in advance of the January 12, 2020 discovery conference. Pl.'s Third Disc. Mem.; Defs.' Second Disc. Mem.

On January 12, 2021, the Court held a second discovery conference, Min. Entry, ECF No. 138 (Jan. 12, 2021), and issued an order providing the parties with the opportunity to submit additional brief and stating that the Court would resolve all pending discovery disputes on the written submission of the parties, Order, ECF No. 139 (Jan. 12, 2021).

On January 15, 2020, Mr. Luck and Defendants filed additional briefing on the discovery disputes. Pl.'s Fourth Disc. Mem.; Defs.' Third Disc. Mem.

## II.  STANDARD OF REVIEW

### A. Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure provides in relevant part that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The Advisory Committee's notes to the 2015 amendment of Rule 26 further explain:

5

> A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

*Id.*, Advisory Committee's Note to 2015 Amendment.

### III.    DISCUSSION

The parties have submitted extensive briefings on the outstanding discovery disputes.

The Court will take each dispute in turn, summarizing the arguments from each party most salient to its determination.

As a preliminary matter, even after the 2015 amendments, "'[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.'" *Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)). "Where the discovery sought is relevant, the party seeking production bears the burden of showing that good cause exists to grant the motion." *Melillo v. Brais*, No. 3:17-cv-520 (VAB), 2018 WL 306698, at *1 (D. Conn. Jan. 5, 2018). Once the party seeking discovery has demonstrated relevance, "[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive." *Klein v. AIG Trading Grp. Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal alterations and quotation marks omitted).

Under Rule 26(b)(1), as amended, "[the] Court must [also] determine whether the discovery sought is proportional to the needs of the case," and is permitted to limit certain discovery that is "not proportional" "[e]ven if relevant to the case." *Hybrid Athletics, LLC v.*

6

*Hylete, LLC*, No. 3:17-cv-1767 (VAB), 2019 WL 4143035, at *10 (D. Conn. Aug. 30, 2019) (quoting *Metcalf v. Yale Univ.*, No. 3:15-cv-1696 (VAB), 2017 WL 6614255, at * 2 (D. Conn. Dec. 27, 2017)). "The proportionality determination limits the scope of discovery by considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense outweighs the likely benefit of the discovery sought." *Taveras v. Semple*, No. 3:15-cv-531 (VAB), 2020 WL 3489529, at *7 (D. Conn. June 27, 2020) (internal alterations and quotation marks omitted).

The district court has "wide latitude to determine the scope of discovery." *In Re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *Mirra v. Jordan*, No. 13-CV-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion."); *see also Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 558 (D. Conn. 2006) ("The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." (quoting *Yancey v. Hooten*, 180 F.R.D. 203, 207 (D. Conn. 1998) (internal quotation marks omitted))).

### A. Plaintiff's Objections Regarding the Request for the Passcode to the Alpha-issued iPhone

Defendants seek the passcode[1] to the iPhone issued to Mr. Luck for use in his work as Commissioner and CEO of the XFL ("Alpha-issued iPhone"), so that the iPhone may undergo "forensic imaging and analysis." Defs.' First Disc. Mem. at 1. Defendants argue that Mr. Luck is

---

[1] Defendants are currently in possession of the passcode, but do not have access to the contents of the Alpha-issued iPhone under Order, ECF No. 124.

"legally obligated to disclose the passcode to [the Alpha-issued] iPhone." *Id.* (emphasis omitted) (citing Conn. Gen. Stat. § 31-40x(c)(1) (requiring "an employee or applicant provide such employer with a user name and password, password or any other authentication means for accessing" any "electronic communications device supplied or paid for, in whole or in part, by such employer.")).

Defendants further argue that access to the Alpha-issued iPhone is "necessary to obtain relevant evidence" because the full contents of the iPhone "are critical to establishing that [Mr.] Luck violated applicable XFL technology policies;" "are relevant to showing that [Mr.] Luck . . . grossly neglected his duties;" "are relevant to showing the [Mr.] Luck . . . failed to comply with the XFL's player personnel policy and [Mr.] McMahon's directives;" and "[are] necessary to preserve . . . content[] and determine whether [Mr.] Luck . . . deleted or altered relevant evidence," all of which go to Mr. Luck's termination for cause. *Id.* at 2–3. Defendants also argue that the Alpha-issued iPhone is "central" to several for cause grounds for termination. Defs.' Second Disc. at 13, 14, 16, 31.

Mr. Luck argues that "Defendants have no legitimate legal basis that entitles them to [his] passcode and personal information" and that Conn. Gen. Stat. § 31-40x(c)(1) is not applicable to him because it does not contemplate "former employees or former employers." Pl.'s First Disc. Mem. at 2 (emphasis omitted). Mr. Luck suggests that "Defendants' request for the passcode is no more than a fishing expedition." *Id.* at 3. In lieu of providing the passcode, Mr. Luck offers to "stipulate that he regularly and routinely used the [Alpha-issued] iPhone for both work and non-work purposes." *Id.* at 3–4 (emphasis omitted).

Mr. Luck further argues that "[t]he information that . . . Defendants seek . . . is not reasonably calculated to lead to the discovery of admissible evidence because [his] personal use

8

of the cellphone was not and could not have been a basis for his termination." Pl.'s Second Disc. Mem. at 2. Mr. Luck insists that "whether [he] used the [Alpha-issued] iPhone for personal matters is irrelevant to the issues in this case." *Id.*

Finally, Mr. Luck objects to the disclosure of the passcode because the Alpha-issued iPhone allegedly "contains communications protected by attorney-client privilege as well as communications that pre-date Mr. Luck's employment by Alpha and are therefore outside the relevant period." Pl.'s Third Disc. Mem. at 1.

In response, Defendants argue that Mr. Luck's proposed stipulation is insufficient, Defs.' Second Disc. Mem. at 22–23; production of selective contents of the Alpha-issued iPhone is insufficient, *id.* at 23–24; and Mr. Luck has no privilege of privacy interest in the Alpha-issued iPhone, *id.* at 24–27.

The Court agrees.

Defendants allege that Mr. Luck was terminated for cause as defined in the Employment Contract because Mr. Luck "violated the XFL's player personnel policy and [Mr.] McMahon's directives by hiring . . . [and] failing to immediately terminate Antonio Callaway;" Mr. Luck "repeatedly violated the XFL's technology policies;" and Mr. Luck "grossly neglected the performance of his duties after March 13, 2020." *Id.* at 11. Information that "bears on" these stated causes for termination could reasonably be found in the contents of the Alpha-issued iPhone. *See Bagley,* 2015 WL 8750901, at *7 ("Relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." (internal quotation marks omitted)). Mr. Luck's use of the Alpha-issued iPhone is directly relevant to, at the very least, his alleged violation of the XFL's technology policy and

9

thus, the Alpha-issued iPhone is relevant to Defendants' defenses and claims. *See* Fed. R. Civ. P. 26(b)(1).

Defendants contend that they are legal obligated to the passcode under Conn. Gen Stat. § 31-40x(c)(1). Defs.' First Disc. Mem. at 2. Because the contents of the passcode should be disclosed under Rule 26, the Court need not, and does not, decide whether this statute is applicable in this case.

Mr. Luck raises the issues of admissibility and attorney-client privilege. *See* Pl.'s Second Disc. Mem. at 2; Pl.'s Third Disc. Mem. at 1. As to admissibility, Rule 26 explicitly states, "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The Alpha-issued iPhone is relevant and within the scope of discovery and therefore, need not contain only admissible evidence. With regard to attorney-client privilege, Defendants have proposed a method identifying and segregating privileged information on the Alpha-issued iPhone. *See* Defs.' Second Disc. Mem. at 25, n. 7. The Court is confident the parties can agree on a system of separating privileged information from discoverable content on the Alpha-issued iPhone.

Accordingly, the Court will overrule Mr. Luck's objection and allow Defendants to use the previously provided passcode to access the Alpha-issued iPhone upon the development and implementation of a system to segregate and remove privileged content.

### B. Defendants' Objections to Plaintiff's Discovery Requests

Mr. Luck seeks discovery of documents relevant to his allegations that "his termination was pretextual, for reasons invented on the eve of Alpha's bankruptcy as the only means for Mr. McMahon to avoid his absolute and unconditional guarantee of Mr. Luck's salary, bonuses, and benefits." Pl.'s Third Disc. Mem. at 2. Mr. Luck argues that "Defendants should be compelled to

produce . . . all documents and communications about and with Mr. Luck (not solely Messrs. McMahon's and Luck's communications with each other)" as well as

> [A]ll documents related to Mr. Luck's performance (bad and good); Mr. McMahon's availability during the timeframe Mr. Luck was supposedly "disengaged" from his duties; Mr. Luck's roles and responsibilities; written notices to Mr. Luck that he was violating his contract or any XFL policies; or failing to perform his duties . . . ; and other discovery related to pretext[,] []including Alpha's ownership composition, COVID-19's impact, and Alpha's financial performance[].

*Id.* at 2–3 (emphasis omitted).

Defendants contend that these requests are "irrelevant because they do not relate to the ground for [Mr.] Luck's termination at issue in this case and would impose a wholly unnecessary and expensive discovery burden on Defendants that is not proportional to the needs of the case." Defs.' Second Disc. Mem. at 9.[2] In Defendant's view, Mr. Luck's "termination cannot be pretextual if circumstances constituting cause under his contract exist." *Id.* at 34.

Regarding requests for documents related to Mr. Luck's performance during his tenure with the XFL, Defendants argue that Mr. Luck's "overall performance throughout his tenure as CEO is not relevant to the specific grounds for his termination and would only serve to expand the scope and increase the cost of this litigation by unnecessarily injecting extraneous issues into this case." *Id.* at 32.

Objecting to requests for documents related to "[Mr.] McMahon's activities for the XFL and WWE, the activities of other XFL executives, and whether other XFL employees violated company policies and were terminated for cause," *id.*, Defendants argue that (1) "the activities of

---

[2] Specifically, Defendants have objected to Plaintiff's requests 1, 5, 6, 7, 8, 9, 11, 12, 16, 17, 18, 19, 24, 25, 26, 27, 28, and 29, and provided nonresponsive answers to Plaintiff's interrogatories 1, 2, and 4. *See* Pl.'s Third Disc. Mem. at 3–5; *see also* Exs. 1–4 of Pl.'s Third Disc. Mem., ECF Nos. 136-1, 136-2, 136-3, 136-4 (Jan. 8, 2021).

11

other XFL executives or employees are completely irrelevant to the issue of whether [Mr.] Luck was properly terminated for cause," *id.* at 33 (emphasis omitted); (2) Mr. Luck as CEO and Commissioner of the XFL "should have knowledge of whether other XFL employees were performing their duties and whether they were terminated or disciplined for non-compliance of XFL policies and directives," *id* at 35–36; (3) "[d]iscovery into [Mr.] McMahon's activities for the XFL or WWE is irrelevant to whether cause exists, *id.* at 36; and (4) the requests are "unduly burdensome and disproportionate to the needs of th[e] case," *id.*

For the requests concerning the WWE, Defendants argue that discovery regarding WWE is "irrelevant to whether [Mr.] Luck was properly terminated for cause under his Employment Contract with Alpha and whether there are circumstances constituting cause." *Id.* at 37 (emphasis omitted).

With regard to discovery into Alpha and the XFL's financial performance, Defendants contend that this information is "irrelevant to the issue of whether cause exists under [Mr.] Luck's [e]mployment [c]ontract" and "irrelevant [because] [Mr.] Luck only seeks relief in this action from [Mr.] McMahon under the Guaranty." *Id.*

Mr. Luck responds that his discovery requests "are not merely designed to obtain relevant information in support of his allegations for breach of contract, they are designed to obtain relevant information to test the veracity of Defendants['] defenses, claims[,] and allegations." Pl.'s Fourth Disc. Mem. at 15. Mr. Luck argues that the discovery requested is "directly relevant to his claim that there was no cause for termination." *Id.* at 17.

Defendants argue that Mr. Luck "has not provided any law to support his claim that an allegedly pretextual motive for his termination is relevant if there was cause to terminate his [e]mployment [c]ontract." Defs.' Third Disc. Mem. at 1. Citing several cases, Defendants contend

12

that the pretextual argument is "foreclosed by controlling Second Circuit authority." *Id.* at 2. Defendants also argue that Mr. Luck's pretextual arguments are precluded by the law of the case. *Id.* at 2–3 (citing Order, ECF No. 79).

The Court disagrees.

Mr. Luck alleged that his termination for cause is pretextual. Pl.'s Third Disc. Mem. at 2. Because pretext is often contextual, documents and communications relevant to that claim are going to be broader than the evidence that solely goes to the cause reasons outlined by Defendants. The Court finds that Mr. Luck's discovery requests are relevant and proportional to his claim that his for cause termination was pretextual. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *see also In Re Agent Orange*, 517 F.3d at 103 (noting that the district court has "wide latitude to determine the scope of discovery").

Defendants argue that Mr. Luck cannot bring a claim of pretext, *id.* at 1–3, but notably, much of the caselaw they cite involves matters in later stages of litigation, s*ee ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 387 (S.D.N.Y. 1999) (ruling on motion in limine); *Bullard v. Wastequip Mfg. Co. LLC*, No. CV14-01309 (MMM) (SSX), 2015 WL 12766467, at *1 (C.D. Cal. Apr. 14, 2015) (ruling on motion for summary judgment); *Major Oldsmobile, Inc. v. Gen. Motors Corp.*, 101 F. 3d 684, 1996 WL 280452, at *1 (2d Cir. 1996) (on appeal from an order granting summary judgment); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 164 F. 3d 619, 1998 WL 667836, at *1 (2d Cir. 1998) (on appeal from an order granting summary judgment); *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 675 (2d Cir. 1985) (on appeal following a bench trial). And the other case is distinguishable from this matter on the law. *See Saluja v. Local*

*1199 United Healthcare Workers E.,* No. CV 06-5051 (SJF) (ARL), 2007 WL 3232475, at *1 (E.D.N.Y. Nov. 1, 2007) (finding discovery related to other employees was irrelevant based on the specific statutory requirements for Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185). A determination of the merits of Mr. Luck's pretext claim therefore is premature at this stage of litigation.

Defendants have not demonstrated that Mr. Luck's request and interrogatories are not relevant. *See Klein*, 228 F.R.D. at 422 ("The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive." (internal alterations and quotation marks omitted)).

Accordingly, the Court will overrule all of Defendants' objections and order Defendants to comply with Mr. Luck's discovery requests and complete all interrogatories.

### C. Cost and Volume of Discovery

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

> The proportionality determination limits the scope of discovery by "considering the importance of the issues at stake[,]" the "amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense . . . outweighs the likely benefit" of the discovery sought.

*Ceraldi v. Strumpf*, No. 3:17-cv-1628 (JCH), 2019 WL 5558472, at *1 (D. Conn. Oct. 29, 2019) (quoting Fed. R. Civ. P. 26(b)(1)) (alterations in original). "A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative;

14

(2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005).

Defendant suggest that Mr. Luck's discovery requests would "impose a massive discovery burden on Alpha—a bankrupt entity with no employees." Defs.' Third Disc. Mem. at 3. Defendants indicate that disclosure of documents concerning Mr. Luck may require the "review and production of over 50,000 documents." *Id.* at 4.

Mr. Luck argues that "these requests are not unduly burdensome because the majority of the requested documents can be produced by Defendants by simply providing Mr. Luck a copy of his PST file . . . that contains emails in Mr. Luck's Inbox, Sent Items, Drafts, and Deleted Items." Pl.'s Fourth Disc. Mem. at 15–16.

At this time, the Court does not have enough information to determine whether the discovery requested is not proportional. Representations that production will be overly burdensome are speculative. Once production commences, should Mr. Luck or Defendants be able to more definitively show that discovery requests are overly burdensome or expensive, the Court may consider a change in the scope of discovery or a cost-sharing scheme.

## IV. CONCLUSION

Accordingly, in the interest of judicial economy and consistent with this Court's inherent authority to manage its docket to resolve cases efficiently and expediently, *see Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), and in accordance with the foregoing analysis, the Court rules as follows with respect to the discovery disputes outlined in the Joint Motion.

Mr. Luck's objection to the discovery of the passcode for the Alpha-issued iPhone is overruled. Defendants may use the previously provided passcode to access the contents of the Alpha-issued iPhone upon the development and implementation of a system to segregate and remove privileged content with Mr. Luck.

Defendants' objections to Mr. Luck's discovery requests are overruled. Defendants shall comply with Mr. Luck's discovery requests 1, 5, 6, 7, 8, 9, 11, 12, 16, 17, 18, 19, 24, 25, 26, 27, 28, and 29. Defendants are also ordered to provide complete answers to Mr. Luck's interrogatories 1, 2, and 4.

The parties are ordered, by **March 8, 2021**, to file a proposed scheduling order, including dates for the close of discovery, a post-discovery telephonic status conference, the filing of dispositive motions, any responses or replies to any dispositive motions, the joint trial memorandum, and a trial-ready date.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of February, 2021.

                                                      /s/ Victor A. Bolden
                                                      Victor A. Bolden
                                                      United States District Judge