## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

OLIVER LUCK        §
       §
       *Plaintiff*        §
       §
v.        §        CIVIL NO. 3:20-cv-516 (VAB)
       §
VINCENT K. MCMAHON and        §
ALPHA ENTERTAINMENT LLC        §
       §        February 26, 2021
       *Defendants.*        §

## PLAINTIFF OLIVER LUCK'S MOTION TO COMPEL DOCUMENTS

Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

**AND**

Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

***HIS ATTORNEYS***

**Cases**

*Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) .......................................... 5

*Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Casualty Co.,* Civil No. 3:12cv1641

(JBA), 2015 WL 164069, at *3 (D. Conn. January 13, 2015) .................................. 5, 10, 11, 19

*Antech Diagnostics, Inc. v. Veterinary Oncology and Hematology Center, LLC,* Civ. No.

3:16CV00481(AWT)*,* 2018 WL 2254543, at*3 (D. Conn. May 17, 2018) ............................. 7

*Bianco v. Denning,* FSTCV206045111S, 2020 WL 8130202, at *1 (Conn. Supr. Ct. November 25,

2020) ............................................................................................................................. 5, 6

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004).................... 17

*Deutsche Bank National Trust Co. v. Lichentels,* Nos. CV065007438S, CV044003402S, 2008 WL

5725988, at *4 (Conn. Super. Ct. Dec. 24, 2008).................................................................. 12

*Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975) .................................................. 5

*Edo Corp. v. Newark Ins. Co.*, 145 F.R.D. 18, 21 (D. Conn. 1992) ............................................... 5

*Harp v. King*, 266 Conn. 747, 770, 835 A.2d 953 (2003) ............................................................ 5

*Harrington v. Freedom of Information Commission*, 323 Conn. 1, 12, 144 A.3d 405 (2016) . 5, 10

*Hartmann v. QBE Specialty Ins. Co.*, No. 3:20-cv-01008, 2021 WL 231133, at *4 (D. Conn. Jan.

22, 2021) (Bolden, J.) ........................................................................................................ 17

*Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975) .............................................................. 19

Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)................................ 18

*Horn v. City of New Haven,* CASE NO. 3:18-CV-1502 (JAM), 2019 WL 3997095, at *2 (D. Conn.

August 23, 2019)................................................................................................................ 18

*Hutchinson v. Farm Family Casualty Insurance Co.,* 273 Conn. 33, 41, 867 A.2d 1

(2005) ............................................................................................................. 14, 16, 17, 20

*In re Kidder Peabody Securities Litigation,* 168 F.R.D. 459, 470 (S.D.N.Y. May 16, 1996) ..... 19

2

*Kent Literary Club v. Wesleyan University*, No. CV156013185, 2016 WL 2602274, at *2 (Conn. Supr. Ct. April 12, 2016) ......................................................................... 7, 8, 10

*Kerr v. U.S. Dist. Court for N. Dist. of California*, 426 U.S., 405-06 (1976) ............................... 4

*Kosuda-Bigazzi*, 2020 WL 1808821, at *6 (citing *Harrington*, 323 Conn. at 12)......................... 6

*Kowalonek v. Bryant Lane, Inc*., No. CV 960324942S, 2000 WL 486961, at *4 (Conn. Super. Ct. April 11, 2000)....................................................................................................... 13

Lash v. Freedom of Information Commission, 300 Conn. 511, 516 (2011)................................... 7

*Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.,* 249 Conn. 36, 52, 730 A.2d 51 (1999).................................................................................................................. 6, 15

*Olson v. Accessory Controls & Equip. Corp.,* 254 Conn. 145, 157 (2000)................................. 17

*Ridgaway v. Mount Vernon Fire Ins. Co*., 2012 WL 6901203 at *3 (Conn. Super. Ct. December 24, 2012) ............................................................................................................. 16

*Safeco Ins. Co. of Am. v. Vecsey,* 259 F.R.D. 23, 27–28 (D. Conn. 2009) .................................. 5

*State v. Kosuda-Bigazzi,* (SC 20341), 2020 WL 1808821 at *6, (April 8, 2020)......................... 5

*State v. Toste,* 178 Conn. 626 (1979)........................................................................................ 7

Travel Insured Int'l, Inc. v. iTravelinsured, Inc., No. 3:05CV1305 (MRK), 2005 WL 4012814, at *1 (D. Conn. Nov. 28, 2005) ............................................................................... 18

*Ullman v. State,* 230 Conn. 698, 713 (1994) ......................................................................... 6, 8

*United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991)................................................ 19

*United States v. United Technologies Corp,* No. 3:16-CV-01730 (AVC), 2020 WL 7339916 at *12, (D. Conn. Dec. 14, 2020)............................................................................... 6, 18

To the Honorable Judge Bolden:

Plaintiff Oliver Luck ("Luck") respectfully requests that the Court order that certain limited documents listed on Defendants' Privilege Log be produced.

## I.      BACKGROUND

On January 6, 2021, Defendants served their respective Answers to Plaintiff Luck's First Requests for Production (Alpha and McMahon) and Second Requests for Production (McMahon) asserting various privileges; Defendants supplemented their answers on January 29, 2021. *See* Ex. A attached hereto. On January 29, 2021, Defendants served their Privilege Log on Plaintiff. *See* Ex. B attached hereto. The Log lists almost five hundred (500) documents that are allegedly not discoverable because they are protected by the attorney-client privilege and the work product doctrine. *Id.* In effect, Defendants seek to put a blanket over relevant material email communications that are the subject matter of, and which Defendants have placed "at issue" in, this litigation. Plaintiff seeks to compel the production of certain specific documents because: (a) they are not privileged communications; and/or (b) Defendants have waived the attorney-client privilege and/or work product doctrine regarding such communications.

Alternatively, Plaintiff respectfully requests that the Court order Defendants to submit the documents for *in camera* review by the Court. *See Kerr v. U.S. Dist. Court for N. Dist. of California*, 426 U.S., 405-06 (1976) (The Supreme Court "has long held the view that *in camera* review is a highly appropriate and useful means of dealing with claims of … privilege."); *accord Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Casualty Co.,* Civil No. 3:12cv1641 (JBA), 2015 WL 164069, at *3 (D. Conn. January 13, 2015) ("*Hartford*").

## II.      GOVERNING LAW AND LEGAL REQUIREMENTS

"[I]n a diversity case, the issue of privilege is to be governed by the substantive law of the forum state[.]" *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975); *accord Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989); *see also Safeco Ins. Co. of Am. v. Vecsey*, 259 F.R.D. 23, 27–28 (D. Conn. 2009) ["Where, as here, a federal court's subject-matter jurisdiction is premised on diversity of citizenship, the court must apply state law to privilege issues." (footnote, citation, and internal quotation marks omitted)]. Federal law, however, governs the issue of the work product doctrine. *Edo Corp. v. Newark Ins. Co.*, 145 F.R.D. 18, 21 (D. Conn. 1992) ("a federal court sitting in diversity must apply state law to privilege issues but federal law to those involving work product").

It is the Defendants who must prove that each of the documents at issue in this Motion meets the test for the attorney-client privilege to apply. "[A]s with all privileges, the [party] claiming the attorney-client privilege has the burden of establishing all essential elements." *Harp v. King,* 266 Conn. 747, 770, 835 A.2d 953 (2003) (Internal quotation marks omitted). Further, "[t]he privilege must be established for 'each document separately considered' and must be narrowly applied and strictly construed." *State v. Kosuda-Bigazzi,* (SC 20341), 2020 WL 1808821 at *6, (April 8, 2020) (citing *Harrington v. Freedom of Information Commission*, 323 Conn. 1, 12, 144 A.3d 405 (2016)) (internal quotation marks omitted); *Bianco v. Denning,* FSTCV206045111S, 2020 WL 8130202, at *1 (Conn. Supr. Ct. November 25, 2020) (unpublished opinion).

In *Kosuda-Bigazzi,* the Connecticut Supreme Court recently reaffirmed the narrow scope of the attorney-client privilege stating that: "The [attorney-client] privilege is narrowly applied, strictly construed, and only applies when necessary to foster full and frank *communications*

between attorneys and their clients." 2020 WL 1808821, at *14 (citation omitted) (emphasis original); *see also Bianco,* 2020 WL 8130202.

> [S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures–*necessary to obtain informed legal advice*—which might not have been made absent the privilege.

*Ullman v. State,* 230 Conn. 698, 713 (1994) (emphasis in original) (multiple citations and internal quotations omitted). Thus, "[t]he privilege … is not a blanket privilege." *Kosuda-Bigazzi*, 2020 WL 1808821, at *6 (citing *Harrington*, 323 Conn. at 12); *Bianco*, 2020 WL 8130202, at *1.

The Connecticut Supreme Court has also held that the attorney-client privilege can be waived by placing the advice of counsel "at issue" in the litigation. *See Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.,* 249 Conn. 36, 52, 730 A.2d 51 (1999); *see also United States v. United Technologies Corp,* No. 3:16-CV-01730 (AVC), 2020 WL 7339916 at *12 (D. Conn. Dec. 14, 2020) (Garfinkel, Mag.) (Under federal common law, the "at issue" exception is often referred to as the "subject matter waiver" doctrine and applies to both the attorney-client privilege and the work product doctrine.)

For the work product privilege, Fed.R.Civ.P. 26(b)(3) provides that parties may obtain discovery of documents prepared in anticipation of litigation "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." If such a showing is made and discovery is permitted, "the court shall protect against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id*.

## III.     ARGUMENT

### A.     Defendants' Privilege Log Lists Numerous Documents That Are Not Privileged

#### 1.  The Non-Privileged Emails

Defendants are improperly utilizing the attorney-client privilege and work product doctrine to shield documents that are discoverable. To invoke the attorney-client privilege, a communication must satisfy four criteria:

> (1) the attorney participating in the communication must be acting in a professional capacity as an attorney; (2) the communication must be between the attorney and the client; (3) the communication must be for the purpose of providing legal advice; and (4) the communication must be made in confidence.

*Lash v. Freedom of Information Commission,* 300 Conn. 511, 516 (2011); *Kent Literary Club v. Wesleyan University*, No. CV156013185, 2016 WL 2602274, at *2 (Conn. Supr. Ct. April 12, 2016) (unpublished opinion); *Antech Diagnostics, Inc. v. Veterinary Oncology and Hematology Center, LLC,* Civ. No. 3:16CV00481(AWT), 2018 WL 2254543, at*3 (D. Conn. May 17, 2018) (Merriam, Mag.).

There are numerous documents on Defendants' Privilege Log that do not involve communications between an attorney and the client and therefore are discoverable. Ex. B, P- 33-37, 44, 56, 80-89, 107 – 09, 113-14, 123, 124, 130, 135, 157-58, 160-61, 201, 230, 347, 349, 351, 362-64, 427, 428, 488 and 489 (the "Non-Privileged Emails"). Specifically, none of the Non-Privileged Emails involves a communication by or with an attorney or someone acting as his agent. *State v. Toste*, 178 Conn. 626 (1979).

Even if any of the Non-Privileged Emails involve a communication with an attorney, the information/facts set forth in communications are not necessarily privileged but are discoverable. *See PSE Consulting, Inc. v. Frank Mercede and Sons, Inc.,* 267 Conn. 279, 330, 838 A.2d 135

7

(2004); *Olson v. Accessory Controls & Equip. Corp.,* 254 Conn. 145, 157 (2000) ("A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be 'inextricably linked' to the giving of legal advice." (quoting *Ullmann,* 230 Conn. at 713)) In *Kent Literary Club,* 2016 WL 2602274 at \*8, the court held:

> The attorney-client privilege does not apply in any instance where the client is not seeking *legal* advice from its attorney. *Ullman,* 230 Conn. at 698. Similarly, the attorney-client privilege does not apply when a lawyer provides general business advice. … [W]hile the privilege covers communications made in connection with the rendering of legal advice, it does not extend to the provision of business and management advice. Furthermore, "the business aspects of the decision are not protected simply because legal considerations are also involved. … Indeed, legal advice must *predominate* for the communication to be protected ... [W]hen the legal advice is merely incidental to business advice, the privilege does not apply[.]

(emphasis added) (internal quotation marks and citations omitted).

For example, Non-Privileged Emails P-80-89 (the "Wagner Emails") are communications between and among Cindy Wagner, Alpha's human resources representative, and XFL employees including Mr. Luck. Ex. C (Luck Declaration). The summaries of the Wagner Emails in Defendants' Privilege Log describe them as reflecting legal advice "regarding player background checks". Ex. B at 7-8. None of the Wagner Emails, however, involve communications with an attorney. *Id.* Rather, Plaintiff believes the Wagner Emails reflect business communications by and among XFL employees and executives, including Mr. Luck, that discuss McMahon's knowledge and approval of the four criteria (the "Four Criteria") that the football operations team relied upon when conducting background checks to determine if players, including Mr. Callaway, were disqualified from playing in the XFL. Ex. C. Defendants have repeatedly denied that such Four Criteria existed and that Mr. McMahon approved them. *See* ECF at 17.

Prima facie evidence proving that the Wagner Emails reflect Mr. McMahon's knowledge and approval of the Four Criteria is found in Exhibit D, an email string produced by Defendant Alpha (Bates stamp Alpha_Luck_00017189). Individuals listed on this string include David Walden (head of XFL Human Resources), Mr. Luck, Cindy Wagner and other XFL employees and executives. No attorney or legal advice is identified in the email string. The first email in the string is from Mr. Luck dated July 17, 2019 at 8:57 a.m. in which he wrote:



Ex. D (emphasis added)

In response, on the same day at 9:02 a.m. Mr. Walden wrote: ████████████ ████████████████████████ *Id*. All of the Wagner Emails are dated on or after the email string and are by or between the same XFL employees as listed on the email string (with the addition of Jeff Pollack, the XFL's Chief Operating Officer). Ex. D; *see also* Ex. B at 7-8. Accordingly, because the Wagner Emails do not involve any communication by or with an attorney for the purpose of seeking legal advice, they are not privileged communications and should be produced.

Alternatively, Plaintiff respectfully requests that Defendants be ordered to submit the Non-Privileged Emails the Court for *in camera* inspection to determine, in the first instance, if they are privileged. *See Hartford,* 2015 WL 164069 at *3 ("Courts have broad discretion to conduct *in camera* review to make this initial determination. …"). If the Non-Privileged Emails are worthy

of the privilege asserted because they include actual legal advice, Plaintiff requests that the Court order Defendants to redact that portion of the email reflecting the alleged legal advice and produce the remainder of those emails unless Defendants can prove that the facts are inextricably linked to the giving of legal advice. In *Harrington*, the Connecticut Supreme Court held that "When the legal aspects of the communication are incidental or subject to separation, the proponent of the privilege may be entitled to redact those portions of the communication." 323 Conn. at 18. *Harrington* quoted *Kent Literary Club* with approval holding:

> [W]ith regard to whether the communications at issue were "inextricably linked to the giving of legal advice, a determination must be made that the claimed privileged matter is so intertwined with [a] non-privileged matter that it cannot be redacted or otherwise separated.

*Id.* (quoting *Kent Literary Club*, 2016 WL 2602274, at *8) (second alteration in original) (internal quotation marks omitted).

### 2. The Callaway Emails

In addition, the Court should also compel the production of Privileged Log documents P-315-325 (the "Callaway Emails").  The description summaries on Defendants' Privilege Log for the Callaway Emails state that they are "**seeking information** for purposes of providing legal advice regarding A. Callaway". Ex. B at 24-25 (emphasis added); therefore, they are not privileged. See *Ullmann*, 230 Conn. at 713 ("A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice."). This assertion is woefully insufficient. In *Harrington,* 323 Conn. at 16,  the Connecticut Supreme Court held

> [I]t is not enough for the party invoking the privilege to show that a communication to legal counsel relayed information that might become relevant to the future rendering of legal advice. Instead, the communication must also either explicitly or implicitly *seek specific legal advice* about that factual information.

10

(Emphasis added; internal quotation marks omitted.)

Besides having put the Callaway matter "at issue", *infra*, Defendants' description summaries on their Privilege Log prove that the emails do not convey legal advice, but rather simply discuss facts surrounding the Callaway matter. Ex. B at 24-25. Because there are no emails listed on the Privilege Log reflecting actual legal advice provided to Defendants on the Callaway matter, the subject emails cannot be "inextricably linked" with the rendering of legal advice.

Moreover, the Callaway Emails are all dated in January 2020 (months before Plaintiff's termination), and only "seek information" according to Defendants' own description. It is beyond cavil that Mr. Luck is entitled to discover the facts known by Defendants regarding the "Callaway matter" and when Defendants knew them. Alternatively, the Court should order Defendants to submit the Callaway emails for *in camera* review to determine, in the first instance, if they are documents worthy of the privileges asserted. *Hartford,* 2015 WL 164069, at *3. Alternatively, at a minimum, the Court should order Defendants to redact the allegedly privileged legal advice and produce the remainder of the emails.

**B.      Defendants Have Waived the Privilege for Certain Documents Because They Have Put the Subject of the Communications "at Issue" and the Documents Should be Produced**

In *Metropolitan life Insurance Co.*, the Connecticut Supreme Court held that the "at issue" or implied waiver exception to the attorney-client privilege applies when a party

> "specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, **or** specifically places at issue, **in some other manner, the attorney-client relationship.** In those instances the party has waived the confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without examination of the legal advice.**"**

249 Conn. at 53 (emphasis added); *see also Deutsche Bank National Trust Co. v. Lichentels,* Nos. CV065007438S, CV044003402S, 2008 WL 5725988, at *4 (Conn. Super. Ct. Dec. 24, 2008) (unpublished opinion) (The purpose of protecting confidential communications may not apply where the party asserting the privilege has invited the inquiry which the privilege is designed to protect.)

In the present case, Defendants have specifically placed their attorney-client relationship at issue through manners other than direct testimony. Undisputed evidence of Defendants' reliance on counsel's advice for the grounds and decision to terminate Mr. Luck with cause is found in the April 9, 2020 Termination Letter sent on behalf of Defendants by their counsel, Mr. McDevitt. *See* Ex. E. Prima facie evidence that Defendants acted in bad faith when terminating Mr. Luck for cause is found in the Termination Letter. There, Defendants asserted that Mr. Luck was being terminated for cause because he allegedly selected improper stadium venues. *Id*. at 1. Now, however, Defendants' have abandoned that claim. ECF 153.

Further, in their Second Affirmative Defense, Defendants' allege that Mr. Luck breached his Employment Contract, and was properly terminated for cause, by:

> (a)  his failure to devote substantially all of his business time to the XFL and to the performance of his duties to the XFL;
>
> (b)  his involvement in other business activities that interfered with his performance of his duties to the XFL;
>
> (c)  his willful and intentional material misconduct in the performance of his duties to the XFL;
>
> (d)  his gross negligence in the performance of his duties to the XFL;
>
> (e)  his intentional failure to follow applicable XFL policies and directives; and
>
> (f)  his willful disregard of McMahon's lawful instructions concerning his material duties under the Employment Contract.

ECF 126 at 4.

**1. Wagner Emails**

In the Termination Letter, Defendants assert that Mr. Luck "disregarded the lawful directives of Mr. McMahon not to sign or employ players with questionable backgrounds". Ex. E at 1. Defendants' also assert, as affirmative defenses, that Mr. Luck failed to "follow applicable XFL policies and directives" and "willful[ly] disregard[ed] … McMahon's lawful instructions concerning his material duties under the Employment Contract." *Id.* Mr. Luck contends that Mr. McMahon approved an XFL hiring policy regarding player background checks that was defined by the Four Criteria and is reflected in Ex. D; *see* pp 5-6, supra. Consequently, the information and alleged advice in the Wagner Emails regarding "player background checks" place them squarely at issue in this case.

While Defendants summarize the content of each Wagner Email as "reflecting legal advice", the Privilege Log does not identify any attorney who allegedly provided the advice and the date it was allegedly provided. Ex. B at 7-8. Further, Defendants should not be permitted to use the privilege to shield documents discussing the Four Criteria that Mr. Luck and his subordinates relied upon when executing Mr. McMahon's alleged directives while Defendants claim no criteria was provided or approved by Mr. McMahon. Exs. C and D; *see Kowalonek v. Bryant Lane, Inc*., No. CV 960324942S, 2000 WL 486961, at *4 (Conn. Super. Ct. April 11, 2000) (unpublished opinion); see also *Breton v. Commissioner*, 49 Conn. Supp. 592, 598 (While a party is free to use the attorney-client privilege as a "shield", it is improper to use it as a "sword" by seeking to deprive an opposing party of material by which that party may defend against the claim raised.) Defendants assert the attorney-client privilege to avoid their contractual obligations and then using the privilege to hide the facts showing their bad faith termination of Mr. Luck. See

*Hutchinson v. Farm Family Casualty Insurance Co.,* 273 Conn. 33, 41, 867 A.2d 1 (2005) ("just as there is no justification for the attorney-client privilege when a communication was made for the purpose of committing fraud, there is no justification for the privilege when a communication was made for the purpose of evading a legal or contractual obligation to an insured without reasonable justification.")

## 2.  The Performance Emails

In the Termination Letter, Defendants listed three (3) specific reasons for terminating Mr. Luck for cause, one of them being his alleged non-performance of XFL duties from March 14, 2020 to April 9, 2020. In their Second Affirmative Defense, Defendants allege that Mr. Luck

(a)   failed to "to devote substantially all of his business time to the XFL and to the performance of his duties to the XFL";

(b)   was involved in other business activities that interfered with his performance of his duties to the XFL;

(c)   engaged in material misconduct in the performance of his duties to the XFL; and

(d)   was grossly negligence in the performance of his duties to the XFL.

ECF 126 at 4. The numerous emails listed on Defendants' Privilege Log for that specific time period showing that Mr. Luck was involved in, and was consulted about, XFL legal matters belie Defendants' allegations. *See* Defendants' Privilege Log documents numbered P-342 – 404, 407-410 and 419 – 423 (the "Performance Emails"). Nevertheless, Defendants hide behind their assertion of privileges to avoid production of relevant material documents.

Even Defendants concede that they have placed Mr. Luck's performance at issue; *See* Ex. F at 1-2 (excerpts from an e-mail exchange between counsel), but then fail to acknowledge the breadth of their pleadings. Specifically, they have voluntarily and expressly placed the attorney-

client relationship, and communications, between counsel and Alpha (specifically Mr. Luck), at issue as part of their claim/defense that Mr. Luck was terminated for cause because he allegedly failed to properly conduct his XFL duties, including XFL legal matters, from March 13, 2020 to April 9, 2020. *See* ECF 126 at 4; ECF 153 at 15-17. To determine if Defendants' termination of Mr. Luck was proper, the quality of Mr. Luck's response, direction and handling of each legal matter can only be determined in the context of the specific content of the allegedly privileged communication. Yet, because Defendants blanketly assert that Mr. Luck's non-performance of his XFL duties (including XFL legal matters) between March 14, 2020 and April 9, 2020 justify for cause termination, they have waived any claim of privilege for the Performance Emails. *See Metropolitan life Insurance Co..,* 249 Conn.at 52.

To be clear, Plaintiff does not contend there is a blanket waiver of all Alpha attorney-client communications during the March 13 - April 9, 2020 time period. Instead, for this time period and this issue only, Plaintiff contends that only communications with Mr. Luck have been waived. Thus, the Court should compel the Performance Emails.

### 3. The Callaway Emails

Similarly, Defendants have placed Mr. Luck's handling of the "Callaway situation" at issue. Ex. F. The "Callaway Emails" (Documents P-315-325) are all dated in January 2020 (more than sixty (60) days before Mr. Luck's termination) and only "seek information" according to Defendants' own description. It is beyond cavil that Mr. Luck is entitled to discover the facts surrounding Defendants' knowledge about the "Callaway situation" and when Defendants acquired that knowledge. Thus, Defendants' receipt of advice from their lawyers regarding same and the date(s) for same are discoverable. Plaintiff should not be simply required to accept Defendants' representation regarding the content of the emails, particularly when Defendants

contend that they *could not* provide Mr. Luck notice and a thirty (30) day opportunity to cure pursuant to the terms of the Employment Contract. Defendants are not permitted to use the attorney-client privilege as both a sword and a shield. See *Hutchinson*, 273 Conn. at 41. "There is no justification for the privilege when a communication was made for the purpose of evading a legal or contractual obligation to an insured without reasonable justification." *Id.* at 41-42.

Consequently, Plaintiff respectfully requests that Defendants be compelled to produce the Callaway Emails. Alternatively, Plaintiff requests that Defendants submit the Callaway Emails to the Court for *in camera* inspection and thereafter, Defendants be ordered to redact any alleged legal advice and produce the unredacted portions of the Callaway Emails.

### 4.   The Bad Faith Emails

It also appears that Defendants communicated with various attorneys to assist in Defendants' bad faith termination of Mr. Luck starting on March 31, 2020 until April 9, 2020, the date of the Termination Letter. *See* Ex. B at P- 405-06, 411, 414-18 and 424-87 (the "Bad Faith Emails"). All of the Bad Faith Emails (a) involve communications with counsel for Defendants, Mr. McDevitt or his law firm K&L Gates; (b) all are dated April 9, 2020 or earlier; and (c) all are described as "regarding Luck termination". *Id.*

Further, "[i]n a typical claim of bad faith, disclosure of privileged materials is necessary for the resolution of the claim precisely *because* the materials have been placed 'at issue' by the insurer, in which case the privilege is waived." 273 Conn. at 44; *Ridgaway v. Mount Vernon Fire Ins. Co.*, 2012 WL 6901203 at *3 (Conn. Super. Ct. December 24, 2012). "In addition to the 'at issue' exception to the attorney-client privilege, this court has recognized a crime-fraud exception to the privilege that extends to civil fraud." *Hutchison,* 273 Conn. at 39 (citing *Olson*, 254 Conn.

at 169).  A claim of the violation of the duty of good faith is, in effect, a claim involving civil fraud.

> Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive . . . Bad faith means more than mere negligence; it involves a dishonest purpose.

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004); *see also Hartmann v. QBE Specialty Ins. Co.*, No. 3:20-cv-01008, 2021 WL 231133, at *4 (D. Conn. Jan. 22, 2021) (Bolden, J.)

Here Defendants deny that they have acted in bad faith in the investigation of, and the decision to, terminate Mr. Luck for cause. ECF 151 (Motion to Dismiss Plaintiff's Claim for Breach of Duty of Good Faith and Fair Dealing). Thus, Defendants have waived the attorney-client privilege regarding the Bad Faith Emails and they should be compelled to produce same. At a minimum, Defendants should be required to submit the Bad Faith Emails for *in camera* inspection by the Court pursuant to Section D below.

## 2. THE WORK PRODUCT AND FAIRNESS DOCTRINES

Besides the attorney-client privilege, Defendants attempt to avoid production of the Bad Faith Emails by asserting the work product doctrine. *Id.* However, not all materials prepared by an attorney in anticipation of litigation will be protected from discovery. In a diversity case, the work product doctrine is governed by federal law. *Edo Corp.*, 145 F.R.D. at 21.

> Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. [P]roduction might be justified where the witnesses are no longer available or can be reached only with difficulty.

*Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Plaintiff bears the burden of establishing grounds justifying production. *Id.* at 512. Consequently, Plaintiff requests that the Court order that Defendant redact any legal advice on the Bad Faith Emails and produce the remaining facts set forth therein.

In *Horn v. City of New Haven,* CASE NO. 3:18-CV-1502 (JAM), 2019 WL 3997095, at *2 (D. Conn. August 23, 2019) (Spector, Mag.) (slip copy), the court summarized the "fairness doctrine" for waiver of allegedly privileged documents as follows:

> Both attorney-client privilege and **work-product immunity may implicitly be waived** when [a party] asserts a claim that in fairness requires examination of protected communications. It is well established doctrine that in certain circumstances, a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted. … In other words, the attorney-client privilege and work-product protection cannot at once be used as a shield and a sword. … [t]he fairness doctrine analysis applies to waiver of work-product protection just as it does to waiver of attorney-client privilege.). …
>
> The unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party's advancing a claim … while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim. … The Second Circuit has made it clear that [w]hether fairness requires disclosure has been decided ... on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.

(internal citations and quotation marks omitted); *see also United Technologies,* 2020 WL 7339916, at *12 (citing *Travel Insured Int'l, Inc. v. iTravelinsured, Inc.*, No. 3:05CV1305 (MRK), 2005 WL 4012814, at *1 (D. Conn. Nov. 28. 2005)).

The "common denominator" of subject matter waiver is that "in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would

18

have been manifestly unfair to the opposing party." *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975) (cited, though not quoted, in *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991)). Factors bearing on the inquiry include whether "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *In re Kidder Peabody Securities Litigation,* 168 F.R.D. 459, 470 (S.D.N.Y. May 16, 1996) (internal quotation marks omitted) ("Kidder has waived the privilege by its repeated injection of the substance of the report into this and other litigations...").

In the present case Defendants assert the work product privilege applies to the Bad Faith Emails. It would be patently unfair for Defendants to be able to claim that they investigated and determined the grounds upon which they terminated Mr. Luck for cause in good faith; yet permit Defendant to hide the very investigation and facts upon which the determination was made. Consequently, the Court should compel production of the Bad Faith Emails.

### 3. THE COURT SHOULD CONDUCT AN *IN CAMERA* INSPECTION OF THE DOCUMENTS THAT ARE THE SUBJECT OF THIS MOTION

The Court has broad discretion to conduct *in camera* inspections of documents to determine, in the first instance, if the attorney-client privilege or work product doctrine applies to shield them from discovery. *See Hartford,* 2015 WL 164069 at *3 ("Courts have broad discretion to conduct *in camera* review to make this initial determination. …"). Should the Court decide that it will not compel production absent review of the documents that are the subject of this Motion, Plaintiff requests that the Court conduct an *in camera* inspection of the Non-Privileged Emails (including the Wagner Emails), the Callaway Emails, the Performance Emails, and the Bad Faith Emails (the "Subject Emails") to determine if each of them qualifies for protection under the

attorney-client privilege and/or the work-product doctrine. If any do not, Plaintiff requests that the Court order the documents be produced.

Furthermore, the Plaintiff has demonstrated probable cause to justify the Court conducting an in camera inspection of each of the Subject Emails pursuant to. In *Hutchison*, the Connecticut Supreme Court set forth the standard to be applied in a bad faith action when determining whether an *in camera* review of the allegedly privileged documents is warranted in a discovery dispute. 273 Conn. at 42-43.[1] The proper standard is "whether the plaintiffs have established, on the basis of nonprivileged materials, that there is probable cause to believe that (1) the defendant has acted in bad faith and (2) the defendant sought the advice of its attorneys in order to conceal or facilitate its bad faith conduct." *Id.* at 48–49. Although the *Hutchison* court did not find probable cause because the plaintiffs had not even alleged facts to meet the two-prong test (*Id.* at 49), such is not the instant case.

Here, in his Third Amended Complaint[2], Plaintiff specifically alleges:

1. Prior to terminating Mr. Luck, Defendants sought the advice of their attorneys to conceal or facilitate Defendants' fraudulent scheme.

2. Relying upon their counsel's advice, Defendants' termination was a sham, consciously designed to evade Alpha's and McMahon's obligations for payment of Mr. Luck's salary and bonuses. Defendants' operated with furtive design to terminate Mr. Luck allegedly with cause under the Employment Contract for the dishonest purpose of avoiding their legal obligations owed to Mr. Luck. Defendants' knew that had they acted in good faith and without ill will, Mr. Luck would have been terminated, if at all, without cause and been paid over $23 million. Instead, as part of their scheme to defraud Plaintiff, Defendants have paid him nothing.

….

---

[1] Defendants' argue that *Hutchison* does not apply because it involves a claim of bad faith against an insurer. Plaintiff can think of no rationale reason or justification why the test for *in camera* inspection is different in the context of a bad faith breach of contract claim.

[2] Mr. Luck has contemporaneously filed a Motion for Leave to file his Third Amended Complaint.

13.  In at least seventy-five (75) emails from March 31, 2020 until April 9, 2020, Defendants, gave information to or sought the advice of their attorneys for the purpose of facilitating their bad faith termination of Mr. Luck. See Ex. B (Defendants' Privilege Log at 32-41, P-405-06, 411-492). Central to Defendants' fraudulent scheme to avoid paying Mr. Luck the amounts he is justly owed is a termination letter (the "Termination Letter") dated April 9, 2020. Pursuant to the Termination Letter which was approved by McMahon, drafted by Defendants' attorneys and signed by Mr. McDevitt of the K&L Gates law firm, Alpha-wrongfully terminated Mr. Luck's employment—purportedly for Cause—effective immediately. Ex. 2. Defendants' actions constitute a repudiation and breach of the Employment Contract and the Guaranty, all in violation of their implied duties of good faith.  As drafted by Defendants' counsel, the Termination Letter set forth pretextual and meritless allegations related to Mr. Luck's acts or omissions as Commissioner and CEO of the XFL.

….

24.  Defendants' intentional and bad faith decision not to provide Mr. Luck with the contractually required written notice and opportunity to cure was made in consultation with their attorneys. As but one example of Defendants' disregard for the Employment Contract's written notice requirement Defendants now allege, that Mr. Luck violated XFL policy and McMahon's alleged directives regarding the hiring and firing of Callaway on two separate occasions in January 2020. Yet, it is uncontroverted that Defendants never provided Mr. Luck with the requisite written notice that he had violated any XFL policy or directive and a thirty (30) day opportunity to cure

Moreover, Plaintiff submits with this Motion the following evidence: Ex. B (the Privilege Log) Ex. C (the Declaration of Oliver Luck, dated February 26, 2021), Ex. G (the Declaration of Oliver Luck dated December 22, 2020) Ex E (the Termination Letter) Ex. H (the "Response Letter") and Ex. D (the Four Criteria email string). Those non-privileged documents are more than sufficient to meet the probable cause test for an *in camera* inspection of the Subject Emails. Thus, Plaintiff requests that the Court conduct an *in camera* inspection of the Subject Emails  and, thereafter, order that the Subject Emails be produced.

## IV. CONCLUSION

21

In summary, Plaintiff respectfully requests that the Court compel production of the Subject Emails or, in the alternative, conduct an *in camera* inspection of them and order the production of those emails that do not meet the criteria for the attorney-client privilege and/or work product doctrine in addition to any additional relief to which Plaintiff is justly entitled.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email:  pjd@doblaw.com
Email:  vpierce@doblaw.com
Email:  jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com

**HIS ATTORNEYS**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 37(a), my affidavit is attached hereto as Exhibit I.

*/s/ Paul J. Dobrowski*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Paul J. Dobrowski*