# EXHIBIT G

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------x
                           :

**In re**                         :    **Chapter 11**
                           :

**ALPHA ENTERTAINMENT LLC,**  :    **Case No. 20-10940 (LSS)**
                           :

       **Debtor.[1]**          :
                           :    **Ref. Docket Nos. 434, 435, 496, 503, 504, 507, 543 & 583**
-----------------------------------------------------------x

**NOTICE OF FILING OF REVISED PLAN SUPPLEMENT FOR THE
2nd AMENDED CHAPTER 11 PLAN OF ALPHA ENTERTAINMENT LLC**

    **PLEASE TAKE NOTICE** that, on September 30, 2020, the above-captioned debtor and debtor in possession (the "**Debtor**") filed the (i) *Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 434] and (ii) *Disclosure Statement for the Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 435] with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

    **PLEASE TAKE FURTHER NOTICE** that, on November 2, 2020, the Debtor filed the (i) *1st Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 496] and (ii) *Disclosure Statement for the 1st Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 503] (as modified in Docket No. 504 and as may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**"). On November 4, 2020, the Bankruptcy Court entered an order approving, among other things, the adequacy of the Disclosure Statement [Docket No. 507].

    **PLEASE TAKE FURTHER NOTICE** that, on November 24, 2020, the Debtor filed the *Notice of Filing of Plan Supplement for the 1st Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 543] (the "**Plan Supplement**").

    **PLEASE TAKE FURTHER NOTICE** that, on December 10, 2020, the Debtor filed the *2nd Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 583] (as may be amended, modified, or supplemented from time to time, the "**Plan**").

    **PLEASE TAKE FURTHER NOTICE** that the Debtor has revised Exhibit A originally included in the Plan Supplement. As such, the Debtor hereby submits this revised plan supplement (the "**Revised Plan Supplement**"), consisting of the following documents, each as may be amended, modified, or supplemented from time to time by the Debtor in accordance with the Plan as set forth below:

---

[1] The last four digits of the Debtor's federal tax identification number are 7778. The Debtor's mailing address is 600 Steamboat Road, Suite 105, Greenwich, CT 06830.

27436009.2

| Exhibit | Plan Supplement Document |
|:---:|:---|
| A | Plan Administrator Agreement |
| B | Plan Administrator Agreement – Blackline |
| C | Amended Operating Agreement[2] |

**PLEASE TAKE FURTHER NOTICE** that, subject to the terms and conditions of the Plan, the Debtor reserves all rights to amend, revise, or supplement this Revised Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "***Confirmation Hearing***") to consider, among other things, confirmation of the Plan, shall be held on December 11, 2020 at 10:00 a.m. (ET) before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801.  The Confirmation Hearing may be adjourned from time to time by the Court or the Debtor without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to notice.

Dated:  December 10, 2020
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*

Michael R. Nestor (No. 3526) (mnestor@ycst.com)
Matthew B. Lunn (No. 4119) (mlunn@ycst.com)
Kenneth J. Enos (No. 4544) (kenos@ycst.com)
Shane M. Reil (No. 6195) (sreil@ycst.com)
Matthew P. Milana (No. 6681) (mmilana@ycst.com)
1000 N. King Street
Rodney Square
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Counsel to the Debtor and Debtor in Possession*

---

[2] For the avoidance of doubt, no changes have been made to the form of Amended Operating Agreement that was included with the original Plan Supplement.

# EXHIBIT A

**Plan Administrator Agreement**

27436009.2

# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "Agreement"), effective as of the [_] day of [_____], 2020, by and between Alpha Entertainment LLC (the "Company" or the "Debtor") and Peter Hurwitz (or any successor, the "Plan Administrator") for the purpose of providing plan administrator services to the Debtor, including administering, liquidating, or otherwise resolving the assets of the Debtor, and carrying out those duties authorized and set forth more fully herein and in accordance with the terms of the Plan (as defined below).  This Agreement sets forth, among other things, the scope of such services (collectively, the "Services"), and the terms of compensation for those Services.

## ARTICLE 1
## Scope of Services

The Plan Administrator will provide the Services pursuant to the *2nd Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 566] (as may be amended, modified and supplemented from time to time, the "Plan")[1] and the order confirming the Plan, dated as of [_____], 2020 (the "Confirmation Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the Company's chapter 11 bankruptcy case, Case No. 20-10940 (LSS) (the "Chapter 11 Case"):

(a)    General Plan Administrator Functions.  In connection with this engagement, the Plan Administrator shall act as plan administrator for the Company's chapter 11 bankruptcy estate (the "Estate").  The Plan Administrator shall devote such time to the performance of the Services hereunder as the Plan Administrator determines reasonable and appropriate in the Plan Administrator's discretion.    The Plan Administrator hereby accepts employment and appointment as the Plan Administrator.

(b)    Plan Administrator as a Fiduciary.  From and after the Effective Date, the Plan Administrator shall be a fiduciary of the Estate and the Post-Effective Date Debtor.  The Plan Administrator shall perform the Plan Administrator's obligations consistent with the Plan, the Confirmation Order, this Agreement and applicable orders of the Bankruptcy Court.

(c)    Duties, Power, and Rights.  From and after the Effective Date,[2] the Plan Administrator shall have all duties, powers and rights set forth herein, in the Plan, and the Confirmation Order, including, but not limited to, the following activities:

(i)    taking all steps and executing all instruments and documents necessary to make Distributions to Holders of Allowed Claims and to perform the duties assigned to the Plan Administrator under the Plan or hereunder;

(ii)    complying with the Plan and the obligations thereunder;

---

[1]    Capitalized terms used and not defined herein shall have the meaning ascribed to them in the Plan.

[2]    For the avoidance of doubt, the Plan Administrator shall have no duties until the occurrence of the Effective Date.  If the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, there will be no Plan Administrator appointed.

(iii)    employing, retaining or replacing professionals to represent him or her with respect to his or her responsibilities;

(iv)    objecting to Claims as provided in the Plan, and prosecute such objections;

(v)    compromising and settling any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claim;

(vi)    establishing, funding, replenishing or releasing any reserves as provided in the Plan, as applicable;

(vii)    exercising such other powers as may be vested in the Plan Administrator pursuant to the Plan, hereunder or any other order of the Bankruptcy Court, including the Confirmation Order, or otherwise acting on behalf of and for the Debtor and the Post-Effective Date Debtor from and after the Effective Date;

(viii)    filing applicable tax returns for the Debtor;

(ix)    liquidating any of the Assets;

(x)    prosecuting, compromising, resolving or withdrawing any of the Retained Causes of Action;

(xi)    establishing, funding, replenishing or releasing the Professional Fee Reserve as set forth in Section 11.2 of the Plan;

(xii)    paying any fees due to the United States Trustee in connection with the Chapter 11 Case pursuant to section 1930(a)(6) of the Bankruptcy Code;

(xiii)    executing all documents appropriate to carry out the Plan Administrator's powers and duties enumerated in the Plan, Confirmation Order, and this Agreement;

(xiv)    preparing and filing post-confirmation reports pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; and

(xv)    taking such further actions as the Plan Administrator deems necessary to effectuate the provisions of the Plan.

## ARTICLE 2
## Compensation and Staffing

(a)    The Plan Administrator will be paid by the Estate and the Post-Effective Date Debtor for the Services at the fixed monthly rate of $17,500 per month for the 12-month period commencing on the Effective Date, following which the fixed monthly rate shall adjust to $15,000 per month (the "Monthly Compensation"). The Monthly Compensation shall be payable by the Post-Effective Date Debtor on a monthly basis in advance not later than the first business day of each month.

(b)    In addition the to the Monthly Compensation, the Plan Administrator will be entitled to receive 5% of any cash recovered by the Post-Effective Date Debtor on and after the Effective Date (excluding the Cash in the Estate as of the Effective Date) (the "Additional Compensation", and together with the Monthly Compensation, the "Compensation").    The Additional Compensation, if any, shall be payable upon recovery of any cash by the Post-Effective Date Debtor.

(c)    Both the Plan Administrator and the Debtor acknowledge that the Compensation is within industry and market rates and has been negotiated to reflect the facts specific to this engagement.    As such, the Debtor believes that the Compensation is reasonable in light of the Services requested.

## ARTICLE 3
## Retention of Counsel and Agents

The Plan Administrator may hire counsel to advise the Plan Administrator in connection with the Plan Administrator's duties, powers and rights under this Agreement and may hire such additional attorneys, financial advisors, accountants and other professionals as may be required or appropriate in connection with the Plan Administrator's duties herein and pay reasonable compensation to such advisors in accordance with the provisions set forth herein and in the Plan. The Plan Administrator shall be entitled to retain professionals in the Plan Administrator's sole discretion without the need for further Bankruptcy Court approval, including any professionals employed by the Debtor or the Committee in the Chapter 11 Case.    The provision of services by a professional to the Debtor or the Committee shall not disqualify such professional from employment by the Plan Administrator.

Any professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable expenses incurred.    The payment of the fees, costs and expenses of the Plan Administrator and its retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided, however*, that any disputes related to such fees, costs and expenses shall be brought before the Bankruptcy Court.    Any successor Plan Administrator shall receive such reasonable compensation as may be approved by the Bankruptcy Court.

## ARTICLE 4
## Service of Plan Administrator

The Plan Administrator shall serve until (a) the termination of this Agreement, (b) the Plan Administrator is removed for cause, or (c) the Plan Administrator resigns or is otherwise discharged; *provided, however*, that if the Plan Administrator resigns, the Plan Administrator shall continue to serve until a new Plan Administrator begins to serve.

For purposes of this Agreement, the term "for cause" shall include, but not be limited to:

(a)    A finding by the Bankruptcy Court that the Plan Administrator materially breached this Agreement;

3

(b)     The arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or other crime involving dishonesty or moral turpitude;

(c)     A finding by the Bankruptcy Court that the Plan Administrator engaged in willful misconduct, or was grossly negligent, in the performance of the Plan Administrator's duties;

(d)     A material and direct conflict of interest not specifically waived in advance by the Debtor; or

(e)     Unauthorized use or disclosure of confidential information that belongs to the Debtor, its customers or employees.

## ARTICLE 5
## Reporting; Dissolution and Cancellation of the Debtor

On or before the tenth (10th) of every month following the end of each calendar quarter (or the next Business Day to the extent the tenth of the month falls on the weekend or a federal holiday) until such time as the Chapter 11 Case is closed, the Plan Administrator shall file a written report with the Bankruptcy Court for the immediately preceding calendar quarter providing a general update with respect to, among other things, the (i) status of the administration and liquidation of the Assets; (ii) assets, liabilities and transfers of the Estate, including without limitation, all cash receipts and disbursements (whether related to the Plan or otherwise) received and made, as applicable, during the preceding calendar quarter, including disbursements to the Plan Administrator and the Plan Administrator's professionals on account of fees incurred and reimbursement of expenses in furtherance of their duties hereunder and the Plan; (iii) dispositions of Assets during the preceding calendar quarter and efforts related thereto; and (iv) wind down of the Estate.

On the Effective Date, the Plan Administrator shall be the sole member of the Post-Effective Date Debtor and appointed to manage the Post-Effective Date Debtor, in accordance with the Amended Operating Agreement, the Plan, and this Agreement. Following the implementation of the Plan, the administration and distribution of the Debtor's Assets in accordance with the terms of the Plan, and the winding down of the Post-Effective Date Debtor's affairs, without the need for any further order or action of the Bankruptcy Court, the Post-Effective Date Debtor will be dissolved and its affairs will be wound up in accordance with Delaware law. The Plan Administrator is authorized to take all actions reasonably necessary to dissolve the Post-Effective Date Debtor, and neither the Plan Administrator nor the Post-Effective Date Debtor shall be required to pay any taxes or fees in order to cause such dissolution and termination of the Post-Effective Date Debtor's existence.

## ARTICLE 6
## Closing of Bankruptcy Cases: Termination

When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Case, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against the Estate entitled to payment under the Plan (i)

have been satisfied or (ii) have been Disallowed by Final Order, and (b) all Assets have been liquidated and converted into Cash (other than those assets abandoned, in the Plan Administrator's sole discretion), and such Cash has been distributed in accordance with the Plan, and (c) all wind-down costs and expenses have been paid in full in Cash. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Bankruptcy Case, prior to the requirements above being met. This Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Chapter 11 Case.

### ARTICLE 7
### No Liability

The Plan Administrator shall have no liability whatsoever for any acts or omissions in the Plan Administrator's capacity as Plan Administrator to the Estate or holders of Claims against or Equity Interests in the Debtor other than for bad faith, willful misconduct, or gross negligence of the Plan Administrator.

### ARTICLE 8
### Indemnification

The Debtor and the Post-Effective Date Debtor shall indemnify and hold harmless: (i) the Plan Administrator (solely in Plan Administrator's capacity as such); and (iii) the Plan Administrator Professionals (collectively, the "Indemnified Parties"), with respect to any and all liabilities, losses, damages, claims, costs and expenses arising out of or due to their post-Effective Date actions or omissions, or consequences of such actions or omissions, taken in connection with the Plan, this Agreement and the Confirmation Order, other than acts or omissions, or consequences of such post-Effective Date actions or omissions, resulting from such Indemnified Party's bad faith, willful misconduct (including, without limitation, actual fraud) or gross negligence. To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (i) any payment on account of such claim shall be paid solely from the Post-Effective Date Debtor and (ii) the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the Post-Effective Date Debtor or any insurance. The provisions of this section shall remain available to and be binding upon any former Plan Administrator or the estate of any decedent of the Plan Administrator and shall survive the termination of this Agreement.

The Plan Administrator shall be covered as an officer under the Post-Effective Date Debtor's existing director and officer liability insurance policy as an "additional named insured" and as a "certificate holder" under each liability insurance policy of the Post-Effective Date Debtor, and, if not covered under such policies, the Plan Administrator shall be authorized to have an additional policy providing a comparable level of coverage purchased by the Post-Effective Date Debtor. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Post-Effective Date Debtor's charter, bylaws or other organizational documents or policies shall affect the Plan Administrator rights hereunder.

# ARTICLE 9
## Other Matters

(a)    Projections; Reliance; Limitation of Duties.    The Post-Effective Date Debtor understands that the Services to be rendered may include the preparation of projections and other forward-looking statements for use in evaluating potential transactions and settlements and that numerous factors can affect the actual outcomes, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the Plan Administrator will be relying on information provided by others.

(b)    Governing Law.    This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Delaware and the Bankruptcy Court shall have exclusive jurisdiction in relation to any claim arising out of or related to this Agreement.  THE PLAN ADMINISTRATOR AND THE POST-EFFECTIVE DATE DEBTOR HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS AGREEMENT.

(c)    Dispute Resolution.    Without permission of the Bankruptcy Court, no judicial, administrative, arbitral or other action or proceeding shall be commenced against the Plan Administrator in the Plan Administrator's official capacity as such, with respect to its status, duties, powers, acts, or omission as Plan Administrator in any forum other than the Bankruptcy Court.

(d)    Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over the Estate to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of the Agreement.

(e)    Conflict with the Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order (as applicable) shall control; *provided, however*, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in section 1127(b) of the Bankruptcy Code) shall control over provisions of the Plan.

(f)    Severability.  If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof.  In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect.

Notwithstanding the foregoing, the parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

(g)    <u>Assignment</u>.  No party hereto shall have the right to assign its rights hereunder, in whole or in part without the prior written consent of the other party (other than to such party's affiliates or subsidiaries which shall not require such consent).  This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and permitted assigns.

(h)    <u>Modifications</u>.  No change, modification, extension, renewal, ratification, waiver, or rescission of this Agreement or of any of the provisions hereof shall be binding unless it is in writing and signed by both parties hereto.  Further, no waiver or forbearance by either party hereto with respect to any right granted to such party herein shall operate or be construed to be a waiver or forbearance of such party's right to exercise such right in the future.

(i)    <u>Notices</u>.  Notices related to or required under this Agreement must be in writing and delivered to the below parties (collectively, the "<u>Notice Parties</u>," and each a "<u>Notice Party</u>") at the mailing and/or electronic mail addresses set forth below or to such other mailing and/or electronic mail address as a Notice Party may designate in writing. Any notice required under this Agreement will be deemed effective upon delivery to the Notice Party to whom it is addressed.

(i) if to Alpha Entertainment LLC:

John Brecker
410 Park Ave Suite 900
New York, NY 10022
E-mail: jbrecker@drivetrainllc.com

*In each case, with copies to*:

[●]
Attn: [●]
Email: [●]

(ii) if to Plan Administrator:

Peter Hurwitz
40 Half Moon Lane
Irvington, NY 10533
E-mail: Alphaplanadministrator@gmail.com

*In each case, with copies to*:

Greenberg Traurig, LLP
1000 Louisiana St., Suite 1700
Houston, TX 77002

Attn:  Shari L. Heyen
Email:  heyens@gtlaw.com

(j)      <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof.  This Agreement may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Plan Administrator Agreement or have caused it to be executed and acknowledged on their behalf be their duly authorized officers.

**PLAN ADMINISTRATOR:**

**THE DEBTOR**

ALPHA ENTERTAINMENT LLC

_____

_____

Name: Peter Hurwitz

Name: John Brecker

Title: Independent Manager

**EXHIBIT B**

**Plan Administrator Agreement – Blackline**

27436009.2

*GT Draft ~~11~~12-~~24~~09-2020*
*Subject FRE 408*

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "<u>Agreement</u>"), effective as of the [_] day of [_____], 2020, by and between Alpha Entertainment LLC (the "<u>Company</u>" or the "<u>Debtor</u>") and Peter Hurwitz (or any successor, the "<u>Plan Administrator</u>") for the purpose of providing plan administrator services to the Debtor, including administering, liquidating, or otherwise resolving the assets of the Debtor, and carrying out those duties authorized and set forth more fully herein and in accordance with the terms of the Plan (as defined below). This Agreement sets forth, among other things, the scope of such services (collectively, the "<u>Services</u>"), and the terms of compensation for those Services.

## ARTICLE 1
## <u>Scope of Services</u>

The Plan Administrator will provide the Services pursuant to the *~~1st~~2nd Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. ~~496~~566] (as may be amended, modified and supplemented from time to time, the "<u>Plan</u>")[1] and the order confirming the Plan, dated as of [_____], 2020 (the "<u>Confirmation Order</u>") entered by the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") in the Company's chapter 11 bankruptcy case, Case No. 20-10940 (LSS) (the "<u>Chapter 11 Case</u>"):

(a)    <u>General Plan Administrator Functions</u>.  In connection with this engagement, the Plan Administrator shall act as plan administrator for the Company's chapter 11 bankruptcy estate (the "<u>Estate</u>").  The Plan Administrator shall devote such time to the performance of the Services hereunder as the Plan Administrator determines reasonable and appropriate in the Plan Administrator's discretion.  The Plan Administrator hereby accepts employment and appointment as the Plan Administrator.

(b)    <u>Plan Administrator as a Fiduciary</u>.  From and after the Effective Date, the Plan Administrator shall be a fiduciary of the Estate and the Post-Effective Date Debtor.  The Plan Administrator shall perform the Plan Administrator's obligations consistent with the Plan, the Confirmation Order, this Agreement and applicable orders of the Bankruptcy Court.

(c)    <u>Duties, Power, and Rights</u>.   From and after the Effective Date,[2] the Plan Administrator shall have all duties, powers and rights set forth herein, in the Plan, and the Confirmation Order, including, but not limited to, the following activities:

(i)    taking all steps and executing all instruments and documents necessary to make Distributions to Holders of Allowed Claims and to perform the duties assigned to the Plan Administrator under the Plan or hereunder;

(ii)    complying with the Plan and the obligations thereunder;

---

[1]    Capitalized terms used and not defined herein shall have the meaning ascribed to them in the Plan.

[2]    For the avoidance of doubt, the Plan Administrator shall have no duties until the occurrence of the Effective Date. If the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, there will be no Plan Administrator appointed.

(iii)  employing, retaining or replacing professionals to represent him or her with respect to his or her responsibilities;

(iv)  objecting to Claims as provided in the Plan, and prosecute such objections;

(v)  compromising and settling any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claim;

(vi)  establishing, funding, replenishing or releasing any reserves as provided in the Plan, as applicable;

(vii)  exercising such other powers as may be vested in the Plan Administrator pursuant to the Plan, hereunder or any other order of the Bankruptcy Court, including the Confirmation Order, or otherwise acting on behalf of and for the Debtor and the Post-Effective Date Debtor from and after the Effective Date;

(viii)  filing applicable tax returns for the Debtor;

(ix)  liquidating any of the Assets;

(x)  prosecuting, compromising, resolving or withdrawing any of the Retained Causes of Action;

(xi)  establishing, funding, replenishing or releasing the Professional Fee Reserve as set forth in Section 11.2 of the Plan;

(xii)  paying any fees due to the United States Trustee in connection with the Chapter 11 Case pursuant to section 1930(a)(6) of the Bankruptcy Code;

(xiii)  executing all documents appropriate to carry out the Plan Administrator's powers and duties enumerated in the Plan, Confirmation Order, and this Agreement;

(xiv)  preparing and filing post-confirmation reports pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; and

(xv)  taking such further actions as the Plan Administrator deems necessary to effectuate the provisions of the Plan.

**ARTICLE 2**
**Compensation and Staffing**

(a)  The Plan Administrator will be paid by the Estate and the Post-Effective Date Debtor for the Services at the fixed monthly rate of $17,500 per month for the 12-month period commencing on the Effective Date, following which the fixed monthly rate shall adjust to $15,000 per month (the "Monthly Compensation").  The Monthly Compensation shall be payable by the Post-Effective Date Debtor on a monthly basis in advance not later than the first business day of each month.

(b)     In addition the to the Monthly Compensation, the Plan Administrator will be entitled to receive 5% of ~~each of (i)~~ any cash recovered by the Post-Effective Date Debtor on and after the Effective Date (excluding the Cash in the Estate as of the Effective Date)~~, and (ii) following the Effective Date, any reduction in the asserted amount of a General Unsecured Claim~~ (the "Additional Compensation", and together with the Monthly Compensation, the "Compensation").  The Additional Compensation, if any, shall be payable upon recovery of any cash by the Post-Effective Date Debtor.

(c)     Both the Plan Administrator and the Debtor acknowledge that the Compensation is within industry and market rates and has been negotiated to reflect the facts specific to this engagement.  As such, the Debtor believes that the Compensation is reasonable in light of the Services requested.

~~(d)     The Plan Administrator will bill for its Compensation and out-of-pocket expenses no less frequently than on a monthly basis by providing an invoice summarizing the number of hours worked and expenses incurred.  Upon receipt of such invoice, the Post-Effective Date Debtor shall promptly remit in full, the payment of such fees and expenses.~~

## ARTICLE 3
## Retention of Counsel and Agents

The Plan Administrator may hire counsel to advise the Plan Administrator in connection with the Plan Administrator's duties, powers and rights under this Agreement and may hire such additional attorneys, financial advisors, accountants and other professionals as may be required or appropriate in connection with the Plan Administrator's duties herein and pay reasonable compensation to such advisors in accordance with the provisions set forth herein and in the Plan. The Plan Administrator shall be entitled to retain professionals in the Plan Administrator's sole discretion without the need for further Bankruptcy Court approval, including any professionals employed by the Debtor or the Committee in the Chapter 11 Case.  The provision of services by a professional to the Debtor or the Committee shall not disqualify such professional from employment by the Plan Administrator.

Any professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable expenses incurred.  The payment of the fees, costs and expenses of the Plan Administrator and its retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided, however*, that any disputes related to such fees, costs and expenses shall be brought before the Bankruptcy Court.  Any successor Plan Administrator shall receive such reasonable compensation as may be approved by the Bankruptcy Court.

## ARTICLE 4
## Service of Plan Administrator

The Plan Administrator shall serve until (a) the termination of this Agreement, (b) the Plan Administrator is removed for cause, or (c) the Plan Administrator resigns or is otherwise

discharged; *provided, however*, that if the Plan Administrator resigns, the Plan Administrator shall continue to serve until a new Plan Administrator begins to serve.

For purposes of this Agreement, the term "for cause" shall include, but not be limited to:

(a)      A finding by the Bankruptcy Court that the Plan Administrator materially breached this Agreement;

(b)      The arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or other crime involving dishonesty or moral turpitude;

(c)      A finding by the Bankruptcy Court that the Plan Administrator engaged in willful misconduct, or was grossly negligent, in the performance of the Plan Administrator's duties;

(d)      A material and direct conflict of interest not specifically waived in advance by the Debtor; or

(e)      Unauthorized use or disclosure of confidential information that belongs to the Debtor, its customers or employees.

## ARTICLE 5
## Reporting; Dissolution and Cancellation of the Debtor

On or before the tenth (10th) of every month following the end of each calendar quarter (or the next Business Day to the extent the tenth of the month falls on the weekend or a federal holiday) until such time as the Chapter 11 Case is closed, the Plan Administrator shall file a written report with the Bankruptcy Court for the immediately preceding calendar quarter providing a general update with respect to, among other things, the (i) status of the administration and liquidation of the Assets; (ii) assets, liabilities and transfers of the Estate, including without limitation, all cash receipts and disbursements (whether related to the Plan or otherwise) received and made, as applicable, during the preceding calendar quarter, including disbursements to the Plan Administrator and the Plan Administrator's professionals on account of fees incurred and reimbursement of expenses in furtherance of their duties hereunder and the Plan; (iii) dispositions of Assets during the preceding calendar quarter and efforts related thereto; and (iv) wind down of the Estate.

On the Effective Date, the Plan Administrator shall be the sole member of the Post-Effective Date Debtor and appointed to manage the Post-Effective Date Debtor, in accordance with the Amended Operating Agreement, the Plan, and this Agreement. Following the implementation of the Plan, the administration and distribution of the Debtor's Assets in accordance with the terms of the Plan, and the winding down of the Post-Effective Date Debtor's affairs, without the need for any further order or action of the Bankruptcy Court, the Post-Effective Date Debtor will be dissolved and its affairs will be wound up in accordance with Delaware law. The Plan Administrator is authorized to take all actions reasonably necessary to dissolve the Post-Effective Date Debtor, and neither the Plan Administrator nor the

Subject to FRE 408

Post-Effective Date Debtor shall be required to pay any taxes or fees in order to cause such dissolution and termination of the Post-Effective Date Debtor's existence.

## ARTICLE 6
## Closing of Bankruptcy Cases: Termination

When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Case, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against the Estate entitled to payment under the Plan (i) have been satisfied or (ii) have been Disallowed by Final Order, and (b) all Assets have been liquidated and converted into Cash (other than those assets abandoned, in the Plan Administrator's sole discretion), and such Cash has been distributed in accordance with the Plan, and (c) all wind-down costs and expenses have been paid in full in Cash. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Bankruptcy Case, prior to the requirements above being met. This Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Chapter 11 Case.

## ARTICLE 7
## No Liability

The Plan Administrator shall have no liability whatsoever for any acts or omissions in the Plan Administrator's capacity as Plan Administrator to the Estate or holders of Claims against or Equity Interests in the Debtor other than for bad faith, willful misconduct, or gross negligence of the Plan Administrator.

## ARTICLE 8
## Indemnification

The Debtor and the Post-Effective Date Debtor shall indemnify and hold harmless: (i) the Plan Administrator (solely in Plan Administrator's capacity as such); and (iii) the Plan Administrator Professionals (collectively, the "Indemnified Parties"), with respect to any and all liabilities, losses, damages, claims, costs and expenses arising out of or due to their post-Effective Date actions or omissions, or consequences of such actions or omissions, taken in connection with the Plan, this Agreement and the Confirmation Order, other than acts or omissions, or consequences of such post-Effective Date actions or omissions, resulting from such Indemnified Party's bad faith, willful misconduct (including, without limitation, actual fraud) or gross negligence. To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (i) any payment on account of such claim shall be paid solely from the Post-Effective Date Debtor and (ii) the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the Post-Effective Date Debtor or any insurance. The provisions of this section shall remain available to and be binding

GT Draft ~~11~~12/~~24~~9/2020

upon any former Plan Administrator or the estate of any decedent of the Plan Administrator and shall survive the termination of this Agreement.

The Plan Administrator shall be covered as an officer under the Post-Effective Date Debtor's existing director and officer liability insurance policy as an "additional named insured" and as a "certificate holder" under each liability insurance policy of the Post-Effective Date Debtor, and, if not covered under such policies, the Plan Administrator shall be authorized to have an additional policy providing a comparable level of coverage purchased by the Post-Effective Date Debtor. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Post-Effective Date Debtor's charter, bylaws or other organizational documents or policies shall affect the Plan Administrator rights hereunder.

## ARTICLE 9
## Other Matters

(a)     Projections; Reliance; Limitation of Duties.  The Post-Effective Date Debtor understands that the Services to be rendered may include the preparation of projections and other forward-looking statements for use in evaluating potential transactions and settlements and that numerous factors can affect the actual outcomes, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the Plan Administrator will be relying on information provided by others.

(b)     Governing Law.  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Delaware and the Bankruptcy Court shall have exclusive jurisdiction in relation to any claim arising out of or related to this Agreement.  THE PLAN ADMINISTRATOR AND THE POST-EFFECTIVE DATE DEBTOR HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS AGREEMENT.

(c)     Dispute Resolution.  Without permission of the Bankruptcy Court, no judicial, administrative, arbitral or other action or proceeding shall be commenced against the Plan Administrator in the Plan Administrator's official capacity as such, with respect to its status, duties, powers, acts, or omission as Plan Administrator in any forum other than the Bankruptcy Court.

(d)     Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over the Estate to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of the Agreement.

(e)     Conflict with the Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  To that end, the Plan Administrator shall

GT Draft ~~11~~12/~~24~~9/2020

Subject to FRE 408

have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order (as applicable) shall control; *provided, however*, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in section 1127(b) of the Bankruptcy Code) shall control over provisions of the Plan.

(f)     <u>Severability</u>. If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof. In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect. Notwithstanding the foregoing, the parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

(g)     <u>Assignment</u>. No party hereto shall have the right to assign its rights hereunder, in whole or in part without the prior written consent of the other party (other than to such party's affiliates or subsidiaries which shall not require such consent). This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and permitted assigns.

(h)     <u>Modifications</u>. No change, modification, extension, renewal, ratification, waiver, or rescission of this Agreement or of any of the provisions hereof shall be binding unless it is in writing and signed by both parties hereto. Further, no waiver or forbearance by either party hereto with respect to any right granted to such party herein shall operate or be construed to be a waiver or forbearance of such party's right to exercise such right in the future.

(i)     <u>Notices</u>. Notices related to or required under this Agreement must be in writing and delivered to the below parties (collectively, the "<u>Notice Parties</u>," and each a "<u>Notice Party</u>") at the mailing and/or electronic mail addresses set forth below or to such other mailing and/or electronic mail address as a Notice Party may designate in writing. Any notice required under this Agreement will be deemed effective upon delivery to the Notice Party to whom it is addressed.

(i) if to Alpha Entertainment LLC:

> John Brecker
> 410 Park Ave Suite 900
> New York, NY 10022
> E-mail: jbrecker@drivetrainllc.com

*In each case, with copies to*:

> [●]
> Attn: [●]

**Subject to FRE 408**

Email: [●]

(ii) if to Plan Administrator:

Peter Hurwitz
40 Half Moon Lane
Irvington, NY 10533
E-mail: Alphaplanadministrator@gmail.com

*In each case, with copies to*:

Greenberg Traurig, LLP
1000 Louisiana St., Suite 1700
Houston, TX 77002
Attn: Shari L. Heyen
Email: heyens@gtlaw.com

(j)     <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof.  This Agreement may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

[*Signature Page Follows*]

GT Draft ~~11~~12/~~24~~9/2020

Subject to FRE 408

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Plan Administrator Agreement or have caused it to be executed and acknowledged on their behalf be their duly authorized officers.

**GT Draft ~~11~~12/~~24~~9/2020**

Subject to FRE 408

**PLAN ADMINISTRATOR:**                    **THE DEBTOR**

ALPHA ENTERTAINMENT LLC

_____          _____

Name: Peter Hurwitz                       Name: John Brecker

                                          Title: Independent Manager

_ACTIVE 53810488v~~5~~6_

10

# EXHIBIT C

**Amended Operating Agreement**

## THIRD AMENDED & RESTATED
## OPERATING AGREEMENT
## OF
## ALPHA ENTERTAINMENT LLC

       **THIS THIRD AMENDED AND RESTATED OPERATING AGREEMENT OF ALPHA ENTERTAINMENT LLC** (the "Agreement") is made effective as of the [  ] day of November 2020, by Peter Hurwitz, solely in his capacity as Plan Administrator (as defined below) and not in his individual capacity, as the sole member (the "Member") of Alpha Entertainment LLC, a Delaware limited liability company (the "Company"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.

## RECITALS

       **WHEREAS**, the Company operates pursuant to that certain Second Amended and Restated Operating Agreement, dated as of May 2, 2019 (the "Existing LLC Agreement"); and

       **WHEREAS**, on April 13, 2020, the Company commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

       **WHEREAS**, on November 2, 2020, the Company filed with the Bankruptcy Court the *1st Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. 496] (as the same may be modified, amended or supplemented from time to time, the "Plan"); and

       **WHEREAS**, pursuant to the Bankruptcy Court's [*Order Confirming the 1st Amended Chapter 11 Plan of Alpha Entertainment LLC* [Docket No. [●]] and the Plan: (i) the limited liability company interests in the Company held by all existing members immediately prior to the Effective Date (as defined in the Plan) were cancelled for no consideration and such members ceased to be members of the Company; (ii) Peter Hurwitz (the "Plan Administrator") was appointed to, *inter alia*, administer the Plan and serve as the sole member and officer of the Company; and (iii) upon the occurrence of the Effective Date of the Plan, the Plan Administrator was admitted as the sole member of the Company; and

       **WHEREAS**, pursuant to Section 10.7 of the Existing LLC Agreement, the Member desires to amend and restate the Existing LLC Agreement in its entirety on the terms set forth herein.

       **NOW, THEREFORE**, in consideration of the foregoing Recitals, which are incorporated by reference herein, the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member does hereby agree as follows:

       1.     Formation of the Company.  By execution of this Agreement, the Member ratifies and confirms the filing of the certificate of formation (the "Certificate") with the Secretary of the State of the State of Delaware for the purpose of forming the Company, effective September 6, 2017, pursuant to the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Act").

2.    <u>Name of the Company</u>.  The name of the company as stated in the Certificate and the limited liability company governed by this Agreement is "Alpha Entertainment LLC".

3.    <u>Purpose</u>.  This Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

4.    <u>Registered Office; Registered Agent</u>.  The address of the registered office of the Company in the State of Delaware is [●].  The registered agent for service of process maintained at such address is [●].

5.    <u>Units</u>.  A member's interests in the Company ("<u>Units</u>") shall for all purposes be personal property.  No holder of Units or member shall have any interest in specific Company assets or property, including assets or property contributed to the Company by such member as a part of any capital contribution.

6.    <u>Capital Contributions by the Sole Member</u>.  Pursuant to § 18-301(d) of the Act, the Member has been admitted as a member of the Company without making or being obligated to make a capital contribution to the Company.  The Member shall be issued one hundred (100) Units in the Company.  The Member shall not be obligated to make further capital contributions to the Company, and all Units issued to the Member shall be nonassessable.

7.    <u>Capital Accounts</u>.  At such times there is more than one member of the Company, a separate capital account shall be maintained for each member and such capital accounts shall be maintained in accordance with the provisions of § 704 of the Internal Revenue Code of 1986, as amended (the "<u>Code</u>"), and the Treasury Regulations promulgated thereunder.

8.    <u>Allocation of Profits and Losses</u>.  The Company's profits and losses shall be allocated among the Member or members in proportion to the number of Units held by each member.  At such times there is more than one member of the Company, it is the intent of the parties hereto that each member's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with this <u>Section 8</u> to the fullest extent permitted by §§ 704(b) and (c) of the Code and the Treasury Regulations promulgated thereunder.

9.    <u>Distributions</u>.  Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member or, if more than one member, the members holding a majority of the Units in the Company.  Such distributions shall be allocated among the member or members in proportion to the number of Units held by each member.

10.    <u>Management Powers of the Member</u>.  The Company shall be managed in all respects by the Member.  The Member shall have the full, exclusive, and absolute right, power, and authority to manage and control the business of the Company in accordance with the Plan.

11.    <u>Officers</u>.  Natural persons may be appointed as officers of the Company by the member or members holding a majority of the Units in the Company.  Officers may include a President, a Secretary, a Treasurer, and such other officers as the Member from time to time may

deem proper.  Unless otherwise determined, all officers so designated shall each have such powers and duties as generally pertain to their respective corresponding offices in a corporation incorporated under the Delaware General Corporation Law.  Any number of titles may be held by the same person.  Each officer shall hold office until his or her successor shall be duly designated and shall qualify or until his or her death, until he or she shall resign, or until he or she shall have been removed, either with or without cause, by the Member.  The salaries or other compensation, if any, of the officers and other agents of the Company shall be fixed by the Member.  Any delegation of authority pursuant to this <u>Section 11</u> may be revoked at any time.

12.　　<u>Dissolution</u>.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the unanimous written consent of the Member, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

13.　　<u>Transferability of Interests</u>.  A member may not assign in whole or in part its Units without the consent of all of the other members and provided that the transferee of such Units shall be bound by the terms of this Agreement.

14.　　<u>Admission of Additional Members</u>.  One or more additional members of the Company may be admitted to the Company with the unanimous written consent of the Member.

15.　　<u>Creditors of Members</u>.  To the fullest extent permitted by law, no creditor of any member (including, without limitation, any judgment creditor who obtains a charging order with respect to such member's interest under § 18-703 of the Act) shall, without the prior written consent of the Member, be entitled to share in any profits or losses, receive any distribution or distributions, receive any allocation of income, gain, loss, deduction or credit or similar item or acquire, possess or exercise any right to participate in the management of the business and affairs of the Company to which such member was, is, or will be entitled under the Act, this Agreement or otherwise.  No creditor who obtains any interest in or rights with respect to all or any portion of the interest of a member shall be admitted as member of the Company, or have or acquire any rights of a member (including, without limitation, any right to participate in the management of the business and affairs of the Company), unless such creditor is admitted as a substitute member in accordance with <u>Section 14</u> of this Agreement.

16.　　<u>Liability of Members</u>.  The debts, obligations, and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the Company, and no member, officer or authorized person shall be obligated personally for any such debt, obligation, or liability of the Company solely by reason of being a member, officer or authorized person of the Company.

17.　　<u>Exculpation and Indemnification</u>.

(a)　　Neither the Member nor any officer employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member (collectively, the "<u>Covered Persons</u>") shall, to the fullest extent permitted by law, have any duties (including fiduciary duties) to the Company or any Member or any other person or entity that is a party to or is otherwise bound by this Agreement, other than as expressly set forth in this Agreement and the implied contractual covenant of good faith and fair dealing.

3

(b)     No Covered Person shall, to the fullest extent permitted by law, be liable to the Company or the Member or any other Person that is a party to or is otherwise bound by this Agreement, for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person, except for violations of the implied contractual covenant of good faith and fair dealing.

(c)     To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's violation of the implied contractual covenant of good faith and fair dealing.

(d)     To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 17.

(e)     To the fullest extent permitted by applicable law, a Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(f)     To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Covered Person, to the fullest extent permitted by applicable law, a Covered Person acting under this Agreement shall not be liable to the Company or to any other Covered Person for its good faith reliance on the provisions of this Agreement or any approval or authorization granted by the Company or any other Covered Person.

(g)     The provisions of this Agreement, to the extent that they eliminate or restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Member to replace such other duties and liabilities of such Covered Person to the fullest extent permitted by applicable law.

(h)     The foregoing provisions of this Section 17 shall survive any termination of this Agreement.

When used in this Section 17, the following terms not otherwise defined herein have the following meanings:

4

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings.  Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited partnership, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

18.    Consents.  Any action that may be taken by a member or members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the member or members holding sufficient Units to authorize or approve such action at a meeting at which all members were present.

19.    Amendments.  Except as otherwise provided in this Agreement, this Agreement may be amended only by an affirmative vote of the member or members holding a majority of the Units in the Company.

20.    Governing Law.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware, without regard to any conflicts of law provisions thereof that would cause the law of any other jurisdiction to apply.

21.    Tax Elections.  The Member shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.  Unless otherwise elected by the Member, during such time as there is only one member of the Company (1) the Company shall not be treated as an association or corporation for income tax purposes; (2) the Company shall be disregarded for federal and state income tax purposes; and (3) the income, gain, loss, and deductions of the Company shall be treated as the income, gain, loss, and deduction of the member as provided in Treas. Reg. § 301.7701-2(c)(2).

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned has made this Agreement effective as of the date and year first above written.

**SOLE MEMBER:**

_____

**PETER HURWITZ**, solely in his capacity as Plan Administrator and not in his individual capacity