**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

OLIVER LUCK,                          :        CASE NO. 3:20-cv-00516-VAB
                                      :
         Plaintiff,              :
                                      :
v.                                    :
                                      :
VINCENT K. MCMAHON and ALPHA          :
ENTERTAINMENT LLC,                    :
                                      :        April 1, 2021
         Defendants.             :

**DEFENDANT ALPHA ENTERTAINMENT LLC'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO COMPEL VERIFICATION OF ALPHA'S INTERROGATORY**
**<u>ANSWERS AND RESPONSE TO INTERROGATORY NO. 2</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 4

      A.      Luck's Motion Is Yet Another Tactic In His Counsel's Continuous
              Strategy to Conceal Luck's Use of His Alpha-Issued iPhone In Violation
              of Alpha Policies ................................................................................... 4

      B.      Defendants' Efforts to Comply with the Court's February 5, 2021 Order ........... 9

III.    ARGUMENT .................................................................................................... 12

      A.      Luck's Motion to Compel Does Not Identify Any Deficiency in Alpha's
              Response to Interrogatory No. 2 ......................................................... 12

      B.      Luck's Motion to Compel Attempts to Exploit the Lack of A
              Verification In Furtherance Of Luck's Strategy to Exclude the Evidence
              of His Violations of the XFL's Technology Policies On His iPhone ................. 16

IV.     CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abigail Ross v. Univ. of Tulsa*,
    No. 14-CV-484-TCK-PJC, 2015 WL 13622518 (N.D. Ok. Apr. 24, 2015)...........................13

*Am. Intern. Spec. Serv. Lines Co. v. NWI-I, Inc.*,
    240 F.R.D. 401 (N.D. Ill. 2007)........................................................................................14

*Bybee Farms LLC v. Snake River Sugar Co.*,
    No. CV-06-5007-FVS, 2008 WL 820186 (E.D. Wash. Mar. 26, 2008)................................20

*Caggianiello v. FSG PrivatAir, Inc.*,
    No. 3:03CV1011, 2005 WL 8169559 (D. Conn. Mar. 9, 2005)...................................19

*Continental Western Ins. Co. v. Opechee Constr. Corp.*,
    No. 15-cv-006-JD, 2016 WL 865232 (D.N.H. Mar. 2, 2016) .................................13

*Cris v. Fareri*,
    No. 3:10CV1926(RNC), 2011 WL 13228490 (D. Conn. Dec. 13, 2011) ..............................16

*Mueller Pallets, LLC v. Vermeer Mfg. Co.*,
    No. 09-4016, 2010 WL 4022765 (D.S.D. Oct. 12, 2010).......................................................20

*Petrosyan v. Maserati N. Amer., Inc.*,
    No. 19-12425-DJC, 2020 WL 8458123 (D. Mass. Nov. 18, 2020)........................................19

*Shire Laboratories, Inc. v. Barr Laboratories, Inc.*,
    236 F.R.D. 225 (S.D.N.Y. 2006) .......................................................................................16

**Other Authorities**

D. Conn. L. Civ. R. 83.13(b) ...............................................................................................20

Fed. R. Civ. P. 1 .............................................................................................................3, 20

Fed. R. Civ. P. 33 .......................................................................................................13, 19

Fed. R. Civ. P. 33(b)(1)(A) ...............................................................................................16

Fed. R. Civ. P. 33(b)(1)(B) ...............................................................................................16

Fed. R. Civ. P. 33(b)(5)........................................................................................................19

Fed. R. Civ. P. 33(d) ...........................................................................................................12

Fed. R. Civ. P. 801(d)(2) ............................................................................................3, 16, 21

Steve S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary,*
 Rule 33 ...............................................................................................................14

7 Moore's Federal Practice – Civil § 33.104 ...........................................................16

Defendant Alpha Entertainment LLC ("Alpha") respectfully submits this Opposition to Plaintiff's Motion to Compel Verification of Alpha's Interrogatory Answers and Response to Interrogatory No. 2 (ECF No. 168, the "Motion to Compel").

## I.      INTRODUCTION

Luck's Motion to Compel is not really about any alleged deficiency in Alpha's supplemental response to Interrogatory No. 2 or an alleged need for a verification of Alpha's interrogatory answers.  The real purpose of Luck's Motion to Compel is revealed in its last paragraph, in which Luck asks this Court to "strike any claim or defense by Alpha that contends Mr. Luck's termination was proper because he allegedly violated XFL policy by using his Alpha-issued iPhone for personal purposes or matters unrelated to XFL business." (ECF No. 168 at 5.) The Motion to Compel is the latest effort by Luck and his counsel to prevent the evidence of Luck's actual use of his Alpha-issued iPhone in violation of Alpha's technology policies and his contract from being heard.

The undisputed evidence establishes that Luck contractually agreed that, as CEO, he would not fail to follow "any applicable XFL policies or directives," an entirely reasonable request for the highly compensated CEO of a start-up enterprise.  The failure to do so is a specifically-enumerated basis for a termination for cause in his contract.  It is also undisputed that Luck systematically violated the very XFL technology policies that he promulgated and was charged with enforcing.  The XFL's technology policies prohibited the use of company-issued technology for matters unrelated to XFL's business.  (ECF No. 107-1 at 16; ECF No. 107-2 at 2.)  Luck has admitted that he used his Alpha-issued iPhone "regularly and routinely, both for personal and work-related purposes."  (ECF No. 101 at 2; ECF No. 106 at 3-4.)  Luck also has admitted using his Alpha-issued iPhone to conduct business for other entities that was unrelated to the XFL.  (ECF

No. 128-8, RFAs 47-52.)  Luck concealed his violations of the XFL's technology policies from his boss, McMahon, admitting that he "does not have any documents in his possession, custody or control by which he notified Vince McMahon that [Luck] was using the iPhone issued to him by Alpha for non-XFL business purposes."  (ECF No. 128-9, RFP 28.)  Although he has factually admitted to acts that violated policies of the XFL, he does not want this Court to hear or see the actual evidence of what precisely he did on the phone which violated the very policies he required all other employees to adhere to.

Luck's concealment of his use of his Alpha-issued iPhone in violation of the XFL's technology policies did not end at termination.  Since receiving his termination letter from Alpha's counsel on April 9, 2020, Luck and his lead Texas counsel have consistently acted to conceal the full extent of Luck's use of his iPhone.  Initially, Luck's Texas counsel repeatedly represented over several months to Defendants' counsel, to Alpha's bankruptcy counsel, and to this Court that the full contents of the iPhone were preserved and nothing had been deleted.  After making such a representation to the Court and being directed to agree to a spoliation order, Luck's Texas counsel then admitted that data was deleted from the iPhone after Luck received his termination letter, but minimized what had been deleted.  The accuracy of the extant representation that minimized what was deleted has not yet been tested by an examination of Luck in a deposition, which Luck and his Texas counsel no doubt desire to prevent.

Seemingly aware (and concerned) regarding that issue, Luck and his counsel are attempting to use this Motion to Compel to preclude exposure of Luck's actual use of the iPhone.  The Motion to Compel effectively seeks to create a Catch-22 for Alpha.  Unless Alpha can find an officer or agent with knowledge of all Alpha employees, if any, who used an Alpha-issued mobile phone for personal matters or matters unrelated to XFL business, Luck asks that he be rewarded by excluding

the evidence from his iPhone that he violated both the applicable policies and *his* contract, which was unique among XFL employees.

In substance, the Motion to Compel is meritless.  As the former-CEO, nobody is better positioned to know if any efforts were taken to police or enforce the policies he made applicable to all employees.  Despite moving to compel a further response to Interrogatory No. 2, Luck has not identified any deficiency in Alpha's supplemental response that there is no information regarding who, if anybody else, used Alpha-issued phones for purposes unrelated to the XFL.  As for the verification, Defendants have explained to Luck's counsel that Defendants' counsel drafted the supplemental interrogatory responses and that Alpha is a bankrupt entity with no officer or agent with personal knowledge of the information contained in the responses capable of verifying such information.  To avoid any prejudice to Luck due to the inability to verify the answers, Defendants offered to agree (a) that the interrogatory answers are admissions of Alpha under Fed. R. Civ. P. 801(d)(2), and (b) not to object to the admissibility of the interrogatory answers due to the lack of a verification.  Although Luck's counsel was unable to explain how Defendants' proposal would not address any practical concerns with respect to use of the interrogatory responses in this case, in another example of gamesmanship, Luck's counsel refused Defendants' proposal because he insists on deposing whomever verifies Alpha's supplemental responses to Interrogatory No. 2.  Luck's position plainly is not constructive or consistent with Fed. R. Civ. P. 1's mandate that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Thus, in addition to denying Luck's Motion to Compel on the merits, Defendants respectfully request that the Court rebuke Luck's gamesmanship by awarding Defendants their attorneys' fees and costs incurred in responding to the Motion to Compel.

## II.      BACKGROUND

**A.      Luck's Motion Is Yet Another Tactic In His Counsel's Continuous Strategy to Conceal Luck's Use of His Alpha-Issued iPhone In Violation of Alpha Policies**

The continuous strategy by Luck and his counsel to conceal Luck's use of his Alpha-issued iPhone in violation of Alpha policies dates back to the April 9, 2020 termination letter.  (ECF No. 57 at 21-22.)  In the termination letter, Alpha demanded that Luck return a company owned and issued iPhone.  Luck refused to do so and has since admitted that he continued to use the iPhone for obvious non-XFL business purposes in violation of Alpha policies that he promulgated as Alpha's CEO.  (ECF No. 166 ¶ 64.)  On April 17, 2020, one day after Luck filed this lawsuit, Defendants' counsel again asked Luck's counsel about returning the phone to Alpha and instructed Luck's counsel to ensure that the evidence on the iPhone is preserved.  (ECF No. 137-9.)  Luck's counsel responded that he intended to discuss the return of the iPhone with Alpha's bankruptcy counsel and stated, "You can rest assured that Mr. Luck has taken steps to preserve evidence including texts on his phone."  (ECF No. 137-10.)

Having still not returned Luck's iPhone nearly one month after receiving the termination letter, Luck's counsel then asked Alpha's bankruptcy counsel whether XFL had a technology policy that prohibited personal use of the phone, signaling that his counsel had concerns about the manner in which Luck had used the phone.  (ECF No. 137-11.)  Alpha's bankruptcy counsel sent Luck's counsel the relevant portions of the XFL's technology policies, which Luck had signed-off on, prohibiting personal use of the iPhone and asked for confirmation that Luck's counsel would be returning the iPhone in an "unaltered" state.  (*Id.*)  Luck's counsel ignored Alpha's bankruptcy counsel's request for confirmation that the iPhone would be returned in an unaltered state and claimed "based on the case law I've read, Oliver had an expectation of privacy even with the policy."  (*Id.*)  Despite repeated requests by Defendants' counsel, Luck's counsel has never

identified or cited to any such case law.  At the same time that Alpha's bankruptcy counsel was asking for confirmation from Luck's counsel that the iPhone would be returned in an unaltered state, Defendants' counsel similarly reminded Luck's counsel of his obligation to preserve evidence on the phone.  In a May 4, 2020 email, Defendants' counsel also provided Luck's counsel with the relevant portions of the XFL's technology policies and stated, "the XFL phone in the possession of your client should be safeguarded against the deletion of anything on that phone, including anything he considers personal.  The phone itself is evidence in this case which we will at the appropriate time wish to examine and have examined by experts.  Please act accordingly." (ECF No. 137-12.)  On May 5, 2020, Luck's counsel sent the iPhone to Alpha's bankruptcy counsel.

In the next phase of concealment, Luck's counsel then refused to provide the passcode to enable Alpha to access the contents of the phone.  In response to a request by Defendants' counsel for the passcode, Luck's counsel refused, stating:  "The materials contained [on Luck's iPhone] are private and confidential.  You and your client have no right to access anything on Mr. Luck's phone without his consent and he does not consent."  (ECF Nos. 137-15 & 16.).  This assertion squarely contradicted the XFL's technology policies which provided that "[a]ll XFL Technology and the information, materials and data produced, stored, transmitted or processed thereon are the property of [the XFL].  Employees should have no expectation of privacy in their use of these systems."  (ECF No. 107-1 at 18; ECF No. 107-2 at 3.)  Contrary to the express terms of the XFL technology policies and still refusing to provide the legal authority on which he purportedly was relying, Luck's counsel continued to assert some undefined privacy interest in the contents of the iPhone as pretext to prevent Alpha from accessing the data on its own phone.

In concert with refusing to provide the passcode, Luck's counsel sought to limit the

information produced from the iPhone to "certain responsive information" from a forensic copy that was supposedly made prior to returning the phone to Alpha's bankruptcy counsel, all of which would be determined in the discretion of Luck's counsel.  (ECF No. 137-16.)  Luck's counsel stated:  "As I am sure you are aware, I previously advised Mr. McDevitt that we have already taken a forensic image of Mr. Luck's phone to preserve its contents for litigation.  If and when appropriate, we will produce certain responsive information in accordance with the Federal Rules of Civil Procedure."  (*Id.*)  When Defendants' counsel sought to raise Luck's counsel's refusal to provide the passcode and access to Luck's iPhone with the Court, Luck's counsel then engaged in multiple tactics to delay or prevent Defendants from gaining forensic access to Luck's iPhone.

*First*, Luck's counsel tried to delay raising the issue with the Court until after the production of selective contents of the iPhone, again, without affording Defendants' expert the opportunity to confirm whether any responsive information had been deleted.  (ECF No. 137-20 at 5.)

*Second*, Luck's counsel then argued that Defendants should not have access to the full contents of Luck's iPhone because Luck offered to stipulate that he "used the iPhone regularly and routinely, both for personal and work-related purposes."  (ECF No. 101 at 2.)  This stipulation, if accepted, would have simply operated to conceal the full extent of Luck's violations of the XFL technology policies and the specific things he did which violated those policies.

*Third*, Luck's Texas counsel continued to represent that no information had been deleted from the iPhone as the purported justification for why Defendants supposedly did not need access to the full contents of the iPhone.  For example, in meet and confer discussions prior to raising the issue with the Court, Luck's counsel stated to Defendants' counsel, "I want to make clear for the record that I previously told Mr. McDevitt and/or Alpha's bankruptcy counsel that Plaintiff's

counsel retained a third-party expert who imaged the contents of the iPhone, without deletion, before it was sent to Alpha." (ECF No. 137-20 at 2.)  In the Joint Motion for Discovery Conference filed with the Court, Luck's counsel further represented to the Court:  "Luck's counsel previously advised Defendants' counsel and/or Alpha's bankruptcy counsel that it retained a third party expert who has already imaged the contents of Mr. Luck's iPhone and that no deletions had been made." (ECF No. 101 at 6.)  During the December 17, 2020 discovery conference with the Court on the passcode issues, attended by Luck, Luck's counsel again represented:  "I have told opposing counsel since April that we have done a forensic image by a third-party expert and that all of the material has been maintained with no deletions."  (ECF No. 125 at 12.)  Later in the discovery conference, Luck's counsel stated that Luck was willing to stipulate that no deletions were made to the contents of the phone:  "And we will further agree – and I believe we are essentially on the record, your Honor, so this is a representation to the Court by counsel.  We will further agree that we did nothing to delete any emails or contents or texts.  So the Court and opposing counsel can rest easy."  (*Id.* at 20.)

Based on the representations made by Luck's counsel, the Court directed the parties to "submit a proposed stipulation agreement regarding any potential spoliation of data on Mr. Luck's Alpha-issued cellphone by December 18, 2020."  (ECF No. 111.)  Following that order, Luck's counsel suddenly refused to stipulate that no data was deleted from the phone since Luck's receipt of his termination letter on April 9, 2020.  To the contrary, the proposed stipulation by Luck's counsel admitted that deletions had occurred but minimized that fact by stating that that (a) a text message string among members of Luck's immediate family was deleted from the iPhone; and (b) "spam," "phishing," "unsolicited advertisements," or "pocket dial"-type texts and emails may also have been permanently deleted.  (ECF No. 114-2.)  Luck's lead Texas counsel then sent an off-

the-record email communication to the Court acknowledging his misrepresentations and again minimizing the deletions:  "I write to apologize to you and opposing counsel for statements I made during the discovery conference held on Thursday December 18, 2020.  During the hearing, I erroneously represented to the Court that nothing had been deleted from Mr. Luck's iPhone prior to sending it to Alpha Entertainment, LLC's bankruptcy counsel on May 6, 2020.  Previously, I made the same representation to counsel for Mr. McMahon.  Until the end of the hearing, I believed that representation of fact to be accurate in all respects."  (ECF No. 137-21.)  Specifically, Luck's Texas counsel stated:

> Following the discovery conference, I learned that a private text message string among Mr. Luck's immediate family members (the "Luck Family Chat") had been deleted from Mr. Luck's iPhone after Mr. Luck received his letter of termination from Alpha.  When I learned of this new information on December 18th we took immediate and successful steps to ensure that the Luck Family chat, which resides on other electronic devices available to Mr. Luck, has been preserved.  It is also possible that "junk"-type emails or texts may have been deleted from the iPhone after receipt of the termination letter and prior to May 6, 2020.

(*Id.*)  Following these statements by Luck's Texas counsel, the Court ordered Luck to provide the passcode to the iPhone to Defendants' counsel "to properly preserve the evidence on the cellphone while the underlying merits of the passcode issue are considered."  (ECF No. 124.)  Subsequently, the Court granted Defendants access to the information on Luck's iPhone.  (ECF No. 152.)

Although Luck's Texas counsel finally admitted that information had been deleted from the iPhone and attempted to minimize what had been deleted, Luck and his counsel have since resisted all discovery as to when and how it was first disclosed that data in fact had been deleted. In his responses to Defendants' interrogatories, Luck refused to give a definitive answer as to "when Luck first disclosed to any of his legal counsel that he had in fact deleted data from the iPhone after receipt of the Termination Letter."  Instead of a categorical denial that he had deleted anything or a response which mirrored the statements made to the Court by his counsel in the off-

the-record email to the Court, Luck stated that he "does not recall deleting any data from his iPhone after receiving the Termination Letter.  Mr. Luck further states that his wife, Kathy Luck, deleted a text string referred to as the 'Luck Family Chat' on Mr. Luck's iPhone . . . ." (ECF No. 137-22, IROG 9(c).)  Additionally, Luck's counsel has refused to disclose not only the identity of the consultant who made the forensic copy of Luck's iPhone but also objected to all discovery requests seeking information as to steps taken by the consultant to support the assertions by Luck's counsel that no information was deleted from the iPhone other than what he disclosed when admitting that deletions had occurred.  (Ex. 1.)

Once the Court ordered Luck to provide the passcode to Defendants' counsel and granted Defendants access to the information on the iPhone, Luck's Texas counsel adopted a new strategy to deal with the very issue he had injected into the case by his emails to Alpha's bankruptcy counsel inquiring if there were any privacy policies regarding the iPhone.  Luck's counsel began to assert that Defendants and their legal counsel had acted in "bad faith" and engaged in a "fraudulent scheme" by, *inter alia*, predicating Luck's termination on his violations of the XFL's technology policies.[1]  (ECF No. 161.)  Luck's Motion to Compel is yet another tactic in his strategy aimed at whitewashing his violations of the XFL's technology policies by completely excluding the evidence on his iPhone of such violations.  Now, he desires to put opposing counsel in the role of fact witness, which raises assuredly disqualification issues, rather than have to focus on his actions.

**B.**     **Defendants' Efforts to Comply with the Court's February 5, 2021 Order**

Defendants have engaged in extensive and costly efforts to comply with the Court's February 5, 2021 Order (the "2/5/21 Order," ECF No. 152).  Despite Luck's statement that

---

[1] Defendants addressed at length such baseless and *ad hominem* attacks against Defendants' counsel in two filings last week.  (ECF Nos. 171 & 172.)

production of his PST file would mostly resolve the discovery disputes, which the Court noted in its 2/5/21 Order (ECF No. 152 at 15), Luck's Texas counsel has insisted on requiring production of records far in excess of that file.  Since entry of the 2/5/21 Order, Defendants supplemented their responses to Luck's First Request for Production of Documents, withdrawing all objections to Nos. 1, 5, 6, 7, 8, 9, 11, 12, 16, 17, 18, 19, 24, 25, 26, 27, 28, and 29, and producing more than 166,000 additional pages of documents responsive to those requests.[2]  The time and cost involved in searching, reviewing, and producing these documents has been massive.  In total, Defendants have incurred hundreds of thousands of dollars in attorneys' fees and costs in complying with the 2/5/21 Order.

Additionally, Alpha served supplemental responses to Luck's First Set of Interrogatories that fully responded to Nos. 1, 2, and 4.  Because Alpha is a bankrupt entity with no employees, and all of its assets were acquired by Alpha Opco, LLC pursuant to an asset purchase agreement that closed on August 21, 2020, Defendants' counsel drafted the supplemental responses to Interrogatory Nos. 1, 2, and 4 based on Alpha's pre-bankruptcy records in the possession of Defendants' counsel and the knowledge of Defendants' counsel from its pre-bankruptcy representation of Alpha.  As a practical matter, the information and knowledge in the possession of Defendants' counsel is the information presently in Alpha's possession, custody or control.

Specifically, Interrogatory No. 1 asked for the names of all Alpha employees who were issued a mobile phone by Alpha.  Defendants' counsel provided a list of all such employees based on inventory records maintained by Alpha prior to its bankruptcy.  (ECF No. 168-1, IROG No. 1.)

Interrogatory No. 2, the interrogatory in question, then asked for the identity of "all Alpha

---

[2] The parties recently agreed upon the custodians to search and search terms to apply in responding to RFP Nos. 1, 19 and 24.  The review and production of documents resulting from that search is ongoing.

employees who used mobile phone(s) issued by Alpha, McMahon, or the XFL for personal matters or matters unrelated to the business of Alpha or the XFL from June 1, 2018 until April 13, 2020."

(*Id.*, IROG No. 2.)  Alpha responded in an answer drafted by Defendants' counsel as follows:

> Alpha is a bankrupt entity with no employees.  Alpha's counsel does not know the identity of all Alpha employees, if any, other than Luck, who used an Alpha-issued mobile phone for personal matters or matters unrelated to XFL business.  As CEO and Commissioner of the XFL, Luck was responsible for ensuring compliance with, and enforcing, XFL policies, including the XFL Employee Handbook & Code of Business Conduct and the XFL Technology Acceptable Use Policy, and consequently he should have knowledge whether any other Alpha employees used Alpha-issued phones for non-XFL business.

(*Id.*)  This answer is impeccably accurate in all respects and fully responds to Interrogatory No. 2 with all information in Alpha's possession, custody or control.  Alpha has no employees.  Pre-bankruptcy records of Alpha accessible to Defendants' counsel did not contain any responsive information or even indicate that an investigation as to whether any Alpha employees used their Alpha-issued mobile phone for matters unrelated to XFL business had ever been undertaken.  Likewise, because all of Alpha's assets, including any mobile phones in Alpha's possession at the time of filing bankruptcy, were sold to Alpha Opco LLC, Defendants' counsel cannot conduct any forensic investigation of such mobile phones to determine how they were used by any former-Alpha employees, which itself would be extremely expensive.  Under the circumstances, therefore, the answer drafted by Defendants' counsel to Interrogatory No. 2 included all information in Alpha's possession, custody or control.

Interrogatory No. 4 asked whether disciplinary measure were taken against any Alpha employee, other than Luck, "for failing to follow a policy or directive regarding use of a mobile phone issued by Alpha."  (*Id.*)  Based on a search of documents in the possession of Defendants' counsel, Alpha fully responded to Interrogatory No. 4 by identifying and describing in detail, including reference to specific documents from which information responsive to Interrogatory No.

11

4 is ascertainable pursuant to Fed. R. Civ. P. 33(d), the name of, and circumstances surrounding, the termination of an Alpha-employee for violation of the XFL Technology Acceptable Use Policy for disseminating confidential XFL information to third parties.  (*Id.*, IROG No. 4.)

Luck has not contested Alpha's supplemental responses to Interrogatory Nos. 1 and 4.

### III.    ARGUMENT

### A.    Luck's Motion to Compel Does Not Identify Any Deficiency in Alpha's Response to Interrogatory No. 2

Luck's Motion to Compel asserts that "Alpha should be ordered to provide a full and complete answer to Interrogatory No. 2 that is not based solely on its counsel's knowledge."  (ECF No. 168 at 4.)  As an initial matter, Luck's characterization of Alpha's response is incorrect.  As described above, Alpha's supplemental response to Interrogatory No. 2 — like its supplemental responses to Interrogatory Nos. 1 and 4 which Luck has not contested — was based on all information in Alpha's possession, custody or control.  Because Alpha has no employees and all of its assets were sold to Alpha Opco LLC, as a practical matter, the information in Alpha's possession, custody or control is limited to Alpha's pre-bankruptcy records in the possession of Defendants' counsel and the knowledge of Defendants' counsel from its pre-bankruptcy representation of Alpha.[3]

Other than mischaracterizing the scope of Alpha's supplemental response to Interrogatory

---

[3]    Luck's position that Alpha's supplemental response to Interrogatory No. 2 was deficient in some unidentified way also squarely conflicts with the way in which Luck and his counsel failed to provide information that clearly was in their possession, custody and control in answering Alpha's Counterclaims. For example, Paragraph 66 of Alpha's Amended Counterclaims asserted, "Before returning the iPhone to Alpha, Luck's counsel asked Alpha's bankruptcy counsel whether Alpha had a policy that prohibited personal use of the iPhone issued by Alpha."  (ECF No. 153 ¶ 66.)  Luck's answer to Paragraph 66 stated, "Mr. Luck lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66."  (ECF No. 166 ¶ 66.)  Mr. Luck's knowledge obviously extends to the knowledge of his agents, like counsel, ***who was personally involved*** in the conversation that was the subject of Paragraph 66. (ECF No. 172-4.)  Luck's answer claiming lack of knowledge in response to Paragraph 66 is manifest bad faith.

No. 2, Luck's Motion to Compel does not explain how that supplemental response is deficient in any way. Nor does it articulate anything that Defendants' counsel was obligated to do under the Federal Rules, but failed to do, in answering Interrogatory No. 2. The complete absence of any purported deficiency should be dispositive of Luck's Motion to Compel with respect to Interrogatory No. 2.

In the parties' correspondence prior to the filing of Luck's Motion to Compel, Luck's counsel suggested that Alpha's supplemental response to Interrogatory No. 2 somehow was deficient because Defendants' counsel failed to interview former-Alpha employees, Jeffrey Pollack and Basil DeVito, as part of responding to Interrogatory No. 2.[4] (ECF No. 168-3.) Luck, however, apparently has abandoned that alleged deficiency in his Motion to Compel. In any event, Luck's counsel was wrong — a corporation generally is not required to obtain information from former-employees in responding to interrogatories because the corporation no longer has control over these persons. *See Continental Western Ins. Co. v. Opechee Constr. Corp.,* No. 15-cv-006-JD, 2016 WL 865232, at *3 (D.N.H. Mar. 2, 2016) (denying motion to compel defendant to obtain information from former employees to answer interrogatories, holding "[a]lthough Rule 33 does require the responding party to make reasonable efforts to obtain the requested information, that duty does not extend to employees no longer under its control."); *Abigail Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, 2015 WL 13622518, at *2 (N.D. Ok. Apr. 24, 2015) (rejecting plaintiff's contention that defendant was obligated to secure information from former employees in answering interrogatories, holding "while a party responding to discovery must provide all information within that party's knowledge, possession or control, a party is not required to

---

[4] Notably, DeVito was not even identified in Alpha's response to Interrogatory No. 1 as someone who was issued a mobile phone by Alpha.

13

interview third parties not within its control in order to answer interrogatories"); *Am. Intern. Spec. Serv. Lines Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 413 (N.D. Ill. 2007) (denying motion to compel defendant to interview former officers, directors and employees in answering interrogatories "[b]ecause the defendants have no control over the [former employees]"); *see also* Steve S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary,* Rule 33 ("[T]he responding party does not have an obligation to obtain information known by third parties not under the party's control.").

Although irrelevant to the merits of Luck's Motion to Compel given the absence of any alleged deficiency in Alpha's supplemental response to Interrogatory No. 2, the Motion to Compel goes on to make certain erroneous assertions that require brief response.  Specifically, Luck asserts that "[t]he identity of all Alpha employees who used their XFL-issued iPhones for personal purposes is important to the merits of this case."  (ECF No. 168 at 4.)  Luck claims that "[t]o the extent other XFL employees used iPhones for personal matters but were not disciplined or terminated proves that the XFL 'policy' was no policy at all."  (*Id.*)  This argument, which is akin to a driver cited for speeding arguing that he should be found not guilty because others were also speeding, is misguided for multiple reasons.  *First*, Luck is well aware of the XFL technology policies as set forth in the XFL Employee Handbook & Code of Business Conduct and XFL Technology Acceptable Use Policy.  The XFL Employee Handbook & Code of Business Conduct included a letter signed by Luck welcoming new employees to the XFL that stated, among other things, "[t]he following handbook and code of conduct will provide you with information about our policies and philosophies related to our league and the collaborative culture we are building." (ECF No. 137-7.)  Indeed, Luck made other high ranking employees he hired sign offer letters that required compliance with these policies.  As such, the existence of such policies is indisputable.

*Second*, whether any other at-will former-XFL employee was or was not disciplined or terminated for violation of the XFL technology policies has no bearing on whether Luck in fact failed to follow those policies. He signed a contract establishing that it constituted "cause" for termination if he failed to follow such policies. Other at-will employees could be fired for no reason or any reason. *Third*, in a desperate attempt to avoid the consequences of his failure to follow the policies, Luck now contends in this lawsuit that the XFL technology polies did not apply to him in the first instance, claiming in response to Defendants' discovery requests that (a) Luck was not subject to the XFL's technology policies and (b) Luck's iPhone did not constitute "XFL Technology" to which the XFL's technology policies applied. (ECF No. 128-8, RFAs 40, 43 & 46.) In light of Luck's contention that he uniquely was not subject to the XFL technology policies applicable to all employees, any other former-XFL employee's use of his/her mobile phone is completely irrelevant. *Fourth*, that Luck even posed this question is paradoxical and backwards — as Alpha stated in response to Interrogatory No. 2, as CEO and Commissioner of the XFL, Luck was responsible for enforcing compliance with the XFL technology policies and consequently he should have knowledge of whether any other Alpha employees used their Alpha-issued phone for non-XFL business. *Fifth*, Alpha provided the identities of all Alpha employees — all of whom no longer are employed by Alpha — who were issued mobile phones in response to Interrogatory No. 1. Thus, if Luck wants to ask each of the former-Alpha employees whether they used their Alpha-issued mobile phones for non-XFL business, he could attempt to interview them to the same extent as Defendants' counsel.[5]

---

[5] Luck also claims that other employees' use of their Alpha-issued mobile phones is somehow relevant to his contention that his "personal use" of his XFL-issued iPhone "assisted him in carrying out his XFL duties." (ECF No. 168 at 4.) Luck used his phone to conduct business for other entities during periods he was not attending to his XFL duties. No use of phones by other employees for personal purposes can mitigate Luck's dereliction of duty nor transform such dereliction into somehow assisting him in carrying out XFL duties.

**B.**     **Luck's Motion to Compel Attempts to Exploit the Lack of A Verification In Furtherance Of Luck's Strategy to Exclude the Evidence of His Violations of the XFL's Technology Policies On His iPhone**

Contrary to Luck's assertion, Defendants' counsel never took the position "that Alpha could not provide a verification because Alpha is in bankruptcy." (ECF No. 168 at 2.) Rather, when Luck's counsel first raised the verification issue, Defendants' counsel responded as follows:

> In response to your second question regarding verifications, we have considered this issue at length given the unusual circumstances of this case where, as a bankrupt entity, Alpha does not have an officer or agent available to sign the interrogatory answers. However, we do not want you to be prejudiced, as a practical matter, as a result of these unusual circumstances. Therefore, we will agree (a) that the interrogatory answers are admissions of Alpha under Fed. R. Civ. P. 801(d)(2), and (b) not to object to the admissibility of the interrogatory answers due to the lack of a verification (reserving, of course, the right to object on relevancy, lack of probative value or other substantive grounds). Please let me know if these agreements address any practical concerns you may have regarding the verifications.

(ECF No. 168-3.) This proposal reflected the principle that for corporations under Rule 33(b)(1)(B), "[t]he main point of the signature is to bind the party." *Shire Laboratories, Inc. v. Barr Laboratories, Inc.*, 236 F.R.D. 225, 227 (S.D.N.Y. 2006).[6]

Without identifying any prejudice, Luck's counsel responded that the proposal was "not sufficient." (Ex. 2.) Luck's counsel first claimed that the proposal did "not address Mr. McMahon's lack of verification," which made no sense because no interrogatories have been served on Mr. McMahon in this action. (*Id.*) Luck's counsel then claimed that Alpha's situation was not unusual, followed by the *non sequitur* that Alpha has "assert[ed] affirmative defenses and

---

[6] Luck's Motion to Compel cites *Cris v. Fareri*, No. 3:10CV1926(RNC), 2011 WL 13228490, at *1 (D. Conn. Dec. 13, 2011), for the proposition that "[r]equiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses." *Cris*, however, involved interrogatory responses by an individual under Rule 33(b)(1)(A). The rules governing responses and verifications to interrogatories with respect to individuals and corporations are fundamentally different. *See* 7 Moore's Federal Practice – Civil § 33.104. Accordingly, Luck's reliance on *Cris* here is misplaced.

has brought a counterclaim against [Luck] in this case.  If it wants to continue to pursue those defenses and counterclaims it is responsible, like any other party to litigation in federal court, to abide by the FRCP."  (*Id.*)

Trying constructively to resolve the dispute based on any practical concerns Luck's counsel may have with using the interrogatory answers in this case, Defendants' counsel responded as follows:

> [P]lease explain how my proposal does not address any practical concerns with respect to use of the interrogatory answers in this case so we can attempt to address any such remaining concerns.  Otherwise, I will respond to your assertions in order.  First, no interrogatories have been served on Mr. McMahon so this is a moot point.  Second, you say that Alpha's status as a bankrupt entity without any employee or agent available to sign interrogatory answers is not unusual — therefore, please send us the presumably abundant authority as to how this situation has been handled so we can consider it.  Third, Alpha's assertions of affirmative defenses and counterclaims is wholly irrelevant to the issue of your use of Alpha's interrogatory answers in this case.  We await your responses to determine if there is a mutually-agreeable way of resolving this issue.

(Ex. 3.)  Following an unproductive telephone conference in which Luck's counsel was still unable to identify any prejudice, Luck filed the Motion to Compel.  Luck has never explained, and does not explain in the Motion to Compel, how Defendants' proposal does not address any practical concerns with respect to the use of interrogatory answers in this case.[7]

While continuing to avoid the question of how Luck would be prejudiced, Luck's Motion to Compel asserts that Mr. Peter Hurwitz, who was appointed by the Bankruptcy Court to be the Plan Administrator of the post-effective date (December 22, 2020) debtor — *i.e.*, the corporate shell of Alpha remaining following the sale and confirmation of the Plan (Declaration of Peter Hurwitz ("Hurwitz Dec.") ¶ 5, Ex. 4), "may verify the Responses to Plaintiff's Interrogatories 1,

---

[7] Alpha notes that Luck did not verify his Amended Responses and Objections to McMahon's First Set of Interrogatories dated February 3, 2021.  (ECF No. 172-5.)

2, and 4." (ECF No. 168 at 3-4.) As set forth in his attached declaration, Mr. Hurwitz lacks any personal knowledge of the substance of Alpha's supplemental responses to Interrogatory Nos. 1, 2, and 4 to be able to verify them. As Plan Administrator, Mr. Hurwitz is generally responsible for the winding down of Alpha's affairs. (Hurwitz Dec. ¶ 6, Ex. 4.) Such responsibilities include: (i) making distributions to holders of allowed claims; (ii) objecting to, and prosecuting, objections to claims; (iii) compromising or settling any claim; (iv) filing applicable tax returns for the debtor; (v) liquidating any of the assets of the debtor; (vi) prosecuting, compromising, resolving, or withdrawing any of the "Retained Causes of Action" (which does not include this lawsuit[8]); and (vii) preparing and filing required post-confirmation reports. (*Id.*)

Mr. Hurwitz has no personal knowledge of Alpha's pre-bankruptcy activities and policies relating to mobile phone usage or information technology. (*Id.* ¶ 7.) Mr. Hurwitz also has no personal knowledge of Alpha employees who used mobile phones issued by Alpha (or the XFL). (*Id.* ¶ 8.) Specifically, Mr. Hurwitz has no personal knowledge of whether any employee issued a mobile phone may have used the phone for personal matters or matters unrelated to the business of Alpha (or the XFL) for the period of time between June 1, 2018 until April 13, 2020, as pertinent to Alpha's supplemental response to Interrogatory No. 2. (*Id.*) Mr. Hurwitz became Plan Administrator approximately four months after Alpha sold substantially all of its assets to Alpha Opco, LLC, which included all "Books and Records" (as defined in the Asset Purchase Agreement between Alpha Entertainment LLC and Alpha Opco, LLC dated August 17, 2020) of Alpha. (*Id.* ¶ 4.) Throughout Mr. Hurwitz's tenure as Plan Administrator, Alpha's records, including any

---

[8] While the definition of "Retained Causes of Action" in the Second Amended Chapter 11 Plan of Alpha includes litigation against Luck, Alpha assigned all of its claims in this action to McMahon in connection with a settlement and stipulation memorialized with, and approved by, the Bankruptcy Court in the Bankruptcy Case at Docket No. 532.

electronic and hard copy records, computers, and mobile phones that may have been in Alpha's possession at the time the company filed for bankruptcy, are not and were never within his custody and control.  (*Id.* ¶ 9.)  Accordingly, Mr. Hurwitz has no means by which even to attempt to verify Alpha's supplemental responses to Interrogatory Nos. 1, 2, and 4.

Luck alternatively suggests that "Alpha should be compelled to have the person who drafted the Supplemental Responses [to Interrogatory Nos. 1, 2, and 4] verify them under oath." (ECF No. 168 at 4.)  Luck's counsel knows full well that Defendants' counsel drafted those supplemental responses.  Luck's counsel also has made clear in both his Motion to Compel and the parties' correspondence that he intends to depose whomever verifies the supplemental responses, which under the circumstances is pure harassment.  Luck's invitation for Defendants' counsel to verify the supplemental responses, therefore, is a not-so-thinly-veiled threat to subject litigation counsel to discovery — a patently unacceptable situation which serves to prevent Defendants' counsel from verifying the supplemental responses they drafted.

It is well-established that outside counsel may verify a corporation's interrogatory responses under Rule 33(b)(5).  *See Caggianiello v. FSG PrivatAir, Inc.*, No. 3:03CV1011, 2005 WL 8169559, at *3 (D. Conn. Mar. 9, 2005) ("Rule 33 of the Federal Rules of Civil Procedure expressly provides that interrogatories directed to a corporate party may be answered by any officer or agent, who shall furnish such information as is available to the party.  This language has been uniformly construed to authorize answers by an attorney for the party.") (internal quotations and citation omitted).  However, courts do not permit counsel to be deposed where the underlying information provided in interrogatory answers is ascertainable from records or other witnesses. *See Petrosyan v. Maserati N. Amer., Inc.*, No. 19-12425-DJC, 2020 WL 8458123, at *2-3 (D. Mass. Nov. 18, 2020) (granting motion for protective order regarding deposition of defendant's

in-house attorney who verified interrogatory answers "based on a review of records and other information obtained from [defendant's] personnel"); *Mueller Pallets, LLC v. Vermeer Mfg. Co.*, No. 09-4016, 2010 WL 4022765, at *6 (D.S.D. Oct. 12, 2010) (granting motion for protective order regarding deposition of defendant's in-house counsel who verified interrogatory answers because "[h]e is actively involved in the defense of this litigation.  His information was gathered in anticipation of or as a result of the litigation.  He has provided legal counsel to [the defendant] about this lawsuit."); *Bybee Farms LLC v. Snake River Sugar Co.*, No. CV-06-5007-FVS, 2008 WL 820186, at *2, 8 (E.D. Wash. Mar. 26, 2008) (granting motion to quash deposition notice of defendant's in-house counsel who verified interrogatory answers where "the facts 'verified' by [counsel] in responding to written discovery were available in the discovery responses themselves").

Such threatened discovery of Defendants' counsel, like Luck's proposed amendments to his complaint, appear intended for the bad faith purpose of seeking to disqualify opposing counsel. (ECF No. 172 at 38-39.)  If Defendants' counsel were required to testify, or even "ought to be called as a witness" on Defendants' behalf, then Defendants' counsel would have to withdraw from representing Defendants at trial in this action.  *See* D. Conn. L. Civ. R. 83.13(b) ("If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or she or a lawyer in the same firm ought to be called as a witness on behalf of the client, he or she shall withdraw from the conduct of the trial and the law firm shall not continue representation in the trial, except that the lawyer may continue the representation[.]").

The Court should reject the gamesmanship by Luck's counsel in seeking to exclude crucial evidence in this case.  The bottom line is that this Motion to Compel should never have been filed. In light of the unique circumstances of this case, and the dictates of Rule 1 of the Federal Rules of

Civil Procedure, Defendants' proposal that they will agree (a) that the interrogatory answers are admissions of Alpha under Fed. R. Civ. P. 801(d)(2), and (b) not to object to the admissibility of the interrogatory answers due to the lack of a verification, addresses any practical concerns Luck could have regarding use of the interrogatories in this case — and Luck's counsel has never explained why it does not.

## IV.   CONCLUSION

For all of the foregoing reasons, Luck's Motion to Compel should be denied in its entirety and Alpha should be awarded its attorneys' fees and costs incurred in responding to the Motion to Compel.

**DEFENDANT ALPHA**
**ENTERTAINMENT LLC**

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

Its Attorneys.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on April 1, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)