# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON and | § | |
| ALPHA ENTERTAINMENT LLC | § | |
| | § | April 8, 2021 |
| *Defendants.* | § | |

## PLAINTIFF'S COMBINED REPLY MEMORANDUM TO
## DEFENDANTS' COMBINED MEMORANDUM (ECF 172)

Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

**AND**

Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

***HIS ATTORNEYS***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. iii

I.   INTRODUCTION ..................................................................................................... 1

II.   PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS (ECF 158, FILED UNDER SEAL ECF 157) ..................................... 2

    A.   The Bad Faith Emails (P 405-406, 411, 414-18, 427-87) ..................................... 3

    B.   The Wagner Emails (P-80-89) ............................................................................ 5

    C.   Emails Regarding Antonio Callaway (P 315-325) ................................................ 6

    D.   The Performance Emails (P 342-404, 407-410 and 419-23) ................................ 7

    E.   Defendants Have Placed Their Communications "At Issue" ................................ 7

    F.   *In Camera* Inspection .......................................................................................... 9

III.   PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE (ECF 161, FILED UNDER SEAL ECF 160) ..................................... 11

    A.   The Proposed Amendments are not Futile ......................................................... 11

    B.   The Proposed Amendments are not made in Bad Faith ..................................... 17

CONCLUSION ........................................................................................................... 19

CERTIFICATE OF SERVICE ..................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*A&R Body Specialty and Collision Works, Inc. v. Progressive Casualty Ins. Co.*, Civ. No. 3:07CV929 (WWE), 2013 WL 6044342 (D. Conn. Nov. 14, 2013) .................................... 2, 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 2

*Barrows v. Forest Labs., Inc.*, 742 F.2d 54 (2d Cir. 1984) ........................................................... 23

*Bennett v. Care Corr. Solution Med. Contracted*, 15 Civ. 3746 (JCM), 2017 WL 4250519 (S.D.N.Y. Sept. 25, 2017) .......................................................................................... 23

*Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760 (2013) ..................................... 16

*Connolly v. United States*, No. 3:18-CV-00114 (VAB), 2020 WL 6572737, (D. Conn. Nov. 4, 2020) ........................................................................................................................... 15

*Constas v. JP Morgan Chase Bank, NA*, No. 3:11cv00032 (VLB), 2012 WL 13024691 (D. Conn. June 20, 2012) ........................................................................................................... 18

*Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198 (E.D.N.Y. 1988) ........................................................... 3

*Dr. Al Malik Office for Fin. & Econ. Consult. v. Horseneck Capital Advisors, LLC*, No. 3:19-cv-1417 (JAM), 2020 WL 3415622 (D. Conn. June 22, 2020) ............................................. 15, 16

*Equity Residential v. Kendall Risk Management, Inc.*, 246 F.R.D. 557 (N.D. Ill. 2007) ............... 4

*Fisher v. U.S.*, 425 U.S. 391 (1976) ......................................................................................... 6

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................................................... 14

*Halloran v. Harleysville Preferred Ins. Co.*, No. 3:16-cv-00133, 2018 WL 5840031 (D. Conn. Nov. 8, 2018) (Bolden, J.) .......................................................................................... 21

*Hardy v. New York News, Inc.*, 114 F.R.D. 633 (S.D.N.Y. 1987) .................................................. 4

*Harp v. King*, 266 Conn. 747 (2003) ....................................................................................... 11

*Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*, No. 12-CV-1641, 2015 WL 164069 (D. Conn. Jan. 13, 2015) ...................................................................................... 13

*Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17CV01767 (VAB), 2019 WL 4127377 (D. Conn. Aug. 30, 2019) (Bolden, J) ........................................................................................................ 11

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) .................................................... 13

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, Nos. 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK), 2008 WL 2594819 (S.D.N.Y. June 26, 2008) ...................................................... 18

*In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157 (2d Cir. 2021) ...................................................... 19

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)............ 20

*Metropolitan Life ins. Co. v. Aetna Casualty & Surety Co.,* 249 Conn. 36, 730 A.2d 51 (1999) .. 8

*Montanez v. D & D Auto, LLC*, No. 3:15-CV-397 (VAB), 2016 WL 1254199 (D. Conn. Mar. 29, 2016) ........................................................................................................................................ 17

*Moura v. Harleysville Preferred Ins. Co.*, No. 3:18-CV-422 (VAB), 2019 WL 936590 (D. Conn. Feb. 26, 2019) .......................................................................................................................... 14

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192 (2d Cir. 2013) ............. 2

*Olson v. Accessory Controls and Equipment Corp.*, 254 Conn. 145 (2000) .................................. 3

*Oneida Indian Nation of N.Y. State v. County of Oneida, N.Y.*, 199 F.R.D. 61 (N.D.N.Y. 2000) 23

*Parimal v. Manitex Int'l, Inc.*, Civ. No. 3:19CV01910(MPS), 2021 WL 363844 (D. Conn. Feb. 3, 2021) (Merriam, Mag.) .............................................................................................................. 11

*Reichhold Chemicals, Inc. v. Hartford Acc. and Indemnity Co.*, No. CV8801600185, 2000 WL 1227306 (Conn. Super. Ct. Aug. 15, 2000) ............................................................................ 6

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ........................................................................ 17

*SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508 (D. Conn. 1976) ........................................................ 3

*Segway, Inc. v. Special Olympics Connecticut, Inc.*, No. CV1160220895, 2015 WL 7421719 (Conn. Super. Ct. Oct. 29, 2015) (unpublished opinion) ........................................................ 10

*Simmons v. Charter Comm. Inc.*, 222 F. Supp. 3d 121 (D. Conn. 2016) .................................... 15

*Simons v. Yale Univ.*, No. 3:19-cv-1547 (VAB), 2020 WL 5816950 (D. Conn. Sept. 30, 2020) (Bolden, J.) ...................................................................................................................... 2

*Sorbera v. N.Y. Life Ins. Co.*, No. 3:17-CV-01653 (AVC), 2018 WL 3814522 (D. Conn. Aug. 1, 2018) ................................................................................................................................. 14

*State v. Kosuda-Bigazzi*, SC 20341, 2020 WL 1808821 (2020) .................................................... 5

*UBS Asset Mgmt. (N.Y.) Inc. v. Wood Gundy Corp.*, 914 F. Supp. 66 (S.D.N.Y. 1996) ........ 17, 18

*Williams v. Countrywide Bank*, No. 3:18-cv-2007 (VAB), 2019 WL 3858659 (D. Conn. Aug. 16, 2019) ............................................................................................................................... 21

*Yeboah v. Bank of America, N.A.*, No. 3:18-cv-2020 (VAB), 2019 WL 3388045 (D. Conn. July 26, 2019) ............................................................................................................................... 22

### Other Authorities

Lewis Carroll, Through the Looking-Glass, The Project Gutenberg eBook (1991, most recently updated Feb. 25, 2020), *available at* gutenberg.org/files/12/12-h/12-h.htm ............................. 1

### Rules

Fᴇᴅ. R. Cɪᴠ. P. 12(d) ................................................................................................................ 1

To the Honorable Judge Victor Bolden,

Plaintiff Oliver Luck ("Luck") files this Combined Reply to Defendants' Combined Memorandum in Opposition to Plaintiff's Motion to Compel Documents, Reply Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Breach of the Implied Covenant of Good Faith Claim, and Memorandum in Opposition to Plaintiff's Motion for Leave to File a Third Amended Complaint (the "DCM" or "Defendants' CM").[1] ECF 172.

## I.    INTRODUCTION

"When *I* use a word . . . it means just what I choose it to mean – neither more nor less," said Humpty Dumpty in *Alice Through the Looking-Glass*. Lewis Carroll, Through the Looking-Glass, The Project Gutenberg eBook (1991, most recently updated Feb. 25, 2020), *available at* gutenberg.org/files/12/12-h/12-h.htm. Defendants' CM is neither more nor less than Defendants' fanciful tale based on their contorted view of facts and misleading interpretation of case law. Instead of focusing on Plaintiff's Motion to Compel (ECF 158, filed under seal ECF 157), Response to Defendants' Motion to Dismiss (ECF 154-155), and Motion for Leave (ECF 161, filed under seal ECF 160), the DCM is filled with inaccurate and incorrect statements of fact and law in an attempt to distract the Court from its primary dispassionate purpose – to determine whether the Court should (a) conduct an *in camera* inspection of allegedly privileged documents; (b) order production of some or all the allegedly privileged documents; (c) deny Defendants' Motion to Dismiss[2]; and (d) grant Plaintiff's Motion for Leave to Amend.

---

[1] Recognizing that any further briefing would constitute a sur-reply, Plaintiff respectfully limits any argument related to the Motion to Dismiss to minimal footnotes.

[2] Although Defendants filed a "combined memorandum" replying to Plaintiff's opposition to Defendants' motion to dismiss (Response ECF 154-155) and responding to Plaintiff's motion for leave (ECF 161) and motion to compel (ECF 158), in deciding the motion to dismiss for failure to state a claim, matters outside the pleadings are not considered. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 202 (2d Cir. 2013). "[W]here matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." *Id.* (citing FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c),

Because of the limit on pages for his Reply,[3] Plaintiff shall refrain from refuting all of Defendants' inaccuracies except to say they are legion and serial.[4] *See* Ex. A (Plaintiff's Counter-Statement of Facts). Moreover, the Court should ignore Defendants' misstatements of fact in Defendants' Reply, because, contrary to Defendants' position, the Court should assume all facts (and inferences thereof) submitted by the Plaintiff as true.[5]

## II. PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS (ECF 158, FILED UNDER SEAL ECF 157)

"The attorney-client privilege is triggered by a request for legal as opposed to business advice." *A&R Body Specialty and Collision Works, Inc. v. Progressive Casualty Ins. Co.*, Civ. No. 3:07CV929 (WWE), 2013 WL 6044342, at *1 (D. Conn. Nov. 14, 2013) (cited by Defendants). Courts "construe[] the privilege narrowly." *Id*. In *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508 (D. Conn. 1976) (another case cited by Defendants), the court held, "[w]hen the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected because legal considerations are also involved.")

In another case cited by Defendants, *Olson v. Accessory Controls and Equipment Corp.*, 254 Conn. 145, 163 (2000), the Connecticut Supreme Court stated, "[W]here a lawyer mixes legal and business advice the communication is not privileged unless 'the communication is designed

---

matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")).

[3] Plaintiff's Replies in support of his Motion to Compel and Motion for Leave are less than ten (10) pages each.

[4] Plaintiff will not waste the Court's time rebutting Defendants' argument regarding futility in Defendants' failure to provide Plaintiff with notice and opportunity to cure because the case quotes are inaccurate, the cases are based on New York law and are inapposite.

[5] Defendants wrongly expect this Court to assume that Mr. Luck was validly terminated for cause. *See* ECF 172 at 34-36. This Court should not ignore the well-established legal standards for determining a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the Court should accept as true Mr. Luck's allegations that Defendants exercised their discretion under the Employment Contract and Guaranty in a manner exhibiting bad faith by terminating Mr. Luck for cause as part of a sham attempt to avoid their respective payment obligations, ECF 145 ¶¶ 1, 11-20, and view the allegations in Mr. Luck's complaint in the light most favorable to him. *Simons v. Yale Univ.*, No. 3:19-cv-1547 (VAB), 2020 WL 5816950, at *9 (D. Conn. Sept. 30, 2020) (Bolden, J.).

2

to meet problems which can fairly be characterized as predominantly legal …'" (quoting *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988)).

The work product doctrine under Federal Rule of Civil Procedure 26(b)(3)(B) permits discovery of materials so long as the mental impressions are protected from disclosure. "The work product privilege is not intended to protect from general discovery materials prepared in the ordinary course of business." *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 644 (S.D.N.Y. 1987) (another case cited by Defendants). "Accordingly, in determining whether a document constitutes attorney work product within the meaning of Rule 26, the court must determine the primary motivating purpose behind the creation of the document." *Id*. (internal quotations and citation omitted). "Materials that are produced in the ordinary course of a party's business, and not to prepare for litigation, are outside the scope of the work product doctrine." *Equity Residential v. Kendall Risk Management, Inc.*, 246 F.R.D. 557, 564 (N.D. Ill. 2007) (case cited by Defendants). "To establish work product protection, a party must show that the primary motivating purpose behind the creation of a document was to aid in possible future litigation." *Id*. "The party must also be able to prove the existence of objective facts establishing an identifiable resolve to litigate." *Id*.

### A.     The Bad Faith Emails (P 405-406, 411, 414-18, 427-87)

Defendants assert that documents P-427-28, 488, and 489 are privileged because they were "prepared or provided to Alpha's counsel, Attorney McDevitt, at his request in order to provide legal advice to Alpha concerning Luck's termination." ECF 172 at 21. Defendants also assert that the Bad Faith Emails (P-405-406, 411, 414-18, 424-87) are protected from discovery by virtue of the attorney-client privilege and the work product doctrine. *Id*. at 23. However, in Attorney McDevitt's Declaration, he states that "Alpha sought my legal advice" ***after*** the XFL season was cancelled, when "**it became clear that Luck** and all but a few essential XFL employees necessary

to assist with Alpha's bankruptcy **would be terminated**." ECF 172-6 ¶ 9 (emphasis added). In other words, Alpha made the business decision to terminate Luck (presumably without cause) ***before*** requesting that Attorney McDevitt perform his fact investigation that ultimately resulted in Alpha's determination that Luck should be terminated for cause. According to Mr. McDevitt "[i]n order to provide legal advice to Alpha regarding Luck's termination and ***in anticipation of potential litigation with Luck,*** I conducted an investigation. …" *Id.* (emphasis added). Thereafter, on April 9, 2020, McDevitt admits that he sent the Termination Letter to Mr. Luck. *Id.* at para. 10.[6]

Voluntary disclosure of privileged information constitutes a waiver of the privilege as to those items. *See State v. Kosuda-Bigazzi*, SC 20341, 2020 WL 1808821, at \*5 (2020). By disclosing the results of McDevitt's investigation in the Termination Letter sent to Mr. Luck and signed by Mr. McDevitt, Defendants have squarely admitted that Mr. McDevitt's advice was for predominantly business purposes and waived the attorney client privilege and work produce privilege. It cannot be disputed that Alpha is relying upon the advice of McDevitt for its claims and defenses that Luck was allegedly properly terminated for cause. Moreover, because Alpha contends that the documents are protected by the work product doctrine, it admits an "identifiable resolve to litigate" with Luck. Thus, Defendants' engagement of Mr. McDevitt and his subsequent investigation were done in bad faith because the outcome was pre-determined.

Contrary to Defendants' suspicion, Plaintiff does not want to disqualify Defendants' counsel. *See* ECF 172 at 45-46. Indeed, Plaintiff will stipulate that he will not move to disqualify opposing counsel. The fact that one of Defendants' lawyers may be a witness is tangential to

---

[6] In his Declaration, Mr. McMahon confirms that he "authorized Alpha's and my counsel to send Luck a letter advising him that the termination was for cause …" ECF 128-1 ¶ 29.

4

Plaintiff's sole motivation—to obtain relevant discoverable documents from Defendants. Besides, Plaintiff's request for disclosure of relevant information should not be denied simply because Defendants utilized counsel, as opposed to one of its executives, to conduct a fact investigation. *Reichhold Chemicals, Inc. v. Hartford Acc. and Indemnity Co.*, No. CV8801600185, 2000 WL 1227306, at *3 (Conn. Super. Ct. Aug. 15, 2000) (unpublished opinion) (facts known by a party cannot be immunized by telling them to a lawyer); *see Fisher v. U.S.*, 425 U.S. 391, 403-404 (1976) (the privilege does not shield documents merely because they were transferred to or routed through an attorney).

Defendants produced certain self-serving non-privileged documents and factual information concerning the bases for Luck's termination for cause, ECF 172 at 17, but have not produced all documents disclosing facts learned during Mr. McDevitt's investigation. Defendants assert that Plaintiff's claim of bad faith is "beyond frivolous under the **known circumstances**," ECF 172 at 17 (emphasis added), but conveniently omit ***all*** the "circumstances" relating to the investigation behind which they are hiding. The Court should order production of the Bad Faith Emails. (P-405-06, 411, 414-18, 427-87)

### B.     The Wagner Emails (P-80-89)

Regarding emails P-80-89 (the "Wagner Emails"), Plaintiff does not dispute that emails between employees conveying actual legal advice are protected from disclosure. Defendants' Privilege Log, however, does not meet the standard for privilege logs set forth in Local Rule 26(e) because it does not list the general subject matter, date, author, and each recipient for each e-mail in the email strings. Further, the Privilege Log provides no identification of the attorney who allegedly provided the legal advice and the DCM contains no affidavit from an attorney, except Ms. Gambardella, for the Wagner emails.

However, Ms. Gambardella is not an author or recipient of the Wagner Emails and her Declaration, ECF 173, is insufficient because it is generic, affording no supporting explanation or depiction. For the Wagner Emails, Ms. Gambardella's affidavit only states that those documents, which are between Alpha employees, "reflect certain aspects of legal advice provided by me regarding player background checks." ECF 173 ¶ 8. She lists no date when she allegedly provided the legal advice. Furthermore, that legal advice regarding "player background checks" is not even the subject matter of the emails. Instead, as clearly shown from the email attached hereto as Exhibit B, the topic is "Player Eligibility Criteria."[7]

In addition, Defendants' have the burden to prove a privilege exists. They did not meet it because Defendants did not provide affidavits for documents P-201, 230, 123, 124, 349, 351, 362-64. ECF 172 at 20. Defendants assert that email communications with WWE executives are privileged because of a shared services agreement, *Id*. at 19 n. 5, but do not attach a copy of the document to the DCM. Consequently, documents P-80-89, 201, 230, 123, 124, 349, 351, 362-64 should be produced.

### C.    Emails Regarding Antonio Callaway (P 315-325)

The Callaway Emails cannot be characterized as "predominantly legal." In his Declaration, Mr. McDevitt does not state that he actually provided any legal advice to Defendants regarding the Callaway matter. In fact, only the last email (P-325) lists Mr. McDevitt as a recipient. Although Mr. McDevitt declares, "I requested information regarding Callaway from Friedman who requested information from Ian Decker," ECF 172 at Ex. F ¶ 7, the second half of the statement is

---

[7] Defendants have withdrawn their claim of Confidentiality over the Player Eligibility Criteria e-mail.

hearsay to which Plaintiff objects. Neither Mr. Friedman nor Mr. Decker submitted an affidavit in support of the DCM. Thus, the Callaway Emails should be produced.

### D.      The Performance Emails (P 342-404, 407-410 and 419-23)

The Performance Emails were received by Mr. Luck after March 13, 2020 and Defendants concede that they can redact the privileged portions of the emails. ECF 172 at 22, 27. Plaintiff merely requests that Defendants produce the Performance Emails with the facts unredacted.

### E.      Defendants Have Placed Their Communications "At Issue"

Defendants ignore the third prong of *Metropolitan Life ins. Co. v. Aetna Casualty & Surety Co.,* 249 Conn. 36, 52-53, 730 A.2d 51 (1999), that states "the 'at issue' or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action. … **Such is the case when a party … specifically places at issue, in some other manner, the attorney-client relationship.**" (emphasis added). In its counterclaim, Alpha has specifically placed the alleged attorney-client communications at issue because it asserts, among other items, that Luck breached his contractual and fiduciary duties by hiring Antonio Callaway and not following Defendant McMahon's directive to immediately fire Callaway on January 28, 2020. ECF 153 at 3-8, 17-18. The Callaway Emails, (P-315-325) are all dated January 30, 2020, more than sixty (60) days before Plaintiff was terminated. *Id.* at 7-8. By claiming the Callaway situation was uncurable, the legal advice received from Mr. McDevitt, if any, on or about January 30, 2020 is integral to the outcome of Plaintiff's claims, Defendants' defenses, and counterclaims. In his Declaration attached as Exhibit F to the DCM, Mr. McDevitt states:

> By January 30, 2020, Luck had both hired Antonio Callaway and then failed to terminate Callaway in contravention of McMahon's directives. In order to provide legal advice to Alpha concerning the Callaway matter, I requested information regarding Callaway from the XFL's Vice President of Business and Legal Affairs,

Mali Friedman, who in turn requested such information from the XFL's Head of Talent Acquisition, Ian Decker. Ian Decker provided such information to Mali Friedman, who then communicated with me regarding the information that I had requested.

ECF 176-6 ¶ 7. Consequently, the contents of any advice from Mr. McDevitt and the facts set forth in the Callaway Emails by Mr. Decker, a non-attorney, are "integral to the outcome" of claims and defenses related to the Callaway issue. *Metropolitan Life*, 249 Conn. at 52-53.

Defendants have also placed the Callaway Emails at issue by making the following allegations in the DCM, all of which are denied:

- McMahon directed Luck to terminate Callaway, but Luck did not terminate Callaway. (See ECF No. 59 ¶ 14, ECF. No. 116 ¶ 14.);

- Luck deceived other XFL executives who questioned Luck's decision to hire Callaway by falsely suggesting that McMahon had approved of Callaway's signing. (See ECF No. 128 at 10-11.);

- Luck's deception continued in sworn declarations filed with this Court asserting that Callaway's hiring complied with McMahon's instructions (ECF No. 59 ¶ 14; ECF No. 116 ¶ 14);

- Luck deceived McMahon by telling him that he was "in the process of removing Callaway" without ever informing McMahon that Callaway had been injured. (See ECF No. 128 at 17; ECF No. 166 ¶ 45.);

- Luck's declarations misleadingly claim that he "followed [McMahon's] instruction" and that Callaway "never played a single down in the XFL" when the only reason that Callaway never played in the XFL was because Callaway was injured when Luck failed to follow McMahon's instruction. (See ECF No. 59 ¶ 14, ECF. No. 116 ¶ 14.); and

- Luck falsely claimed in his Answer that Callaway was "effectively terminated" when in fact he was placed on the injured reserve list and Alpha was required to and did continue to make payments to Callaway under his never-terminated contract. (See ECF No. 166 ¶ 46.)

ECF 172 at 11-13.

Defendants should not be permitted to make a mockery of the judicial system by, on the one hand, claiming that McMahon and Alpha were allegedly duped by Mr. Luck while, on the other, hiding relevant facts known by their agent Attorney McDevitt more than sixty (60) days before terminating Mr. Luck for cause and not providing him with an opportunity to cure.

8

In addition, as detailed above, Defendants have placed the Bad Faith Emails "at issue" because Defendants relied upon McDevitt's investigation and advice to terminate Luck for cause. The facts learned, discussed and disclosed during Mr. McDevitt's investigation are integral to determining if Defendants, as Plaintiff alleges, acted in bad faith. The facts learned during the investigation, how the investigation was conducted, whether the investigation was conducted fairly and objectively and what facts were ignored are not free from disclosure simply because Alpha chose a lawyer to conduct the investigation. *See Segway, Inc. v. Special Olympics Connecticut, Inc.*, No. CV1160220895, 2015 WL 7421719, at *6 (Conn. Super. Ct. Oct. 29, 2015) (unpublished opinion) (facts learned during an investigation, although supervised by counsel, are not in preparation of litigation and not privileged).

Similarly, Defendants have placed the Wagner Emails (P-80-89) "at issue." In his Declaration attached to Defendants' Memorandum in Support of Pre-Judgment Remedy, ECF 128-1 ¶ 30, McMahon discusses the Four Criteria that are central to the Wagner Emails, and which Mr. Luck has maintained were XFL policy. *See* ECF 116 ¶ 112. McMahon categorially states, "At no time did I ever approve such a policy for the XFL." ECF 128-1 ¶ 30. In his Declaration, Mr. Pollack categorially states: "There was no such XFL policy." ECF 128-2 ¶ 6. However, in Exhibit D attached to Plaintiff's Motion to Compel, ECF 158-4 (filed under seal ECF 157), and Exhibit B attached to this Reply, there exists objective real-time evidence that McMahon was "onboard" and had approved the Four Criteria for "player eligibility" in the XFL as of July 17, 2019. ECF 158-4 (filed under seal ECF 157); Ex. B.

### F.    *In Camera* Inspection

Defendants would have this Court ignore that it is their burden to establish that the documents they are withholding are protected by the attorney-client privilege. *See Harp v. King*,

266 Conn. 747, 770 (2003). "Although 'submitting a privilege log is critical, . . . it is not sufficient [ ]' to establish the requirements of the attorney-client privilege." *Parimal v. Manitex Int'l, Inc.*, Civ. No. 3:19CV01910(MPS), 2021 WL 363844, at *11 (D. Conn. Feb. 3, 2021) (Merriam, Mag.) (quoting *Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17CV01767 (VAB), 2019 WL 4127377, at *9 (D. Conn. Aug. 30, 2019) (Bolden, J). In addition to satisfying the requirements of Local Rule 26(e), "privilege logs must include sufficient substantive detail for a meaningful review of the application of privilege, including whether the communications were confidential and made between an attorney and client for the purpose of providing legal advice." *Id.* at *10 (internal citation omitted). "A privilege log is adequately detailed if, as to *each* document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity." *Id.* (internal citation omitted) (emphasis added). Privilege logs that do not provide details to allow for a purposeful review of the claim are routinely found to be deficient. *Id.* (internal citation omitted). As detailed herein and in Plaintiff's Motion to Compel, the descriptions in Defendants' Privilege Log are devoid of substance (and often attorneys). Thus, the Privilege Log is not sufficient to establish the requirements of the attorney-client privilege. In turn, Defendants must meet their burden either through affidavit or by tendering the document for *in camera* inspection. However, Defendants provided only deficient affidavits. Moreover, despite Plaintiff satisfying his probable cause burden for *in camera* inspection, Defendants categorically resist *in camera* inspection to prove their privilege claim.

The Court has discretion to conduct an *in camera* review because Defendants' privilege log and affidavits do not meet their initial burden of proving that the attorney-client privilege or work product privilege applies. *Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*, No. 12-CV-1641, 2015 WL 164069, at *10-11 (D. Conn. Jan. 13, 2015) (holding that it

was not "improper to review *in camera* documents for the concededly appropriate purpose of determining in the first instance whether an exception applied"). Even assuming *arguendo* that the Defendants did offer sufficient evidence to establish that the documents at issue are privileged, the Court still has discretion to conduct an *in camera* inspection as Plaintiff has "show[n] a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection **may** reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992) (emphasis added). Therefore, the Court should conduct an *in camera* review of the documents because (1) the Defendants' privilege log and affidavits do not meet their burden of proving that the documents are privileged and (2) assuming *arguendo* the Defendants privilege log and affidavits are sufficient, Plaintiff has shown a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection might show that information in the withheld documents is not privileged. Thus, Plaintiff's Motion to Compel should be granted.

III. **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE (ECF 161, FILED UNDER SEAL ECF 160)**

A. **The Proposed Amendments are not Futile**

For the first time in their Response, in order to argue Plaintiff's proposed amendments are futile, Defendants contend that Plaintiff's claims for breach of the implied covenant of good faith sound in fraud and are thus subject to the heightened pleading standards of Rule 9(b). ECF 172 at 40-42. Plaintiff's claims for breach of the implied covenant are not, but even assuming *arguendo* they are subject to the heightened standard, the proposed amended complaint satisfies Rule 9(b). It is within the discretion of the court whether to grant leave to amend under Federal Rule of Civil Procedure 15, but "the court must give some justifying reason for denying leave." *Moura v. Harleysville Preferred Ins. Co.*, No. 3:18-CV-422 (VAB), 2019 WL 936590, at *2 (D. Conn. Feb. 26, 2019) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Reasons for denying leave to amend

11

include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.* (internal quotations omitted) (alternation in original). Typically, "leave to amend will only be denied as futile if the proposed amended complaint cannot withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Sorbera v. N.Y. Life Ins. Co.*, No. 3:17-CV-01653 (AVC), 2018 WL 3814522, at *4 (D. Conn. Aug. 1, 2018) (quoting *Simmons v. Charter Comm. Inc.*, 222 F. Supp. 3d 121 (D. Conn. 2016)). Moreover, "an amendment is not futile simply because the opposing party believes it lacks merit." *Connolly v. United States*, No. 3:18-CV-00114 (VAB), 2020 WL 6572737, at *6 (D. Conn. Nov. 4, 2020) (internal citations and quotations omitted).

Neither the Second Circuit nor the District of Connecticut has adopted a bright line rule that Rule 9(b)'s heightened pleading standard applies to a claim for breach of the implied covenant. Rather, whether Rule 9(b) applies hinges on whether the claim is based solely on allegations of fraud. Although the Defendants attempt to insert fraud as a prerequisite to an implied covenant claim in an endeavor to invoke Rule 9(b), the bad faith necessary to sustain an implied covenant claim may be established "***not only by*** 'actual or constructive fraud, or a design to mislead or deceive another,' ***but also by*** 'a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, ***but by some interested or sinister motive***.'" *Dr. Al Malik Office for Fin. & Econ. Consult. v. Horseneck Capital Advisors, LLC*, No. 3:19-cv-1417 (JAM), 2020 WL 3415622, at *4 (D. Conn. June 22, 2020) ("Al Malik") (quoting *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013)) (emphasis added).

12

In *Al Malik*, the plaintiff brought an implied covenant claim as to a contract for consulting fees and a later contract for partial payment of the original fees. *Id.* As to the fees contract, the plaintiff alleged the existence of a contract, failure to pay money owed under it, and that the defendant acted in bad faith by withholding payment based on unresolved tax questions while simultaneously both refusing to resolve those tax questions and claiming that the partial payment agreement cut off the plaintiff's right to recover the amount owed. *Id.* As to the partial payment contract, the plaintiff alleged that: it was a contract, the plaintiff had accepted the initial partial payment with the understanding that additional fees would be paid once the tax questions (if any) were resolved, and that the defendant had engaged in bad faith to deny plaintiff some of the benefits of the partial payment agreement by promising to work toward resolving the tax questions but not actually doing so and refusing plaintiff's requests for records under the agreement. *Id.* Thus, the court declined to impose Rule 9(b) to the plaintiff's claim for breach of the implied covenant because the claims did not allege fraud and defendant did not show that the claims involved fraud. *Id.*

Likewise, in *Montanez v. D & D Auto, LLC*, No. 3:15-CV-397 (VAB), 2016 WL 1254199, at *13 (D. Conn. Mar. 29, 2016), this Court did not apply Rule 9(b)'s heightened pleading standard to a claim for breach of the implied covenant (or for negligent misrepresentation), although it did apply Rule 9(b) to the plaintiff's fraud claims (and to any intentional or fraudulent misrepresentation claims). *Id.* at *11-12. This Court dismissed the implied covenant claim because plaintiff failed to clearly allege that defendant was a party to the warranty agreement upon which she sought defendant's liability, provided no information about the terms of an installment contract to which defendant actually was a party, and provided no allegations indicating that the defendant had acted in bad faith to deprive plaintiff of bargained for benefits. *Id.* at *13.

13

Defendants' cases do not support any contention that claims for breach of the implied covenant are always subject to Rule 9(b):

- *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). The Second Circuit's holding was limited: "We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) [of the Securities Act] claims insofar as the claims are premised on fraud." *Id.*

- *UBS Asset Mgmt. (N.Y.) Inc. v. Wood Gundy Corp.*, 914 F. Supp. 66, 71-72 (S.D.N.Y. 1996). Plaintiffs asserted claims based on sections 12(1) and 12(2) of the Securities Act, Sections 10(b), 15(a)(1), and 29(b) of the Exchange Act, SEC Rule 10b-5, actual and constructive fraud, and breach of the implied covenant of good faith and fair dealing related to plaintiffs' purchase of unrated debt securities. *Id.* at 68. The court applied Rule 9(b) to the Section 10(b), Rule 10b-5, and fraud claims, as well as those under Section 12(2) and for breach of the implied covenant. *Id.* at 71. In doing so, the court stated: "Where claims of fraud are asserted, claims alleged to arise out of the same conduct are considered to sound in fraud and are subject to the same pleading requirements under Rule 9(b)." *Id.*

- *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, Nos. 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK), 2008 WL 2594819 (S.D.N.Y. June 26, 2008). Rule 9(b)'s heightened pleading standard applied to claims for breach of fiduciary duty and of the implied covenant because those claims were based on allegations of defendant's fraudulent conduct. *Id.* at *8. Plaintiff alleged that defendant "orchestrated a scheme to inflate artificially the price of . . . [s]tocks in order to obtain investment banking business" and that defendant's analysts "made material false statements, in the form of falsely positive stock ratings and comments, that induced [plaintiff] and his fellow brokers to recommend that their clients retain the . . . stocks." *Id.* at *9. Thus, plaintiff's allegations triggered the heightened pleading requirements of Rule 9(b).

- *Constas v. JP Morgan Chase Bank, NA*, No. 3:11cv00032 (VLB), 2012 WL 13024691, at *4 (D. Conn. June 20, 2012). In the only non-securities litigation case Defendants cite, the plaintiff made conclusory allegations that his mortgage was "unilaterally, fraudulently and criminally forged by the prior mortgagee." *Id.* at *2. Thus, because all of the plaintiff's claims were based on his allegation that the lending bank engaged in fraud by forging his mortgage, all of plaintiff's claims (including for breach of the implied covenant) were properly subject to Rule 9(b). *Id.* at *4.

It is no surprise that courts impose Rule 9(b) to securities fraud litigation—the complex and costly nature of such cases requires demanding pleading standards. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021) ("Synchrony"). However, even in those cases courts "must

be careful not to mistake heightened pleading standards for impossible ones." *Id.* So too, here, the Court should not impose an impossible pleading standard on Plaintiff (or even a heightened one).

Here, Mr. Luck's proposed amended complaint alleges: the existence of the Employment Contract and the Guaranty and the specific terms therein, ECF 161-1 ¶¶ 10-12, the specific provisions of these agreements violated and why, *Id.* ¶¶ 13-23, that Defendants acted in bad faith when they failed to provide Mr. Luck the required notice to effect cure in an effort to avoid paying him, summarily terminated him, and refused to pay him the money he is owed, and that Defendants used their attorneys to facilitate their bad faith termination as detailed in Defendants' Privilege Log. *Id.* ¶¶ 1-2, 13, 20-21, 23-28 ("The allegations in the Termination Letter are simply a false narrative motivated by Defendants' improper intent to avoid Mr. McMahon's contractual obligations to pay Mr. Luck under the Guaranty.") *Id.* ¶ 20. Thus, Mr. Luck has properly alleged his claims for breach of the implied covenant of good faith and fair dealing.

To the extent that this Court imposes Rule 9(b) on Mr. Luck's implied covenant claims, he also satisfies that burden. To do so, Mr. Luck must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Synchrony*, 988 F.3d at 167. For example, in *Constas*, the court found the plaintiff failed to satisfy Rule 9(b) when his pleading only made conclusory allegations that his mortgage was unilaterally, fraudulently, and criminally forged. 2012 WL 13024691 at *5. He did not specify the content of the alleged misrepresentations forming the basis of the forgery, did not identify who forged the mortgage, where and when it was forged, or allege any fraudulent intent. *Id.* Mr. Luck has satisfied Rule 9(b)'s requirements in his proposed amended complaint (which, if granted leave to file, will also include the Termination Letter, Response Letter, and the Employment Contract and Guaranty). The Termination Letter

includes Defendants' fraudulent statements sent from the office of Attorney McDevitt in Pittsburgh directed to Mr. Luck in Indianapolis and dated April 9, 2020, and the Response Letter explains why these statements are fraudulent. These facts, construed in the light most favorable to Mr. Luck, are sufficiently particular to render his allegations at least plausible; he is not required to do more at this stage. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 175-76 (2d Cir. 2015) (determining it was error for district court to require plaintiffs to show that their reading of e-mails in support of fraud allegations was superior to the court's own reading of the same e-mails as benign and imposed an improper *de facto* probability requirement at the pleadings stage).

Moreover, the "purpose of Rule 9(b)'s specificity requirement is to provide the defendant with fair notice of a plaintiff's claim and adequate information to frame a response." *Constas*, 2012 WL 13024691, at *4. The proposed amended complaint achieves this purpose. Thus, even if Rule 9(b)'s heightened pleading requirement does apply to Plaintiff's claim for breach of the implied duty of good faith, Mr. Luck's proposed amended complaint satisfies Rule 9(b). Accordingly, Mr. Luck should be granted leave to amend his complaint because it is not futile.[8]

_____

[8] Defendants argue that this Court should deny Mr. Luck's request for leave to amend for the same three reasons Defendants asserted in their motion to dismiss. *See* ECF 172 at 42-43. These arguments should be rejected for the same reasons as those briefed in Mr. Luck's Memorandum of Law in Opposition to the Motion to Dismiss. ECF 155. *First*, Mr. Luck does not allege that McMahon is liable for breach of the implied covenant based on the Employment Contract; rather, Mr. Luck alleges that McMahon breached the implied duty of good faith based on the Guaranty to which he was the sole signatory. *Second*, Mr. Luck's implied covenant claims to not seek a result contrary to the express terms of the Employment Contract and Guaranty. Instead, under the Employment Contract and Guaranty, Defendants promised—and Mr. Luck reasonably expected—that Alpha would perform its obligations under the Employment Contract and McMahon would ensure this, including giving Mr. Luck notice and opportunity to cure acts or omissions reasonably susceptible to cure and paying him. *Third*, Mr. Luck's implied covenant claims are not duplicative of his breach of contract claims. Mr. Luck limits his reply to Defendants continued misguided argument that the implied covenant claims should be dismissed because they are duplicative of his contract claim to note simply that "Connecticut law requires a breach of contract in order to plead bad faith." *Halloran v. Harleysville Preferred Ins. Co.*, No. 3:16-cv-00133, 2018 WL 5840031, at *16 (D. Conn. Nov. 8, 2018) (Bolden, J.) (citing *Capstone Bldg. Corp.*, 308 Conn. at 798)).

16

### B.      The Proposed Amendments are not made in Bad Faith

First, as explained *supra*, Plaintiff has no interest and indeed will stipulate that he will not move to disqualify opposing counsel. Second, Plaintiff's amendments are not made for any improper purpose, and Plaintiff's reply *supra* related to the motion to compel addresses any privilege dispute. ECF 172 at 44. Instead, the amendments are made to include *additional* allegations of Defendants' bad faith, which has been unveiled as this case progresses. There is no evidence of bad faith. *Williams v. Countrywide Bank*, No. 3:18-cv-2007 (VAB), 2019 WL 3858659, at *4 (D. Conn. Aug. 16, 2019) (granting leave to amend given early stage of litigation, potential utility of plaintiff's amendments, and lack of evidence of bad faith). Until Defendants' production of Mr. Luck's e-mails, Plaintiff did not have access to the e-mail between Mr. Luck and Human Resources that buttresses what Mr. Luck has maintained since the inception of this lawsuit (and Defendants have denied without qualification or explanation)—that McMahon was on board with a policy to determine player eligibility based on felony charges or convictions, credible allegations of domestic violence, repeat misdemeanors, or convictions of distributing illegal drugs. Moreover, Mr. Luck's allegations that Defendants used their attorneys to facilitate their bad faith termination of Mr. Luck are not baseless. Indeed, they are supported by Defendants' privilege log denoting at least seventy-five (75) emails from March 31, 2020 until April 9, 2020 regarding Mr. Luck's termination, resulting in the Termination Letter, and refuted by the Response Letter, as well as Defendants' own assertions in the DCM that Alpha sought legal advice regarding Luck's Employment Contract only "after the XFL season was cancelled and it became clear that Luck and all but a few essential XFL employees necessary to assist with Alpha's bankruptcy would be terminated." ECF 172 at 17, 29. Thus, Mr. Luck's proposed amendments are made in line with the developments of this case.

Again, Defendants' cited cases are inapposite. Mr. Luck does not seek leave to amend solely to gain any tactical advantage through delay, nor did he originally file this lawsuit in bad faith. *Yeboah v. Bank of America, N.A.*, No. 3:18-cv-2020 (VAB), 2019 WL 3388045, at \*16 n. 10 (D. Conn. July 26, 2019) (action likely filed in bad faith with the primary goal of delaying underlying state court foreclosure proceedings). Nor has Mr. Luck maintained any directly contradictory position to those in the proposed amendments. *See Oneida Indian Nation of N.Y. State v. County of Oneida, N.Y.*, 199 F.R.D. 61, 85-87 (N.D.N.Y. 2000) (proposed amendments in bad faith where granting motion for leave to amend would result in threat of evicting thousands of private landowners, a position the parties seeking to amend previously adamantly maintained would *not be taken*). Mr. Luck's proposed amendments are not a "radical shift" from the recovery he has sought from the outset, nor will his proposed amendments recast any theories of relief. *Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58 (2d Cir. 1984) (district court well within its discretion concluding new claims would unfairly prejudice defendant by "substantially altering the complaint's theories of relief and delaying the trial of the case" and represented a "radical shift from the recovery sought in the original complaint"). Nor has this Court issued any prior order specifically barring Mr. Luck from filing new actions because of prior dismissals of claims for being frivolous, malicious, or failing to state a claim. *Bennett v. Care Corr. Solution Med. Contracted*, 15 Civ. 3746 (JCM), 2017 WL 4250519, at \*4-5 (S.D.N.Y. Sept. 25, 2017) (plaintiff's attempt to add a claim regarding meniscus and ACL was an effort to circumvent the court's prior orders barring plaintiff from filing new actions *in forma pauperis* while incarcerated because he had brought at least three (3) claims that were dismissed as frivolous, malicious, or because they failed to state a claim upon which relief could be granted).

Accordingly, Mr. Luck's motion for leave should be granted.

**CONCLUSION**

Plaintiff Oliver Luck respectfully requests that the Court: (1) Deny Defendants' Motion to Dismiss entirely (ECF 154, 155), (2) Grant Plaintiff's Motion to Compel and compel the production of the Subject Emails or, in the alternative, conduct an *in camera* inspection of them and order the production of those emails that do not meet the criteria for the attorney-client privilege and/or work product doctrine (ECF 158, filed under seal ECF 157), and (3) Grant Plaintiff's Motion for Leave (ECF 161, filed under seal ECF 160).

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email : jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2021, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Paul J. Dobrowski*