# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON and | § | |
| ALPHA ENTERTAINMENT LLC | § | |
| | § | April 15, 2021 |
| *Defendants.* | § | |

## PLAINTIFF OLIVER LUCK'S MEMORANDUM OF LAW IN OPPOSITION TO ALPHA ENTERTAINMENT LLC'S MOTION TO STRIKE

Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email:  pjd@doblaw.com
Email:  vpierce@doblaw.com
Email : jmchazlett@doblaw.com

AND

Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

DISCUSSION ...................................................................................................................... 2

I.     MR. LUCK'S BREACH AND REPUDIATION DEFENSES ARE LEGALLY
SUFFICIENT AND THE COURT SHOULD NOT STRIKE THEM .......................................... 2

    A.  Mr. Luck's actions related to Antonio Callaway were not in breach of the Employment
Contract or any fiduciary duties............................................................................................. 5

    B.  Mr. Luck's personal use of his iPhone was within his discretion, but even if it was not
permitted, it was reasonably susceptible to cure................................................................... 6

    C.  Mr. Luck's actions were permitted under the Confidentiality, Non-Solicitation and Non-
Competition Agreement, but even if they were not, such actions were reasonably
susceptible to cure................................................................................................................ 8

    D.  Mr. Luck continued to perform his duties after March 13, 2020, but even if he did not,
his performance was reasonably susceptible to cure. ........................................................... 9

    E.  Alpha's Rejection of the Employment Contract was a repudiation and breach............. 11

II.     THE COURT SHOULD NOT STRIKE MR. LUCK'S DEFENSE OF BREACH OF THE
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ......................................... 11

III.     MR. LUCK'S NOTICE AND CURE DEFENSE ARE LEGALLY SUFFICIENT...... 15

IV.     MR. LUCK'S RATIFICATION DEFENSE IS LEGALLY SUFFICIENT ................. 18

    A.  Alpha's ratification of the Mr. Luck's actions related to Antonio Callaway. ................ 19

    B.  Alpha's ratification of Mr. Luck's actions related to his use of the iPhone and the
CNNA. ............................................................................................................................... 20

    C.  Alpha's ratification of Mr. Luck's conduct after March 13, 2020............................... 21

V.     MR. LUCK'S WAIVER AND ESTOPPEL DEFENSES ARE LEGALLY
SUFFICIENT ...................................................................................................................... 21

VI.      MR. LUCK'S SETOFF AND RECOUPMENT DEFENSES ARE LEGALLY
SUFICIENT (AND ALPHA AGREED TO THEM)..................................................................... 23

CONCLUSION........................................................................................................................ 24

CERTIFICATE OF SERVICE ................................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912 (7th Cir. 2008) ............................ 16, 17

*Casper v. Combust. Eng'g, Inc.*, No. CV 97-0570516S., 1998 WL 389215 (Conn. Super. Ct. June 23, 1998) ............................................................................................................ 14, 23, 24

*Chioffi v. Martin*, 181 Conn. App. 111 (Conn. App. Ct. 2018) ........................................................ 4

*Coppola Construction Co. v. Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139 (Conn. App. Ct. 2015) ...................................................................................................................... 18

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424 (2004) ..................... 12, 14

*GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019) ....................................... 2

*Giardino v. Belle Haven Land Co.*, 254 Conn. 502 (2000) ......................................................... 18

*Haber v. Bankers Standard Ins. Co.*, No. 3:19-cv-276 (VLB), 2019 WL 7343397 (D. Conn. Dec. 31, 2019) ...................................................................................................................................... 2

*Halloran v. Harleysville Preferred Insurance Company*, No. 3:16-CV-00133 (VAB), 2018 WL 5840031 (D. Conn. Nov. 8, 2018) ............................................................................................. 2

*Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 217 Conn. 340 (1991) ......................................... 22

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, No. 16 CIV. 2767, 2016 WL 6906583 (S.D.N.Y. Nov. 21, 2016) ......................................................................................................... 12

*Hypergraphics Press, Inc. v. Cengage Learning, Inc.*, No. 08 C 5102, 2009 WL 972823 (N.D. Ill. Apr. 8, 2009) ....................................................................................................................... 16

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395 (S.D.N.Y. 2009) ........... 16

*Kollar v. Allstate Insurance Co.*, No. 3:16-CV-01927 (VAB), 2017 WL 3222535  (D. Conn. July 27, 2017) ................................................................................................................................... 14

*Li Poa v. Stamford Hosp.*, No. 095027372, 2011 WL 6945670 (Conn. Super. Ct. Nov. 18, 2011) ................................................................................................................ 12, 13

*Milford Paintball, LLC v. Wampus Milford Assocs., LLC*, 137 Conn. App. 842 (Conn. App. Ct. 2012) ............................................................................................... 21

*Richards v. Direct Energy Servs., LLC*, 246 F.Supp.3d 538 (D. Conn. 2017) (Bolden, J.) ......... 12

*Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172 (1986) ............................................... 18, 20

*Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d. Cir. 2003) ...................................................... 2, 18

*Semac Electric Company, Inc. v. Skanska USA Building, Inc.*, 195 Conn. App. 695 (2020) ....... 17

*Simons v. Yale Univ.*, No. 3:19-cv-1547 (VAB), 2020 WL 5816950 (D. Conn. Sept. 30, 2020)  12

*Thompson v. Advanced Armament Corp.*, 614 F. App'x 523 (2d Cir. 2015) ........................ 13, 14

*WiFiLand, LLP v. Hudson*, 153 Conn. App. 87 (Conn. App. Ct. 2014) ........................................ 18

**Other Authorities**

Black's Law Dictionary 430 (7th ed. 1999) ................................................................................ 2

Garner's Dictionary of Legal Usage 892 (3d ed. 2011) ............................................................. 3

Restatement (Third) of Agency § 4.01, cmt. d (2006) ............................................................. 19

XFL Statement, XFL.com (Mar. 12, 2020), https://www.xfl.com/articles/xfl-statement ........... 21

**Rules**

Fed. R. Civ. P. 8(d)(2) .............................................................................................................. 19

Plaintiff Oliver Luck submits this memorandum of law in opposition to Defendant Alpha Entertainment LLC's ("Alpha") Motion to Strike Plaintiff's Affirmative Defenses (the "Motion"), ECF 171, in Mr. Luck's Answer and Affirmative Defenses to Alpha's Amended Counterclaims, ECF 166.

## INTRODUCTION

The Motion is another example of Alpha misconstruing and conveniently ignoring the facts related to Mr. Luck's performance of his obligations under the Employment Contract, including the Employment Contract itself. As addressed in the first discussion section below, Alpha did not have cause to terminate Mr. Luck because (1) the hiring of Callaway was within Mr. Luck's authority under the Employment Contract; (2) Mr. Luck followed McMahon's "directive" to fire Callaway and immediately began the process to terminate him; (3) Mr. Luck's personal use of the iPhone was within his discretion, not grossly negligent, and in Alpha's best interest; (4) Mr. Luck was permitted to disclose XFL information to Mr. Will Wilson, amongst others, in connection with the course of his duties to Alpha under the CNNA; and (5) Mr. Luck did not abandon his XFL work after March 13, 2020 because he continued working from his home in compliance with the XFL's and Connecticut Governor Ned Lamont's "stay at home" orders.

Contrary to Alpha's assertion, Mr. Luck has not admitted to any misconduct that would constitute cause under the Employment Contract. Rather, and as Alpha has recently admitted, Mr. Luck was only terminated because Alpha made the decision to voluntarily enter bankruptcy and attempted to terminate Mr. Luck for cause in an effort to avoid paying him the amounts due under the Employment Contract. ECF 172 at 17 (admitting that "Alpha sought legal advice regarding its contractual rights under Luck's Employment Contract after the XFL season was cancelled and it became clear that Luck and all but a few essential XFL employees necessary to assist with Alpha's bankruptcy would be terminated"). Alpha's termination of Mr. Luck for cause is wrongful because

Mr. Luck never engaged in any conduct that could constitute cause. Even if he did—Alpha's failure to provide Mr. Luck with notice and a thirty (30) day opportunity to cure the alleged conduct prevents Alpha from recovering on its counterclaims.

## DISCUSSION

"An affirmative defense is defined as a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d. Cir. 2003) (citing Black's Law Dictionary 430 (7th ed. 1999)). An affirmative defense may only be stricken if "(a) it does not meet the plausibility standard of *Twombly*; (b) it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims; or (c) it prejudices the defendant and it is presented beyond the normal time limits of the Rules." *Haber v. Bankers Standard Ins. Co.*, No. 3:19-cv-276 (VLB), 2019 WL 7343397, at *1 (D. Conn. Dec. 31, 2019) (citing *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019)) (internal quotations omitted). Resolution of a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure "is within the discretion of the district court, but such motions are generally disfavored and should be infrequently granted." *Halloran v. Harleysville Preferred Insurance Company*, No. 3:16-CV-00133 (VAB), 2018 WL 5840031, at *7 (D. Conn. Nov. 8, 2018). "The Second Circuit has long held that courts should not tamper with the pleadings unless there is a strong reason for so doing, and that a motion to strike under Rule 12(f) should be denied unless it can be shown that no evidence in support of the allegation would be admissible." *Id*. (internal quotations omitted).

## I.      MR. LUCK'S BREACH AND REPUDIATION DEFENSES ARE LEGALLY SUFFICIENT AND THE COURT SHOULD NOT STRIKE THEM

Alpha's claims that Mr. Luck's hiring and firing of Antonio Callaway, his personal use of the Alpha-issued iPhone, his sharing of XFL information, and his performance of his duties after

March 13, 2020 were prior breaches of the Employment Contract and Mr. Luck's fiduciary duties are without merit. None of these constitute a prior breach of contract or fiduciary duty by Mr. Luck, despite Alpha's mischaracterization of its obligations under the Employment Contract to argue otherwise. Thus, Mr. Luck was never in breach and Defendants breached and repudiated the Employment Contract and breached the implied covenant of good faith when they terminated him—without cause and without giving him any notice or opportunity to cure. Alpha's Motion to Strike is another poor attempt to eliminate essential terms of the Employment Contract and impermissibly excuse Alpha for failing to provide notice and an opportunity to cure.

Under the Employment Contract, Alpha had "Cause" to terminate Mr. Luck's employment by reason of six (6) specifically enumerated reasons. ECF 145-1 at 4 (Termination by Employer). However, only those acts or failure to act by Mr. Luck done in ***bad faith*** or ***without reasonable belief*** his actions were in the best interests of the XFL satisfy the contract's definition of "willful." *Id*. The Employment Contract expressly states that when an act or omission "that would ***otherwise constitute*** 'Cause' hereunder is reasonably susceptible to cure, Mr. Luck shall have 30 days from his receipt of written notice from Alpha describing such act or omission to effect the ***cure of such circumstances*."* *Id.* (emphasis added)*. Only when the act or omission that "would ***otherwise constitute*** 'Cause' hereunder is ***not reasonably susceptible*** to cure, ***or*** such circumstances ***have not been cured*** within such 30-day cure period, such act or omission will ***thereupon***[1] ***constitute 'Cause'*** hereunder." *Id.* (emphasis added). Thus, "Cause" only exists if the act or omission, accompanied by willfulness or gross negligence, is one of six (6) enumerated reasons *and* is not reasonably susceptible to cure ***or*** the circumstances otherwise constituting cause have not been cured within the 30-day period. Because Mr. Luck's actions were reasonably susceptible to cure,

---

[1] "Thereupon, adv., = at that instant. This word can usefully pinpoint the time of an action." Garner's Dictionary of Legal Usage 892 (3d ed. 2011).

they did not constitute cause. Thus, Mr. Luck's actions could only constitute cause (thus rendering him in breach of the Employment Contract based on these actions or omissions) if *after* receiving notice he refused or failed to cure the circumstances.

Defendants never gave Mr. Luck notice, and never gave him an opportunity to cure these alleged actions and omissions. Also, Mr. Luck never refused or failed to cure any purported actions or omissions. In fact, on the one occasion that Mr. Luck allegedly failed to follow a directive of Mr. McMahon, i.e. the hiring of Antonio Callaway, Mr. Luck immediately instituted the process of termination after Mr. McMahon advised him to do so. ECF 116 ¶ 14 ("I immediately followed his instruction and at 11:17 p.m. attempted to communicate with Callaway's head coach, Marc Trestman, to begin the process of terminating Callaway and comply with McMahon's instructions."). To prove a claim for breach of fiduciary duty, Alpha must prove "[1] [t]hat a fiduciary relationship existed which gave rise to ... a duty of loyalty ... an obligation ... to act in the best interests of the plaintiff, and ... an obligation ... to act in good faith in any matter relating to the plaintiff; [2] [t]hat the defendant advanced his or her own interests to the detriment of the plaintiff; [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." *Chioffi v. Martin*, 181 Conn. App. 111, 138 (Conn. App. Ct. 2018) (internal brackets from original). Here, Mr. Luck did not breach a fiduciary duty to Alpha because he did not advance his own interests to the detriment of Alpha by hiring Antonio Callaway and using his iPhone for non-XFL business. In addition, Mr. Luck's service on the board of American Campus Communities, Inc. and USA Football, Inc. was expressly allowed by the Employment Contract. Moreover, Alpha did not sustain damages for the alleged breach, and any damages Alpha might have suffered were not proximately caused by the alleged breach of fiduciary duty. Accordingly, Mr. Luck was not in breach of the Employment

Contract when Alpha terminated him without any notice or opportunity to cure any of his alleged actions or omissions.

A.   **Mr. Luck's actions related to Antonio Callaway were not in breach of the Employment Contract or any fiduciary duties.**

The hiring of Callaway was within Mr. Luck's "full authority to hire, dismiss, replace and reassign any employee, consultant or contractor of the XFL, all of whom report directly or indirectly, to Mr. Luck, subject to Mr. McMahon's preapproval for material business decisions." ECF 145-1 at 2. Callaway was an XFL employee, and his hiring and firing were not material business decisions. *See* ECF 145-1 at 2. Moreover, hiring Callaway was in response to McMahon's expressed concern about the poor quality of XFL receivers. *See* ECF 116 ¶ 14. Accordingly, Mr. Luck was well-within the confines of his authority under the Employment Contract when he hired Callaway and he did so in the XFL's interest, not his own. Moreover, Alpha ignores McMahon's own admission that Mr. Luck's actions related to Callaway were not reason to terminate Mr. Luck. ECF 128-1 ¶ 25 ("I did not want the negative publicity which would result had I terminated his contract at the same time our inaugural season was about to begin."). Additionally, Defendants ignore that Mr. Luck followed McMahon's "directive" to fire Callaway and immediately began the process to terminate him. ECF 116 ¶ 14 ("I immediately followed his instruction and at 11:17 p.m. attempted to communicate with Callaway's head coach, Marc Trestman, to begin the process of terminating Callaway and comply with McMahon's instructions."). Thus, Mr. Luck's actions related to Callaway were not in breach of the Employment Contract or any fiduciary duties, but within Mr. Luck's authority, and Defendants' belated (and false) claim in the Termination Letter to the contrary was a repudiation and breach of the Employment Contract.

Moreover, Defendants purportedly performed an investigation regarding Callaway on January 30, 2020. ECF 172-6 ¶¶ 6-7. In his Declaration attached as Exhibit F to Defendants' Combined Memorandum, ECF 172, Mr. McDevitt states:

> By January 30, 2020, Luck had both hired Antonio Callaway and then failed to terminate Callaway in contravention of McMahon's directives. In order to provide legal advice to Alpha concerning the Callaway matter, I requested information regarding Callaway from the XFL's Vice President of Business and Legal Affairs, Mali Friedman, who in turn requested such information from the XFL's Head of Talent Acquisition, Ian Decker. Ian Decker provided such information to Mali Friedman, who then communicated with me regarding the information I had requested.

ECF 176-6 ¶ 7.[2]

Thus, Defendants, through their agent Attorney McDevitt, knew about Mr. Luck's purported actions or omissions regarding Callaway more than sixty (60) days before terminating Mr. Luck for cause and not providing him with an opportunity to cure. However, McMahon chose not to terminate Mr. Luck. *See* ECF 128-1 ¶ 25. Accordingly, Mr. Luck was not in prior breach of the Employment Contract or any fiduciary duties, and Defendants' Motion to Strike should be denied.

**B.      Mr. Luck's personal use of his iPhone was within his discretion, but even if it was not permitted, it was reasonably susceptible to cure.**

Mr. Luck's personal use of his iPhone was within his discretion. Specifically, the XFL Employee Handbook & Code of Business Conduct (the "Handbook") states: "Employees should practice ***discretion*** in using XFL telephones when making personal calls." ECF 71-1 at 21 (emphasis added). Similarly, the Handbook's "General Requirements" section regarding XFL Technology states that employees are to exercise "good judgment regarding appropriate use of the XFL Technology in accordance with XFL policies, standards, and guidelines." *Id.* at 16. Moreover, the Handbook expressly mentions that the penalty for using an Alpha issued iPhone for personal

---

[2] Again, the second half of the statement is hearsay to which Mr. Luck objects.

use is potentially being "required to reimburse the XFL for charges resulting from [the] personal use of the [i]Phone" (not termination). ECF 71-1 at 21. Mr. Luck used his discretion and good judgment when utilizing the iPhone for both business and personal purposes because doing so was in the best interests of the XFL. Mr. Luck imported his personal contacts to the iPhone, and used those contacts to assist in recruitment of XFL employees, players, and coaches whom Mr. Luck knew prior to his employment by the XFL. Thus, Mr. Luck's use of the iPhone was not in breach of the Employment Contract, policies, or Mr. Luck's fiduciary duties, and did not precede Defendants' repudiation and breach of the Employment Contract.

Although Mr. Luck denies that his use of the iPhone for matters unrelated to the XFL was willful or grossly negligent, to the extent it was, it was easily susceptible to cure at the moment Mr. Luck received notice. Thus, Mr. Luck's actions related to the iPhone could only constitute cause (thus rendering him in breach of the Employment Contract based on these actions or omissions) if *after* receiving notice he refused or failed to cure the circumstances (i.e., if Mr. Luck continued to use the iPhone for matters unrelated to the XFL after being told otherwise). However, Defendants never told Mr. Luck not to use the iPhone for matters unrelated to the XFL (or to stop using the iPhone in such a manner).[3] Defendants never gave Mr. Luck any opportunity to cure these alleged actions and omissions, and Mr. Luck never refused or failed to cure any purported actions or omissions. Thus, Mr. Luck was never in breach of the Employment Contract (or any fiduciary duties) related to the use of the iPhone prior to Defendants' repudiation and breach of the Employment Contract (and implied covenant of good faith and fair dealing) in bad faith.

---

[3] Defendant seems to contend that Mr. Luck continued use of his iPhone after receipt of the Termination Letter on April 10, 2020 until April 17, 2020 indicates his unwillingness to "cure". However, contrary to Defendant's assertion, the April 9, 2020 Termination Letter did <u>not</u> state that Mr. Luck should stop using the iPhone or that it constituted notice of a violation and he had thirty (30) days to cure. ECF 145-2 at 3 ("We also note that you are in possession of a phone which is owned by Alpha which should be returned to the company.").

**C.**    **Mr. Luck's actions were permitted under the Confidentiality, Non-Solicitation and Non-Competition Agreement, but even if they were not, such actions were reasonably susceptible to cure.**

Mr. Luck was permitted by Section 3 of the Confidentiality, Non-Solicitation and Non-Competition Agreement ("CNNA") to disclose XFL information to third parties, in connection with the course of Mr. Luck's duties to Alpha. Specifically, the CNNA provides: "***Except in connection with the course of Employee's duties to Employer***, or as otherwise required by any applicable law, rule or regulation, Employee shall not, during his employment by Employer or at any time thereafter, directly or indirectly use, divulge, disseminate, discuss, disclose, lecture upon, or publish any Confidential Information without having first obtained the prior written consent from Employer to do so." ECF 145-1 at 9 § 3 (emphasis added). Thus, in connection with the course of Mr. Luck's duties to Alpha, he made limited disclosures of XFL information.

For example, in the course of Mr. Luck's duties to Alpha and as permitted by Section 3 of the CNNA, Mr. Luck forwarded XFL information to his own personal e-mail account, to his wife's personal e-mail account, and to William Wilson, his brother-in-law and an employee of the Wasserman Media Group ("Wasserman"), a sports agency that represented professional athletes and coaches. Moreover, after a discussion with McMahon, in connection with and in the course of Mr. Luck's duties to Alpha as permitted by the CNNA, Mr. Luck made limited disclosures to Wasserman personnel (including Mr. Wilson) pursuant to a written agreement between Wasserman and the XFL dated July 10, 2018 and its performance of duties thereunder regarding potential XFL opportunities in Mexico. ECF 166 ¶ 90. Wasserman confirmed its understanding that any information was being shared in confidence when it included in its proposed scope of work a provision for confidential information agreeing not to disclose confidential information to

third parties. Ex. A at ALPHA_LUCK_00068510 (Scope of Work dated July 10, 2018).[4] All disclosures Mr. Luck made were in connection with the course of his duties to Alpha. Thus, Mr. Luck was well within the bounds of his Employment Contract (and fiduciary duties) and his actions were authorized by the CNNA. He was not in breach of any agreement or duties before Defendants' repudiation and breach of the Employment Contract in bad faith.

Although Mr. Luck denies that any information he shared with third parties was in breach of the CNNA or any of his duties, it was also reasonably susceptible to cure. For example, any purported disclosure could have been remedied by a confidentiality agreement (and in fact, the information was disclosed in confidence). *See* Ex. A. Any future disclosure could have been prevented by instructing Mr. Luck not to share XFL information outside the organization. However, Defendants never gave Mr. Luck notice that the terms of the CNNA, which permitted him "in connection with the course of [his] duties to [Alpha]" to make the disclosures about which Defendants now complain, in fact did not permit him to make those disclosures. Thus, he was never given the opportunity to cure and consequently never failed to cure. Accordingly, he was never in breach of the Employment Contract or the CNNA (or any fiduciary duties) before Defendants repudiated and breached the Employment Contract (and implied covenant of good faith) in bad faith.

**D.     Mr. Luck continued to perform his duties after March 13, 2020, but even if he did not, his performance was reasonably susceptible to cure.**

Mr. Luck did not abandon any of his XFL work after March 13, 2020. Instead, Mr. Luck returned home to Indiana for the weekend on March 13, 2020. ECF 116 ¶ 16 n.1. On Sunday, March 15, 2020, the XFL closed its offices and ordered all staff to work from home. *Id.* On March

---

[4] Although Mr. Luck has not located a signed version of the formal scope of work, this provision clearly indicates the understanding that information was being disclosed in confidence.

9

20, 2020, Connecticut Governor Ned Lamont issued a "stay at home" order, requiring all non-essential businesses to reduce their in-person workforce by 100%. *Id.* In turn, Mr. Luck complied with both directives. Thereafter, Mr. Luck remained in communication with McMahon via text message. *Id* ¶ 17.

During this time, Mr. Luck communicated with college athletic administrators regarding the possibility of the college football season being moved to Spring 2021, and shared this information with McMahon. *Id.* Mr. Luck communicated with XFL employees and representatives regarding the shutdown of XFL operations, and had communications regarding signing certain XFL players for 2021. *Id.* Mr. Luck finalized the 2021 football budget. *Id.* He prepared a video at McMahon's request for the XFL's fans. *Id.* Mr. Luck further prepared for and had a meeting scheduled with McMahon for April 3, 2020, which McMahon's office cancelled. *Id.* ¶ 18. Thus, Mr. Luck was **not** disengaged from his work—he was remotely performing work to determine viable next steps for the XFL in the face of COVID-19—and he was not in breach of the Employment Contract or any fiduciary duties before Defendants' repudiation and breach of the Employment Contract in bad faith.

Assuming without admitting that Mr. Luck's performance after March 13, 2020 was insufficient, this easily could have been remedied with an instruction to attend more meetings, prepare reports for McMahon, make phone calls to McMahon, and improve whatever it was that Defendants believed needed improving. Again, Defendants never gave Mr. Luck notice that his performance was lacking, and consequently, he never had opportunity to cure. Thus, Mr. Luck was not in breach of the Employment Contract or any fiduciary duties before Defendants' repudiation and breach of the Employment Contract (and implied covenant of good faith) in bad faith.

**E.      Alpha's Rejection of the Employment Contract was a repudiation and breach.**

Again, Mr. Luck was not in breach of the Employment Contract or any fiduciary duties when Alpha sent him the Termination Letter in repudiation and breach of the Employment Contract. Thereafter, when it filed its Eleventh Omnibus Motion for Entry of an Order Authorizing the Debtor to Reject Certain Executory Contracts Effective as of the Petition Date, Alpha requested an order of the Bankruptcy Court authorizing it to reject the Employment Contract. *In re Alpha Entertainment LLC*, Case No. 20-10940, ECF 22 (Bankr. D. Del.). On May 11, 2020, the Bankruptcy Court granted Alpha's request and approved Alpha's rejection of Mr. Luck's contract "to the extent not already terminated ***in accordance with [its] applicable terms*** or agreement of the parties." *Id.*, ECF 124 at 2. However, Defendants had not terminated Mr. Luck's Employment Contract in accordance with its terms because they did not have cause and they failed to provide any notice to cure, and there was no agreement between Mr. Luck and Defendants to do so. Thus, Alpha did reject Mr. Luck's Employment Contract, constituting a further breach and repudiation. 11 U.S.C. § 365(g)(1).

Defendants' Motion to Strike Mr. Luck's defenses for breach and repudiation, and breach of the implied covenant of good faith should be denied.

## II.     THE COURT SHOULD NOT STRIKE MR. LUCK'S DEFENSE OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

For the same reasons set forth in Mr. Luck's Response and Memorandum of Law in Opposition, ECF 154-155, to Defendants' Motion to Dismiss the Breach of the Implied Duty of Good Faith and Fair Dealing Claims, ECF 151, in Mr. Luck's Second Amended Complaint, ECF 145, Alpha's motion to strike Mr. Luck's defense of breach of the implied covenant of good faith and fair dealing should be denied. Mr. Luck's affirmative defense for breach of the implied

covenant of good faith and fair dealing is not duplicative, it is consistent with the express terms of the Employment Contract and supported by additional allegations of Alpha's bad faith.[5]

*First*, Mr. Luck's defense for breach of the implied covenant of good faith and fair dealing is based on factual allegations of Defendants' bad faith, a required element of the defense,[6] and does not simply duplicate his breach and repudiation defense. Mr. Luck's defenses of breach and repudiation do not require allegations of bad faith; his defense for breach of the implied covenant does. In support, Mr. Luck alleges that: "Defendants sought the advice of their attorneys to conceal or facilitate Defendants' fraudulent scheme"; "Defendants' termination was a sham, consciously designed to evade Alpha's and McMahon's obligations for payment of Mr. Luck's salary and bonuses"; "Defendants operated with furtive design to terminate Mr. Luck allegedly with cause under the Employment Contract for the **dishonest** purpose of avoiding their legal obligations owed to Mr. Luck." ECF 166 ¶ 134 (emphasis added). These allegations are entirely distinct and not duplicative of Mr. Luck's allegations for breach and repudiation.[7]

*Second*, Mr. Luck's defense for breach of the implied covenant is consistent with the express terms of the Employment Contract.[8] *Cf. Li Poa v. Stamford Hosp.*, No. 095027372, 2011

---

[5] Moreover, a breach of the implied covenant of good faith and fair dealing is a breach of contract—it is a breach of the covenant implied in the terms of a contract. *See Richards v. Direct Energy Servs., LLC*, 246 F.Supp.3d 538, 556-57 (D. Conn. 2017) (Bolden, J.).

[6] A breach of the implied duty occurs when the defendant acts in bad faith to impede the plaintiff's right to receive the benefits plaintiff reasonably expected under the contract. *Simons v. Yale Univ.*, No. 3:19-cv-1547 (VAB), 2020 WL 5816950, at *9 (D. Conn. Sept. 30, 2020). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004).

[7] Defendants' cited case, *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, No. 16 CIV. 2767, 2016 WL 6906583 (S.D.N.Y. Nov. 21, 2016) is inapposite. There, the court struck a defense for breach of the implied covenant of good faith and fair dealing because the defendants did not cite to **any** new conduct distinguishing the obligations under the contract from the implied obligation of good faith and fair dealing. *Id.* at *8.

[8] Inexplicably, Defendants cite to Plaintiff's Motion to Seal Portions of the Motion for Leave to Amend and Portions of Exhibits 1, 2, and 4 to the Motion for Leave to Amend (ECF 159) in support of their argument that Alpha had the express right under the Employment Contract to terminate Mr. Luck for cause regardless of

WL 6945670, at *1, *4 (Conn. Super. Ct. Nov. 18, 2011) (no discretionary application or interpretation of contract term related to payment obligations of university and no obligation for university to avoid because university had no obligation to continue making salary payments to plaintiff if terminated without cause and plaintiff alleged repudiation by terminating him without cause).

Here, it is undisputed that Defendants did not give Mr. Luck any notice or opportunity to cure. Consequently, Alpha's for cause termination is improper unless it can prove that "the act or omission that would otherwise constitute 'Cause' hereunder is *not reasonably susceptible* to cure . . ." ECF 145-1 at 4 (emphasis added). Alpha cannot prove that Mr. Luck's allegedly improper acts or omissions were not subject to cure without relying upon its own improper motives, abuse of discretion, and dubious interpretation and application of the phrase "not reasonably susceptible to cure." Nor can McMahon.[9] Defendants have repeatedly asserted that McMahon cannot be held liable under the Guaranty unless Plaintiff can prove Alpha did <u>not</u> have cause for termination under the Employment Agreement. Consequently, assuming without admitting that Defendants' assertion is correct, Mr. Luck's defense for breach of the implied covenant of good faith and fair dealing is consistent with the terms of **both** the Employment Contract and the Guaranty.[10]

---

motive. ECF 171-1 at 16. Consequently, Defendants fail to offer briefing on those items to which Mr. Luck can respond.

[9] Defendants ignore that the specific terms for cause termination under the Employment Contract involve inherently discretionary determinations by Alpha regarding Mr. Luck's conduct, including his state of mind. For instance, Mr. Luck could be terminated for cause based only on "(iii) Mr. Luck's willful and intentional material misconduct in performance of his duties or gross negligence of his duties . . . including an intentional failure to follow any applicable XFL polices or directives. . . ." ECF 145-1 at 4. The Employment Contract states that only those acts, or failure to act, by Mr. Luck done in bad faith or without reasonable belief that his actions were in the best interest of the XFL, support for cause termination. *Id.* Consequently, the implied covenant of good faith and fair dealing applies to Alpha's discretionary application or interpretation of the Employment Contract's language defining the grounds for cause termination. The implied duty also applies to McMahon's discretionary application or interpretation of the Guaranty and, therefore, Alpha's performance of its obligations under the Employment Contract.

[10] Again, Defendants' cited cases do not support their position. For example, *Thompson v. Advanced Armament Corp.*, 614 F. App'x 523, 525 (2d Cir. 2015), is a summary order case interpreting New York law. As this Court

Moreover, Defendants ask the Court to ignore the allegations of Mr. Luck's affirmative defense that interested or sinister motive underlies a breach of the implied covenant of good faith. Assuming, without admitting, that Defendants' purported reasons for terminating Mr. Luck would constitute cause, Defendants were obligated to exercise their discretion under the Employment Contract in a manner not injurious to Mr. Luck's right to receive the benefits of the agreement. *De La Concha of Hartford*, 269 Conn. at 432. Thus, Defendants were required by their implied covenant of good faith and fair dealing to determine whether Mr. Luck's purported actions and omissions were reasonably susceptible to cure. Mr. Luck's affirmative defense is based on Defendants' bad faith, sham investigation consciously designed to evade Defendants' obligations for payment of Mr. Luck's salary and bonuses. *See Casper v. Combust. Eng'g, Inc.*, No. CV 97-0570516S., 1998 WL 389215, at *8 (Conn. Super. Ct. June 23, 1998) (as an example, if an employer agreed that an employee could be terminated if he did not receive an average or better evaluation on the anniversary of his hire date, but deliberately refrained from evaluating the employee thus leaving him without an average or better evaluation, then the employer would not violate the terms of the employment contract if it terminated the employee, but it would violate the covenant of good faith and fair dealing). Here, Defendants, in bad faith, purposely refrained from giving Mr. Luck notice of any alleged omissions or actions to prevent him from curing them and to allow Defendants to terminate him without paying him.

---

and Defendants know, a ruling by summary order has no precedential value. *Id*. at 523. Still, in *Thompson*, the Second Circuit upheld the District Court's finding that the employer breached its employment contracts with employees through violation of the covenant of good faith and fair dealing because the employer purposely sabotaged the plaintiffs' ability to benefit under their contracts. *Id*. at 525. Hence, if *Thompson* applied to this case, it would bolster Mr. Luck's position, not Defendants'. Unlike *Kollar v. Allstate Insurance Co.*, No. 3:16-CV-01927 (VAB), 2017 WL 3222535, at *5-*6 (D. Conn. July 27, 2017), where the plaintiff failed to plead any actual breach of contractual terms, Defendants violated numerous and specific provisions of the Employment Contract.

Likewise, in his declaration in support of Defendants' Combined Memorandum, ECF 172, Attorney McDevitt states that "Alpha sought my legal advice *after* the XFL season was cancelled, when "**it became clear that Luck** and all but a few essential XFL employees necessary to assist with Alpha's bankruptcy **would be terminated**." ECF 172-6 ¶ 9 (emphasis added). In other words, Alpha made the business decision to terminate Mr. Luck (presumably without cause) *before* requesting that Attorney McDevitt perform his fact investigation that ultimately resulted in Alpha's determination that Mr. Luck should be terminated for cause. According to Mr. McDevitt "[i]n order to provide legal advice to Alpha regarding Luck's termination and ***in anticipation of potential litigation with Luck***, I conducted an investigation . . . ." *Id.* (emphasis added). Thereafter, on April 9, 2020, McDevitt sent the Termination Letter to Mr. Luck. *Id.* ¶ 10. McMahon confirms that he "authorized Alpha's and [his] counsel to send Luck a letter advising him that the termination was for cause . . ." ECF 128-1 ¶ 29. Consequently, Alpha admits an identifiable resolve to litigate with Mr. Luck and Defendants' engagement of Mr. McDevitt and his subsequent investigation were done in breach of the implied covenant of good faith and fair dealing because the outcome was pre-determined.

Thus, Mr. Luck's affirmative defense for breach of the implied covenant of good faith is legally and factually sufficient and Defendant's motion to strike this defense should be denied.

## III.   MR. LUCK'S NOTICE AND CURE DEFENSE ARE LEGALLY SUFFICIENT

Alpha argues that its failure to provide Mr. Luck notice and an opportunity to cure is not a defense to its counterclaims because "[t]he notice and cure provisions are not conditions precedent to asserting a breach of contract or breach of fiduciary duty claim for damages." ECF 171-1 at 13. Alpha's argument misses the mark in two respects.

First, Alpha either ignores or fails to appreciate the language of the Employment Contract that determines when circumstances become cause for termination. The cases Alpha cites do not involve a contract where the existence of cause is expressly contingent upon whether the terminated party provided notice and an opportunity to cure. *Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 919 (7th Cir. 2008) (holding that compliance with cure provisions is not a condition precedent to suing for a breach of contract where the contract permitted either party to terminate without cause "[b]ut if a party defaults and the other party seeks to terminate the contract because of the default, he has to give the first party an opportunity to cure the default"); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 403 (S.D.N.Y. 2009) (denying a motion to dismiss a breach of contract claim where the agreement required a party claiming a breach or default to notify and provide the breaching party a right to cure); *Hypergraphics Press, Inc. v. Cengage Learning, Inc.*, No. 08 C 5102, 2009 WL 972823, at *3 (N.D. Ill. Apr. 8, 2009) (denying a motion to dismiss a breach of contract claim where "the contract does not say that the consequences of failing to provide such notice is that the claim is barred (as opposed to the consequence being that defendant has a breach of contract claim against plaintiff)." (parenthetical in original).

Under the Employment Contract in this case, if an act or omission that "*would otherwise* constitute 'Cause' hereunder is reasonably susceptible to cure," said act or omission is *not* cause unless and until Alpha has provided Mr. Luck 30 days written notice of the act or omission to cure such circumstances *and* "such circumstances have not been cured within such 30-day cure period." ECF 145-1 at 4 (emphasis added). Therefore, Alpha's failure to provide Mr. Luck notice and an opportunity to cure any circumstance that "is reasonably susceptible to cure" prevents such

16

circumstance from being cause in the first place. Alpha failed to provide Mr. Luck notice and an opportunity to cure; consequently, Alpha never had cause to terminate Mr. Luck.

Second, Alpha emphasizes the "not a condition precedent to suing for breach of contract" language while ignoring the fact that compliance with a notice and cure provision "is a condition precedent…to being authorized to terminate the contract immediately without liability to the other party." *Allan Block Corp.*, 512 F.3d at 919. Even assuming the Employment Contract did not clearly define when an act or omission becomes cause, providing notice and an opportunity to cure "*is a condition precedent* not to suing for a breach of contract but *to being authorized to terminate the contract immediately without liability to the other party*." *Id.* (emphasis added). In other words, Alpha can sue for breach of contract without providing an opportunity to cure, but that does not obviate Alpha's failure to provide notice and an opportunity to cure nor does it permit Alpha to recover damages on its counterclaims.

Third, Alpha's failure to provide notice and an opportunity to cure is itself a breach and repudiation of the Employment Contract. *Semac Electric Company, Inc. v. Skanska USA Building, Inc.*, 195 Conn. App. 695 (2020). In *Semac*, the general contractor failed to provide forty-eight hours' notice and opportunity to cure required under the subject contract. *Id*. The *Semac* Court held that the general contractor breached and repudiated the contract.

> Although it is generally accepted that contracting parties may reserve the right to terminate a contract for convenience or cause upon a specified period of notice … [i]f a party who has a power of termination by notice fails to give the notice in the form and at the time required by the agreement, it is ineffective as a termination …. One who deviates from the terms and the circumstances specified in the agreement for giving notice … may be regarded as having repudiated the contract, with all the effects of repudiation including giving the injured party a right to damages …. [A] party's failure to comply with the notice provision in a termination clause … amounts to a material breach of the contract.

*Id*. at 715 and 1107 (quoting *Coppola Construction Co. v. Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 169 and 172 (Conn. App. Ct. 2015) (internal quotation marks omitted); *see also WiFiLand, LLP v. Hudson*, 153 Conn. App. 87, 94 (Conn. App. Ct. 2014) (upholding the trial court's finding that the defendants "breached the parties' agreement by terminating it without providing the plaintiff with forty-five days written notice and an opportunity to cure the alleged breach.").

Alpha does not allege in its Amended Counterclaims that it provided Mr. Luck an opportunity to cure or that any of the alleged cause bases were not reasonably susceptible to cure. *See* ECF 153. Therefore, "even if all allegations in [Alpha's Amended Counterclaims] are true," Alpha's failure to provide Mr. Luck notice and an opportunity to cure is a legally sufficient defense because it defeats Alpha's counterclaims based on any alleged breach. *Saks*, 316 F.3d at 350.

## IV.    MR. LUCK's RATIFICATION DEFENSE IS LEGALLY SUFFICIENT

"Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account." *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 185 (1986) (internal quotation marks omitted). Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances. *Id*. (internal quotation marks omitted). The authority of an agent "may be inferred from the conduct of [the company's] affairs, or from the knowledge of its directors and their neglect to make objection." *Giardino v. Belle Haven Land Co.*, 254 Conn. 502, 531 (2000). "[S]ilence, as well as affirmative acts, may imply an intent to ratify." *Id*.

Alpha cites the Restatement (Third) of Agency for the proposition that "a principal's failure to terminate or reprimand an employee by itself is not likely to ratify the employee-s unauthorized action because the employer may have varied reasons for failing to take action adverse to an

employee." *See* Restatement (Third) of Agency § 4.01, cmt. d (2006). Alpha, however, fails to mention the very next sentence in the comment- "[o]n the other hand, if the employer is aware of ongoing conduct encompassing numerous acts by the employee, failure to terminate may constitute ratification, as in some circumstances may the promotion or celebration of such an employee." *Id*. Moreover, Alpha did not terminate Mr. Luck for cause because of his misconduct. Alpha made the decision to terminate Mr. Luck after the XFL season was cancelled and, only after deciding it was going to terminate Mr. Luck, had its attorney investigate whether they could allege any grounds for cause. *See* ECF 172 at 17. Alpha did not terminate Mr. Luck as a result of any of his actions or omissions; Alpha decided to terminate Mr. Luck and then conducted a sham investigation.

McMahon, who Alpha admits had the authority to ratify Mr. Luck's conduct on behalf of Alpha, *see* ECF 171-1 at 18, had full knowledge of all the material circumstances surrounding Mr. Luck's alleged conduct and intentionally accepted the results of Mr. Luck's alleged conduct.

A.      **Alpha's ratification of the Mr. Luck's actions related to Antonio Callaway.**

Contrary to Alpha's assertion, Mr. Luck can and does allege that McMahon accepted Mr. Luck's hiring of Callaway with full knowledge of all material facts.[11] Alpha's attorney, Mr. McDevitt, performed an investigation into Callaway's hiring and termination on January 30, 2020. *See* ECF 172-6 ¶ 7. Since McDevitt was the attorney for McMahon and Alpha, Alpha had full knowledge of all the material facts related to Callaway's hiring and termination as of January 30, 2020. Alpha ratified and accepted Mr. Luck's actions related to Callaway by making the intentional and informed decision not to terminate Mr. Luck after Attorney McDevitt's

---

[11] Mr. Luck's allegation that he had full authority to hire Callaway does not defeat his ratification defense as affirmative defenses can be plead in the alternative. Fed. R. Civ. P. 8(d)(2). Mr. Luck had "full authority to hire, dismiss, replace and reassign any employee, consultant or contractor of the XFL, all of whom report directly or indirectly, to Mr. Luck, subject to Mr. McMahon's preapproval for material business decisions." ECF 145-1 at 2. Callaway was an XFL employee, and his hiring and firing were not material business decisions.

investigation, or for more than two months after becoming fully aware of the facts. *See* ECF 128-1 ¶ 25.

**B.    Alpha's ratification of Mr. Luck's actions related to his use of the iPhone and the CNNA.**

McMahon knew about and accepted Mr. Luck's personal use of his iPhone. On August 24, 2019, Mr. Luck sent a text to McMahon and Jeffrey Pollack stating "A heads up-my son Andrew will announce his retirement from the Colts tomorrow afternoon." Ex. B. Rather than admonishing Mr. Luck for sending him a text message from his Alpha iPhone completely unrelated to the business of the XFL, McMahon responds saying "Thx for the heads up Oliver. I hope this is a good thing for him in the long run. I'm sure he will miss it terribly. I know you're very proud of all his accomplishments as a player, as a man and as a son." *Id*. Therefore, McMahon had full knowledge as early as August 24, 2019 of Mr. Luck's personal use of his iPhone- he even thanked him for it.

McMahon also sent a personal text, unrelated to the business of the XFL, to Mr. Luck on December 27, 2019. Ex. C. Unless Alpha is taking the absurd position that Mr. Luck should not have responded to the personal text message McMahon sent to Mr. Luck's iPhone, Alpha does not—and cannot—allege that McMahon did not know of and accept Mr. Luck's personal use of the iPhone.[12]

McMahon was also aware of and accepted Mr. Luck's limited communications with Wasserman personnel (including Mr. Wilson) concerning the written agreement between Wasserman and the XFL dated July 10, 2018 as Mr. Luck had a discussion with McMahon regarding the same. ECF 166 ¶ 90; Ex. A.[13]

---

[12] To be clear, even if Alpha were to take such a position, McMahon's knowledge and acceptance of Mr. Luck's personal use of his iPhone would still ratify any alleged breach.

[13] As stated above, Mr. Luck was permitted by Section 3 of the CNNA to disclose XFL information to third parties in connection with the course of Mr. Luck's duties to Alpha. ECF 145-1 at 9 § 3. But, in the event he was not, Alpha and McMahon ratified any such actions.

Alpha ratified and accepted Mr. Luck's personal use of the iPhone and limited disclosures made by making the intentional and informed decision to not terminate Mr. Luck for 229 days after becoming fully aware of Mr. Luck's personal use of the iPhone and approximately 660 days after becoming aware of disclosures to Wasserman.

### C.   Alpha's ratification of Mr. Luck's conduct after March 13, 2020.

Alpha began its investigation into whether there was any for-cause basis to terminate Mr. Luck "after the XFL season was cancelled and it became clear that Mr. Luck and all but a few essential XFL employees necessary to assist with Alpha's bankruptcy would be terminated." ECF 172 at 17. The XFL season was cancelled on March 12, 2020. *See* XFL Statement, XFL.com (Mar. 12, 2020), https://www.xfl.com/articles/xfl-statement. Alpha presumably had knowledge of Mr. Luck's conduct and alleged failure to devote substantially all of his business time to the XFL after it began its investigation. By failing to take action at the time it became aware of all material facts, Alpha intentionally ratified Mr. Luck's performance of his duties to the XFL after March 13, 2020.

## V.   MR. LUCK'S WAIVER AND ESTOPPEL DEFENSES ARE LEGALLY SUFFICIENT

First, Mr. Luck's waiver and estoppel defenses are not barred by the Employment Contract. The Employment Contract states that "*This Contract* may not be amended, waived or otherwise modified except by a writing signed by both Alpha and Mr. Luck." ECF 145-1 at 6 (emphasis added). Unlike the case cited by Alpha, the Employment Contract does not state "[e]ither party's failure to enforce any provision of this Lease or Landlord's acceptance of Rent shall not be a waiver and shall not prevent either party from enforcing that provision or any other provision of this Lease in the future…." *Milford Paintball, LLC v. Wampus Milford Assocs., LLC*, 137 Conn. App. 842, 852 n.8 (Conn. App. Ct. 2012). The Employment Contract's non-waiver clause merely provides that the Employment Contract itself may not be waived absent a signed writing, but Mr.

Luck is not arguing that the Employment Contract has been waived. In fact, Mr. Luck's position is that the Employment Contract should be enforced as written, including the requirement that Alpha provide Mr. Luck with written notice and a 30-day opportunity to cure any alleged breach before (attempting to) terminate him for cause. ECF 145-1 at 4.

Second, Alpha waived its right to right to terminate Mr. Luck for the alleged actions or omissions by failing to provide Mr. Luck with a notice and opportunity to cure once it had knowledge of the facts concerning Mr. Luck's alleged conduct and before it attempted to terminate Mr. Luck for cause. "[I]mplied waivers and estoppels by conduct are so similar that they are nearly indistinguishable." *Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 217 Conn. 340, 352 (1991) (internal quotation marks omitted). "Waiver is the intentional relinquishment of a known right." *Id*. at 351 (internal quotation marks omitted). "The essential elements of estoppel are that the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Id*. at 351 (internal quotation marks and citation omitted).

Alpha intentionally relinquished its right to terminate Mr. Luck for cause by failing to provide him with notice and an opportunity to cure as it made the conscious and intentional decision to retain Mr. Luck after it became aware of the facts surrounding the alleged conduct. *See* ECF 128-1 ¶ 25 and ECF 172-6 ¶ 7 (Alpha's awareness of Callaway); Exs. B & C (Alpha's awareness of Mr. Luck's personal use of the iPhone); ECF 166 ¶ 90 (Alpha's awareness of limited disclosures to Wasserman Personnel); ECF 172 at 17 (Alpha's awareness of Mr. Luck's conduct post March 13, 2020). Further, Alpha's allegations that it did not do "anything intended to induce him to believe that he would not be terminated for cause" is another mischaracterization of the

Case 3:20-cv-00516-VAB   Document 177   Filed 04/15/21   Page 28 of 31

facts and an intentional failure to understand the significance of its obligation under the Employment Contract to provide Mr. Luck with notice and an opportunity to cure. Alpha's entering into the Employment Contract with its notice and cure provisions was intended to induce Mr. Luck to believe that he would not be terminated for cause *without first being provided notice and an opportunity to cure*. The notice and cure provisions also gave Alpha a duty to speak by requiring it provide Mr. Luck with notice and an opportunity to cure before attempting to terminate him for cause.

Accordingly, Mr. Luck's waiver and estoppel defenses are legally sufficient because Alpha failed to provide Mr. Luck with notice and an opportunity to cure the alleged conduct when it learned of it and instead decided to attempt to terminate him for cause only after "it became clear that Luck and all but a few essential XFL employees necessary to assist with Alpha's bankruptcy would be terminated." ECF 172 at 17.

## VI.   MR. LUCK'S SETOFF AND RECOUPMENT DEFENSES ARE LEGALLY SUFICIENT (AND ALPHA AGREED TO THEM)

First, Mr. Luck's setoff and recoupment defenses do not rest solely on Alpha's breach of good faith and fair dealing. Mr. Luck's setoff and recoupment defenses are based on any amounts that Mr. Luck may be awarded in this case based on "Alpha's wrongful termination, material breach, and/or repudiation of the Employment Contract," which could be awarded under Mr. Luck's breach of contract claim or his breach of the implied duty of good faith claim. *See* ECF 166 ¶¶ 162-167; *see also* ECF 145 ¶¶ 34-40.

Second, Mr. Luck would be entitled to a setoff or recoupment if he recovers under his breach of implied duty of good faith claim and Alpha recovers under its breach of contract claims. Contrary to Alpha's assertion, it is theoretically possible for Alpha to prevail on its counterclaims and for Mr. Luck to prevail on his breach of the implied duty of good faith claim. *See Casper v.*

23

*Combust. Eng'g, Inc.*, No. CV 97-0570516S., 1998 WL 389215, at *8 (Conn. Super. Ct. June 23, 1998) ("[A] breach of the covenant of good faith and fair dealing generally occurs where there is no other contractual breach, or in other words, where the party lacking good faith has adhered to the letter of the contract.").

Third, and most importantly, ***Alpha agreed*** and the bankruptcy court ordered that Mr. Luck could assert setoff and recoupment as a defense to any counterclaims Alpha might have brought in this case in the Agreed Order Granting Oliver Luck's Motion for Relief From Stay to Join Alpha Entertainment LLC in Connecticut Proceeding. *See* ECF 90-2 at 3 (the "Agreed Order"). Like the Employment Contract, Alpha now attempts to avoid its agreement to allow Mr. Luck to assert "any and all defenses to any claims that may be asserted against him by [Alpha], or its successor in interest, including but not limited to, the defenses of set-off and/or recoupment." *Id*. Alpha argues that, because Mr. Luck agreed not to file a proof of claim against Alpha in bankruptcy and waived any right to recover against Alpha, he is prevented from offsetting the amount of any monetary award Alpha may receive in this case by the amount of any monetary award Mr. Luck may receive in this case. However, the Agreed Order only prevents Mr. Luck from *recovering* from Alpha. *See* ECF 90-2 at 2. Mr. Luck's setoff and recoupment defenses are not seeking a net-positive recovery from Alpha. As pleaded, Mr. Luck only seeks a setoff and/or recoupment of the amount of damages Mr. Luck suffered from Alpha's wrongful termination, material breach, and/or repudiation of the Employment Contract, "*up to the amount of damages award to Alpha*." ECF 166 ¶¶ 164 and 167.

Accordingly, Mr. Luck's setoff and recoupment defenses are legally sufficient.

## CONCLUSION

WHEREFORE, Plaintiff Oliver Luck respectfully requests that the Court deny in full Alpha's Motion to Strike Plaintiff's Affirmative Defenses.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email:  pjd@doblaw.com
Email:  vpierce@doblaw.com
Email : jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2021, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Paul J. Dobrowski*