# EXHIBIT A



# SCOPE OF WORK

**DATE:** July 10, 2018

**CLIENT CONTACT NAME:** Oliver Luck

**CLIENT COMPANY NAME:** XFL


Dear Oliver,

Further to our recent conversations and the Letter of Agreement dated July 10, 2018, we are delighted to present the Scope of Work for the XFL.

To expedite this process, the enclosed Scope of Work and its Addendum (collectively, the "Agreement") will serve as the agreement for the Project Services. Please feel free to consult with us about the attached document after you have reviewed it.  Upon the execution and return of the Agreement by you, Wasserman Media Group, LLC ("Wasserman") will provide the services set forth in the attached Scope of Work in accordance with its terms.

We appreciate your consideration of this and future project opportunities, and appreciate the opportunity to continue to work with you and your team.  We look forward to finalizing this Agreement and getting this important Project started.

Sincerely,


Will Wilson
Executive Vice President, Football



# SCOPE OF WORK

# SCOPE OF WORK

DATE: August 16, 2018

CLIENT CONTACT NAME: XFL

CLIENT COMPANY NAME: Oliver Luck

I. PROJECT SERVICES

Stage 1 (One Month)
- Stadium availability analysis in Mexico City and Toluca for the following three (3) stadiums: (i) Estadio Azteca, (ii) Estadio Universitario, and (iii) Estadio Nemesio Diez, including the following:
  - Analysis of existing relationships and commitments
  - Detail of clubs that currently use the stadium
  - Stadium availability during months of February through April;
  - Field specifications (including playing surface) and locker room specifications
  - Identify blackout dates
- Market Situation Analysis
  - Situation analysis of American football in Mexico
  - Target audience analysis / viewer profile (demographic and psychographic profile)
  - SWOT analysis of American football in Mexico
  - Competitive analysis
- The parties acknowledge that, as of the date of this Agreement, upon Wasserman's presentation of a debrief of Stage 1 to XFL, Stage 1 shall conclude.

Stage 2 (If XFL informs Wasserman that it desires to proceed with Stage 2, Stage 2 shall commence on such date and last for three months)
- Comprehensive analysis for a new team in Mexico City and the selected stadium, including the following (info aligned with RFP):
  - Demographic, economic & geographic statistics
  - Infrastructure: training facilities, hotels, airports, local transportation
  - List of local professional teams, including calendars
  - Description of major sporting events to take place in Mexico City
  - List of main HQ located in Mexico City
  - General analysis of Mexico's TV Business and analysis of distribution opportunities for XFL
  - General analysis of Mexico's sponsorships landscape and analysis of sponsorship opportunities for XFL
  - Further stadium analysis: (i) construction or infrastructure projects, (ii) how existing club seating and suite revenues will be treated, (iii) technical specifications, (iv) press room specifications, (v) ancillary areas, (vi) storage space, (vii) hospitality & catering, (viii) TV production infrastructure, (ix) jumbotrons, (x) lighting, (xi) parking, and (xii) existing sponsorships, etc.
  - Potential advertising and promotional strategies
  - Potential strategic partnerships: (i) training facilities, (ii) office space, (iii) hotels

II. STAFFING

The project will be led by myself (Will Wilson, Executive Vice President, Football), and Rodrigo Morales, Vice President of LATAM (who is based in our Mexico City office), as well as the Properties Team in New York.



## SCOPE OF WORK

III.   FEES AND EXPENSES

The XFL shall pay Wasserman a monthly retainer fee of twenty-five thousand dollars ($25,000.00), payable within thirty (30) days of the XFL's receipt of each invoice.

The parties acknowledge that, as of the date of this Agreement, Wasserman is currently owed twenty-five thousand dollars ($25,000.00) from XFL for Wasserman's work on Stage 1 of the Project Services.

IV.   TERM

The term of this Scope of Work shall commence on July 10, 2018, and shall continue through either (i) the date XFL informs Wasserman it does not wish to proceed with Stage 2, or (ii) the date that is three (3) months after the date upon which XFL informs Wasserman it desires to proceed with Stage 2 (the "Term").

Wasserman may terminate this Scope of Work (together with its Addendum, this "Agreement") for: (i) any failure by Client to make timely payment of any undisputed fees or reimbursement of       undisputed expenses due under this Agreement, which breach is not cured by Client within thirty (30) days after receipt of written notice thereof from Wasserman; or (ii) if a dispute related to fees and expenses continues for longer than60 days. Client shall pay Wasserman for all fees and expenses incurred through the date of expiration or termination, provided that such payment shall not affect any other rights and remedies a party may have under this Agreement.  Sections III and IV of this Scope of Work and Sections 1, 2, 3, 4(b), 4(c), 4(f), 4(h) and 4(j) of the Addendum shall survive the termination of this Agreement.



**SCOPE OF WORK**

### Addendum

**1.       Confidential Information**

Neither party hereto shall disclose to a third party Confidential Information (as defined below) of the other party.  The receiving party shall use the same degree of care as it uses to protect the confidentiality of its own confidential information of like nature, but no less than a reasonable degree of care, to maintain in confidence the Confidential Information of the disclosing party.  The foregoing obligations shall not apply to any information that (a) is required to be disclosed by law, subpoena or other process, (b) is disclosed to Wasserman or any subcontractor of Wasserman in connection with its performance of the Project Services; provided, that, such entity or subcontractor has agreed to be bound by confidentiality provisions at least as restrictive as those set forth herein, or (c) is required to be disclosed in connection with any dispute, claim or action between the parties.  "Confidential Information" means information related to the subject matter of a Scope of Work and any of the projects thereunder (including any third-party information), and the business of the disclosing party, which (i) derives economic value, actual or potential, from not being generally known to or readily ascertainable by other persons who can obtain economic value from the disclosure or use of the information, (ii) is the subject of efforts by the disclosing party or owner of the third-party Confidential Information that are reasonable under the circumstances to maintain the secrecy of the information, (iii) is identified by either party as "Confidential" and/or "Proprietary", or (iv) which, under all circumstances, ought reasonably to be treated as confidential and/or proprietary, including this Agreement.  Confidential Information shall not include any information that (1) is at the time of disclosure, or thereafter becomes, through a source other than the receiving party, publicly known, (2) is subsequently learned from a third party that does not impose an obligation of confidentiality on the receiving party, (3) was known to the receiving party at the time of disclosure, or (4) is developed independently by the receiving party.  The obligations of confidentiality hereunder with respect to any Confidential Information shall continue for a period of one (1) year from the date of the last disclosure of Confidential Information under this Agreement.

**2.       Indemnification; Liability**

(a)       <u>Indemnification by Client</u>. Client and its affiliates shall indemnify and hold harmless Wasserman, its members, officers, directors, employees, agents, representatives, successors and assigns (collectively, the "Wasserman Indemnitees") from and against any expense, claim, loss or damage (including court costs and reasonable attorney's fees) ("Losses") suffered or incurred by any Wasserman Indemnitees in connection with any third-party claims against Wasserman Indemnitees arising from:  (i)  bodily injury to persons or physical damage to tangible personal or real property (excluding software, hardware and data) for which Client is legally liable to that third party, except to the extent caused by the negligence or intentional misconduct of Wasserman Indemnitees; (ii) Client's violation of any law, ordinance, rule, regulation or order applicable to Client; (iii) fraud committed by, or the intentional misconduct or gross negligence of, Client; (iv) alleged infringement of any third party's rights by Client or its affiliates, and (v) a breach by Client of Section 1 of this Addendum.

(b)       <u>Indemnification by Wasserman</u>.  Wasserman shall indemnify and hold harmless Client, and its officers, members, directors, employees, agents, representatives, successors and assigns (collectively, the "<u>Client Indemnitees</u>") from and against any Losses suffered or incurred by the Client Indemnitees in connection with any third-party claims against Client Indemnitees, arising from:  (i) bodily injury to persons or physical damage to tangible personal property or real property (excluding hardware, software and data) for which Wasserman is legally liable to that third party, except to the extent caused by the negligence or intentional misconduct of Client Indemnitees; (ii) Wasserman's violation of any applicable laws, ordinances, rules and regulations pertaining to or affecting the Project Services or this Agreement which apply to Wasserman's performance of Project Services hereunder, excluding laws, ordinances, rules, regulations or orders issued by any public authority as such relate specifically to Client's industry or operation of its business;
(iii) Wasserman's use in performing and/or providing the Project Services of third-party products, services or license rights, to the extent due to Wasserman's breach of its agreement with such third parties for such products, services or license rights; (iv)  fraud committed by, or the intentional misconduct or gross negligence of, Wasserman; and (v) a breach by Wasserman of Section 1 of this Addendum.

(d)       <u>Limitation of Liability</u> .  To the fullest extent permitted by applicable law, the total aggregate liability of either party under this Agreement or with respect to the Project Services, and regardless of the form of action (including, but not limited to, breach of contract, tort, strict liability, breach of warranties, failure of essential services or otherwise, <u>but excluding</u> all liability for fees, including all retainer fees, expenses and interest accrued thereon owed to Wasserman by Client), will not exceed an amount equal to the total fees paid to Wasserman (and not refunded to Client) under this Agreement during the twelve (12) month period immediately preceding the event giving rise to the claim.



## SCOPE OF WORK

(e)     **Certain Damages**.  In no event will Wasserman be liable for consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages.

Notwithstanding anything in this Section, the caps on the amount of liability and the limitations on type of damages described herein shall not apply to either party's third-party indemnity obligations under this Section 2.

3.     **Deliverables**

Upon full payment of any amount attributable to a Deliverable (as below defined) as set forth in the Scope of Work, Wasserman hereby assigns to Client any and all rights, title and interest, including, without limitation, copyrights, trade secrets and proprietary rights, to the materials created by Wasserman specifically for Client hereunder and required to be delivered to Client by virtue of their description or specification as a deliverable in the Scope of Work (the "Deliverables "). The Deliverables shall be deemed to be "works made for hire" under the federal copyright laws.  However, the Deliverables may contain pre-existing works of Wasserman that are of a non-project-specific nature and generally applicable to Wasserman's business (collectively, "Pre-existing Works"), and Wasserman retains exclusive ownership rights thereto.  To the extent that any such Pre-existing Works are integrated into any Deliverables, Wasserman hereby grants to Client a perpetual, worldwide, non-exclusive, paid-up, limited license to use, copy and modify such Pre-existing Works as integrated into such Deliverables for the operation of its business in the ordinary course.  Notwithstanding anything to the contrary contained herein, Wasserman retains all rights to its general ideas, concepts, methodologies, processes, techniques, knowledge, experience and know-how acquired prior to or in the course of performing the Project Services.

4.     **Other Provisions**

(a)     **Entire Agreement**.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersede any and all prior or contemporaneous written or oral communications between the parties, including without limitation any cover letter or other communication delivered contemporaneously to Client with this Agreement. Except as expressly set forth herein, no other prior or contemporaneous covenants, promises, representations or warranties of any kind, whether written or oral, have been made or can be relied on by either party as an inducement to enter into this Agreement.

(b)     **Interest on Payments**.  If any amount is not paid by Client within thirty (30) days after it becomes due pursuant to Section III of the Scope of Work, Client shall also pay Wasserman interest on that amount for the period from its due date until it is paid in full.  That interest shall be calculated at a rate equal to twelve percent (12%) per annum (or the maximum rate permitted by applicable law, if lower), and shall be payable on demand.

(c)     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without reference to its choice or conflict of law principles.

(d)     **No Waiver; Amendments**.  No waiver or failure to exercise any option, right or privilege under the terms of this Agreement by either of the parties hereto on any occasion or occasions shall be construed to be a waiver of the same on any other occasion or of any other option, right or privilege.  This Agreement shall not be amended or otherwise modified, except by a later written agreement that expressly states that it is an amendment or modification and that is signed by both parties.

(e)     **No Special Relationship; Personnel**.  The relationship of Wasserman and any of its agents providing services to Client shall be that of independent contractors and those providing services under this Agreement will not be considered employees of Client. They will not be eligible for any employee benefits, nor will Client make deductions from payments made to Wasserman for any taxes or other withholding obligations, which shall be Wasserman's responsibility.  Wasserman may perform the Project Services with personnel of Wasserman or any of its affiliates or with their respective subcontractors.

(f)     **Notices**.  All notices, requests and other communication called for by this Agreement shall be deemed to have been given if made in writing and mailed, postage prepaid, if (i) to Oliver Luck, CEO & Commissioner, XFL, 1241 East Main Street, Stamford, CT 06902; or (ii) if to Wasserman at 10900 Wilshire Blvd, Suite 1200, Los Angeles, CA  90024, Attention: Alanna Hernandez, or to such other addresses as either party shall specify to the other.

(g)     **Assignment**.  Neither Client nor Wasserman shall assign any of its rights or obligations hereunder without the prior written consent of the other party; provided, however, that Wasserman may assign this Agreement to a related entity or the surviving entity in a merger or consolidation in which it participates or to a purchaser of all or substantially all of its assets upon providing Client written assurance that the Project Services would continue to be provided in the same manner as provided prior to this assignment.

ALPHA_LUCK_00068511



**SCOPE OF WORK**

(h)     <u>Dispute Resolution</u>.  The parties will attempt in good faith to resolve any controversy or claim arising out of or relating to this Agreement or the Services through discussions between Wasserman's and Client's respective executives responsible for providing and accepting the Project Services.  If these discussions are unsuccessful, and the parties cannot resolve the dispute informally as provided above, any unresolved dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Los Angeles, California before a tribunal of one arbitrator. The arbitrator shall not be empowered to award to a party any damages expressly limited under Section 2 of this Addendum.  The arbitration shall be conducted pursuant to the JAMS Comprehensive Arbitration Rules.  Judgment on the award of the arbitrator may be entered and enforced in any court having jurisdiction over the parties hereto.  The language to be used in the arbitral proceeding shall be English.  If an arbitration action is pending on any claims between the parties, any claim which could be brought as a counterclaim must be brought in such pending action, if at all.

(i)     <u>Counterparts; Signatures</u>.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original.  Any signature delivered via facsimile or other electronic means shall be deemed an original signature hereto.

(j)     <u>Warranties</u>.  EXCEPT AS OTHERWISE STATED IN THIS AGREEMENT, WASSERMAN MAKES NO WARRANTIES OF ANY KIND OR NATURE REGARDING THE SERVICES AND DELIVERABLES, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, OR WARRANTIES OF ANY PRODUCTS OR SERVICES, WARRANTIES OF NON-INFRINGEMENT, OR THE APPROPRIATENESS OF CLIENT OR THIRD-PARTY SPECIFICATIONS.

Any valuations of assets provided by Wasserman HEREUNDER are estimates that may be based upon a number of factors, including without limitation, historical data, Wasserman's proprietary models, its employees' opinions and assumptions, and publicly available information (all of which are subject to change without notice).  There may be certain factors that have not been assessed for the purposes of these valuations that may substantially affect a stated valuation. While Wasserman formulates these estimated valuations using information and sources that it believes to be reliable, Wasserman makes no representations or warranties with respect to any indicative and/or estimated valuations.

(k)     <u>Insurance</u>.  Each party shall maintain at its own expense the following insurance policies:  (a) commercial general liability, including coverage for (i) property damage and personal injury, and (ii) contractual liability; in each case with limits of not less than an $1,000,000 per occurrence and an aggregate liability limit of not less than $2,000,000.00; (b) media content and/or advertising liability coverage with an aggregate liability limit of not less than $2,000,000; and (c) worker's compensation and employer's liability in at least the amounts required by the laws applicable to Client.  In each case, umbrella coverage may be included as part of the aggregate insurance limits specified herein.  Each party shall name the other party as an additional insured on the policies identified above (excluding Worker's Compensation), and shall, at the request of the other praty, provide it with an insurance certificate confirming compliance with the requirements of this Section.

(l)     <u>Representations</u>.  Each undersigned party hereby represents and warrants to the other that (i) the execution and delivery of this Agreement and the transactions contemplated herein are within the such party's powers and have been duly authorized by all necessary company action; (ii) it has obtained all requisite consents, approvals or other assurances necessary for it to execute, deliver and perform this Agreement; and (iii) this Agreement has been duly and validly executed and delivered by the such party and constitutes the legal, valid and binding agreement of the representing party, enforceable against such party in accordance with its terms.

AGREED AND ACCEPTED BY:            AGREED AND ACCEPTED BY:

**Wasserman Media Group, LLC**            **XFL**

_____            _____

# SCOPE OF WORK

By:

Its:

Date:

By:

Its:

Date:

ALPHA_LUCK_00068513