**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK, | : | CASE NO. 3:20-cv-00516-VAB |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON and ALPHA | : | |
| ENTERTAINMENT LLC, | : | |
| | : | |
| Defendants. | : | APRIL 29, 2021 |

## **COUNTERCLAIMANT ALPHA ENTERTAINMENT LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S AFFIRMATIVE DEFENSES**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................. 2

    I.    Luck's Notice and Cure Defense Is Legally Insufficient........................................ 2

    II.    Luck's Breach and Repudiation Defenses Are Legally Insufficient ...................... 3

        A.    Luck's Breach and Repudiation Defenses Fail Because Alpha's Alleged Conduct Did Not Precede Luck's Breaches of Contract and Fiduciary Duties................................................................................... 3

        A.    Luck's Breach of the Implied Covenant of Good Faith and Fair Dealing Defenses Fails for Additional Reasons. ........................................ 5

        B.    Luck's Rejection Defense Based on Alpha's Bankruptcy Filing Fails for Additional Reasons .................................................................. 6

    III.    Luck's Ratification, Waiver, and Estoppel Defenses Are Legally Insufficient ................................................................................................................ 6

        A.    Luck Cannot Allege that Alpha Had Full Knowledge of All Material Facts ............................................................................................................ 6

        B.    Luck's Waiver and Estoppel Defenses Are Barred By the Non-Waiver Clause ................................................................................................ 9

    IV.    Luck's Setoff and Recoupment Defenses Are Legally Insufficient. .................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc.*,
   No. 04085023532S, 2010 WL 2817222 (Conn. Super. Ct. May 11, 2010) ..............................9

*Board of Education v. Nyquist*,
   590 F.2d 1241 (2d Cir. 1979)..................................................................................................2

*Casper v. Combustion Engineering, Inc.*,
   No. CV 97-0570516S, 1998 WL 389215 (Conn. Super. Ct. June 23, 1998)...........................5

*Hypergraphics Press, Inc. v. Cengage Learning, Inc.*,
   No. 08 C 5102, 2009 WL 972823 (N.D. Ill. Apr. 8, 2009).........................................................3

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
   679 F. Supp. 2d 395 (S.D.N.Y. 2009).....................................................................................3

*Index Fund, Inc. v. Hagopian*,
   107 F.R.D. 95 (S.D.N.Y. 1985) ..........................................................................................4, 6

*R.S. Silver Enterprises Co. v. Pascarella*,
   No. FSTCV065002499S, 2010 WL 3259869 (Conn. Super. Ct. July 14, 2010)......................9

**INTRODUCTION**

Rather than focusing on whether Luck's actions breached the Employment Contract and constituted Cause for his termination, Luck's opposition continues his diversionary attack on Alpha's lead counsel consistent with his desire to make Attorney McDevitt a witness and deprive Defendants of counsel of their choice. Despite Luck's recent denial to the Court that his intention was to disqualify Attorney McDevitt (ECF No. 175 at 4), his counsel's subsequent actions are once again inconsistent with those representations.

- Luck first moved to amend his complaint to assert baseless allegations that Alpha engaged in "bad faith" by seeking legal advice from Attorney McDevitt in connection with Luck's termination and sought to compel production of Alpha's privileged communications with Attorney McDevitt. (ECF No. 161-2 ¶¶ 1-2, 13, 25; ECF No. 158 at 16-21.)

- Luck then opposed Alpha's motion to strike his bad faith and other affirmative defenses by relying on Attorney McDevitt's declaration submitted in support of Alpha's privilege claims and by accusing him of conducting a "sham investigation" with a predetermined outcome. (ECF No. 177 at 6, 14-15, 19.)

- After telling the Court that he did not wish to disqualify opposing counsel by his improper attempts to cast him into the role of witness, Luck actually amended his initial disclosures to expressly name Attorney McDevitt as a witness and claim that he "has knowledge of Defendant's bad faith and wrongful termination of Mr. Luck." (Ex. 1 at 3.)

Such gamesmanship can only be intended to attempt to disqualify Attorney McDevitt by making him a witness on Luck's bogus bad faith claims and defenses. Luck's bad faith claims and defenses should be dismissed because the resolution of this case depends solely on an objective determination of whether there were circumstances constituting cause under Luck's Employment Contract. If there were circumstances constituting cause, Alpha had the express contractual right to terminate Luck for cause under the Employment Contract, Luck cannot recover any post-termination monies, and he cannot prevail on his bad faith claims and defenses. Dismissal of Luck's inadequate bad faith claims and defenses also effectively will end the gamesmanship associated with characterizing lead defense counsel as a witness and permit the case to proceed on

the merits of the evidence regarding Luck's acts and omissions. If this Court permits such legally insufficient claims and defenses to proceed, the gamesmanship will continue and Attorney McDevitt may be required to testify to refute Luck's baseless and irrelevant allegations of bad faith, which raises disqualification issues and interferes with Defendants' choice of counsel. Accordingly, this Court should dismiss Luck's bad faith claims and defenses now and put a halt to Luck's improper attempt to turn Attorney McDevitt into a witness and deprive Alpha of counsel of its choice. *See Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (stating that the reluctance to disqualify counsel "derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons").

Luck's opposition also confirms that there is no legal basis for any of his affirmative defenses. Luck's opposition largely ignores the fatal deficiencies in his affirmative defenses identified in Alpha's motion to strike and instead improperly relies on materials outside of the pleadings in a vain attempt to save them from dismissal. Because all of Luck's affirmative defenses are legally insufficient, they should be stricken with prejudice now.

## ARGUMENT

### I.   Luck's Notice and Cure Defense Is Legally Insufficient

Luck's notice and cure defense is legally insufficient because notice and an opportunity to cure are not conditions precedent to seeking damages for breach of contract. (ECF No. 171-1 at 9-10.) Luck's argument in his opposition that notice and an opportunity to cure are conditions precedent to *termination* of the Employment Contract is both incorrect and irrelevant to Alpha's counterclaims. (ECF No. 177 at 16-18.) Luck's argument is incorrect because the Employment Contract expressly states that notice and an opportunity to cure are not required before termination of the contract for cause if Luck's actions and omissions constituting cause are not "reasonably

susceptible to cure."[1]  (ECF No. 145-1 at 3.)  Luck's argument is also irrelevant to Alpha's counterclaims because the Employment Contract does not require notice or an opportunity to cure before asserting a breach of contract or breach of fiduciary duty claim for damages.  *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 403 (S.D.N.Y. 2009) (holding that a provision requiring notice and cure prior to termination did not "constitute a condition precedent to a party's right to sue" for damages); *Hypergraphics Press, Inc. v. Cengage Learning, Inc.*, No. 08 C 5102, 2009 WL 972823, at *3 (N.D. Ill. Apr. 8, 2009) ("[I]n order for notice and opportunity to cure to be a condition precedent to filing suit on the claim, the contract must so state.").  Indeed, Luck admits that "Alpha can sue for breach of contract without providing an opportunity to cure."  (ECF No. 177 at 17.)  Accordingly, Luck's notice and cure defense must be stricken.

## II.     Luck's Breach and Repudiation Defenses Are Legally Insufficient

### A.     Luck's Breach and Repudiation Defenses Fail Because Alpha's Alleged Conduct Did Not Precede Luck's Breaches of Contract and Fiduciary Duties.

Luck's breach and repudiation, breach of the implied covenant of good faith, and breach and rejection defenses are legally insufficient because Alpha's alleged conduct did not precede Luck's breaches of contract and breaches of fiduciary duties and therefore cannot excuse his prior breaches.  (ECF No. 171- at 10-11.)  Luck's opposition does not dispute Alpha's cited authority holding that a material breach defense cannot excuse a party's *prior* breaches and confirms that Luck does not allege that Alpha breached any obligation *before* his own breaches.

---

[1] Luck's opposition continues to falsely assert that "it is undisputed that Defendants did not give Mr. Luck any notice or any opportunity to cure."  (ECF No. 177 at 13.)  Defendants *did* provide Luck with notice and an opportunity to cure his violations of XFL policies and directives with respect to Antonio Callaway and Luck failed to do so.  Luck also does not explain how he could have cured such violations because Callaway was injured in practice after Luck failed to terminate him—irreversibly obligating Alpha to honor Callaway's contract and to pay his workers' compensation benefits.

Luck instead seeks to avoid dismissal of these defenses by arguing that none of his misconduct alleged in Alpha's counterclaims actually constituted a breach of the Employment Contract.[2] But Luck's arguments regarding the *merits* of Alpha's counterclaims are irrelevant to the legal sufficiency of his affirmative defenses.[3] As Luck admits, "[a]n affirmative defense is defined as a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, ***even if all allegations in the complaint are true***." (ECF No. 177 at 2 (emphasis added) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003).) Luck therefore must plead facts to show that Alpha cannot prevail on its counterclaims even if he breached the Employment Contract in order to assert a legally sufficient affirmative defense. Because Luck's affirmative defenses fail to allege any such facts, they must be stricken.

Nor can Luck avoid dismissal of his defenses by arguing that Alpha failed to provide him with notice and an opportunity to cure his breaches. As discussed above, the Employment Contract did not require Alpha to provide Luck with notice or an opportunity to cure before asserting its counterclaims. And even if the Employment Contract had imposed such an obligation, Alpha obviously could not provide Luck with notice and an opportunity to cure a breach of the Employment Contract until after the breach occurs. Because any alleged failure by Alpha to provide notice and cure by definition must have occurred *after* Luck breached the contract, it cannot excuse Luck's *prior* breaches as a matter of law.

---

[2] Luck's arguments improperly rely on allegations that are not pled in his answer or his affirmative defenses and therefore must be disregarded on a motion to strike. *See Index Fund, Inc. v. Hagopian*, 107 F.R.D. 95, 100 (S.D.N.Y. 1985) ("In deciding a motion to strike, a court will not consider matters outside the pleadings.").

[3] Luck's arguments continue to distort the language of the Employment Contract. For example, Luck continues to argue that his conduct did not breach the contract or constitute cause for termination because it did not involve "willful" or "material" misconduct. (ECF No. 172 at 3-5.) But the Employment Contract provides that "an intentional failure to follow any applicable XFL policies or directives" constitutes cause for termination without any requirement of willfulness or materiality. (ECF No. 145-1 at 3.) As Alpha has previously detailed, the evidence of Luck's repeated violations of multiple XFL policies and directives is overwhelming and largely undisputed. (ECF No. 172 at 2-9.)

-4-

### B. Luck's Breach of the Implied Covenant of Good Faith and Fair Dealing Defenses Fails for Additional Reasons.

Luck's breach of the implied covenant of good faith defense also must be stricken because it improperly seeks to achieve a result contrary to the express terms of the Employment Contract. (ECF No. 171-1 at 11-13.) Luck argues in his opposition that Alpha had "improper motives" for his termination because it did not provide Luck with notice and an opportunity to cure his violations before terminating him for cause and because Alpha's counsel conducted a "sham investigation" with a predetermined outcome. (ECF No. 177 at 12-15.) But as Alpha has repeatedly explained, an implied covenant of good faith claim or defense based on a party's alleged motives for termination is legally insufficient where a party exercises an express contractual right to terminate a contract for cause. (ECF No. 151 at 10-12; ECF No. 172 at 27-29.) Accordingly, Luck cannot prevail on a good faith claim or defense if there were circumstances constituting cause for his termination under the Employment Contract.

Luck attempts to argue that he could still maintain a good faith claim or defense even if Alpha complied with the contract by relying on the following *dicta* from *Casper v. Combustion Engineering, Inc.*, No. CV 97-0570516S, 1998 WL 389215 (Conn. Super. Ct. June 23, 1998):

> For example, if an employer agreed that an employee could be terminated if he did not have an average or better evaluation on the anniversary of his hire date and the employer's supervisor purposely refrained from evaluating the employee (leaving him without an average or better evaluation), then the employer would not violate the terms of the employment contract if it fired the employee, but its actions would violate the covenant of good faith and fair dealing.

*Id.* at *8. But Luck's reliance on *Casper* is misplaced because he alleges no similar conduct here. Alpha's termination of Luck resulted from Luck's own misconduct constituting cause under the express provisions of the Employment Contract—not from Alpha preventing Luck from completing any prerequisites to continued employment.

### C. Luck's Rejection Defense Based on Alpha's Bankruptcy Filing Fails for Additional Reasons

Luck's rejection defense also fails because the Employment Contract had already been terminated prior to Alpha's bankruptcy filing. (ECF No. 171-2 at 13.) The Employment Contract could be terminated "at any time, with or without Cause." (ECF No. 145-1 at 3.) Although Luck argues that the Employment Contract was not properly terminated for cause, he admits that the Employment Contract was terminated on April 9, 2020—prior to the filing of Alpha's bankruptcy petition on April 13, 2020. (ECF No. 166 ¶ 14.) Accordingly, Luck cannot allege that Alpha rejected the Employment Contract in its bankruptcy proceedings.

## III. Luck's Ratification, Waiver, and Estoppel Defenses Are Legally Insufficient

### A. Luck Cannot Allege that Alpha Had Full Knowledge of All Material Facts

Luck's ratification, waiver, and estoppel defenses fail because he has not alleged—and cannot allege—that Alpha had full knowledge of all material facts relating to his misconduct. (ECF No. 171-1 at 14-18.) Luck does not dispute Alpha's cited authorities holding that he must plead, among other things, that Alpha had full knowledge of all material facts in order to assert these defenses. Luck instead relies on speculation and unpled allegations in a futile and improper attempt to meet his burden. (ECF No. 177 at 19-21.) Luck's arguments fail at the outset because they improperly rely on materials outside of the pleadings. *See Index Fund, Inc. v. Hagopian*, 107 F.R.D. 95, 100 (S.D.N.Y. 1985) ("In deciding a motion to strike, a court will not consider matters outside the pleadings."). But even if Luck had pled such allegations, they are insufficient to show that Alpha had full knowledge of all material facts relating to Luck's misconduct.

***Luck's Improper Hiring of Antonio Callaway and Failure to Immediately Terminate Him.*** Luck improperly speculates that Alpha knew all material facts concerning Luck's failure to follow XFL policies and directives with respect to Antonio Callaway by the end of January 2020

-6-

based on statements made in Attorney McDevitt's declaration. (ECF No. 177 at 19 (citing ECF No. 172-6 ¶ 7).) Attorney McDevitt's declaration merely states that certain Alpha emails were privileged because they involved requests for information relating to the Callaway matter that were necessary in order to provide legal advice. (ECF No. 172-6 ¶¶ 6-7.) Attorney McDevitt's declaration does *not* state what information was actually requested or provided to him at that time—much less that Alpha or McMahon knew all material facts concerning Luck's misconduct with respect to Callaway by the end of January 2020. Luck's claim to the contrary is based on nothing more than rank speculation and contradicted by recent admissions that Luck withheld information regarding the impact of his breach from McMahon.[4] (*See* ECF No. 175-1 at 1.)

***Luck's Violation of XFL Technology and Confidentiality Policies.*** Luck cannot argue that Alpha had full knowledge of all material facts regarding Luck's admittedly repeated and routine violations of the XFL's technology policies by making the piddling point that Luck and McMahon shared two text messages that he characterizes as "personal" in nature. (ECF No. 177 at 20, Exs. B-C.) Even assuming that these two text messages were personal, they do not show that Alpha knew all material facts relating to Luck's repeated violations of the XFL's technology policies. For example, Alpha alleges—and Luck admits—that he "regularly and routinely used the iPhone" issued by Alpha for non-XFL purposes, including to conduct business for other entities.[5] (ECF No. 153 ¶ 60; ECF No. 166 ¶ 60.) Alpha further alleges that Luck's conduct

---

[4] In addition to distorting Attorney McDevitt's declaration in support of Alpha's privilege claims, Luck also grossly mischaracterizes McMahon's declaration in support of Alpha's prejudgment remedy application by falsely claiming that McMahon admitted that Luck's actions relating to Callaway "were not reason to terminate Luck." (ECF No. 177 at 5.) In reality, McMahon's declaration stated precisely the opposite—that Luck's actions relating to Callaway provided grounds to terminate Luck but that McMahon "did not want the negative publicity which would result had [he] terminated [Luck's] contract at the same time our inaugural season was about to begin." (ECF 128-1 ¶ 25.)

[5] Luck's position regarding the XFL's technology policies continues to change (i) from first agreeing to stipulate that he regularly and routinely used his Alpha-issued iPhone in violation of those policies, (ii) to then claiming that the policies did not apply to him, (iii) to most recently arguing in his opposition that the policies provided him with discretion to use the phone for personal reasons. (ECF No. 177 at 6.) Luck's most recent argument ignores the policy's prohibition on use of XFL Technology for non-XFL purposes and his own admission that he repeatedly used

contributed to "his failure to devote substantially all of his business time to the XFL." (ECF No. 153 ¶ 74.) Two allegedly personal text exchanges with McMahon therefore do not show that Alpha or McMahon had full knowledge of Luck's repeated and pervasive violations of the XFL's technology polices or that Alpha or McMahon had *any* knowledge that Luck used his Alpha-issued iPhone to conduct business for other entities in violation of those policies. Indeed, this Court is well aware of Luck's extensive efforts to prevent Defendants from even accessing the contents of the phone to fully learn the nature and extent of his violations.

Luck also incorrectly argues that Alpha had full knowledge of Luck's disclosure of XFL confidential materials to William Wilson and other employees of the Wasserman Media Group ("Wasserman") by citing a supposed written agreement with Wasserman to evaluate a possible XFL team and venue in Mexico City. (ECF No. 177 at 8, Ex. A.) Luck does not that allege that he disclosed no other confidential information to Wilson and Wasserman. Nor does Luck allege that McMahon had full knowledge of the nature and extent of the confidential and privileged XFL information disclosed by Luck that is not mentioned in his brief. (*See* ECF No. 153 ¶¶ 90-94 (alleging that Luck repeatedly disclosed a broad range of confidential and privileged information to third parties without McMahon's written consent).)

***Luck's Abandonment of His Duties After March 13, 2020.*** Luck improperly speculates that Alpha must have known all of the facts about Luck's abandonment of his duties in March 2020 because Attorney McDevitt conducted an investigation into Luck's misconduct after the XFL's season was cancelled. (ECF No. 177 at 21.) But Luck was terminated *mere weeks* after he abandoned his duties starting on March 13. (ECF No. 145-2.) That defeats—rather than

---

his Alpha-issued iPhone to send emails and text messages unrelated to the XFL and to conduct business for other entities. (ECF No. 153 ¶¶ 55, 60; ECF No. 166 ¶¶ 55, 60.)

supports—Luck's ratification, waiver, and estoppel defenses. Indeed, Luck does not cite any case permitting such defenses where an employer exercises its contractual termination rights in such prompt fashion.

### B. Luck's Waiver and Estoppel Defenses Are Barred By the Non-Waiver Clause

Luck's waiver and estoppel defenses are also barred by the Employment Contract's non-waiver clause. (ECF No. 171-1 at 16-17.) Luck does not allege the existence of any signed writing waiving Alpha's rights under the Employment Contract. Luck instead argues that the non-waiver clause is inapplicable because it does not specifically state that Alpha's alleged delay in enforcing its rights under the contract is not a waiver. (ECF No. 177 at 21.) But the Employment Contract makes clear that *nothing* is a waiver—including a delay in enforcing contractual rights—absent a signed writing by both parties. (ECF No. 145-1 at 5 ("This Contract may not be amended, waived or otherwise modified except by a writing signed by both Alpha and Mr. Luck.").) Connecticut courts have held that similarly worded non-waiver clauses bar waiver and estoppel defenses. *See R.S. Silver Enters. Co. v. Pascarella*, No. FSTCV065002499S, 2010 WL 3259869, at *22 (Conn. Super. Ct. July 14, 2010) (holding that non-waiver clause stating "[t]his Participation Agreement may not be changed, amended, or waived, except in writing signed by the parties hereto" was "enforceable against defendants and bars both the waiver and estoppel special defenses in the absence of any evidence of a written waiver signed by the plaintiff"); *Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Conn., Inc.*, No. 04085023532S, 2010 WL 2817222, at *11 (Conn. Super. Ct. May 11, 2010) (rejecting waiver claim based on non-waiver clause stating "[t]his Agreement may not be amended, or any provision waived, except by an instrument in writing signed on behalf of each of the parties" where party "presented no evidence of such a writing signed by the parties").

## IV. Luck's Setoff and Recoupment Defenses Are Legally Insufficient.

As Alpha argued in its motion to strike, Luck is not entitled to a setoff or recoupment if Alpha prevails on its counterclaims. (ECF No. 171-1 at 18.) Luck argues in his opposition that "it is theoretically possible for Alpha to prevail on its counterclaims and for Luck to prevail on his breach of the implied duty of good faith claim." *Id.* at 23 (citing *Casper*, 1998 WL 389215, at \*8) But Luck does not explain *how* it is possible for him to prevail on his implied covenant of good faith claim if cause existed to terminate him. An employee cannot prevail on an implied covenant of good faith claim where an employer exercises an express contractual right to terminate an employee for cause, and an employee's allegations concerning the employer's motives for termination are legally irrelevant. (ECF No. 151 at 10-12; ECF No. 172 at 27-29.)

Luck's setoff defense fails for the additional reason that he cannot allege that Alpha owes him any debt. (ECF No. 177-1 at 19-20.) Luck does not dispute Alpha's cited authority holding that his setoff defense requires a showing that Alpha owes him a debt. Nor does Luck dispute that he failed to timely file a claim in bankruptcy and that Alpha owes him no debt. Indeed, Luck stipulated that he sought no money judgment from Alpha to obtain relief from the stay. (ECF No. 90 at 2.) Luck instead argues that Alpha agreed that Luck could "assert" a setoff defense that does not seek any recovery from Alpha. (ECF No. 177 at 24.) But Alpha's agreement that Luck could *assert* a setoff defense does not constitute an agreement that any such defense had merit. Connecticut law is clear that a setoff defense requires that a showing that a debt is due and owing—a requirement that cannot be met here. (ECF No. 177-1 at 19.) Accordingly, Luck's setoff defense must be stricken.

                    DEFENDANTS VINCENT K. MCMAHON
                    and ALPHA ENTERTAINMENT LLC

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt
Curtis B. Krasik
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that, on April 29, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                    */s/ Jeffrey P. Mueller*
                    Jeffrey P. Mueller (ct27870)