**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK, | : | CASE NO. 3:20-cv-00516-VAB |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON and ALPHA | : | |
| ENTERTAINMENT LLC, | : | |
| | : | MAY 28, 2021 |
| Defendant. | : | |

**DEFENDANT ALPHA ENTERTAINMENT LLC'S**
**MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL 30(B)(6) DEPOSITION**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND ................................................................................6

    A.    Defendants Complete Their Massive Production of Documents............................6

    B.    The Parties Establish a Deposition Schedule...........................................7

    C.    Luck's Texas Counsel Escalates His Abusive and Harassing Discovery Tactics .........................................................................................9

          1.    Luck Notices the Rule 30(b)(6) Deposition of Alpha................................9

          2.    Luck Serves A Subpoena on WWE...............................................10

          3.    Luck Announces His Intention to Depose Defendants' Lead Trial Counsel ...............................................................................12

          4.    Luck Files This Motion to Compel...............................................12

III.   ARGUMENT ................................................................................13

    A.    Standard of Review......................................................................13

    B.    McMahon and the Former-Alpha Employees Who Were Deposed By Luck's Counsel Provided Testimony on the Appropriate Topics of the Rule 30(b)(6) Notice ................................................................15

    C.    No Additional Corporate Testimony of Alpha Is Warranted on the Remaining Topics of the Rule 30(b)(6) Notice .....................................19

          1.    Topics Seeking Alpha's Legal Contentions...............................20

          2.    Topics Seeking Information Protected By the Attorney-Client Privilege and/or Work Product Doctrine ...................................23

          3.    Topics that Are Duplicative of Prior Discovery in the Case ....................24

          4.    Topics Regarding Facts that Are Irrelevant to Any Issue In Dispute .................................................................................300

CONCLUSION................................................................................322

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dominion Res. Services, Inc. v. Alstom Power, Inc.*,
No. 3:16CV00544(JCH), 2017 WL 3228120 (D. Conn. July 31, 2017) ................................12

*Dongguk Univ. v. Yale Univ.*,
270 F.R.D. 70 (D. Conn. 2010)...........................................................................14, 17, 25, 30

*FDIC v. Wachovia Ins. Servs., Inc.*,
No. 3:05CV929 CFD, 2007 WL 2460685 (D. Conn. Aug. 27, 2007)............................ *passim*

*Fed. Hous. Fin. Agency for Fed. Nat'l Morg. Ass'n v. Royal Bank of Scotland*
*Grp. PLC*,
No. 3:11-CV-1383(AWT), 2015 WL 13634404 (D. Conn. Aug. 20, 2015) ..........................14

*Goldstein v. FDIC*,
No. ELH-11-1604, 2013 WL 8446551 (D. Md. May 23, 2013).............................................18

*Gov't Emps. Ins. Co. v. Lenex Servs., Inc.*,
No. 16 CV 6030 (CLP), 2018 WL 1368024 (E.D.N.Y. Mar. 16, 2018) ..........................20, 31

*Krasney v. Nationwide Mut. Ins. Co.*,
No. 3:06 CV 1164(JBA), 2007 WL 4365677 (D. Conn. Dec. 11, 2007) ..................18, 20, 22

*SEC v. Ahmed*,
No. 3:15cv675(JBA), 2017 WL 1347668 (D. Conn. Apr. 7, 2017) ............................... *passim*

*SEC v. McGinnis*,
No. 5:14-cv-6, 2015 WL 13505396 (D. Vt. Jan. 13, 2015).........................................13, 20, 22

*SEC v. Morelli*,
143 F.R.D. 42 (S.D.N.Y. 1992) ..............................................................................12, 20, 22

*SEC v. Rosenfeld*,
No. 97 CIV 1467 (RPP), 1997 WL 576021 (S.D.N.Y. Sept. 16, 1997).................................24

*Wells Fargo Bank, N.A. Tr. v. Konover*,
No. 3:05CV1924(CFD)(WIG), 2008 WL 11377691 (D. Conn. July 10, 2008).....................31

**Other Authorities**

D. Conn. L. Civ. R. 83.13(b) ..................................................................................................12

Fed. R. Civ. P. 30(b)(6).................................................................................................. *passim*

## I.       INTRODUCTION

Plaintiff Oliver Luck's ("Luck") Motion to Compel the Rule 30(b)(6) deposition of Defendant Alpha Entertainment LLC ("Alpha") is part of his escalating pattern of abusive and harassing discovery tactics directed toward Defendants.  Luck filed his Motion to Compel a Rule 30(b)(6) deposition of Alpha—and even sought expedited consideration of the Motion—***only one day*** after serving the notice and on the eve of the individual depositions of Vince McMahon ("McMahon") and three former executives of Alpha that Luck knew would demonstrate, and now have demonstrated, that the notice is entirely duplicative, unduly burdensome, and wholly disproportionate to the needs of this case.  Luck's Motion is emblematic of his apparent strategy to use abusive discovery to harass Defendants and create satellite litigation on non-merits based issues in an attempt to divert attention from both the overwhelming evidence in support of Luck's termination for cause.

After Defendants produced over a quarter million pages of documents at a cost of hundreds of thousands of dollars (which included far more than Luck's PST file that Luck's counsel represented to the Court would largely satisfy Defendants' production obligations), and the parties established a deposition schedule pursuant to which Defendants agreed to produce McMahon as well as the former-Alpha executives Luck requested to depose—Jeffrey Pollack, former President and Chief Operating Officer of the XFL, Basil DeVito, former Executive Director of Operations of the XFL, and Cindy Wagner, former Senior Director of People and Culture (i.e., human relations) of the XFL—without the need for subpoenas, Luck's counsel out-of-the-blue sent Defendants' counsel a proposed list of 34 broad topics for a Rule 30(b)(6) deposition of Alpha on April 22, 2021.  That same day, Luck also served a massive and wholly unnecessary subpoena on WWE, the company for which McMahon is Chairman and CEO.  Luck then escalated the

harassment of Defendants even further by announcing his intention to seek the deposition of Defendants' lead trial counsel, Jerry McDevitt, contrary to Luck's prior representation to the Court.  *See* ECF No. 175 at 4 ("Contrary to Defendants' suspicion, Plaintiff does not want to disqualify Defendants' counsel. . . .  Indeed, Plaintiff will stipulate that he will not move to disqualify opposing counsel.").  All of these maneuvers occurred during a time period when Luck's counsel had previously told Defendants' counsel that he was unavailable to schedule Luck's deposition supposedly due to commitments in other cases.

Luck's gamesmanship in suddenly demanding a Rule 30(b)(6) deposition of Alpha is evident from the fact that only one week earlier on April 13, 2021 Luck had identified the depositions he wanted to take (which actually exceeded the 10 depositions permitted under the Federal Rules) and ***did not*** include any Rule 30(b)(6) deposition of Alpha.  Indeed, Luck's counsel well knows this is not a typical situation for the use of a Rule 30(b)(6) deposition, *i.e.*, this is not a case involving corporate action where the plaintiff does not know who in the corporation was responsible for that action or a case involving claims against a large corporate defendant with many employees and the plaintiff does not know the individuals involved in the matters at issue.

To the contrary, Luck knows that Alpha is a bankrupt entity with no employees.  Luck also knows that the decisions regarding Luck's termination for cause were, and could only have been, made by McMahon, who was the only person to whom Luck reported.  Moreover, the depositions of McMahon and the other former-Alpha employees Luck wanted to depose had already been scheduled.  As a practical matter, the testimony of these witnesses along with the voluminous documents Defendants already produced in this case constitute the information presently known or reasonably available to Alpha.

Luck's gamesmanship regarding the purported demand for a Rule 30(b)(6) deposition of

Alpha is further demonstrated by the behavior of Luck's counsel in the parties' conference ostensibly to confer in good faith about the draft topics Luck's counsel had provided, as required by Rule 30(b)(6).  Despite this requirement, Luck's counsel categorically refused to engage with Defendants' counsel on the issues.  When Defendants' counsel attempted to discuss each of the draft topics, Luck's counsel dismissively responded "next" without engaging in any meaningful discussion and accused Defendants' counsel of "wasting everyone's time."  Unable to discuss any potential limitations or modifications of the draft topics, Defendants' counsel proposed that the reasonable and efficient way to proceed would be to first examine McMahon and the other former-executives of Alpha who were scheduled to be deposed, and then determine if any relevant issues remained on which Luck lacked discovery.  Those depositions have now been completed and, as Defendants predicted, the testimony of those witnesses addressed the relevant topics of the Rule 30(b)(6) notice not intruding on the attorney-client privilege or work product.

The entire premise of Luck's Motion to Compel is incorrect.  It is ***not*** Defendants' position "that the Federal Rules of Civil Procedure, and specifically FRCP 30(b)(6), don't apply to it because Alpha is a bankrupt entity."  *See* ECF No. 179 at 2.  Rather, Defendants contend that Luck's Rule 30(b)(6) deposition notice is entirely duplicative, unduly burdensome and disproportionate to the needs of the case for two reasons.

***First***, Luck has had full opportunity to depose McMahon and the other former-Alpha executives he requested on the topics identified in the Rule 30(b)(6) notice, and those witnesses provided hundreds of pages of testimony regarding all of the appropriate topics of Luck's Rule 30(b)(6) notice (Topics 1-3, 6-7, 9-13, 17, 21-22, 25-28).

***Second***, no additional corporate testimony of Alpha is warranted because the remaining topics of the Rule 30(b)(6) notice concern (i) Alpha's legal contentions in this case (Topics 19-20,

3

23-24, 29-30); (ii) matters that are protected by the attorney-client privilege and/or work product doctrine (Topics 4-5, 18); (iii) matters that are duplicative of prior discovery in this case (Topics 1-3, 6-12, 17, 25-28, certain of which are also duplicative of the individual witnesses' testimony); and (iv) matters that are not relevant to any legitimate issue in dispute (Topics 14-16, 31-34).

Specifically, Messrs. McMahon, Pollack and DeVito and Ms. Wagner provided testimony on all of the appropriate topics of Luck's Rule 30(b)(6) notice as follows:

- **Topics 1-3 and 6**—The decision to terminate Luck for cause, the grounds for such termination, and the date the decision to termination was made

  - Vincent K. McMahon Deposition ("McMahon Depo."), Ex. 1 at 160:10-166:16; 219:6-16; 230:8-18.

- **Topic 7**—Alpha's policy on use of Alpha-issued iPhones for non-XFL business

  - McMahon Depo., Ex. 1 at 40:17-42:16; 261:11-21; 267:12-268:20.

  - Jeffrey Pollack Deposition (Rough Transcript) ("Pollack Depo."), Ex. 2 at 129:9-132:21.

  - Cindy Wagner Deposition Testimony ("Wagner Depo."), Ex. 3 at 55:25-57:7; 72:25-79:2.

- **Topics 9-12**—Luck's hiring and firing of Antonio Callaway, including Luck's failure to follow McMahon's directives regarding the hiring and firing of Mr. Callaway and the materiality of Luck's failure to follow McMahon's directives.

  - McMahon Depo., Ex. 1 at 47:2-48:18; 57:3-58:12; 64:8-66:8; 67:22-68:11; 69:21-74:6; 75:18-76:4; 84:8-86:9; 90:19-92:16; 98:3-104:13; 105:18-19; 106:20-112:2; 113:8-114:1; 123:18-128:2; 130:8-133:14;135:16-141:10; 141:14-142:15; 146:6-16; 147:13-148:21.

  - Pollack Depo., Ex. 2 at 19:13-34:7; 54:11-62:11; 75:12-86:9; 88:11-89:7; 94:10-98:8; 100:6-109:3; 110:8-128:6; 250:20-252:21.

  - Basil DeVito Deposition Testimony ("DeVito Depo."), Ex. 4 at 48:25-64:12; 65:7-65:18.

  - Wagner Depo., Ex. 3 at 124:14-134:22; 136:20-140:4.

- **Topic 13**—McMahon's directive regarding player backgrounds and Luck's "4 Criteria" email.

4

- o McMahon Depo., Ex. 1 at 236:17-241:8; 243:6-256:11; 257:14-258:10.

- o Pollack Depo., Ex. 2 at 62:12-63:7; 83:13-84:13; 143:15-145:18; 150:4-150:22; 154:22-164:10.

- o DeVito Depo., Ex. 4 at 27:19-28:24; 38:23-39:14.

- o Wagner Depo., Ex. 3 at 80:13-82:20; 85:1-92:22.

- **Topic 17**—Drafting and circulation of the XFL Employee Handbook & Code of Business Conduct

  - o Wagner Depo., Ex. 3 at 28:20-35:1; 37:24-39:12; 40:1-41:11.

- **Topics 21-22**—Luck's failure to follow McMahon's directives regarding the hiring and firing of Mr. Callaway being incurable

  - o McMahon Depo., Ex. 1 at 53:17-56:21; 59:8-62:8; 125:2-126:1.

- **Topic 26**—Notice to Luck of dissatisfaction with his performance prior to April 9, 2020

  - o McMahon Depo., Ex. 1 at 161:12-162:23; 163:24-164:24; *see also* McMahon Depo. cited herein in relation to Topics 9-12, 25 and 27-28.

  - o Pollack Depo., Ex. 2 at 171:18-175:1; 186:9-188:18; 202:10-203:5; 234:11-236:19.

  - o DeVito Depo., Ex. 4 at 80:18-81:18; 144:7-146:5.

- **Topics 25, 27-28**—Luck's failure to perform his duties as XFL CEO and Commissioner after March 13, 2020 and Alpha's decision to terminate Luck

  - o McMahon Depo., Ex. 1 at 160:10-165:9; 170:24-179:19; 179:24-188:22; 190:17-191:8; 192:17-197:25; 204:12-207:1; 230:8-18.

  - o Pollack Depo., Ex. 2 at 35:5-35:23; 181:14-182:15; 186:9-189:17; 198:9-200:25; 202:3-203:5; 205:23-209:9; 239:13-242:10; 243:12-246:9; 247:20-249:14.

  - o DeVito Depo., Ex. 4 at 78:4-78:19; 102:9-111:15.

  - o Wagner Depo., Ex. 3 at 80:13-82:20; 85:1-92:22.

Following the depositions, Defendants' counsel reiterated their request that Luck's counsel

withdraw the Motion to Compel a Rule 30(b)(6) deposition of Alpha in light of the testimony of

Messrs. McMahon, Pollack and DeVito and Ms. Wagner on the topics in the Rule 30(b)(6) notice. Alternatively, Defendants' counsel asked Luck's counsel to identify any relevant issues on which they believed they lacked testimony despite the individual depositions.  Luck's counsel refused to do either.

## II.      BACKGROUND

### A.    Defendants Complete Their Massive Production of Documents

By April 9, 2021, Defendants completed their production of all documents responsive to Luck's requests for production based on the search parameters that Luck himself requested.  To date, Defendants have produced over ***270,000 pages of documents*** in a case that is remarkably simple and straightforward.  This massive production comprised all non-privileged documents relating to the issues actually in dispute in the lawsuit, including (i) all documents that reference Antonio Callaway; (ii) all documents regarding the bases for Luck's termination for cause; (iii) all communications between Luck and Mr. McMahon; (iv) all emails Luck sent or received regarding non-XFL business; and (v) all emails Luck sent or received from March 13, 2020 through April 9, 2020.  It also included hundreds of thousands of documents that Luck's counsel demanded be produced, which have no relevance whatsoever to any legitimate issue in the case.

Defendants initially produced 33,785 pages of documents based on searches of 14 relevant custodians utilizing search terms relating to the matters at issue (all of which were disclosed to Luck's counsel, who merely added one additional custodian to the search).  Defendants then engaged in extensive and costly efforts to comply with the Court's February 5, 2021 Order (the "2/5/21 Order," ECF No. 152).  Despite the statement by Luck's counsel on which the Court relied in its 2/5/21 Order (ECF No. 152 at 15) that production of Luck's PST file would mostly resolve Luck's demands for additional documents beyond what Defendants had produced, Luck's counsel demanded the production of records far in excess of that PST file.  Since entry of the 2/5/21 Order,

Defendants have produced 234,916 additional pages of documents. This includes 121,719 additional pages of documents over and above the production of Luck's PST file. Specifically, Defendants first produced Luck's entire PST file consisting of 113,197 pages of documents. Defendants then produced another 36,807 pages of documents in compliance with other aspects of the Court's 2/5/21 Order. Next, the parties conferred and agreed on the scope of production in response to RFPs 7, 8 and 9 of Luck's First Request for Production to Alpha, and Defendants produced an additional 41,010 pages of documents. Finally, the parties conferred and agreed on the scope of production in response to RFPs 1, 19 and 24 of Luck's First Request for Production to Alpha, and Defendants produced an additional 43,902 pages of documents. The time and cost involved in searching, reviewing, and producing these documents has been immense. In total, Defendants have incurred hundreds of thousands of dollars in attorneys' fees and costs in complying with the 2/5/21 Order.

**B.      The Parties Establish a Deposition Schedule**

As the document production phase of the case neared completion, Defendants took steps to begin scheduling depositions. On March 30, 2021, Defendants asked Luck's lead counsel from Texas to provide a date for Luck's deposition during a two-week time period from April 22, 2021 to May 7, 2021. Luck's Texas counsel refused to provide a date—first declaring that he would not produce Luck for a deposition and then insisting on imposing certain conditions on the deposition found nowhere in the Federal or Local Rules governing depositions. On April 5, 2021, after Luck's counsel refused to provide a date, Defendants noticed Luck's deposition for a date within the two-week time period—April 29, 2021. Luck's Texas counsel then claimed that he was unavailable during the entire two-week time period due to purported commitments in other cases and would not be available until May 11, 2021. After much delay and obstruction, Luck's counsel eventually agreed to produce Luck for a deposition on May 11, 2021.

In contrast to Luck's delay and obstruction, Defendants acted cooperatively and efficiently to schedule the depositions requested by Luck's counsel.  On March 30, 2021, Luck's counsel asked Defendants' counsel for dates for the depositions of McMahon and former Alpha executives, Jeffrey Pollack and Basil DeVito.  On March 31, 2021, Luck's counsel stated that he also intended to depose six other former Alpha employees—Cindy Wagner, David Walden, Sam Schwartzstein, Doug Whaley, Eric Galko, and Ian Decker—and asked whether Defendants' counsel would be representing any of those witnesses.  Luck's counsel made ***no mention*** of any intention to take a Rule 30(b)(6) deposition of Alpha.

On April 5, 2021, Defendants' counsel promptly responded that, in addition to McMahon, they would be representing Jeffrey Pollack, Basil DeVito, and Cindy Wagner at their depositions. On April 7, 2021, Defendants provided Luck's counsel with dates when each of these witnesses would be available for depositions.  Defendants' counsel agreed to make McMahon available for a deposition on May 13, 2021.  Defendants' counsel also agreed to voluntarily produce Mr. Pollack, Mr. DeVito, and Ms. Wagner for depositions in the ensuing two weeks without any controversy or need for a subpoena.  At the same time, Defendants' counsel advised Luck's counsel that they would not be representing the other witnesses he identified and, therefore, he would need to subpoena them for depositions.

By April 13, 2021, the parties agreed on a deposition schedule for the following witnesses on the dates listed below:

May 11, 2021:  Deposition of Oliver Luck

May 13, 2021:  Deposition of Vincent McMahon

May 18, 2021:  Deposition of Basil DeVito

May 20, 2021:  Deposition of Cindy Wagner

May 25, 2021:  Deposition of Jeffrey Pollack

On April 13, 2021, Luck's counsel also reiterated his intention to take the depositions of the other former Alpha employees identified above as well as two additional witnesses—former XFL coach Marc Trestman and WWE executive Brad Blum.  Once again, Luck made ***no mention*** of any intention to take a Rule 30(b)(6) deposition of Alpha.

## C.      Luck's Texas Counsel Escalates His Abusive and Harassing Discovery Tactics

Shortly after Defendants completed their document production and the parties had agreed on the current deposition schedule, Luck escalated his abusive and harassing discovery tactics.

### 1.      Luck Notices the Rule 30(b)(6) Deposition of Alpha

On April 22, 2021, Luck's counsel sent a proposed list of 34 broad topics for a Rule 30(b)(6) deposition of Alpha.  The proposed list suffered from numerous problems—including that it failed to describe the matters for examination with reasonable particularity, sought information that was unduly burdensome and duplicative, sought information that could more easily be obtained from other sources or using other discovery methods, and sought privileged information.  Because of these problems and as required by the 2020 amendments to Rule 30(b)(6), Defendants' counsel attempted to meet and confer with Luck's counsel regarding each of the proposed topics.

Luck's Texas counsel, however, refused to engage in any meaningful discussion and instead declared his intention to file an emergency motion to compel before a notice of deposition was even served.  Contrary to Luck's assertions in his Motion to Compel, Defendants' attempt to meet and confer over the proposed topics was not a "sham" or a "fishing expedition."  (ECF No. 179 at 2.)  Defendants endeavored—albeit unsuccessfully in light of the unrestrained and, at times, unhinged resistance by Luck's Texas counsel—to discharge their obligations under the Federal Rules in good faith.   Luck's counsel's claim that the meet and confer was a "sham" is merely a

9

straw man argument that he makes in an attempt to justify his own *admitted* "refus[al] to participate" in the conference. (ECF No. 179-3.)  And a comparison of the draft topics that Luck's counsel sent before the meet and confer and the topics included with the deposition notice makes clear that he made no material changes to the topics as a result of the conference. (*Compare* ECF No. 179-1 with ECF No. 179-6.)

Additionally, Luck's assertion that Defendants supposedly "categorically refused to . . . agree to present any witness as an Alpha 30(b)(6) designee to testify for deposition" is incorrect. (ECF No. 179 at 2.)  Rather, as noted above, Defendants' counsel attempted to propose—before Luck's Texas counsel shouted them down—that the reasonable and efficient way to proceed would be to take the scheduled depositions of McMahon and the other former-Alpha executives Luck requested.  After taking those already-scheduled depositions, the parties could confer to determine if there were any relevant information that Luck's counsel legitimately was unable to obtain and to discuss other less burdensome methods by which to attempt to provide such information.  Luck's Texas counsel rejected this measured and reasonable proposal out-of-hand, and instead rushed off to file the Motion to Compel.

### 2.    Luck Serves A Subpoena on WWE

On April 22, 2021, Luck's counsel served a massive subpoena on WWE (Ex. 5)—a non-party for whom McMahon serves as the Chairman and CEO—containing 14 overly broad, unduly burdensome, and wholly irrelevant requests for production.  The Subpoena is exceedingly objectionable in multiple respects.

*First*, Luck waited to serve the Subpoena until just before the start of depositions—and at a time when Luck's Texas counsel had previously represented he was unavailable for Luck's deposition—even though the requests of the subpoena all involve matters known since the beginning of this case.  The timing of the subpoena, therefore, appeared to have been calculated to

attempt to interfere with the established deposition schedule.

**Second**, as Luck's counsel well knew, Defendants had already produced thousands of documents from WWE through the production of emails, text messages, and other documents possessed by McMahon.  Many of the requests of the Subpoena (*e.g.*, Requests 2, 3, 4, and 5) sought communications with McMahon and consequently were entirely duplicative of documents that Defendants had already searched for and produced.  Likewise, any communications between any of the XFL custodians and "WWE," including the multiple requests in the Subpoena seeking communications between Jeffrey Pollack or Luck and "WWE," were subsumed within Defendants' prior document productions.  Indeed, RFP 19 of Luck's First Request for Production to Alpha specifically requested "all documents, including communications with any WWE employee or officer, that relate to, reflect, or concern Mr. Luck."  At bottom, the only conceivable documents from WWE that were not previously produced would have been communications exclusively from one WWE employee (other than McMahon) to another WWE employee (other than McMahon) that never were sent, copied or forwarded to any of the XFL custodians.  Such hypothetical documents with little, if any, probative value to this case certainly could not justify the enormous fishing expedition required by the Subpoena.

**Third**, the Subpoena sought to burden WWE, a non-party, with discovery demands that were overwhelming in scope.  On its face, the Subpoena called for production of every document in WWE's possession relating to both incarnations of the XFL—the first incarnation of the XFL in 2001 that was a joint venture between WWE and NBC with which Luck had no involvement whatsoever as well as the 2020 relaunch of the XFL by Alpha—and would have required the search and review of information equivalent to 417,792 bankers boxes of documents at an additional cost estimated at over $1 million.  Not to mention the diversion of WWE employees' time and resources

required to process such an immense volume of information.

### 3. Luck Announces His Intention to Depose Defendants' Lead Trial Counsel

On May 3, 2021, Luck's Texas counsel announced his intention to depose Attorney Jerry McDevitt—lead trial counsel for Defendants in this action—in direct contradiction to his prior representation to this Court that he had no intention of seeking to disqualify him. *See* ECF No. 175 at 4 ("Contrary to Defendants' suspicion, Plaintiff does not want to disqualify Defendants' counsel. . . . Indeed, Plaintiff will stipulate that he will not move to disqualify opposing counsel."). Defendants' counsel promptly responded that Luck would need to file a motion to compel Attorney McDevitt's deposition.   On May 24, 2021, Luck's counsel reiterated his intention to depose Attorney McDevitt, despite the obvious disqualification issues implicated by a deposition of trial counsel.  *See* D. Conn. L. Civ. R. 83.13(b) ("If after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or she . . . ought to be called as a witness on behalf of the client, he or she shall withdraw from the conduct of the trial and the law firm shall not continue representation in the trial . . . ."); *see also Dominion Res. Services, Inc. v. Alstom Power, Inc.*, No. 3:16CV00544(JCH), 2017 WL 3228120, at *6 (D. Conn. July 31, 2017) ("One of the primary reasons that depositions of trial counsel are limited by the courts is 'to bar the disruption and misuse of the adversary process attendant on allowing a party to depose its adversary's litigation counsel[.]'") (citation omitted); *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) ("Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c), Fed.R.Civ.P., protective order.") (citation omitted).

### 4. Luck Files This Motion to Compel

On May 7, 2021, Luck's counsel filed the instant Motion to Compel the Rule 30(b)(6) deposition of Alpha—only one day after serving a notice of deposition on May 6, 2021 and on the

eve of the depositions of the individual witnesses scheduled during the remainder of May. Indeed, Luck rushed to file his motion to compel on Friday afternoon before even waiting for Defendants to respond to his request for input on the notice sent the day before. Worse still, Luck requested expedited consideration of the Motion to Compel, seeking to impose a briefing schedule on Defendants that was deliberately designed to disrupt the preparation for and conduct of the scheduled depositions over the ensuing three weeks. For the reasons set forth in Defendants' memorandum in opposition to Luck's request for expedited consideration (ECF No. 180), none of the contrived reasons offered by Luck came close to establishing the requisite good cause for an emergency motion under the Local Rules. On May 10, 2021, the Court denied Luck's request for expedited consideration of his Motion. (ECF No. 184.)

### III.    ARGUMENT

#### A.    Standard of Review

This Court has noted in the context of Rule 30(b)(6) that "there are limits to discovery and the ways in which parties may use particular discovery tools." *FDIC v. Wachovia Ins. Servs., Inc.*, No. 3:05 CV 929 (CFD), 2007 WL 2460685, at *3 (D. Conn. Aug. 27, 2007). Rule 30(b)(6) is intended to facilitate efficient discovery by "narrow[ing] a litigant's search for a representative who will serve as the repository of the agency's knowledge." *SEC v. Ahmed*, No. 3:15cv675(JBA), 2017 WL 1347668, at *2 (D. Conn. Apr. 7, 2017) (quoting *SEC v. McGinnis*, No. 5:14-cv-6, 2015 WL 13505396 (D. Vt. Jan. 13, 2015)). To that end, the Advisory Committee Notes to Rule 30(b)(6) make clear that corporate depositions are intended to "reduce the difficulties . . . in determining, prior to the . . . deposition, whether a particular employee . . . is a 'managing agent'"; to "curb the 'bandying' by which officers or managing agents . . . each disclaims knowledge"; and to "assist organizations which find that an unnecessarily large number of their officers and agents are being deposed by a party uncertain of who in the organization has knowledge." Fed. R. Civ.

13

P. 30(b)(6) advisory committee's note to 1970 amendment.  None of these purposes is served by

Luck's Rule 30(b)(6) deposition notice to Alpha—a bankrupt entity with no employees.  More

importantly, the person who terminated Luck is well known—McMahon.  Others with key

knowledge of Luck's deception in the hiring of Callaway, Messrs. Pollack and DeVito, have also

been deposed.

While Defendants do not contend that a bankrupt corporation is exempt from complying

with Rule 30(b)(6),[1] a party's lack of employees with first-hand knowledge of facts does bear on

the *burdensomeness* of a Rule 30(b)(6) deposition notice due to the efforts required to determine

the "information known or reasonably available to the organization."  *See Wachovia*, 2007 WL

2460685, at *3 (as receiver, the FDIC's "lack of pre-failure involvement with CBC does bear upon

the reasonableness of the scope of the discovery that has been requested by Wachovia"); *see also*

*Ahmed*, 2017 WL 1347668, at *1-2 (quashing defendants' Rule 30(b)(6) deposition notice where

SEC had no independent, first-hand knowledge of the underlying facts but rather its knowledge

was based on investigation in connection with the pending litigation).

This Court has also found that "since depositions are inherently 'time-consuming and

inefficient,' they ought to 'be productive and not simply an excuse to seek information that is

already known.'  Where the notice seeks information which could more easily be obtained from

another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition."

*Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (citation omitted); *see also*

---

[1]  Because Luck has mischaracterized Defendants' position, Luck's reliance on *Fed. Hous. Fin. Agency for Fed. Nat'l Morg. Ass'n v. Royal Bank of Scotland Grp. PLC*, No. 3:11-CV-1383(AWT), 2015 WL 13634404, at *1 (D. Conn. Aug. 20, 2015) is entirely misplaced.  In any event, that case is inapposite for the additional reason that Judge Thompson found that the defendants could not avoid a Rule 30(b)(6) deposition "based on the reported limited knowledge of its employees." *Id.* at *4.  Here, in contrast, Alpha has **no** employees and therefore the issue is not the purported scope of knowledge of employees who otherwise would be available to testify as a corporate representative but the complete lack of any employee who could testify as a corporate representative in the first instance.

*Wachovia*, 2007 WL 2460685, at *3 (noting "whether the discovery may be obtained by less burdensome means" is a factor courts should consider in determining whether a Rule 30(b)(6) notice is unduly burdensome).

None of the foregoing purposes of Rule 30(b)(6) are served by Luck's Notice to Alpha; as such, the Court should deny Luck's Motion and quash all of the topics of the Luck's Rule 30(b)(6) notice. Luck did not identify any relevant information he could not obtain, and now has obtained, from the individual witnesses who have been deposed.

**B.**  **McMahon and the Former-Alpha Employees Who Were Deposed By Luck's Counsel Provided Testimony on the Appropriate Topics of the Rule 30(b)(6) Notice**

Luck had the opportunity to examine McMahon and the three former executives of Alpha he requested to depose—Jeffrey Pollack, Basil DeVito and Cindy Wagner—without restriction as to the topics of inquiry. Notably, despite having four full days to depose these individuals about their knowledge of the facts and documents relevant to this litigation, Luck's counsel did not use the entire seven hours of deposition time allowed by the Federal Rules with any of the witnesses, although he came close with McMahon. He not only had the opportunity to ask all pertinent questions of McMahon, but also wasted time on such irrelevant topics as WWE paying for private aircraft transportation for its top wrestlers to a pay-per-view event. *See* Ex. 1 at 210:10-213:16. The inability of Luck's counsel to use the full seven hours for questioning of the key witnesses with first-hand knowledge of the very topics that are covered by the Rule 30(b)(6) notice speaks volumes about the lack of justification for an additional corporate deposition of Alpha.

With regard to Luck's Rule 30(b)(6) Notice, Messrs. McMahon, Pollack and DeVito and Ms. Wagner collectively provided detailed factual testimony on Topics 1-3, 6-7, 9-13, 17, 21-22, 25-28. For example, McMahon testified in detail and at length on the non-privileged facts covered by Topics 1-3, 6-7, 9-13, 21-22 and 25-28 relating to his interactions with Luck, his decision to

terminate Luck and the underlying bases that led to Luck's termination.  *See* Ex. 1 at 47:2-48:18;
57:3-58:12;  64:8-66:8;  67:22-68:11;  69:21-74:6;  75:18-76:4;  84:8-86:9;  90:19-92:16;  98:3-
104:13;  105:18-19;  106:20-112:2;  113:8-114:1;  123:18-128:2;  130:8-133:14;  135:16-137:21;
146:6-16;  147:13-148:21;  243:6-248:4 (testifying regarding his directives on not hiring players
with questionable backgrounds and Luck's failure to follow McMahon's directives with regard to
Antonio Callaway); 53:17-56:21; 59:8-62:8; 125:2-126:1 (testifying as to notice and inability to
cure Luck's material breaches); 236:17-241:8; 248:5-256:11; 257:14-258:10 (testifying regarding
Luck's "4 criteria" email); 170:24-188:22; 190:17-191:8; 192:17-197:25; 203:12-207:1 (testifying
regarding Luck's failure to perform his XFL duties after March 13, 2020); 40:17-42:16; 261:11-
21;  267:12-268:20  (testifying  regarding  use  of  Alpha-issued  iPhones  for  non-XFL  related
business); 160:10-165:9; 230:8-18 (testifying regarding the April 9 termination letter and the
decision to terminate Luck); 161:12-162:23; 163:24-164:24 (testifying regarding notice to Luck
of dissatisfaction with his performance prior to April 9, 2020).  Luck cannot dispute that ***McMahon***
was the ***only*** person with the right to terminate Luck and consequently there is no additional
testimony that Alpha could provide on those topics of Luck's Rule 30(b)(6) Notice.

        In addition to McMahon, Messrs. Pollack and DeVito and Ms. Wagner (Exs. 2, 3 & 4)
provided additional factual testimony on the following topics in Luck's notice:

- Topic 7 regarding Alpha policy on use of Alpha-issued iPhones (*see* Wagner Depo.,
  Ex. 3 at 55:25-57:7; 72:25-79:2; Pollack Depo., Ex. 2 at 129:9-132:21).

- Topics 9-12 regarding the hiring and firing of Callaway (*see* Pollack Depo., Ex. 2
  at  19:13-34:7;  54:11-62:11;  75:12-86:9;  88:11-89:7;  94:10-98:8;  100:6-109:3;
  110:8-128:6;  250:20-252:21;  DeVito  Depo.,  Ex.  4  at  48:25-64:12;  65:7-65:18;
  Wagner Depo., Ex. 3 at 124:14-134:22; 136:20-140:4).

- Topic 13 regarding McMahon's directive regarding player backgrounds and Luck's "4 Criteria" email (*see* Pollack Depo., Ex. 2 at 62:12-63:7; 83:13-84:13; 143:15-145:18; 150:4-150:22; 154:22-164:10; DeVito Depo., Ex. 4 at 27:19-28:24; 38:23-39:14; Wagner Depo., Ex. 3 at 80:13-82:20; 85:1-92:22).

- Topic 17 regarding the drafting and circulation of the XFL Employee Handbook & Code of Business Conduct (*see* Wagner Depo., Ex. 3 at 28:20-35:1; 37:24-39:12; 40:1-41:11).

- Topic 26 regarding notice to Luck of dissatisfaction with his performance prior to April 9, 2020 (*see* Pollack Depo., Ex. 2 at 171:18-175:1; 186:9-188:18; 202:10-203:5; 202:10-203:5; 234:11-236:19; DeVito Depo., Ex. 4 at 80:18-81:18; 144:7-146:5).

- Topics 25, 27-28 regarding Luck's failure to perform his duties as CEO and Commissioner after March 13, 2020 (*see* Pollack Depo., Ex. 2 at 35:5-35:23; 181:14-182:15; 186:9-189:17; 198:9-200:25; 202:3-203:5; 205:23-209:9; 239:13-242:10; 243:12-246:9; 247:20-249:14; DeVito Depo., Ex. 4 at 78:4-78:19; 102:9-111:15).

This Court has repeatedly quashed Rule 30(b)(6) topics where—as here—that information has already been provided by the corporation's document production and the depositions of individual witnesses. *See Dongguk Univ.*, 270 F.R.D. at 75 (quashing Rule 30(b)(6) topic because "the documents already produced taken in conjunction with the three planned individual depositions should give ample opportunity to obtain the information sought"); *Wachovia*, 2007 WL 2460685, at *4 (quashing Rule 30(b)(6) notice where "considerable discovery has already occurred in this case, including the depositions of numerous witnesses who have first-hand

information, and the production of thousands of documents"); *Krasney v. Nationwide Mut. Ins. Co.*, No. 3:06 CV 1164(JBA), 2007 WL 4365677, at *4 (D. Conn. Dec. 11, 2007) (relying on *Wachovia* in quashing topic of a Rule 30(b)(6) notice because "'numerous witnesses who have first-hand information' already had been deposed and plaintiff had produced thousands of documents"); *see also Goldstein v. FDIC*, No. ELH-11-1604, 2013 WL 8446551, at *2 (D. Md. May 23, 2013) (denying motion to compel Rule 30(b)(6) deposition of receiver because receiver had no knowledge of bank's pre-failure procedures so receiver "is in no better position that Plaintiff to learn such facts from the documents produced, and Plaintiff can obtain the information he seeks from the officers of [the bank], who created the documents an have knowledge of their own procedures and relationships.").

Magistrate Judge Smith's opinion in *Wachovia* is particularly germane here. In quashing a Rule 30(b)(6) notice on the receiver for a failed bank, the Court first stated that the receiver's "lack of pre-failure involvement with [the bank] does bear upon the reasonableness of the scope of the discovery that has been requested . . . . The time and effort required to 'educate' a designated representative, who has no first-hand knowledge of the area of inquiry is directly proportional to the breadth of the designated subject matters." *Id.* at *3 (citation omitted). The Court then stated that "[a] second factor . . . is whether the discovery may be obtained by less burdensome means . . . . Defendants are free to serve [the receiver] with interrogatories, document requests, and to interview persons who have been identified as having factual knowledge." *Id.* (citation omitted). Noting the "considerable discovery" that had already occurred in the case "including the depositions of numerous witnesses with first-hand information, and the production of thousands of documents" by the receiver, as well as the equal availability of other witnesses with first-hand information, the Court found that "much of [the Rule 30(b)(6)] notice seeks to depose the [receiver]

about matters that are not 'known or reasonably available' to [the receiver] within the contemplation of Rule 30(b)(6)." *Id.* at *4.

Similarly, here, Luck has had full opportunity to depose the witnesses with first-hand information on all of the matters embraced by the Rule 30(b)(6) notice. The testimony of these witnesses, in fact, provided information on the appropriate topics of the Rule 30(b)(6) notice. Accordingly, any corporate deposition of Alpha beyond the prior testimony of these witnesses on such topics would serve no practical purpose and only be duplicative, unduly burdensome and disproportionate to the needs of the case.[2]

## C.   No Additional Corporate Testimony of Alpha Is Warranted on the Remaining Topics of the Rule 30(b)(6) Notice

As demonstrated above, Luck has obtained first-hand testimony from Messrs. McMahon, Pollack, and DeVito and Ms. Wagner on Topics 1-3, 6-7, 9-13, 17, 21-22, 25-28 of the Rule 30(b)(6) Notice. As for the remaining topics in Luck's overbroad Rule 30(b)(6) Notice, no additional corporate testimony of Alpha is warranted. Specifically, the Court should deny Luck's request for Alpha to provide corporate testimony on:

- Topics seeking Alpha's legal contentions (Topics 19-20, 23-24, and 29-30);

- Topics seeking information protected by the Attorney Client Privilege/Attorney Work Product Doctrine (Topics 4-5 and 18);

---

[2] Indeed, Luck's Motion to Compel proposes that Alpha's bankruptcy administrator, Peter Hurwitz, or Mr. McMahon should be required to serve as Alpha's corporate designee on the subject matters set forth in the Rule 30(b)(6) notice. As for Mr. Hurwitz, he previously submitted a declaration stating that he has no knowledge whatsoever of Alpha's pre-bankruptcy activities. *See* ECF No. 174, Ex. 4. He, therefore, would need to be educated by Defendants' counsel on all of the information necessary to be able to testify—a process that would be exceedingly burdensome and costly, and which would raise distinct work product concerns. As for Mr. McMahon, it is blatant harassment to try to subject the Chairman of a publicly-traded corporation to a corporate representative deposition when he already testified on many of the topics in Luck's Rule 30(b)(6) notice in his individual deposition and when he would need to spend an inordinate amount of time preparing to testify on other of the broad topics in Luck's notice.

- Topics seeking information duplicative of prior discovery in this case (Topics 1-3, 6-12, 17, and 25-28, certain of which are also duplicative of the individual witnesses' testimony); and

- Topics seeking information that is irrelevant or not in dispute (Topics 14-16 and 31-34).

## 1.  Topics Seeking Alpha's Legal Contentions

The Court should deny Luck's motion to compel corporate testimony that seek Alpha's legal contentions in this case.  Courts routinely quash 30(b)(6) topics that amount to "contention discovery seeking [Defendant's] mental impressions" and strategy of the case.  *McGinnis*, 2015 WL 13505396, at *7; *see also Gov't Emps. Ins. Co. v. Lenex Servs., Inc.*, No. 16 CV 6030 (CLP), 2018 WL 1368024, at *3 (E.D.N.Y. Mar. 16, 2018) ("*GEICO*") (striking deposition topic that "seems to require GEICO to marshal the evidence that GEICO believes constitutes or supports any potential defense to the allegations in the Complaint"); *Ahmed*, 2017 WL 1347668, at *2 (quashing Rule 30(b)(6) notice that sought SEC's protected work product); *Wachovia*, 2007 WL 2460685, at *4–5 (quashing Rule 30(b)(6) notice to receiver of failed bank that had no first-hand knowledge of pre-failure operations because the notice "in large part appears calculated to discover properly protected opinions, mental impressions, and strategy of plaintiff's counsel"); *Krasney*, 2007 WL 4365677, at *3 (noting that although "plaintiff had 'a right to discover the facts upon which [the defendant] will rely for its defense and counterclaims,' its attempt to do so through a Rule 30(b)(6) deposition was 'overbroad, burdensome, and a highly inefficient method through which to obtain otherwise discoverable information'") (citation omitted); *Morelli*, 143 F.R.D. at 47 (Rule 30(b)(6) testimony is not proper where the proposed topic "is intended to ascertain how the [other party] intends to marshal the facts, documents and testimony in its possession" as such topics are an inappropriate attempt to learn protected attorney work product).

Pertinently, in *Ahmed*, this Court refused to permit defendants from obtaining Rule

30(b)(6) testimony from the Securities and Exchange Commission on, among other things, "[a]ny exculpatory facts or information, and any factual portion of any investigative memoranda prepared by the Commission's Staff, or distributed to the Commission . . . that relates to the defenses or affirmative defenses of the Defendant or Relief Defendants" and "[t]he specific facts, information, documents, investigative testimony, and any other direct or circumstantial evidence relied on by the Plaintiff that supports the specific allegations asserted by the Commission and the relief sought by the Commission in this matter." *Ahmed*, 2017 WL 1347668, at *2.  In so holding, the Court determined that those topics did not seek any "information beyond protected work-product, despite [defendants'] representation that they seek this deposition on the underlying facts alone," and that defendants had "all the facts available to the SEC" and had not identified "any particularized scenarios of the existence of important facts which require clarification" through the deposition. *Id.*

Here, the following topics in Luck's Notice improperly seek to discover Defendants' **strategy** for the prosecuting and defending this case:

| | |
|---|---|
| Topic 19. | Alpha's assertion that any act or omission by Luck constituted gross negligence of his duties |
| Topic 20. | Alpha's assertion that any act or omission constituted an intentional failure by Luck to follow any applicable XFL policy or directive |
| Topic 23. | Alpha's claim, if any, that Luck willfully and intentionally engaged in material misconduct in the performance of his duties |
| Topic 24. | Alpha's assertion that any act or omission by Luck that constitutes "Cause" was not reasonably susceptible to cure |
| Topic 29. | The allegations in Defendant Alpha Entertainment LLC's Amended Counterclaims [ECF 153] set forth in paragraphs 17, 18, 23, 28, 36, 37, 39, 40, 41, 46, 47, 48, 49, 61, 62, 63, 67, 68, 73, 74, 75, 76, 79, 86, 89, 90, 91, 92, 97, 98, 101, 103, 104, 105, 108, 109, 113, 114, 118, and 119 |
| Topic 30. | The alleged prior material breaches listed in Defendant Alpha Entertainment LLC's Answer, Affirmative Defenses, and Counterclaims [ECF 126] set forth under the "SECOND DEFENSE" heading on page 4 |

Indeed, the topics are straightforward examples of contention discovery as they expressly purport to require a designee of Alpha to testify regarding Defendants' various enumerated claims and defenses and Defendants' "assertions" on various issues in dispute.

While Luck's counsel has attempted to dress up these topics as merely seeking to inquire about "the facts" underlying those positions, this is sheer pretext.  As other courts examining similar Rule 30(b)(6) topics have found, Luck's notice on these topics constitutes an improper use of a Rule 30(b)(6) deposition.  *See McGinnis*, 2015 WL 13505396, at *7 ("[C]ourts recognize that a party propounding contention discovery 'is after more than just 'facts' . . . [and] is seeking to discover the SEC's theories as to underlying facts, how it intends to marshal those facts, and its belief as to the inferences that may be drawn from those facts.' . . . 'The distinction is between factual information alone, as opposed to factual knowledge underlying legal conclusions.'") (citations omitted); *see also Ahmed*, 2017 WL 1347668, at *1 n.2 (rejecting defendants' argument that they "simply intend to ask questions about *facts* relating to the evidence, and the references to claims and defenses in these subjects merely circumscribe the universe of those *facts*" where defendants could not explain what new evidence would be developed beyond that contained in produced documents and individual depositions) (emphasis added); *Krasney*, 2007 WL 4365677, at *3 (rejecting argument that plaintiff could use Rule 30(b)(6) deposition to "discover the *facts* upon which [the defendant] will rely for its defense and counterclaims") (emphasis added); *Morelli*, 143 F.R.D. at 47 ("Given plaintiff's sworn, uncontroverted statement that all relevant, non-privileged evidence has been disclosed to the defendants, the Court is drawn inexorably to the conclusion that Morelli's Notice of Deposition is intended to ascertain how the SEC intends to marshal the facts, documents and testimony in its possession, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated.").

Luck already knows "the facts" underlying Defendants' positions in light of prior discovery he has taken in this case.   Defendants have already produced all non-privileged information relevant to these topics, through both its voluminous document production and through the individual depositions of McMahon and the former-Alpha employees who Luck requested to depose.   Now, under the guise of a Rule 30(b)(6) Notice, Luck is trying to learn the way that Defendants' counsel intends to marshal those facts in support of the claims and defenses at issue.

### 2.      Topics Seeking Information Protected By the Attorney-Client Privilege and/or Work Product Doctrine

Luck's Motion to Compel also should be denied with respect to the following topics that seek to require Alpha to reveal attorney-client and work-product privileged material related to the privileged investigation conducted by Attorney McDevitt prior to Luck's termination:

Topic 4.      Any investigation that led Alpha to terminate Luck for Cause
Topic 5.      The facts learned during any investigation referenced in item #4
Topic 18.     The date(s) that Alpha determined that Luck had violated an XFL policy or directive

Indeed, Luck's inclusion of Topics 4-5 and 18 appear to be yet another improper attempt by Luck to make Attorney McDevitt a witness in this case.  *See* ECF 172 at 9–10 (describing Plaintiff's attempts to "invad[e] Defendants' privileges and placing opposing counsel into the role of a fact witness" and collecting previous examples).   The only way for this subject to be satisfied is for Attorney McDevitt to testify or to educate another person with his work-product, and both would impermissibly intrude into privileged areas.   Moreover, all the evidence developed in that investigation which is being used to support the position that "cause" exists, has been produced to Luck.

It is well-established that deposition topics seeking to inquire into counsel-led investigations threaten to reveal privileged attorney work product and mental impressions, and for that reason, should be stricken.  *See Ahmed*, 2017 WL 1347668, at *2 (quashing deposition notice

where SEC had already produced all relevant evidence, and 30(b)(6) topics inquired into the basis

of the SEC's investigation); *SEC v. Rosenfeld*, No. 97 CIV 1467 (RPP), 1997 WL 576021, at *2

(S.D.N.Y. Sept. 16, 1997) (quashing deposition notice seeking testimony on SEC investigation

"because such investigations are conducted by the SEC's legal staff, a Rule 30(b)(6) deposition of

an SEC official with knowledge of the extent of that investigative effort, ***amounts to the equivalent***

***of an attempt to depose the attorney for the other side***") (emphasis added).

> Luck knows full well that:
>
> Alpha sought [Attorney McDevitt's] legal advice regarding its contractual rights under Luck's Employment Contract after the XFL season was cancelled and it became clear that Luck and all but a few essential employees would be terminated. In order to provide legal advice to Alpha regarding Luck's termination and in anticipation of potential litigation with Luck, [Attorney McDevitt] conducted an investigation and requested certain information and documents from other XFL executives, including Jeffrey Pollack and Basil DeVito.  The information and documents that they provided were necessary for [Attorney McDevitt to provide legal advice to Alpha regarding Luck's termination.

(ECF No. 172-6 ¶ 9.)  Luck also knows why he was terminated, as those reasons are set forth in

the April 9, 2020 termination letter and in myriad pleadings in this case.  Thus, any claim by Luck

that he is seeking only the facts underlying the investigation once again is specious.  He already

knows those facts.  Additionally, McMahon, the person who Luck knows made the termination

decision, has now been deposed and testified as to his reasons for making that decision.  All that

is left for Luck to discover would be Attorney McDevitt's work product, which is not a proper

subject of a Rule 30(b)(6) deposition.

### 3.     Topics that Are Duplicative of Prior Discovery in the Case

In addition to being the subject of testimony by the individual witnesses, numerous of the

topics of the Rule 30(b)(6) notice are near-verbatim duplicates of prior discovery requests served

by Luck.  As Magistrate Judge Fitzsimmons explained in quashing multiple Rule 30(b)(6) topics

that she found to be unreasonably cumulative or duplicative in *Dongguk* (a case extensively cited

in Plaintiffs' Motion[3]), "30(b)(6) depositions can be used to test theories, challenge facts and fill in information gaps, but they cannot be used to reinvent the wheel by asking questions that have already been completely answered." *Dongguk*, 270 F.R.D. at 75, 76, 80.  Yet the following topics (the "Duplicative Topics") in Luck's Notice seek to do just that:

| | |
|---|---|
| Topic 1. | Each ground for Luck's termination for Cause |
| Topic 2. | The date when Alpha determined that Luck would be terminated |
| Topic 3. | The date when Alpha determined Luck would be terminated for Cause |
| Topic 6. | The decision to terminate Luck for Cause |
| Topic 7. | Alpha's policy re: personal use of Alpha, and/or XFL, issued iPhones |
| Topic 8. | Personal use of iPhones by all Alpha employees |
| Topic 9. | The hiring and firing of Antonio Callaway |
| Topic 10. | The materiality, if any, of the hiring and firing of Antonio Callaway |
| Topic 11. | Any and all communications to Luck by any XFL personnel, including McMahon, that Callaway should not be hired |
| Topic 12. | Any and all communications to Luck by any XFL personnel, including McMahon, that Callaway should be fired |
| Topic 17. | The drafting and circulation of the XFL Employee Handbook & Code of Business Conduct |
| Topic 25. | Mr. Luck's alleged failure to devote substantially all of his business time to the performance of his XFL duties |
| Topic 26. | Notice to Mr. Luck of any dissatisfaction with his performance of XFL duties prior to April 9, 2020 |
| Topic 27. | Luck's performance, or non-performance, of his XFL duties after March 13, 2020 |
| Topic 28. | All communications between any XFL personnel, including Mr. McMahon, and Luck after March 13, 2020 |

On their face, the Duplicative Topics are nearly identical to Plaintiff's Requests for Production (RFP) in response to which Defendants have already produced all non-privileged material in Defendants' possession and interrogatories to which Defendants have already responded.  The table below shows representative (but not exhaustive) examples from Luck's discovery requests as compared to the Duplicative Topics for which he now seeks testimony:

---

[3] Luck cites *Dongguk* at pages 3, 6, and 7 of his Motion to Compel.

| RFP/Interrogatory[4] | Duplicative Topic |
|---|---|
| RFP No. 22 to Alpha (Ex. 6): "Produce all documents including communications that relate to, reflect, or support the alleged grounds for termination of Mr. Luck's employment with Alpha and/or the XFL allegedly for cause, including those grounds identified in the April 9, 2020 letter to Mr. Luck from Mr. McDevitt"<br><br>RFP No. 32 to Alpha (Ex. 6): "Produce all documents that relate to, reflect, or support any and all alleged failures by Oliver Luck to perform his contractual duties while employed by Alpha."<br><br>RFP No. 41 to Alpha (Ex. 7): "Produce documents reflecting or concerning the reasons Alpha and McMahon decided to terminate Oliver Luck's employment, including notes from any meetings or discussions." | Topic 1.   Each ground for Luck's termination for Cause |
| RFP No. 2 to Alpha (Ex. 6): "Produce all documents that relate to, reflect, or concern the termination, or potential or contemplated termination, of Oliver Luck by Alpha."<br><br>RFP No. 5 to Alpha (Ex. 6) requesting all documents concerning Luck's "performance of his employment obligations or duties at Alpha and/or the XFL, including, without limitation, all performance reviews and/or disciplinary action taken against Mr. Luck as a result of his conduct.<br><br>RFP No. 16 to Alpha (Ex. 6): "Produce all written notices from Alpha and/or McMahon to Oliver Luck during the time period May 30, 2018 until April 9, 2020, informing Mr. Luck of an act or omission by him that was in violation of the Contract or Guaranty"<br><br>RFP No. 17 to Alpha (Ex. 6): "Produce all written notices from Alpha and/or McMahon | Topic 2.   The date when Alpha determined that Luck would be terminated<br><br>Topic 3.   The date when Alpha determined Luck would be terminated for Cause<br><br>Topic 6.   The decision to terminate Luck for Cause<br><br>Topic 26. Notice to Mr. Luck of any dissatisfaction with his performance of XFL duties prior to April 9, 2020 |

---

[4]  Defendants' responses to the referenced Requests for Production and Interrogatories are attached as Exhibits 6-11.

| | |
|---|---|
| to Oliver Luck, during the time period of May 30, 2018 through April 9, 2020, informing him of any alleged failure to perform his duties as the Commissioner and CEO of the XFL"<br><br>RFP No. 18 to Alpha (Ex. 6): "Produce all written notices from Alpha and/or McMahon to Oliver Luck, during the time period of May 30, 2018 through April 9, 2020, informing Mr. Luck that he had violated any XFL policy or directive"<br><br>RFP No. 26 to Alpha (Ex. 6): "Produce documents sufficient to show when the decision was made to terminate Oliver Luck's employment with Alpha." | |
| RFP No. 13 to Alpha (Ex. 6): "Produce all documents that relate to, reflect, or concern the specific XFL directives or policies that Alpha and/or McMahon contend were breached by Oliver Luck.<br><br>RFP No. 15 to Alpha (Ex. 6): "Produce all documents that relate to, reflect, or concern the XFL's cell phone use policy or directive including, but not limited to any previous versions or drafts of the policy or directive, communications related to the policy and/or directive, and communications related to the enforcement of the policy and/or directive"<br><br>IROG No. 2 to Alpha (Ex. 8): "Identify the names and titles of all Alpha employees who used mobile phone(s) issued by Alpha, McMahon or the XFL for personal matters or matters unrelated to the business of Alpha or the XFL from June 1, 2018 until April 13, 2020."<br><br>IROG No. 5 to Alpha (Ex. 9): "Set forth, verbatim, all policies or directives of Alpha regarding the use of mobile phones issued by Alpha." | Topic 7.  Alpha's policy re: personal use of Alpha, and/or XFL, issued iPhones<br><br>Topic 8.  Personal use of iPhones by all Alpha employees |
| RFP No. 14 to Alpha (Ex. 6): "Produce all documents, including communications with Oliver Luck, that relate to, reflect, or concern Antonio Callaway's employment with the | Topic 9.  The hiring and firing of Antonio Callaway |

| | |
|---|---|
| XFL, including but not limited to the XFL's recruiting, drafting, signing, and termination of Callaway" | Topic 10. The materiality of the hiring and firing of Callaway |
| RFP Nos. 53-60 to Alpha (Ex. 10) requesting all documents concerning or supporting Alpha's allegation in its Counterclaims of the information concerning Callaway known to Luck before he signed the contract for Callaway. | Topic 11. Any and all communications to Luck by any XFL personnel, including McMahon, that Callaway should not be hired |
| | Topic 12. Any and all communications to Luck by any XFL personnel, including McMahon, that Callaway should be fired |
| RFP No. 74 to Alpha (Ex. 10) requesting all documents concerning or supporting Mr. McMahon's allegation that on or about January 17, 2020 he was shown a media report on Callaway's signing that noted his history of off-the-field problems. | |
| RFP No. 75 to Alpha (Ex. 10) requesting all documents concerning or supporting Mr. McMahon's allegation that he told Luck to terminate Callaway on or about January 17, 2020. | |
| Interrogatory No. 6 to Alpha (Ex. 11): requesting various details "[w]ith respect to the allegation that Mr. McMahon directed and/or told Mr. Luck to terminate Antonio Callaway 'on or about January 17, 2020.'" | |
| RFP No. 42 to Alpha (Ex. 7): "Produce documents sufficient to show all dates that any version of the Employee Handbook & Code of Business Conduct or the Technology Acceptable Use Policy was promulgated and/or distributed to XFL employees, including without limitation emails or other communications distributing such documents to XFL employees." | Topic 17. Drafting and circulation of the XFL Employee Handbook & Code of Business Conduct |
| RFP No. 1 to Alpha (Ex. 6): "all documents that relate to, reflect, or concern communications from smartphone(s), tablet(s) or portable electronic device(s) provided by Alpha regarding Oliver Luck, including all communications made to or from Oliver Luck" | Topic 25. Luck's failure to devote substantially all of his business time to the performance of his XFL duties |
| | Topic 27. Luck's performance, or non-performance, of his XFL duties after March 13, 2020 |
| RFP No. 10 to Alpha (Ex. 6): "all documents concerning the work performed by Oliver | Topic 28. All communications between any XFL personnel, including Mr. |

28

| | |
|---|---|
| Luck for Alpha and/or the XFL on or after March 13, 2020." | McMahon, and Luck after March 13, 2020 |
| RFP No. 62 to Alpha (Ex. 10) requesting all documents concerning or supporting Alpha's allegation that after March 13, 2020 Luck allowed other business activities to interfere with his business obligations to the XFL. | |
| RFP Nos. 63-68 to Alpha (Ex. 10) requesting all documents concerning or supporting Alpha's allegations that Luck failed to attend XFL Covid-19 Working Group meetings after March 13, 2020. | |
| RFP Nos. 69-72 to Alpha (Ex. 10) requesting all documents concerning or supporting Alpha's allegations that Luck failed to attend the XFL's weekly business operations meetings after March 13, 2020. | |
| RFP No. 73 to Alpha (Ex. 10) requesting all documents concerning or supporting Alpha's allegation that Luck prioritized other business ventures over his obligations to the XFL after March 13, 2020. | |

Topics 9-12 relating to the hiring and firing of Antonio Callaway provide a perfect example of the duplication and wastefulness of Luck's Rule 30(b)(6) notice.  Defendants have literally produced to Luck all non-privileged communications that even mention the name Callaway.  Luck also knows and has acknowledged that the conversations whereby McMahon instructed Luck to terminate Mr. Callaway involved only he and McMahon.  Luck already deposed McMahon and had the opportunity to ask McMahon whatever questions he thought were pertinent to the hiring and firing of Callaway.  And obviously, Luck possesses his own memory and assertions regarding the conversations with McMahon regarding the hiring and firing of Callaway.  To the extent there is anyone else who Luck believes has pertinent knowledge of Callaway's hiring and firing, he has deposed those individuals (Mr. Pollack and Mr. DeVito) or can depose those individuals.  Simply put, Luck already has in his possession, either through personal knowledge, or through the

evidence already produced in the case, all non-privileged information on these topics and compelling Alpha's deposition would be nothing more than a waste of time and resources for the parties.

The same can be said for the other Duplicative Topics. Luck knows from his own personal knowledge and Defendants' document production and interrogatory responses the identity of any Alpha employees who may have knowledge of the Duplicative Topics. Luck has already deposed McMahon and the former Alpha employees of his choosing on the Duplicative Topics (*see* Section III.B above) and has indicated his intention to depose others. Accordingly, the Court should deny Luck's motion to compel Alpha to provide "corporate testimony" on the Duplicative Topics because the deposition would not serve any legitimate purpose and would be nothing more than duplicative of the discovery Luck already has obtained (or has indicated he intends to seek). *See Dongguk*, 270 F.R.D. at 75 (quashing deposition topics covering "all communications between [various persons]", where communications were already produced as part of discovery and the relevant persons had already deposed in their individual capacities).

### 4. Topics Regarding Facts that Are Irrelevant to Any Issue In Dispute

Finally, the Court should deny Luck's Motion as to the following remaining topics in Luck's overbroad Notice because they seek facts that are entirely irrelevant to any issue in dispute in this case:

| | |
|---|---|
| Topic 14. | The XFL Standard Player Contract |
| Topic 15. | The XFL budget, including the budgets of the XFL's different departments, for example, Football Operations, Business Operations, the Commissioner Discretion Budget |
| Topic 16. | The decision and instruction to all XFL employees to work from home beginning Monday, March 16 |
| Topic 31. | Any "shared services" agreement between Alpha and/or the XFL, on the one hand, and WWE on the other |
| Topic 32. | The work performed by Wasserman Media Group, LLC for or on behalf of the XFL |
| Topic 33. | The work performed by William Wilson for or on behalf of Alpha |

Topic 34.    Payments by Alpha and/or the XFL, on the one hand, for services rendered by WWE from June 1, 2018 until April 9, 2020

Courts routinely protect parties from the unnecessary burden of having to prepare for and provide Rule 30(b)(6) testimony on subject matters that are not relevant to issues in dispute.  *See GEICO*, 2018 WL 1368024, at *5 (striking deposition topic where "defendants have failed to advance any basis for the relevance of this information. Accordingly, the Court grants GEICO's motion to strike Topic No. 6 in its entirety"); *see also Wells Fargo Bank, N.A. Tr. v. Konover*, No. 3:05CV1924(CFD)(WIG), 2008 WL 11377691, at *6–8 (D. Conn. July 10, 2008) (granting motion for protective order on deposition topics not relevant to the dispute).  Here, Topics 14-16 and 31-34 are wholly irrelevant for the following reasons.

Topics 14, 15 and 16 seek testimony regarding facts that have no bearing on any of the issues in this case and, to the extent they do, those facts are not in dispute.  Topic 14 seeks testimony regarding "the XFL Standard Player Contract" but Defendants have produced the XFL Standard Player Contract and there is no dispute over its content.  Moreover, Callaway's contract was modified at Luck's direction to include a bonus payment, and it is only Callaway's contract that is at issue.  Luck has not (and Defendants submit cannot) identify a single claim or defense to which testimony on the generic topic "XFL Standard Player Contract" would be relevant.  Topic 15 regarding the undefined "XFL budget" likewise is irrelevant to the claims and defenses in the case and, in any event, the budget of any individual XFL department is not an issue in dispute.  Lastly, Topic 16 is irrelevant because there is no dispute that an instruction was issued to all XFL employees to work from home beginning on Monday, March 16.

Topics 31 and 34 seek testimony on the shared services agreement between Alpha and WWE that has no relevance to the parties' substantive claims and defenses in this case.  The only purported reason for Luck including these topics is to attempt to salvage Luck's contrived attempt

to invade Alpha's privilege by arguing that inclusion of WWE attorneys on emails with Alpha employees vitiated the privilege. Alpha has produced a redacted copy of the Shared Service Agreement to Luck, which establishes that WWE attorneys were providing legal services to Alpha.

Topics 32 and 33 relate to irrelevant work performed by third parties for XFL. In any case, both third parties separately were subpoenaed and produced documents in this case. Based on Defendants' document production, Luck was the principal contact at Alpha for those third parties -- indeed, Mr. Wilson is Luck's brother-in-law. Luck's counsel also represented both Will Wilson and Wasserman Media Group in responding to those subpoenas. As such, those materials certainly are equally as available to Plaintiff as to Defendant.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel should be denied, and the Court should instead quash each topic in the Rule 30(b)(6) notice as entirely duplicative, unduly burdensome, and disproportionate to the needs of the case, or implicating protected attorney-client privileged and work product materials.

**DEFENDANT ALPHA
ENTERTAINMENT LLC**

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street

32

Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

Its Attorneys.

## CERTIFICATE OF SERVICE

I hereby certify that, on May 28, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*
  Jeffrey P. Mueller (ct27870)

33