IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK § | | |
| § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | | CIVIL NO. 3:20-cv-516 (VAB) |
| § | | |
| VINCENT K. MCMAHON and § | | |
| ALPHA ENTERTAINMENT LLC § | | |
| § | | July 6, 2021 |
| *Defendants.* § | | |

**PLAINTIFF OLIVER LUCK'S MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL WORLD WRESTLING
ENTERTAINMENT, INC. TO PRODUCE DOCUMENTS**

To the Honorable Judge Bolden:

Plaintiff Oliver Luck ("Luck") submits this memorandum of law in support of his Motion to Compel Word Wrestling Entertainment, Inc. ("WWE") to Produce Documents (the "Motion") and respectfully requests that the Court order WWE to produce documents responsive to Request No. 8 in the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of a Premises in a Civil Action (the "Subpoena") that Plaintiff served on WWE.

### I.  CONCISE STATEMENT OF THE CASE

This lawsuit concerns Defendants' bad faith attempt to avoid payment of $23.9 million owed to Mr. Luck by virtue of his Employment Contract with Defendant Alpha Entertainment, LLC ("Alpha") and a guaranty (the "Guaranty") executed by Defendant Vincent K. McMahon ("McMahon"). *See* ECF 145-1. McMahon, as primary obligor, guaranteed Alpha's performance of its obligations under the Employment Contract. *Id*. Despite fulfilling his obligations as Commissioner and CEO of the XFL, a professional football league, Mr. Luck was wrongfully terminated by Alpha on April 9, 2020, allegedly for cause. *See* ECF 145-2. Defendants' bad faith termination was a sham designed to evade McMahon's obligations under the Guaranty for payment

1

of Mr. Luck's salary and bonuses that McMahon knew he would be required to pay if he did not fabricate an excuse to terminate Mr. Luck before Alpha voluntarily entered bankruptcy on April 13, 2020. *See* ECF 172 at 17 (admitting that "Alpha sought legal advice regarding its contractual rights under Luck's Employment Contract after the XFL season was cancelled and it became clear that Luck and all but a few essential XFL employees necessary to assist with Alpha's bankruptcy would be terminated").

## II.  BACKGROUND

It is undisputed that Defendant McMahon is the Chairman of the Board of Directors and Chief Executive Officer of WWE and was the controlling owner of Alpha at all relevant times. McMahon and WWE were also the owners of Alpha's equity interests, with McMahon owning 100% of Alpha's Class A equity interests and 76.5% of Alpha's Class B equity interests while WWE owned the remaining 23.5% of Alpha's Class B equity interests. *In re Alpha Entertainment LLC,* Case No. 20-10940, ECF 1 at 11 (Bankr. D. Del.).

On April 22, 2021, Plaintiff served the Subpoena on WWE. Ex. 1. The Subpoena included fourteen (14) requests for production (the "Requests"). *Id*. On May 4, 2021, WWE responded with its objections to the fourteen (14) Requests. Ex. 2. On June 1, 2021, counsel for Plaintiff and WWE met and conferred regarding WWE's objections. *See* Ex. 3. During the conference and through subsequent emails, Plaintiff agreed to withdraw Requests Nos. 1-7, 9-12, and 14, and offered to limit Request No. 13 to custodians Jim Johnstone, Brad Blum, and Nicole Palumbo. *Id*. Defendants agreed to produce documents responsive to Request No. 13 limited to custodians Johnstone, Blum, and Palumbo. Other than Request No. 8, Plaintiff and WWE were able to resolve all the Requests.[1]

---

[1] Plaintiff's counsel raised the question of whether Plaintiff and WWE should follow the Court's Chambers Practice of requiring a discovery conference before the filing of a motion to compel as the Court's order (ECF 139) that suspended that requirement was limited to "discovery disputes between the parties" and WWE is not a party to this case, but WWE's counsel, who also represent Defendants Vincent K. McMahon and Alpha Entertainment, LLC, insisted that the Court's order applied to this discovery dispute between Plaintiff and WWE.

## II. ARGUMENT

The proper scope of discovery is defined by the Federal Rules of Civil Procedure. Rule 26(b)(1) defines the scope of discovery, unless otherwise limited by court order:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). In general, "the Federal Rules of Civil Procedure concerning discovery are to be construed broadly." *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005); *see also DeAngelo v. Yellowbook Inc.*, No. 3:12-CV-520 GWC, 2015 WL 588627, at *2 (D. Conn. Feb. 10, 2015) ("[t]he Federal Rules envision a broad scope of discovery").

Under Rule 26, the claims and defense in this case shape the scope of discovery. Under Count Four of Plaintiff's Second Amended Complaint, Mr. Luck asserts that:

> "Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract in violation of the implied duty of good faith and fair dealing in an effort to avoid paying Mr. Luck the amounts owed under the Guaranty. McMahon directed and assisted Alpha in the wrongful termination, breach and/or repudiation of the Employment Agreement, in an effort to avoid paying Mr. Luck the amounts owed under the Guaranty. McMahon has continued to ignore his obligations under the Guaranty by refusing to pay Luck. Thus, McMahon has breached the duty of good faith and fair dealing implied in the Guaranty."

ECF 145 ¶ 39.[2] Regarding the implied covenant of good faith and fair dealing, the Connecticut Supreme Court has stated that:

> "[I]t is axiomatic that the … duty of good faith and fair dealing is a covenant implied into a **contract** or a contractual relationship …. In other words**, *every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement***.

---

[2] Count Four of Plaintiff's Third Amended Complaint that Plaintiff has sought leave to file includes the same assertion. *See* ECF 161; ECF 161-1 ¶ 42.

3

> …
>
> "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith …. Bad faith in general implies … a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive …. Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal quotation marks omitted.) *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.,* supra, 269 Conn. at 433, 849 A.2d 382. "[B]ad faith may be overt or may consist of inaction, and it may include evasion of the spirit of the bargain …. *Elm Street Builders, Inc. v. Enterprise Park Condominium Assn., Inc.,* 63 Conn. App. 657, 667, 778 A.2d 237 (2001), quoting 2 Restatements (Second), Contracts § 205, comment (d) (1981); see also 23 S. Williston, Contracts (4th Ed. Lord 2002) § 63:22, p. 508 (a party who evades the spirit of the contract … may be liable for breach of the implied covenant of good faith and fair dealing …)." (Internal quotation marks omitted.) *Laundry v. Spitz,* supra, 102 Conn. App. at 43, 925 A.2d 334. ***"[W]hen one party performs the contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, there is a breach of the covenant of good faith and fair dealing, and hence, a breach of contract, for which damages may be recovered …."*** (Internal quotation marks omitted.) *Id*., at 44, 925 A.2d 334.

*Greysen v. Securities Security Services USA, Inc.*, 322 Conn. 385, 399 (2016) (emphasis added).

As *Greysen* makes clear, the determination of whether there is a breach of the implied duty of good faith and fair dealing is a fact intensive inquiry. Plaintiff's claims that Alpha and McMahon breached the implied covenant of good faith and fair dealing by fabricating pretextual reasons to terminate Mr. Luck to avoid paying Luck's salary and bonuses renders discovery related to whether Mr. Luck was terminated for reasons other than those alleged by Defendants relevant. Therefore, documents concerning Defendants' actions prior to the termination and Defendants' reasoning for the termination are relevant and discoverable.

Request No. 8 asks WWE to produce "All WWE board meeting decisions or WWE board meeting notes regarding the XFL or Alpha." *See* Ex. 1 at 10. WWE responded to Request No. 8 with the following objection:

> "WWE objects to Request No. 8 on the grounds that it is harassing and not reasonably calculated to lead to the discovery of information relevant to any party's claims or defenses and proportional to the needs of the case."

Ex. 2 at 6.

As noted above, Defendant McMahon is the Chairman of the Board of Directors and Chief Executive Officer of WWE, McMahon was controlling owner and Alpha, and McMahon and WWE were the owners of Alpha's equity interests. *In re Alpha Entertainment LLC,* Case No. 20-10940, ECF 1 at 11 (Bankr. D. Del.). Defendants have already admitted that McMahon first decided that Alpha was going to voluntarily enter bankruptcy and thus wanted to devise a way to terminate Mr. Luck for cause to avoid McMahon's obligations to pay Mr. Luck his remaining salary and bonuses. *See* ECF 172 at 17 (admitting that "Alpha sought legal advice regarding its contractual rights under Luck's Employment Contract after the XFL season was cancelled and it became clear that Luck and all but a few essential XFL employees necessary to assist with Alpha's bankruptcy would be terminated"). Any documents or communications with McMahon or WWE's board members related to terminating the XFL football season, reducing Alpha's budget or funding, terminating Alpha employees, placing Alpha into bankruptcy or otherwise selling or disposing of McMahon's and WWE's equity interest in Alpha, or terminating Mr. Luck are relevant to Mr. Luck's claim that Alpha and McMahon devised pretextual reasons to terminate Mr. Luck for cause. Therefore, the board meeting decisions and notes from WWE's board meetings regarding the XFL are relevant and should be produced.

## IV. CONCLUSION

WHEREFORE, Plaintiff Oliver Luck respectfully requests that the Court grant his Motion to Compel WWE to Produce Documents, order WWE to produce documents responsive to Request No. 8 in the Subpoena within 14 days from the Court's order, and award Plaintiff all other just relief.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI, LARKIN & STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I communicated with Defendants in an attempt to resolve this matter via email exchange and telephone call. *See* Ex. 3 attached hereto. We were unable to come to an agreement regarding Request No. 8. The remaining document requests in the Subpoena have been resolved.

*/s/Jared A. McHazlett*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2021, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jared A. McHazlett*