## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK, | : | CASE NO. 3:20-cv-00516-VAB |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON and ALPHA | : | |
| ENTERTAINMENT LLC, | : | |
| | : | JULY 14, 2021 |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PLAINTIFF'S ANSWERS TO INTERROGATORIES AND MOTION TO DETERMINE THE SUFFICIENCY OF PLAINTIFF'S OBJECTIONS AND ANSWERS TO REQUESTS FOR ADMISSION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 5

I.     LUCK'S EMPLOYMENT CONTRACT WITH ALPHA ............................... 5

II.    LUCK'S BREACHES OF THE EMPLOYMENT CONTRACT AFTER MARCH 13, 2020 ................................................................................................. 5

III.   ALPHA TERMINATES LUCK FOR CAUSE ........................................... 6

IV.   LUCK DENIES HE ABANDONED HIS XFL DUTIES AFTER MARCH 13, 2020 ................................................................................................. 6

V.    LUCK REFUSES TO RESPOND TO DEFENDANTS' DISCOVERY REQUESTS DIRECTED TO LUCK'S SUPPOSED XFL WORK FROM MARCH 13, 2020 THROUGH APRIL 9, 2020 ................................. 7

LEGAL STANDARD .......................................................................................... 10

ARGUMENT ....................................................................................................... 11

I.     LUCK'S RESPONSES TO ALPHA'S INTERROGATORIES ARE EVASIVE AND INCOMPLETE ...................................................................... 11

II.    LUCK'S OBJECTIONS AND RESPONSES TO THE RFAS DO NOT COMPLY WITH RULE 36 ........................................................... 15

      A.    Luck's Objections Are Not Justified ............................................. 17

      B.    Luck's Responses Do Not Comply With Rule 36(a)(4) .................... 19

III.   LUCK SHOULD BE COMPELLED TO RESPOND TO THE MCMAHON INTERROGATORIES ................................................................. 21

IV.   LUCK IS LIABLE FOR DEFENDANTS' REASONABLE EXPENSES INCURRED WITH THIS MOTION ................................................... 21

CONCLUSION .................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Jundi v. Rockefeller*,
    91 F.R.D. 590, 594 (W.D.N.Y. 1981) ....................................................................................18

*Arroyo v. Dept. of Public Safety*,
    Civ. No. 3:11cv268, 2012 WL 3113139 (D. Conn. July 31, 2012)........................................17

*Beberaggi v. New York Transit Auth.*,
    No. 93 Civ. 1737, 1994 WL 18566 (S.D.N.Y. Jan. 19, 1994)....................................20, 21, 22

*Booth Oil Site Admin Gr. v. Safety-Kleen Corp.*,
    194 F.R.D. 76 (W.D.N.Y. 2000)......................................................................................16, 17

*Boudreau v. Smith*,
    Case No. 3:17-cv-589, 2019 WL 3973997 (D. Conn. Aug. 22, 2019) ...................................15

*Broadcast Music, Inc. v. Hub at Cobb's Mill, LLC*,
    3:13-cv-01237, 2015 WL 1525936 (D. Conn. Apr. 2, 2015) .................................................15

*Brown v. McKinley Mall, LLC*,
    15-cv-1044, 2017 WL 2332330 (W.D.N.Y. May 30, 2017) ......................................20, 21, 22

*Cole v. Towers Perrin Forster & Crosby*,
    256 F.R.D. 79 (D. Conn. 2009)..............................................................................................10

*Concerned Citizens of Belle Haven v. Belle Haven Club*,
    223 F.R.D. 39 (D. Conn. 2004)..............................................................................................15

*Diederich v. Dept. of Army*,
    132 F.R.D. 614 (S.D.N.Y. 1990) ........................................................................15, 18, 19, 21

*Gov't Employees Ins. Co. v. Strut*,
    19-cv-728, 2021 WL 230902 (W.D.N.Y. Jan. 22, 2021) ................................................ *passim*

*Herrera v. Scully*,
    143 F.R.D. 545 (S.D.N.Y. 1992) ...........................................................................................20

*Klein v. AIG Trading Group, Inc.*,
    228 F.R.D. 418 (D. Conn. 2005).............................................................................................10

*Matthews v. USAir, Inc.*,
    882 F. Supp. 274 (N.D.N.Y. 1995).........................................................................................13

*McCullough v. World Wrestling Entm't, Inc.*,
    3:15-cv-1074, 2018 WL 2932354 (D. Conn. Feb. 22, 2018)..............................................3, 13

*Napolitano v. Synthes USA, LLC*,
    297 F.R.D. 194,198 (D. Conn. 2014)................................................................................20, 21

*T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*,
    174 F.R.D. 38 (S.D.N.Y. 1997) ...........................................................................15, 18, 20

*Thalheim v. Eberheim*,
    124 F.R.D. 34 (D. Conn. 1988)....................................................................................15, 22

*This, LLC v. Jaccard Corp.*,
    No. 15-cv-1606, 2017 WL 547902 (D. Conn. Feb. 9, 2017)........................................3, 11, 13

*U.S. Bank Nat'l Assoc. v. Triaxx Asset Mgmt. LLC*,
    18-cv-4044, 2020 WL 9549505 (S.D.N.Y. Nov. 30, 2020) ...........................................15

*XChange Telecom Corp. v. Spring Spectrum L.P.*,
    No. 14-cv-54, 2015 WL 773752 at *5 (N.D.N.Y. Feb. 24, 2015) ...........................................11

## Other Authorities

Fed. R. Civ. P. 33 ................................................................................................................10, 13

Fed. R. Civ. P. 33(b) ...........................................................................................................3, 13

Fed. R. Civ. P. 33(d) ...........................................................................................................*passim*

Fed. R. Civ. P. 36 ................................................................................................................*passim*

Fed. R. Civ. P. 36(6) ...........................................................................................................10

Fed. R. Civ. P. 36(a)(1) .......................................................................................................22

Fed. R. Civ. P. 36(a)(4) .......................................................................................................*passim*

Fed. R. Civ. P. 36(a)(6) .......................................................................................................4, 10, 17

Fed. R. Civ. P. 37 ................................................................................................................23

Fed. R. Civ. P. 37(a)(1) .......................................................................................................10

Fed. R. Civ. P. 37(a)(3)(B)(iii) ...........................................................................................10

Fed. R. Civ. P. 37(a)(4) .......................................................................................................10

Fed. R. Civ. P. 37(a)(5).......................................................................................................10, 11, 22

Defendants Vincent K. McMahon ("McMahon") and Alpha Entertainment LLC ("Alpha") (collectively, "Defendants") hereby submit this memorandum of law in support of their motion to compel Plaintiff Oliver Luck ("Luck") to answer separately and fully Interrogatory Nos. 13-18 of Alpha's Fourth Set of Interrogatories ("Alpha's Interrogatories"); to determine that Luck's responses and objections to Defendants' Second Set of Requests for Admissions (the "RFAs") do not comply with Rule 36 of the Federal Rules of Civil Procedure; and to compel Luck to answer separately and fully McMahon's Second Set of Interrogatories ("McMahon's Interrogatories") which relate to the RFAs.

## INTRODUCTION

Defendants are constrained to file this Motion because Luck has refused to answer any interrogatories or requests for admission regarding his own activities from March 13, 2020 through April 9, 2020. His activities during that time period are highly relevant as Alpha terminated Luck for cause as a result of, among other things, (i) Luck's use of his Alpha-issued iPhone to perform work unrelated to the XFL and (ii) his failure to devote substantially all of his business time to the performance of his duties to the XFL from March 13, 2020 through April 9, 2020.

In order to sharpen the evidence of Luck's activities during this key period and in an effort to simplify the presentation of such evidence at the summary judgment and/or trial phase of the case, Defendants served Alpha's Interrogatories, the RFAs and McMahon's Interrogatories, all of which seek discovery on Luck's position as to the communications that Luck made during each day from March 13 through April 9, 2020 that related to XFL work versus non-XFL work. It is undeniable that Luck possesses the information necessary to identify such communications. Defendants have produced to Luck his non-privileged emails from March 13 through April 9, 2020, the phone logs of call details from Luck's XFL iPhone and authenticated records from

Alpha's cellular service provider (AT&T) that reflect Luck's phone calls from March 13 through April 9, 2020. In addition, Luck has produced his text messages from March 13 through April 9, 2020 and has represented to this Court that he possesses a forensic image of the contents of his Alpha-issued iPhone. Luck also requested, and received, a copy of the forensic image of the iPhone made by Defendants' expert. In fact, using these indisputable records of his activities from March 13 through April 9, 2020, Defendants attached as exhibits to the RFAs, the documents they believe reflect Luck's emails, text messages and phone calls for each day.[1]

Yet, Luck responds to Alpha's Interrogatories, the RFAs, and McMahon's Interrogatories with baseless objections and evasive responses, thereby stonewalling Defendants' efforts (i) to discover Luck's contentions on what constitutes the XFL-related work he performed from March 13 through April 9, 2020 and (ii) to narrow the scope of disputed issues related to those contentions, including the universe of evidence Luck contends reflect his XFL-work. In contrast to Luck's tactics, Defendants have provided fulsome, substantive responses to Luck's discovery seeking Defendants' contentions in this case. *See* Ex. 1. The Court should grant Defendants' Motion for the following reasons.

*First*, Luck has failed to answer "separately and fully" Alpha's Interrogatories requesting "[f]or each day from March 13, 2020 through April 9, 2020," that *Luck* identify the emails and text messages that *he contends* he sent or received and the phone calls he made or received that were related to the XFL's or Alpha's business and those that were not. *See* Ex. 2. To properly respond to those Interrogatories, Luck was required "to make a legal judgement about which facts

---

[1] Due to the size of the exhibits to the RFAs, Defendants were unable to include them as exhibits to the Motion. Defendants have provided as Ex. 6 a representative sample of the exhibits attached to the RFAs from one specific day. Defendants can provide the Court with hard copies of the remainder of the exhibits to the RFAs upon request.

support [his] contention[s] and how they do so." *See*, *e.g.*, *Gov't Employees Ins. Co. v. Strut*, 19-cv-728, 2021 WL 230902 at *2 (W.D.N.Y. Jan. 22, 2021) (quoting *This, LLC v. Jaccard Corp.*, No. 15-cv-1606, 2017 WL 547902 at *3 n.3 (D. Conn. Feb. 9, 2017)). Luck, however, improperly invoked Rule 33(d) as a pretext for refusing to provide his contentions.

Specifically, Luck's responses direct Defendants to every email, text message and phone call from the relevant time period without differentiating between those that he contends reflect his work on XFL and/or Alpha business and those that do not. *See* Ex. 3.[2] It is inherently impossible for Defendants to ascertain Luck's contentions from an examination of the identified business records and thus, Luck cannot rely on Rule 33(d). *See Gov't Employees Ins. Co.*, 2021 WL 230902 at *2; *This, LLC v*, 2017 WL 547902 at *3 n.3.

Luck's responses also are deficient because they fail to provide the specificity required by Rule 33(d). "Rule 33[d] does not permit a party to avoid specific response to interrogatories by reference to undifferentiated masses of documents." *McCullough v. World Wrestling Entm't, Inc.*, 3:15-cv-1074, 2018 WL 2932354 at *5 (D. Conn. Feb. 22, 2018) (quoting *This, LLC*, 2017 WL 547902 at *3). Nonetheless, Luck directed Defendants generally to the "documents produced in this action," including ***every*** text message and ***every*** email from March 13 through April 9, 2020. *See* Ex. 3. Luck's identification of "masses" of documents to avoid answering Alpha's highly relevant Interrogatories is an abuse of Rule 33(d). Further, Luck claims that Defendants could and should review the documents for themselves. At the same time, however, Luck has refused to stipulate to Defendants' classification of a communication as being for XFL or non-XFL purposes, which is the entire reason that Defendants sought Luck's contentions in this regard in the first

---

[2] Luck repeatedly refers to Rule 33(b) in his responses to Alpha's Interrogatories. Based on the content of the responses, Defendants believe Luck intended to refer to Rule 33(d) and the error was replicated likely by cutting and pasting his responses.

instance.

Finally, as a ploy to not answering Alpha's Interrogatories regarding his phone calls, Luck claims that he has "no way to identify phone calls [he] made or received on the iPhone." *Id*. Defendants, however, produced to Luck the phone logs of call details from Luck's XFL iPhone and the authenticated phone records maintained by Alpha's cellular provider (AT&T), and those phone records identify all of the phone calls Luck made or received from his iPhone from March 13 through April 9, 2020. *See* Ex. 4. Accordingly, there is no impediment to Luck specifically answering Alpha's Interrogatories directed to his phone calls.

**Second**, Luck's objections and responses to the RFAs violate Rule 36. As a means to simplify the evidence and narrow the factual disputes for summary judgment and trial, the RFAs simply and succinctly request that Luck (i) admit that for each day from March 13 through April 9, 2020, he sent emails, sent and received text messages and made or received phone calls reflected in exhibits Defendants attached to the RFAs and (ii) to admit that there were no other emails, text messages or phone calls on the days covered by the RFAs. *See* Ex. 5. Luck refused to answer any of those RFAs. In violation of Rule 36, Luck asserted a sundry list of unjustified objections, and responded he lacked "sufficient information or knowledge to admit or deny" each of the RFAs. *See* Ex. 7. Luck, however, did not indicate he performed the "reasonable inquiry" required by Rule 36(a)(4) to assert a lack of information or knowledge. Because Luck's objections and responses do not comply with Rule 36, the Court should deem the RFAs admitted or order Luck to provide amended answers that truthfully and directly answer each of the RFAs. *See* Fed. R. Civ. P. 36(a)(6).

**Finally**, Luck does not substantively respond to McMahon's Interrogatories requesting that, to the extent Luck's responses to the RFAs were not unqualified admissions, Luck identify

the emails, text messages and phone calls he contends he sent, received, or made that are not reflected in the exhibits to the RFAs. *See* Exs. 8 & 9.  Because Luck's refusal to respond to McMahon's Interrogatories is based on his improper objections and responses to the RFAs, if the Court orders Luck to provide amended responses to the RFAs, the Court also should order that Luck answer fully and separately McMahon's Interrogatories to the extent necessary based on his amended answers to the RFAs.

At bottom, the Court should reject Luck's complete refusal to state his contentions regarding what was XFL versus non-XFL work preventing Defendants from establishing the facts and simplifying evidentiary issues in this case.

## BACKGROUND

### I.      Luck's Employment Contract with Alpha

Pursuant to Luck's Employment Contract with Alpha, Luck was required, among other things to follow all applicable XFL policies and directives and "devote substantially all of his business time to the performance of his duties to the XFL, provided that he may (i) continue to serve as a member of the board of American Campus Communities, Inc. and (ii) serve on not-for-profit boards and participate in other civic and charitable activities, so long as such activities do not interfere with the performance of his duties to the XFL." ECF No. 94-1.  The XFL's Employee Handbook & Code of Business Conduct and Technology Acceptable Use Policy prohibited Luck from using his Alpha-issued iPhone for non-XFL related business.  *See* ECF No. 137-7, 137-8.

### II.     Luck's Breaches of the Employment Contract After March 13, 2020

On March 13, 2020, in the midst of the COVID-19 pandemic that was an existential threat to the XFL and ultimately caused Alpha to file for bankruptcy, Luck left town without ever advising McMahon that he was doing so and never returned while other XFL executives and

McMahon worked to deal with the crisis. Ex. 10 at 284-285. Luck did not make a single call to McMahon during this time period, failed to attend conference calls on pressing XFL business matters, and otherwise largely disengaged from the XFL. *Id.* at 280-282; 291-292; 296-302; 306-308; 310-322. Luck also chose to conduct business with other entities instead of the XFL using his Alpha-issued iPhone, including choosing to participate in meetings of the American Campus Communities, Inc.'s COVID Task Force instead of participating in meetings of the XFL's COVID Working Group which were scheduled at the same times and corresponding with, and transmitting materials to, American Campus Communities, Inc. Board Member, Carla Sublett. *Id.*

**III.      Alpha Terminates Luck for Cause**

On April 9, 2020, Alpha sent Luck a letter notifying him of the termination of his employment for cause and providing him with what was expressly stated to be a non-exhaustive list of reasons constituting cause. ECF No. 94-2. Among other things, the termination letter asserted that Luck was grossly negligent in the performance of his XFL duties after March 13, 2020, and failed to devote substantially all of his business time to the XFL after March 13, 2020, as required by his Employment Contract. *Id.*

**IV.      Luck Denies He Abandoned His XFL Duties After March 13, 2020**

Throughout this lawsuit, Luck has denied that Alpha had cause to terminate him for using his iPhone for non-XFL work and for failing to devote substantially all of his business time to the XFL after March 13, 2020. In his deposition, Luck testified that he worked on average only 3-4 hours per day on XFL business from March 13, 2020 through April 9, 2020. Ex. 10 at 342. When asked to provide details about that supposed work, Luck testified he could not do so and that he would need to look at emails, text messages and phone logs to reconstruct his activities. *Id.* at 280-281; 291-292; 299-300; 330-332.

V.   **Luck Refuses to Respond to Defendants' Discovery Requests Directed to Luck's Supposed XFL Work from March 13, 2020 through April 9, 2020**

Following-up on Luck's testimony, Alpha first served Luck with its Fourth Set of Interrogatories on May 17, 2021 asking Luck to identify the emails, text messages and phone calls he contends reflect his work from March 13 through April 9, 2020. Below is a representative example of the Interrogatories as they relate to text messages:

> **Interrogatory No. 13**
> For each day from March 13, 2020 through April 9, 2020, Identify each text message that You sent or received on your Alpha-issued iPhone that was related to the XFL's and/or Alpha's business.
>
> **Interrogatory No. 16**
> For each day from March 13, 2020 through April 9, 2020, Identify each text message that You sent or received on your Alpha-issued iPhone that was not related to the XFL's and/or Alpha's business.

*See* Ex. 2 at 4, 5; *see also* Ex. 2 at 4-5 (Interrogatory Nos. 14, 15, 17, and 18 directed to emails and phone calls). Luck categorically refused to provide his contentions in response to Alpha's Interrogatories. *See* Ex. 3.

Then, on June 1, 2021, Defendants served Luck with RFAs seeking admissions regarding the emails, text messages and phone calls Luck sent, received or made from March 13 through April 9, 2020. *See* Ex. 5.[3] Defendants attached as exhibits to the RFAs the documents that Defendants believe reflect those emails, text messages and phone calls. *Id.*; Ex. 6. Below is a representative set of the RFAs for one day:

> **RFA No. 21**
>
> Admit that on March 13, 2020 You sent the Emails attached hereto as Exhibit 1 from Your Alpha-issued phone.

---

[3] Although Defendants provided Luck with the exhibits to the RFAs on June 1 via an FTP site, Luck's counsel requested that Defendants "re-upload or re-send" the exhibits on June 23, just 8 days before Luck served his objections and responses to the RFAs.

**RFA No. 22**

Admit that on March 13, 2020 You did not send any Emails from Your Alpha-issued phone other than those reflected in Exhibit 1.

**RFA No. 23**

Admit that on March 13, 2020 You sent and/or received the text messages attached hereto as Exhibit 2 from Your Alpha-issued phone.

**RFA No. 24**

Admit that You did not produce in the Litigation any text messages from Your Alpha-issued phone that were sent and/or received on March 13, 2020 other than those reflected in Exhibit 2.

**RFA No. 25**

Admit that on March 13, 2020 You spent 169 minutes on Your Alpha issued phone as reflected in the phone log attached hereto as Exhibit 3.

*Id.* at 4. The RFAs also sought admissions that phone numbers identified in Luck's phone logs were of certain XFL personnel and admissions that Luck did not place or receive any phone calls to or from XFL personnel other than those reflected in the exhibits.[4]  *Id.* at 31-47.  Defendants broke out and attached as exhibits to these RFAs the phone calls to specific phone numbers and/or on specific days that would allow Luck to easily confirm that he made or received the phone calls from a particular person or on a particular day.

By way of example, Defendants identified all of the calls Luck made or received from Doug Whaley, Senior Vice President of Football Operations for the XFL and one of Luck's right hand men.  *See* Ex. 11. Those records demonstrate that, throughout the entire time from March 13 through April 9, 2020, Luck spoke to Whaley only on one day (March 23) and only for a few

---

[4] Luck admitted all but two of the RFAs related to the phone numbers of XFL personnel.  *See* Ex. 7 at RFA Nos. 160, 162, 166, 168, 170, 174, 176, 178, 180, 182, 184, 186, 188, 190, 192, 194, 196, 198, 200, 202, 204.  Those RFA responses are not subject to this Motion, and demonstrate that Luck can easily verify the dates of his calls to or from such persons.

minutes.  *Id.*  As such evidence is damning to Luck's claim that he was satisfying his contractual obligations to the XFL from March 13 through April 9, 2020, during the deposition of Whaley, Luck's counsel objected to the summary of phone calls between Luck and Whaley during the time period on the purported grounds that Luck was not required to rely on the records of his cell phone activities, previewing how Luck and his counsel intend to approach trial in this case unless Luck is compelled to provide his contentions.  *See* Ex. 12 at 328-331.

Concurrent with the RFAs, McMahon served his Second Set of Interrogatories.  *See* Ex. 8. McMahon's Interrogatories were targeted to Luck's responses to the RFAs that were not unqualified admissions, if any, and requested that for any such responses, Luck identify the emails, text messages or phone calls that he contends he sent, received or made that were not reflected in the exhibits to the RFAs.  *Id.*

Despite the proper nature and scope Defendants' discovery requests, Luck categorically refused to identify the emails, text messages and phone calls that he contends reflect his XFL and non-XFL related work or to admit that the exhibits attached to the RFAs reflected that work.  In refusing to respond to Alpha's Interrogatories, Luck directed Defendants to every email, text message and phone call dated March 13 through April 9, 2020, failing to distinguish between those that relate to his XFL-work and those that do not.  *See* Ex. 3.  In response to the RFAs, Luck asserted a litany of unjustified objections and then provided the following identical response to the RFAs: "Based on the foregoing, Plaintiff lacks sufficient information or knowledge to admit or deny the Request and, therefore, the Request must be denied."  *See generally* Ex. 7.  Nowhere in Luck's responses did he represent that he made a "reasonable inquiry" and that the information Luck knows or can readily obtain is insufficient to enable him to admit or deny the RFAs, as required by Rule 36.  *See* Fed. R. Civ. P. 36(a)(4).  Finally, Luck did not substantively respond to

McMahon's Interrogatories, relying on his objections and responses to the RFAs.  *See* Ex. 9.

## LEGAL STANDARD

"[A] party may move for an order compelling disclosure or discovery," including when "a party fails to answer an interrogatory submitted under Rule 33."  Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii).  "[A]n evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  In addition, Rule 36(a)(6) provides that a party "may move to determine the sufficiency of an answer or objection" to requests for admission. Fed. R. Civ. P. 36(a)(6).  "Unless the court finds an objection justified it must order that an answer be served" and "[o]n a finding that an answer does not comply with [Rule 36], the court may order either that the matter is admitted or that an amended answer be served."  *Id.*

"The party resisting discovery bears the burden of showing why discovery should be denied."  *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).  To justify a refusal to respond, "the objecting party must do more than simply intone [the] familiar litany that the [requests] are burdensome, oppressive, or overly broad."  *Klein v. AIG Trading Group, Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal quotations mark omitted).  "The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  *Id.* (internal quotation marks omitted).

If the Court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses in making the motion including attorneys' fees" unless the court finds one of the enumerated exceptions listed in Rule 37(a)(5)

applies.  Fed. R. Civ. P. 37(a)(5); *see also* Fed. R. Civ. P. 36(6) (providing that Rule 37(a)(5) applies to an award of expenses when an answer does not comply with Rule 36).

Because Luck has provided evasive and incomplete responses to Alpha's Interrogatories, the RFAs and McMahon's Interrogatories, the Court should grant Defendants' Motion, order Luck to fully respond to Defendants' discovery and require Luck to pay Defendants' reasonable expenses in making this Motion, including attorneys' fees.

## ARGUMENT

**I.      Luck's Responses to Alpha's Interrogatories Are Evasive and Incomplete.**

The Court should compel Luck to provide complete and accurate answers to Alpha's Interrogatories for the following reasons.

***First***, Luck improperly uses Rule 33(d) to evade answering Alpha's Interrogatories.  "Rule 33[(d)] production is suited to those discovery requests requiring a compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents.  Accordingly, Rule 33[(d)] is well-suited to reply to inquiries of an intensely objective nature." *This, LLC,* 2017 WL 547902 at *3 n.3 (quoting *XChange Telecom Corp. v. Spring Spectrum L.P.*, No. 14-cv-54, 2015 WL 773752 at *5 (N.D.N.Y. Feb. 24, 2015)).  "Rule 33[(d)] is not appropriate where interrogatories pose questions of fact or mixed questions of law and fact which require the exercise of particular knowledge and judgment on the part of the responding party," including judgement about what facts support a contention or how those facts support a contention.  *Id.*; *see also Gov't Employees*, 2021 WL 230902 at *2.

Alpha's Interrogatories are of the latter nature as they require ***Luck*** to identify the emails, text messages and phone calls from March 13 through April 9, 2020 that ***Luck contends*** reflect his XFL and non-XFL activities.  Luck has refused to identify those documents; he invokes Rule

11

33(d) and directs Defendants to every email, text message and phone call from the relevant time period without differentiating between the documents that he contends reflect his work on XFL business and those that do not.  By way of example, in his responses to Interrogatory Nos. 13 and 16 which relate to Luck's text messages, Luck provided the same answer:

> Pursuant to Federal Rule of Civil Procedure 33(b) [sic], Plaintiff produced text messages for the timeframe March 13, 2020 through April 9, 2020 as the bates-numbered documents listed below, from which Defendants may derive or ascertain the answer.

Ex. 3 at p. 5-6, 9-12.  It is factually impossible that every text message Luck sent or received was, at the same time, both related to XFL/Alpha business and unrelated to XFL/Alpha business.  Luck is simply evading responding in a way which would demonstrate the substantial amounts of time he spent on non-XFL matters versus minimal amounts on XFL matters.  Luck's position on that factual dispute is highly relevant given Luck's denial that Alpha had cause to terminate him for his failure to devote substantially all of his business time to the XFL after March 13, 2020.

In this regard, the Western District of New York's opinion in *Gov't Employees* is particularly instructive.  In *Gov't Employees*, plaintiffs alleged defendants committed fraud in connection with their submission of medical charges including falsifying records by using "boilerplate" language.  2021 WL 230902 at *1-2.  To test that claim, defendants propounded an interrogatory asking that "Plaintiffs identify 'by patient, claim, document and page number each example of boilerplate and identical findings' in Defendants' treatment notes.  *Id.*  Plaintiffs answered the interrogatory by relying on Rule 33(d).  On defendants' motion to compel, the court held that plaintiffs were not permitted to rely on Rule 33(d) because:

> Defendants' inquiries required Plaintiffs to exercise their own judgment and knowledge to identify which records and evidence are, in *their* view, relevant to their claims and defenses.  Only Plaintiffs can identify which language they believe is "boilerplate," which diagnoses they believe are false, which treatments they believe were unnecessary, and which treatment protocols they believe are "contravened by" the contemporaneous accident reports.  These are not simply

> issues of objective fact that Defendants are equally capable of discovering by reviewing the relevant records; Defendants' interrogatories required Plaintiffs "to make a legal judgment about which facts support the contention[s] and how they do so," *This, LLC v. Jaccard Corp.*, No. 15-CV-1606, 2017 WL 547902, at *3 n.3 (D. Conn. Feb. 9, 2017).  Rule 33(d) may not be invoked in such circumstances. *See id.*

*Id.* (emphasis in original).  Here, the Court should apply the analysis and rationale from *Gov't Employees* and reject Luck's reliance on Rule 33(d) to hide the ball on his position as to the evidence of his XFL and non-XFL work.

**Second**, Luck's responses to Alpha's Interrogatories fail to satisfy the specificity Rule 33(d) mandates.  "Rule 33 does not permit a party to avoid specific responses by reference to undifferentiated masses of documents." *McCullough*, 2018 WL 2932354 at *5 (quoting *This, LLC*, 2017 WL 547902 at *3); *see also Matthews v. USAir, Inc.*, 882 F. Supp. 274, 275 (N.D.N.Y. 1995) (Rule 33(d) "does not permit a party to answer simply by directing the seeking party to an undifferentiated mass of business records which may or may not answer the interrogatory") (quotation omitted); *This, LLC,* 2017 WL 547902 at *4 ("directing the interrogating party to a mass of business records" is an "abuse" of Rule 33(d)).  All of Luck's responses fail to comply with Rule 33(d) in this regard.

For text messages, Luck identifies the Bates numbers for every text message he produced in the case from March 13 through April 9, 2020.  Ex. 3 at 5-6, 9-12.  For emails and phone calls, Luck does not even bother to identify any documents by Bates number.  *See id.* at 7-8, 12-14 ("[p]ursuant to Federal Rule of Civil Procedure 33(b) [sic], Defendant may ascertain the answer to this Interrogatory through a review of Defendant's own business records (Mr. Luck's XFL e-mails for the timeframe March 13, 2020 to April 9, 2020, in Defendant's possession)"); *id.* at 8-9, 14-16 ("[t]he answer to this Interrogatory may be determined by examining the documents produced in this action and the burden of preparing a narrative answer to this Interrogatory will be

substantially higher on Mr. Luck.").

The court's opinion in *Gov't Employees* is again instructive.  After finding plaintiffs could not invoke Rule 33(d) in response to interrogatories similar to Alpha's Interrogatories, the Court explained:

> Moving forward, the Court expects that Plaintiffs will provide ***full, specific, detailed,*** and ***complete*** responses to each of Defendants' disputed interrogatories. Plaintiffs' previous strategy in answering interrogatories -- directing Defendants to the allegations in the complaint or to [plaintiffs'] "claims files" generally -- is inconsistent with their responsibility to answer each interrogatory "separately and fully." [citations omitted].  Although Plaintiffs reject the notion that they could be required to "identify ***every*** misrepresentation contained within ***every*** document of ***every*** patient file," [citation omitted], that is exactly what this Court is requiring them to do.  Defendants are entitled to understand and investigate Plaintiffs' claims in their full scope.

*Gov't Employees*, 2021 WL 230902 at *2 (emphasis in original).  Notably, the court required plaintiffs in *Gov't Employees* to identify every misrepresentation within every document of every patient file even though the parties had exchanged 1.5 million documents and there were nearly 18,000 fraudulent charges alleged.  *Id.* at *3.  Just as in *Gov't Employees*, Luck should be required to respond "separately and fully" to Alpha's Interrogatories by identifying ***specifically any and all*** text messages, emails and phone calls from March 13 through April 9, 2020 that he asserts relate to the XFL's and/or Alpha's business and those that do not.

***Finally***, the Court should reject Luck's disingenuous claim that he has "no way to identify phone *calls* I made or received on the iPhone" and compel him to respond substantively to Alpha's Interrogatory Nos. 15 and 18.  *See* Ex. 3.  Defendants have produced to Luck the phone logs of call details from Luck's XFL iPhone and the authenticated phone records from AT&T that identify the phone calls he made or received on his iPhone from March 13 through April 9, 2020.  *See* Ex. 4.  Those business records provide the phone numbers from which Luck could determine, along with, to the extent necessary, the emails and text messages he has in his possession, whether a

phone call related to XFL business or non-XFL business.

**II.       Luck's Objections and Responses to the RFAs Do Not Comply with Rule 36**

"The purpose of requests for admission under Rule 36 is to 'reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact.'"  *Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 44 (D. Conn. 2004) (quoting *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997)); *see also Boudreau v. Smith*, Case No. 3:17-cv-589, 2019 WL 3973997 at *1 (D. Conn. Aug. 22, 2019) (requests for admission are intended to "assist[] the parties and the court to narrow the factual issues to be presented for determination in connection with [] a [litigated] claim, either on motion or at trial") (internal quotation omitted); *Broadcast Music, Inc. v. Hub at Cobb's Mill, LLC*, 3:13-cv-01237, 2015 WL 1525936 at *4 (D. Conn. Apr. 2, 2015) (purpose of Rule 36 is "to reduce the cost of litigation . . . by narrowing the scope of disputed issues . . . facilitating the succinct presentation of cases to the trier of fact . . . and eliminating the necessity of proving undisputed facts.")  (quoting *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988)).   The goals of Rule 36 are achieved when requests seek to "ascertain whether the answering party is prepared to admit [a fact] or regards the matter as presenting a genuine issue for trial . . . ."  *U.S. Bank Nat'l Assoc. v. Triaxx Asset Mgmt. LLC*, 18-cv-4044, 2020 WL 9549505 at *2 (S.D.N.Y. Nov. 30, 2020).

Defendants' RFAs serve the purposes of Rule 36:  they are straightforward and direct; they can be answered with a simple admit or deny; and they attempt to narrow the scope of disputed issues of fact for summary judgment and/or trial.  *See*, *e.g.*, *Diederich v. Dept. of Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990) (requests for admission are proper when they are simple, direct, not vague or ambiguous and can be answered with a simple admit or deny or in some instances, a

qualification or explanation for purposes of clarification); *Booth Oil Site Admin Gr. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000) (requests directed to admissions on the existence of a document and the subject matter of its contents are proper).  The RFAs can be broken down into requests directed at emails, text messages and phone calls:

- For emails, the RFAs ask Luck to admit for each day from March 13 through April 9, 2020 that (i) on the identified day, he sent the emails attached as an exhibit to the RFAs and (ii) he did not send any emails on the identified day other than those attached to the exhibit (Ex. 5 at RFA Nos. 21, 22, 26, 27, 31, 32, 36, 37, 41, 42, 46, 47, 51, 52, 56, 57, 61, 62, 66, 70, 71, 75, 76, 80, 81, 85, 86, 90, 91, 95, 96, 100, 101, 105, 106, 110, 111, 115, 116, 120, 121, 125, 126, 130, 131, 135, 136, 140, 141, 145, 146, 150, 151, 155, 156);

- For text messages, the RFAs ask Luck to admit for each day from March 13 through April 9, 2020 that (i) on the identified day, he sent and/or received the text messages attached as an exhibit to the RFAs and (ii) he did not produce any text messages on the identified day other than those attached to the exhibit (*id.* at RFA Nos. 23, 24, 28, 29, 33, 34, 38, 39, 43, 44, 48, 49, 53, 54, 58, 59, 63, 64, 67, 68, 72, 73, 77, 78, 82, 83, 87, 88, 92 ,93, 97, 98, 102, 103, 107, 108, 112, 113, 117, 118, 122, 123, 127, 128, 132, 133, 137, 138, 142, 143, 147, 148, 152, 153, 157, 158); and

- For phone calls, the RFAs ask Luck to admit that (i) on the identified day, he spent the number of minutes on his Alpha-issued phone that are reflected in the phone logs produced by Defendants; (ii) the phone logs reflect all phone calls from March 13 through April 9, 2020 that Luck placed to or received from a specifically identified individual associated with the XFL; and (iii) on the identified day, the phone logs are an accurate reflection of all of the phone calls that Luck placed to or received from XFL personnel. *Id.* at RFA Nos. 25, 30, 35, 40, 45, 50, 55, 60, 65, 69, 74, 79, 84, 89, 94, 99, 104, 109, 114, 119, 124, 129, 134, 139, 144, 149, 154, 159, 161, 163, 165, 167, 169, 171, 173, 175, 177, 179, 181, 183, 185, 187, 189, 191, 193, 195, 197, 199, 201, 203, 205, and 206-233.

In response to the RFAs, Luck's answers follow the same, improper form.  First, Luck asserts a litany of unjustified objections.  *See, e.g.,* Ex. 7 at 5-13.  Then, Luck responds that he "lacks sufficient information or knowledge to admit or deny the Request and, therefore, the Request must be denied."  *See id.*

"The requesting party may move to determine the sufficiency of an answer or objection [to requests for admission].  Unless the Court finds an objection justified, it must order that an answer

be served.  On finding that an answer does not comply with [Rule 36], the court may order either

that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  As

shown below, Luck's objections are unjustified and his answers do not comply with Rule 36.

A.      **Luck's Objections Are Not Justified**

When a request for admission "is understandable and straightforward, calls for relevant

information, and does not violate a recognized privilege, an objection to a request to admit is

improper . . . ."  *Booth Oil*, 194 F.R.D. at 79.  Boilerplate objections, including that a request is

"overly broad, burdensome, oppressive, and irrelevant is not adequate to voice a successful

objection."  *Arroyo v. Dept. of Public Safety*, Civ. No. 3:11cv268, 2012 WL 3113139 at *4 (D.

Conn. July 31, 2012).  As a pretext for refusing to truthfully answer the RFAs, Luck begins each

of his responses with a series of nonsensical objections that the Court should find are unjustified.

*First*, Luck generally objects to the definition of "Emails" used in the RFAs as "misleading,

inaccurate, and lacks foundation."  *See* Ex. 7 at 4.  Defendants defined "Emails" in the RFAs as:

> [E]mails that You [Luck] sent from your oliver.luck@xfl.com email address
> that have been produced by Defendants or You in the Litigation and shall
> exclude any emails You sent that are reflected on Defendants' Privilege
> Logs served on January 29, 2021, March 10, 2021 and April 23, 2021.

Ex. 5 at 2.  There is nothing misleading or inaccurate about Defendants' definition and it does not

"lack foundation," whatever that means.  The definition precisely delineates the universe of emails

to which the RFAs apply.  It specifically and purposefully excluded the privileged emails that Luck

does not have in his possession so that Luck could not object to the RFAs on the grounds that he

lacked sufficient information to respond to the RFAs.  Unfortunately, that did not stop Luck from

making that frivolous claim.  As Luck does not assert that the definition of Emails is vague or

ambiguous and because he cannot legitimately assert that the definition prevents him from

answering the RFAs truthfully, the Court should overrule the objection.

**Second**, the Court should overrule Luck's boilerplate objections that the RFAs are "not proportional" to the needs of the case because Defendants allegedly have "equal or greater" access to the information requested, that the burden of reviewing the relevant information is the same or greater for Luck than Defendants, and that the RFAs are cumulative or duplicative of other discovery. *See, e.g.,* Ex. 7 at 5-6.

When an RFA is capable of a "simple yes or no answer based on information reasonably available to the answering party[,] the extent to which attorneys' investigation of the facts is necessary or burdensome is **not** a basis for objection . . . ." *See Diederich*, 132 F.R.D. at 619 (emphasis in original); *see also T. Rowe*, 174 F.R.D. at 43 ("[b]ecause rule 36 admission requests serve the highly desirable purpose of eliminating the need for proof of issues upon trial, there is a strong disincentive to finding an undue burden [in responding] where the responding party can make the necessary inquiries without extraordinary expense or effort.") (quoting *Al-Jundi v. Rockefeller*, 91 F.R.D. 590, 594 (W.D.N.Y. 1981)).  Luck undeniably has access to the information that he needs to respond to the RFAs.  Defendants provided Luck with exhibits attaching the documents that are the subject of the RFAs.  He has his emails, text messages and phone records. And, he has access to the forensic image that he purportedly made of his iPhone and to a copy of the forensic image made by Defendants' expert.  Accordingly, Luck's objections related to access to documents or burdensomeness are unjustified.

**Third**, Luck's objection that "Defendants have had ample opportunity to discover the information on their own" and that "the information requested can be derived" from the documents already produced in the case likewise fails.

> Objections that plaintiff [the requesting party] should obtain the information by independent discovery and investigation, or that the matter is already within plaintiff's knowledge, are [] misplaced.  Again, we reiterate that the purpose of requests for admission are to seek defendant's [the responding

18

> party] agreements as to alleged fact.  Whether plaintiff could obtain the
> information independently or whether certain facts are within plaintiff's
> knowledge are irrelevant considerations.  Indeed, under the circumstances
> of this case, where plaintiff was a former officer of defendant, with personal
> knowledge and beliefs as to the facts alleged, the use of requests for
> admissions as a pretrial device is quite appropriate.

*Diederich*, 132 F.R.D. at 616-17 (explaining that "if a party already has personal knowledge and/or

belief regarding relevant facts, he may compel the opposing party to admit or deny such

allegations, or to offer a valid reason why the fact cannot be admitted or denied").  The RFAs, like

those in *Diederich*, properly seek Luck's agreement to facts related to his work on XFL matters

from March 13 through April 9, 2020.  Defendants' beliefs as to which are or are not XFL-related

matters are not the same thing as admissions by Luck, which carry evidentiary value and will

simplify the evidence at the summary judgment and/or trial phase.

   ***Finally***, Luck's objection that the RFAs "invade[] Plaintiff's attorneys' work product" is

beyond the pale.  The RFAs are directed to facts that should be non-controversial in this case,

namely what emails, text messages and phone calls Luck sent, received and made from March 13

through April 9, 2020 related to the XFL versus which are not.  There is no basis for Luck to assert

that his admission or denial (i) that exhibits attached to the RFAs reflect emails, text messages and

phone calls Luck sent, received or made on a particular day and (ii) that no other emails, text

messages or phone calls exist would reveal any work product of his attorneys.

   **B.    Luck's Responses Do Not Comply With Rule 36(a)(4)**

   After asserting his unjustified objections, Luck responded to the RFAs with the following

identical response:  "Based on the foregoing, Plaintiff lacks sufficient information or knowledge

to admit or deny the Request and therefore, the Request must be denied."   Luck's response does

not comply with Rule 36(a)(4).

   Rule 36(a)(4) requires that when a request is not admitted or specifically denied, the

responding party "state in detail why the answering party cannot truthfully admit or deny" and that the responding party may "assert lack of knowledge or information as a reason for failing to admit or deny *only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny*." Fed. R. Civ. P. 36(a)(4) (emphasis added). The "reasonable inquiry" requirement is "more than simply a technical pleading requirement. Rather, it reflects the obligation of a party to make a reasonable effort to obtain the information needed to respond to the request." *Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194,198 (D. Conn. 2014) (quoting *Beberaggi v. New York Transit Auth.*, No. 93 Civ. 1737, 1994 WL 18566 at *5 (S.D.N.Y. Jan. 19, 1994)); *see also T. Rowe*, 174 F.R.D. at 43 (a responding party "may not give lack of information or knowledge as a reason for failure to admit or deny unless he has made" a reasonable inquiry); *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) ("a party may not refuse to admit or deny a request for admission based upon lack of personal knowledge if the information relevant to the request is reasonably available to him."). A "reasonable inquiry" includes, at a minimum, a review and inquiry of those persons and documents in the responding party's control. *See*, *e.g.*, *T. Rowe,* 174 F.R.D. at 43-44 (further explaining that a reasonable inquiry may require going beyond parties to non-parties); *Brown v. McKinley Mall, LLC*, 15-cv-1044, 2017 WL 2332330 at *5 (W.D.N.Y. May 30, 2017).

Luck does not assert anywhere in his responses to the RFAs that he made a "reasonable inquiry" as required by Rule 36(a)(4), which is not surprising. The reality is that Luck insisted on Defendants producing hundreds of thousands of pages of documents, including every document needed to respond to the RFAs. Indeed, the majority of the RFAs already organize the information in a way which just require him to admit that the RFA is accurate. Luck does not explain why the information he has in his possession or can readily obtain is insufficient to enable him to admit or

deny the RFAs.  Using the exact same documents that Luck has in his possession, Defendants were able to organize the requests in ways that made it simple for Luck to admit or deny each request. Luck's failure to comply with these requirements of Rule 36 is not coincidental as even the most rudimentary inquiry of the documents and information in Luck's possession described above would enable him to respond to the RFAs.  Because Luck has not made a "reasonable inquiry" as required by Rule 36(a)(4), his answers to the RFAs are deficient as a matter of law and the RFAs should either be deemed admitted or Luck should be ordered to provide amended answers.  *See*, *e.g.*, *Napolitano*, 297 F.R.D. at 198-99 (ordering amended answers to RFAs where responding party failed to make a reasonable inquiry); *Brown*, 2017 WL 2332330 at *5 (finding defendant did not engage in a reasonable inquiry when it failed to indicate what efforts it made to enable it to respond to requests to admit and ordering amended answers); *Beberaggi*, 1994 WL 18556 at *5 (holding responses "are plainly inadequate" for failure to make a reasonable inquiry where "response called for information seemingly within the control of or available to" the responding party); *Diederich*, 132 F.R.D. at 621 (ordering responding party to make a reasonable inquiry that includes reviewing documents in its possession and the service of amended answers).

III.     **Luck Should Be Compelled to Respond to the McMahon Interrogatories**

As Luck has refused to respond to McMahon's Interrogatories on the basis of his objections and responses to the RFAs (*see* Ex. 9), which for the reasons explained above are insufficient under Rule 36, Defendants respectfully request that in conjunction with an order compelling Luck to answer the RFAs, the Court further order Luck to respond separately and fully to McMahon's Interrogatories, as appropriate in light of Luck's amended answers to the RFAs.

IV.     **Luck Is Liable for Defendants' Reasonable Expenses Incurred With This Motion**

"Where a responding party's refusal to provide discovery requires a motion to compel, the

responding party's refusal is found to be not substantially justified, and an award of expenses would not be unjust, an award of the moving party's expenses including reasonable attorneys fees is required. [Citation omitted].  Similarly, an answering party which served inadequate answers to a request to admit pursuant to Rule 36(a)(1) requiring a motion to compel is also subject to an award of expenses in accordance with Rule 37(a)(5). [citations omitted]."  *Brown*, 2017 WL 2332330 at *5.  "[A] reviewing court [should not] permit a responding party to frustrate the rule by initially providing inadequate responses, forcing the requesting party to file a motion and costly memoranda, and only then coming forward with 'amended answers' that easily could have been supplied in the first instance." *Thalheim*, 124 F.R.D. at 35-36.

Because Luck's objections and responses to Alpha's Interrogatories, the RFAs and McMahon's Interrogatories are unjustified as shown above, Defendants respectfully request that the Court order Luck to pay Defendants' reasonable expenses, including attorneys' fees, incurred in making this Motion.  Simply put, Luck made no attempt to respond as required by the Rules because he does not want to have his contentions established in a manner permitting direct evidence especially to a fact finder. *See, e.g., Brown*, 2017 WL 2332330 at *5 (ordering defendant to show cause why expenses should not be awarded for failure to provide proper answers to interrogatories and requests for admission requiring a motion to compel); *Beberaggi*, 1994 WL 18566 at *6 (awarding plaintiff expenses, including attorneys' fees in connection with filing motion on requests for admissions where responding party's position "was wholly unjustified").

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant Defendants' Motion and: (1) order Luck to answer fully and completely Alpha's Interrogatories; (2) deem the RFAs admitted or order Luck to serve amended answers to the RFAs; (3) order Luck

to answer fully and completely McMahon's Interrogatories; and (4) order Luck to pay Defendants' reasonable costs, including attorneys' fees, incurred in connection with this Motion as provided for in Rule 37 of the Federal Rules of Civil Procedure.

DEFENDANTS VINCENT K. MCMAHON
AND ALPHA ENTERTAINMENT LLC

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

Their Attorneys.

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)