**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| OLIVER LUCK,<br>    *Plaintiff*,<br><br>    v.<br><br>VINCENT K. MCMAHON and ALPHA<br>ENTERTAINMENT LLC,<br>    *Defendant*. | No. 3:20-cv-00516 (VAB) |

**RULING AND ORDER ON PENDING MOTIONS**

On January 22, 2021, Oliver Luck ("Plaintiff") filed a Second Amended Complaint

against Vincent K. McMahon and Alpha Entertainment LLC (together, "Defendants") to recover

approximately $23.8 million in salary and bonuses allegedly owed from Mr. Luck's employment

contract as Commissioner and CEO ("Employment Contract") with Alpha Entertainment

("Alpha"), which Mr. McMahon allegedly personally guaranteed because of his alleged

wrongful termination. Second Am. Compl., ECF No. 145 (Jan. 22, 2021) ("Second Am.

Compl.").

Pending are Defendants' Motion to Dismiss Count Four of the Second Amended

Complaint **[ECF No. 151]**, Motion to Strike Mr. Luck's Affirmative Defenses **[ECF No. 171]**,

Motion to Compel Answers to Deposition Questions and Responses to Discovery Requests

**[ECF No. 191]**, and Motion to Compel Mr. Luck's Answers to Interrogatories and Motion to

Determine the Sufficiency of Mr. Luck's Objections and Answers to Requests For Admission

**[ECF No. 241]**, as well as Mr. Luck's Motion for Leave to Amend his Second Amended

Complaint **[ECF Nos. 160 and 161]**, Motion to Compel Documents **[ECF No. 158]**, Motion to

Compel the Verification of Alpha's Interrogatory Answers and Response to Interrogatory No. 2

1

[ECF No. 168], Motion to Compel the Deposition of Alpha's Representatives [ECF No. 179], Motion for Protective Order and Motion to Seal [ECF Nos. 185 and 186], Motion to Compel the Deposition of Jerry McDevitt [ECF No. 197], Motion to Compel World Wrestling Entertainment, Inc. to Produce Documents [ECF No. 227], Motion to Compel Documents and Answers to Deposition Questions [ECF No. 246], Motion for Leave to File Amended Answer to Amended Counterclaim [ECF Nos. 251, 300, and 302], and Motion for a Discovery Conference [ECF No. 271].

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the pending motions.

Defendants' Motion to Dismiss Count Four of the Second Amended Complaint, ECF No. 151, is **GRANTED in part**, and **DENIED in part**. Mr. Luck's claim of breach of the implied covenant of good faith and fair dealing as to Mr. McMahon is **DISMISSED**, but Defendants' motion to dismiss Mr. Luck's breach of the implied duty of good faith claim against Alpha is **DENIED**.

Mr. Luck's Motion for Leave to Amend his Second Amended Complaint, ECF Nos. 160 and 161, is **DENIED**. Mr. Luck's Motion to Compel Documents, ECF No. 158, is **GRANTED** with respect to Entries 80-89 of Defendants' privilege log, and **DENIED** with respect to the remaining documents, with the exception of a subset of entries for which the Court will conduct *in camera* review. Defendants shall disclose these documents to the Court by **September 24, 2021**.

Mr. Luck's Motion to Compel the Verification of Alpha's Interrogatory Answers and Response to Interrogatory No. 2, ECF No. 168, is **GRANTED**.

Alpha's Motion to Strike Mr. Luck's Affirmative Defenses, ECF No. 171, is **DENIED** without prejudice to renewal.

Mr. Luck's Motion to Compel the Deposition of Alpha Representatives, ECF No. 179, is **DENIED** without prejudice to renewal.

Mr. Luck's Motion for a Protective Order and Motion to Seal, ECF Nos. 185 and 186, is **GRANTED in part**, and **DENIED in part**. To the extent Mr. Luck seeks to exclude discovery related to Mr. Luck's use of the iPhone for non-XFL matters, this request is **DENIED**. The motion is **GRANTED** as to the disclosure of the information gleaned from Mr. Luck's Alpha-issued iPhone, until such time as the Court may determine a protective order is no longer warranted following a ruling on any dispositive motions.

Defendants' Motion to Compel Answers to Deposition Questions, ECF No. 191, is **GRANTED**, as specifically described below.

Mr. Luck's Motion to Compel the Deposition of Jerry McDevitt, ECF No. 197, is **DENIED**.

Mr. Luck's Motion to Compel World Wrestling Entertainment, Inc. to produce documents, ECF No. 227, is **DENIED** as moot.

Defendants' Motion to Compel Plaintiff's Answers to Interrogatories, ECF No. 241, is **GRANTED in part**, and **DENIED in part**. Mr. Luck shall serve amended responses to the Requests For Admissions, except to the extent described below, by **October 8, 2021**.

Mr. Luck's Motion to Compel Documents and Answers to Deposition Questions, ECF No. 246, is **DENIED**.

Mr. Luck's Second Amended Motion for Leave to File an Amended Answer to Alpha's Amended Counterclaims, ECF No. 302, is **DENIED**. His initial Motion for Leave to File an

Amended Answer, ECF No. 251, and First Amended Motion for Leave to File an Amended

Answer, ECF No. 300, are **DENIED** as moot.

Mr. Luck's motion for a discovery conference, ECF No. 271, is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Mr. Luck allegedly "agreed to serve as the Commissioner and CEO of the XFL, a

professional football league, from July 1, 2018 to June 30, 2023." Second Am. Compl. ¶ 8. On

May 30, 2018, Mr. Luck allegedly "entered into a five-year Employment Contract with Alpha."

*Id.* (citing Ex. 1 to Second Am. Compl.: Contract for Employment as Commissioner and CEO,

ECF No. 145-1 (May 30, 2018) ("Employment Contract")).

Under the Employment Contract, Mr. Luck had "full authority to hire, dismiss, replace or

reassign any employee, consultant or contractor of the XFL . . . subject to Mr. McMahon's

preapproval for material business decisions." *Id.* at 1. Mr. Luck had to "devote substantially all

of his business time to the performance of his duties to the XFL[.]" *Id.* He received a base salary

of $5,000,000 per contract year, and a "guaranteed annual bonus" of $2,000,000 "on the last day

of each Contract Year, subject to his continued employment on the scheduled payment date." *Id.*

at 2.

Mr. McMahon, as the then-controlling owner of Alpha, allegedly provided to Mr. Luck a

guaranty wherein he "irrevocably and unconditionally guarantee[d] . . . the due and punctual

payment and performance by the obligor of all of its agreements and obligations under the

Transaction Documents," which included the Guaranty, the Employment Contact, and other

documents. Ex. 1 to Second Am. Compl., Ex. A: Guaranty at 7, ECF No. 145-1 (May 30, 2018)

("Guaranty").

The Employment Contract stated that Alpha could terminate Mr. Luck "at any time, with or without Cause," and set forth six grounds for termination for cause, including "Mr. Luck's willful and intentional material misconduct in performance of his duties or gross negligence of his duties . . . , including an intentional failure to follow any applicable XFL policies or directives," and "Mr. Luck's willful disregard of the lawful instructions of Mr. McMahon concerning Mr. Luck's material duties hereunder." Employment Contract at 3.

The Employment Contract provided that "[i]f the act or omission that would otherwise constitute 'Cause' . . . is reasonably susceptible to cure, Mr. Luck shall have 30 days from his receipt of written notice from Alpha describing such act or omission to effect the cure of such circumstances." *Id*. Alpha was not required to provide thirty days written notice to Mr. Luck if the act or omission was "not reasonably susceptible to cure." *Id.* Upon termination for cause, Mr. Luck was only entitled to payment of "previously accrued salary and any vested employee benefits," whereas upon termination without cause, Mr. Luck was entitled to a lump sum cash payment within sixty days of termination. *Id.* The lump sum amount would be equal to:

> the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations plus (iii) the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination.

*Id.*

On April 9, 2020, Alpha terminated Mr. Luck's employment allegedly for cause, including for Mr. Luck's alleged gross negligence and willful disregard of Mr. McMahon's lawful instructions concerning Mr. Luck's material duties. Second Am. Compl. ¶ 11. In a

termination letter, Alpha provided several non-exhaustive examples of Mr. Luck's alleged gross negligence and violation of XFL policies: (1) alleged violation of the policy of "not signing players with problematical backgrounds and history" when Mr. Luck entered into a contract with Antonio Callaway and offered him "a very substantial signing bonus of $125,000;" (2) alleged failure to timely carry out Mr. McMahon's directive to terminate Mr. Callaway's services once Mr. McMahon learned what Mr. Luck did, which led to the XFL's liability for Mr. Callaway's injury at practice; and (3) alleged failure to devote substantially all business time to XFL duties after March 13, 2020, when Mr. Luck left Connecticut for Indiana following the XFL's cancellation of the rest of its season due to the COVID-19 pandemic, and failed to exhibit "any of the vigor and work ethic required of a CEO of a start-up enterprise in these trying times." Ex. 2 to Second Am. Compl.: Termination Letter from Alpha to Mr. Luck at 21–22, ECF No. 145-2 (Apr. 9, 2020).

On April 16, 2020, Mr. Luck responded to the termination letter, denying Alpha's grounds for termination as "meritless." Ex. 3 to Second Am. Compl.: Re: April 9, 2020 Letter to Oliver Luck at 2, ECF No. 145-3 (Apr. 16, 2020). Mr. Luck asserted that he had "performed all of his actions or omissions in good faith and with [his] reasonable belief that such actions or omissions were in the best interests of the XFL." *Id.* at 3. Among other examples, Mr. Luck stated that at the time Antonio Callaway entered into a contract with the XFL, the XFL did not have a policy in place that would have disqualified Mr. Callaway from playing in the league. *Id.* Mr. Luck further stated that he continued to communicate with XFL employees after March 23, 2020, including by engaging in "numerous discussions" with an XFL employee regarding the re-signing of XFL players and "work[ing] with XFL staff members to finalize the 2021 budget requested by Mr. McMahon." *Id.* at 4. Mr. Luck noted that Mr. McMahon and Alpha did not

provide Mr. Luck with "written notice of their belief that *any* of Mr. Luck's actions or omissions constituted 'Cause' under the [Employment Contract] [or] thirty . . . days to effect the cure of such circumstances[.]" *Id.* (emphasis in original).

### B. Procedural Background

Familiarity with the early procedural history of this action is assumed. *See* Ruling and Order on Mot. for Pre J. Remedy and Mot. for Disclosure of Assets, ECF No. 79 (June 26, 2020); Ruling and Order on Discovery Disputes, ECF No. 152 (Feb. 5, 2021).

On January 7, 2021, Defendants filed an Answer to the Amended Complaint. Answer, ECF No. 126 (Jan. 7, 2021).

On January 22, 2021, Mr. Luck filed a Second Amended Complaint. Second Am. Compl.

On January 29, 2021, Mr. Luck filed an Answer to Defendants' Answer to the Amended Complaint. Answer, ECF No. 150 (Jan. 29, 2021).

On February 5, 2021, Defendants moved to dismiss Mr. Luck's breach of implied covenant of good faith claims in the Second Amended Complaint. Mot. to Dismiss Pl.'s Breach of Implied Covenant of Good Faith Claims in the Second Am. Compl., ECF No. 151 (Feb. 5, 2021).

On February 18, 2021, Alpha filed Amended Counterclaims against Mr. Luck. Am. Countercl., ECF No. 153 (Feb. 18, 2021).

On February 26, 2021, Mr. Luck filed his response to Defendants' Motion to Dismiss. Pl. Oliver Luck's Resp. to Defs.' Mot. to Dismiss, ECF No. 154 (Feb. 26, 2021); Pl. Oliver Luck's Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, ECF. No. 155 (Feb. 26, 2021).

The same day, Mr. Luck filed a motion to compel the production of certain documents that Defendants assert are protected by the attorney-client privilege and work-product doctrine.

Sealed Mot. to Compel Docs., ECF No. 157 (Feb. 26, 2021); Mot. to Compel Docs., ECF No. 158 (Feb. 26, 2021). Mr. Luck also filed a Motion for Leave to Amend the Second Amended Complaint. Sealed Mot. for Leave to Amend, ECF No. 160 (Feb. 26, 2021); Mot. for Leave to Amend, ECF No. 161 (Feb. 26, 2021).

On March 4, 2021, Mr. Luck filed an Answer to Alpha's Amended Counterclaims. Answer and Affirmative Defenses to Alpha Entertainment, LLC's Am. Countercl., ECF No. 166 (Mar. 4, 2021).

On March 11, 2021, Mr. Luck filed a motion to compel the verification of Alpha's interrogatory answers and response to Interrogatory No. 2. Mot. to Compel Verification of Defendant Alpha's Interrog. Answers and Resp. to Interrog. No. 2, ECF No. 168 (Mar. 11, 2021).

On March 25, 2021, Alpha filed a motion to strike Mr. Luck's affirmative defenses in his Answer to Alpha's Amended Counterclaims. Mot. to Strike Pl.'s Affirmative Defenses, ECF. No. 171 (Mar. 25, 2021); Mem. of Law in Supp. of Mot. to Strike Pl.'s Affirmative Defenses, ECF No. 171-1 (Mar. 25, 2021).

On March 26, 2021, Defendants filed a combined memorandum encompassing their opposition to Mr. Luck's motion to compel documents, reply in support of Defendants' Motion to Dismiss, and opposition to Mr. Luck's motion for leave to file a Third Amended Complaint. Defs.' Combined Mem. in Opp'n to Pl.'s Mot. to Compel Docs., Reply Mem. in Supp. of Defs.' Mot. to Dismiss Pl.'s Breach of the Implied Covenant of Good Faith Claim, and Mem. in Opp'n to Pl.'s Mot. for Leave to File a Third Am. Compl., ECF No. 172 (Mar. 26, 2021).

On April 1, 2021, Alpha filed its response to Mr. Luck's motion to compel the verification of Alpha's interrogatory answers and response to Interrogatory No. 2. Opp'n to Pl.'s

Mot. to Compel Verification of Alpha's Interrog. Answers and Resp. to Interrog. No. 2, ECF No. 174 (Apr. 1, 2021).

On April 8, 2021, Mr. Luck filed a combined reply to Defendants' combined memorandum. Pl.'s Combined Reply Mem. to Defs.' Combined Mem. (ECF 172), ECF No. 175 (Apr. 8, 2021).

On April 14, 2021, Mr. Luck filed a reply in support of his motion to compel verification of Alpha's answers and responses to Interrogatory No. 2. Reply to Alpha Entertainment LLC's Opp'n to Pl.'s Mot. to Compel Verification of Alpha's Answers and Resp. to Interrog. No. 2, ECF No. 176 (Apr. 14, 2021).

On April 15, 2021, Mr. Luck filed his opposition to Alpha's motion to strike Mr. Luck's affirmative defenses in his Answer to Alpha's Amended Counterclaims. Mem. of Law in Opp'n to Alpha Entertainment LLC's Mot. to Strike, ECF No. 177 (Apr. 15, 2021).

On April 29, 2021, Alpha filed its reply in support of its motion to strike Mr. Luck's Affirmative Defenses. Reply in Supp. of Mot. to Strike Pl.'s Affirmative Defenses, ECF No. 178 (Apr. 29, 2021).

On May 7, 2021, Mr. Luck filed an emergency motion to compel the deposition of Alpha's representatives. Emergency Mot. to Compel Dep. of Def. Alpha Entertainment's Representative(s) Pursuant to Federal Civil Procedure Rule 30(b)(6), ECF No. 179 (May 7, 2021).

On May 8, 2021, Defendants filed an opposition to Mr. Luck's request for expedited consideration of his motion to compel the deposition of Alpha's representatives. Mem. in Opp'n to Pl.'s Request for Expedited Consideration of Mot. to Compel Rule 30(b)(6) Dep. of Alpha Entertainment LLC, ECF No. 180 (May 8, 2021).

The same day, Mr. Luck filed a reply in support of his request for expedited briefing of his motion to compel. Reply in Supp. of Req. for Expedited Briefing Schedule, ECF No. 181 (May 8, 2021).

On May 10, 2021, the Court denied Mr. Luck's request for expedited briefing. Order, ECF No. 184 (May 10, 2021). The Court issued the following Order:

> The Court **DENIES** Plaintiff's request for expedited briefing in response to his [179] Emergency Motion to Compel. After the normal briefing schedule, see D. Conn. L. Civ. R. 7, the Court will take up the substance of the motion. To the extent that the pre-trial schedule, with respect to discovery, requires modification, the Court will address that issue following the resolution of the motion's underlying substance.

*Id.*

On May 21, 2021, Mr. Luck filed a motion to seal his motion for a protective order and accompanying materials. Sealed Mot. to Seal Pl. Oliver Luck's Mot. for Protective Order and Br. in Supp., ECF. No. 185 (May 21, 2021); Pl.'s Mem. of Law in Supp. of Sealed Mot. to Seal Pl. Oliver Luck's Mot. for Protective Order and Br. in Supp., ECF No. 185-1 (May 21, 2021). The same day, Mr. Luck filed a motion for a protective order and supporting brief. Mot. for Protective Order and Br. in Supp., ECF No. 186 (May 21, 2021).

On May 28, 2021, Alpha filed its opposition to Mr. Luck's motion to compel the deposition of Alpha's representatives. Mem. in Opp'n to Mot. to Compel 30(b)(6) Dep., ECF No. 188 (May 28, 2021).

On June 2, 2021, Defendants filed a motion to compel Mr. Luck's answers to deposition questions and responses to discovery requests regarding his alleged spoliation of evidence from his Alpha-issued iPhone. Sealed Mot. to Compel Answers to Dep. Questions and Resp. to

Discovery Reqs., ECF No. 191 (June 2, 2021); Mem. of Law in Supp. of Mot. to Compel Answers to Dep. Questions and Resp. to Discovery Reqs., ECF No. 191-1 (June 2, 2021).

On June 4, 2021, Mr. Luck filed his reply in support of his motion to compel the deposition of Alpha's representatives. Reply to Def. Alpha's Mem. in Opp'n to Mot. to Compel 30(b)(6) Dep., ECF No. 194 (June 4, 2021).

That same day, Mr. Luck filed a motion to compel the deposition of Jerry McDevitt. Sealed Mot to Compel Dep. of Jerry McDevitt, ECF No. 198 (June 4, 2021); Mot. to Compel Dep. of Jerry McDevitt (Redacted), ECF. No. 197 (June 4, 2021).

On June 8, 2021, Defendants filed a consolidated response to Mr. Luck's motion for a protective order and related motion to seal. Sealed Consolidated Resp. to Pl. Oliver Luck's Mot. for Protective Order and Associated Mot. to Seal, ECF No. 204 (June 8, 2021).

On June 21, 2021, Mr. Luck filed his opposition to Defendants' motion to compel answers to deposition questions and responses to discovery requests. Sealed Mem. in Opp'n to Defs.' Mot. to Compel Answers to Dep. Questions and Resp. to Discovery Reqs., ECF No. 212 (June 21, 2021).

On June 22, 2021, Mr. Luck filed a reply in support of his motion for a protective order and the associated motion to seal. Sealed Reply in Supp. of Pl.'s Mot. for Protective Order and Associated Mot. to Seal, ECF No. 215 (June 22, 2021).

On June 25, 2021, Defendants filed their opposition to Mr. Luck's motion to compel the deposition of Jerry McDevitt. Sealed Mem. of Law in Opp'n to Pl.'s Mot. to Compel the Dep. of Jerry McDevitt, ECF No. 223 (June 25, 2021).

On July 6, 2021, Defendants filed their reply in support of their motion to compel M. Luck's answers to deposition questions and responses to discovery request relating to his alleged

spoliation of evidence from his Alpha-issued iPhone. Sealed Reply in Further Supp. of Mot. to Compel Answers to Dep. Questions and Resp. to Discovery Reqs., ECF No. 226 (July 6, 2021).

The same day, Mr. Luck filed a motion to compel World Wrestling Entertainment, Inc. ("WWE") to produce documents and accompanying materials. Mot. to Compel World Wrestling Entertainment, Inc. to Produc. Docs., ECF No. 227 (July 6, 2021); Mem. of Law in Supp. of Pl.'s Mot. to Compel World Wrestling Entertainment, Inc. to Produc. Docs., ECF. No. 228 (July 6, 2021).

On July 9, 2021, Mr. Luck filed his reply to Defendants' opposition to Mr. Luck's motion to compel the deposition of Jerry McDevitt. Sealed Reply in Supp. of Mot. to Compel Dep. of Jerry McDevitt, ECF. No. 232 (July 9, 2021).

On July 13, 2021, Defendants filed a sur-reply to Mr. Luck's reply relating to his motion for a protective order and the associated motion to seal. Sealed Surreply to Pl. Oliver Luck's Reply in Supp. of Mot. for Protective Order and Associated Mot. to Seal, ECF No. 235 (July 13, 2021).

On July 14, 2021, Defendants filed a motion to compel Mr. Luck's answers to their interrogatories and to determine the sufficiency of Mr. Luck's objections and answers to their Requests for Admission. Defs.' Mot. to Compel Pl.'s Answers to Interrogs. and Mot. to Determine the Sufficiency of Pl.'s Objs. and Answers to Reqs. for Admission, ECF No. 241 (July 14, 2021).

On July 19, 2021, Mr. Luck filed a motion to compel Defendants to produce communications with third parties listed on their privilege logs, and to present Mr. McMahon and Jeffrey Pollack to be re-deposed. Mot. to Compel Docs. and Answers to Dep. Questions,

ECF No. 246 (July 19, 2021); Mem. of Law in Supp. of Pl.'s Mot. to Compel Docs. and Answers to Dep. Questions and Exs., ECF. No. 247 (July 19, 2021).

On July 20, 2021, Mr. Luck filed a motion for leave to file an Amended Answer to Alpha's Amended Counterclaims. Pl./Counterclaim Def. Oliver Luck's Mot. for Leave to File Am. Answer to Counter-Pl. Alpha's Am. Countercl., ECF No. 251 (July 20, 2021).

On July 26, 2021, Mr. Luck filed a motion for leave to supplement his motion to compel verification of Alpha's interrogatory answers and response to Interrogatory No. 2. Mot. for Leave to Suppl. Mot. to Compel Verification of Def. Alpha's Interrog. Answers and Resp. to Interrog. No. 2, ECF 257 (July 26, 2021). The Court granted Mr. Luck's motion on July 27, 2021. Order, ECF No. 260 (July 27, 2021).

On July 27, 2021, Defendants filed their opposition to Mr. Luck's motion to compel WWE to produce documents. Sealed Mem. in Opp'n to Luck's Mot. to Compel, ECF No. 262 (July 27, 2021).

On August 2, 2021, Mr. Luck moved for a discovery conference to address a dispute regarding the deposition of Josh Hinch. Sealed Mot. for Disc. Conference, ECF No. 271 (Aug. 2, 2021).

On August 3, 2021, Alpha filed a response to Mr. Luck's supplement to his motion to compel verification of Alpha's interrogatory answers and responses to Interrogatory No. 2. Sealed Resp. to Pl. Oliver Luck's Suppl. to Mot. to Compel Verification of Alpha's Interrog. Answers and Resps. to Interrog. No. 2, ECF No. 274 (Aug. 3, 2021).

On August 6, 2021, Mr. Luck filed a reply regarding his motion to compel WWE to produce documents. Pl. Oliver Luck's Reply Regarding Mot. to Compel World Wrestling Entertainment, Inc. to Produc. Docs., ECF No. 278 (Aug. 6, 2021).

On August 9, 2021, Defendants filed their opposition to Mr. Luck's motion to compel Defendants to produce certain communications on their privilege logs. Sealed Mem. of Law in Opp'n to Pl.'s Mot. to Compel Docs. and Answers to Dep. Questions, ECF. No. 281 (Aug. 9, 2021).

On August 10, 2021, Alpha filed an opposition to Mr. Luck's motion for leave to file an Amended Answer to Alpha's Amended Counterclaims. Sealed Mem. in Opp'n to Luck's Mot. for Leave to File Am. Answer to Alpha's Am. Counterclaims, ECF No. 284 (Aug. 10, 2021).

On August 11, 2021, Mr. Luck filed his opposition to Defendants' motion to compel Mr. Luck's answers to interrogatories and motion to determine the sufficiency of Mr. Luck's objections and answers to Defendants' Requests for Admission. Opp'n to Mot. to Compel Pl.'s Answers to Interrogs., ECF No. 289 (Aug. 11, 2021)

The same day, WWE filed a motion for leave to file a sur-reply to Mr. Luck's reply regarding his motion to compel WWE to produce documents. Mot. for Leave to File Sur-Reply Br., ECF No. 287 (Aug. 11, 2021). The Court granted WWE's motion for leave on August 12, 2021. Order, ECF No. 292 (Aug. 12, 2021). The same day, WWE filed a sur-reply to Mr. Luck's motion to compel documents. Sealed Sur-reply to Pl. Luck's Reply Regarding Mot. to Compel, ECF No. 293 (Aug. 12, 2021).

On August 16, 2021, Mr. Luck filed a reply in support of his supplement to his motion to compel verification of Alpha's interrogatory answers and responses to Interrogatory No. 2. Sealed Reply to Alpha Entertainment, Inc's Resp. to Pl. Oliver Luck's Supp. to Mot. to Compel Verification of Alpha's Interrog. Answers and Resps. to Interrog. No. 2, ECF No. 296 (Aug. 16, 2021).

On August 18, 2021, Mr. Luck filed a motion for leave to file an amended motion for leave to file an Amended Answer to Alpha's Amended Counterclaims. Pl./Counterclaim Def. Oliver Luck's Am. Mot. for Leave to File Am. Answer to Counter-Pl. Alpha's Am. Countercl., ECF No. 300 (Aug. 18, 2021). Mr. Luck also filed a motion to seal his amended motion for leave. Mot. to Seal Pl./Counterclaim Def. Oliver Luck's Mot. and Am. Mot. for Leave to File Am. Answer to Counter-Pl. Alpha's Am. Countercl., ECF No. 299 (Aug. 18, 2021).

The same day, Mr. Luck filed a motion for leave to file a second amended motion for leave to file an Amended Answer to Alpha's Amended Counterclaims. Pl./Counterclaim Def. Oliver Luck's Second Am. Mot. for Leave to File Am. Answer to Counter-Pl. Alpha's Am. Counterclaims, ECF No. 302 (Aug. 18, 2021). Mr. Luck filed a motion to seal his motion for leave. Mot. to Seal Pl./Counterclaim Defendant Oliver Luck's Mot. and Second Am. Mot. for Leave to File Am. Answer to Counter-Pl. Alpha's Am. Countercl., ECF No. 301 (Aug. 18, 2021).

That same day, Alpha filed an opposition to Mr. Luck's motion for leave to file an amended motion and related motion to seal, as well as his motion for leave to file a second amended motion and related motion to seal. Mem. of Law in Opp'n to Pl. Oliver Luck's Mot. to Seal and Am. Mot. for Leave to File an Am. Answer, ECF. No. 303 (Aug. 18, 2021).

The Court granted Mr. Luck's motions to seal his motions for leave to file an amended motion and a second amended motion on August 19, 2021. Order, ECF No. 304 (Aug. 19, 2021).

On August 19, 2021, the Court issued a notice of a video-conference motion hearing on September 9, 2021 regarding the aforementioned pending motions. Notice of E-Filed Calendar, ECF No. 305 (Aug. 19, 2021). On August 20, 2021, the Court issued an Order clarifying that the motion hearing set for September 9, 2021 would address Mr. Luck's motion to seal his motion

for a protective order (ECF No. 185) and motion for a protective order (ECF No. 186). Order, ECF No. 307 (Aug. 20, 2021). On August 23, 2021, the Court issued an Order further clarifying that it would not address dispositive motions during the motion hearing. Order, ECF No. 311 (Aug. 23, 2021).

On August 23, 2021, Mr. Luck filed his reply to Defendants' opposition to Mr. Luck's motion to compel the production of certain communications on Defendants' privilege logs. Sealed Reply to Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Compel Docs. and Answers to Dep. Questions, ECF No. 312 (Aug. 23, 2021).

On August 24, 2021, Mr. Luck filed his reply to Alpha's opposition to Mr. Luck's motion for leave to file an Amended Answer to Alpha's Amended Counterclaim. Sealed Reply to Alpha Entertainment LLC's Mem. in Opp'n to Pl.'s Mot. for Leave to File Am. Answer to Alpha's Am. Countercl., ECF No. 315 (Aug. 24, 2021).

On August 25, 2021, Defendants filed their reply in support of their motion to compel Mr. Luck's Answers to Interrogs.. Sealed Reply in Further Supp. of Mot. to Compel Pl.'s Answers to Interrogs. and Mot. to Determine the Sufficiency of Pl.'s Objs. and Answers to Reqs. for Admission, ECF No. 318 (Aug. 25, 2021).

On September 3, 2021, Defendants filed a motion for leave to file a sur-reply to Mr. Luck's reply regarding his motion for leave to file an Amended Answer to Alpha's counterclaims. Mot. for Leave to File Sur-Reply Brief to Pl.'s Reply Regarding Mot. for Leave to File Am. Answer, ECF No. 321 (Sept. 3, 2021). The Court granted Defendants' motion on September 7, 2021. Order, ECF No. 323 (Sept. 7, 2021). Defendants filed their sur-reply the same day. Def. Alpha Entertainment, LLC's Surreply to Pl. Oliver Luck's Reply Regarding Mot. for Leave to File Am. Answer to Alpha's Am. Countercl., ECF No. 324 (Sept. 7, 2021).

On September 9, 2021, the Court held a hearing on the pending discovery and pleading-related motions. Min. Entry, ECF No. 325 (Sept. 9, 2021).

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York*

*v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and

unlikely." *Id*. at 556 (internal quotation marks omitted).

### B. Motion to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, a party may either amend

once "as a matter of course within[] 21 days" of service, or the earlier of 21 days after service of

a required responsive pleading or motion under Rule 12(b), (e) or (f). Fed. R. Civ. P. 15(a)(1).

Once that time has elapsed, a party may move for leave to file an amended pleading. Fed. R. Civ.

P. 15(a)(2). Courts "should freely give leave [to amend] when justice so requires." *Id*.; *see also*

*Friedl v. City of N.Y.*, 210 F.3d 79, 87 (2d Cir. 2000) ("[D]istrict courts should not deny leave

unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing

party, or futility."). The Second Circuit "review[s] the district court's decision to grant a party

leave to amend for abuse of discretion." *Monahan v. New York City Dep't of Corr*., 214 F.3d

275, 283 (2d Cir. 2000).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Pasternack v. Shrader*, 863 F.3d

162, 174 (2d Cir. 2017) ("The denial of leave to amend, based solely on delay and litigation

expense, was an abuse of discretion. The district court's explanation cited the years of litigation

and concluded: '[The] defendants have spent a vast amount of money litigating the sufficiency of

various complaints in this case. This is not something unworthy of consideration. It is surely

prejudice . . . .' But delay (and its necessary consequence, litigation expense) does not, without

more, constitute undue prejudice.") (internal citation omitted).

"Where . . . a scheduling order governs amendments to the complaint, . . . the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (internal quotation marks omitted).

### C.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Second Circuit has held that, when a court evaluates a Rule 12(f) motion, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation [that movant wishes to strike] would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial." (citing Fed. R. Civ. P. 12(f)); *Hudson's Bay Fur Sales Canada, Inc. v. Scheflin-Reich, Inc.*, No. 90-CIV-8026 (RLC), 1991 WL 60377, at *1 (S.D.N.Y. Apr. 8, 1991) ("A motion to strike matter from a complaint as immaterial will be granted only if no evidence in support of the allegation would be admissible at trial.").

Motions to strike under Rule 12(f) "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *see also Gierlinger v. Town of Brant*, No. 13-CV-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("Because striking a [part] of a pleading is a drastic remedy motions under Rule

20

12(f) are viewed with disfavor by the federal courts and are infrequently granted." (internal quotation marks omitted)). Furthermore, "[t]o the extent that Defendants' aim is to avoid unduly inflaming and prejudicing the jury," the court may take into account that "the Complaint will not be submitted to the jury." *Schutz v. Ne. Mortg. Corp.*, No. 3:05-CV-423(MRK), 2005 WL 1868888, at *1 (D. Conn. July 27, 2005) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Motion to Dismiss

All contracts carry "an implied covenant of good faith and fair dealing," which requires both parties to refrain from doing "anything that will injure the right of the other to receive the benefits of the agreement." *Hudson United Bank v. Cinnamon Ridge Corp.*, 81 Conn. App. 557, 576 (2004). "The covenant . . . presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *Neiditz v. Hous. Auth.*, 43 Conn. Supp. 283, 294 (1994); *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2005) (same). To fulfill its duty, a party may not "do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc.*, 269 Conn. at 432 (internal quotation marks and citation omitted).

Before asserting bad faith or fair dealing, a plaintiff "must prove three elements: 'first, that the plaintiff and defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive all or some of those benefits; and third, that when committing  the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." *Bagley v. Yale Univ.*, 42 F. Supp. 3d

332, 359-60 (quoting *Franco v. Yale*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002)). "Most courts decline to find a breach of the covenant apart from a breach of an express contract term." *Landry v. Spitz*, 102 Conn. App. 34, 46 (2007).

Bad faith implies "both 'actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation . . . prompted . . . by some interested or sinister motive.'" *Habetz v. Condon*, 224 Conn. 231, 237 (1992) (citation omitted).

Defendants move to dismiss Count Four of the Second Amended Complaint, alleging that Mr. McMahon and Alpha each breached the implied covenant of good faith, under Rule 12(b)(6). Mot. to Dismiss Pl.'s Breach of Implied Covenant of Good Faith Claims in the Second Am. Compl., ECF No. 151 (Feb. 5, 2021) ("Mot. to Dismiss").

### 1. Mr. McMahon

Defendants argue that Mr. Luck "cannot assert a breach of the implied covenant claim against [Mr.] McMahon based on his alleged conduct in connection with the Employment Contract because [Mr.] McMahon is not a party to that contract." Defs.' Mem. Supp. Mot. to Dismiss at 8, ECF No. 151-1 (Feb. 5, 2021) ("Mem. Supp. Mot. to Dismiss").

The Court agrees.

"It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Hoskins v. Titan Value Equities Grp., Inc.*, 252 Conn. 789, 793 (2000). A contract or a contractual relationship, therefore, is required to state a claim based on the covenant of good faith and fair dealing. *Id.* ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing."); *see also Chapman v. Priceline Grp., Inc.*, No. 3:15-cv-1519 (RNC), 2017 WL

4366716, at *5 (D. Conn. Sept. 30, 2017) ("'Most courts decline to find a breach of the covenant apart from a breach of an express contract term.' . . . In other words, 'the claim [that the covenant has been breached] must be tied to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty.'" (quoting *Landry v. Spitz*, 102 Conn. App. 34, 47 (2007)).

Mr. Luck does not dispute that Mr. McMahon is not a party to the Employment Contract. Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 8–9, ECF No. 155 (Feb. 26, 2021) ("Mr. Luck does not allege that McMahon is liable under this theory [of breach of the implied duty of good faith and fair dealing] based on the Employment Contract to which he is not a signatory."). Rather, Mr. Luck contends that Mr. McMahon "breached the implied duty of good faith and fair dealing based on the Guaranty," which obligated Mr. McMahon "to guarantee the performance by Alpha . . . of its agreements and obligations under the Employment Contract[.]" *Id.* at 9–10 (quoting Employment Contract at 7).

The existence of a contract between the parties, however, is a "necessary antecedent" to any claim of breach of the duty of good faith and fair dealing. *Hoskins*, 252 Conn. at 293; *Bruno v. Whipple*, 138 Conn. App. 496, 510 (2012) ("[A] person cannot be held liable for breach of the implied covenant of good faith and fair dealing without being a party to a contract[.]"). Because Mr. McMahon is not a signatory to the Employment Contract, he cannot be held liable for breach of the implied duty of good faith with respect to that agreement.

Accordingly, Mr. Luck's claim of breach of the implied covenant of good faith and fair dealing as to Mr. McMahon is **DISMISSED**.

### 2. Alpha

Defendants further argue that Mr. Luck cannot assert a breach of the implied covenant of good faith against Alpha and Mr. McMahon on three grounds: (1) Mr. Luck's claim "attempt[s] to achieve a result contrary to the clearly expressed terms of the Employment Contract and the Guaranty," Mem. Supp. Mot. to Dismiss at 9; (2) Mr. Luck has "failed to plead sufficient facts to establish that Alpha or [Mr.] McMahon acted with bad faith," *id.* at 12; and (3) Mr. Luck's claim is "impermissibly duplicative of his breach of contract claims," *id.* at 15.

The Court has addressed the sufficiency of Mr. Luck's claim of breach of the implied duty of good faith with respect to Mr. McMahon. As to Alpha, even assuming Mr. Luck's claim is "based on the same factual allegations as his breach of contract claim," *id.*, dismissal of Mr. Luck's breach of the implied duty of good faith claim will not resolve the allegations underlying Mr. Luck's breach of contract claim. Defendants have not moved to dismiss Count Three of the Second Amended Complaint. Under its "inherent authority to manage [its] dockets and courtrooms with a view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), the Court therefore will address both claims following briefing of dispositive motions on the breach of contract claim.

Accordingly, Defendants' motion to dismiss Mr. Luck's breach of the implied duty of good faith claim against Alpha is **DENIED**, without prejudice to renewal.

### B.  Motion to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, courts are instructed to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend, however, is appropriately denied under Rule 15 where the proposed amendment would be futile. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue

prejudice to the opposing party."); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss" under Rule 12(b)(6). *Lucente*, 310 F.3d at 258 (internal quotation marks and citations omitted); *see also Nwachukwu v. Liberty Bank*, No. 3:16-cv-704 (CSH), 2016 WL 3647837, at *2 (D. Conn. July 1, 2016) ("Although leave to amend must be freely given under ordinary circumstances, denial is proper where the proposed amendment would be 'futile.' An amendment is considered 'futile' if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis.").

Mr. Luck moves for leave to amend his Second Amended Complaint to include allegations that "Defendants gave information to or sought the advice of their attorneys for the purpose of facilitating their bad faith termination of Mr. Luck." Mot. for Leave to Amend at 2, ECF No. 161 (Feb. 26, 2021) ("Mot. for Leave to Amend"). He further moves to amend the Second Amended Complaint to allege, based on a "recently produced email string," that "Defendants' [*sic*] wrongfully accused Mr. Luck of failing to comply with a player eligibility policy in hiring Antonio Callaway when the Defendants knew their alleged policy was not the policy in place at the time of Mr. Callaway's signing." *Id.* (citing Ex. 4 to Mot. for Leave to Amend, Ex. C, ECF No. 160-3 (July 17, 2019)).

Defendants argue that Mr. Luck's proposed amendments to the Second Amended Complaint would be "futile" because they could not withstand a motion to dismiss under Rule 12(b)(6). Defs.' Combined Mem. in Opp'n to Pl.'s Mot. to Compel Documents, Reply Mem. in Supp. of Defs.' Mot. to Dismiss Pl.'s Breach of the Implied Covenant of Good Faith Claim, and

Mem. in Opp'n to Pl.'s Mot. for Leave to File a Third Amended Compl. at 33, ECF No. 172 (Mar. 26, 2021) ("Defs. Combined Mem."). The Court agrees.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In determining whether Mr. Luck has met this standard, the Court must accept the allegations in the pleading as true and draw all reasonable inferences in favor of the non-moving party. *See Newman & Schwartz v. Asplundh Tree Expert Co., Inc*., 102 F.3d 660, 662 (2d Cir. 1996).

Mr. Luck's proposed Third Amended Complaint, *see* Ex. 1 (Redacted) to Mot. for Leave to Amend, ECF No. 161-1 (Feb. 26, 2021) ("Ex. 1 (Redacted) to Mot. for Leave to Amend"), includes allegations that "[i]n at least seventy-five . . . emails . . . Defendants [] gave information to or sought the advice of their attorneys for the purpose of facilitating their bad faith termination of Mr. Luck," *id.* at ¶ 13. The proposed pleading further alleges that "Defendants' attorneys" drafted and signed the termination letter that was "[c]entral to Defendants' fraudulent scheme to avoid paying Mr. Luck the amounts he is . . . owed[.]" *Id.* According to Mr. Luck, these allegations are intended to "provide additional factual support to bolster [Mr. Luck's] breach of the implied duty of good faith claim, which the Defendants have challenged in part based on an

alleged failure to plead sufficient facts to establish the Defendants' bad-faith conduct." Mot. for Leave to Amend at 5.

The mere fact that Defendants consulted with their attorneys regarding Mr. Luck's termination from the XFL, however, is insufficient to support an allegation of bad faith. "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *De La Concha of Hartford, Inc.*, 269 Conn. at 433 (quoting *Habetz v. Condon*, 224 Conn. 231, 237 (1992)). "Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.* (quoting *Habetz*, 223 Conn. at 237). Mr. Luck's proposed allegations that Defendants "gave information to" or "sought the advice of their attorneys," Ex. 1 (Redacted) to Mot. for Leave to Amend ¶ 13, for the purpose of terminating Mr. Luck do not provide a basis on which to draw a "reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants terminated Mr. Luck for a "dishonest purpose" or that the termination was "design[ed] to mislead," *De La Concha of Hartford, Inc.*, 269 Conn. at 433. Mr. Luck also does not plead facts to support his allegation that Defendants' attorneys drafted and signed the termination letter under an "interested or sinister motive," *id.*, as part of a "fraudulent scheme," Ex. 1 (Redacted) to Mot. for Leave to Amend ¶ 13.

In addition to Mr. Luck's allegations regarding Defendants' consultations with their attorneys, Mr. Luck's proposed amendments allege that "a recently produced email string between Mr. Luck and Human Resources personnel" shows that Mr. Callaway "was not disqualified from playing in the XFL under the policy in place at the time when he signed [to the league]." *Id.* ¶ 15. The e-mail string included in the proposed Third Amended Complaint

indicates that Mr. Luck stated to XFL personnel that "Vincent [McMahon] [is] on board with the following criteria [to] disqualify[] a player[.]" Ex. 1 to Sealed Mot. for Leave to Amend ¶ 15, ECF No. 161-1 (Feb. 26, 2021).

But the Court cannot reasonably infer from this communication, which does not include Mr. McMahon as a recipient, that Defendants terminated Mr. Luck for a "dishonest purpose." *De La Concha of Hartford, Inc.*, 269 Conn. at 433. Moreover, Mr. Luck already has alleged in the Second Amended Complaint that "the Termination Letter falsely states that Mr. Luck violated XFL policy and directives issued by [Mr.] McMahon when Mr. Luck signed [Mr. Callaway]." Second Am. Compl. ¶ 13. Thus, the inclusion of these additional allegations is "unlikely to be productive" in resolving Mr. Luck's claim of breach of the implied duty of good faith. *Lucente*, 310 F.3d at 258.

Accordingly, Mr. Luck's motion for leave to amend his Second Amended Complaint is **DENIED**.

### C.  Motion to Compel Documents

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claims or defenses and is proportional to the needs of the case." Fed. R. Civ. P. 26, Advisory Committee Notes to 2015 Amdts. A district court has "wide latitude to determine the scope of discovery." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *Mirra v. Jordan*, No. 13-cv-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion.").

On January 6, 2021, Defendants served their answers to Mr. Luck's First Requests for Production (Alpha and McMahon) and Second Requests for Production (McMahon). Mot. to

Compel Docs. at 4, ECF No. 158 (Feb. 26, 2021) (citing Ex. A to Mot. to Compel Docs., ECF No. 158-1 (Feb. 26, 2021)). Defendants supplemented their answers and served their privilege log on Mr. Luck on January 29, 2021. *Id.*; Ex. B to Mot. to Compel Docs.: Defs.' Privilege Log, ECF No. 158-2 (Feb. 26, 2021) ("Defs. Privilege Log").

Mr. Luck moves to compel the production of certain documents contained within the privilege log on the grounds that they are not subject to attorney-client privilege or that Defendants have waived the attorney-client privilege or work-product doctrine with respect to these communications. Mot. to Compel Docs. at 4. In the alternative, Mr. Luck requests that the Court order Defendants to submit the documents for *in camera* review. *Id.*

During the September 9, 2021 motion hearing, the Court ordered Defendants to submit a subset of documents listed on their privilege log for *in camera* review. Min. Entry, ECF No. 325 (Sept. 9, 2021).

### 1. Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "The privilege's underlying purpose has long been 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

"[A]s a general matter the attorney-client privilege applies only to communications between lawyers and their clients[.]" *Id.* The Second Circuit, however, has recognized certain limited exceptions to that rule. *See id.* (collecting cases); *see also United States v. Kovel*, 296

F.2d 918 (2d Cir. 1961) (extending privilege to certain communications between a client and accountant). As relevant here, the attorney-client privilege "extends also to certain disseminations of the substance of attorney-client communications made for the purpose of obtaining and giving legal advice. For example, the privilege would shield the relaying of an attorney's advice from one member of a client corporation to another employee." *Haddock v. Nationwide Fin. Servs.*, No. 3:01-cv-1552 (SRU), 2009 WL 3734059, at *1 (D. Conn. Nov. 6, 2009). The privilege, however, "only protects the *contents* of confidential communications between an attorney and her client; information relating to such a communication is outside the privilege's reach." *Id.* (emphasis in original).

Mr. Luck argues that a subset of documents on Defendants' privilege log "do not involve communications between an attorney and the client and therefore are discoverable."[1] Mot. to Compel Docs. at 7; *id.* ("[N]one of the Non-Privileged Emails involve a communication by or with an attorney or someone acting as his agent."). Mr. Luck provides as an example e-mails consisting of "communications between and among Cindy Wagner, Alpha's human resources representative, and XFL employees including Mr. Luck," none of which, Mr. Luck argues, "involve communications with an attorney." *Id.* at 8.

In addition, Mr. Luck argues that a series of e-mail communications that "seek[] information for purposes of providing advice regarding [Mr.] Callaway," *id.* at 10, are not privileged because they "do not convey legal advice, but rather simply discuss facts surrounding the Callaway matter," *id.* at 10–11 (citing Defs. Privilege Log at 7–8).

---

[1] *See* Defs. Privilege Log at 4–11, 13, 16, 18, 26–28, 35, 41 (Entries 33–37, 44, 56, 80–89, 107–109, 113–114, 123, 124, 130, 134, 157–158, 160–161, 201, 230, 347, 349, 351, 362–364, 427, 428, 488, 489).

Defendants maintain that the documents identified by Mr. Luck are entitled to attorney-client privilege because they (1) "involve confidential communications between an attorney and client for the purpose of seeking or providing legal advice," Defs. Combined Mem. at 12 (emphasis omitted), (2) "are communications among Alpha employees reflecting legal advice provided by attorneys for Alpha, *id.* at 13; or (3) "are communications that were prepared or provided to Alpha's counsel, [Mr.] McDevitt, at his request in order to provide legal advice to Alpha concerning [Mr.] Luck's termination," *id.* at 14.

The Court agrees in part.

Entries 44, 56, and 107–109 of the privilege log consist of communications between Alpha employees and outside counsel. Defs. Combined Mem. at 13; Ex. G to Defs. Combined Mem.: Decl. of Mary A. Gambardella ¶¶ 6, 10, ECF No. 173 (Mar. 26, 2021) ("Gambardella Decl."). As confidential communications between Alpha employees and their attorneys for the purpose of obtaining or receiving legal advice, these documents are protected by attorney-client privilege. *Mejia*, 655 F.3d at 132 ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice").

With respect to the documents on which an attorney is not copied, and for which Defendants have not provided an affidavit, Defendants' privilege log is insufficient to establish attorney-client privilege.

Defendants argue that the documents they seek to protect under the attorney-client privilege relay legal advice among Alpha employees. The Court, however, has reviewed *in camera* Entries 80–89 of Defendants' privilege log, *see* Defs. Privilege Log at 7–8, and finds that these documents are not protected by the attorney-client privilege. Entries 80-89 of Defendants'

privilege log involve communications between Mr. Luck, Ms. Wagner, and other XFL

employees regarding the criteria for disqualifying a player from the XFL. While the e-mails may

reflect certain aspects of legal advice, the primary substantive communications relate to player

hiring criteria discussed in Entries 80 and 84. Mr. Luck sent Entry 80 and is the recipient of

Entry 84. Moreover, Defendants previously disclosed a portion of the e-mail thread, including

the hiring criteria, in Entry 80 to Mr. Luck as a non-privileged document. Mot. to Compel Docs.

at 9; Ex. D to Sealed Mot. to Compel Docs., ECF No. 157-1 (Feb. 26, 2021). Defendants

therefore have waived the privilege with respect to Entries 80 and 84. *Murtha v. N.Y.S. Gaming

Comm'n*, No. 17-cv-10040 (PMH), 2020 WL 5504311, at *2 (S.D.N.Y. Sept. 9, 2020) ("[W]hen

there has been a selective disclosure of attorney-client communications in the litigation, courts

typically find the party has waived privilege as to all documents pertaining to the subject

disclosed[.]" (internal quotation marks omitted)). While Entries 81–83 and 85–89 may relate to

legal advice, they are primarily non-substantive and do not appear to reflect the contents of

confidential attorney-client communications; therefore, these documents also must be disclosed.

In view of the Court's consideration of Entries 80–89, and to ensure that the remaining

documents are protected by the attorney-client privilege, the Court will order *in camera* review

of the additional entries on which an attorney does not appear to be copied and for which

Defendants have not provided an affidavit: Entries 33, 37, 123–124, 201, 230, 347, 349, 351, and

362–364. *See* Defs. Privilege Log at 4, 10, 16, 18, 27–28.

With respect to the e-mails relating to Mr. McDevitt, Defendants argue that these

documents are privileged because "they are communications that were prepared or provided to

Alpha's counsel, Attorney McDevitt, at his request in order to provide legal advice to Alpha

32

concerning [Mr.] Luck's termination."[2] Defs. Combined Mem. at 14 (citing Ex. F to Defs.

Combined Mem.: Decl. of Jerry S. McDevitt ¶ 8, ECF No. 172-6 (Mar. 26, 2021) ("McDevitt

Decl.")). Defendants also contend that the e-mail communications relating to Mr. Callaway

"sought and/or provided information regarding [Mr.] Callaway for the purpose of enabling [Mr.]

McDevitt to provide legal advice to Alpha."[3] *Id.* at 15 (citing McDevitt Decl. ¶ 7).

Although, "[a]s a general rule, communications between client and attorney are

privileged when made in confidence for the purpose of seeking legal advice," *Olson v. Accessory*

*Controls & Equip. Org.*, 254 Conn. 145, 157 (2000) (internal quotation marks omitted), a

communication between an attorney and client "solely regarding a matter of fact" still may be

protected by attorney-client privilege if "it were shown to be inextricably linked to the giving of

legal advice," *Ullmann v. State*, 230 Conn. 698, 713 (1994). "[I]t is not enough for [a] party

invoking the [attorney-client] privilege to show that a communication to legal counsel relayed

information that 'might become relevant to the future rendering of legal advice. Instead, the

communication must also either explicitly or implicitly seek specific legal advice about that

factual information.'" *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1, 16 (2016).

The privilege log indicates that the communications relating to Mr. Callaway "seek[]

information for purposes of providing legal advice." Defs. Privilege Log at 24–25 (Entries 315–

325). Moreover, Mali Friedman, former XFL in-house counsel, is copied on these

communications. *Id.* In his affidavit, Mr. McDevitt states that "Entries 405–06, 411, 414–18, and

424–89. . . are . . . documents and communications that were prepared or provided to me at my

request for purposes of providing legal advice to Alpha regarding [Mr.] Luck's termination and

---

[2] *See* Defs. Privilege Log at 35, 41 (Entries 427–428, 488, 489).

[3] *See* Defs. Privilege Log at 24–25 (Entries 315–325).

in anticipation of potential litigation with [Mr.] Luck[.]" McDevitt Decl. ¶ 8. He further states

that "[i]n order to provide legal advice to Alpha concerning the Callaway matter, I requested

information regarding [Mr.] Callaway from the XFL's Vice President of Business and Legal

Affairs, Mali Friedman, who in turn requested such information from the XFL's Head of Talent

Acquisition, Ian Decker." *Id.* ¶ 7. Because these documents were prepared at Mr. McDevitt's

request in order to enable him to provide legal advice regarding Mr. Luck's termination and Mr.

Callaway's signing to the XFL, these communications are protected by the attorney-client

privilege. *Shew v. Freedom of Info. Comm'n*, 245 Conn. 149, 157 (1998) (facts elicited by

attorney in investigation that were "necessary to obtain informed legal advice" and "which might

not have been made absent the privilege" were inextricably linked to that advice).

Accordingly, Mr. Luck's motion to compel documents is **GRANTED** with respect to

Entries 80–89 of Defendants' privilege log, and **DENIED** with respect to the challenged

communications relating to Mr. McDevitt. The Court orders *in camera* review of Entries 33, 37,

123–124, 201, 230, 347, 349, 351, and 362–364. Defendants shall disclose these documents to

the Court by **September 24, 2021**.

## 2. Implied Waiver

"Because of the important public policy considerations that necessitated the creation of

the attorney-client privilege, the 'at issue,' or implied waiver, exception [to the privilege] is

invoked only when the contents of the legal advice is integral to the outcome of the legal claims

of the action." *Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 249 Conn. 36, 52–53 (1999).

For example, "[s]uch is the case when a party specifically pleads reliance on an attorney's advice

as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client

communication, or specifically places at issue, in some other manner, the attorney-client

relationship." *Id.* at 53. "If the information is actually required for a truthful resolution of the issue on which the party has raised . . . the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case." *Id.*

Mr. Luck argues that Defendants have waived the attorney-client privilege because they "have specifically placed their attorney-client relationship at issue through manners other than direct testimony," including through "reliance on counsel's advice for the grounds and decision to terminate Mr. Luck with cause[.]" Mot. to Compel Docs. at 12.

Defendants respond that they "have not done anything to place the contents of their privileged communications at issue in this case at this time. . . . Merely because [Mr.] Luck's compliance with certain policies and directives is an issue in the case does not mean that Defendants have placed the contents of the legal advice regarding those matters at issue." Defs. Combined Mem. at 17 (emphasis omitted).

The Court agrees.

Each of the categories of e-mail communications identified by Mr. Luck as having been waived under the "at issue" doctrine involve his alleged failure to comply with XFL policies or directives that formed the purported basis for his termination from the XFL. For example, the e-mail communications between Ms. Wagner and Alpha employees regarding "player background checks" relate to Mr. Luck's alleged failure to adhere to Mr. McMahon's directive "not to sign or employ players with questionable backgrounds." Mot. to Compel Docs. at 13 (citing Ex. E to Mot. to Compel Docs., ECF No. 158-5 (Feb. 26, 2021)).

The fact that these topics are the subject of dispute in this case does not render "the contents of the legal advice" given in relation to these topics "at issue" and thereby waive the

attorney-client privilege. "Merely because the communications are relevant [to the legal claims] does not place them at issue." *Woodbury Knoll, LLC v. Shipman & Goodwin, LLP*, 305 Conn. 750, 781 (2012) (emphasis omitted) (quoting *Metropolitan Life Ins. Co.*, 249 Conn. at 54). In arguing that Mr. Luck violated certain XFL policies, Defendants do not specifically rely on the content of legal advice provided in the challenged documents in support of a claim or defense. Mr. Luck contends that Defendants rely upon "legal advice received from Mr. McDevitt" regarding Mr. Callaway, *see* Pl.'s Combined Reply Mem. to Defs.' Combined Mem. (ECF 172) at 7, ECF No. 175 (Apr. 8, 2021), but "[i]f admitting that one relied on legal advice in making a legal decision put the communications relating to the advice at issue, such advice would be at issue whenever the legal decision was litigated. If that were true, the at issue doctrine would severely erode the attorney-client privilege and undermine the public policy considerations [o]n which it is based," *Metropolitan Life Ins. Co.*, 249 Conn. at 54; *see* Defs. Combined Mem. at 21 ("Adoption of [Mr.] Luck's position would mean that all privileged communications would be subject to disclosure any time any employer consulted with counsel for legal advice concerning an employee's termination—a position that would effectively chill any such communication.").

Accordingly, Defendants have not "specifically place[d] at issue" the attorney-client relationship, *Metropolitan Life Ins. Co.*, 249 Conn. at 53, and the privilege is not waived. Mr. Luck's motion to compel the challenged documents on this ground is **DENIED** except to the extent explained above.

### 3.  Work Product

The work-product doctrine, codified for the federal courts in Federal Rule of Civil Procedure 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary

intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). "Analysis of one's case 'in anticipation of litigation' is a classic example of work product, and receives heightened protection under Federal Rule of Civil Procedure 26(b)(3)." *Id.* at 1196–97 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)).

"To invoke this privilege, a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

In addition, "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). "The quintessential example [of waiver] is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received." *Id.* at 182–83 (citation omitted). "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* at 183.

Mr. Luck argues that Defendants have waived the work-product privilege with respect to documents relating to Mr. Luck's termination under the "fairness doctrine," which permits examination of protected communications when a party "advance[s] a claim[,] . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." Mot. to Compel Docs. at 18 (quoting *Horn v. City of New Haven*, No. 3:18-cv-1502 (JAM), 2019 WL 3997095, at *2 (D. Conn. Aug. 23, 2019) (Spector, Mag.)).

Defendants contend that "[Mr.] Luck incorrectly argues that the work product protection was waived under the fairness doctrine" because they "have not affirmatively used or disclosed the contents of the work product materials such that withholding those materials would be unfair to [Mr.] Luck." Defs. Combined Mem. at 24.

The Court agrees.

Defendants' privilege log and accompanying affidavits state that the challenged documents regarding Mr. Luck's termination were prepared by or provided to Mr. McDevitt at his request for the purpose of providing legal advice to Alpha regarding Mr. Luck's termination and in anticipation of potential litigation with Mr. Luck. *Id.* at 23. Mr. McDevitt states that these documents and communications "reflect[] my legal advice and mental impressions regarding [Mr.] Luck's termination." McDevitt Decl. ¶ 8. Defendants' privilege log and accompanying affidavits therefore are sufficient to establish that the challenged communications are protected by the work-product doctrine.

Furthermore, as discussed above, Defendants have not "partially disclose[d]" or "affirmatively rel[ied]" on these communications to support their claims or defenses. *In re Grand Jury Proceedings*, 219 F.3d at 182; *see In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("[P]rivileged information may be in some sense relevant in any lawsuit[, but] a party must *rely* on privileged advice from his counsel to make his claim or defense." (emphasis in original)). "Although it would be helpful for [Mr. Luck] to know what advice [Defendants' attorneys] gave [Alpha], . . . that advice is neither integral to nor necessary for the resolution of [Mr. Luck's] . . . claims." *Morande Automotive Grp., Inc. v. Metropolitan Grp., Inc.*, No. 3:04 CV 918 (SRU), 2009 WL 650444, at *5 (D. Conn. Mar. 12, 2009).

Accordingly, the challenged communications concerning Mr. Luck's termination are protected by the work-product doctrine, and Mr. Luck's motion to compel these documents is **DENIED**.

### 4.   *In Camera* Review

Mr. Luck requests that the Court conduct *in camera* review "to determine . . . if the attorney-client privilege or work-product doctrine applies" to the challenged documents. Mot. to Compel Docs. at 19.

"When faced with claims of privilege, courts often undertake in camera review in order to supplement the parties' privilege logs and determine the content of the documents." *Weber v. Paduano*, No. 02 CIV. 3392 (GEL), 2003 WL 161340, at *13 (S.D.N.Y. Jan. 22, 2003). *In camera* review of documents, however, "while potentially helpful as to the determination of privilege, is 'not . . . to be routinely undertaken . . . as a substitute for a party's submission of an adequate record for its privilege claims,' especially where, as here, the Court would have to examine a large quantity of documents." *Id.* (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993)).

Accordingly, *in camera* review of the documents is warranted only with respect to the documents on which an attorney is not copied and Defendants arguably relay legal advice, as specified above.

### 5.   Sanctions

Federal Rule of Civil Procedure 37(a)(5) applies to the award of expenses for motions to compel disclosure or discovery. Fed. R. Civ. P. 37(a)(5). Rule 37(a)(5)(B) provides that, if the motion is denied, the Court

> must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent

39

> who opposed the motion its reasonable expenses incurred in
> opposing the motion, including attorney's fees. But the court must
> not order this payment if the motion was substantially justified or
> other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(A)(5)(B). District courts generally have "wide discretion to impose sanctions"

under Rule 37. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 289 (2d Cir. 2006). But the text of

the rule indicates that the award of expenses is mandatory in this particular context unless one of

the two exceptions listed in the rule applies. Fed. R. Civ. P. 37(A)(5)(B). "Rule 37 places the

burden of proof on the disobedient party to show 'that his failure is justified or that special

circumstances make an award of expenses unjust.'" *John Wiley & Sons, Inc. v. Book Dog Books,*

*LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) ((quoting *Novak v. Wolpoff & Abramson LLP*, 356

F.3d 175, 178 (2d Cir. 2008)).

A failed motion is "substantially justified" in this context if it "raised an issue about

which reasonably people could genuinely differ on whether a party was bound to comply with a

discovery rule." 8B Charles Alan Wright, *et al., Federal Practice & Procedure* § 2288 (3d ed.

2016); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Defendants ask this Court to impose sanctions on Mr. Luck for filing the motion to

compel, arguing that it was not "substantially justified." Defs. Combined Mem. at 26.

Specifically, Defendants seek attorney's fees and costs incurred by Defendants in opposing the

motion. *Id.*

But, in this case, Mr. Luck's motion was not entirely baseless and presented issues about

which reasonable minds could differ, including the issue of whether certain documents are

privileged. While the Court ultimately did not find all of Mr. Luck's arguments persuasive, his

motion had a valid basis.

Accordingly, Mr. Luck's motion was "substantially justified," and the Court will not award attorneys' fees or impose any other sanction.

### B. Motion to Compel Verification of Interrogatory Answers

Federal Rule of Civil Procedure 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33 further requires "[t]he person who makes the answers [to] sign them, and the attorney who objects [to] sign any objections." Fed. R. Civ. P. 33(b)(5).

Mr. Luck moves to compel Alpha to verify its answers to Mr. Luck's First Set of Interrogatories and to fully respond to Interrogatory No. 2,[4] arguing that he is "entitled to know who created the Supplemental Responses to the interrogatories on behalf of Alpha."[5] Mot. to Compel Verification of Def. Alpha's Interrog. Answers and Resp. to Interrog. No. 2 at 3, ECF No. 168 (Mar. 11, 2021) ("Mot. to Compel Verification"). Mr. Luck argues that Peter Hurwitz, who was appointed by the Bankruptcy Court as the Plan Administrator of Alpha following the sale and confirmation of the Plan, "may verify the Responses to Plaintiff's Interrogatories 1, 2, and 4" or, in the alternative, that "Alpha should be compelled to have the person who drafted the Supplemental Responses verify them under oath." *Id.* at 4.

---

[4] Interrogatory No. 2 asks Alpha to "[i]dentify the names and titles of all Alpha employees who used mobile phone(s) issued by Alpha, [Mr.] McMahon, or the XFL for personal matters or matters unrelated to the business of Alpha or the XFL from June 1, 2018 until April 13, 2020." Ex. A to Mot. to Compel Verification of Def. Alpha's Interrog. Answers and Resp. to Interrog. at 5, ECF No. 168-1 (Feb. 25, 2021).

[5] Although Mr. Luck characterizes his motion as two separate requests for the Court to order (1) verification of Alpha's Supplemental Responses to his First Set of Interrogatories, and (2) Alpha to fully respond to Interrogatory No. 2, Mr. Luck's second request effectively reiterates his first request with respect to Interrogatory No. 2. *See* Mot. to Compel Verification at 3 ("The Court should compel . . . Alpha to respond fully and completely to Interrogatory No. 2. Plaintiff is entitled to know who created the Supplemental Responses to the interrogatories on behalf of Alpha.").

Alpha responds that it previously communicated to Mr. Luck that "as a bankrupt entity, Alpha does not have an officer or agent available to sign the interrogatory answers." Opp'n to Pl.'s Mot. to Compel Verification of Alpha's Interrog. Answers and Resp. to Interrog. No. 2 at 16, ECF No. 174 (Apr. 1, 2021) ("Opp'n to Mot. to Compel Verification"). Alpha states that it offered as an alternative to verification to agree "that the interrogatory answers are admissions of Alpha under Fed. R. Civ. P. 801(d)(2)" and "not to object to the admissibility of the interrogatory answers due to the lack of a verification[.]" *Id.*

The Court agrees with Alpha that Mr. Hurwitz is not in a position to verify Alpha's responses to Interrogatories 1, 2, and 4. *See id.* at 18 (arguing that as Plan Administrator "responsible for the winding down of Alpha's affairs," Mr. Hurwitz "has no personal knowledge of Alpha's pre-bankruptcy activities and policies related to mobile phone usage or information technology" or "of Alpha employees who used mobile phones issued by Alpha (or the XFL)"). Rule 33 requires, however, "[t]he person who makes the answers [to] sign them," Fed. R. Civ. P. 33(b)(5), and expressly provides that interrogatories may be answered "by any officer or agent, who must furnish the information available to the party," Fed. R. Civ. P. 33(b)(1)(B). "This language has been uniformly construed to authorize 'answers by an attorney' for the party." *Caggianiello v. FSG PrivatAir, Inc.*, No. 3:03-cv-1011 (AWT), 2005 WL 8169559, at *3 (D. Conn. Mar. 9, 2005) (quoting *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 508 (4th Cir. 1977)); *see Shire Labs, Inc. v. Barr Labs., Inc.*, 236 F.R.D. 225, 227 (S.D.N.Y. 2006) ("Rule 33[] provides that a corporation may answer interrogatories 'by any officer or agent.' 'Agent' includes an outside attorney for the corporation.").

Alpha indicates that "Defendants' counsel drafted [the] supplemental responses[,]" but that "[Mr.] Luck's counsel has made clear in both his Motion to Compel and the parties'

correspondence that he intends to depose whomever verifies the supplemental responses[,] . . . which serves to prevent Defendants' counsel from verifying the supplemental responses they drafted." Opp'n to Mot. to Compel Verification at 19.

The Court appreciates Alpha's position, particularly given Mr. Luck's subsequent motion to compel the deposition of Mr. McDevitt on June 4, 2021, *see* Mot. to Compel Dep. of Jerry McDevitt, ECF No. 197 (June 4, 2021), but nevertheless orders verification of the Supplemental Responses to Interrogatory Nos. 1, 2, and 4 as required under Rule 33(b)(5). *See Pontillo v. Federated Dep't Stores, Inc.*, No. 93 Civ. 1950 (SWK), 1993 WL 385727, at *3 (S.D.N.Y. Sept. 29, 1992) ("The Rule 33 obligation of a corporation is to obtain the signature of an 'officer or agent,'" and defense counsel was "an agent for such purposes if the corporation so appoints him."). While an attorney who signs an interrogatory response "must . . . have a basis for signing the responses, and thereby state that the responses on behalf of the corporation are accurate," *Jacob v. City of New York*, No. 07-cv-04141 (KAM) (MDG), 2009 WL 383752, at *2 (E.D.N.Y. Feb. 6, 2009), Defendants' counsel appears to have a basis here, where "the information in Alpha's possession, custody or control is limited to Alpha's pre-bankruptcy records in the possession of Defendants' counsel and the knowledge of Defendants' counsel from its pre-bankruptcy representation of Alpha," Opp'n to Mot. to Compel Verification at 12.

Accordingly, Mr. Luck's motion to compel verification of Alpha's Supplemental Responses to Interrogatory Nos. 1, 2, and 4 in Mr. Luck's First Set of Interrogatories is **GRANTED**. Each party shall bear its own costs and expenses incurred in filing or responding to the motion to compel verification, including attorneys' fees. As discussed herein, if Mr. Luck attempts to depose Defendants' counsel based on the verification of the Supplemental Responses, the Court likely would deny any such request.

### C.  Motion to Strike Plaintiff's Affirmative Defenses

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Resolution of a Rule 12(f) motion is left to the district court's discretion, and such motions are generally disfavored and infrequently granted. *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15–16 (D. Conn. 2013). This type of motion will be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). "[C]ourts should not tamper with pleadings unless there is a strong reason for so doing." *Id.* Thus, the party moving to strike "bears a heavy burden" and ordinarily must show that (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting the allegations to stand would result in prejudice to the movant. *Tucker*, 936 F. Supp. at 16.

Alpha moves to strike Mr. Luck's affirmative defenses asserted in his Answer, *see* Pl.'s Answer and Affirmative Defenses to Alpha Entertainment, LLC's Amended Countercl., ECF No. 166 (Mar. 4, 2021) ("Pl.'s Answer and Affirmative Defenses"), to Alpha's amended counterclaims, *see* Def. Alpha Entertainment LLC's Amended Countercl., ECF No. 153 (Feb. 18, 2021) ("Def.'s Amended Counterclaims"). Mot. to Strike Pl.'s Affirmative Defenses, ECF No. 171 (Mar. 25, 2021) ("Mot. to Strike Pl.'s Affirmative Defenses"); Mem. of Law in Supp. of Mot. to Strike Pl.'s Affirmative Defenses, ECF No. 171-1 (Mar. 25, 2021) ("Mem. Supp. Mot. to Strike").

Mr. Luck raises as affirmative defenses to Alpha's amended counterclaims that (1) "Alpha failed to comply with the required notice and cure provisions prior to terminating Mr.

Luck," Pl.'s Answer and Affirmative Defenses ¶¶ 124–128; (2) "Defendants' Termination Letter

. . . constituted a breach and repudiation of the Employment Contract," *id.* ¶ 129; (3) Alpha's

termination of Mr. Luck's employment violated the implied duty of good faith and fair dealing,

*id.* ¶¶ 133–136; (4) Alpha "[r]ejected and [b]reached the Employment Contract" during its

bankruptcy proceedings, *id.* ¶¶ 137–140; (5) Alpha "waived Mr. Luck's alleged actions or

omissions with respect to [Mr.] Callaway as a ground for terminating Mr. Luck or maintaining

any claims against him," *id.* ¶ 148, "ratified Mr. Luck's actions related to [Mr.] Callaway," *id.* ¶

149, and "is estopped from . . . asserting [Mr. Luck's alleged violation of XFL policy relating to

Mr. Callaway] as a ground for terminating Mr. Luck for cause," *id.* ¶ 150; (6) Alpha waived or is

estopped from asserting Mr. Luck's alleged non-performance as a ground for terminating Mr.

Luck from employment, *id.* ¶¶ 151–155; and (7) Alpha ratified, waived, or is estopped from

asserting Mr. Luck's personal use of his XFL-issued iPhone as a ground for terminating Mr.

Luck from his employment, *id.* ¶¶ 156–161.

Alpha argues that Mr. Luck's "affirmative defenses should be stricken because they are

legally insufficient." Mot. to Strike Pl.'s Affirmative Defenses at 1.

The Court disagrees.

Alpha has not established that Mr. Luck's affirmative defenses "have no bearing on the

issues in the case," or that "no evidence in support of the allegations would be admissible."

*Tucker*, 936 F. Supp. at 16. The facts underlying Mr. Luck's affirmative defenses substantially

overlap with those alleged in Mr. Luck's Second Amended Complaint, which have yet to be

resolved on dispositive motions. *Compare* Mem. of Law in Opp'n to Alpha Entertainment LLC's

Mot. to Strike at 11, ECF No. 177 (Apr. 15, 2021) (arguing that "Defendants have not terminated

Mr. Luck's Employment Contract in accordance with its terms because they did not have cause

and they failed to provide any notice to cure, and there was no agreement between Mr. Luck and Defendants to do so"), *with* Second Am. Compl. ¶ 21 ("During Mr. Luck's time as Commissioner and CEO of the XFL, neither Alpha nor [Mr.] McMahon provided Mr. Luck with written notice of any purported belief that he was not executing his responsibilities with competence or diligence, nor did either provide written notice that any of Mr. Luck's acts or omissions constituted 'Cause' under the Employment Contract."). Given the substantial similarity of the underlying facts, and the fact that Mr. Luck filed his affirmative defenses before the filing of dispositive motions, *see GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) ("A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of litigation."), Alpha has not shown that it would be prejudiced by permitting Mr. Luck's affirmative defenses, *Tucker*, 936 F. Supp. at 16.

Accordingly, under its "inherent authority to manage [its] dockets and courtrooms with a view toward the efficient and expedient resolution of cases," *Dietz*, 136 S. Ct. at 1892, Alpha's motion to strike Mr. Luck's affirmative defenses to Alpha's amended counterclaims is **DENIED**, without prejudice to renewal.

### D.  Motion to Compel Deposition of Alpha Representatives

Mr. Luck moves to compel the deposition of person(s) designated as corporate representatives of Alpha under Federal Rule of Civil Procedure 30(b)(6). Emergency Mot. to Compel Dep. of Def. Alpha Entertainment's Representative(s) Pursuant to Federal Civil Procedure Rule 30(b)(6) at 3, ECF No. 179 (May 7, 2021) ("Mot. to Compel Dep. of Alpha Representatives").

Alpha argues that "none of [the] purposes [of a Rule 30(b)(6) deposition] is served by [Mr.] Luck's Rule 30(b)(6) deposition notice to Alpha—a bankrupt entity with no employees." Mem. in Opp'n to Mot. to Compel 30(b)(6) Dep. at 14, ECF No. 188 (May 28, 2021). Furthermore, Alpha contends that given the volume of documents produced and the prior testimony of individual Alpha employees, "any corporate deposition of Alpha beyond the prior testimony of these witnesses on such topics would serve no practical purpose and only be duplicative, unduly burdensome and disproportionate to the needs of the case." *Id.* at 19.

Mr. Luck replies that the testimony of individual deponents is insufficient because "they do not speak for Alpha." Reply to Def. Alpha's Mem. in Opp'n to Mot. to Compel 30(b)(6) Dep. at 4, ECF No. 194 (June 4, 2021).

The Court finds that a Rule 30(b)(6) deposition is not warranted at this time. "[S]ince depositions are inherently time-consuming and inefficient, they ought to be productive and not simply an excuse to seek information that is already known." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (internal quotation marks omitted). "Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition." *Id.* Mr. Luck contends that he "seeks the deposition of Alpha's corporate representatives to learn and confirm the facts upon which Alpha intends to defend this case and prosecute its counterclaims," Reply to Def. Alpha's Mem. in Opp'n to Mot. to Compel 30(b)(6) Dep. at 6, but he does not specify which corporate representatives he seeks to depose, nor does he identify with sufficient clarity the facts or topics of uncertainty he intends to confirm. While "[a] party may . . . have an interest in getting the corporation's testimony on an issue, rather than the testimony of an individual," *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Assoc. v. Royal Bank of Scotland Grp. PLC*, No. 3:11-cv-1383

(AWT), 2015 WL 13634404, at *3 (D. Conn. Aug. 20, 2015), Mr. Luck has not established that interest here.

Accordingly, Mr. Luck's motion to compel a Rule 30(b)(6) deposition of Alpha's corporate representatives is **DENIED**, without prejudice to renewal.

### E.  Motion for Protective Order and Motion to Seal

Under Federal Rule of Civil Procedure 26(c)(1), "[a] person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Where the discovery sought is relevant, the party seeking protection bears the burden of showing that good cause exists to grant the motion. *See Penthouse Int'l, Ltd. V. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004).

Mr. Luck moves for a protective order "to prevent disclosure of any testimony, records, and information that relate to, reflect or concern [Mr.] Luck's Personal Information." Mot. for Protective Order and Br. in Supp. at 3, ECF No. 186 (May 21, 2021) ("Mot. for Protective Order"). "Specifically, [Mr. Luck] requests that Defendants, their counsel and experts be prohibited from disclosing personal information gleaned from the contents of the iPhone utilized by Mr. Luck during his tenure as XFL Commissioner and CEO." *Id.* Mr. Luck also "requests a mechanism to designate information as protected Personal Information," and "[m]oving forward, . . . that discovery be limited in scope to exclude discovery related to [Mr. Luck's] use of the iPhone for non-XFL matters under this new protocol." *Id.* at 4. Mr. Luck further moves to seal his motion for a protective order and accompanying materials. Sealed Mot. to Seal Pl. Oliver Luck's Mot. for Protective Order and Br. in Supp., ECF. No. 185 (May 21, 2021); Pl.'s Mem. of

Law in Supp. of Sealed Mot. to Seal Pl. Oliver Luck's Mot. for Protective Order and Br. in Supp., ECF No. 185-1 (May 21, 2021).

Defendants argue that the Mr. Luck's use of the Alpha-issued iPhone is relevant to the parties' claims and defenses and therefore is discoverable, Sealed Consolidated Resp. to Pl. Oliver Luck's Mot. for Protective Order and Associated Mot. to Seal at 5–6, ECF No. 204 (June 8, 2021) ("Resp. to Mot. for Protective Order"); "[Mr.] Luck's embarrassment if truthful information is disclosed is no basis for a protective order," *id.* at 6 (emphasis omitted); and, contrary to Mr. Luck's assertions, the discovery and use of Mr. Luck's personal information is not rendered "moot" under Connecticut's after-acquired evidence doctrine, *id.* at 9. Defendants further oppose Mr. Luck's motion to seal his motion for a protective order, on the grounds that there is a "common law right of public access to judicial records[] and a presumption favoring access to judicial records." *Id.* at 20.

In reply, Mr. Luck contends that he:

> seeks a protective order under Federal Rule of Civil Procedure 26(c) to not publicize the Stroz Declaration. . . . [Mr. Luck] does not seek to bar Defendants from discovering relevant non-privileged information contained on the iPhone or relevant non-privileged information that may have been deleted from the iPhone or relevant non-privileged information that may have been deleted from the iPhone up to April 9, 2020, when Alpha sent the Termination Letter. . . . Moreover, [Mr. Luck] does not seek to bar Defendants from making their . . . claims that Mr. Luck destroyed evidence, so long as references to the Declaration are made under seal and not publicized.

Reply in Supp. of Pl.'s Mot. for Protective Order and Associated Mot. to Seal at 1–3, ECF No. 215 (June 22, 2021).

In a sur-reply, Defendants argue that Mr. Luck's reply "misrepresents" his motion for a protective order and "seeks relief that is far more extreme," including the ability to "prevent

disclosure or dissemination of . . . Personal Information to anyone" and to "preclude any inquiry into or use of such Personal Information in this action." Sealed Surreply to Pl. Oliver Luck's Reply in Supp. of Mot. for Protective Order and Associated Mot. to Seal at 4, ECF No. 235 (July 13, 2021) (emphasis omitted).

The Court agrees in part.

In his motion for a protective order, Mr. Luck requests "that discovery be limited in scope to exclude discovery related to [Mr. Luck's] use of the iPhone for non-XFL matters[.]" Mot. for Protective Order at 4. Mr. Luck's reply in support of his motion appears to narrow the scope of this request to prohibit the disclosure of such information. To the extent that Mr. Luck continues to seek to exclude discovery related to Mr. Luck's use of the iPhone for non-XFL matters, the Court, consistent with its prior order, will deny this request. *See* Ruling and Order on Discovery Disputes at 9–10, ECF No. 152 (Feb. 5, 2021) ("Mr. Luck's use of the Alpha-issued iPhone is directly relevant to, at the very least, his alleged violation of the XFL's technology policy and thus, the Alpha-issued iPhone is relevant to Defendants' claims and defenses."),

As to the disclosure of all of the information gleaned from Mr. Luck's Alpha-issued iPhone, that issue should be addressed consistent with Rule 26's objective of permitting discovery "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Absent a better understanding of how all of this information relates to the Defendants' defense, if at all, the Court will grant the motion for a protective order, until the Court has had an opportunity to rule on any forthcoming dispositive motions, which explain all of the information's relationship to Defendants' defense. *See Dietz*, 136 S. Ct. at 1892 (permitting district court "to manage [its] dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Thus, if the Court determines that all of this information is both "relevant to" Defendants' defense, and "proportional to the needs of the case," in a ruling on a motion for summary judgment, the materials will be unsealed and available for public view. Fed. R. Civ. P. 26(b)(1). Until such time, however, the information will be subject to a protective order and under seal, including but not limited to for purposes of filing a motion for summary judgment, and any related memorandum of law or other materials.

Accordingly, Mr. Luck's motion for a protective order is **GRANTED in part,** and **DENIED in part**, specifically as discussed above.

### F.  Motion to Compel Answers to Deposition Questions

Defendants move to compel Mr. Luck "to answer deposition questions and respond to discovery requests regarding his spoliation of evidence from his Alpha-issued iPhone and his repeated misrepresentations to the Court intended to conceal such spoliation." Sealed Mot. to Compel Answers to Dep. Questions and Resp. to Discovery Reqs. at 1, ECF No. 191 (June 2, 2021) ("Mot. to Compel Answers to Dep. Questions"); Mem. of Law in Supp. of Mot. to Compel Answers to Dep. Questions and Resp. to Discovery Reqs. at 1, ECF No. 191-1 (June 2, 2021) ("Mem. of Law in Supp. of Mot. to Compel Answers to Dep. Questions"). Defendants contend that "[Mr.] Luck, at the instruction of his Texas counsel, . . . refus[ed] to answer questions at his deposition regarding whether or when he had any communications with his counsel regarding his deletion of data on the phone prior to making such admissions in his deposition[.]" Mem. of Law in Supp. of Mot. to Compel Answers to Dep. Questions at 4. Defendants also maintain that "[Mr.] Luck has refused to answer interrogatories and requests for production seeking information concerning his misrepresentations to the Court regarding the spoliation of evidence on the phone[.]" *Id.* In Defendants' view, "[Mr.] Luck's assertions of [attorney-client] privilege .

. . are improper because the information that Defendants seek either is not privileged in the first instance or is not protected by the privilege because it falls within the crime-fraud exception." *Id.*

In response, Mr. Luck maintains that "Mr. Luck and his counsel did not repeatedly or intentionally misrepresent that nothing had been deleted from the iPhone beginning on April 9, 2020." Sealed Mem. in Opp'n to Defs.' Mot. to Compel Answers to Dep. Questions and Resp. to Discovery Reqs. at 9, ECF No. 212 (June 21, 2012). Mr. Luck argues that he "did not intentionally destroy evidence that may be relevant to future litigation," *id.* at 11, and therefore, "there was no spoliation of evidence as a matter of law," *id.* at 9.

In effect, Defendants appear to seek to obtain additional information regarding Mr. Luck's use and deletion of information from his XFL-issued iPhone in order to "seek sanctions at a later time for [Mr.] Luck's spoliation of evidence." Mem. of Law in Supp. of Mot. to Compel Answers to Dep. Questions at 5 n.2 ("Defendants intend to seek sanctions at a later time for [Mr.] Luck's spoliation of evidence and reserve the right to seek sanctions due to the repeated misrepresentations made to the Court by him and Attorney Dobrowski after the record is completed on that aspect."); *id.* at 4–5 ("[I]nformation regarding the complicity and involvement of others in [Mr.] Luck's misconduct is critical to assessing the seriousness of the misconduct and the nature of the sanctions to impose for such misconduct."). While the Court is inclined to agree with Defendants that sanctions for the spoliation of evidence are warranted, *see Learning Care Grp., Inc. v. Armetta*, 315 F.R.D. 433, 437 (D. Conn. 2016) ("For this Court to impose sanctions for the destruction of evidence, . . . [p]roof of bad faith . . . [or] proof of gross negligence alone . . . suffices." (internal quotation marks omitted)), Defendants do not seek such relief here, nor do they explain how the information they request is otherwise relevant to the parties' claims. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-

privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

As a result, consistent with the Court's provisional granting of Mr. Luck's motion for a protective order above, related to the same subject matter, Defendants may compel Mr. Luck to answer questions at a deposition regarding this same subject matter, with that portion of any deposition being under seal, unless and until a motion for summary judgment which explains all of the information's relationship to Defendants' defense is filed.

Thus, once again, if the Court determines that all of this information is both "relevant to" Defendants' defense, and "proportional to the needs of the case," in a ruling on a motion for summary judgment, the materials will be unsealed. Until such time, however, that portion of any deposition of Mr. Luck relating to this same subject matter will be subject to a protective order and under seal, including but not limited to for purposes of filing a motion for summary judgment, and any related memorandum of law or other materials.

Accordingly, Defendants' motion to compel deposition answers is **GRANTED,** as specifically described above.

### G.  Motion to Compel Deposition of Jerry McDevitt

Generally, within the Second Circuit, "depositions of opposing counsel are disfavored," although they "are not categorically prohibited." *New York Indep. Contractors Alliance, Inc v. Highway, Road & Street Constr. Lab.*, No. 07-cv-1830 (ERK) (VVP), 2008 WL 5068870, at *6 (E.D.N.Y. Nov. 24, 2008) (quoting *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)). "Depositions of opposing counsel are typically held in a negative light, because deposition of a party's attorney is usually both burdensome and disruptive[.]" *Stavola v. Northeast Utilities*, No. 3:05-cv-998 (JBA), 2006 WL 2850414, at *2 (D. Conn. Oct. 4, 2006)

(internal quotation marks omitted). "Deposition of the attorney usually merely embroils the parties and the court in controversies over the attorney-client privilege and more important, involves forays into the area most protected by the work product doctrine—that involving an attorney's mental impressions or opinions." *Id.* (quoting *New York v. Solvent Chem. Co.*, 214 F.R.D. 106, 111 (W.D.N.Y. 2003)).

In determining whether a deposition of opposing counsel is appropriate, the Court is guided by *dicta* in the Second Circuit's opinion in *In re Subpoena issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2007) (hereinafter *In re Friedman*). *See, e.g.*, *Weber v. McCormick*, No. 3:06-cv-2009 (PCD), 2008 WL 11489045, (D. Conn. Mar. 3, 2008) (applying *In re Friedman* to ruling on motion to quash subpoenas requiring appearance of plaintiff's counsel at depositions). In *Friedman*, the court observed that this analysis requires a "flexible approach," where "the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Id.* at 72. Among the considerations the court noted were (1) the need to depose an opposing counsel; (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; (3) the risk of encountering privilege and work product issues; and (4) the extent of discovery already concluded. *Id.*

Mr. Luck moves to compel the deposition of Mr. McDevitt, counsel for Defendants, on the grounds that he "is the cornerstone fact witness to Defendants' position that Alpha . . . properly terminated Mr. Luck for cause." Mot. to Compel Dep. of Jerry McDevitt at 1, ECF No. 198 (June 4, 2021) ("Mot. to Compel Dep. of Jerry McDevitt"). Mr. Luck argues that "Defendants relied upon [Mr.] McDevitt's investigation and advice to terminate [Mr.] Luck for

cause," and that "[t]he facts learned, discussed, and disclosed during Mr. McDevitt's

investigation are integral to determining if Defendants . . . acted in bad faith." *Id.* at 6.

The Court disagrees.

After weighing the four *Friedman* factors, the Court concludes that a deposition of Mr.

McDevitt is not warranted.

First, the need to depose Mr. McDevitt is not pressing in light of Defendants' production

of documentary evidence regarding Mr. Luck's termination and his performance of his duties at

the XFL, as well as Mr. Luck's deposition of fact witnesses with knowledge of Mr. Luck's

termination, including Mr. McMahon. *See* Sealed Mem. of Law in Opp'n to Pl.'s Mot. to

Compel the Dep. of Jerry McDevitt at 5–7, ECF No. 223 (June 25, 2021) ("Opp'n to Mot. to

Compel Dep. of Jerry McDevitt").

In addition, Mr. Luck mischaracterizes Mr. McDevitt as a "cornerstone fact witness" to

Alpha's position that Defendants properly terminated Mr. Luck for cause. Mot. to Compel Dep.

of Jerry McDevitt at 1. Mr. McDevitt's declaration states that Mr. McDevitt "conducted an

investigation" and "requested certain information and documents from other XFL executives" in

order "to provide legal advice to Alpha regarding [Mr.] Luck's termination and in anticipation of

potential litigation with [Mr.] Luck," McDevitt Decl. ¶ 9. That Mr. McDevitt requested certain

information in order to provide legal advice to Alpha is insufficient to establish that he is a "fact

witness" to Mr. Luck's termination from the XFL. *Sea Tow Intern., Inc. v. Potin*, 246 F.R.D.

421, 426 (E.D.N.Y. 2007) (licensor's attorney acted as counsel to licensor, and not a fact

witness, in licensor's trademark infringement and breach of contract action arising out of

termination of licensing agreement).

As to the third factor, the Court agrees with Defendants that there is substantial risk of encountering attorney client privilege and work product if [Mr.] McDevitt is deposed." Opp'n to Mot. to Compel Dep. of Jerry McDevitt at 17 (emphasis omitted). As previously discussed, Defendants' privilege log and accompanying affidavits are sufficient to establish that communications prepared by or provided to Mr. McDevitt at his request for the purpose of providing legal advice to Alpha are protected by the attorney-client privilege or work-product doctrine. Moreover, the fact that Mr. Luck's termination or hiring of Mr. Callaway are the subject of dispute in this case does not render the contents of the legal advice given in relation to these topics at issue and thereby waive the attorney-client or work-product privilege. Because of the risk of encountering privileged information arising from a deposition of Mr. McDevitt, this factor weighs against Mr. Luck.

Finally, the extent to which discovery has been concluded also weighs in favor of Defendants. Defendants state that they have produced "over 270,000 pages of documents[,] including all non-privileged documents and factual information concerning the bases for [Mr.] Luck's termination and the Callaway matter." *Id.* at 24. Furthermore, Mr. Luck has deposed Mr. McMahon and three Alpha executives. *Id.* at 6–7. Taking the four *Friedman* factors into consideration, the fact that Mr. Luck is dissatisfied with the information gleaned from these depositions does not warrant the deposition of opposing counsel.

Accordingly, Mr. Luck's motion to compel the deposition of Mr. McDevitt is **DENIED**.

### H. Motion to Compel WWE

On July 6, 2021, Mr. Luck moved to compel World Wrestling Entertainment, Inc. to produce documents responsive to Request No. 8 in a subpoena served by Mr. Luck on WWE. Mot. to Compel World Wrestling Entertainment, Inc. to Produc. Docs., ECF No. 227 (July 6,

2021). On August 6, 2021, Mr. Luck filed a reply in which he withdrew his motion to compel WWE to produce documents responsive to the subpoena. Pl. Oliver Luck's Reply Regarding Mot. to Compel World Wrestling Entertainment, Inc. to Produc. Docs. at 1, ECF No. 278 (Aug. 6, 2021).

Accordingly, the Court **DENIES** as moot Mr. Luck's motion to compel WWE, with each party bearing its own costs and expenses, including attorney's fees.

### I.   Motion to Compel Answers to Interrogatories

On May 17, 2021 Alpha served Mr. Luck with its Fourth Set of Interrogatories, in which Alpha asked Mr. Luck "to identify the emails, text messages and phone calls he contends reflect his work [for XFL] from March 13[, 2020] through April 9, 2020." Mem. in Supp. of Mot. to Compel Pl.'s Answers to Interrogs. at 7, ECF No. 241-1 (July 14, 2021) ("Mem. in Supp. of Mot. to Compel Pl.'s Answers to Interrogs."). On June 1, 2021, Defendants also served Mr. Luck with Requests For Admissions ("RFAs") seeking admission regarding "the emails, text messages and phone calls [Mr.] Luck sent, received or made from March 13[, 2020] through April 9, 2020." *Id.* "Defendants attached as exhibits to the RFAs the documents that Defendants believe reflect those emails, text messages and phone calls." *Id.*

Following receipt of Mr. Luck's responses to the Interrogatories and Requests For Admissions, Defendants move to compel Mr. Luck "to answer separately and fully Interrogatory Nos. 13-18 of Alpha's Fourth Set of Interrogatories;" "to determine that [Mr.] Luck's responses and objections to Defendants' Second Set of Requests for Admission [] do not comply with Rule 36 of the Federal Rules of Civil Procedure;" and "to compel [Mr.] Luck to answer separately and fully [Mr.] McMahon's Second Set of Interrogatories which relate to the RFAs." Mot. to Compel Pl.'s Answers to Interrogs. and Mot. to Determine the Sufficiency of Pl.'s Objs. and Answers to

Reqs. for Admission at 1, ECF No. 241 (July 13, 2021) ("Mot. to Compel Pl.'s Answers to

Interrogs."). Defendants also seek to compel Mr. Luck to respond to a Second Set of

Interrogatories served by Mr. McMahon, which Defendants contend "were targeted to [Mr.]

Luck's responses to the RFAs that were not unqualified admissions, if any[.]" Mem. in Supp. of

Mot. to Compel Pl.'s Answers to Interrogs. at 9.

### 1. Interrogatories

"[A] party may move for an order compelling disclosure or discovery," including when

"a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(1),

(a)(3)(B)(iii).

Under Rule 33(d),

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d)(1)–(2). "Rule 33 production is suited to those discovery requests requiring a

compilation or analysis, accomplished as easily by one party as another, or where neither side

has clear superiority of knowledge or familiarity with the documents. Accordingly, Rule 33 is

well-suited to reply to inquiries of an intensely objective nature." *Xchange Telecom Corp. v.

Sprint Spectrum L.P.*, No. 14-CV-54, 2015 WL 773752, at *5 (N.D.N.Y. Feb. 24, 2015) (citation

omitted). However, "Rule 33 is not appropriate where interrogatories pose questions of fact or

mixed questions of law and fact [which] require the exercise of particular knowledge and judgment on the part of the responding party." *Id*. (internal quotation marks omitted).

Defendants argue that Mr. Luck "improperly uses Rule 33(d) [of the Federal Rules of Civil Procedure] to evade answering Alpha's Interrogatories." Mem. in Supp. of Mot. to Compel Pl.'s Answers to Interrogs. at 11.

Mr. Luck responds that he has properly invoked Rule 33(d) because Defendants' Fourth Set of Interrogatories "do not ask for Mr. Luck's contentions of what communications reflect his XFL versus non-XFL activities," but rather "ask Mr. Luck to identify the communications that were and were not 'related to the XFL's and/or Alpha's business.'" Opp'n to Mot. to Compel Pl.'s Answers to Interrogs. at 9, ECF No. 289 (Aug. 11, 2021) ("Opp'n to Mot. to Compel Pl.'s Answers to Interrogs."). He argues that "Alpha's interrogatories are 'make-work' for Mr. Luck and, therefore, are unduly burdensome." *Id.* at 10. Mr. Luck further suggests that "to the extent Alpha was not aware of the non-XFL communications Mr. Luck participated in from March 13[, 2020] through April 9, 2020, the interrogatories seek irrelevant after-acquired evidence." *Id.* at 12.

The Court disagrees.

Alpha's Interrogatories ask Mr. Luck to identify e-mails, text messages, and phone calls from March 13, 2020 through April 9, 2020 that, in Mr. Luck's view, reflect his XFL and non-XFL activities. *See, e.g.*, Ex. 3 to Mot. to Compel Pl.'s Answers to Interrogs. and Mot. to Determine the Sufficiency of Pl.'s Objs. and Answers to Reqs. for Admission at 5, ECF No. 241-4 (July 14, 2021) ("For each day from March 13, 2020 through April 9, 2020, Identify each text message that You sent or received on your Alpha-issued iPhone that was related to the XFL's and/or Alpha's business."). Mr. Luck argues that he has properly relied upon Rule 33(d) because

"the interrogatories do not ask for [his] contentions of what communications reflect his XFL versus non-XFL activities." Opp'n to Mot. to Compel Pl.'s Answers to Interrogs. at 9. By inquiring into which e-mails, text messages, and phone calls reflect Mr. Luck's XFL and non-XFL activities, however, the interrogatories necessarily "require the exercise of [Mr. Luck's] particular knowledge and judgment" regarding the scope of his responsibilities at the XFL. *This, LLC v. Jaccard Corp.*, No. 3:15-CV-1606(JBA), 2017 WL 547902, at *3 n.3 (D. Conn. Feb. 9, 2017) ("Defendant's twelfth and thirteenth interrogatories pose . . . mixed questions of facts and law" because they "requir[e] the responding party to make a legal judgment about which facts support the contention and how they do so.").

Accordingly, the Court **GRANTS** Defendants' motion to compel as to Mr. Luck's answers to Alpha's interrogatories, and orders Mr. Luck to answer, separately and fully, Interrogatory Nos. 13-18 of Alpha's Fourth Set of Interrogatories.

### 2. Requests For Admissions

Requests For Admissions are "not discovery tools, but rather serve to narrow or reduce the issues for trial." *Iron Workers Local No. 60 Annuity Pension Fund v. Solvay Iron Works, Inc.*, No. 515-cv-0054 (BKS)(DEP), 2017 WL 1458772, at *3 (N.D.N.Y. Apr. 24, 2017). Federal Rule of Civil Procedure 36 governs such requests, providing that a party "may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) . . . ." Under Rule 36(a)(4), if a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made

reasonable inquiry that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.*

     Fed. R. Civ. P. 36. Rule 36 further provides:

> The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with the rule, the court may order either that the matter is admitted or that an amended answer be served.

Fed. R. Civ. P. 36(a)(6).

     Defendants move to determine the sufficiency of Mr. Luck's objections and answers to their Requests for Admissions, on the grounds that Mr. Luck's "objections and responses to the RFAs do not comply with Rule 36." Mem. in Supp. of Mot. to Compel. Pl.'s Answers to Interrogs. at 19 (emphasis omitted). Specifically, Defendants contend that "[Mr.] Luck asserts a litany of unjustified objections," including to the definition of "Emails" used in the Requests For Admissions, that the Requests For Admissions are "not proportional" to the needs of the case, and that "Defendants have had ample opportunity to discover the information on their own" and that "the information requested can be derived" from the documents already produced in the case. *Id.* 16–18 (citing Ex. 7 to Mot. to Compel Pl.'s Answers to Interrogs. and Mot. to Determine the Sufficiency of Pl.'s Objs. and Answers to Reqs. for Admission at 5–6, ECF No. 241-8 (July 14, 2021) ("Pl.'s Objs. and Resps. to Second Set of Requests for Admissions"). In addition, Defendants argue that Mr. Luck's responses to the Request For Admissions do not comply with Rule 36(a)(4) because he "does not assert anywhere in his responses to the RFAs that he made a 'reasonable inquiry'" as required under the Rule. *Id.* at 20.

     In response, Mr. Luck argues that Defendants' Requests For Admissions are "improper because they do not seek admissions by Mr. Luck regarding facts to narrow or eliminate issues for trial," but "[i]nstead . . . seek confirmation of document summaries and compilations created

by Defendants' counsel post-initiation of litigation." Opp'n to Mot. to Compel Pl.'s Answers to Interrogs. at 6 (emphasis omitted). Mr. Luck further contends that "Defendants' RFAs are . . . improper because Defendants' definition of 'Emails' is . . . misleading and does not allow for an unqualified admission." *Id.* Finally, Mr. Luck argues that "[t]he RFAs regarding phone calls are . . . improper because Mr. Luck does not have access to his iPhone that is in Defendants' possession," and "Mr. Luck is not required to rely on third-party AT&T's documents to answer Defendants['] RFAs." *Id.* at 7.

The Court disagrees with Mr. Luck, except to the extent described below.

Defendants' Requests For Admissions seek to "narrow the scope of contested issues at trial" by asking Mr. Luck to admit or deny that he sent, received, or made certain text messages, e-mails, and phone calls on specific dates. *Iron Workers Local No. 60 Annuity Pension Fund*, 2017 WL 1458772, at *3. The fact that Defendants compiled copies of these communications does not render the Requests For Admissions improper. *See Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 45 (D. Conn. 2004) (rejecting defendants' objection that they "have no responsibility to do plaintiff's 'homework'" by responding to requests related to a database compiled by plaintiffs). The Court also is not persuaded by Mr. Luck's contention that he is not required to rely on authenticated records from Alpha's cellular service provider, AT&T. The Certificate of Authenticity provided by AT&T, *see* Ex. 4 to Mot. to Compel Pl.'s Answers to Interrogs. and Mot. to Determine the Sufficiency of Pl.'s Objs. and Answers to Reqs. for Admission, ECF No. 241-5 (July 14, 2021), satisfies the Federal Rules of Evidence, Fed. R. Evid. 902(13). Furthermore, Mr. Luck had the opportunity to depose AT&T regarding the accuracy of the records and did not choose to do so.

The Court agrees, however, that Defendants' Requests For Admissions improperly ask Mr. Luck to confirm that he had not sent any e-mails beyond those included in the exhibits compiled by Defendants. *See, e.g.*, Pl.'s Objs. and Resps. to Second Set of Requests for Admissions at 6 ("Request No. 22: Admit that on March 13, 2020 You did not send any Emails from Your Alpha-issued phone other than those reflected in Exhibit 1."). In essence, these requests would require Mr. Luck to "conduct[] a wide-ranging review" of every e-mail sent by him during the specified time period. *U.S. Bank Nat'l Assoc. v. Triaxx Asset Mgmt., LLC*, No. 18-CV-4044 (BCM), 2020 WL 9549505, at *4 (S.D.N.Y. Nov. 30, 2020). If Defendants are unaware of which e-mails Mr. Luck sent on a specific date, then they may not use Requests for Admission to discover this information. *Id.*

Accordingly, the Court finds that Mr. Luck has not made a "reasonable inquiry" as required under Rule 36(a)(4) and his answers with respect to communications he sent, received, or made on the dates specified by Defendants in the Requests For Admissions are insufficient as a matter of law. The Court orders Mr. Luck to serve amended responses to the Requests For Admissions by **October 8, 2021**. The Court denies Defendants' motion with respect to the Requests For Admissions that ask Mr. Luck to admit or deny that he has not sent any e-mails from his Alpha-issued phones apart from those reflected in the exhibits referenced in the RFAs. Each party shall bear its own costs and expenses of this dispute, including attorney's fees.

### B.  Motion to Compel Documents and Answers to Deposition Questions

Mr. Luck moves to compel Defendants "to produce communications between Alpha employees and third parties listed on Defendants' privilege logs and to present [Mr.] McMahon and Jeffrey Pollack to be re-deposed regarding the questions that they were instructed not to answer, including any necessary follow-up questions." Mem. of Law in Supp. of Pl.'s Mot. to

Compel Docs. and Answers to Dep. Questions and Exs. at 1, ECF No. 247 (July 19, 2021)

("Mot. to Compel Docs. and Answers to Dep. Questions").

      For the reasons described herein, the Court denies Mr. Luck's request.

### 1. Motion to Compel Documents

      "Although the Connecticut Supreme Court has 'acknowledged that statements made in the presence of a third party are usually not privileged because there is then no reasonable expectation of confidentiality[, it] ha[s] recognized that the presence of certain third parties who are agents or employees of an attorney or client, and who are necessary to the consultation, will not destroy the confidential nature of the communications.'" *Antech Diagnostics, Inc. v. Vetrinary Oncology & Hematology Ctr., LLC*, No. 3:16-cv-00481 (AWT), 2018 WL 2254543, at *3 (D. Conn. May 17, 2018) (quoting *Olson v. Accessory Controls & Equip. Corp.*, 254 Conn. 145, 157 (2000)). In other words, "[t]he presence of third parties generally destroys the confidentiality of a communication, precluding a claim of privilege. This rule does not apply, however, when the presence of the third parties is required to achieve the purpose of the communication.'" *State v. Mark R.*, 17 A.3d 1, 7 (Conn. 2011).

      Mr. Luck seeks to compel communications between Mr. McMahon and Evan Steinberg, and between Alpha and the Machete Group, Inc. ("Machete"), on the grounds that these communications are not privileged because Mr. Steinberg and Machete are third parties. Mot. to Compel Docs. and Answers to Dep. Questions at 5–6.

      In response, Defendants argue that the challenged communications are privileged because "[a]t the request of [Mr.] McDevitt, who was legal counsel for Alpha and [Mr.] McMahon, [Mr.] Steinberg was a participant in these communications to assist in explaining financial concepts necessary to enable [Mr.] McDevitt to provide legal advice and for [Mr.] McMahon to obtain

legal advice regarding the potential bankruptcy of Alpha." Sealed Opp'n to Mot. to Compel

Docs. and Answers to Dep. Questions at 5–6, ECF No. 281 (Aug. 9, 2021). Defendants similarly

maintain that Machete is an "advisory firm that . . . [p]ursuant to [an] agreement with Alpha, . . .

provided a variety of important services to the XFL, which included helping to build and refine

the XFL's operating plan and budget and helping to review, refine, and negotiate the XFL's

venue lease agreements." *Id.* at 8.

Defendants argue that "[b]ecause Machete was the functional equivalent of an Alpha

employee, the challenged communications involving Machete are protected by the attorney-

client privilege." *Id.* at 7. Defendants submit affidavits by Mr. Steinberg, *see* Ex. A to Sealed

Opp'n to Mot. to Compel Docs. and Answers to Dep. Questions: Decl. of Evan Steinberg, ECF

No. 281-1 (Aug. 4, 2021) ("Steinberg Decl."), and Jeffrey Pollack, the former President and

Chief Operating Officer of the XFL who executed a master services agreement with Machete,

*see* Ex. B to Sealed Opp'n to Mot. to Compel Docs. and Answers to Dep. Questions: Declaration

of Jeffrey Pollack, ECF No. 281-2 (Aug. 9, 2021) ("Pollack Decl."), in support of their assertion

of privilege.

The Court agrees with Defendants.

"The burden of proving each element of the [attorney-client] privilege, by a fair

preponderance of the evidence, rests with the [party] seeking to assert it." *Antech Diagnostics,*

*Inc.*, 2018 WL 2254543, at *3 (quoting *Blumenthal v. Kimber Mfg., Inc.*, 265 Conn. 1, 11

(2003)). "That burden is discharged by the presentation of evidence in the form of testimony or

affidavit concerning the document's content and use." *Babcock v. Bridgeport Hosp.*, 251 Conn.

790, 848 (1999).

65

Mr. Luck argues that Defendants have "fail[ed] to meet their burden" for each of the challenged communications because "Mr. Steinberg is not a lawyer [and] so he cannot presume to know what is necessary for an attorney to adequately provide legal advice to a client." Sealed Reply to Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Compel Docs. and Answers to Dep. Questions at 4, ECF No. 312 (Aug. 23, 2021). Mr. Luck similarly contends that as a non-lawyer, Mr. Pollack "cannot state with any authority that the Machete Group was needed for any of the . . . communications." *Id.* at 5.

Mr. Luck cites *Niemitz v. Town of Barkhamstead*, No. LLICV 0650000208, 2007 WL 4571131 (Conn. Super. Ct. Nov. 5, 2007), in support of these contentions, but *Niemitz* does not hold that a party asserting the attorney-client privilege is required to produce an affidavit from an attorney to establish the elements of the privilege. Rather, the court in *Niemitz* noted that counsel for the defendants "vacillated between indicating that the [challenged] statements were produced at her request, stating that the statements were produced with her cooperation, and additionally stating that the statements were produced only with her knowledge or consent—essentially that she thought it was a 'good idea.'" *Id.* at *1. By contrast, the affidavits submitted by Defendants state that Mr. Steinberg is an accountant who, at Mr. McDevitt's request, participated in conversations with Alpha and Mr. McMahon in order to enable Mr. McDevitt to give legal advice concerning Alpha's bankruptcy. Steinberg Decl.; *see also* Pollack Decl. ¶¶ 8–10 (stating that "Machete's involvement in the [challenged] communications . . . was necessary for the provision and/or receipt of legal advice concerning" matters relating to "the strategy and business operations of the XFL, including "draft XFL agreements," as well as "planning and strategy relating to a potential bankruptcy filing").

Accordingly, Mr. Luck's motion to compel the production of the challenged communications involving Mr. Steinberg or Machete is **DENIED**.

### 2.   Motion to Compel Answers to Deposition Questions

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Mejia*, 655 F.3d at 132 (citing *In re Cnty. of Erie*, 473 F.3d at 419). "The privilege's underlying purpose has long been 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

Mr. Luck moves to compel Mr. McMahon and Mr. Pollack to answer questions to which they declined to respond during their depositions, citing the attorney-client privilege. Mot. to Compel Docs. and Answers to Dep. Questions at 6–8. Mr. Luck argues that questions regarding Alpha's decision to terminate Mr. Luck, as well as the extent to which Mr. McMahon relied on Mr. McDevitt's investigation to terminate Mr. Luck for cause "seek facts that are highly relevant to this case and not privileged." *Id.* at 7. Mr. Luck further argues that questions directed to Mr. Pollack regarding Mr. McDevitt's investigation into Mr. Luck's termination and Mr. Pollack's discussion with Ms. Wagner regarding XFL's policy for disqualifying players are not privileged. *Id.* at 8.

In response, Defendants argue that Mr. McMahon was "properly instructed not to answer questions regarding whether Alpha decided to terminate [Mr.] Luck when it sought [Mr.] McDevitt's legal advice" because "[t]o the extent that [Mr.] Luck sought disclosure of the substance of communications between [Mr.] McDevitt and [Mr.] McMahon . . . such

communications are protected by the attorney-client privilege." Sealed Opp'n to Mot. to Compel Docs. and Answers to Dep. Questions at 15. In Defendants' view, Mr. McMahon "was properly instructed not to answer questions about whether he was relying on [Mr.] McDevitt's investigation as a basis for claiming that [Mr.] Luck was terminated for cause" because Mr. McDevitt's "communications with [Mr.] McMahon and work in connection with his investigation prior to [Mr.] Luck's termination are protected by the attorney-client privilege and the work product doctrine." *Id.* at 15–16.

Defendants additionally argue that Mr. Luck is not entitled to re-depose Mr. Pollack because Mr. Pollack's "discussions with [Mr.] McDevitt regarding [Mr.] Luck's termination and information that [Mr.] McDevitt requested from him in connection with his investigation of [Mr.] Luck" are protected by the attorney-client privilege and the work product doctrine. *Id*. at 18.

The Court agrees.

As previously discussed in the context of Mr. Luck's motion to compel documents, *see* Mot. to Compel Docs., ECF No. 158 (Feb. 26, 2021), confidential communications between Alpha employees and their attorneys for the purpose of obtaining or receiving legal advice are protected by attorney-client privilege. The substance of Mr. McDevitt's communications with Mr. McMahon relating to Mr. Luck's termination therefore are privileged. Moreover, Defendants have not raised an advice of counsel defense, and Mr. Luck may not pierce this privilege by seeking information regarding Mr. McMahon's reliance on Mr. McDevitt's investigation as a basis for terminating Mr. Luck for cause. Mr. McDevitt's conversations with Mr. Pollack regarding Mr. Luck's termination likewise are protected by the attorney-client privilege. For the

reasons previously discussed, Mr. Luck also may not obtain Mr. McDevitt's communications with Ms. Wagner that reflect legal advice from Alpha's counsel.

Accordingly, Mr. Luck's motion to re-depose Mr. McMahon and Mr. Pollack is **DENIED**.

### B.   Motion for Leave to File Amended Answer to Amended Counterclaims

Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." The Court has "discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2009) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007)). In doing so, "the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Id*. at 334–35 (quoting *Grochowski v. Phoenix Constr*., 318 F.3d 80, 86 (2d Cir. 2003)). "Whether good cause exists turns on the 'diligence of the moving party.'" *Id*. at 335 (quoting *Grochowski*, 318 F.3d at 86). In other words, the movant must show that despite having exercised diligence, the applicable deadline could not have been reasonably met. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012).

Mr. Luck moves for leave to file an amended answer and affirmative defenses to Alpha's counterclaims. Pl./Counterclaim Def. Oliver Luck's Mot. for Leave to File Am. Answer to Counter-Pl. Alpha's Am. Countercl., ECF No. 251 (July 20, 2021) ("Mot. for Leave to File Am. Answer"). In his motion, Mr. Luck states that he "seeks only to (a) add facts to [Mr.] Luck's Answer at Paragraph 67 and (b) clarify his Answer at Paragraphs 69-70," including through the addition of "information regarding his use of the iPhone during the 'ordinary course' after April

69

9, 2020 to April 18, 2020," which "was previously provided to . . . the Court . . . on December 18, 2020." *Id.* at 1–2 (citing Notice, ECF No. 113 (Dec. 18, 2020)). Mr. Luck's proposed amended answer to Paragraph 67 states that "up until and at his deposition on May 11, 2021, Mr. Luck did not specifically recall deleting the browser history for the iPhone after receiving the Termination Letter. However, to the extent browser history is considered data, Mr. Luck recalls that he deleted his browser history following receipt of the Termination Letter . . . ." *Id.* at 4. The proposed amended answer also would object to Defendants' use of the term "data" as "vague and ambiguous." *Id.* at 3.

The Court finds that Mr. Luck has not established good cause under Rule 16(b) to amend his answers to Alpha's counterclaims.

Alpha filed its amended counterclaims on February 18, 2021, ECF No. 153, and Mr. Luck answered the amended counterclaims on March 4, 2021, ECF No. 166. Under this Court's scheduling order, the deadline for filing any motions to amend pleadings was March 5, 2021. Order, ECF No. 167 (Mar. 5, 2021). Discovery closed on July 16, 2021. *Id.*

Mr. Luck's proposed amended answers include additional facts regarding the deletion of information from Mr. Luck's XFL-issued iPhone before he returned the iPhone to Alpha. For example, the proposed amended answers state that after receiving the Termination Letter, "Mr. Luck continued to use the iPhone in the ordinary course" and "was in the routine of deleting 'spam,' 'phishing,' unsolicited advertisements, or 'pocket dial'-type messages, so he continued to delete those types of messages after April 9, 2020 until April 18, 2020." Mot. for Leave to File Am. Answer at 3. By Mr. Luck's own admission, Mr. Luck was aware of the deletion of spam, phishing, and other unsolicited advertisements as early as December 18, 2020, when he filed a proposed stipulation regarding the spoliation of evidence with the Court. *See* Notice of Proposed

Stip. Pursuant to Dec. 17, 2020 Order, ECF No. 113-1 (Dec. 18, 2020); *see also* Sealed Reply to

Alpha Entertainment LLC's Mem. in Opp'n to Pl.'s Mot. for Leave to File Am. Answer to

Alpha's Am. Counterclaims at 6, ECF No. 315 (Aug. 24, 2021) ("Reply in Supp. Mot. for Leave

to File Am. Answer") ("Since December 18, 2020, Defendants have known about the deletions

of the Luck Family Chat and the spam, junk, and phishing text messages."). Mr. Luck did not

seek to amend his answers to the amended counterclaims, however, until July 20, 2021, seven

months after he filed the proposed stipulation.

Mr. Luck suggests that he seeks leave to amend his answers "to conform it to the

discovery in this case." Reply in Supp. Mot. for Leave to File Am. Answer at 6. He states that

following his deposition on May 11, 2021, Mr. Luck "recalled additional facts regarding his

iPhone's browser history[.]" Mot. for Leave to File Am. Answer at 1–2. Thereafter, on June 16,

2021, Mr. Luck "supplemented his objections and responses to [Alpha's] Interrogatory No. 9

regarding the iPhone's browser history." *Id.* at 2. Mr. Luck did not seek leave to amend his

answer to Alpha's counterclaims, however, until more than two months after Mr. Luck's

deposition that prompted him to recall the additional facts.

"A party fails to show good cause when the proposed amendment rests on information

that the party knew, or should have known, in advance of the deadline." *Perfect Pearl Co.*, 889

F. Supp. 2d at 457 (internal quotation marks omitted). The fact that Defendants might not suffer

prejudice if the Court permits Mr. Luck to amend his answer does not suggest that Mr. Luck

should be granted leave to amend in the absence of a showing of good cause. Instead, the

"primary consideration" of Rule 16(b)'s good cause requirement is whether the moving party has

acted diligently. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir.

2007); *Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272 (JFK), 2007 WL 3084977, at *1

(S.D.N.Y. Oct.19, 2007) ("[T]he absence of prejudice to a non-moving party . . . does not fulfill the good cause requirement of Rule 16(b)."). Given that Mr. Luck filed this motion seven months after he obtained at least a portion of the additional facts, more than four months after the deadline for filing amended pleadings, and more than two months after Mr. Luck's deposition, Mr. Luck has not demonstrated good cause to amend his answer to Defendants' amended counterclaims.

Accordingly, Mr. Luck's second amended motion for leave to file an amended answer to Alpha's amended counterclaim is **DENIED**. Mr. Luck's initial motion for leave to amend, ECF No. 251, and first amended motion for leave to amend, ECF No. 300, are **DENIED** as moot.

### C.  Motion for Discovery Conference

Mr. Luck moves for a discovery conference to address a dispute with Defendants regarding the deposition of Josh Hinch, Director of Player Personnel for the XFL. Mot. for Disc. Conf. at 2, ECF No. 271 (Aug. 2, 2021). All discovery in this case closed on July 16, 2021, Order, ECF No. 167 (Mar. 5, 2021), and Mr. Luck did not raise his request for the deposition of Mr. Hinch during the September 9, 2021 motion hearing. Moreover, the Court has suspended its Chambers Practice of requiring discovery conferences before the filing of motions to compel or motions for protective orders. Order, ECF No. 139 (Jan. 12, 2021).

Accordingly, Mr. Luck's motion for a discovery conference is **DENIED**.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Count Four of the Second Amended Complaint, ECF No. 151, is **GRANTED** in part, and **DENIED** in part. Mr. Luck's claim of breach of the implied covenant of good faith and fair dealing as to Mr. McMahon is

**DISMISSED**, but Defendants' motion to dismiss Mr. Luck's breach of the implied duty of good faith claim against Alpha is **DENIED**.

Mr. Luck's Motion for Leave to Amend his Second Amended Complaint, ECF Nos. 160 and 161, is **DENIED.** Mr. Luck's Motion to Compel Documents, ECF No. 158, is **GRANTED** with respect to Entries 80–89 of Defendants' privilege log, and **DENIED** with respect to the remaining documents, with the exception of a subset of entries for which the Court will conduct *in camera* review. Defendants shall disclose these documents to the Court by **September 24, 2021**.

Mr. Luck's Motion to Compel the Verification of Alpha's Interrogatory Answers and Response to Interrogatory No. 2, ECF No. 168, is **GRANTED**.

Alpha's Motion to Strike Mr. Luck's Affirmative Defenses, ECF No. 171, is **DENIED** without prejudice to renewal.

Mr. Luck's Motion to Compel the Deposition of Alpha Representatives, ECF No. 179, is **DENIED** without prejudice to renewal.

Mr. Luck's Motion for a Protective Order and Motion to Seal, ECF Nos. 185 and 186, is **GRANTED in part**, and **DENIED in part**. To the extent that Mr. Luck seeks to exclude discovery related to Mr. Luck's use of the iPhone for non-XFL matters, this request is **DENIED**. The motion is **GRANTED** as to the disclosure of the information gleaned from Mr. Luck's Alpha-issued iPhone, until such time as the Court may determine a protective order is no longer warranted following the disposition of dispositive motions.

Defendants' Motion to Compel Answers to Deposition Questions, ECF No. 191, is **GRANTED**, as specifically described above.

Mr. Luck's Motion to Compel the Deposition of Jerry McDevitt, ECF No. 198, is **DENIED**.

Mr. Luck's Motion to Compel World Wrestling Entertainment, Inc. to produce documents, ECF No. 227, is **DENIED** as moot.

Defendants' Motion to Compel Plaintiff's Answers to Interrogatories, ECF No. 241, is **GRANTED in part**, and **DENIED in part**. Mr. Luck shall serve amended responses to the Request for Admissions, except to the extent described below, by **October 8, 2021**.

Mr. Luck's Motion to Compel Documents and Answers to Deposition Questions, ECF No. 246, is **DENIED**.

Mr. Luck's Second Amended Motion for Leave to File an Amended Answer to Alpha's Amended Counterclaims, ECF No. 302, is **DENIED**. His initial Motion for Leave to File an Amended Answer, ECF No. 251, and First Amended Motion for Leave to File an Amended Answer, ECF No. 300, are **DENIED** as moot.

Mr. Luck's motion for a discovery conference, ECF No. 271, is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of September, 2021.

       /s/ Victor A. Bolden
       Victor A. Bolden
       United States District Judge