```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT

 3   - - - - - - - - - - - - - -  -   x
                                   :  Case No.
 4   OLIVER LUCK,                   :  20CV516(VAB)
                                   :
 5              Plaintiff,          :
          vs.                       :
 6                                  :  915 Lafayette Blvd
     VINCENT K. MCMAHON and ALPHA   :  Bridgeport, CT
 7   ENTERTAINMENT LLC              :  September 9, 2021
                                   :
 8              Defendant.          :
     - - - - - - - - - - - - -  -   X
 9
               TRANSCRIPT OF MOTIONS HEARING
10
     BEFORE:  THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.
11

12   APPEARANCES:
     FOR THE PLAINTIFF:        PAUL J DOBROWSKI, ESQ.
13                             JARED McHAZLETT, ESQ.
                               VANESSA LEE PIERCE, ESQ.
14                             Dobrowski Larkin & Stafford
                               4601 Washington Ave.
15                             Houston, TX 77007

16                             ANDREW M. ZEITLIN, ESQ.
                               JOETTE KATZ, ESQ.
17                             SARAH GLEASON, ESQ.
                               Shipman & Goodwin
18                             300 Atlantic St.
                               Stamford, CT 06901-3522
19

20   FOR THE DEFENDANTS:       JERRY S. McDEVITT, ESQ.
                               CURTIS B. KRASIK, ESQ.
21                             K&L Gates, LLP- Ptsbrg PA
                               210 Sixth Ave
22                             Pittsburgh, PA 15222-2613

23

24              Sharon Montini, RMR, FCRR
                     915 Lafayette Blvd
25                 Bridgeport, CT 06604
                  Official Court Reporter
```

```
1                    APPEARANCES CONTINUED

2

     FOR THE DEFENDANTS:        JEFFREY MUELLER, ESQ.
3                               Day Pitney LLP-Htfd-CT
                                242 Trumbull St.
4                               Hartford, CT 06103-1212

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              (Proceeding commenced at 4:00 p.m. via

2    Zoom videoconferencing.)

3              THE COURT:  All right.  Good afternoon.

4    We are here in Luck v. Vincent K. McMahon and Alpha

5    Entertainment, LLC.  Will counsel please state their

6    appearances for the record.

7              MR. DOBROWSKI:  Yeah, on behalf of the

8    plaintiff, this is Paul Dobrowski and Vanessa Pierce

9    and Jared McHazlett of Dobrowski, Larkin & Stafford.

10             THE COURT:  Good afternoon.

11             MR. ZEITLIN:  Good afternoon, Your

12   Honor.  Also on behalf of the plaintiff Oliver Luck,

13   Andy Zeitlin, Joette Katz, and Sarah Gleason.

14             THE COURT:  All right.

15             MR. McDEVITT:  Good afternoon, Your

16   Honor.  Jerry McDevitt for the defendants, together

17   with my partner Curt Krasik, and Mr. Mueller, Day

18   Pitney, for the defendants.

19             THE COURT:  All right.  So I think

20   that's everyone.  This is what I want to do.  Let me

21   just sort of note at the outset, there has not been

22   a lack of activity on the docket in this case.

23   Indeed, since I entered the most recent omnibus

24   scheduling order in March, there have been 157

25   entries on the docket over a slightly more than
```

1   six-month period.  Put another way, we've had more

2   than 26 entries per month, or nearly one entry every

3   day the last six and a half months.  Suffice it to

4   say, that's created a lot of various activity, and a

5   lot of them relate to motions.

6               What I want to do is, I'm just going to

7   let you know the motions that I intend to deal with

8   and then talk about how I want to deal with them.

9               So consistent with the order that I

10  issued on 297 and clarified later, I'm going to deal

11  with the following motions:  The defendants' motion

12  to dismiss Count Four of the second amended

13  complaint.  That's ECF No. 151.  There is a motion

14  to strike Mr. Luck's affirmative defenses.  That's

15  ECF No. 171.  There is a motion to compel answers to

16  deposition questions and responses to discovery

17  requests.  That's ECF 191.  There is a motion to

18  compel Mr. Luck's answers to interrogatories and

19  motion to determine the sufficiency of Mr. Luck's

20  objections and answers to requests for admissions.

21  That's ECF No. 241.

22              And there is Mr. Luck's motion for leave

23  to amend the second amended complaint.  That's ECF

24  160, 161.  There is a motion to compel documents,

25  158.  A motion to compel the verification of Alpha's

1   interrogatory answers and response to interrogatory

2   No. 2.  That's ECF No. 168.  There is a motion to

3   compel the deposition of Alpha's representative, ECF

4   179.  A motion for protective order and motion to

5   seal, ECF No. 185, 186.

6           There is a motion to compel the

7   deposition of Jerry McDevitt, ECF 198.  A motion to

8   compel World Wrestling Entertainment, Incorporated

9   to produce documents.  That's ECF No. 227.  There is

10  a motion to compel documents and answers to

11  deposition questions, ECF No. 246.  A motion for

12  leave to file an amended answer to the amended

13  counterclaim.  That's ECF Nos. 251, 300, 302.  And,

14  finally, a motion for discovery conference, ECF No.

15  271.

16          I believe that covers all of the

17  motions, discovery-related motions and other

18  pretrial motions that are pending.  I did note, I

19  think there is one dispositive motion that is

20  pending.  And I know there is a deadline for

21  dispositive motions that I extended until

22  September 24th.

23           This is how I think it makes the most

24  sense to proceed given the volume of motions, the

25  volume of paper and everything that we've waded

1    through on our side and thought through on our side.

2    I'm going to do the following in terms of procedure,

3    and I thought it just worthwhile to just sort of let

4    you all know.  And I may have a couple of questions

5    for you all.

6           I think the thing that is actually going

7    to make the most sense at this stage is, I'm going

8    to issue a written ruling addressing all of the

9    pending motions, and that decision will be rendered

10   on or before next Friday, September 17th.  I'm going

11   to suspend the scheduling order, particularly the

12   deadline relating to dispositive motions of

13   September 24th, until I issue that September 17th

14   ruling.  And I may provide a new deadline for that.

15          The reason for doing that is contained

16   in these various motions there are motions related

17   to discovery, which I will address, and to the

18   extent I grant time for those, I want those to be

19   completed before you all file dispositive motions.

20          So that sort of covers the preliminaries

21   in terms of how I wanted to just sort of let you

22   know how I wanted to proceed.

23          I do have one question that relates --

24   this relates to the motions -- particularly the

25   motions related to questions about whether there was

```
1   privileged material and whether Mr. Luck could have

2   access to that privileged material.  Hold on one

3   second.  Okay.  And this is directed to defense

4   counsel.  I don't know, is it Mr. McDevitt or Mr.

5   Mueller who is going to be speaking for defense

6   counsel?

7                 MR. McDEVITT:  Your Honor, which

8   privilege issue are you addressing?  It might be Mr.

9   Krasik who will want to address it.

10                THE COURT:  Oh, okay.  This relates to

11  -- hang on.  This relates to the combined memorandum

12  that the defendants filed on March 26, 2021.  I

13  think that is -- I'm trying to get the ECF number.

14  That was in response --

15                MR. DOBROWSKI:  Your Honor, it's 172.

16  The combined memorandum -- I'm sorry, Your Honor.  I

17  interrupted.

18                THE COURT:  No, I appreciate it, Mr.

19  Dobrowski.  That's exactly right, ECF 172.

20                MR. DOBROWSKI:  And that, Your Honor, is

21  in response to 158.

22                THE COURT:  Yep.

23                MR. DOBROWSKI:  Okay.  Thank you.

24                THE COURT:  Yes, the response to 158,

25  the motion to compel documents.  Yep.
```

1          So who is the right person to direct the

2    question to?

3          MR. McDEVITT:  Your Honor, I think Mr.

4    Krasik will address any question the Court may have

5    on that.

6          THE COURT:  All right.  Mr. Krasik, in

7    that response, I'm trying to make sure I understand

8    the scope and nature of the privilege.  In response

9    to that -- actually, in that combined memorandum,

10   actually it's page 20, there is a reference to some

11   of the specific entries on the privilege log that

12   were asked about, and some of them you responded

13   with an affidavit from an attorney Mary Gambarella

14   who explained the basis of the privilege with

15   respect to a number of the entries.

16          There are some other entries that are

17   also referenced on that same page, on page 20, which

18   it sort of summarily discusses why you believe it's

19   privileged, but it's not otherwise accompanied by

20   some affidavit explaining who -- by an attorney

21   explaining exactly what they believe it's connected

22   to as was done with the Gambarella affidavit.

23          So I just wanted to just make sure I was

24   able to link that up.  And if you need a moment to

25   sort of pull -- hang on one second.

```
 1              MR. KRASIK:  If I could, Your Honor.

 2              THE COURT:  Like I said, I don't give

 3   pop quizzes.  I do want to try to make sure --

 4              MR. McDEVITT:  The page reference, Your

 5   Honor, was page 20 of which -- -

 6              THE COURT:  Page 20 of No. 172.  It's

 7   page 20.  Hang on one second.  Yeah, it's 172.

 8              I'm sorry, I did give you the wrong

 9   page.  I'm actually really focussing on page 13 of

10   that document.  Page 13 of Document 172.

11              Do you have that document, Mr. Krasik?

12   Do you have that page?

13              MR. KRASIK:  Yes, I do.

14              THE COURT:  Go ahead.

15              MR. KRASIK:  Your Honor --

16              THE COURT:  Go ahead, Mr. Krasik.

17              MR. KRASIK:  No, I'm happy for you to

18   restate the question, please.

19              THE COURT:  Sure.  So on that page, page

20   13 -- Mr. Dobrowski, or somebody from the

21   plaintiff's side, do you see that page as well?  Do

22   you all have that page as well?

23              MR. DOBROWSKI:  Yes, sir.

24              THE COURT:  Okay, great.  I wanted to

25   make sure everyone was on the same page.
```

```
1              There is a box there where you refer to

2    certain entries.  In that box you talk about certain

3    entries, and there is some references to Mary

4    Gambarella, who submits an affidavit, a declaration

5    that's Exhibit G, and she describes some of what is

6    there.  And there are a few other entries in the

7    same box, No. 37, 201, 230, 123 to 124, 349, 351,

8    362 to '64, which sort of generically describe

9    saying, yes, this involved legal advice, but it

10   doesn't -- it is not attached to or attested to by

11   someone about understanding what it was.

12             I just want to make sure what you all

13   were thinking of in terms of responding there.

14             MR. KRASIK:  Right.  So, Your Honor, if

15   you flip back one page to page 12 of the brief.

16             THE COURT:  Yep.

17             MR. KRASIK:  That chart in the middle of

18   the page is a kind of primer on who the attorneys

19   were that may be listed on the documents.

20             THE COURT:  Got it.

21             MR. KRASIK:  And where an entry on its

22   face was sent to, from an attorney, one of the

23   attorneys listed in the chart on page 12, there was

24   not an extended discussion of the basis for the

25   privilege.
```

```
1              The reason for the Gambardella
2    declaration, Your Honor, is one of the tranches of
3    privileged emails that the plaintiffs are trying to
4    discover are documents on which they claim no
5    attorney was copied, and two points with that.
6    First of all, a number of the documents on which
7    they claim no attorney was copied, in fact there was
8    an attorney copied.  But there are -- there is a
9    subset on which no attorney was copied, and that is
10   the subset to which the Gambardella declaration
11   specifically pertains, and she explained that those
12   emails between non-lawyers reflect her legal advice
13   that she previously gave.
14             So that's the basis, the reason for the
15   Gambardella declaration and the difference between
16   the explanation of these other privileged documents
17   on which an attorney is copied on.
18             THE COURT:  Understood.  So then taking
19   -- going back to page 13, and taking the first entry
20   there, 37 in that box, there is a reference to an
21   email, it attaches a memorandum sent to Roxanne
22   Kosarzycki reflecting legal advice regarding a
23   player conduct and disciplinary policy with players
24   on XFL teams.
25             So this is -- it's not being sent by
```

```
 1   her, presuming it's a her, but it's being sent to

 2   her.  So the memorandum -- I guess what I'm trying

 3   to -- it says the memorandum sent to her reflecting

 4   legal advice, meaning that that legal advice then

 5   came from someone else who was an attorney?

 6            MR. KRASIK:  Your Honor, I can pull the

 7   privilege log for entry 37 specifically.

 8            THE COURT:  Yep.

 9            MR. KRASIK:  If you hang on a second.

10            THE COURT:  Take your time.

11            MR. KRASIK:  Yes, your Honor, what I can

12   tell from the description is that this was an email

13   from a non-lawyer to a non-lawyer attaching Ms.

14   Kosarzycki's memo reflecting legal advice.

15            THE COURT:  Understood.

16            MR. KRASIK:  Does that better

17   describe --

18            THE COURT:  So your argument is, you are

19   saying, in essence, that Ms. Kosarzycki had prepared

20   a legal memorandum, and the correspondence is

21   basically non-lawyers within the organization

22   sending around this legal memorandum that you all

23   want considered privileged.  That's -- it was sent

24   to inform these people about how they should do

25   something, and what you are asserting is the
```

```
1   privilege relating to the underlying research and

2   memorandum that was done because you are saying it

3   should still be protected, correct?

4                MR. KRASIK:  Correct.  Ms. Kosarzycki

5   was the general counsel of the XFL at that time.

6                THE COURT:  Okay.  Hang on one second.

7   All right.

8                And then the next one is about the

9   emails that include communications seeking legal

10  advice from Mali Friedman regarding a player.  I

11  guess the one interesting thing about that, when you

12  say "include," it does raise the question.  I'm just

13  trying to make sure that -- it says "include

14  communications seeking legal advice" meaning is

15  there stuff in there beyond seeking legal advice in

16  those emails?

17               MR. KRASIK:  Your question is about

18  entries 201 and 230?

19               THE COURT:  Yeah, it's a similar --

20  you've helped tie up the notion -- because clearly

21  from page 12 -- well, page 12, Friedman -- certainly

22  Friedman and Nurse and Wilson in various ways are

23  attorneys, and so, therefore, there is going to be a

24  colorable argument that this is going to relate to

25  legal advice.  Because you used the word "include,"
```

```
 1    I'm just trying to make sure that there isn't

 2    something that could be either more descriptive or

 3    something that helps the plaintiff understand

 4    exactly how you are asserting the privilege in this

 5    particular way, because obviously I understand the

 6    notion of legal advice from the attorneys, but you

 7    say it includes communications seeking legal advice,

 8    so I'm trying to make sure, is it only about legal

 9    advice or are there other things that are wrapped up

10    in there that you are also arguing should be

11    contained within the privilege?

12              MR. KRASIK:  Yes, your Honor.  From

13    looking at the privilege log entries for 201 and

14    230, what I believe those included were an email,

15    again between two non-lawyers employed by Alpha, the

16    XFL, forwarding legal advice of Ms. Friedman, who

17    was the general counsel of XFL at that time.

18              THE COURT:  All right.  So it's a

19    similar issue to the issue regarding Ms. Kosarzycki.

20    Is that the same with the Nurse and Wilson entries

21    that are also there on page 13?  So that's 123, 124.

22              MR. KRASIK:  Yes, it looks -- for 123,

23    124 that seems to be the same issue from the

24    privilege log entries.

25              THE COURT:  Okay.
```

```
1              MR. KRASIK:  Let me look at 349, 351.

2    So, yes, same situation with those as well, Your

3    Honor.

4              THE COURT:  Okay.  All right.  So I had

5    those questions.

6              Any other points you want to make on

7    that, Mr. Krasik?

8              MR. KRASIK:  Nothing, unless Your Honor

9    has any other questions.

10             THE COURT:  Not on that pint.

11             And, Mr. Dobrowski, since I raised those

12   questions, was there any response, so forth, you, or

13   whoever is going to argue on plaintiff's behalf,

14   want to raise on that point?

15             MR. DOBROWSKI:  Yes, your Honor.  This

16   is Paul Dobrowski on behalf of the plaintiff.

17             Similarly, if you turn to the very next

18   page, page 14, there are entries that are listed

19   that involve Ms. Kosarzycki, Mr. Nurse, and

20   references to Mr. Gambardella -- or Ms. Gambardella.

21   You'd think with a name like Dobrowski I'd have a

22   lot easier time correctly pronouncing others.

23             But, Your Honor, if I could just ask one

24   thing of the Court.  First of all, let me just say,

25   thank you and your clerk for going through this mass
```

1    of paperwork.  But if there is one thing that I

2    could ask of the Court, it is that on page 13, the

3    entries 80 to 89, you will see there they contend

4    that they are emails that reflect aspects of legal

5    advice by Ms. Gambardella.  Ms. Gambardella is not

6    on those emails.  These are the -- what I call --

7    have called the Wagner emails.  They are critical to

8    our case.  They began with an email by Mr. Luck to a

9    certain group of co-XFL executives about what is the

10   player eligibility policy that Mr. McMahon had told

11   him to utilize in selecting players.

12             He forwarded that information to them,

13   and they in turn -- he sent that to Ms. Wagner, who

14   was the second in command of the HR and the primary

15   person in command of HR.  And there are eight or

16   nine emails, 80 to 89, that discuss that player

17   eligibility policy.

18             And Ms. Gambardella's affidavit, if you

19   examine it, only says in general, oh, that includes

20   discussion of my legal advice, but, Judge, first,

21   they've at the very least waived the issue about

22   legal advice -- or waived as to the issue that is

23   discussed in this email because they produced an

24   email that started this whole chain with Mr. Luck.

25   Number two is, Mr. Luck is on some of those emails,

1    if not all of those emails.  Number three, there is

2    no attorney on any of the emails.

3              And, most importantly, why this matters,

4    Judge, as you will recall, central to the

5    defendants' defense of this case is the argument

6    that Mr. Luck violated Mr. McMahon's directive by

7    hiring Antonio Callaway.  Mr. Luck's defense is, no,

8    I didn't, I followed Mr. Luck's -- Mr. McMahon's

9    instructions, which he gave to me in July of 2019,

10   when these are all dated.  And they relate to four

11   criteria, and they're entitled "player eligibility

12   requirements."

13             So to the extent Your Honor is getting

14   overloaded with documents, I strongly encourage you

15   to take a close look at these nine documents, and,

16   if nothing else, consider them for in camera review.

17             Thank you, Your Honor.

18             THE COURT:  All right.  Just to follow

19   up on that point which you raised -- Mr. Dobrowski,

20   actually, I'm looking at the Gambardella affidavit,

21   and in paragraph 8 she says "I have reviewed the

22   documents identified as entries 80 to 89 on the

23   privilege log prepared by defendants in this action.

24   These documents are emails among Alpha employees

25   that reflect certain aspects of legal advice

```
1    provided by me regarding player background checks."

2              And so if I understand it, what your

3    point is, to some extent some of what they are

4    claiming is privilege is there was legal advice that

5    may have been provided by Ms. Gambardella, that

6    advice may be discussed in these emails, and they're

7    then claiming that the emails, in terms of how

8    people are discussing it, that also should be

9    privileged.  And I guess she also used the word

10   "reflect," which also, you know, is a little

11   general.  It doesn't say it is legal advice, but it

12   reflects certain aspects of legal advice.  So it

13   suggests it may be they are -- it may be they may be

14   having a discussion beyond legal advise.  It may be

15   they're having a discussion and it reflects some of

16   the same issues that she may have addressed with

17   them.  That, in essence, is your point, correct?

18              MR. DOBROWSKI:  Yes, your Honor.  And we

19   know that they were not asking her for legal advice

20   because she's not part of the e-mail chain.  The

21   fact is that those emails were -- that email chain

22   was started by Mr. Luck's discussion with Mr.

23   McMahon, and then he related that to other

24   co-executives.  It's a discussion amongst executives

25   about the business policy of what would be the
```

```
1    player eligibility criteria.

2              To the extent, Your Honor, Ms.

3    Gambardella's legal advice is allegedly contained in

4    there, we respectfully request that the defendants,

5    fine, redact that, but at least let us see what the

6    discussion as to the facts are amongst the

7    executives.

8              And the reason is that this set the

9    stage in July of 2019.  This is before the players

10   came to work out in October and there was the draft

11   in November and there was the finalization of

12   rosters in January 2020.

13             So this was a critical series of emails

14   back and forth that show, I believe, that Mr. Luck

15   was following Mr. McMahon's directive, even though

16   Mr. McMahon has vehemently claimed that he wasn't.

17             And so I don't believe -- I believe that

18   it's fair game.  It's been put in issue.  It's

19   certainly part of their answer and counterclaim and

20   part of their defense to our -- affirmative defense

21   to our claims.

22             And so for those many reasons, not the

23   least of which I do not believe Ms. Gambardella's

24   affidavit qualifies to specifically support the

25   privilege and all its elements, we believe those
```

1    documents should be produced, or, in the

2    alternative, at a minimum, if you are looking

3    (technical difficulty) we would respectfully request

4    that you do.

5             THE COURT:  All right.  Thank you.

6             Mr. Krasik, I will certainly give you an

7    opportunity, or whoever wants to respond to that, to

8    deal with that issue.

9             MR. McDEVITT:  Yes, your Honor.  It's

10   Jerry McDevitt.  To some degree I have to admit I'm

11   surprised that Mr. Dobrowski is making the arguments

12   he's making because this four-factor memo that Mr.

13   Luck sent around, he never sent to Mr. McMahon.  It

14   was injected into the case early on by an affidavit.

15   If you go back to the original PJR application, Mr.

16   Luck submitted an affidavit in which he stated these

17   four criteria in this email that he had circulated

18   were the only -- that was his words -- the only

19   things that were supposed to be used to disqualify

20   players from eligibility.

21            The affidavit that he filed was false in

22   numerous respects.  It didn't even cite to the right

23   criteria he had in the actual email, which, among

24   other things, said that a conviction or charge of a

25   felony would be disqualifying.  He eliminated the

1    charge aspect in his affidavit.  He then filed a

2    second affidavit where he deleted the word "felony."

3    And in his testimony he admitted that those weren't

4    the only factors that disqualified a player.  And

5    Mr. Callaway had felony charges.  So he was

6    disqualified under the very criteria that Mr. Luck

7    is arguing about.  And Mr. Dobrowski sat through all

8    the testimony and knows that's the case.

9            With respect to the emails that we're

10   talking about, whenever Mr. Luck sent that email,

11   which he didn't send to Mr. McMahon by the way, it

12   did get vetted by Mary Gambardella and she did

13   provide legal advice.  And that's what we are

14   talking about.  That's what these memos and whatnot

15   reflect, Mary Gambardella's legal advice about

16   whether or not those four factors that Mr. Luck had

17   put in that email could, in fact, be the policy.

18   That's what we're talking about.  But it's a red

19   herring because he's already admitted that that

20   wasn't the only criteria that would disqualify a

21   player in his sworn deposition.

22            MR. DOBROWSKI:  With all due respect,

23   Your Honor --

24            THE COURT:  Hang on.  I don't want to

25   get too far off the road that I'm on right now.

1    Right now I'm on a more narrow discovery road and I

2    don't want to get too dissuaded from that.

3              Just on this narrow question, Mr.

4    McDevitt, on what Ms. Gambardella says in the

5    affidavit about it reflects certain aspects of legal

6    advice, I guess what does concern me is both the

7    phrasing that is used here, and it certainly could

8    suggest to people that -- she doesn't necessarily

9    give direct legal advice, but they're talking about

10   some of the same legal issues that she may have

11   advised the company in general about.  I mean, I

12   guess that's what I'm trying to figure out.

13             So is it your argument that the

14   privilege would attach even though individuals are

15   talking amongst themselves about how to deal with

16   the legal advice?  Your notion is that how to deal

17   with a particular legal issue, that that would be

18   privileged simply because that discussion may be

19   reflective of advice that the attorney gave?

20             MR. KRASIK:  Your Honor, I will address

21   your question directly.

22             THE COURT:  Yes.

23             MR. KRASIK:  As reflected on the

24   privilege log, Ms. Gambardella -- and as indicated

25   in her declaration, Ms. Gambardella had been

consulted and given legal advice on the permissible

background check policy and how the company could

use a background check policy prior to when this

email was sent, and -- in a number of

communications.  And the discussion among the XFL

employees reflected in entries 80 to 89 are relating

back to that advice on a background check policy,

and, therefore, discussing the advice that they were

given by Mary Gambardella regarding the background

check policy.

        So the dialogue among the employees is

discussing the legal advice that Ms. Gambardella had

previously given to them on the subject matter.

        THE COURT:  All right.

        MR. DOBROWSKI:  May I say --

        THE COURT:  Yeah, go ahead, Mr.

Dobrowski.  I mean the comments about whether or not

Mr. Luck may have said something, that he waived or

supported an argument, frankly, I'm not interested

in, at least for right now.  But if there is

something else you want to add, go ahead.

        MR. DOBROWSKI:  Well, Your Honor, it's

just that you made a great point, which is that --

and frankly articulated it far better than I could.

The language doesn't say what defense counsel says

```
1    it says.  She doesn't say specifically there is this
2    legal advice that I gave during this conversation.
3    As Mr. Krasik has just said, it was advice that she
4    had given previously.
5              This was different.  While Mr. McDevitt
6    says, well, Mr. McMahon never saw this, the email
7    itself says I just talked to Vince and here is what
8    he told me and these are the four criteria.  And
9    there are emails immediately after that back and
10   forth, within two days, regarding how they're going
11   to set up this policy.
12             And the last thing I will say, Judge,
13   let's assume Mr. Krasik is right in what he's just
14   told you.  I don't understand why they cannot simply
15   redact the legal advice and produce the factors --
16   or the discussion between non-lawyers as to what the
17   factors were going to be regarding player
18   eligibility.  That was a business decision and one
19   which my client is being held up to scrupulous
20   examination, and he should have the facts that show
21   that, indeed, everybody in the organization knew
22   what the criteria was.  And I'm guessing that some
23   of them will actually say, well, I talked to Vince
24   about this, perhaps.  That is speculation on my
25   part.
```

```
1              But, nevertheless, it shows that other

2    executives knew and understood the policy and Mr.

3    Luck was following it.

4              Thank you, Your Honor.

5              THE COURT:  All right.  Just -- I think

6    I understand most of this, but just on the narrow

7    point about redacting out legal advice, is that

8    practical, Mr. Krasik?  Or Mr. McDevitt?  Either

9    one.

10             MR. KRASIK:  My recollection of the

11   specific emails is that the advice permeates the

12   discussion.  So it's not as simple as, you know,

13   Mary said X and you can redact that, as simple as

14   that.  The advice that she had previously given

15   permeated the discussion.  So from our view I don't

16   think it's readily redactable.

17             THE COURT:  Okay.  Let me do this.  On

18   this issue, and just narrowly on this issue -- I

19   don't think it's going to preclude me from still

20   being able to address everything by next Friday.

21   Why don't I do this.  Could you overnight to me for

22   in camera review just these entries 80 to 89?

23             MR. KRASIK:  Sure, Your Honor.

24             THE COURT:  That will just illuminate

25   this.  Overnight it to my chambers.  Or I can put
```

you in contact with my law clerk, and if you want to

do it in some email fashion that way or something,

that would be fine.

MR. KRASIK:  We'll do that, Your Honor.

Thank you.

THE COURT:  All right.  Thank you very

much.

And I know there is a lot of other

motions, a lot of other things.  This one is

something that needed me to get in the weeds on some

of these facts and I needed to sort of draw some of

that out.  I appreciate you all indulging me to make

sure I understand these issues correctly.

On all of the other issues, I do think I

sort of have a good understanding of all of the

things that are going on.  But that said, if there

are any pithy points that anyone wants to make

regarding either one motion or something that they

can do in some pithy way, I'm happy to hear it.  I

don't know who wants to go first, whether it be Mr.

Dobrowski, Mr. McDevitt, Mr. Krasik.  However you

want to do it.  I will give you a few minutes to do

that, if you would like.

MR. DOBROWSKI:  Judge, I would simply

refer to our papers, but first, Mr. Zeitlin -- well,

1   in terms of our motions, if I may ask Ms. Pierce and

2   Mr. McHazlett, is there anything that you feel we

3   need to address with the Court that we haven't

4   addressed in writing?  Go ahead.  No?

5           And, Your Honor, if you could just give

6   me a second to review my notes.

7           THE COURT:  Sure.  Go ahead.

8           MR. DOBROWSKI:  Yeah, I do not want to

9   get down in the weeds, Your Honor, so that's why

10  I'm --

11          THE COURT:  I appreciate it.  And I

12  normally -- there is so much stuff here, and we've

13  got our eye fill of writing.  I have admittedly done

14  a good deal of wading through a lot of this, so I

15  have a good sense of everything.  I do want to make

16  sure, if there is any pithy or pressing point that

17  you need to make sure I don't miss it, I do want to

18  hear it.  Otherwise, I feel comfortable I can

19  address all of these things on the papers.

20          MR. DOBROWSKI:  No.  I guess there are a

21  few points that I would make that relate to

22  depositions.  One is the 30(b)(6) deposition.

23  Obviously we feel strongly that we should be

24  permitted to take a 30(b)(6) deposition just like

25  anyone else.  We don't think it's fair to Mr. Luck

1    that he's hamstrung by the fact that the defendants

2    don't want to produce one.  And they're in

3    bankruptcy.  That's not our fault.  They voluntarily

4    brought their counterclaims, and we think we're

5    entitled to it.

6           Number two is that we believe -- and I

7    won't -- unless the Court asks questions about it,

8    we believe defendants have waived their right -- or

9    any privilege about Mr. McDevitt's deposition in

10   terms of his investigation of the facts that

11   resulted in Mr. Luck being terminated for cause.

12   And because -- this is the one time here that I will

13   explicate on, and the Court I want to be sure is

14   clear on the timing.  Mid 20 -- or mid-March of 2013

15   -- excuse me, mid-March of 2020, the XFL chose to

16   shut down its season, and shortly thereafter Alpha

17   and Mr. McMahon made the decision to put the company

18   into bankruptcy.

19          They then made the determination that

20   Mr. Luck was going to be terminated without cause

21   because they wanted to wean the number of people

22   necessary -- on their payroll because, necessarily,

23   their operation in bankruptcy is going to be

24   significantly smaller than out of bankruptcy.  So

25   they made that decision.  Okay?

```
 1              After making that decision, Mr. McMahon
 2      at Mr. -- excuse me, Mr. McDevitt, at Mr. McMahon's
 3      behest, conducted an investigation, a fact
 4      investigation that defendants now contend prevents
 5      my client from receiving the benefits of his
 6      contract because they found grounds to terminate for
 7      cause.
 8              We are, we believe, entitled to
 9      determine what are the grounds and what was
10      discovered during that investigation, and, most
11      importantly, was that investigation conducted in
12      good faith.  As one example, Your Honor, there is no
13      dispute that Mr. McDevitt did not interview Mr. Luck
14      before terminating him for cause, although one of
15      the asserted grounds for terminating Mr. Luck for
16      cause was Mr. Luck's alleged failure to perform
17      duties after March 13th to April 9th.  Now is that
18      good faith?  Why didn't he do that?  Why didn't he
19      review all of Mr. Luck's emails during that time
20      from March 13th to April 9th?  Because they had the
21      documents in their possession.  All of his business
22      emails were on their server.
23              All of this noise you are hearing about
24      spoliation and the other stuff is, in my opinion,
25      all -- and I won't get into it -- all attempting to
```

1  distract you from determining the merits of this

2  case.  One of the merits of this case is whether or

3  not they conducted their investigation, Mr.

4  McDevitt's investigation, in good faith.  And we

5  think we have evidence, and we've put it forth in

6  our briefing, that it was not conducted in good

7  faith because Mr. McDevitt in his affidavit said:  I

8  anticipated litigation when I was conducting the

9  investigation.  I anticipated litigation with Luck.

10         Well, how can you anticipate litigation

11  with Luck when all you are supposed to be doing is

12  investigating whether the man should be terminated

13  or not.  And so that to us says he had a preordained

14  job, that is, come up with rationale to terminate

15  Luck for cause so we don't have to pay -- so Mr.

16  McMahon doesn't have to pay him $25 million.

17         And for those reasons, Your Honor, we

18  believe that we are entitled to it.  It is not

19  because we are trying to disqualify counsel.  It is

20  not because we have any care about Mr. McDevitt or

21  not.  It's simply because Alpha chose to use Mr.

22  McDevitt to conduct this fact investigation.  That's

23  not our fault.

24         And we submit, last, and then I will

25  shut up, they waived the privilege as to the

```
1    investigation because they disclosed the results of
2    the investigation in the termination letter.  Well,
3    why are we not allowed to investigate and discover
4    the bases for the termination letter?  It seems to
5    me if they're going to -- and they have in their
6    answer and in their counterclaim asserted the bases
7    for the termination, and we cited to you chapter and
8    verse where they do, Judge, why can't we simply ask
9    them, well, tell us what is the -- what are the
10   facts that support these allegations.
11              THE COURT:  All right.
12              MR. DOBROWSKI:  Thank you, Your Honor.
13              Now, I don't know if there is anything
14   Mr. Zeitlin or Ms. Katz have to offer or anything
15   else by Vanessa or Drew.
16              THE COURT:  Thank you.  Anything else
17   from any of the plaintiff's counsel?
18              MR. ZEITLIN:  Nothing else from us, Your
19   Honor.
20              THE COURT:  All right.  Thank you very
21   much.
22              All right.  Mr. McDevitt?
23              MR. McDEVITT:  May I respond, Your
24   Honor?
25              THE COURT:  Yes, please.
```

```
1               MR. McDEVITT:  In no particular order to

2   what Mr. Dobrowski said, I will comment briefly on

3   some of his arguments, which I didn't understand the

4   Court to be wanting to have in depth arguments on,

5   and hopefully in the end give the Court what I think

6   is a big picture on how to move the case forward in

7   a positive way that will cut through a lot of the

8   rhetoric and allow the Court to see what the case is

9   really about.

10              First of all on this 30(b)(6) issue,

11  just so the Court understands what we have produced,

12  and what Mr. Dobrowski knows -- they know the entire

13  case.  They always have.  We have produced now in

14  this case 83,635 documents consisting of

15  275,000 pages of records; I can safely say hundreds

16  of thousands of pages that have no relevance

17  whatsoever to the --

18              THE COURT:  Hang on, Mr. McDevitt.  My

19  court reporter is having a little problem.  Either

20  get closer to your microphone or something.

21              MR. McDEVITT:  Sure.  Is that better?

22              THE COURT:  Yeah, go ahead.

23              MR. McDEVITT:  Okay.  But in terms of

24  what they already have in terms of the case, Your

25  Honor, we've produced massive amounts of records,
```

1    far beyond any that are relevant to the case.  We

2    voluntarily produced Mr. McMahon, who is the only

3    decision-maker in issue in this case.  This isn't a

4    case where 30(b)(6)s are used to try to ferret out

5    who the decision-maker was or who made the decision.

6    It was Mr. McMahon.  He's the one who made the

7    decision.  He's the only one who made the decision.

8    And they know that.  They deposed Mr. McMahon for

9    seven hours and were asking such obscure questions

10   as, you know, why he rented the private plane for

11   Wrestle Mania, which I have no idea what that has to

12   do with the case.  So they had a full opportunity to

13   examine the decision-maker in this case about every

14   issue that they wanted to.

15            Beyond that, we answered contention

16   interrogatories that were massive, and I would

17   invite the Court to look at those answers we gave.

18   I would suggest you've never see more comprehensive

19   answers which tell them exactly what the facts and

20   basis is for everything and identify by document

21   trail and everything else the proof that shows what

22   Mr. Luck did constitutes cause under the contract.

23            So on the 30(b)(6), they already have

24   everything that they are entitled to on that, Your

25   Honor.  That is just so disproportionate to any

34

```
1    needs that they really have in the case.

2              This argument that there has been some

3    waiver by me, quite frankly, this attempt to take my

4    deposition is just sheer harassment.  I am not a

5    fact witness in the case and never was a fact

6    witness in the case.  What I have done is no

7    different than what attorneys do every day in this

8    country, and that is give legal advice to a client

9    on an issue that they ask questions about.

10             The full information and the full basis

11   for why he has been terminated has been disclosed to

12   them repeatedly.  There has never been any hide the

13   ball about it.  We have identified what the cause

14   issues are in the case specifically.  They know all

15   of the evidence on that.  They have all of the

16   evidence on that.  They have had all of the evidence

17   on that.

18             And I think, Your Honor, in terms of

19   moving the case forward, when you see the summary

20   judgment arguments and you see the admissions that

21   have been made by Mr. Luck, as opposed to the

22   characterizations of the evidence made by his

23   counsel, you'll see that there is a very clear

24   indication of Mr. Luck violating Mr. McMahon's

25   directives when it came to hiring Antonio Callaway.
```

1   There is a clear refusal to carry out the

2   instruction that he gave to terminate him when he

3   found out about it.

4           And the Court is already intimately

5   familiar with the additional ground for termination

6   that we are now relying upon, this misuse of the

7   company's phone and all of the shenanigans that the

8   Court is well aware of that we had to fight for over

9   a year to get to the truth about what the situation

10  was with that phone and Mr. Luck's destruction of

11  evidence within an hour of receiving the termination

12  letter.

13          I was very surprised to hear Mr.

14  Dobrowski again refer to spoliation in this case as

15  noise, which I think shows his disregard for what

16  has happened here and what we had to deal with for

17  over a year to get to the truth and hire an expert

18  and everything else.  And the fact that Mr. Luck,

19  who is a trained attorney, destroyed evidence within

20  a half an hour of getting the termination letter,

21  and then lied about it repeatedly to us and to the

22  Court, not once, not twice, but is still ongoing, is

23  shocking that anybody would refer to that as just

24  noise.  It isn't noise.  It cost us hundreds of

25  thousands of dollars to get to the truth of that.

1              Now, as far as the big picture in this

2    case goes, Your Honor, all of these accusations that

3    he hurls around about bad faith and all, the only

4    bad faith that actually occurred in this case, which

5    is defined as dishonesty, is all of the information

6    that was given to the Court and us that was false

7    about whether he destroyed evidence on the case.

8              I think when you see this case -- as I

9    see it, Your Honor, when you see the issues of

10   cause, the factual issues in this case, to me the

11   important things that are going to have to occur in

12   this case are the Court's decisions on a couple of

13   contract interpretation issues and on the Court's

14   application and decision with respect to their

15   argument that the so-called after-acquired evidence

16   doctrine in Connecticut precludes us from relying on

17   the fact that he admittedly violated the employee

18   handbook and the electronic use policy ████████████

19   ████████████████████████████████████████████████

20             THE COURT:  Hang on.  Hang on.  I don't

21   need to get down too much the road on some of this

22   stuff.  I understand.  I get it.  I understand the

23   question about misuse of the phone.

24             MR. DOBROWSKI:  And, Judge, I

25   respectfully remind counsel that we have a sealed

```
1    order as to certain information.

2             THE COURT:  Yeah.  So -- okay.  Anything

3    else, Mr. McDevitt?

4             MR. McDEVITT:  My point, Your Honor, is

5    simply this.  If you conclude that there is cause,

6    the bad faith issues go away because you can't use

7    implied covenants of good faith and fair dealing to

8    vary the terms of the contract.  Your Honor has

9    ruled that in many different cases.  So once you see

10   what the actual evidence is, all of these arguments

11   about bad faith and all the rest of it go away.  The

12   facts are there and we want to get them to the Court

13   so you can see the facts because it's what's going

14   to cut through all of this stuff.

15            Beyond that, Your Honor, we rest on our

16   papers.

17            THE COURT:  All right.  Thank you all

18   very much.  I appreciate it.  Like I said, I will --

19   you'll send me the information on that limited

20   excerpt I asked for to review in camera, but I will

21   try to deal with everything else by next Friday the

22   17th and then we'll have a path to go forward.

23            Thank you all very much for being

24   available.  I appreciate what you have submitted and

25   argued today, and I will try to deal with this
```

1   expeditiously.

2               Have a good afternoon.

3               MR. DOBROWSKI:  Judge, may I ask you one

4   question?

5               THE COURT:  I'm sorry, yes.

6               MR. DOBROWSKI:  May I email also to your

7   clerk, or whomever the appropriate person is, that

8   fundamental email that starts the chain of those

9   emails 80 to 89?

10              THE COURT:  If you do, make sure you

11  copy the defense on it.  Fine.

12              MR. DOBROWSKI:  Of course.  Yes,

13  absolutely.

14              THE COURT:  I will have someone reach

15  out to you all and figure out how to deal with all

16  of that stuff.  All right.

17              MR. DOBROWSKI:  Thank you, Your Honor.

18              THE COURT:  Take care now.

19              (Proceeding concluded 4:50)

20

21

22

23

24

25

1

2          I certify that the foregoing is a correct

3    transcript from the record of proceedings in the

4    above-entitled matter.

5

6                                    9/20/21

7                                     Date

8

9                        /S/   Sharon Montini

10                            Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25