IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON and | § | |
| ALPHA ENTERTAINMENT, LLC | § | |
| | § | April 19, 2022 |
| *Defendants.* | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION TO ENJOIN DEFENDANT ALPHA
FROM CIRCUMVENTING THE COURT'S JURISDICTION**

Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908

AND

Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199

***ATTORNEYS FOR PLAINTIFF OLIVER LUCK***

Oral Argument Requested

**TABLE OF CONTENTS**

Table of Authorities ......................................................................................................................... iii

I.     Procedural History ............................................................................................................... 3

        A.     Upon Defendant McMahon's insistence, the Court ordered that Alpha be joined in this litigation as a necessary party......................................................... 3

        B.     Alpha's claims in both courts are based on the same facts and circumstances. ................................................................................................... 4

II.     Alpha Should Be Prevented From Relitigating Issues In Its Second Filed Lawsuit Under The 'First Filed' Rule.............................................................................. 5

III.     There Is Good Cause Warranting Expedited Consideration Of This Motion And Granting Of The Injunction....................................................................................... 12

IV.     Conclusion ........................................................................................................................ 13

Certificate of Service ..................................................................................................................... 15

## TABLE OF AUTHORITIES

**CASES**

*Adam v. Jacobs*,
    950 F.2d 89 (2d Cir. 1991) .................................................................................................. 11

*AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*,
    626 F3d 699 (2d Cir. 2010) ......................................................................................... 5, 6, 12

*City of New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991) .................................................................................. 5, 6, 7, 9, 12

*First City Nat'l Bank & Trust Co. v. Simmons*,
    878 F.2d 76 (2d Cir. 1989) ..................................................................................................... 5

*In re Alpha Entertainment LLC*,
    Case No. 20-10940-LSS (Bankr. D. Del.) ...................................................................... 3, 4, 9

*In re Alpha Entertainment LLC*,
    Case No. 22-50256-LSS (Bankr. D. Del.) ........................................................................ 1, 12

*In re DBSI, Inc.*,
    No. 08-12687 PJW, 2012 WL 1078079 (Bankr. D. Del. Mar. 30, 2012) ............................... 10

*Meeropol v. Nizer*,
    505 F.2d 232 (2d Cir. 1974) ........................................................................................ 5, 7, 8 9

*Nat'l Equip. Rental, Ltd. v. Fowler*,
    287 F.2d 43 (2d Cir. 1961) .................................................................................................. 5, 6

*Pharm. Res., Inc. v. Alpharma USPD, Inc.*,
    No. 02 Civ. 1015 (LMM), 2002 WL 987299 (S.D.N.Y. May 13, 2002) ................................. 5

*Santana v. Cavalry Portfolio Services, LLC*,
    Cause No. 19 Civ. 3773 (PAE), 2019 WL 6173672 (S.D.N.Y. November 19, 2019) ............. 5

*This, LLC v. Jaccard Corporation*,
    Civil No. 3:15CV1606 (JBA), 2016 WL 1700379 (D. Conn. April 26, 2016) ........................ 6

*United States v. Aquavella*,
    615 F.2d 12 (2d Cir.1980) .................................................................................................... 11

*William Gluckin & Co. v. International Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969) .................................................................................................. 5

**RULES**

11 U.S.C. APP. R. 7013 ................................................................................................................ 12

28 U.S.C. 1409(c) ........................................................................................................................ 11

Federal Rule of Civil Procedure 13(a)(1) .................................................................................... 10

In support of the accompanying Emergency Motion to Enjoin Alpha Entertainment LLC ("Alpha") from Circumventing the Court's Jurisdiction, Plaintiff Oliver Luck submits this memorandum of law (collectively, the "Motion").

Although Alpha has been a party to this lawsuit for more than seventeen months and trial in this case is scheduled to begin less than three months from now, Alpha's Plan Administrator (acting on behalf of Alpha)[1] filed a complaint against Mr. Luck in the Bankruptcy Court for the District of Delaware on April 11, 2022. *In re Alpha Entertainment LLC*, Case No. 22-50256-LSS, ECF 1 (Bankr. D. Del.) (hereinafter referred to as the "Complaint" and attached as Exhibit 1). While sounding in claims for fraudulent transfer and preference, the Complaint is based on many of the same facts and circumstances alleged in Alpha's counterclaims that were filed in this Court on February 18, 2021, ECF 153, and upon which the Court based its February 11, 2022 Ruling and Order (the "Order"). ECF 423. In addition, the Complaint seeks recovery of compensation paid to Mr. Luck, which Alpha also sought to recover in its now dismissed counterclaim regarding Mr. Luck's work performance after March 13, 2020. The bottom line is that the Complaint is nothing more than an attempt by Alpha, and its principal creditor Mr. McMahon, to obtain the proverbial "second bite of the apple" at Mr. Luck's expense.

---

[1] Alpha and the Plan Administrator are one and the same. *In re Alpha Entertainment LLC*, Case No. 20-10940-LSS, ECF 583, Second Amended Chapter 11 Plan of Alpha Entertainment LLC (Bankr. D. Del.) (the "Plan," attached as Exhibit 2). The Plan Administrator, acting on behalf of Alpha, states in the Complaint that the Plan vested him with the authority to commence the bankruptcy adversary proceeding. Ex. 1 ¶ 2. Alpha is the "Post-Effective Date Debtor" under the Plan. Ex. 2 § 1.63. Alpha assigned certain claims to Mr. McMahon, *see* Exhibit 3, but retained its unassigned claims against Mr. Luck. Ex. 2 §§ 1.75 & 5.4.7. Under Section 5.4.7 of the Plan, both Alpha *and* the Plan Administrator are entitled to assert Alpha's retained causes of action. While Section 5.4.3. gives the Plan Administrator the power to prosecute the retained causes of action, it does not prevent Alpha from prosecuting the claims or in any way change the fact that the claims *are Alpha's*. Additionally, Section 1.58 identifies the Plan Administrator as "the sole officer and/or responsible Person for [Alpha]" and "the sole member of [Alpha]."

Oral Argument Requested

In the Complaint, Alpha relies on many of the same factual grounds that Alpha has previously litigated in this Court, i.e., allegations regarding personal use of the iPhone, sharing of confidential information, and abandonment of duties arguments that this Court found lacking as a matter of law. ECF 423 at 2. Specifically and for example, Alpha asserts that Mr. Luck failed to perform his duties between March 13 and April 9, 2020. As the Court is well aware, Mr. Luck previously sought summary judgment on that issue and the Court granted summary judgment in favor of Mr. Luck albeit for failing to provide the requisite written notice and opportunity to cure. ECF 423 at 33.

With trial in this Court scheduled to begin on July 11, 2022, Mr. Luck and his counsel should not be put to the burden and expense of defending the bankruptcy lawsuit while preparing for trial. Moreover, any alleged claims in the Complaint are compulsory counterclaims which Alpha should have brought in this case long ago. Further, as guarantor, any liability for the bankruptcy claims must be borne by Mr. McMahon, and Mr. Luck intends to add him as a third-party defendant to the bankruptcy case. Thus, all of the same parties in that case are identical to the parties in this case.

Also, litigating in another court will vastly increase Mr. Luck's costs by requiring additional bankruptcy and local Delaware counsel. Consequently, this Court should enjoin Alpha, including its Plan Administrator, from pursuing the claims contained in its recently filed Complaint in Delaware. At a minimum, this Court should enjoin Alpha from pursuing claims in the Bankruptcy Court until after this Court has rendered a final judgement in this case.

I.  **PROCEDURAL HISTORY**

   A.  **Upon Defendant McMahon's insistence, the Court ordered that Alpha be joined in this litigation as a necessary party.**

On April 9, 2020, Defendants terminated Mr. Luck purportedly for Cause. ECF 145-2. A mere four days later, Alpha voluntarily filed for Chapter 11 bankruptcy. *In re Alpha Entertainment LLC*, Case No. 20-10940-LSS, ECF 1 (Bankr. D. Del.). On April 16, 2020, Mr. Luck filed suit against Defendant Vincent K. McMahon based on Alpha's wrongful termination of Mr. Luck and Mr. McMahon's guaranty of Alpha's obligations. ECF 1.

In his opposition to Plaintiff's Application for Prejudgment Remedy filed on May 13, 2020, Mr. McMahon argued that Alpha was a necessary party to the litigation but could not be joined due to the bankruptcy's automatic stay. ECF 50 at 22. Mr. McMahon requested that the Court stay this litigation pending resolution of Alpha's bankruptcy case. ECF 50 at 18 n.3. On June 6, 2020, the Court stayed the case until Alpha could be joined as a party. ECF 79 at 17.

On July 17, 2020, Mr. Luck filed a motion requesting relief from the automatic stay in the Bankruptcy Court. *In re Alpha*, Case No. 20-10940-LSS, ECF 295. On August 7, 2020, the Bankruptcy Court entered an Agreed Order lifting the automatic stay, permitting Mr. Luck to seek a declaration against Alpha for wrongful termination for the purpose of obtaining a monetary judgment against Mr. McMahon. *Id.*, ECF 355. Alpha's asset sale closed on August 21, 2020, ECF 90-3, and Mr. Luck filed his Motion to Lift the Stay in this Court sixty days later. ECF 90. On November 11, 2020, the Court granted Mr. Luck's motion. ECF 93.

On October 27, 2020, Mr. McMahon, Alpha, and the Official Committee of Unsecured Creditors appointed in Alpha's bankruptcy case entered into a stipulation by which Alpha assigned all of its affirmative claims against Mr. Luck "arising from or related to [this lawsuit] to McMahon" except "actions under sections 105(a), 502(d), 510, 542 through 551 and 553 of title

3

11 of the United States Code." *In re Alpha*, Case No. 20-10940-LSS, ECF 532-1 at 3 ¶ 1 (attached along with the order approving the stipulation as Exhibit 3). In turn, Mr. McMahon agreed to pursue Alpha's counterclaims in this lawsuit and bear the costs of asserting Alpha's defenses, and agreed that Alpha would be entitled to 67% of any potential recovery against Mr. Luck. *Id*. at ¶¶ 2-5. The Bankruptcy Court approved the stipulation on November 17, 2020. *In re Alpha*, Case No. 20-10940-LSS, ECF 532. Mr. McMahon's counsel filed their notices of appearance on behalf of Alpha in this action on December 4, 2020. ECFs 97-99.

### B.     Alpha's claims in both courts are based on the same facts and circumstances.

Alpha filed its initial Counterclaims on January 7, 2021, ECF 126, and its Amended Counterclaims on February 18, 2021. ECF 153. In its Amended Counterclaims, ECF 153, Alpha alleges that it has been damaged due to Mr. Luck's: (1) hiring and firing of Antonio Callaway (¶¶ 15-49); (2) use of his Alpha-issued iPhone for personal purposes (¶¶ 50-75); (3) sharing of allegedly confidential XFL information (¶¶ 76-96); and (4) alleged abandonment of his duties after March 13, 2020 (¶¶ 97-109). More than one year later, Alpha filed the Complaint, in which it *again* alleges that it has been damaged due to Mr. Luck's: (1) hiring and firing of Antonio Callaway (¶18); (2) use of his Alpha-issued iPhone for personal purposes (¶20); (3) sharing of allegedly confidential XFL information (¶21); and (4) alleged abandonment of his duties after March 13, 2020 (¶19).[2] Ex. 1 ¶¶ 18-21.

Alpha has also relied on these same four grounds to support its for cause termination of Mr. Luck in defense of Mr. Luck's claims. ECF 341 ¶¶ 15 (abandonment of duties), 20 (iPhone), and 21 (Callaway) and Alpha's Second Affirmative Defense (breach of the CNNA). However, in

---

[2] Alpha's initially-pled Counterclaims, like its Amended Counterclaims, also included allegations regarding these same four topics. *See* ECF 126.

4

its Order, the Court granted Mr. Luck's motions for summary judgment regarding the personal use of the iPhone, alleged sharing of confidential information, and his work after March 13, 2020. ECF 423 at 2. Following the Court's Order, the sole surviving basis that could possibly support Alpha's for cause termination of Mr. Luck is the hiring and firing of Antonio Callaway. *Id*. Alpha's recently filed bankruptcy Complaint is a blatant attempt to revive the three dismissed grounds, drive up Mr. Luck's attorneys' fees, and distract him from preparing for trial that is scheduled in three months.

## II.  ALPHA SHOULD BE PREVENTED FROM RELITIGATING ISSUES IN ITS SECOND FILED LAWSUIT UNDER THE 'FIRST FILED' RULE

Under the "first filed" rule, "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action unless there are special circumstances which justify giving priority to the second action." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) (quoting *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974), and *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)) (internal quotation marks omitted).[3] "Deference to the first filing embodies considerations of judicial administration and conservation of resources, and recognizes that a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter." *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F3d 699, 722 (2d Cir. 2010) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989), and *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 80 (2d Cir. 1961)) (internal

---

[3] To avoid application of the "first filed" rule, the party who filed the complaint in the second action "must demonstrate that circumstances justifying an exception exist, and it is within the trial court's discretion to determine if a departure [from the rule] is warranted." *Santana v. Cavalry Portfolio Services, LLC*, Cause No. 19 Civ. 3773 (PAE), 2019 WL 6173672, at *3 (S.D.N.Y. November 19, 2019) (quoting *Pharm. Res., Inc. v. Alpharma USPD, Inc.,* No. 02 Civ. 1015 (LMM), 2002 WL 987299, at *2 (S.D.N.Y. May 13, 2002). No such circumstances exist in this case.

quotation marks omitted). In other words, when a complaint is filed in one federal court that "embraces essentially the same transactions" as those in a pending case in another federal court, the Court where the claims are already pending "may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case." *Id*. at 722-723 (quoting *Fowler*, 287 F.2d at 45). This Court, as the first court wherein the claims were filed, is charged with making the determination of whether to enjoin Alpha from proceeding in the second suit. *This, LLC v. Jaccard Corporation*, Civil No. 3:15CV1606 (JBA), 2016 WL 1700379, at *3 (D. Conn. April 26, 2016) (collecting cases).

For example, in *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991), the Second Circuit affirmed Judge Conboy's injunction preventing parties from litigating issues in a California bankruptcy proceeding that were already before him in the Southern District of New York "under the 'first filed' rule, and as a matter of judicial economy." The City of New York had filed its action in New York in 1985. *Id*. In 1987, Refinement, one of the defendants, filed for Chapter 11 bankruptcy in California and the City of New York filed a proof of claim in the bankruptcy case for the damages alleged in the New York action. While the City of New York's own motion for summary judgment was pending in the New York action, Refinement moved in the California bankruptcy proceeding for a determination of its liability to the City of New York. *Id*. at 1022-23. Judge Conboy granted the City of New York's summary judgment motion and enjoined the parties from litigating any remaining damages issues in the California bankruptcy proceeding.

On appeal, Refinement argued that the injunction was entered in error because "special circumstances" existed that made the "first filed" rule inapplicable; namely, that the California bankruptcy court would have to deal with similar issues in other claims and that made it more

6

efficient to handle all similar claims in the bankruptcy court. *Id*. at 1025. The Second Circuit disagreed, holding that the "New York court has already spent considerable time and effort dealing with the exact *same* case," a fact that carried more weight than the fact that the California bankruptcy court would be handling similar matters. *Id*. at 1026 (emphasis in original). The Second Circuit further held that, "given Judge Conboy's considerable expenditure of time and effort on this case, there is no sound reason why his work should be duplicated in the California proceeding." *Id*. Mr. Luck respectfully suggests that the exact same logic applies in this case.

Likewise, in *Meeropol v. Nizer*, 505 F.2d 232 (2d Cir. 1974), the Second Circuit affirmed the Southern District of New York's order staying prosecution of an action filed in the District of Connecticut. The Meeropols (children of Julius and Ethel Rosenberg) commenced the first action in the Southern District of New York against Louis Nizer, author of 'The Implosion Conspiracy,' and the book's hard cover publisher, Doubleday, for infringement, defamation, and invasion of privacy. *Id*. at 234. The Meeropols commenced the subsequent Connecticut action against the book's paperback publisher, Fawcett, under the same theories. *Id*. The Southern District of New York stayed the Connecticut litigation, even though the parties in the two actions were not identical, because Doubleday had agreed to indemnify Fawcett when it granted Fawcett the right to publish the book. *Id.* at 236.

Rejecting the argument that the defendants in the two cases were not "in privity," the Second Circuit held that there was "no conflict of interest between Doubleday and Fawcett, and indeed for all practical purposes Doubleday is the real party in interest in the Connecticut action." *Id*. The Second Circuit also rejected the argument that the second case should not have been enjoined because the issues were not completely identical in both cases and that adjudication of the issues in the New York case would not be dispositive of the issues in the Connecticut case. *Id*.

7

at 236-37. Instead, the court held that the notice issues raised by the appellants did "not make the underlying claim[s] for relief so different as to prevent the district court from staying the Connecticut action." *Id.* at 237. Finally, the Second Circuit upheld the injunction "as a matter of discretion" because "the New York action had been actively litigated, with extensive discovery, for eight months prior to the institution of the Connecticut action…." *Id.*

This case was first-filed in this Court on April 16, 2020, ECF 1, and Alpha has been an active party to the lawsuit since its counsel filed notices of appearance on December 4, 2020. ECFs 97-99. Alpha's bankruptcy Complaint was filed in the Delaware Bankruptcy Court on April 11, 2022, long after this proceeding before this Court commenced. Ex. 1. Additionally, Alpha's underlying claims in both proceedings are based, in substantial part, on Mr. Luck's: (1) hiring and firing of Antonio Callaway; (2) personal use of the iPhone; (3) alleged sharing of confidential information; and (4) alleged abandonment of his XFL duties after March 13, 2020. *Compare* ECF 153, Alpha's Amended Counterclaims, ¶¶ 15-49 (Calloway), 50-75 (iPhone), 76-96 (confidential information), and 97-109 (XFL duties); *with* Ex. 1, Alpha's bankruptcy Complaint, ¶¶ 18 (Calloway), 20 (iPhone), 21 (confidential information), and 19 (XFL duties). Given the factual overlap on many of the issues, there is a risk of inconsistent judgments and rulings if the two proceedings are allowed to continue in parallel. Therefore, the Court should enjoin Alpha from prosecuting its claims in the Delaware Bankruptcy Court under the "first filed" rule, at least until the trial of this action is concluded, because the parties and issues in both proceedings are the same (or, at a minimum, "not so different"). *Meeropol*, 505 F.2d at 237.

Additional considerations also warrant the Court's exercise of discretion to enjoin Alpha from now proceeding in the Delaware Bankruptcy Court. This case has been before the Court for more than two years and over 400 ECF filings have already been made. In fact, this motion and

8

memorandum will be ECF filing number 448 with the Court. The deadline to file a motion to amend a pleading passed on March 5, 2021. ECF 167. Extensive discovery has been completed after multiple disputes, motions, and hearings, with the discovery deadline having passed on July 16, 2021. *Id*. The dispositive motion deadline passed on November 12, 2021, ECF 328, with the Court having already ruled on motions for summary judgment and motions to strike. *See* ECF 423. In fact, the Court in its ruling on dispositive motions has already held that, as a matter of law, three out of Alpha's four repeated grounds for recovery in both proceedings do not provide a basis for Alpha to recover damages. *Id*. at 2. If Alpha is permitted to proceed in the Delaware Bankruptcy Court, both Mr. Luck and the court would be burdened with repeating the discovery and pre-trial motion stages of litigation, and there would be a rise of inconsistent decisions. For example, Mr. Luck's responsive pleading to the Complaint is currently due on May 11, 2022 – exactly two months before trial begins in this case. Given this Court's "considerable expenditure of time and effort on this case, there is no sound reason why [the Court's] work should be duplicated in the [Delaware] proceeding." *City of New York v. Exxon Corp.*, 932 F2d at 1026.

Further weighing in favor of an injunction is the fact that Alpha has voluntarily appeared before this Court pursuant to the agreed order lifting the stay filed in the bankruptcy proceeding. *In re Alpha*, Case No. 20-10940-LSS, ECF 355. Having voluntarily appeared before this Court, Alpha should not now be permitted to pursue claims based on many of the same underlying issues in another court. *Meeropol*, 505 F.2d at 236 (finding it "significant" that Fawcett intervened in the first filed action).

Alpha's counterclaims currently before the Court were also assigned by it to Mr. McMahon under the agreement that Mr. McMahon would present Alpha's claims against Mr. Luck on behalf of Alpha and that Alpha would receive 67% of any potential recovery had from Mr. Luck. Ex. 3

9

¶¶ 2-3. While Alpha retained sole ownership of certain potential claims against Mr. Luck, including those presented in the bankruptcy Complaint, *see* Ex. 3 ¶ 1 and Ex. 1 ¶¶ 32-61, Alpha's contractual arrangements should not require Mr. Luck to litigate the same underlying issues against Alpha in two separate courts located in different states and falling within different federal circuits. Additionally, if Alpha is permitted to proceed with the Delaware proceeding, Mr. Luck will be required to join Mr. McMahon as a responsible third party in the proceeding to enforce his guaranty and indemnification obligations, thus *requiring the same three parties to litigate identical issues before two different courts*.

In addition, the Complaint is seeking, by way of fraudulent transfer and preference causes of action, the avoidance and recovery of the very same compensation that Alpha sought to recover in its now dismissed Counterclaim regarding Mr. Luck's work performance after March 13, 2020 in this action. Alpha has since filed a motion for reconsideration, ECF 428, but Alpha cannot obtain a double recovery of the same funds. *See, e.g., In re DBSI, Inc.*, No. 08-12687 PJW, 2012 WL 1078079, at *4 (Bankr. D. Del. Mar. 30, 2012) (observing that trustee "cannot get a double recovery" for fraudulent transfer and unjust enrichment claims that seek return of same funds). Accordingly, the outcome of this action may have a material impact on the litigation in the Delaware bankruptcy proceeding. Thus, judicial economy and efficiency dictate that the Delaware proceeding should be enjoined until a final judgment is entered in this action.

Along the same lines, many of the claims Alpha is making in the Complaint constitute compulsory counterclaims that should have been brought in this action when Alpha filed it Counterclaims. Federal Rule of Civil Procedure 13(a)(1) requires a party include in its pleadings "any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's

claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." "The test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are 'so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir.1980)).

Plaintiff's Second Amended Complaint alleges that Alpha wrongfully terminated him in breach of the Employment Contract and thus Mr. McMahon is required to fulfil Alpha's payment obligations under the Guaranty. *See* ECF 145. The "transaction or occurrence that is the subject matter" of Mr. Luck's claim is the wrongful termination that Alpha attempts to justify in its termination letter based on Mr. Luck's hiring and firing and Antonio Callaway and work performance after March 13, 2020. ECF 145-2 at 2-3. Alpha filed its Amended Counterclaims on February 18, 2021, claiming damages related to Mr. Luck's hiring and firing of Antonio Callaway, work performance after March 13, 2020, personal use of the iPhone, and alleged sharing of confidential information. *See* ECF 153 ¶¶ 15-109. The claims included in Alpha's bankruptcy Complaint arise out of the same "transaction or occurrence" as Mr. Luck's claims *and* the claims Alpha has already put forward—and litigated—in this action as counterclaims. *See* Ex. 1, ¶¶ 16 and 18-21. Alpha's bankruptcy claims also could have been made in this Court without adding another party since Alpha voluntarily appeared and presented claims. Therefore, Alpha's bankruptcy claims constitute compulsory counterclaims that could and should have been brought in this Court.[4] They were not, and the deadline to file a motion to amend a pleading passed on

---

[4] Alpha could have brought the claims it is making in the bankruptcy Complaint in this Court under 28 U.S.C. 1409(c).

March 5, 2021. ECF 167. Consequently, Alpha should be enjoined from pursuing claims in the Delaware bankruptcy proceeding.[5]

Finally, and pointedly, the timing of Alpha's bankruptcy Complaint being filed less than eight weeks from the deadline for the parties to submit their joint trial memorandum, which requires Mr. Luck to prepare "witness and exhibit lists, any motions in limine, and proposed voir dire questions, as well as proposed post-trial jury instructions and a proposed verdict form," ECF 432, and a mere thirteen weeks before trial smells of the type of gamesmanship that the "first filed" rule is intended to prevent. *AEP Energy Services Gas Holding Co.*, 626 F3d at 722 ("Deference to the first filing . . . recognizes that a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter.") (citation and internal quotation marks omitted).

Thus, under the "first filed" rule and as a matter of the Court's discretion, Alpha should be enjoined from proceeding with its claims filed in *In re Alpha Entertainment LLC*, Case No. 22-50256-LSS (Bankr. D. Del.).

**III.   THERE IS GOOD CAUSE WARRANTING EXPEDITED CONSIDERATION OF THIS MOTION AND GRANTING OF THE INJUNCTION**

Local Rule 7(a) allows for expedited consideration of a motion for good cause. D. Conn. L. Civ. R. 7(a)(4) & (6). For the following reasons, there is good cause warranting both expedited consideration of this motion as well as granting the injunction:

---

[5] Plaintiff acknowledges that Bankruptcy Rule 7013 provides that a "debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action." Even if those grounds exist, which Plaintiff denies, Alpha never sought leave of Court to amend its counterclaims. More importantly, however, that Rule does not bar the Court from issuing an injunction staying the bankruptcy adversary proceeding. *See City of New York v. Exxon Corp.*, 932 F2d 1020.

1. The Delaware bankruptcy proceeding is a blatant attempt to end-run around this Court's jurisdiction.

2. Jury trial before the Court is scheduled less than three months away. ECF 432.

3. The Joint Trial Memorandum, including "witness and exhibit lists, any motions in limine, and proposed voir dire questions, as well as proposed post-trial jury instructions and a proposed verdict form," is due in forty-five (45) days. ECF 432.

4. The deadline for filing motions to amend pleadings and add affirmative claims passed on March 5, 2021. ECF 167.

5. Discovery has been closed since July 16, 2021. ECF 167.

6. The deadline for filing dispositive motions passed on November 12, 2021. ECF 328.

7. The filing of the Delaware bankruptcy proceeding is a calculated attempt to distract Mr. Luck and his counsel while trying to prepare the Joint Trial Memorandum and for trial.

8. Mr. Luck's responsive pleading to the Complaint is currently due on May 11, 2022.

9. The Delaware bankruptcy proceeding runs the risk of inconsistent contract interpretations and rulings.

10. The Delaware bankruptcy proceeding is a thinly veiled attempt run up litigation expenses and attorneys' fees for Mr. Luck as he will have to employ additional bankruptcy counsel and local Delaware counsel.

## IV.   CONCLUSION

For judicial economy, efficiency and to avoid inconsistent rulings, the Court should grant Plaintiff's Emergency Motion to Enjoin Defendant Alpha from Circumventing the Court's Jurisdiction and enjoin Alpha from pursuing claims in the Bankruptcy Court. At a minimum, this Court should enjoin Alpha from pursuing claims in the Bankruptcy Court until after this Court has rendered a final judgement in this case.

*Signature of Counsel on the Next Page*

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, LLP.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

## CERTIFICATE OF SERVICE

  I hereby certify that on April 19, 2022, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

              */s/ Paul J. Dobrowski*