# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| v. | § | |
| | § | |
| VINCENT K. MCMAHON and | § | April 25, 2022 |
| ALPHA ENTERTAINMENT LLC | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

### OPPOSITION OF PETER HURWITZ, PLAN ADMINISTRATOR OF ALPHA ENTERTAINMENT LLC, TO PLAINTIFF'S EMERGENCY MOTION TO ENJOIN DEFENDANT ALPHA FROM CIRCUMVENTING THE COURT'S JURISDICTION

Toby S. Soli (CT-18697)
GREENBERG TRAURIG, LLP
445 Hamilton Avenue, 9th Floor
White Plains NY 10601
Telephone (914) 286-2900
Facsimile (914) 286-2990
Email: solit@gtlaw.com

Howard J. Steinberg (*Pro Hac Vice Pending*)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone (310) 586-7700
Facsimile (310) 586-7800
Email:  steinbergh@gtlaw.com

***ATTORNEYS FOR PETER HURWITZ,***
***PLAN ADMINISTRATOR OF ALPHA ENTERTAINMENT LLC***

Oral Argument Requested

1

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 5

II. STATEMENT OF FACTS ................................................................................................... 9

    A.    The Court Orders Alpha be Joined in this Case as a Necessary Party ................... 9

    B.    Luck Seeks Relief from the Automatic Stay in the Bankruptcy Court to
        Join Alpha as a Nominal Defendant ...................................................................... 9

    C.    An Agreed Order is Entered in the Bankruptcy Case Granting Luck's Stay
        Relief Motion ...................................................................................................... 11

    D.    An Order is Entered in the Bankruptcy Case Assigning the Estate's Non-
        Bankruptcy Claims to McMahon .......................................................................... 12

    E.    The Plan Administrator Investigates Potential Avoiding Action Claims
        against Luck ......................................................................................................... 12

    F.    The Bankruptcy Complaint is Filed ..................................................................... 13

III. ARGUMENT ................................................................................................................... 13

    A.    Alpha is a Nominal Defendant in this Case And is Not A Real Party in
        Interest in the Proceeding .................................................................................... 13

    B.    The Avoiding Action Claims Are Not Compulsory Counterclaims ..................... 15

    C.    Venue of the Bankruptcy Complaint is Proper in Delaware ................................ 18

    D.    The First Filed Rule Does Not Apply .................................................................. 19

IV. CONCLUSION ................................................................................................................ 23

ADMIN 63444409v6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Jacobs*,
   950 F.2d 89 (2d Cir. 1991)..................................................................................18

*AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*,
   626 F. 3d 699 (2d Cir. 2010)...............................................................................20

*In re Agriprocessors, Inc.*,
   479 B.R. 835 (Bankr. N.D. Iowa 2012*)* ............................................................20

*City of New York v. Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991)..............................................................................20

*In re Guilmette*,
   202 B.R. 9 (Bankr. N.D.N.Y. 1996) ....................................................................20

*Jones v. Ford Motor Credit Co.*,
   358 F. 3d 205 (2d Cir. 2004)...............................................................................16

*In re Mansville Forest Products Corp.*,
   896 F. 2d 1384 (2d Cir. 1990).........................................................................8, 19

*Meeropol v. Nizer*,
   505 F.2d 232 (2d Cir. 1974).................................................................................20

*Pecherski v. General Motors Corp.*,
   636 F. 2d 1156 (8th Cir. 1981*)* ..........................................................................14

*Rudersdal, EEOD v. Harris*, No. 1:18-cv-10072,
   2020 WL 5836517 (S.D.N.Y. 2020)....................................................................14

*S.E.C. v. Colello*,
   139 F .3d 674, 676 (9th Cir. 1998) ......................................................................14

*In re Saba Enterprises, Inc.*,
   421 B.R. 626 (Bankr. S.D.N.Y. 2009)..................................................................21

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*,
   521 F. Supp. 1046 (S.D.N.Y. 1981).................................................................6, 14

*Skyline Steel, LLC v. Pilepro, LLC*,
   2015 WL 999981 (S.D.N.Y. 2015).......................................................................18

ADMIN 63444409v6

**Statutes**

11 U.S. C. § 547(b)(1)-(5) .................................................................................21

11 U.S. C. § 548(a)(1)(B) ..................................................................................21

28 U.S.C. § 1409(a) ..........................................................................................19

28 U.S.C. § 1409(c) ..........................................................................................19

Bankruptcy Code section 546(a) .......................................................................13

Bankruptcy Code sections 547 and 548 ............................................................20

**Other Authorities**

Bankruptcy Rule 2004 ......................................................................................13

Bankruptcy Rule 9019 ......................................................................................12

Fed. R. Civ. P. 13 ........................................................................................16, 18

Federal Rules of Bankruptcy Procedure Rule 7013 ..........................................19

Peter Hurwitz, as Plan Administrator for Alpha Entertainment LLC (the "Plan Administrator"), responds in opposition to *Plaintiff's Emergency Motion to Enjoin Alpha from Circumventing the Court's Jurisdiction* [ECF No. 449] (the "Motion"), and states:

## I.   INTRODUCTION

In the Motion, Plaintiff Oliver Luck ("Luck") misstates the facts and law in an attempt to forestall the Plan Administrator's efforts to pursue avoidance action claims that are property of the Alpha Entertainment LLC ("Alpha") bankruptcy estate and can only be pursued by the Plan Administrator on behalf of the bankruptcy estate.  Avoidance action claims, including the claims brought against Luck, are being pursued to enhance the recovery to unsecured creditors of the bankruptcy estate, which consists largely of former players and coaches in the XFL football league.

Mr. McMahon neither controls, nor is he the principal beneficiary of, these avoidance action claims.  Further, the pursuit of these claims may adversely impact Mr. McMahon, since he guaranteed Luck's employment contract, and Luck says he will seek to hold Mr. McMahon liable for any amounts he is required to pay.  Thus, the notion that the Plan Administrator is somehow working in concert with Mr. McMahon by filing the avoidance action claims is a smoke screen and does not have a scintilla of truth.

After this Court ruled that Alpha was a necessary party to this case, Luck filed a Stay Relief Motion (as defined below) in Alpha's bankruptcy case seeking permission to name Alpha as a nominal defendant in this case.  In the Stay Relief Motion, Luck stated that "Alpha will be a party solely to determine whether Mr. Luck was properly terminated for cause under the Employment Contract for the sole purpose of allowing Mr. Luck to obtain a monetary judgment against Mr. McMahon under the Guaranty."  (Stay Relief Motion, at p 1-2)  Luck acknowledged he would not be asserting any claims against the bankruptcy estate and that naming Alpha as a nominal party

would in no way prejudice the bankruptcy estate.  Now, however, Luck seeks to prejudice the bankruptcy estate by preventing the Plan Administrator from pursuing claims that Luck has had notice of for some time.

Moreover, courts have uniformly recognized that a nominal defendant is not a real party in interest in the litigation.  *See, e.g., Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1047 (S.D.N.Y. 1981) (nominal parties have no real or direct interest in the controversy).  Alpha and Luck entered into an Agreed Order to this effect, which was entered by the bankruptcy court.  Nowhere in the Motion does Luck mention that Alpha was named, and has appeared solely, as a nominal defendant.  Rather than acknowledge Alpha's status as a nominal defendant, Luck falsely describes Alpha as "an active party to the lawsuit."  (Motion, p. 8).

In support of the proposition that Alpha is an active party in this proceeding, Luck points to a Stipulation[3] approved by the bankruptcy court where Alpha assigned non-bankruptcy claims held by the estate against Luck to Mr. McMahon. Under the Stipulation, Mr. McMahon has sole and exclusive authority to pursue and/or compromise those claims in this case.  In consideration for the assignment, Alpha is entitled to a share of any recoveries, but has no right to participate in or in any way control the litigation.  Expressly excluded from the claims assigned to Mr. McMahon are avoidance action claims arising under the Bankruptcy Code—including those asserted by the Plan Administrator in his complaint filed in the bankruptcy court—that are held by the bankruptcy estate.  Throughout the Motion, Luck characterizes Mr. McMahon's pursuit of the assigned claims, which the bankruptcy estate does not own, as efforts by Alpha to enforce its claims.  Luck wrongfully conflates Mr. McMahon's participation in these proceedings with Alpha.

---

[3] Alpha bankruptcy, ECF No. 532-1.

In a further attempt to mislead this Court, Luck characterizes the avoidance action complaint filed by the Plan Administrator in the bankruptcy case ("Bankruptcy Complaint") as an attempt to get a "second bite of the apple."  (Motion, p. 5).  This is untrue and his statement that the Bankruptcy Complaint is a "blatant attempt to revive" dismissed claims is not even colorable. (Motion, p. 5).  The Bankruptcy Complaint alleges constructive fraudulent transfer claims and a preference claim—claims that are "core" bankruptcy claims and fall squarely within the province of the bankruptcy court.

The fraudulent transfer claims are predicated on Luck and Alpha entering into an employment contract in 2018 that paid Luck excessive compensation  and did not provide Alpha with reasonably equivalent value.  The Bankruptcy Complaint seeks recovery of over $11 million based exclusively on those claims and does not assert a breach of contract action.  The Plan Administrator is entitled to recover under the fraudulent transfer and preference theories even if Luck's job performance was exemplary.  That said, the Plan Administrator has alleged that there were numerous shortcomings with Luck's performance.  These shortcomings address the issue of the value of services provided, and for purposes of these claims it does not matter whether these deficiencies provided grounds for termination. The allegations about Luck's lackluster performance demonstrate, among other reasons, why the compensation was unreasonable.

While the Plan Administrator is not fully versant with the issues in this litigation, it appears that a jury will be determining whether there was cause under the employment contract to terminate Luck on April 9, 2020.  The outcome of the litigation in this case has no bearing on the outcome of the fraudulent transfer claims.  Even if Luck was wrongfully terminated, he was still grossly overpaid so as to allow for the bankruptcy estate's recovery of all or a portion of Luck's compensation under a fraudulent transfer theory.  The monies  Mr. McMahon sought to recover

7

were for compensation paid to Luck for an approximate thirty day time period commencing in March 2020.  Mr. McMahon's claims now are limited to monies paid to Mr. Calloway, which damage claim does not seek recovery of monies paid to Luck.  Luck refers to claims raised by Mr. McMahon, who is a different party than the Plan Administrator, and these claims are predicated on a different transaction and involve different legal theories than those asserted by the Plan Administrator.  The claims asserted by Luck do not directly involve the bankruptcy estate, as Luck has acknowledged that he has not asserted and will not seek to recover any claims against Alpha.

The preference claim asserted against Luck is even more attenuated from the claims asserted in this case.  Because of Luck's position of control and the fact that Alpha was insolvent, Luck is liable for monies he received within one year of the date of the filing of Alpha's bankruptcy petition because, among other things, he received far more of a return on his claim than other unsecured creditors received.  The right of the bankruptcy estate to recover these funds is not remotely impacted by the outcome of this litigation.

Luck's argument that the avoidance action claims are somehow compulsory counterclaims is particularly egregious.  Alpha is a nominal party in this case and Luck has agreed that no monetary claims will be asserted against Alpha if he prevails on his claims. Luck fails to explain how Alpha, who has no direct financial interest in the outcome of Luck's claims, is required to assert bankruptcy claims it holds against Luck in this proceeding.  Mr. McMahon has no direct interest in the avoidance action claims nor does he have standing to bring those claims, which are the exclusive property of the Alpha bankruptcy estate.  Luck represented in the bankruptcy case that Alpha's participation in this case would not prejudice the bankruptcy estate yet that is precisely what he seeks to do by the relief sought in the Motion.  The Plan Administrator reserves the right

to seek appropriate remedies against Luck in the bankruptcy court on account of the actions he is now taking.

The notion that the Plan Administrator is seeking to circumvent this Court's jurisdiction is equally baseless.  There is a presumption that avoidance action claims should be filed in the court where the bankruptcy case is pending.  *In re Mansville Forest Products Corp*., 896 F. 2d 1384, 1391 (2d Cir. 1990).  The Plan Administrator filed the Bankruptcy Complaint at this time because of a pending statute of limitations deadline.  The Plan Administrator would have filed the Bankruptcy Complaint sooner but for Luck's failure to cooperate with respect to the Plan Administrator's investigation of the merits of the underlying bankruptcy claims.

The claims filed in this case involve different parties than those in the Bankruptcy Complaint as Alpha is not a real party in interest given its status as a nominal defendant; the outcome of the claims in this case will not determine any of the avoidance action claims; and the notion that the first to file rule is applicable is specious.  Accordingly, the Motion should be denied.

## II.       STATEMENT OF FACTS

### A.       The Court Orders Alpha be Joined in this Case as a Necessary Party

While the Plan Administrator is not a party to this litigation, he acknowledges that this Court stayed this case on June 6, 2020, until Alpha could be joined as a necessary party.  (Motion, p. 3).

### B.       Luck Seeks Relief from the Automatic Stay in the Bankruptcy Court to Join Alpha as a Nominal Defendant

On July 17, 2020, Luck filed Oliver Luck's *Motion for Relief from Stay to Join Alpha Entertainment LLC as Nominal Defendant in Pending Proceeding* ("Stay Relief Motion")[4] in the

---

[4] Alpha bankruptcy, ECF No. 295.

ADMIN 63444409v6

Alpha bankruptcy case that is pending in Delaware.  A copy of the Stay Relief Motion is attached

hereto as **Exhibit A**.  In the Stay Relief Motion, Luck moved for the following relief:

> Oliver Luck hereby moves for relief from the automatic stay, pursuant to 11 U.S.C.
> § 362(d)(1), to allow him to join Alpha Entertainment LLC ("Alpha") as a nominal
> defendant in the currently stayed proceeding between Oliver Luck and Vincent K.
> McMahon in the United States District Court for the District of Connecticut (the
> "District Court"), case number 3:20-cv-00516-VAB (the "Guaranty Action"), for
> the sole purpose of determining whether Alpha properly terminated Mr. Luck for
> cause to allow Mr. Luck to obtain and enforce a monetary judgment against Mr.
> McMahon for the approximately $23.8 million in compensation owed to him by
> Mr. McMahon under the Guaranty (as defined below).

Stay Relief Motion, p. 1.

Mr. Luck reiterated in the Stay Relief Motion that relief was sought solely to obtain a

monetary judgment against Mr. McMahon.  (Stay Relief Motion, p. 6, para. 11).

Mr. Luck represented that stay relief would not prejudice the bankruptcy estate or its

creditors:

> Cause exists to lift the stay to allow Mr. Luck to name Alpha as a nominal defendant
> in the Guaranty Action because Alpha will be a party solely to determine whether
> Mr. Luck was properly terminated for cause under the Employment Contract for
> the sole purpose of allowing Mr. Luck to obtain a monetary judgment against Mr.
> McMahon under the Guaranty. Even if Mr. Luck is succesful (sic) in obtaining a
> declaration that Alpha did not properly terminate him for cause, Mr. Luck will not
> be seeking to recover any monetary judgment against Alpha and will not be
> pursuing a claim in this case.  Because no recovery will be sought against Alpha,
> lifting the stay will not cause any prejudice to Alpha, its bankruptcy estate, or its
> creditors.

Stay Relief Motion, p. 1-2.

Mr. Luck further stated:

> 14.     Importantly, Mr. Luck does not seek to enforce any judgment against Alpha.
> The sole purpose of joining Alpha as a party in the Guaranty Action is to determine
> whether Alpha wrongfully terminated Mr. Luck so that he can recover against Mr.
> McMahon under the Guaranty.  Because Mr. McMahon is bound by an absolute
> guaranty of payment, Mr. Luck can collect from Mr. McMahon under the Guaranty
> without first attempting to collect from *Alpha.  American Oil Co. v. Valenti*, 179
> Conn. 349, 353 (1979) (that plaintiff nonsuited principal obligors is not a defense

to a guaranty of payment).  As Mr. Luck is not seeking to collect any judgment from Alpha or pursue a claim in this bankruptcy case, there is no risk to Alpha or its bankruptcy estate of "great prejudice" in being joined as a party in the Guaranty Action.

15.     The only burden that Alpha might bear for joining the Guaranty Action is the cost of participating in discovery and attending the proceedings…

Stay Relief Motion, p. 7, paras. 14, 15.

## C.     An Agreed Order is Entered in the Bankruptcy Case Granting Luck's Stay Relief Motion

On August 7, 2020, the bankruptcy court entered an *Agreed Order Granting Oliver Luck's Motion for Relief from Stay to Join Alpha Entertainment LLC in Connecticut Proceeding* ("Stay Relief Order").[5]  A copy of the Stay Relief Order is attached hereto as **Exhibit B**.  The Stay Relief Order provides in part:

> IT IS FURTHER ORDERED that, pursuant to section 362(d)(1) of the Bankruptcy Code, effective as of the Lift Stay Effective Date (defined below), the automatic stay is hereby lifted, for the sole purpose of allowing Oliver Luck to join Alpha as a defendant in the Guaranty Action for the sole purposes of (i) seeking a declaration of whether or not Alpha properly terminated Mr. Luck for cause under the Employment Contract (the "Declaratory Judgment Relief") and (ii) seeking a monetary judgment against Vincent K. McMahon under the Guaranty.

Stay Relief Order, at p. 1-2.

The Stay Relief Order resulted in the waiver of Luck's right to assert claims against the bankruptcy estate and provided for the Debtor bringing claims against Luck:

> IT IS FURTHER ORDERED that Mr. Luck shall not file a proof of claim against the Debtor or its estate and is hereby deemed to waive, and shall be forever barred from obtaining, any recovery against Debtor or its bankruptcy estate on account of any claim or claims (as defined in the Bankruptcy Code) against the Debtor or its bankruptcy estate in this bankruptcy case; provided, however, that Mr. Luck expressly reserves (i) the right to pursue the Declaratory Judgment Relief and (ii) any and all defenses to any claims that may be asserted against him by the Debtor, or its successor in interest, including, but not limited to, the defenses of set-off and/or recoupment.

---

[5] Alpha bankruptcy, ECF No. 355.

Stay Relief Order, at p. 2-3

**D.      An Order is Entered in the Bankruptcy Case Assigning the Estate's Non-Bankruptcy Claims to McMahon**

On November 17, 2020, the bankruptcy court entered an *Order, Pursuant to Sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving Settlement and Stipulation by and between the Debtor, the Official Committee of Unsecured Creditors of Alpha Entertainment LLC and Vincent K. McMahon* (the "Assignment Order").[6]   A copy of the Assignment Order is attached hereto as **Exhibit C**.  The Assignment Order approved a Stipulation that provided for the assignment of non-bankruptcy claims to Mr. McMahon, and expressly excluded avoidance action claims from the assigned claims.  The Stipulation provides:

> 1.      Upon the entry of an order by the Bankruptcy Court approving this Stipulation on the docket (the "Effective Date"), and subject to the terms hereof, the Debtor hereby assigns all of its claims against Luck arising from or related to the Connecticut Action to McMahon (collectively, the "Estate Claims"); *provided, however*, that Estate Claims shall not include recovery actions under sections 105(a), 502(d), 510, 542 through 551 and 553 of title 11 of the United States Code.

The Stipulation further provides that in consideration for the assignment, the Debtor would receive 67% of any collected recovery.  (Stipulation, ¶ 3).  Mr. McMahon was vested with sole authority over the assigned claims.  Stipulation, ¶4 ("McMahon shall have the sole authority to compromise the Estate Claims without further notice to, or Order of, the Bankruptcy Court.")

**E.      The Plan Administrator Investigates Potential Avoidance Action Claims against Luck**

The Plan Administrator served Bankruptcy Rule 2004 document requests on Luck in May 2021 to ascertain whether there was a basis to bring avoidance action claims against him.  Luck insisted upon the entry of protective order as a condition of producing documents and the parties secured entry of a protective order from the bankruptcy court in a form that mirrored the protective

---

[6] Alpha bankruptcy, ECF No. 532.

order previously entered by the Court in this action. Luck did not begin to produce documents until around September 2021, and only produced a limited number of documents, almost all of which were text messages that were non-responsive to the requests. Luck then produced a privilege log in mid-January 2022 and did not produce additional documents until that time. The Plan Administrator sought from Luck deposition transcripts and discovery responses from this case. Luck took the position that they could not be produced in light of protective orders entered by this Court in this case. To date, save for one transcript Luck produced, the Plan Administrator has not seen any of this discovery. Thus, the notion that the Plan Administrator is a party to this proceeding is a newly minted argument by Luck in a further attempt to forestall assertion of avoidance action claims against him.

**F.      The Bankruptcy Complaint is Filed**

Under section 546(a) of the Bankruptcy Code, there is a two-year statute of limitations to bring avoidance action claims. The Alpha bankruptcy case was filed on April 13, 2020. After failed attempts at settlement, the Plan Administrator filed the Bankruptcy Complaint in the bankruptcy court in Delaware where the Alpha case is pending on April 11, 2022—shortly before the expiration of the statute of limitations. A copy of the Bankruptcy Complaint is attached as Exhibit 1 to the Motion.

## III.      ARGUMENT

**A.      Alpha is a Nominal Defendant in this Case And is Not A Real Party in Interest in the Proceeding**

As is evident form the Stay Relief Motion and Agreed Order approving same, Luck only sought to have Alpha joined as a nominal defendant and the bankruptcy court allowed limited stay relief on that condition. The characterization of a party as a nominal defendant is of import since while technically a party to the proceeding, they are not considered a party for diversity purposes

13

nor are they considered a real party in interest in the litigation.  As explained in *Saxe, Bacon & Bolan, P.C., v. Martindale-Hubbell, Inc.,* 521 F. Supp 1046, 1048 (S.D.N.Y 1981): "A party to an action is nominal  or formal if no cause of action or claim for relief is or could be stated against him or on his behalf, as the case may be."

Numerous courts have recognized this fact.  *See, e.g.*, *S.E.C. v. Colello*, 139 F .3d 674, 676 (9th Cir. 1998) ("The paradigmatic nominal defendant is "a trustee, agent, or depositary ... [who is] joined purely as a means of facilitating collection."  *Id.*  (internal quotations and citation omitted).  As the nominal defendant has no legitimate claim to the disputed property, he is not a real party in interest.  *Id.*  Accordingly, "there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction of the defendant is established."); *Rudersdal, EEOD v. Harris*, No. 1:18-cv-11072, 2020 WL 5836517 at *9 (S.D.N.Y. Sept. 30, 2020) ("by definition, a nominal defendant is one against whom no relief can be sought"); *Pecherski v. General Motors Corp.*, 636 F. 2d 1156, 1161 (8th Cir. 1981*)* (no relief is sought against nominal parties).

The notion of adding a debtor as a nominal defendant in non-bankruptcy litigation is commonplace.  For example, relief from the automatic stay is sought to allow debtors to be named in non- bankruptcy litigation in order to pursue an insurance carrier.  Likewise, a debtor who has been the subject of a discharge injunction is allowed to be named in order to allow a creditor to pursue a claim against other parties where the debtor would otherwise be a necessary party to the litigation.  This proposition was recognized by Luck in the Stay Relief Motion, as he provided the bankruptcy court with the following authorities in order to justify stay relief:

> Courts in other jurisdictions generally grant relief from the automatic stay when the movant does not seek to recover from the debtor, but only seeks relief from the stay because the debtor is a necessary party in the movant's claim against a third party.[3]

14

[3] See In re *Podmostka*, 527 B.R. 51, 53-55 (Bankr. Mass. 2015) (granting relief from the stay to allow nominal participation of the debtor to allow the creditor to seek recovery solely from the debtor's insurance carrier); *Prince v. CMS Wireless LLC*, 2012 U.S. Dist. LEXIS 39335, 12-14 (Bankr. E.D. Tex. Mar. 22, 2012) (finding cause to lift the stay because the debtor was a necessary party under state law, the creditor stipulated it would not collect a judgment from the debtor, and the bankruptcy court's order prevented the creditor from collecting on a judgment against the debtor); *Matter of Holtkamp*, 669 F.2d 505, 508-09 (7th Cir. 1982) (affirming bankruptcy court's order to lift stay for appellee to pursue personal injury suit when insurance company assumed full financial responsibility for defending the litigation, the court's order prohibited the state court plaintiff from enforcing a judgment against the debtor, trial date had been set, and the state court action did not require the expertise of the bankruptcy court); *In re Paone*, 401 B.R. 151, 153 (Bankr. M.D. Pa. 2009) (lifting stay when the participation of the debtor, who was a joint tortfeasor, in state court litigation was necessary under state law to determine the amount of damages a creditor was obligated to pay the state court plaintiff).

Stay Relief Motion, ¶ 20.

Given Alpha's status as a nominal defendant, the notion that it is required to bring avoidance action claims in this proceeding, where the Court is determining Mr. McMahon's liability under a guaranty for monies never paid to Luck under his employment contract and therefore incapable of being the subject of an avoidance action claim, is groundless.

**B.     The Avoidance Action Claims Are Not Compulsory Counterclaims**

Even a cursory reading of Fed. R. Civ. P. 13 ("FRCP") demonstrates that the avoidance action claims are not compulsory counterclaims.  FRCP 13 (a)(1) provides in pertinent part:

> (1) In General. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

In this case, Luck, the opposing party, filed claims seeking solely a remedy against Mr. McMahon and expressly agreed that no claims would be asserted against Alpha.  Alpha was only

named as a nominal defendant in Luck's complaint. As such, it was not a "pleader" and the rule is not applicable. The position being taken by Luck is entirely inconsistent with the representations he made to the bankruptcy court and upon which Alpha and the Creditors' Committee in that case relied when entering into the Agreed Order. Alpha's agreement to be named as a nominal defendant cannot result in the loss of its right to pursue unrelated avoidance action claims in the bankruptcy court. The counterclaim must arise out of the transaction or occurrence of a claim against the pleader. *Jones v. Ford Motor Credit Co.*, 358 F. 3d 205, 209 (2d Cir. 2004).

Separate and apart from this deficiency, the avoidance action claims do not arise out of the transaction or occurrence that is the subject of Luck's claim. Luck contends he was wrongfully terminated in 2020 and seeks damages for wages he would have earned had he continued to be employed. The preference claim asserted in the Bankruptcy Complaint is based solely on the fact that Luck received payments from Alpha within one year of the filing of the bankruptcy petition. Whether Luck performed his duties during that time period has no bearing on the claim, and Luck's entitlement to future wages has no bearing on this claim. The fraudulent transfer claims are predicated on Luck and Alpha entering into an employment contract in 2018 which provided for excessive compensation, and seeks recovery from the time that Luck was employed in 2018 through the time he was terminated. They do not involve any determinations about Luck's right to future wages, and whether Luck is entitled to future wages has no bearing on the merits of the fraudulent transfer claims. While the fraudulent transfer claims make reference to shortcomings in Luck's job performance, whether these shortcomings had any bearing on the right of Alpha to terminate Luck are wholly irrelevant to the enforcement of these claims.

The mere fact that an employment contract is involved is irrelevant. Under far less attenuated circumstances, courts have held that federal claims arising from an employment

16

relationship are not compulsory counterclaims when state law claims under the employment contract have been asserted. *See, e.g., Johnson v. Corporate Express, Inc*., No. 20-CV-4627, 2022 WL 992633 at *3 (E.D.N.Y. March 31, 2022) ("Courts in this circuit have routinely found that 'the employment relationship itself is insufficient to create a common nucleus of operative fact between a FLSA claim and a state law, non-wage claim.' *Figurowski v. Marbil Invs., LLC*, No. 14-CV-7034, 2015 WL 4000500, at *3 (E.D.N.Y. July 1, 2015) (quotation and citations omitted) (collecting cases); see also *Torres*, 628 F. Supp. 2d at 468 ('[T]he employment relationship does not establish a 'common nucleus of operative fact' where it is the sole fact connecting Plaintiffs' federal overtime claims and [Defendants'] state law counterclaims.')"). The Plan Administrator has not found any authority that even suggests that avoidance action claims are required to be asserted in response to a creditor's claim for monies it has not received. Luck fails to cite any such authority in the Motion.

Rather, in support of his argument that the claims in the Bankruptcy Complaint should have been asserted as a compulsory counterclaim, Luck cites a single case, *Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991), which is not remotely relevant to the facts of this case. In *Adam*, there were disputes between the sellers and purchasers of a company. The purchasers and a guarantor of the purchase obligation brought suit in district court in Michigan alleging they were fraudulently induced to make the purchase and sign the sale documents, including the guarantee. The sellers brought a separate action in district court in New York against the guarantor. The guarantor appealed a judgment entered against him in the New York action contending that the claims under the guarantee should have been brought as a compulsory counterclaim in the Michigan suit. After noting that the sellers' claims would be asserted as counterclaims in the Michigan suit, the court

17

of appeals vacated the judgment.  Unlike *Adam*, this case does not involve any claims for recovery being asserted by Luck against Alpha.

Given that there is no basis to find that the claims in the Bankruptcy Complaint are compulsory counterclaims, the filing of the Bankruptcy Complaint did not violate FRCP 13.  Even if the avoidance action claims could be considered compulsory counterclaims, the filing of the Bankruptcy Complaint did not violate FRCP 13.  As explained in *Skyline Steel, LLC v. Pilepro, LLC*, 2015 WL 999981 at *6 (S.D.N.Y. 2015):

> When a party files claims in a later action that are compulsory counterclaims in an earlier-filed action, that party "technically has not violated Rule 13(a)," because "[n]othing in Rule 13 prevents the filing of a duplicative action [or counterclaim] instead of a compulsory counterclaim." *Adam*, 950 F.2d at 93. Nevertheless, such a practice "does contravene the purpose of the Rule in that it creates a multiplicity of actions, wastes judicial resources, and unduly burdens the litigation process." *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 490 (S.D.N.Y.1995). Accordingly, "[i]deally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action." 6 C. *Wright, A. Miller & M. Kane*, Fed. Prac. & Proc. Civ. § 1418 (3d ed.).

If Luck were correct, and he most certainly is not, the remedy he seeks of enjoining the Bankruptcy Complaint from proceeding until this case is concluded would improperly prejudice the Plan Administrator—and the bankruptcy estate and its creditors—unless the Court allowed the Plan Administrator to proceed with his claims thereafter either in the bankruptcy court or this Court.  Such an outcome would also be consistent with Rule 7013 of the Federal Rules of Bankruptcy Procedure, which provides in part:  "A trustee or debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action."

**C.     Venue of the Bankruptcy Complaint is Proper in Delaware**

Under 28 U.S.C. § 1409(a), the district court in which the bankruptcy case is pending is the proper venue to commence an avoidance action claim. Courts have recognized that there is a presumption that suits by the debtor be filed in the home bankruptcy court. *In re Mansville Forest*, 896 F. 2d at 1391. There is no question that the Bankruptcy Complaint was filed in a proper venue.

Without citation to any case authority, Luck says in a footnote that the Bankruptcy Complaint could have been filed in this Court under 28 U.S.C. § 1409(c). Motion, p. 11, n. 4. That statute is limited to a proceeding "arising in" or "related to" such case. Claims brought under Bankruptcy Code sections 547 and 548, however, "arise under" title 11 and are not covered by that statute. *In re Guilmette*, 202 B.R. 9, 11 (Bankr. N.D.N.Y. 1996) (preference claim arises under title 11 for purposes of section 1409(b)); *In re Petland Discounts, Inc.*, No. 20-08088, 2021 WL 153793 at *6 (Bankr. E.D.N.Y. Jan. 26, 2021) (preference action); *In re Agriprocessors, Inc*., 479 B.R. 835, 842 (Bankr. N.D. Iowa 2012*)* (fraudulent transfer claim).

**D.      The First Filed Rule Does Not Apply**

While Luck cites to the first filed rule, even a rudimentary application of its principles to this proceeding demonstrates its inapplicability. The Second Circuit has stated that:

> It is well-established, then, that "when a case is brought in one federal district court [and the complaint] embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case."

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F. 3d 699, 722-23 (2d Cir. 2010) (citations omitted).

In order for the rule to apply, the complaints must involve the same transactions. This is underscored by the cases Luck cites. In *Meeropol v. Nizer*, 505 F.2d 232 (2d Cir. 1974), a subsequent action was commenced under the same theories as those asserted in the original action. In *City of New York v. Exxon Corp*., 932 F.2d 1020, 1025 (2d Cir. 1991), a CERCLA complaint

was pending against the debtor at the time it filed bankruptcy and the debtor sought to have the same claims resolved by the bankruptcy court.  After finding that the claims fell within an exception to the automatic stay since they involved enforcement of the City's police powers, the court enjoined the debtor from having those claims adjudicated in the bankruptcy court.  Thus, the case involved resolution of identical issues and claims.

The Bankruptcy Complaint does not raise the same transactions or same issues that are involved in this case. Nor do they even involve the same parties since Alpha is only a nominal defendant in this case. In order to prevail on the preference claim, the Plan Administrator must demonstrate that (1) there were payments to Luck (which payments are not in dispute); (2) that the payments were made on account of an antecedent debt; (3) at a time when Alpha was insolvent; (4) made within one year of the filing of the bankruptcy petition; (5) that resulted in Luck receiving more money than other general unsecured creditors.  11 U.S. C. § 547(b)(1)-(5).  None of these issues are raised in this proceeding nor are the same transactions involved since this claim involves payments dating back to April 2019.

In order to prevail on the fraudulent transfer claims, the Plan Administrator must demonstrate from and after the date the employment contract was executed in 2018, (1) that payments were made within two years of the filing of the bankruptcy petition; (2) that Alpha made the payments; (3) that Alpha (i) was insolvent at the time the employment contract was executed and/or payments were made or was rendered insolvent as a result of same; or (ii) was engaged in business or was about to engage in business for which its remaining property constituted unreasonably small capital; or (iii) intended to incur debts beyond its ability to pay as they matured; and (4) that Alpha received a lack of reasonably equivalent value in exchange for the payments to Luck.  11 U.S. C. § 548(a)(1)(B); *In re Saba Enterprises, Inc.*, 421 B.R. 626, 645 (Bankr. S.D.N.Y.

20

2009). These issues are likewise not resolved in this case nor are the transactions the same, as the fraudulent transfer claims are predicated upon Luck and Alpha entering into an employment contract in 2018 and payments made from and after the date the parties entered into the contract. To contend that the resolution of these issues and transactions are identical to the issues and transactions that will be resolved in this case is not a colorable argument.

In an effort to support his position, Luck raises five points, none of which are remotely correct. First, he says both proceedings are based, "in substantial part, on Mr. Luck's: (1) hiring and firing of Antonio Callaway; (2) personal use of the iPhone; (3) alleged sharing of confidential information; and (4) alleged abandonment of his XFL duties after March 13, 2020." Motion p. 8 This is simply untrue. None of these facts have anything to do with the preference claim. The fraudulent transfer claims will examine, among other things, whether the compensation that Alpha agreed to pay Luck in 2018 was for reasonably equivalent value and Alpha's solvency. The fact that the fraudulent transfer claims mention these deficiencies in no way supports Luck's contention that the claims are based in substantial part on these allegations. They are not. The Plan Administrator can prevail on the fraudulent transfer claims even if Luck is blameless with respect to these items.

Second, Luck states that he and the court would be burdened with repeating the discovery and pre-trial motion stages of litigation, and there would be a risk of inconsistent decisions. Motion, p. 8 This is also largely untrue. While the Plan Administrator has not been provided with most of the discovery in this case, it is his understanding that the focus was on whether there was cause to terminate Luck in April 2020. The discovery for the preference claim will focus on Alpha's solvency and whether Luck received more monies than other unsecured creditors. Neither of these matters should have been the subject of discovery in this case. The discovery for the

fraudulent transfer claims will focus on compensation paid to other executives in 2018 for performing tasks similar to those performed by Luck and the quality of the services he provided during the entirety of his employment.  While there may be a minor duplication with respect to the latter stages of Luck's employment, this cannot be said to be entirely rehashing the discovery conducted in this case.  Rulings in this case, pretrial or at trial, have no bearing on the avoidance action claims and Luck provides no explanation how rulings on the avoidance action claims could be inconsistent with rulings this Court will make.  Further, as a practical matter, trial is scheduled in this case in July and there will not be dispositive rulings in the bankruptcy case by that time.

Third, Luck says that Alpha voluntarily appeared before this Court and agreed to stay relief. Motion, p. 9.  Luck fails to note that Alpha acquiesced only after Luck represented that Alpha would be a nominal defendant and that there would be no prejudice to the bankruptcy estate.  No such consent would have been given had Luck's true intentions been made known.  The position being taken by Luck violates the conditions of the Agreed Order entered by the bankruptcy court.

Fourth, Luck contends that that the assignment of Alpha's non-bankruptcy claims to Mr. McMahon should not require him to litigate in two different forums.  Motion, p. 10.  The assignment did not trigger this result.  Luck commenced this action against Mr. McMahon in this forum.  The avoidance action claims are totally different from the claims asserted by Mr. McMahon and Luck would have to defend them in the Delaware bankruptcy court regardless of whether there had been an assignment.  Luck's contention that the issues are identical is false.  The fact that he will join Mr. McMahon in the bankruptcy court litigation is of no moment since Luck will be seeking to be reimbursed for claims that involve past compensation that he was paid; the litigation before this Court will determine if Mr. McMahon is responsible for paying wages Luck never received.

Finally, Luck says that the claims involve attempts to recover the same compensation that Luck received.  This is untrue.  The Bankruptcy Complaint seeks recovery of all compensation received by Luck from 2018 forward, well over $11 million. Mr. McMahon sought only approximately one  month of payments Luck received in 2020.  Mr. McMahon currently seeks to recover only the monies Alpha paid to Mr. Calloway, which monies are not being sought by the Plan Administrator.  Even if Luck had been required to pay the one month of compensation that was being sought by Mr. McMahon, those sums would not be sought in the Bankruptcy Complaint as the Plan Administrator acknowledges that there can be no double recovery from Luck.

## IV. CONCLUSION

The Motion is groundless.  Luck failed to set forth pertinent facts, mischaracterized the claims at issue, and misstated the law.  For the foregoing reasons, the Plan Administrator respectfully requests that the Motion be denied.

GREENBERG TRAURIG, LLP

/s/ Toby S. Soli
Toby S. Soli, CT-18697
445 Hamilton Avenue, 9th Floor
White Plains, New York 10601
Tel: 212.801.3196
Fax: 212.801.6400
Email: solit@gtlaw.com

and

Howard J. Steinberg (*Pro Hac Vice Pending*)
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Tel:  310.586.7700
Fax: 310.586.7800
Email: steinbergh@gtlaw.com

*Attorneys for Peter Hurwitz,*
*Plan Administrator of Alpha Entertainment LLC*