**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON and ALPHA ENTERTAINMENT, LLC | § | |
| | § | |
| | § | April 27, 2022 |
| *Defendants.* | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION TO ENJOIN DEFENDANT ALPHA FROM CIRCUMVENTING THE COURT'S JURISDICTION**

Alpha's[1] Opposition, ECF 453, is disingenuous in the extreme and detached from reality. Importantly, Alpha directly admits that if the Court allows it to proceed with its bankruptcy claims ***after this case is concluded,*** "either in the bankruptcy court or this Court," then the Plan Administrator, the bankruptcy estate, and its creditors will not be improperly prejudiced. Opposition at 18. Mr. Luck agrees that, at a minimum, this Court should enjoin Alpha and its Plan Administrator from pursuing claims in the Bankruptcy Court until a final judgment is rendered in this case. ECF 448-1 (the "Memorandum in Support") at 2, 8, 10, and 13.

Alpha's argument that it is not a "real party" in this case as it is just a "nominal defendant" is, quite simply, made in bad faith. Opposition at 13. While Alpha is a nominal ***defendant*** (in that Mr. Luck seeks no monetary relief against it), Alpha is certainly not a nominal ***counterclaim plaintiff***, and has extensively participated in this case in that capacity. Regardless of Alpha's

[1] Naming the Opposition the "Opposition of Peter Hurwitz, Plan Administrator of Alpha Entertainment LLC" does not magically change the Opposition from being Alpha's. The Plan Administrator acts on behalf of and in the name of Alpha and advances Alpha's claims, defenses, and arguments. Mr. Hurwitz cannot act for Alpha in any capacity other than as its Plan Administrator. Additionally, the Opposition does not deny that the Plan Administrator and Alpha are the same party. Therefore, as shown in footnote 1 of Mr. Luck's Memorandum in Support, "Alpha and the Plan Administrator are one and the same."

ORAL ARGUMENT REQUESTED

originally intended role, there can be no question that it is now a real party-in-interest in this case. Had Alpha's bankruptcy counsel simply consulted with Alpha's trial counsel in this case, it would have quickly learned that Alpha's argument is patently false. In fact, had Alpha's counsel simply reviewed the Court's docket sheet for this case, it should have realized that Alpha is an active participant in this case.

Alpha's second argument, regarding compulsory counterclaims, is also without merit. Opposition at 15. Alpha's bankruptcy claims do not need to be compulsory counterclaims for the "first filed" rule to apply. The fact that Alpha's bankruptcy counterclaims are compulsory counterclaims is only being offered as an additional reason why it should not be permitted to proceed with an entirely new lawsuit.

Alpha's third argument, regarding venue for its bankruptcy claims in Delaware, is a red herring. Opposition at 19. Mr. Luck does not dispute that venue is proper in Delaware, but venue is also proper in Connecticut. Alpha could and should have brought its claims in this Court where litigation had already begun between the same parties and regarding the same issues.

Alpha's final argument, that Alpha's counterclaims in this Court and its bankruptcy claims are not identical, is of no moment. Opposition at 19. The claims do not need to identical for the "first filed" rule to apply. Rather, the claims only need to "embrace the same issues."

**A. Alpha relinquished its "nominal defendant" status through its extensive participation in this litigation.**

Alpha's bad faith, unrelenting claim that it is a "nominal" defendant and thus "not a real party in interest" is astonishing considering Alpha's posture in this case to date:

- Alpha filed counterclaims, ECF 153, and admits it will receive 67% of any collected recovery on its counterclaims even though Alpha entered into a stipulation to allow Mr. McMahon to bring the claims. Opposition at 12.

- Alpha filed its own Answer, ECFs 339 and 341, with affirmative defenses that have not been assigned to Mr. McMahon. Though Mr. McMahon has been given the right to

"undertake" the defenses at his sole cost and expense, he has not been assigned the exclusive authority to compromise Alpha's defenses. See ECF 453-3 ¶¶ 2 & 4. Therefore, the defenses that Alpha has been asserting still belong to Alpha.

- Alpha, and not Mr. McMahon, sought a prejudgment remedy on its claims. ECFs 127 and 128.

- Not including the Opposition, Alpha has actively participated in 93 filings in this case, whether by filing on its own or jointly with its co-defendant Mr. McMahon. *See* ECFs 97 through 450.

- Alpha served its own discovery requests, including: seventy (70) requests for admission on its own and an additional two-hundred thirteen (213) requests for admission together with Mr. McMahon; forty-one (41) requests for production (Request No. 36 appears twice); twenty-one (21) interrogatories; and, together with Mr. McMahon, issued at least seven (7) subpoenas for the production of documents or deposition testimony. Ex. 1 ¶ 5.

- Alpha is the only defendant that prepared and served a damages analysis stating that it was owed "at least $572,792.10." ECF 404-8. Of that amount, Alpha alleges that $384,615.38 is owed for payments made to Mr. Luck under his Employment Contract. *Id.*

Alpha relies upon the following quote from *Saxe, Bacon & Bolan, P.C., v. Martindale-Hubbell, Inc.*, 521 F. Supp 1046, 1048 (S.D.N.Y 1981) (emphasis added): "A party to an action is nominal or formal if no cause of action or claim for relief is or could be stated against him ***or on his behalf***, as the case may be." By that definition, Alpha relinquished its nominal defendant status when it filed counterclaims as a "claim for relief [was]…stated…on [its] behalf."

Alpha attempts to mislead the Court by arguing that Mr. Luck reneged on his statements made in his Motion for Relief filed in the Bankruptcy Court that Alpha's bankruptcy estate would not be prejudiced. Opposition at 10-11. As stated in the Agreed Order, Mr. Luck's Motion for Relief was granted:

> "for the sole purpose of allowing Oliver Luck to join Alpha as a defendant in the [this case] for the sole purposes of (i) seeking a declaration of whether or not Alpha properly terminated Mr. Luck for cause under the Employment Contract … and (ii) seeking a monetary judgment against Vincent K. McMahon under the Guaranty."

ECF 453-2 at 2-3. Mr. Luck moved to join Alpha as a nominal defendant solely to have Alpha's *defenses* to Mr. Luck's claims litigated. ***It was Alpha that decided to pursue counterclaims,***

removing its "nominal" status and making it an active party to this case.

Alpha attempts to avoid this issue by arguing that Mr. McMahon is the party bringing the counterclaims and Mr. Luck simply "conflates Mr. McMahon's participation in these proceedings with Alpha." Opposition at 6 and 8. Alpha may have assigned these claims to Mr. McMahon, but, in line with the Stipulation and Assignment, the claims have been brought in Alpha's name. *See* ECF 153 (Alpha's, not Mr. McMahon's, counterclaims) and ECF 453-3 at 6 ¶ 2 ("McMahon agrees to assert the Estate Claims on behalf of, and in the name of, Alpha Entertainment LLC"). In fact, the only reason Alpha is a party to this case is because Mr. McMahon argued that Alpha was a necessary party to this litigation. ECF 50 at 22. Alpha was then joined as a party and has actively participated in litigation since December 4, 2020. ECF 97. After over sixteen months of litigation, to now say that "Alpha hasn't really been a party to this lawsuit, it's all just been McMahon," is more than disingenuous.[2]

But, if we take Alpha's latest claim at its face, then all of the counterclaims and defenses in this case should be dismissed because, under the Guaranty, Mr. McMahon is not able to assert any claims or defenses against Mr. Luck. ECF 145-1 at 7 ¶ 2 (waiving all of Mr. McMahon's defenses and counterclaims). If the Court were to decide that McMahon is the "actual" party bringing the claims and defenses, then the Court should grant summary judgment in favor of Mr. Luck on all claims and defenses because Mr. McMahon has waived all claims and defenses under the Guaranty. Otherwise, Alpha and McMahon would be permitted to say, on the one hand, that Alpha has claims and defenses against Mr. Luck (to avoid liability), while also saying, on the other

[2] The agreement by which Alpha assigned certain claims to Mr. McMahon should not be used to impair Mr. Luck's rights, nor should it be used an excuse for Alpha to avoid its obligations under the "first filed" rule, scheduling orders previously entered by this Court, or the Federal Rules of Civil Procedure.

hand, that Mr. McMahon is the actual party bringing the claims (to avoid an injunction).[3]

**B. The "first filed" rule applies.**

Alpha argues that its bankruptcy claims are not compulsory counterclaims. Opposition at 15-18. The Court does not need to find that the counterclaims are compulsory to apply the "first filed" rule. For the "first filed" rule to apply, the Court need only find that the claims "embrace the same issue." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) (quoting *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974), and *William Gluckin & Co. v. International Playtex Corp*., 407 F.2d 177, 178 (2d Cir. 1969)) (internal quotation marks omitted). The fact that Alpha's bankruptcy claims are compulsory counterclaims is only being offered as an additional consideration for why Alpha should not be permitted to proceed with an entirely new lawsuit while this one is pending.

As shown in Mr. Luck's initial Memorandum in Support, Alpha's bankruptcy claims and its counterclaims in this Court embrace the same issues. Memorandum in Support at 8. Alpha argues that Mr. Luck's "shortcomings" are relevant to its bankruptcy claims without approaching the issue of Alpha's wrongful termination. Opposition at 7 and 16. Alpha's Bankruptcy Complaint specifically lists Mr. Luck's hiring and firing of Antonio Callaway, alleged sharing of confidential information, personal use of his Alpha-issued iPhone, and work performance from March 13, 2020 through April 9, 2020, which the Opposition paraphrases as "shortcomings" in a clear attempt to avoid listing the same baseless grounds that this Court has heard from the Defendants for the last

[3] The Opposition complains about the documents Mr. Luck has ***voluntarily*** produced in response to the Plan Administrator's request before Alpha initiated its bankruptcy Complaint. Mr. Luck has produced his text messages and emails from his personal email accounts, i.e., the documents in Mr. Luck's possession, during the relevant time period. Mr. Luck has not produced documents produced in this litigation by Alpha, such as emails sent or received from Mr. Luck's XFL email address, because those documents are in Alpha's possession and the majority of which have been produced to Mr. Luck under a confidentiality designation. Mr. Luck did not produce certain requested briefs filed with this Court because they are sealed pursuant to the Court's Orders.

two years. Alpha admits, however, that the alleged shortcomings are relevant to its bankruptcy claims because they will be litigated to determine the "value of services [Mr. Luck] provided [Alpha]" and "demonstrate why the value of Mr. Luck's services was unreasonable." Opposition at 7. In short, Alpha's Bankruptcy Complaint sets forth the same grounds as Alpha's Amended Counterclaims, *see* Memorandum in Support at 8, but Alpha now downplays its inclusion of those grounds because they are unfavorable to Alpha's opposition.

Alpha attempts to bolster its argument by listing elements for its bankruptcy claims that do not include Mr. Luck's job performance. Opposition at 20. As Alpha admits, however, Mr. Luck's job performance would be at issue in the bankruptcy adversary proceeding, if allowed to proceed, on both the preference count (Count III) and the fraudulent transfer counts (Counts I and II) as an element of Mr. Luck's defenses. *See* Opposition at 8. In particular, Mr. Luck would have an affirmative defense to the preference claim under 11 U.S.C. 547(c)(4), based on the value of the services Mr. Luck rendered to Alpha after each allegedly preferential transfer was received. In addition, Mr. Luck's services to Alpha would also be at issue in the constructive fraudulent transfer counts because those counts require Alpha to prove that it did not receive reasonably equivalent value in exchange for Mr. Luck's compensation. *See* 11 U.S.C. 548(a)(1)(B)(i); Del. Code Ann. tit. 6, § 1304. Further, Mr. Luck would have affirmative defenses to the constructive fraudulent transfer claims that directly relate to the value of the services he provided under 11 U.S.C. 548(c) and Del. Code Ann. tit. 6, § 1308(d).

Alpha concedes in the Opposition that Alpha's bankruptcy estate and its creditors would only be improperly prejudiced if the Court does not allow the Plan Administrator to proceed with his claims after this case is concluded. Opposition at 18. Therefore, at a minimum, the Court should enjoin Alpha from pursuing its bankruptcy claims until after the conclusion of this case.

**C. Alpha's bankruptcy claims could (and should) have been brought in this Court.**

Alpha most assuredly could have brought the claims included in its Bankruptcy Complaint in this Court. Count I of the Complaint alleges a fraudulent transfer claim as statutory successor to Alpha's avoidance powers under 11 U.S.C. § 544(b), which is squarely within 28 U.S.C. § 1409(c). *See, e.g., In re Enron Corp.*, 317 B.R. 701, 704-05 (Bankr. S.D. Tex. 2004) (holding that venue was proper in Southern District of Texas when bankruptcy case was pending in Southern District of New York because fraudulent transfer claim under 11 U.S.C. § 544(b) was within alternative venue provision in § 1409(c)). Even if one were to assume, *arguendo*, that § 1409(c) was not applicable to the other counts in the Complaint, given the factual and legal overlap in the other counts, venue would have still been proper in this court under the doctrine of pendent venue. *See, e.g., Hsin Ten Enter. USA, Inc. v. Clark Enterprises, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000)* ("[u]nder the doctrine of pendent venue, 'a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie'"); *Rodriguez v. Chandler*, 641 F. Supp. 1292, 1302 (S.D.N.Y. 1986) ("[y]et given the propriety of venue over the Title VII claims, this Court may also exercise venue over plaintiff's factually related claims under § 1981 and § 1983. Whether to apply such 'pendent venue' is a discretionary decision, based on considerations of judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation, and fairness to the litigants. Pendent venue has often been used in cases in which venue over one claim is already established under a specialized venue statute."), *aff'd*, 841 F.2d 1117 (2d Cir. 1988); *see also In re Enron Corp.*, 317 B.R. at 706 (holding that committee's claims under 11 U.S.C. §§ 547 and 548 could be properly venued in the Southern District of Texas where joined to a claim under § 544(b) for which Southern District of Texas had venue under § 1409(c)).

## CONCLUSION

For judicial economy, efficiency and to avoid inconsistent rulings, the Court should grant Plaintiff's Emergency Motion to Enjoin Defendant Alpha from Circumventing the Court's Jurisdiction and enjoin Alpha from pursuing claims in the Bankruptcy Court. At a minimum, this Court should enjoin Alpha from pursuing claims in the Bankruptcy Court until after this Court has rendered a final judgement in this case.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*_/s/ Paul J. Dobrowski_*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, LLP.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

*_/s/ Andrew M. Zeitlin_*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2022, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Paul J. Dobrowski*