**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON and | § | |
| ALPHA ENTERTAINMENT, LLC | § | |
| | § | June 3, 2022 |
| *Defendants.* | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE**

Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

***ATTORNEYS FOR PLAINTIFF OLIVER LUCK***

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................... ii

Table of Authorities ...................................................................................................................... iii

I.       INTRODUCTION ................................................................................................................ 1

II.      BASES FOR *IN LIMINE* RULINGS .................................................................................. 2

    A.  ARGUMENT OR EVIDENCE REGARDING DEFENDANTS' DIRECTIVES OR McMAHON'S PRE-APPROVAL REGARDING PLAYERS OTHER THAN ANTONIO CALLAWAY SHOULD BE EXCLUDED .............................................. 2

    B.  ARGUMENT OR EVIDENCE REGARDING OTHER PLAYERS IN AN ATTEMPT TO EXPLAIN THE MEANING OF "XFL POLICIES OR DIRECTIVES" OR "LAWFUL INSTRUCTIONS OF MR. McMAHON" SHOULD BE EXCLUDED. .................................................................................................... 5

    C.  ARGUMENT OR EVIDENCE CONCERNING PAROL EVIDENCE OF COURSE OF PERFORMANCE SHOULD BE EXCLUDED. ..................................................... 6

    D.  ARGUMENT OR EVIDENCE REGARDING DISCOVERY SANCTIONS SHOULD BE EXCLUDED. ....................................................................................... 9

    E.  ARGUMENTS THAT WERE REJECTED BY THE COURT IN THE FEBRUARY 11, 2022 ORDERS AND RULINGS SHOULD BE EXCLUDED. .......................... 10

    F.  ARGUMENT OR EVIDENCE REGARDING THE SUBJECT MATTER OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER SHOULD BE EXCLUDED……………………………………………………………...………………11

    G.  EXTRINSIC ARGUMENT OR EVIDENCE REGARDING DEFENDANTS' POLICIES OR DIRECTIVES SHOULD BE EXCLUDED. .................................... 12

    1.  ASSERTIONS REGARDING A NON-EXISTENT POLICY SHOULD BE EXCLUDED. ....................................................................................................... 12

    2.  ASSERTIONS REGARDING McMAHON'S "DIRECTIVES" SHOULD BE EXCLUDED. ....................................................................................................... 13

    3.  ASSERTIONS REGARDING SUBSECTION (iii) SHOULD BE EXCLUDED. .... 14

    H.  ARGUMENT OR EVIDENCE REGARDING MATERIALITY NOT BEING REQUIRED SHOULD BE EXCLUDED. ............................................................... 16

    I.  ARGUMENT OR EVIDENCE OF DEFENDANTS' CLAIM FOR GROSS NEGLIGENCE OR INTENTIONAL CONDUCT SHOULD BE EXCLUDED ....... 18

CERTIFICATE OF SERVICE ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*1271972, LLC v. Stark Office Suites of Hartford, LLC*, HFHCV185003095S,
 2018 WL 6721794 (Conn. Super. Ct. Aug. 29, 2018) ............................................................... 18

*Aramony v. United Way of America*, 254 F. 3d 403 (2d Cir. 2001) ....................................... 14, 15

*Bedsole v. Boehringer Ingelheim Pharm., Inc.,* No. HHDCV166070289S,
 2018 WL 8489469 (Conn. Super. Ct. Sept. 14, 2018) ................................................................ 9

*Coan v. Dunne,* 602 B.R. 429 (D. Conn. 2019) ............................................................................. 9

*Contreras v. Artus,* 778 F.3d 97 (2d Cir. 2015) ............................................................................ 1

*Federal Housing Finance Agency v. Nomura Holding America, Inc.,* No. 11cv6201 (DLC),
 2015 WL 629336 (S.D.N.Y. Feb. 13, 2015) .............................................................................. 1, 2

*Foley v. Huntington Co.*, 42 Conn. App. 712 (1996) ..................................................................... 7

*Grogan v. Penza*, 194 Conn. App. 72 (2019) ......................................................................... 14, 16

*Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015) ............................... 2

*Honulik v. Town of Greenwich*, 293 Conn. 698 (2009) ............................................................... 13

*Issler v. Issler*, 250 Conn. 226 (1999) ......................................................................................... 14

*Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837 (S.D.W. Va. 2018) ............... 9

*Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353
 (S.D.N.Y. Dec. 19, 2017) ........................................................................................................... 9

*Lewis v. Erfe*, No. 3:17-CV-01764 (VLB), 2020 WL 4581724 (D. Conn. Aug. 10, 2020) ........... 9

*Lieberman v. Gant*, 630 F.2d 60 (2d Cir. 1980) ............................................................................ 4

*Mafco Elec. Contractors, Inc. v. Turner Const. Co.,* No. 3:07-cv-oo114
 (VLB), 2009 WL 807469 (D. Conn. Mar. 26, 2009) ................................................................ 18

*Negron v. Cigna Health & Life Ins. Co.*, No. 3:16-cv-01702 (JAM), 2021 WL 2010788
 (D. Conn. May 20, 2021) ........................................................................................................... 14

*Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61 (2d Cir. 2002) ..................................................... 14

*Orr v. Shea,* No. 3:17-cv-00788 (VAB), 2021 WL 1946381 (D. Conn. May 14, 2021)............ 1, 2

*Putnam Park Associates v. Fahnestock & Co., Inc.*, 73 Conn. App. 1 (2002) .............................. 8

*Riccio v. Bristol Hospital, Inc.,* 341 Conn. 772 (2022) ............................................................... 18

*Rosa v. Town of E. Hartford*, No. 3:00CV1367(AHN), 2005 WL 752206
 (D. Conn. Mar. 31, 2005) ........................................................................................................... 4

*Scapa Tapes N. Am., Inc. v. Avery Dennison Corp.*, 384 F. Supp. 2d 544 (D. Conn. 2005).......... 7

*SLSJ, LLC v. Kleban*, 227 F. Supp. 3d 258 (D. Conn. 2017) ........................................................ 1

*Stein v. Tangoe, Inc.*, No. 3:13-CV-00286 (VLB), 2014 WL 12767210

  (D. Conn. Sept. 30, 2014) ............................................................................................................. 4

*Town of New Milford v. Standard Demolition Services, Inc.*, 212 Conn. App. 30 (2022) ............ 6

*United States v. Cohan*, 111 F. Supp. 3d 166 (D. Conn. 2015) .................................................... 16

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) ................................................................... 2

*Weiss v. Smulders*, 313 Conn. 227 (2014) .................................................................. 6, 8, 13, 19

*Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526 (2006) .............................................................. 14

*Williams v. Rushmore Loan Mgmt Services, LLC*, No. 3:15CV673 (RNC),

  2017 WL 822793 (D. Conn. Mar. 2, 2017) ................................................................................. 1

**Statutes**

CONN. GEN. STAT. ANN. § 42a-1-303 ............................................................................................ 7

CONN. GEN. STAT. ANN. § 42a-2A-103 .......................................................................................... 8

**Other Authorities**

11 WILLISTON ON CONTRACTS § 32:14 (4th ed. 2022) .................................................................. 8

RESTATEMENT (SECOND) OF CONTRACTS § 202(g) (Am. L. Inst. 1981) ........................................ 7

RESTATEMENT (SECOND) OF CONTRACTS § 241 (Am. L. Inst. 1981) ........................................... 19

**Rules**

FED. R. EVID. 103 ............................................................................................................... 1, 15

FED. R. EVID. 401 ............................................................................................................ passim

FED. R. EVID. 403 ............................................................................................................ passim

FED. R. EVID. 404 .................................................................................................................... 2

FED. R. EVID. 608 ............................................................................................................ 10, 11

In support of the accompanying Motion in Limine Regarding for Cause Termination, Plaintiff Oliver Luck ("Plaintiff" or "Luck") submits this memorandum of law (collectively, the "Motion").

## I.       INTRODUCTION

"Motions *in limine* provide district courts the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Orr v. Shea,* No. 3:17-cv-00788 (VAB), 2021 WL 1946381, at *3 (D. Conn. May 14, 2021). "District courts have discretion to determine evidentiary issues presented in motions *in limine* in advance of trial." *Williams v. Rushmore Loan Mgmt Services, LLC*, No. 3:15CV673 (RNC), 2017 WL 822793, at *1 (D. Conn. Mar. 2, 2017) (italics in original). The purpose is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without length argument at, or interruption of, the trial." *SLSJ, LLC v. Kleban*, 227 F. Supp. 3d 258, 263 (D. Conn. 2017). "A court should only exclude evidence on motions *in limine* if the evidence is 'clearly inadmissible on all potential grounds.'" *Id.* Under Fed. R. Evid. 103, "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 401 provides that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See Federal Housing Finance Agency v. Nomura Holding America, Inc.,* No. 11cv6201 (DLC), 2015 WL 629336, at *8 (S.D.N.Y. Feb. 13, 2015) (quoting *Contreras v. Artus,* 778 F.3d 97, 108 (2d Cir. 2015)). Further, under Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." *See Orr,* 2021 WL 1946381, at *3. "The prejudice that Rule 403 is concerned with

1

involves 'some adverse effect … beyond tending to prove the fact or issue that justified its admission into evidence'" *Id.* at \*4 (*quoting United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995)); *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015). Essentially, FED. R. EVID. 403 directs the court to engage in a balancing test. *Orr,* 2021 WL 1946381, at \*8. Therefore, under FED. R. EVID. 403, a court can exclude both evidence and argument. *Federal Housing Finance Agency,* 2015 WL 629336 at \*13.

## II.   BASES FOR *IN LIMINE* RULINGS

### A.   ARGUMENT OR EVIDENCE REGARDING DEFENDANTS' DIRECTIVES OR McMAHON'S PRE-APPROVAL REGARDING PLAYERS OTHER THAN ANTONIO CALLAWAY SHOULD BE EXCLUDED.

Any statement, evidence, argument, reference, or assertion related to "Player A," Malik Harris, Martavis Bryant, Johnny Manziel, Trevor Pike, Josh Gordon or any other player concerning the reasons why they were not allowed to play in the XFL should be excluded. Any alleged probative value regarding these decisions and the facts surrounding the same is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. FED. R. EVID. 403. Additionally, it is not admissible evidence for the following stated purposes of Defendants: (a) Mr. Luck's alleged non-performance of his Employment Contract by hiring Antonio Callaway ("Callaway") (b) XFL policies or directives as they pertain to the hiring of Mr. Callaway; (c) Defendant Vincent K. McMahon's ("McMahon") instructions regarding the termination of Mr. Callaway; and (d) prior written notice not to hire Mr. Callaway. FED. R. EVID. 404.

Mr. Luck's actions regarding the potential hiring of other XFL players is not the stated basis for Alpha Entertainment LLC's ("Alpha") termination of Mr. Luck for Cause. *See* EXHIBIT 1, TERMINATION LETTER. Further, as this Court held in its February 11, 2020 Order, the Court

2

rejected Defendants' argument that written directives regarding players other than Mr. Callaway constituted "prior written notice in writing not to hire" Mr. Callaway. ECF 423 at 38. Further, the Court held that "these directives related to other players and did not directly concern Mr. Callaway." ECF 423 at 38-39. Consequently, evidence relating to other players should be excluded to prove the substance of the XFL's policies or directives or Mr. McMahon's instructions.

Even if Mr. McMahon expressed his opinions or gave some instruction to Luck about these other players, Defendants failed to give Mr. Luck written notice of the acts or omissions identifying an alleged policy that was violated or a 30-day opportunity to cure such violation. ECF 423 at 11–12. Thus, Defendants should not be permitted to submit evidence that might only be relevant had they complied with the Employment Contract.

Moreover, evidence regarding the non-admission to the XFL of players other than Mr. Callaway is irrelevant because the XFL's decision-making was done on a case-by-case basis. Alpha's Senior Director of People and Culture, Cindy Wagner ("Wagner"), testified that the XFL did not have automatic exclusions or a concrete hiring policy for players and that each potential player's background was instead evaluated on an "individual" basis. *See* EXHIBIT 2, WAGNER DEPO. VOL. 1 at 105:19–25; VOL. 2 at 14:13–15:15; 16:8–14; 31:14–32:2.[1] Wagner also verified that there was no concrete policy requiring consultation with Mr. McMahon for hiring decisions—those decisions were also made on a case-by-case basis. *Id.* VOL. 2 at 24:19–25:13.

Defendants have alleged that they have a hiring policy for players and that this policy is a fact specific determination made on player-by-player basis. *Id.* VOL. 2 at 14:13–15:15; 16:8–14; 31:14–32:2. If each case is fact-specific, evidence of the hiring or non-hiring of other players is

---

[1] Wagner is represented by Defendants' counsel so her testimony cannot be challenged by her counsel unless, of course, they are willing to say that Ms. Wagner committed perjury; that is something Plaintiff highly doubts will occur and, and most certainly, does not encourage.

irrelevant to the alleged basis for Mr. Luck's termination, *i.e.,* the hiring or firing of Mr. Callaway. Therefore, Defendants must prove the hiring or firing policy that Mr. Luck allegedly violated without reference to individual players other than Mr. Callaway; evidence of other individual decisions to hire or not hire player is irrelevant, misleading, prejudicial, and inappropriate propensity evidence considering the policy to make hiring decisions on an individual basis. *See* Ex. 1 (noting Defendants' alleged "policy"). *See Stein v. Tangoe, Inc.*, No. 3:13-CV-00286 (VLB), 2014 WL 12767210, at *20 (D. Conn. Sept. 30, 2014) (excluding evidence under FED. R. EVID. 404 because prior conduct of inappropriate accounting practices by misstating overall profitability could not be admitted to show a propensity for inappropriate accounting practices misstating organic growth, and no other proper purpose was presented); *Lieberman v. Gant*, 630 F.2d 60, 68 (2d Cir. 1980) (excluding evidence under FED. R. EVID. 404 of other professors granted tenure because it was an inappropriate propensity comparison and not admissible for any other proper purpose); *Rosa v. Town of E. Hartford*, No. 3:00CV1367(AHN), 2005 WL 752206, at *2 (D. Conn. Mar. 31, 2005) (noting that evidence of prior conduct was not admissible to show a propensity for such conduct and that the: (1) admission of such evidence was prejudicial by painting an inappropriate picture of wrongdoing, and (2) created an undue burden by forcing the party to explain all the other irrelevant situations).

Put another way, the grounds for exclusion of one player has no bearing on the exclusion of another player. Indeed, as Defendants concede, Mr. Luck performed his duties under XFL policies and directives, along with Mr. McMahon's instructions, concerning these players. Evidence of Mr. Luck's actual performance of his contractual duties with respect to other potential players is not probative of his alleged non-performance concerning the hiring and firing of Mr. Callaway.

In sum, any evidence of other hiring decisions is: (1) irrelevant to the issue at bar (other cases do not apply to Mr. Callaway in a case-by-case analysis); (2) misleading to the jurors (grounds for not hiring one player may not be grounds not to hire another player in a case-by-case determination); (3) confusing of the issues (Mr. Luck supposedly was terminated for the alleged hiring of Mr. Callaway, not other players); (4) risks undue prejudice to Mr. Luck (presentation of prior irrelevant situations that have no bearing on this situation paint an inappropriate picture and puts Mr. Luck to the undue burden of explaining the other situations); and is (5) inadmissible propensity evidence (evidence of prior conduct meant to show Mr. Luck acted in accordance with that prior conduct). Therefore, evidence of and arguments related to "Player A," Malik Harris, Martavis Bryant, Johnny Manziel, Zeke Pike, Josh Gordon or any other player concerning the reasons why they were not allowed to play in the XFL should be excluded.

**B.    ARGUMENT OR EVIDENCE REGARDING OTHER PLAYERS IN AN ATTEMPT TO EXPLAIN THE MEANING OF "XFL POLICIES OR DIRECTIVES" OR "LAWFUL INSTRUCTIONS OF MR. McMAHON" SHOULD BE EXCLUDED.**

In this litigation, none of the parties have argued or pled that the Contract is ambiguous. Here, the Contract is integrated and specifically provides: "This Contract, the Guaranty and the CNNA together embody the entire understanding of Mr. Luck, Alpha and Mr. McMahon … [and] …may not be amended, waived or otherwise modified except by a writing signed by both Alpha and Mr. Luck."). EXHIBIT 3, MR. LUCK'S EMPLOYMENT CONTRACT p. 5.

Any statement, evidence, argument, reference, or assertion intending to show Mr. Luck was properly terminated for cause due to seeking to hire other players with backgrounds allegedly similar to Mr. Callaway must be excluded because it is not admissible for the stated purpose and is parol evidence in the face of the unambiguous integrated contract. Defendants should not be permitted to define the contract terms "XFL policies or directives" and the "lawful instructions of

Mr. McMahon" by introducing parol evidence, including evidence of the possible hiring and/or termination of other XFL players. Under Connecticut law, parol evidence is inadmissible to vary the terms of an unambiguous contract. *See Weiss v. Smulders*, 313 Conn. 227, 248–49 (2014) (noting that while interpreting an integrated contract without ambiguity "to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages . . . in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme."). Further, such evidence is irrelevant, may confuse the issues, mislead the jury, or would otherwise cause prejudice to Mr. Luck. FED. R. EVID. 401, 403.

###   C.   ARGUMENT OR EVIDENCE CONCERNING PAROL EVIDENCE OF COURSE OF PERFORMANCE SHOULD BE EXCLUDED.

The Court should likewise exclude any statement, evidence, argument, reference, or assertion to try to show that Mr. Luck's termination was appropriate due to the parties' "course of performance"[2] of Mr. Luck's Employment Contract. *See supra* §§ (II)(A), (II)(B). As discussed above, hiring decisions with respect to potential XFL players were made on individual bases, so the point is moot and evidence regarding decisions to hire (or not hire) other players is irrelevant. *Id.*  Regardless, "course of performance" is a contract theory used to determine what the parties' terms of *their contract* meant (*i.e.*, interpreting how they acted to understand what they thought the terms meant), it is not evidence of an individual party to the contracts "policies or directives." Further, Mr. Luck's interactions with Mr. McMahon (*i.e.*, not Alpha) regarding Mr. McMahon's instructions (*i.e.*, not Alpha's) have no bearing on the unambiguous contract between Mr. Luck and Alpha. *See Town of New Milford v. Standard Demolition Services, Inc.*, 212 Conn. App. 30, 74 (2022) (noting that change orders issued for a second contract with a new contractor, that was

---

[2] Defendants' "course of performance" argument is apparent from their proposed jury instructions on page 6. *See* DEFENDANTS' EXHIBIT 4, DEFENDANTS' PROPOSED JURY INSTRUCTION 6.

arguably the same contract at issue, were not course of performance evidence for the intent of the parties to the contract at issue). Further, parol evidence cannot be admitted, even evidence of the parties' "course of performance," to interpret an unambiguous contract. *Id.* at 56 ("Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.").

Defendants' case law on this point is unavailing. *See* EX. 4 p. 6 n.19. *Scapa Tapes N. Am., Inc. v. Avery Dennison Corp.*, 384 F. Supp. 2d 544, 550 (D. Conn. 2005), involved a UCC sales contract where the parties agreed there was an ambiguous term. Further, *Scapa* was a UCC contract, under the UCC as enacted in Connecticut, courts can consider course of performance, course of dealing, and usage of trade *without* ambiguity. *Id.* at 550 ("However, even where language of a commercial contract is unambiguous, testimony concerning trade custom and usage may be offered to define terms that have a technical meaning within a particular business"); *see also* CONN. GEN. STAT. ANN. § 42a-1-303. Even the Restatement acknowledges that this type of analysis is generally limited to cases involving contracts governed by the UCC, and that actions by one party or self-serving actions meant to establish a "course of performance" are not entitled to weight.[3] *Foley v. Huntington Co.*, 42 Conn. App. 712, 729 (1996),  is similarly unhelpful as it involved an ambiguous, internally contradictory UCC land sale contract. *Id.* (noting the contract

---

[3] Course of performance. The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning. But such "practical construction" *is not conclusive of meaning*. Conduct must be weighed in the light of the terms of the agreement and their possible meanings. *Where it is unreasonable to interpret the contract in accordance with the course of performance, the conduct of the parties may be evidence of an agreed modification or of a waiver by one party*. See Uniform Commercial Code § 2-208. Or there may be simply a mistake which should be corrected. *The rule of Subsection (4) does not apply to action on a single occasion or to action of one party only; in such cases the conduct of a party may be evidence against him that he had knowledge or reason to know of the other party's meaning, but self-serving conduct is not entitled to weight*.
RESTATEMENT (SECOND) OF CONTRACTS § 202(g) (Am. L. Inst. 1981) (emphasis added).

was a sale of land for the operation of a nursing home but did not include enough land for the same despite specifically listing the land size). *Putnam Park Assocs. v. Fahnestock & Co., Inc.*, 73 Conn. App. 1, 10 (2002), is also not on point, as it involved an ambiguous UCC lease. *Id.* (quoting 11 WILLISTON ON CONTRACTS § 32:14 (4th ed. 2022)) ("Courts give great weight to the parties' ... practical interpretation ... unless it is contrary to the plain meaning of the contract."); *see also* CONN. GEN. STAT. ANN. § 42a-2A-103 . Further, the court there found that it was the course of performance of *both* parties to the commercial contract, and that the contract was ambiguous on its face regarding the term "as soon as practicable." *Putnam*, 73 Conn. App. at 10 (finding this type of term akin to "reasonable time," which is always ambiguous and required determination by the trier of fact). *Putnam* is easily distinguishable from the case at bar, which involves a non-ambiguous, non-UCC contract, and only Mr. McMahon's alleged course of performance.

Further, the contract here is integrated, so no parol evidence should therefore be admitted. Ex. 3 p. 5 ("This Contract, the Guaranty and the CNNA together embody the entire understanding of Mr. Luck, Alpha and Mr. McMahon … [and] …may not be amended, waived or otherwise modified except by a writing signed by both Alpha and Mr. Luck."); *Weiss*, 313 Conn. at 248–49 (noting that while interpreting an integrated contract without ambiguity "to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages  . . . in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme."). Any statement, evidence, argument, reference, or assertion intending to show Mr. Luck was terminated for cause because of the course of performance of his contract must be excluded because it is not admissible for the stated purpose and is parol evidence in the face of an unambiguous integrated contract. Further, it is irrelevant, may confuse the issues, mislead the jury, or would otherwise cause prejudice. FED. R. EVID. 401, 403.

8

### D.  ARGUMENT OR EVIDENCE REGARDING DISCOVERY SANCTIONS SHOULD BE EXCLUDED.

Any statement, evidence, argument, reference, or assertion intending to show Mr. Luck is not truthful or lacks credibility because of his purported spoliation of evidence by deleting information from his Alpha-issued iPhone after his inappropriate termination should be excluded. The Court has already provided monetary sanctions (*i.e.*, not an adverse inference) because it determined that the alleged evidence played a limited role in the ultimate issues in this case. ECF 423 at 3.[4] Since the Court did not make the findings that would be necessary for an adverse inference sanction, it should not allow Mr. Luck to be prejudiced by introduction of the issue before the jury. *Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 861 (S.D.W. Va. 2018) (granting *in limine* motion to exclude discovery issues, holding that it had not made the necessary findings for an adverse instruction, and finding that "any evidence or argument regarding these previous discovery issues would prejudice Defendant . . .[and that] prejudice substantially outweighs any probative value that the previous discovery issues may have."); *see also Lewis v. Erfe*, No. 3:17-CV-01764 (VLB), 2020 WL 4581724, at *1 (D. Conn. Aug. 10, 2020) (explaining the amended framework for obtaining sanctions under FED. R. CIV. P. 37 for spoliation of evidence); *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017) (Gorenstein, Mag.); *Coan v. Dunne,* 602 B.R. 429, 438 (D. Conn. 2019) (Meyer, J.); *Bedsole v. Boehringer Ingelheim Pharm., Inc.,* No. HHDCV166070289S, 2018 WL 8489469, at *3 (Conn. Super. Ct. Sept. 14, 2018).

As previously found by this Court, the issue for which sanctions was imposed is of limited value to the very limited issues remaining to be tried in this matter, and balancing the lack of

---

[4] As the Court will recall, the parties thoroughly briefed the subject of sanctions (ECF 395, 411, 423) prior to the Court's February 11, 2020 Order Rulings.

probative value against the potential for undue prejudice dictates its exclusion. ECF 423 at 3; FED. R. EVID. 401, 403. Simply put, an adverse inference instruction would be extremely (and unduly) prejudicial and would not be narrowly tailored—as required by FRCP 37—to address the issue for which the Court already imposed a monetary sanction. Further, extrinsic evidence of specific instances of conduct are not admissible to attack or support a witness's character for truthfulness. FED. R. EVID. 608. Nevertheless, based on Defendants' Proposed Jury Instructions, it is clear Defendants intend to offer such evidence. *See* Ex. 4 p. 1 ("Mr. Luck made misrepresentations to the court concerning his spoliation of evidence . . . indication of [Mr. Luck's] consciousness of guilt and knowledge of the weakness of his case . . . may consider spoliation of evidence and misrepresentations . . . in evaluating his credibility . . . and truthfulness.").  Any probative value of such evidence would be outweighed by the undue prejudice to Mr. Luck and confuses the issues to be tried. FED. R. EVID. 403. Therefore, any statement, evidence, argument, reference, or assertion intending to show Mr. Luck is not truthful or lacks credibility because of his purported spoliation of evidence by deleting information from the Alpha-issued iPhone after his inappropriate termination should be excluded. The probative value of such evidence would be far outweighed by the undue prejudice it would cause to Mr. Luck, and it would only confuse the issues to be tried. FED. R. EVID. 403.

### E.    ARGUMENTS THAT WERE REJECTED BY THE COURT IN THE FEBRUARY 11, 2022 ORDERS AND RULINGS SHOULD BE EXCLUDED.

The Court has already ruled on numerous matters and determined items that are irrelevant to the issues to be tried in this case including: (i) Mr. Luck's alleged failure to perform his XFL duties after March 13, 2020; (ii) assertions related to Mr. Luck's personal use of his XFL phone for any purpose; (iii) assertions related to after acquired evidence of any kind; and (iv) assertions related to Mr. Luck's alleged breach of his confidentiality obligations. ECF 423 at 2, 11, 31, 33,

43, 45. As a result of the Court's prior ruling, any statement, evidence, argument, reference, or assertion regarding these items is irrelevant, may confuse the issues, mislead the jury, be needlessly cumulative, or would otherwise cause prejudice. FED. R. EVID. 401, 403.[5]

### F. ARGUMENT OR EVIDENCE REGARDING THE SUBJECT MATTER OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER SHOULD BE EXCLUDED.

Any statement, evidence, argument, reference, or assertion concerning the subject matter of Mr. Luck's Motion for Protective Order should be excluded. ECF 186. The Court granted the Protective Order until it had an opportunity to determine the subject matter's relationship, if any, to the Defendants' defense. *See* ECF 326 at 50–51. The Court has since dismissed "any claims related to the Alpha-issued iPhone." ECF 424; ECF 423 at 50–51. The Court ordered "that the information obtained from Mr. Luck's Alpha-issued iPhone—except to the extent that it relates to Mr. Luck's hiring and termination of Mr. Callaway—shall remain under seal until the conclusion of the jury trial or until such time as the parties reach a resolution of this case." ECF 425. As such, any evidence concerning the Alpha issued iPhone—apart from the hiring and termination of Mr. Callaway—is irrelevant. FED. R. EVID. 401. Further, extrinsic evidence of specific instances of conduct are not admissible to attack or support a witness's character for truthfulness. FED. R. EVID. 608. Any probative value of such evidence would be outweighed by the prejudice, confusion of the issues, or misleading of the jury. FED. R. EVID. 403. Therefore, any statement, evidence, argument, reference, or assertion concerning the contents, findings, testimony, or underlying information related to the subject matter of Mr. Luck's Motion for Protective Order, ECF 186,

---

[5] In addition, Defendants have voluntarily dropped their claim that Mr. Luck was terminated for cause based on the selection of stadiums. ECF 401 at 12–13, ¶ 38. Consequently, any evidence or argument concerning the same should be excluded. FED. R. EVID. 401, 403.

should be excluded.

### G.   EXTRINSIC ARGUMENT OR EVIDENCE REGARDING DEFENDANTS' POLICIES OR DIRECTIVES SHOULD BE EXCLUDED.

#### 1.   ASSERTIONS REGARDING A NON-EXISTENT POLICY SHOULD BE EXCLUDED.

Any statement, evidence, argument, reference, or assertion intending to show that Mr. Luck violated a non-existent "XFL policy or directive" should be excluded. The Court ruled that under subsection (iii) in the "Termination by Employer" section of the Employment Contract, Mr. Luck could be terminated for "gross negligence" in the performance of his duties, "including an intentional failure to follow any applicable XFL policies or directives." ECF 423 at 2.

However, Defendants have admitted that no such "XFL policy or directive" for hiring or firing XFL players existed. Ms. Wagner testified repeatedly that there was *no* "XFL policy" or "directive" that automatically disqualified players. Ex. 2, Vol.1 at 105:19–25; Vol. at 2 23:16–20 ("Q: So then what would the reason for not documenting these four criteria be? A: Because we did not have automatic disqualifiers for anyone's background checks, so there was no need to document them when it did not exist."). Ms. Wagner also verified that there was not a concrete policy on hiring or firing, and no policy requiring consultation with Mr. McMahon for particular hiring decisions—those decisions were also made on a case-by-case basis. *Id.* Vol. 2 at 14:13– 15:15; 16:8–14; 24:19–25:13; 31:14–32:2. Similarly, Mr. McMahon could not provide a definition on what a questionable background might be even if there was such a policy. Exhibit 5, V. McMahon Depo. at 243:16–23 ("Q: What is the definition of a questionable background? . . . A: A background that's questionable"). Further, Mr. McMahon was not the CEO so his mere statements without more, were not automatically "XFL policies or directives." As such, the Court cannot allow extrinsic evidence to prove non-existent "XFL policies or directives" that would be

irrelevant to Mr. Luck's hiring or firing of Mr. Callaway, which is what is at issue.

Defendants may argue the contract is ambiguous and they are simply trying to clarify the "XFL policies or directives" at issue as they relate to Mr. Lucks duties. As discussed above, however, the contract is integrated. *See supra* § (II)(B); Ex. 3 p. 5 ("This Contract, the Guaranty and the CNNA together embody the entire understanding of Mr. Luck, Alpha and Mr. McMahon."). While it is undisputed that the Employment Contract does not define "XFL policies or directives," the terms "policy" and "directive" are commonly understood words and no evidence is needed to derive their meaning. *Honulik v. Town of Greenwich*, 293 Conn. 698, 710 (2009) ("A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms."). Simply put, the Contract is not ambiguous. Further, Defendants have not asserted that the contract is ambiguous. Thus, extrinsic evidence should not be permitted to interpret or contradict their meaning. *Weiss*, 313 Conn. at 248–49 (noting that while interpreting an integrated contract without ambiguity "to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages . . .in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme.").

### 2.   ASSERTIONS REGARDING McMAHON'S "DIRECTIVES" SHOULD BE EXCLUDED.

Any statement, evidence, argument, reference, or assertion intending to show that Mr. McMahon's instructions constitute an "XFL policy or directive" should also be excluded. Defendants assert that Mr. McMahon's instructions to Mr. Luck constituted an "XFL directive" and that Mr. McMahon's statement not to hire players with problematic backgrounds constituted an "XFL policy." ECF 153 ¶¶ 15-49; ECF 339/341 ¶¶ 21-23; ECF 338/340 ¶¶ 21-23; *see also* Ex.

3 p. 4. However, the Contract itself makes an express distinction between "XFL policies or directives," on the one hand, and "the lawful instruction of Mr. McMahon," on the other. EX. 3 p. 4. To conflate them, as Defendants seeks to do, would render the language meaningless or superfluous. *Negron v. Cigna Health & Life Ins. Co.*, No. 3:16-cv-01702 (JAM), 2021 WL 2010788, at *17 (D. Conn. May 20, 2021) (well established that courts disfavor reading a contract to render provisions superfluous); *Grogan v. Penza*, 194 Conn. App. 72, 79 (2019) ("contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so . . .").

Any statement, evidence, argument, reference, or assertion of McMahon's "policies" or "directives" is irrelevant, may confuse the issues, mislead the jury, or would otherwise cause prejudice. FED. R. EVID. 401, 403.

3.     **ASSERTIONS REGARDING SUBSECTION (iii) OF THE EMPLOYMENT CONTRACT'S "TERMINATION BY EMPLOYER" SECTION SHOULD BE EXCLUDED.**

Subparagraphs (v) and (vi) in the "Termination by Employer" section of the Employment Contract, are specific, applicable, and can be read in a harmonious way with the other parts of the Contract, as opposed to subparagraph (iii). *See* EX. 3 p. 4. The proper interpretation of an unambiguous contract is a question of law for the court. *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002). Under Connecticut law, "the particular language of a contract ***must*** prevail over the general." *Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526, 545-46 (2006) (emphasis added). When interpreting contracts, Connecticut courts follow the rule that the specific and defined terms of the contract supersede and control the more general ones. *Issler v. Issler*, 250 Conn. 226, 237 n.12 (1999). This rule is also applied in the Second Circuit. *Aramony v. United Way of America*, 254 F. 3d 403, 413 (2d Cir. 2001). "Even where there is no 'true conflict' between two provisions 'specific words will limit the meaning of general words if it appears from the whole

agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.'" *Id.* at 414.

In this instance, subparagraph (vi) expressly and specifically states that Alpha can terminate Mr. Luck for Cause based upon "Mr. Luck's willful disregard of the lawful instructions of Mr. McMahon concerning Mr. Luck's material duties hereunder." *See* Ex. 3 p. 4. Defendants themselves recognized the applicability of subparagraph (vi) when they improperly terminated Mr. Luck and referenced that subsection as grounds for termination. Ex. 1 p. 2 ("Your willful disregard of the lawful instructions of Mr. McMahon concerning your material duties is also cause to terminate your contract."). Also, under subparagraph (v), Defendants are required to prove a "willful and intentional material breach of [the] Contract," which includes Mr. Luck's specifically defined "Duties," which include his authority to hire, fire, and reassign players (subject to Mr. McMahon's preapproval for material business decisions). Ex. 3 pp. 2, 4. The section governing termination for Cause contained in the Employment Contract also specifically defines "willful" as:

> For purposes of this subparagraph, no act or failure to act on the part of Mr. Luck shall be considered "willful" unless it is done, or omitted to be done, by Mr. Luck in bad faith or without reasonable belief that Mr. Luck's action or omission was in the best interest of the XFL.

*Id.* at 4. Because the specific terms of a contract control and supersede the general terms, Plaintiff respectfully requests that pursuant to Connecticut law, and FED. R. EVID. 103 and 403, the Court should interpret the unambiguous Employment Contract language such that Defendants not be permitted to introduce parol or extrinsic evidence, or arguments that contradict or supplement the unambiguous specific terms of subsections (v) and (vi) of the Employment Contract. These are the relevant contract sections and subsection (iii) of the Employment Contract is not applicable to the specific facts and basis upon which Defendants attempt to justify Alpha's for cause termination of

Mr. Luck (*i.e.*, the hiring and firing of an XFL employee, Mr. Callaway) because no "XFL policies or directives" have been identified, and the specific applicable subsections (v) and (vi) control over the general subsection (iii). *Grogan v. Penza*, 194 Conn. App. 72, 79 (2019) ("contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so . . ."). Accordingly, Defendants should be barred from introducing any statement, evidence (including parol evidence), argument, reference, or assertion to the jury regarding any alleged "XFL policy or directive," or any alleged violation thereof.

### H.    ARGUMENT OR EVIDENCE REGARDING MATERIALITY NOT BEING REQUIRED SHOULD BE EXCLUDED.

Any statement, evidence, argument, reference, or assertion intending to disregard that requirement that a breach of contract must be material. Defendants clearly intend to offer evidence or argument of the same. *See* Ex. 4 p. 5 ("Defendants are therefore not required to establish that Mr. Luck's alleged violations were material. . . . Under Connecticut law . . . a contract may allow for termination under conditions that do not constitute a material breach, as is the case here."), and No. 8 ("need only find that Mr. Luck intentionally failed to follow any applicable XFL policy or directive to find that cause exists under that particular provision.").

Materiality is explicitly required in every contract breach for which a party seeks to terminate a contract. *United States v. Cohan*, 111 F. Supp. 3d 166, 172–73 (D. Conn. 2015), *aff'd*, 667 Fed. Appx. 6 (2d Cir. 2016) (internal citations omitted) ("'[A] total breach of the contract by one party'—that is, 'an uncured material failure of performance'—'relieves the injured party of any further duty to perform further obligations under the contract. [W]hether there has been a material breach of a contract' . . . is a question of fact."). The parties have in fact already had this argument and the Court has ruled on the same. ECF Doc. No. 424, *passim*. The Court found "Ms.

16

Lim's testimony on the materiality of Mr. Luck's decision to hire Mr. Callaway is directly relevant to Mr. Luck's breach of contract claim and Defendants' defenses to that claim." *Id.* at 6. Further, Defendants view that the "for cause" termination provisions in all cases impart "materially and demonstrable injur[y]" is wildly incorrect. For example, if the XFL had a policy or directive that prevented the chewing of bubblegum in its hallways and Mr. Luck was walking down the hallway chewing gum, firing him for this conduct would be wholly inappropriate because the policy or directive violated could not seriously be considered a *material* breach of contract. Defendants nevertheless seek an exemption from showing that any conduct by Mr. Luck was a material violation of his contract that met the prescribed contractual standard for the alleged violation. *See* Ex. 3 p. 4 ("(iii) willful and intentional material misconduct . . . including intentional failure to follow applicable XFL policies or directives . . .(v) willful and intentional material breach of this Contract, (vi) willful disregard of lawful instruction of Mr. McMahon concerning Mr. Luck's material duties hereunder."). Simply put, the alleged violation must meet the materiality requirements of the common law *and* the terms of the contract for any alleged violation. Any statement, evidence, argument, reference, or assertion that materiality is not required pursuant to the common law or the contract terms is prejudicial, confuses the issues, misleads the jury, or is irrelevant. FED. R. EVID. 401, 403.

Any alleged misconduct in hiring or firing was only subject to McMahon's preapproval if it was a material business decision. *See* Ex. 3 p. 1. For cause termination can only occur for a material violation of one of the termination provisions, which meets the enumerated standards. In point and in fact, there is no need to mention "materially and demonstrably injurious," the Court has determined that this preface established them as grounds for cause termination if the relevant tests are met for a material issue. However, if this term is raised and conflated with the other two

17

terms the jury will be seriously confused. Therefore, any statement, evidence, argument, reference, or assertion conflating material breach, "materially and demonstrably" injurious, or "material business decision" should be excluded. It is prejudicial, confuses the issues, misleads the jury, and is irrelevant. FED. R. EVID. 401, 403.

## I.     ARGUMENT OR EVIDENCE OF DEFENDANTS' CLAIM FOR GROSS NEGLIGENCE OR INTENTIONAL CONDUCT SHOULD BE EXCLUDED.

Any statement, evidence (including parol evidence), argument, reference, or assertion intending to prove gross negligence or intentionality should be excluded. Connecticut law does not recognize a claim for gross negligence. *Riccio v. Bristol Hospital, Inc.,* 341 Conn. 772, 783-784 (2022). The Court has held that there is no definition of gross negligence under Connecticut law. ECF 423 at 25 n.1 (citing *Mafco Elec. Contractors, Inc. v. Turner Const. Co.,* No. 3:07-cv-oo114 (VLB), 2009 WL 807469. at *4 (D. Conn. Mar. 26, 2009);[6] *Cf.* 341 Conn. at 784 ("We have, however, defined gross negligence as 'very great or excessive negligence, or as the want of, or failure to exercise, even slight or scant care or slight diligence. …'"). Likewise, the Employment Contract provides no definition of gross negligence or intentional conduct, nor does it account for creating a cause of action that does not exist under its governing law. *See* Ex. 3, *passim.* Thus, this general, undefined term and unrecognized cause of action must yield to the more specific terms of the Employment Contract where, as here, the purported Cause for termination is rooted in specific terms of the Employment Contract. *See 1271972, LLC v. Stark Office Suites of Hartford, LLC*, HFHCV185003095S, 2018 WL 6721794, at *4 (Conn. Super. Ct. Aug. 29, 2018) (specific termination provision for failing to comply with specific contract provision applied over general termination provision elsewhere in contract). Here the contract provisions applicable under

---

[6] However, the *Mafco* court expressly stated that "the term [gross negligence] has found its way into Connecticut jurisprudence when describing conduct that is not intentional but is still more culpable than negligence. This type of conduct is labeled reckless or wanton misconduct." 2009 WL 807469, at *4.

subsections (v) and (vi) require Defendants to show "Mr. Luck's willful disregard of the lawful instructions of Mr. McMahon concerning Mr. Luck's material duties hereunder" or "willful and intentional material breach of [the] Contract." EX. 3 p. 4. Further, material breach is a term defined in Connecticut law, as opposed to gross negligence. *Weiss v. Smulders*, 313 Conn. 227, 264, 96 A.3d 1175, 1198 (2014) (noting Connecticut follows RESTATEMENT (SECOND) OF CONTRACTS § 241 (Am. L. Inst. 1981)). Further, even if "intentional failure to follow an XFL policy or directive" is at issue (it is not), merely because this is equated to "gross negligence" in the Contract does not mean the term "gross negligence" should be thrown around. Given the pleadings of the Defendants and the orders of the Court, the undefined, unlawful, and unrecognized assertions about gross negligence or intentionality, must yield to the defined terms "willful" and the Connecticut recognized term of "material breach." Thus, Defendants should be excluded from presenting or admitting evidence (including parol evidence), argument, references, or assertions concerning "gross negligence" or "intention" because the specific terms of willful and material should control.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, LLP.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

### CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Paul J. Dobrowski*

21