# EXHIBIT 2

CINDY WAGNER - 5/20/2021

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

OLIVER LUCK                  )
                             )
 Plaintiff,                  )
                             )
VS.                          )   CIVIL NO. 3:20-cv-00516-VAB
                             )
VINCENT K. McMAHON and       )
ALPHA ENTERTAINMENT          )
LLC,                         )
                             )
 Defendants.                 )
                             )
                             )
                             )

********************************
ORAL AND VIDEOTAPED DEPOSITION OF
CINDY WAGNER
May 20, 2021
********************************
REPORTED REMOTELY IN ACCORDANCE WITH THE CURRENT
EMERGENCY ORDER REGARDING THE COVID-19
STATE OF DISASTER

ORAL AND VIDEOTAPED DEPOSITION OF
CINDY WAGNER, produced as a witness at the instance
of the PLAINTIFF, and duly sworn, was taken in the
above-styled and numbered cause on May 20, 2021,
from 8:00 a.m. to 1:16 p.m., by machine shorthand
before MICHELLE R. PROPPS, CSR, in and for the State
of Texas, reported via Zoom videoconference,
pursuant to the Federal Rules of Civil Procedure and
the provisions stated in the record or attached
hereto.

CINDY WAGNER – 5/20/2021

```
 1                    A P P E A R A N C E S
 2             (All Appearing Via Videoconference)
 3      FOR THE PLAINTIFF:
 4      MS. VANESSA L. PIERCE
        Dobrowski, Larkin & Stafford, L.L.P.
 5      4601 Washington Avenue, Suite 300
        Houston, Texas 77077
 6      Tel: 713.659.2900
        Fax: 713.659.2908
 7      Email: vpierce@doblaw.com
 8      MS. JOETTE KATZ
        Shipman & Goodwin LLP
 9      300 Atlantic Street. 3rd Floor
        Stamford, Connecticut 06901
10      Tel: 203.324.8100
        Fax: 203.324.8199
11      Email: jkatz@goodwin.com
12      FOR THE DEFENDANTS AND CINDY WAGNER:
13      MR. CURTIS B. KRASIK
        MR. JERRY McDEVITT
14      K&L Gates LLP
        K&L Gates Center
15      210 Sixth Avenue
        Pittsburgh, Pennsylvania 15222
16      Tel: 413.355.6500
        Email: curtis.krasik@klgates.com
17              jerry.mcdevitt@klgates.com
18
        MR. JEFFREY P. MUELLER
19      Day Pitney LLP
        242 Trumbull Street
20      Hartford, Connecticut 06103
        Tel: 860.275.0100
21      Fax: 860.275.0343
        Email: jmueller@daypitney.com
22
        ALSO PRESENT:
23
        Mr. Mike Davis, Video Technician
24
                    * * * * *
25
```

CINDY WAGNER - 5/20/2021

Page 3

```
 1                           INDEX
 2                                                PAGE
    Appearances.................................  2
 3
    CINDY WAGNER
 4
    Examination by Ms. Vanessa L. Pierce............  5
 5
 6  Changes and Signature........................... 187
 7  Reporter's Certification........................ 189
 8
                           EXHIBITS
 9
    EXHIBIT NO.          DESCRIPTION             PAGE
10
    Exhibit 72   Chain of Emails dated February 3,
11               2019 (ALPHA_LUCK_00130578-579)......  9
    Exhibit 73   Email (from Reinking to Wagner)
12               dated February 5, 2019 with
                 Attachment
13               (ALPHA_LUCK_00237741-743)...........  14
    Exhibit 74   Email (to Wagner) dated April 18,
14               2019 with Attachment
                 (ALPHA_LUCK_00268926-928)...........  21
15  Exhibit 75   Employee Handbook & Code of
                 Business Conduct
16               (ALPHA_LUCK_00268862-895)...........  32
    Exhibit 76   XFL Technology Acceptable Use
17               Policy (Employee)
                 (ALPHA_LUCK_00268849-852)...........  42
18  Exhibit 77   Email (from Henry to Pollack)
                 dated March 10, 2020 with
19               Attachments
                 (ALPHA_LUCK_00149731-748)...........  44
20  Exhibit 78   Email (from Hamiman) dated March
                 13, 2020 with Attachments
21               (ALPHA_LUCK_00006907-911)...........  47
    Exhibit 79   Chain of Text Messages
22               (Luck-00011644)....................  54
    Exhibit 80   Email (from Wagner to Decker)
23               dated December 11, 2019
                 (ALPHA_LUCK_00055962-963)...........  83
24  Exhibit 81   Chain of Emails dated April 23,
                 2019 with Attachments
25               (ALPHA_LUCK_00118036-056)...........  93
```

HANNA & HANNA, INC.
713-840-8484

```
 1                        EXHIBITS (cont'd)
 2     EXHIBIT NO.           DESCRIPTION              PAGE
 3     Exhibit 82     Chain of Emails
                      (ALPHA_LUCK_00007861-863)........... 111
 4     Exhibit 83     Sterling Talent Solutions Customer
                      Support (ALPHA_LUCK_00026008-019)... 114
 5     Exhibit 84     Email (from Mithani to Pollack, et
                      al. Dated October 2, 2019 with
 6                    Attachments
                      (ALPHA_LUCK_00085146-151)........... 122
 7     Exhibit 85     Email (from Ingram to Wagner)
                      dated January 23, 2020 with
 8                    Attachments
                      (ALPHA_LUCK_00029539-570)........... 122
 9     Exhibit 86     Chain of Emails
                      (ALPHA_LUCK_000025419-421).......... 126
10     Exhibit 87     Chain of Emails
                      (ALPHA_LUCK_00025486-490)........... 128
11     Exhibit 88     Declaration of Cindy Wagner (NO
                      BATES NUMBERS)...................... 135
12     Exhibit 89     Email (from Pollack to All
                      Employees) dated March 2, 2020
13                    (ALPHA_LUCK_00200950)............... 142
       Exhibit 90     Chain of Emails dated March 6,
14                    2020 (ALPHA_LUCK_00044637-638)...... 147
       Exhibit 91     Chain of Emails dated March 25,
15                    2020 (ALPHA_LUCK_00152721).......... 153
       Exhibit 92     Email (from Wagner to Wilson)
16                    dated March 23, 2020
                      (ALPHA_LUCK_00243221)............... 157
17     Exhibit 93     Chain of Emails dated March 23,
                      2020 (ALPHA_LUCK_00194743-744)...... 167
18     Exhibit 94     Chain of Emails dated March 26,
                      2020 with Attachments
19                    (ALPHA_LUCK_00148894-896)........... 170
       Exhibit 95     Chain of Emails dated April 7,
20                    2020 (ALPHA_LUCK_00196027-028)...... 176
       Exhibit 96     Email (from Wagner to Hamiman)
21                    dated April 11, 2020
                      (ALPHA_LUCK_00236513)............... 180
22
                       PREVIOUS MARKED EXHIBITS
23
       Exhibit 9      Chain of Emails
24                    (ALPHA_LUCK_00029487-489)
       Exhibit 38     Chain of Emails dated July 17, 2019
25                    (ALPHA_LUCK_00017189)
```

CINDY WAGNER - 5/20/2021

```
 1              THE VIDEOGRAPHER:  Okay.  Today is
 2    Thursday, May the 20th, 2021.  We're on the record
 3    at 8:00 a.m.
 4              THE COURT REPORTER:  Could you raise
 5    your right hand, please.
 6              THE WITNESS:  (Complies.)
 7              THE COURT REPORTER:  Do you solemnly
 8    swear that the testimony you give today will be the
 9    truth, the whole truth and nothing but the truth so
10    help you God?
11              THE WITNESS:  Yes, I do.
12                   EXAMINATION
13    QUESTIONS BY MS. VANESSA L. PIERCE:
14         Q.    Good morning.  Would you please state
15    your name for the record.
16         A.    Cindy Wagner.
17         Q.    Good morning, Ms. Wagner.  My name is
18    Vanessa Pierce.
19              Have you ever had your deposition
20    taken before?
21         A.    No, I have not.
22         Q.    Okay.  I'm going to quickly go over some
23    just lay-of-the-land ground rules so we can
24    hopefully all get out of here quickly and
25    efficiently and Michelle doesn't get mad at any of
```

CINDY WAGNER - 5/20/2021

```
 1          Q.     Were there any background checks, other

 2     than the one performed by Sterling?

 3          A.     I do know, from a process perspective,

 4     there was an additional firm that did social media

10:29 5     background checks, but I'm not sure which level, if

 6     they did it for executives or players.  But we did

 7     have an additional third-party vendor that did

 8     social media checks.

 9          Q.     Did you ever see any of those social

10:29 10     media checks?

11          A.     Not that I recall.

12          Q.     Do you know if it was XFL policy to

13     consider a player's reputation in whether or not to

14     hire them?

10:30 15                    MR. KRASIK:  Objection to form.

16     Calls for speculation.

17                    You can answer.

18          A.     Can you repeat the question?

19          Q.     (By Ms. Pierce)  Do you know if it was

10:30 20     XFL policy to consider a player's reputation in

21     whether or not to hire them?

22                    MR. KRASIK:  Same objection.

23          A.     Since there was no policy in regards to

24     what would qualify or disqualify, no, I am not aware

10:30 25     of that.
```

CINDY WAGNER - 5/20/2021

Page 189

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF CONNECTICUT
 2

 3   OLIVER LUCK,             )
                             )
 4    Plaintiff,             )
                             )
 5   VS.                     ) CIVIL NO. 3:20-cv-00516-VAB
                             )
 6   VINCENT K. McMAHON      )
     and, ALPHA              )
 7   ENTERTAINMENT LLC,      )
                             )
 8    Defendants.           )

 9                 REPORTER'S CERTIFICATION

10                   ORAL DEPOSITION OF
                        CINDY WAGNER
11                      MAY 20, 2021

12    REPORTED REMOTELY IN ACCORDANCE WITH THE CURRENT
         EMERGENCY ORDER REGARDING THE COVID-19
13                    STATE OF DISASTER

14                  I, MICHELLE R. PROPPS, Certified

15   Shorthand Reporter in and for the State of Texas,

16   hereby certify to the following:

17                  That the witness, CINDY WAGNER, was

18   duly sworn by the officer and that the transcript of

19   the oral deposition is a true record of the

20   testimony given by the witness;

21                  I further certify that pursuant to

22   FRCP Rule 30 (f) (1) that the signature of the

23   deponent:

24                  __X__ was requested by the deponent

25   or a party before the completion of the deposition
```

CINDY WAGNER - 5/20/2021

1    and returned within 30 days from date of receipt of

2    the transcript.  If returned, the attached Changes

3    and Signature Page contains any changes and the

4    reasons therefor;

5                    _____ was not requested by the

6    deponent or a party before the completion of the

7    deposition.

8                    I further certify that I am neither

9    attorney nor counsel for, related to, nor employed

10   by any of the parties to the action in which this

11   testimony was taken.  Further, I am not a relative

12   or employee of any attorney of record in this cause,

13   nor am I financially or otherwise interested in the

14   outcome of the action.

15                   Subscribed and sworn to on this the

16   24th day of May, 2021.

17

18

19   MICHELLE PROPPS, CSR
     Expiration Date 10-31-21
20   Hanna & Hanna, Inc.
     8582 Katy Freeway, Suite 105
21   Houston, Texas 77024
     713.840.8484

22

23

24

25

CINDY WAGNER – VOLUME 2 – 10/20/2021

                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF CONNECTICUT

OLIVER LUCK                     )
                                )
      Plaintiff                 )
                                ) CIVIL NO. 3:20-cv-00516-VAB
v.                              )
                                )
VINCENT K. MCMAHON and ALPHA    )
ENTERTAINMENT LLC               )
                                )
      Defendant.                )


        ****************************************************

                 ORAL AND VIDEOTAPED DEPOSITION OF

                          CINDY WAGNER

                           VOLUME 2

                       OCTOBER 20TH, 2021

                      (REPORTED REMOTELY)

        ****************************************************



            ORAL AND VIDEOTAPED DEPOSITION OF CINDY WAGNER,
produced as a witness at the instance of the Plaintiff and duly
sworn, was taken in the above-styled and numbered cause on
October 20th, 2021, from 8:57 AM to 9:51 AM, before Sara T.
Green, CSR, in and for the State of Texas, reported remotely in
Houston, Texas, by computerized stenotype machine pursuant to
the Federal Rules of Civil Procedure.

```
 1                         APPEARANCES
 2               (All Appearing Via Videoconference)
 3
    FOR THE PLAINTIFF:
 4
 5        MS. VANESSA L. PIERCE
          MR. JARED A. McHAZLETT
 6        Dobrowski, Larkin & Stafford LLP
          4601 Washington Avenue, Suite 300
 7        Houston, Texas  77007
          T: 713.659.2900
 8        F: 713.659.2908
          vpierce@doblaw.com
 9        jmchazlett@doblaw.com
10
    FOR THE DEFENDANTS:
11
12        MR. CURTIS B. KRASIK
          MR. JERRY McDEVITT
13        K & L Gates LLP
          210 Sixth Avenue
14        Pittsburgh, Pennsylvania  15222
          T: 412.355.6500
15        curtis.krasik@klgates.com
          jerry.mcdevitt@klgates.com
16
          MR. JEFFREY PAUL MUELLER
17        Day Pitney LLP
          242 Trumbull Street
18        Hartford, Connecticut  06103
          T: 860.275.0100
19        F: 860.275.0343
          jmueller@daypitney.com
20
21   ALSO PRESENT:
22        Mr. Mike Davis, Videographer
23
24
25
```

CINDY WAGNER - VOLUME 2 - 10/20/2021

Page 3

```
 1                    EXAMINATION INDEX

 2                                              PAGE

 3   Appearances                                 3

 4   CINDY WAGNER

 5        Examination by Ms. Pierce              5

 6   Signature and Changes                      37

 7   Reporter's Certificate                     39

 8

 9                     EXHIBIT INDEX

10   NO.              DESCRIPTION               PAGE

11   Exhibit 143      Chain of E-mails dated     9
                      July 17, 2019
12                    (ALPHA_LUCK_00275428)

13   Exhibit 144      Chain of E-mails dated    16
                      July 17, 2019
14                    (ALPHA_LUCK_00275429-430)

15   Exhibit 145      Chain of E-mails dated    18
                      July 17, 2019
16                    (ALPHA_LUCK_00275425-426)

17   Exhibit 146      Chain of E-mails dated    19
                      July 17, 2019
18                    (ALPHA_LUCK_00275419)

19   Exhibit 147      Chain of E-mails          24
                      (ALPHA_LUCK_00275417-418)
20
     Exhibit 148      Chain of E-mails          26
21                    (ALPHA_LUCK_00275415-416)

22   Exhibit 149      Chain of E-mails          28
                      (ALPHA_LUCK_00275412-414)
23

24

25
```

HANNA & HANNA, INC.
713.840.8484

```
 1                    EXHIBIT INDEX (continued)

 2                    PREVIOUSLY MARKED EXHIBITS

 3    NO.              DESCRIPTION                    PAGE

 4    PM Exhibit 38    Chain of E-mails dated          8
                       July 17, 2019
 5                     (ALPHA_LUCK_00017189)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CINDY WAGNER - VOLUME 2 - 10/20/2021

Page 5

```
1                        PROCEEDINGS
2                THE VIDEOGRAPHER:  Okay.  Today is Wednesday,
3     October 20th, 2021.  We're on the record at 8:57 AM.
4                THE REPORTER:  My name is Sara Green, CSR Number
5     2436.  I am administering the oath and reporting the deposition
6     remotely by stenographic means from Houston, Texas.  The
7     witness is located in Stamford, Connecticut.
8                            CINDY WAGNER,
9     having been first duly sworn, testified as follows:
10                           EXAMINATION
11    BY MS. PIERCE:
12         Q.   Good morning, Ms. Wagner.
13         A.   Good morning.
14         Q.   Can you please state your name for the record?
15         A.   Vanessa, I'm sorry.  You're really hard to hear.
16         Q.   Can you hear me now?
17         A.   Yes, thank you.
18                THE VIDEOGRAPHER:  Better.
19                MR. KRASIK:  Now we can't again.
20                MS. PIERCE:  Can we go off the record, please,
21    so I can get this sorted since we only have an hour?  Sorry,
22    guys.
23                THE VIDEOGRAPHER:  Okay.  Off the record at
24    8:58.
25                (Recess from 8:58 AM to 8:59 AM.)
```

CINDY WAGNER - VOLUME 2 - 10/20/2021

```
 1                THE VIDEOGRAPHER:  Okay.  Back on the record at

 2     8:59.

 3         Q.   (BY MS. PIERCE)  Good morning, Ms. Wagner.

 4         A.   Good morning.

 5         Q.   Would you please state your name for the record?

 6         A.   Cindy Wagner.

 7         Q.   Have you had a chance to read the Court's order from

 8     October 15th in this case?

 9         A.   No, I have not.

10         Q.   Do you understand that you're here to testify about

11     ten documents for an hour?

12         A.   Yes, I am.

13         Q.   Okay.  And, obviously, you've had your deposition

14     taken before, because I have at least taken your deposition a

15     few months ago, correct?

16         A.   That is correct.

17         Q.   Okay.  So I'm not going to go through the whole lay

18     of the land, except if you don't understand any of my

19     questions, please let me know and I will rephrase or do my best

20     to help you understand the question I'm asking, okay?

21         A.   Okay.

22         Q.   Okay.  And you're represented by counsel today,

23     correct?

24         A.   Yes, I am.

25         Q.   And who is that counsel here?
```

 1    communications with counsel.

 2         A.   The result of background checks and the review

 3    process was to be handled by certain individuals and should not

 4    be disclosed to others that are not involved in the process.

 5         Q.   (BY MS. PIERCE)  Okay.  And so, again, I'll ask you:

 6    Where in here do you say do not reveal background checks?

 7         A.   I do not specifically state that.

 8         Q.   All right.

 9              MS. PIERCE:  I'll -- that will be 143, Sara, I

10    believe.

11              THE REPORTER:  Yes, that's correct.

12              MS. PIERCE:  Thank you.

13         Q.   (BY MS. PIERCE)  Is it typical as an HR professional

14    to not document policies and procedures?

15              MR. KRASIK:  Objection to form.  You can answer.

16         A.   We did not have a policy or -- excuse me, we did not

17    have a policy related to background checks; otherwise, no

18    documentation.

19         Q.   (BY MS. PIERCE)  Let me ask you this, Ms. Wagner:

20    How would not having a formal policy for permitting players

21    into the XFL assist the XFL in achieving its goals?

22              MR. KRASIK:  Objection to form.  You can answer.

23         A.   Background -- background checks, there were no

24    automatic disqual -- disqualifiers, excuse me, for background

25    checks, so there was no process.  Each individual background

CINDY WAGNER - VOLUME 2 - 10/20/2021

Page 15

1   check was reviewed and discussed between Ian Decker and, if

2   necessary, Oliver Luck and Vince McMahon for decisions to be

3   made.

4        Q.   (BY MS. PIERCE)  So Ian Decker just took it upon

5   himself to review background checks and decide whether or not

6   this was a player that could play for the XFL?

7                  MR. KRASIK:  Objection to form.

8   Mischaracterizes the testimony.  You can answer.

9        A.   I do not know how Ian Decker handled the process of

10  background checks.  I was not involved.

11       Q.   (BY MS. PIERCE)  You're not involved, but you know

12  that there was no policy?

13       A.   That's correct.

14       Q.   Is that correct?  Is that your testimony?

15       A.   Correct.

16       Q.   How would permitting -- how would not having a policy

17  for recruiting players into the XFL make the XFL a credible

18  organization as far as the players allowed to play?

19                  MR. KRASIK:  Objection to form.

20  Mischaracterizes testimony.  You can answer.

21       A.   We knew that we wanted players that would not impact

22  the reputation of the organization, so that was the higher

23  standard that we held.  The specifics of the background checks

24  was not my process.

25       Q.   (BY MS. PIERCE)  What was the reputation of the XFL?

```
 1        A.   That we were a stand-up league with professional

 2   football players that were living out their dream.

 3        Q.   And what -- what made the XFL a stand-up league?

 4        A.   We wanted to ensure that we had football players that

 5   were qualified to play, that were good citizens, had a

 6   reputation that would represent the organization appropriately

 7   and professionally.

 8        Q.   How would you determine if a player was a good

 9   citizen?

10        A.   That would have been handled by the sale and

11   acquisition department, Ian Decker, and his review of any and

12   all information that he received.

13        Q.   But, again, there was no concrete policy?

14        A.   That is correct.

15             MS. PIERCE:  I'm going to pull up Doc 3, Sara.

16             THE REPORTER:  Okay.  And this will be 144.

17             MS. PIERCE:  Yes, ma'am.

18                  (EXHIBIT 144 MARKED)

19        Q.   (BY MS. PIERCE)  Ms. Wagner, do you see Mr. -- wait.

20   Where did it go?  Sorry.  Not opening.  Okay.  Ms. Wagner, do

21   you see this e-mail?  I'll scroll all the way to the bottom.

22        A.   Yes, I do.

23        Q.   There's the originating e-mail from Mr. Luck,

24   Mr. Walden's response, Mr. Decker's response, your response,

25   all of which we have previously discussed, and here Mr.  Walden
```

CINDY WAGNER - VOLUME 2 - 10/20/2021

```
 1    guidelines or you weren't going to document background checks?
 2                  MR. KRASIK:   Cindy, let me caution you not to
 3    reveal the content of communications with counsel.  You can, of
 4    course, state what the policy was.
 5         A.   We did not document a policy, because there was not a
 6    policy.  I believe the next e-mail is Ian Decker responding
 7    with the procedure that he would be responsible for.
 8         Q.   (BY MS. PIERCE)  I just want to make sure I'm
 9    correctly understanding, because I thought earlier you said
10    that the whole point of not documenting was that background
11    checks shouldn't be going back and forth between, you know,
12    more than a select few qualified people; is that correct?
13                  MR. KRASIK:   Objection to form.
14    Mischaracterizes the testimony.  You can answer.
15         A.   Yes.
16         Q.   (BY MS. PIERCE)  So then what would the reason for
17    not documenting these four criteria be?
18         A.   Because we did not have automatic disqualifiers for
19    anyone's background checks, so there was no need to document
20    them when it did not exist.
21         Q.   But, again, you were not a part of that process,
22    correct?
23         A.   I was not part of the review process of background
24    checks that were completed on players, that is correct.
25         Q.   Did the XFL maintain records of the background checks
```

```
 1    that it obtained on players?

 2         A.   I was not responsible for that, so I'm not sure.

 3         Q.   But to your knowledge they didn't immediately destroy

 4    those background checks upon receiving them, as far as you

 5    know?

 6              MR. KRASIK:  Objection.  Form.  Lack of

 7    foundation.  You can answer.

 8         A.   The background checks were done by an external party,

 9    Sterling Background Checks.  I'm not sure what the retention

10    process or procedure was.

11              MS. PIERCE:  Moving to Doc 6, Sara.  Where did

12    it go?  My whole folder just disappeared.  Okay.  Sorry.

13                   (EXHIBIT 147 MARKED)

14         Q.   (BY MS. PIERCE)  Do you see my screen, Ms. Wagner?

15         A.   Yes, I can.

16         Q.   Okay.  And, again -- there is nothing on the second

17    page.  There is the e-mail from Mr. Luck, correct?

18         A.   Correct.

19         Q.   And, again, your response.  And you referenced a few

20    moments ago that Mr. Decker responded and he says, "Our process

21    that is already is on place, is that I discuss any questionable

22    checks with ONLY Oliver.  He will either make the decision on

23    whether to proceed or not.  If necessary, he will go to Vince

24    for final approval.  Due to the sensitivity of this, only

25    Oliver and I will know the background check results.  Any
```

CINDY WAGNER - VOLUME 2 - 10/20/2021

```
 1   questions, please let me know."
 2              Did I read that correctly?
 3       A.   Yes.
 4       Q.   And is this what you were referencing a few moments
 5   ago regarding Mr. Decker's response --
 6       A.   Yes.
 7       Q.   -- about this process?  Sorry.
 8       A.   Sorry.  Yes.
 9       Q.   Okay.  Did you do anything after receiving
10   Mr. Decker's e-mail here confirming whether or not this was
11   actually the process?
12       A.   I confirmed in writing.  I think I said "perfect,"
13   but I did not have a conversation regarding this e-mail, no.
14       Q.   Did you -- to your knowledge, did this process ever
15   change?
16              MR. KRASIK:  Objection to form.  Lack of
17   foundation.
18       A.   I am not aware that it changed.
19       Q.   (BY MS. PIERCE)  Did Mr. Decker inform you that this
20   process ever changed?
21       A.   No, he did not.
22       Q.   Did Mr. Luck ever inform you that this process
23   changed?
24       A.   No.
25       Q.   Did anyone else ever inform you that the process
```

 1    process that is already is on place," Mr. Whaley's response and

 2    your response.  Do you see that, Ms. Wagner?

 3         A.    Yes.

 4         Q.    Okay.  And in Mr. Decker's e-mail he says, "Our

 5    process that is already is on place, is that I discuss any

 6    questionable checks with ONLY Oliver," correct?

 7         A.    Correct.

 8         Q.    Do you know what made a background check

 9    questionable?

10         A.    No, I do not.

11         Q.    Do you know how Ian Decker decided whether a check

12    was questionable?

13         A.    No, I do not.

14         Q.    And I just want to confirm your testimony that there

15    were no automatic disqualifiers for potential players from the

16    XFL, correct?

17         A.    Correct.

18         Q.    And earlier you testified also that the XFL wanted

19    players who were good citizens, correct?

20         A.    Correct.

21         Q.    Wouldn't that then necessarily make a player who was

22    a, quote, "bad citizen" disqualified from the XFL?

23               MR. KRASIK:  Objection to form.

24    Mischaracterizes testimony.  You can answer.

25         A.    It depends on what the results of the background

```
 1   check are.  And those would be evaluated on an individual
 2   basis.
 3        Q.   (BY MS. PIERCE)  But, again, you don't know how they
 4   were evaluated or what criteria Mr. Decker used?
 5        A.   That is correct.
 6        Q.   And did you do anything to confirm what criteria he
 7   was using?
 8        A.   No, I did not.
 9        Q.   Did you do anything to confirm that he was following
10   any criteria he may have had?
11        A.   No, I did not.
12        Q.   And earlier you testified that you disagreed with
13   Mr. Luck's four criteria, but you did not correct it, because
14   he was your boss and you wanted to be agreeable.  Is that a
15   fair statement?
16             MR. KRASIK:  Objection to form.
17   Mischaracterizes testimony.  You can answer.
18        A.   I responded to an e-mail in a polite and professional
19   way and communicated that we were going to have an additional
20   separate conversation regarding it.  I did not agree or not
21   agree with the criteria in that particular e-mail.
22        Q.   (BY MS. PIERCE)  Did you have separate conversations
23   with Mr. Luck stating these four criteria are not the criteria
24   to be used?
25        A.   I --
```

```
 1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF CONNECTICUT
 2

 3    OLIVER LUCK                 )
                                  )
 4         Plaintiff              )
                                  )   CIVIL NO. 3:20-cv-00516-VAB
 5    v.                          )
                                  )
 6    VINCENT K. MCMAHON and      )
      ALPHA ENTERTAINMENT LLC     )
 7                                )
           Defendant.             )
 8
                       REPORTER'S CERTIFICATION
 9                      ORAL DEPOSITION OF
                           CINDY WAGNER
10                            VOLUME 2
                        TAKEN OCTOBER 20, 2021
11

12         I, Sara T. Green, Certified Shorthand Reporter in and for

13    the State of Texas, hereby certify to the following:

14         That the witness, CINDY WAGNER, was duly sworn by the

15    officer and that the transcript of the oral deposition is a

16    true record of the testimony given by the witness;

17         I further certify that pursuant to FRCP Rule 30(f)(1) that

18    the signature of the deponent:

19         __X___ was requested by the deponent or a party before the

20    completion of the deposition and returned within 30 days from

21    date of receipt of the transcript.  If returned, the attached

22    Changes and Signature Page contains any changes and the reasons

23    therefor;

24         _____ was not requested by the deponent or a party before

25    the completion of the deposition.
```

CINDY WAGNER - VOLUME 2 - 10/20/2021

1      I further certify that I an neither attorney nor counsel

2   for, related to, nor employed by any of the parties to the

3   action in which this testimony was taken.  Further, I am not a

4   relative or employee of any attorney of record in this cause,

5   nor am I financially or otherwise interested in the outcome of

6   the action.

7      Subscribed and sworn to on this the 3rd day of November,

8   2021.

9

10

11

12   _____

13   SARA T. GREEN, Texas CSR #2436
     Certification expires: 04-30-2023
14   HANNA & HANNA, INC.
     CRF - 10434 - Expiration: 10-31-2022
15   8582 Katy Freeway, Suite 105
     Houston, Texas  77024
16   713.840.8484 - 713.583.2442
     www.hannareporting.com

17

18

19

20

21

22

23

24

25