# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

OLIVER LUCK          §
         §
    *Plaintiff*        §
         §
v.                 §               CIVIL NO. 3:20-cv-516 (VAB)
         §
VINCENT K. MCMAHON and      §
ALPHA ENTERTAINMENT, LLC     §
         §                       June 3, 2022
    *Defendants.*     §

## JOINT TRIAL MEMORANDUM

**PLAINTIFF OLIVER LUCK**

Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, LLP.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**PLAINTIFF'S ATTORNEYS**

**DEFENDANTS VINCENT K. MCMAHON and ALPHA ENTERTAINMENT LLC**

Jerry S. McDevitt *(pro hac vice)*
Curtis B. Krasik *(pro hac vice)*
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

**DEFENDANTS' ATTORNEYS**

# TABLE OF CONTENTS

1. Trial Counsel ...................................................................................................................... 1

2. Jurisdiction........................................................................................................................... 1

3. Jury/non-jury ....................................................................................................................... 1

4. Nature of case ..................................................................................................................... 2

    A. As stated by Plaintiff, Oliver Luck ........................................................................... 2

    B. As stated by Defendants, Vincent K. McMahon and Alpha Entertainment, LLC ........ 3

5. Stipulations of Fact and law ............................................................................................... 4

6. Plaintiff's contentions ........................................................................................................ 6

7. Defendants' contentions ..................................................................................................... 8

8. Legal issues........................................................................................................................ 10

    A. Plaintiff's legal issues ............................................................................................ 10

    B. Defendants' legal issues ......................................................................................... 12

9. Voir dire questions ............................................................................................................ 12

10. List of witnesses ............................................................................................................... 13

    A. Plaintiff's witness list............................................................................................ 13

    B. Defendants' witness list ......................................................................................... 15

11. List of exhibits and objections.......................................................................................... 16

    A. Plaintiff's anticipated exhibit list ......................................................................... 16

    B. Defendants' anticipated exhibit list ....................................................................... 17

12. Deposition testimony ........................................................................................................ 17

    A. Plaintiff's anticipated use of deposition testimony ............................................... 17

    B. Defendants' anticipated use of deposition testimony ............................................ 17

13. Requests for jury instructions ........................................................................................... 18

    A. Plaintiff's proposed jury instructions .................................................................... 18

    B. Defendants' proposed jury instructions ................................................................. 18

14. Anticipated evidentiary problems...................................................................................... 18

    A. Plaintiff's Anticipated evidentiary problems ......................................................... 18

    B. Defendants' Anticipated evidentiary problems ...................................................... 18

15. Proposed findings and conclusions ................................................................................... 18

16. Trial time ........................................................................................................................... 19

17. Courtroom technology ....................................................................................................... 19

18. Further proceedings ........................................................................................................... 19

    A.  As Agreed By the Parties: ........................................................................... 19

    B.  As stated by Plaintiff: .............................................................................. 19

    C.  As stated by Defendants: .......................................................................... 19

19.  Election for trial by magistrate judge ............................................................. 19

Plaintiff Oliver Luck ("Luck") and Defendants Alpha Entertainment LLC ("Alpha") and Vincent K. McMahon (collectively, the "Defendants") respectfully submit this Joint Trial Memorandum.

## 1. TRIAL COUNSEL

### Counsel for Plaintiff:

**Paul J. Dobrowski** (phv10563)
**Vanessa L. Pierce** (phv10561)
**Jared A. McHazlett** (phv10650)
DOBROWSKI STAFFORD, L.L.P.
4061 Washington Avenue, Suite 200
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

**Andrew M. Zeitlin** (ct21386)
**Joette Katz** (ct30935)
**Sarah E. Gleason** (ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, CT 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: sgleason@goodwin.com

### Counsel for Defendants:

**Jerry S. McDevitt** (pro hac vice)
**Curtis B. Krasik** (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

**Jeffrey P. Mueller** (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

## 2. JURISDICTION

Jurisdiction is conferred on this Court by 28 U.S.C. § 1332(a)(2).

## 3. JURY/NON-JURY

The parties agree that this case shall be a jury trial.

## 4. NATURE OF CASE

### A. As stated by Plaintiff, Oliver Luck

The Plaintiff, Oliver Luck, brings claims for breach of contract, including breach of guaranty, and seeks declaratory judgment in accordance with 28 U.S. § 2201. These claims are based on Defendants' failure and refusal to abide by their express agreements to pay Mr. Luck the funds he is owed under his Employment Contract. Despite fulfilling his obligations as Commissioner and CEO of the XFL, a professional league owned by Defendant Alpha Entertainment, LLC, Mr. Luck was wrongfully terminated by Alpha on April 9, 2020, allegedly for cause. Defendants' termination was a sham designed to evade Defendant Vincent McMahon's obligations under the Guaranty for payment of Mr. Luck's salary, bonuses, and the aggregate amount of premiums for coverage for Mr. Luck and his dependents.

Mr. Luck brings this action for (1) a declaratory judgment against Alpha for Mr. Luck's wrongful termination under the Employment Contract and (2) breach of contract against Mr. McMahon for breaching his obligations under the Guaranty.

Following the Court's Ruling and Order, ECF 423, dated February 11, 2022, the sole remaining issues for trial are: (1) whether the hiring and termination of Mr. Callaway was a permissible, enumerated reason for terminating Mr. Luck for cause, and (2) even if it was, whether the hiring and firing of Mr. Callaway could have been reasonably susceptible to cure. The hiring and firing of Antonio Callaway was not a material business decision, was not a violation of any XFL policy or directive, was not in violation of Mr. Luck's Employment Contract, and even if it was, it was reasonably susceptible to cure. Defendants repudiated and breached the Employment Contract by failing to provide Mr. Luck with written notice and 30 days opportunity to cure.

As set forth in the Employment Contract, Mr. Luck seeks and is entitled to receive: "(i) the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable

to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations plus (iii) the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following" the April 9, 2020 termination. Excluding prejudgment interest and offer of compromise interest, Mr. Luck seeks as damages: (a) $23,902,301 as the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of the Employment Contract[1] plus (b) either $48,667 as the aggregate amount of premiums for coverage of benefits that he was receiving immediately prior to termination or $124,712.05, which represents Mr. Luck's cost to obtain benefits on the open market like those he received immediately prior to his termination.

### B.  As stated by Defendants, Vincent K. McMahon and Alpha Entertainment, LLC

Mr. Luck seeks a declaratory judgment that Alpha terminated his Employment Contract without Cause.  Mr. Luck asserts a breach of contract claim for damages against Mr. McMahon alleging that Mr. McMahon breached a Guaranty agreement by failing to pay him amounts owed under the Employment Contract.

Defendants maintain that Mr. Luck was terminated for Cause under the Employment Contract and is not owed any money under the Employment Contract or the Guaranty.  Defendants maintain that Cause existed under the Employment Contract because (i) Mr. Luck intentionally failed to follow applicable XFL policies or directives regarding factors disqualifying players from the XFL in connection with both the hiring of, and failure to terminate, Antonio Callaway; and (ii) Mr. Luck willfully disregarded the lawful instructions of Mr. McMahon concerning his material

---

[1] This amount consists of the $8,000,000 remaining of Mr. Luck's total $10,000,000 Guaranteed Annual Bonuses, and $15,902301 remaining of Mr. Luck's total $25,000,000 Base Salary.

duties under the Employment Contract first by hiring Antonio Callaway and secondly by failing to terminate Mr. Callaway after being told to do so on January 28, 2020.

Mr. Luck's actions and omissions were not reasonably susceptible to cure because he legally bound Alpha to pay Callaway a bonus of $125,000 when he signed Callaway's contract on January 23, 2020 and because Callaway could not be terminated after being injured in practice when Mr. Luck failed to carry out the directive to terminate him. Thus, no notice or opportunity to cure was required to be given to Mr. Luck.

Defendants further maintain that Mr. Luck is not entitled to any bonus payments in any event because he was terminated prior to the scheduled payment date under the Employment Contract. Alpha seeks damages for the harm caused by Mr. Luck's breaches of the Employment Contract, including the payments made to Mr. Callaway under his contract and the workers compensation benefits for Mr. Callaway.

## 5. STIPULATIONS OF FACT AND LAW

The parties agree to the following stipulations of fact and law:

1. On or about May 30, 2018, Oliver Luck and Defendant Alpha Entertainment LLC ("Alpha") entered into the Contract for Employment as Commissioner and CEO of the XFL, a professional football league (the "Employment Contract").

2. Mr. Luck and Defendant Vincent K. McMahon, as owner of Alpha, signed the Employment Contract.

3. The four criteria set forth in Mr. Luck's July 17, 2019 email were: (1) any felony charge or conviction; (2) any credible allegation of domestic violence; (3) any repeat misdemeanor, i.e., 2x or more; and (4) any conviction of distributing illegal drugs.

4. On January 16, 2020, Antonio Callaway signed an XFL player contract.

5. On January 17, 2020, Brad Blum, Executive Vice President Operations for World Wrestling Entertainment, Inc. ("WWE"), sent an email to Mr. McMahon attaching an article from TMZ Sports entitled "Antonio Callaway Signs with XFL's Tampa Bay Vipers." The article described Mr. Callaway as "troubled" and stated that he had "several suspensions for off-field incidents" while playing in the National Football League. The

article further states that the XFL has "backtracked" on "its zero-tolerance policy on players having a criminal record."

6. On January 18, 2020, Mr. McMahon and Mr. Luck had a telephone call discussing potential XFL players.

7. On January 23, 2020, Mr. Luck, on behalf of Alpha, signed the XFL Standard Player Contract by and between Alpha and Antonio Callaway.

8. On January 28, 2020, at approximately 11:15 p.m. EST, Mr. McMahon instructed Mr. Luck to terminate Mr. Callaway's employment with the XFL.

9. On January 29, 2020, Mr. Luck had two phone calls with Antonio Callaway's head coach, Marc Trestman, about Callaway—one call at 7:13 am ET that lasted for five minutes and a second call at 8:34 am ET that lasted for four minutes.

10. Antonio Callaway practiced on January 29, 2020, during which he suffered a knee injury that required him to be placed on injured reserve.

11. In an email sent on January 31, 2020, Cindy Wagner, XFL Senior Director of People & Culture, informed Jeffrey Pollack, XFL President and Chief Operating Officer, that Alpha "should not be terminating anyone who is on IR/Workers compensation. This can be considered retaliation and wrongful termination."

12. Alpha paid Antonio Callaway a total of $158,950.63, including salary and a one-time signing bonus of $125,000.

13. Antonio Callaway's signing bonus was paid on February 14, 2020.

14. Alpha paid a total of $29,226.09 in workers compensation benefits for Antonio Callaway.

15. On April 9, 2020, Alpha terminated Mr. Luck via letter signed by Attorney McDevitt (the "Termination Letter").

16. The Termination Letter terminated Mr. Luck's contract "effective immediately, for cause."

17. Alpha sent, and Mr. Luck received, a letter dated April 9, 2020 advising Mr. Luck that he was being terminated for Cause.

18. The Termination Letter cited the hiring of Mr. Callaway and the failure to terminate Mr. Callaway immediately as grounds for terminating Mr. Luck's employment for cause.

19. Mr. Luck was paid a total of $11,097,699.11, including base salary and one $2,000,000 bonus payment.

## 6. PLAINTIFF'S CONTENTIONS

Defendant Alpha Entertainment LLC ("Alpha") terminated Plaintiff Oliver Luck's employment as Commissioner and CEO of the XFL allegedly for Cause. In reality, however, Alpha terminated Mr. Luck without Cause – in other words, without a reason that is permitted under Mr. Luck's employment agreement. Simply put, Mr. Luck's termination was motivated by the desire of Alpha's owner, Defendant Vincent K. McMahon, to avoid Mr. McMahon's unconditional obligation to pay Mr. Luck $24 million, the remaining amount due to Mr. Luck under his employment contract (the "Employment Contract"). Mr. McMahon had signed a personal Guaranty ("Guaranty") of Alpha's obligations to pay all amounts due to Mr. Luck under his five-year employment agreement with Alpha.

In May 2018, Mr. Luck and Alpha entered into the Employment Contract. Under that agreement, Mr. Luck was to serve as Commissioner and CEO of the XFL for a five-year term, beginning on July 1, 2018. Alpha agreed to pay Mr. Luck a base salary of $5 million per year, plus a guaranteed annual bonus of $2 million, for a total of $7 million per year. Alpha also agreed to provide certain health insurance and other benefits to Mr. Luck and his dependents. At the same time, Mr. McMahon issued his personal Guaranty of payment in favor of Mr. Luck, and Mr. McMahon expressly agreed this his Guaranty was absolute, irrevocable, unconditional and binding on him.

In March 2020, shortly after the outbreak of COVID-19, Mr. McMahon decided to end the XFL season due to the pandemic. Within a matter of a few weeks, Alpha also decided to file for bankruptcy protection. Just two business days before filing for bankruptcy, Alpha sent Mr. Luck a letter, terminating his employment. The termination was based on a trumped-up, pretextual claim – which neither Alpha nor Mr. McMahon had ever previously communicated to Mr. Luck –

claiming that Mr. Luck violated his Employment Contract by signing a single player, Antonio Callaway, to an XFL contract, supposedly against Mr. McMahon's instructions.

The April 9, 2020 termination of Mr. Luck was remarkable for several reasons. First, the incident for which Mr. Luck supposedly deserved to be fired for cause under the Employment Contract took place more than two months before Alpha terminated Mr. Luck. On January 23, 2020, Mr. Luck signed Mr. Callaway's XFL contract. Second, Mr. Callaway was on an active XFL roster for less than one week of training camp (at which point he suffered a season-ending injury, was removed from the team, and placed on the Injured Reserve list) and never played a single down in a single XFL football game. Third, after Mr. Callaway was placed on Injured Reserve, neither Mr. McMahon nor anyone else at the XFL provided Mr. Luck with written notice that he had violated any XFL directive or policy, had disregarded the lawful instructions of Mr. McMahon, or had in any way breached his contract. Mr. Luck had an important clause in his Employment Contract. That clause provided that, before Alpha could terminate Mr. Luck's employment for Cause – which would deprive Mr. Luck of the remaining amounts due to him under his Employment Contract – Alpha was obligated to provide Mr. Luck with written notice of the circumstance that supposedly constituted Cause and was obligated to give Mr. Luck thirty days to cure the issue, if it was susceptible to cure. Here, any issue Alpha or Mr. McMahon had regarding the handling of Antonio Callaway certainly could have been cured if Alpha had provided notice to Mr. Luck. Mr. Luck could have cured the problem, if Alpha or Mr. McMahon truly believed it was a problem, by reimbursing Alpha for any costs associated with Antonio Callaway's brief stay in the XFL. Defendants, never gave any notice, written or otherwise, to Mr. Luck, and therefore did not give him an opportunity to cure the supposed problem.

Mr. Luck contends that his termination as Commissioner should be treated for what it clearly was – a sham termination in blatant violation of his Contract. Accordingly, Mr. Luck is entitled to an award against Mr. McMahon on the Guaranty equal to the full amount remaining on Mr. Luck's Employment Contract.

## 7. DEFENDANTS' CONTENTIONS

On May 30, 2018, Luck entered into an Employment Contract with Alpha. The Employment Contract provided that Luck's employment "may be terminated by Alpha at any time, with or without Cause." Under the Employment Contract, Alpha had Cause to terminate Luck's employment for any one of six specified circumstances, including (i) Luck's "intentional failure to follow any applicable XFL policies or directives" and (ii) Luck's "willful disregard of the lawful instructions of Mr. McMahon concerning his material duties hereunder."

From the inception of the XFL, Mr. McMahon made clear that the league would only hire players with good character. At a January 25, 2018 press conference announcing the launch of the XFL, Mr. McMahon stated that the quality of the human beings in the league was as important as the quality of the players and that he did not want anyone with any criminality associated with them to play in the league. Mr. McMahon's directives were fundamental to his vision for the XFL brand. Mr. Luck was well aware of Mr. McMahon's directives in this regard, and once indicated to a third party he would lose his job if he did not comply with Mr. McMahon's directives.

On January 18, 2020, Mr. Luck admits he was told not to allow one player (Martavis Bryant) to play in the league because he had been suspended by the NFL for violations of the NFL's substance abuse policy in his past. Mr. Luck admits he was also told during the same call not to allow another player (Levern Jacobs) to play in the league because he had been accused of sexual assault while an undergraduate. By the time of the call on January 18, 2020, Mr. Luck knew Antonio Callaway had those disqualifying factors, plus an extensive criminal record which

included felony charges and multiple misdemeanors. Mr. McMahon asserts he told Mr. Luck not to let Callaway in the league during the same call on January 18th. Mr. Luck's version is that Callaway was not discussed, yet admits he did not tell Mr. McMahon any of the disqualifying factors he knew regarding Callaway during the call on January 18th.

Defendants contend that Mr. Luck was terminated for Cause under the two aforementioned provisions of his Employment Contract because he intentionally hired Callaway in violation of XFL policy and Mr. McMahon's directives first by signing a contract with Callaway on January 23, 2020 that committed Alpha to pay Callaway a $125,000 signing bonus, and such violation could not be cured. Mr. Luck further intentionally failed to follow a specific directive of Mr. McMahon given to him on January 28, 2020 to terminate Callaway. Instead of doing so, Mr. Luck gave permission for Callaway to practice on January 29, 2020, during which Callaway was injured. Once injured, Callaway could not legally be terminated and Alpha became irreversibly obligated to pay the sums due under his contract and workers compensation benefits. For that reason, as well as other reasons to be proven at trial, including, but not limited to, the deceit of Mr. Luck towards Mr. McMahon and other XFL executives in connection with Callaway, no cure was possible. Because no cure was possible, no notice or opportunity to cure were required to be given to Mr. Luck under the terms of his Employment Contract before terminating him.

Mr. Luck's Employment Contract expressly stated it could be terminated at any time, and contained no time limit on when Alpha could exercise its right to terminate for Cause. Thus, on April 9, 2020, Alpha terminated Mr. Luck for Cause under the Employment Contract as a result of Luck's intentional failure to follow McMahon's directives and willful disregard of McMahon's instructions concerning his duties. For these same reasons, Alpha contends that Mr. Luck breached the Employment Contract and has no legitimate affirmative defenses, including waiver or estoppel,

to Alpha's breach of contract counterclaims. Alpha seeks damages for the harm caused by Mr. Luck's breaches of the Employment Contract related to Callaway, including payments made to Callaway under his contract and the workers compensation benefits for Callaway, in the aggregate amount of $188,176.72.

## 8. LEGAL ISSUES

### A. Plaintiff's legal issues

1. Plaintiff refers to his Motions in Limine and his Brief in Support of Plaintiff's Contentions for further answer, to be filed on June 3, 2022 per the Court's February 25, 2022 Order [ECF No. 432].

2. Evidence Regarding the Approval or Disapproval by Vince McMahon of Players Other than Antonio Callaway. *See* Motion in Limine. Generally, evidence of and arguments related to other players concerning the reasons why they were not allowed to play in the XFL should be excluded because any probative value regarding these topics is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and needlessly presenting cumulative evidence.

3. Discovery Sanctions. *See* Motion in Limine. Generally, any statement, evidence, argument, reference, or assertion relating to Mr. Luck's purported spoliation of evidence should be excluded because the Court already has provided monetary sanctions and did not make findings that would be necessary for an adverse inference sanction.

4. The specific provisions of the Employment Contract should prevail over general provisions, including those general provisions related to Defendants' policies or directives, gross negligence, or intentional conduct. *See* Motion in Limine.

5. The Court should Exclude All Arguments that were Rejected by the Court in the February 11, 2022 Order and Ruling. *See* Motion in Limine. Generally, the Court has rejected the Defendants' reasons for Cause based on: Mr. Luck's activities related to stadium selection, Mr. Luck's alleged failure to perform his XFL duties between March 13, 2020, and April 9, 2020, Mr. Luck's personal use of his XFL iPhone for any purpose, after-acquired evidence of any kind, and disclosure of alleged confidential material to Kathy Luck, Will Wilson, or Wasserman.

6. Bonuses. Defendants assert that Mr. Luck is not entitled to the remaining bonuses (totaling $8 million) under his Employment Contract because the Employment Contract provides that Mr. Luck will be paid a Guaranteed Annual Bonus "on the last day of each Contract Year, subject to his continued employment on the scheduled payment date," and Mr. Luck was terminated before that date. However,

the Employment Contract states that upon termination without Cause, Mr. Luck "will be entitled to receive . . . the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods)." Thus, even if Mr. Luck was not employed on the scheduled payment date, as a matter of law, he still is entitled to receive the Guaranteed Annual Bonuses through the remaining scheduled term of the contract should the jury find that Mr. Luck was terminated without Cause.

7. Insurance payments. Defendants assert that Mr. Luck is not entitled to any premiums for coverage that he and his dependents were receiving immediately prior to his termination because Mr. Luck himself was paying for those premiums out of his salary. However, the Employment Contract states that upon termination without Cause, Mr. Luck "will be entitled to receive . . . the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination." Thus, even if Mr. Luck was paying for those premiums, as a matter of law, he still is entitled to receive the premiums for those benefits for a period of 24 months should the jury find that Mr. Luck was terminated without Cause.

8. Damages. If the jury finds that Mr. Luck was terminated without Cause, then Mr. Luck's damages, not including prejudgment interest or offer of compromise interest, and not including the aggregate amount of insurance premiums, are determined as a matter of law by the express language of the Employment Contract. Namely, Mr. Luck "will be entitled to receive . . . (i) the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations plus (iii) the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination." *See* Plaintiff's Brief in Support of Calculating Plaintiff's Damages as a Matter of Law.

9. Notice and Cure. In order for Defendants to be excused from providing notice and opportunity to cure, the Defendants must prove that the breach involved deceptive conduct that goes to the essence of the contract and fundamentally destroys the parties' relationship.

10. Definition of reasonably susceptible to cure. As detailed in Plaintiff's Motion for Summary Judgment and Accompanying Memorandum of Law [ECF No. 380] and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [ECF 400], "reasonably susceptible to cure" means to be reasonably capable of removing the legal defect (i.e., the material breach) such that it is no longer material.

11. Policy must be material. The "XFL policy or directive" must be a material policy.

12. Plaintiff will respond to Defendants' motions in limine on June 10, 2022, per the Court's February 25, 2022 Order [ECF No. 432]. Plaintiff disagrees with Defendants' Legal Issues because they are not legal issues, except for "Whether Mr. Luck is entitled to the payment of annual bonuses under the Employment Contract when he is not employed on the scheduled payment date for such bonuses," which Plaintiff identifies as a legal issue in Items 6 and 8, *supra*. All other of Defendants' "Legal Issues" are fact issues for the jury.

**B. Defendants' legal issues**

- Whether Mr. Luck's hiring of Antonio Callaway was a permissible, enumerated reason for terminating Mr. Luck for cause under the Employment Contract.

- Whether Mr. Luck's hiring of Antonio Callaway could have been reasonably susceptible to cure.

- Whether Mr. Luck's failure to terminate Antonio Callaway was a permissible, enumerated reason for terminating Mr. Luck for cause under the Employment Contract.

- Whether Mr. Luck's failure to terminate Antonio Callaway could have been reasonably susceptible to cure.

- Whether Mr. Luck is entitled to the payment of annual bonuses under the Employment Contract under any circumstances when he was not employed on the scheduled payment date for such bonuses, which is a condition precedent to any bonus payment.

- Whether Mr. Luck breached the Employment Contract.

- Other legal issues are identified in the motions *in limine* to be filed by Defendants on June 3, 2022 per the Court's February 25, 2022 Order (ECF No. 432).

**9. VOIR DIRE QUESTIONS**

Plaintiff and Defendants submit their Proposed Voir Dire Questions as detailed in Exhibit

A hereto. Specifically, Exhibit A contains:

- Questions Agreed to by the Parties, Ex. A at 1-5,

- Questions Requested by Plaintiff, Ex. A at 5-7, and

- Questions Requested by Defendants, Ex. A at 7.

## 10. LIST OF WITNESSES

### A. Plaintiff's witness list

In alphabetical order by last name:

| Name | Brief Statement of Anticipated Testimony |
|------|------------------------------------------|
| Eric Galko – may call<br><br>c/o Paul J. Dobrowski<br>Dobrowski, Larkin &<br>Stafford L.L.P.<br>4601 Washington Ave., Suite 300<br>Houston, Texas 77007 | Mr. Galko may testify regarding: (a) the hiring of Antonio Callaway; (b) his communications and interactions with Mr. Luck and other XFL employees regarding same;(c) the termination of Antonio Callaway and his placement on injured reserve; (d) his communications and interactions with Mr. Luck and other XFL employees and Mr. Callaway's agent regarding the same; (e) the XFL's policy, or lack thereof, regarding the hiring of players including the July 2019 emails exchanged regarding the same. |
| Jeffrey Hogan – intend to call<br><br>c/o Paul J. Dobrowski<br>Dobrowski, Larkin &<br>Stafford L.L.P.<br>4601 Washington Ave., Suite 300<br>Houston, Texas 77007 | Mr. Hogan may testify regarding the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination. |
| Adoria Lim – intend to call<br><br>c/o Paul J. Dobrowski<br>Dobrowski, Larkin &<br>Stafford L.L.P.<br>4601 Washington Ave., Suite 300<br>Houston, Texas 77007 | Ms. Lim may testify regarding the quantitative materiality of Mr. Callaway's employment with the XFL. |
| Oliver Luck – intend to call<br><br>c/o Paul J. Dobrowski<br>Dobrowski, Larkin &<br>Stafford L.L.P.<br>4601 Washington Ave., Suite 300<br>Houston, Texas 77007 | Mr. Luck may testify regarding: (a) his Employment Contract and his rights, duties and obligations under it; (b) his performance of his XFL duties; (c) the hiring of Antonio Callaway; (d) his communications and interactions with Mr. Mr. McMahon and other XFL employees regarding the same;(e) the termination of Antonio Callaway and his decision to place Mr. Callaway on injured reserve; (f) his communications and interactions with Mr. McMahon and other XFL employees regarding the same; (g) the XFL's policy regarding the hiring of players including the July 2019 emails exchanged regarding the same; (h) his communications and interactions with Mr. McMahon and other XFL employees regarding the same; (i) |

| | |
|---|---|
| | Defendants' failure to provide Mr. Luck with written notice and a thirty (30) day opportunity to cure; and (j) Alpha's termination of Mr. Luck for Cause. |
| Vincent K. McMahon – intend to call<br><br>c/o Jerry S. McDevitt<br>K&L Gates LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222 | Mr. McMahon may testify regarding: (a)  his Employment Contract and  his rights, duties and obligations under it; (b) his performance of his XFL duties; (c) the hiring of Antonio Callaway; (d) his communications and  interactions with Mr. Luck and other XFL employees regarding the same;(e) the termination of Antonio Callaway and the decision to  place Mr. Callaway on injured reserve; (f) his communications and interactions with Mr. Luck and other XFL employee regarding the same; (g) the XFL's policy, or lack thereof,  regarding the hiring of players including the July  2019 emails exchanged regarding the same; (h) Mr. McDevitt's investigation into the Antonio Callaway situation beginning January 30, 2020; (i) Mr. McDevitt's investigation in late March – early April 2020 regarding Mr. Luck's employment; (j) the failure to provide Oliver Luck with written notice or a thirty (30) day opportunity to cure; (k) the decision to file bankruptcy by Alpha; and (l) the termination of Oliver Luck for Cause. |
| Jeffrey Pollack – intend to call<br><br>c/o Jerry S. McDevitt<br>K&L Gates LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222 | Mr. Pollack may testify regarding: (a)  his Employment Contract and  his rights, duties and obligations under it; (b) his performance of his XFL duties; (c) the hiring of Antonio Callaway; (d) his communications and interactions with Mr. Luck and other XFL employees regarding the same;(e) the termination of Antonio Callaway and the decision to  place Mr. Callaway on injured reserve; (f) his communications and interactions with Mr. Luck and other XFL employee regarding the same; (g) the XFL's policy, or lack thereof,  regarding the hiring of players including the July  2019 emails exchanged regarding the same; (h) Mr. McDevitt's investigation into the Antonio Callaway situation beginning January 30, 2020; (i) Mr. McDevitt's investigation in late March – early April 2020 regarding Mr. Luck; (j) the failure to provide Oliver Luck with written notice or a thirty (30) day opportunity to cure; (k) the decision to file bankruptcy by Alpha; and (l) the  termination of Oliver Luck for cause |
| Cindy Wagner – intend to call<br><br>c/o Jerry S. McDevitt<br>K&L Gates LLP<br>K&L Gates Center<br>210 Sixth Avenue | Ms. Wagner will testify regarding: (a) the XFL's policy, or lack thereof, regarding the hiring of players including the July 2019 emails exchanged regarding the same; (b) the use of an individual, case-by-case approach for determining whether an individual would be permitted to play in the league when needed to supplement the background check process; and (c) the |

| | |
|---|---|
| Pittsburgh, PA 15222 | facts and circumstances surrounding the hiring of Antonio Callaway and the decision to place Mr. Callaway on injured reserve; (d) her communications and interactions with Mr. Luck and other XFL employees regarding the same; (e) Mr. McDevitt's investigation in late March – early April 2020 regarding Mr. Luck; (f) the failure to provide Oliver Luck with written notice or a thirty (30) day opportunity to cure; (g) the decision to file bankruptcy by Alpha; and (h) the termination of Oliver Luck for cause. |
| Doug Whaley – intend to call<br><br>c/o Paul J. Dobrowski<br>Dobrowski, Larkin & Stafford L.L.P.<br>4601 Washington Ave., Suite 300<br>Houston, Texas 77007 | Mr. Whaley may testify about (a) the hiring of Antonio Callaway; (b) his communications and interactions with Mr. Luck and other XFL employees regarding same;(c) the termination of Antonio Callaway and his placement on injured reserve; (d) his communications and interactions with Mr. Luck, other XFL employees and Mr. Callaway's agent regarding same; (e) the XFL's policy, or lack thereof, regarding the hiring of players including the July 2019 emails exchange regarding same. |

## B. Defendants' witness list

Defendants intend to call the following witnesses:

| Name | Address | Brief Statement of Anticipated Testimony |
|---|---|---|
| Oliver Luck | c/o Paul J. Dobrowski<br>Dobrowski, Larkin & Stafford L.L.P.<br>4601 Washington Ave., Suite 300<br>Houston, Texas 77007 | Mr. Luck will testify regarding, among other things, (i) his interactions with Mr. McMahon and other XFL executives; (ii) his knowledge of XFL policies and Mr. McMahon's directives about player hiring, including, specifically, with respect to, Antonio Callaway; and (iii) his intentional failure to follow such policies and directives. |
| Vincent K. McMahon | c/o Jerry S. McDevitt<br>K&L Gates LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222 | Mr. McMahon will testify regarding, among other things, (i) his interactions with Mr. Luck; (ii) XFL policies and his directives about player hiring, including, specifically, |

| Name | Address | Brief Statement of Anticipated Testimony |
|---|---|---|
| | | with respect to Antonio Callaway; (iii) Mr. Luck's repeated efforts to deceive him about Antonio Callaway; and (iv) his view of Mr. Luck following the situation involving Antonio Callaway. |

Defendants may call the following additional witnesses:

| Name | Address | Brief Statement of Anticipated Testimony |
|---|---|---|
| Jeffrey Pollack | c/o Jerry S. McDevitt<br>K&L Gates LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222 | Mr. Pollack may testify regarding, among other things, (i) his interactions with Mr. Luck; (ii) his knowledge of XFL policies and Mr. McMahon's directives about player hiring; and (iii) concerns raised by XFL senior executives about Antonio Callaway to Luck. |
| Basil DeVito | c/o Jerry S. McDevitt<br>K&L Gates LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222 | Mr. DeVito may testify regarding, among other things, (i) his interactions with Mr. Luck; (ii) his knowledge of XFL policies and Mr. McMahon's directives about player hiring; and (iii) concerns he raised about Antonio Callaway to Luck. |
| Alex Fairly | Fairly Group<br>1800 S. Washington, Suite 400<br>Amarillo, Texas 79102 | Mr. Fairly may testify about Antonio Callaway's workers compensation claim. |

## 11. LIST OF EXHIBITS AND OBJECTIONS

### A.  Plaintiff's anticipated exhibit list

Attached as "Plaintiff's Exhibit B" is a list of the exhibits Plaintiff intends to or may use during his case-in-chief.

Plaintiff reserves the right to use pleadings, declarations, discovery materials, exhibits designated by Defendants or other materials appropriate for impeachment, if the need arises.

Plaintiff further reserves the right to utilize demonstrative exhibits, including, without limitation, illustrations, summaries, charts, PowerPoint presentations, and enlargements of portions of exhibits, in accordance with the Court's Trial Preferences.

**B.  Defendants' anticipated exhibit list**

Attached as "Defendants' Exhibit B" is a list of the exhibits that Defendants intend to use or may use in their case-in-chief.

Defendants reserve the right to use pleadings, declarations, discovery materials, exhibits designated by Plaintiff or other materials appropriate for impeachment, if the need arises.

Defendants further reserve the right to utilize demonstrative exhibits, including, without limitation, illustrations, summaries, charts, PowerPoint presentations, and enlargements of portions of exhibits, in accordance with the Court's Trial Preferences.

**12. DEPOSITION TESTIMONY**

**A.  Plaintiff's anticipated use of deposition testimony**

Plaintiff's Designation of Deposition Testimony is attached as "Plaintiff's Exhibit C." Plaintiff reserves the right to designate any deposition testimony based upon any deposition designation offered by any Defendant.

**B.  Defendants' anticipated use of deposition testimony**

Defendants intend to offer the deposition testimony of Basil DeVito, Marc Trestman, Eric Galko, and Doug Whaley (if he does not testify live at trial) identified in "Defendants' Exhibit C". Defendants also reserve the right to designate any deposition testimony based upon any deposition designations offered by Plaintiff.

### 13. REQUESTS FOR JURY INSTRUCTIONS

#### A. Plaintiff's proposed jury instructions

Plaintiff's Proposed Jury Instructions are attached as "Plaintiff's Exhibit D." Additionally, although Plaintiff does not include proposed "Pre-Evidence" Jury Instructions because he does not presume the Court requires them, Plaintiff has such proposed instructions available for the Court upon the Court's request. Plaintiff submits his proposed Jury Verdict form as "Plaintiff's Exhibit E."

#### B. Defendants' proposed jury instructions

Defendants' requests for the jury charge are set forth in "Defendants' Exhibit D." Defendants submit their proposed Jury Verdict form as "Defendants' Exhibit E."

### 14. ANTICIPATED EVIDENTIARY PROBLEMS

#### A. Plaintiff's Anticipated evidentiary problems

*See* Plaintiff's Motion in Limine, filed on June 3, 2022, per the Court's February 25, 2022 Order (ECF No. 432). Plaintiff acknowledges that he has objected to many of Defendants' exhibits. However, Plaintiff believes that the Court's resolution of a limited number of Plaintiff's motions *in limine* will resolve the many objections – one way or the other – such that the objections should not interfere with the progress of trial.

#### B. Defendants' Anticipated evidentiary problems

Anticipated evidentiary problems are addressed by Defendants' motions *in limine*, which will be filed on June 3, 2022 per the Court's February 25, 2022 Order (ECF No. 432).

### 15. PROPOSED FINDINGS AND CONCLUSIONS

N/A

**16. TRIAL TIME**

      **Plaintiff** anticipates the entire trial will take 5 full days, including closing. Plaintiff anticipates completing his case in chief within 3 days.

      **Defendants** anticipate that five to seven trial days will be required.

**17. COURTROOM TECHNOLOGY**

      **Plaintiff and Defendants** request use of courtroom technology and will timely submit Requests for Courtroom Technology Form to the Court.

**18. FURTHER PROCEEDINGS**

    **A. As Agreed By the Parties:**

      1. Rulings on Motions in Limine

      2. The formal charge conference and objections

    **B. As stated by Plaintiff:**

      1. Plaintiff has served a trial subpoena duces tecum on Defendant Vincent McMahon requesting that Mr. McMahon provide communications and reports from the executive search firm Korn Ferry relating to Mr. Luck. Defendants intend to object to the portion of the subpoena requiring Mr. McMahon to search for and produce documents of the kind requested.

    **C. As stated by Defendants:**

      1. Ruling on Motion for Reconsideration of certain summary judgment rulings (ECF No. 428)

**19. ELECTION FOR TRIAL BY MAGISTRATE JUDGE**

      **Plaintiff** objects to trial by magistrate judge.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, LLP.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No.
ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No.
ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**PLAINTIFF'S ATTORNEYS**

**DEFENDANTS VINCENT K. MCMAHON
and ALPHA ENTERTAINMENT LLC**,

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt *(pro hac vice)*
Curtis B. Krasik *(pro hac vice)*
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

**DEFENDANTS' ATTORNEYS**

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Andrew M. Zeitlin*