IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OLIVER LUCK | § | |
| | § | |
|    *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-cv-516 (VAB) |
| | § | |
| VINCENT K. MCMAHON and | § | |
| ALPHA ENTERTAINMENT, LLC | § | |
| | § | June 3, 2022 |
|    *Defendants.* | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF
CALCULATING PLAINTIFF'S DAMAGES AS A MATTER OF LAW**

Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, LLP.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

***ATTORNEYS FOR PLAINTIFF OLIVER LUCK***

Plaintiff Oliver Luck ("Mr. Luck") submits this brief in support calculating damages as a matter of law. Specifically, if the jury finds that Mr. Luck was terminated without Cause, then the amounts of Base Salary and Guaranteed Annual Bonuses can be calculated as a matter of law pursuant to the express terms of the Employment Contract.

### I. IF THE JURY FINDS THAT DEFENDANTS TERMINATED MR. LUCK WITHOUT CAUSE, THEN MR. LUCK'S BASE SALARY AND GUARANTEED ANNUAL BONUSES SHOULD BE DETERMINED AS A MATTER OF LAW

If the jury finds that Mr. Luck was terminated without Cause, then Mr. Luck's damages, not including prejudgment interest or offer of compromise interest, or the insurance premium amounts,[1] are clearly defined by the express language of the Employment Contract. Namely, Mr. Luck "will be entitled to receive . . . (i) the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations plus (iii) the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination." Ex. 1 at 3 (the "Employment Contract"). The amounts of "Base Salary and Guaranteed Annual Bonuses" are clearly defined by the express language of the Employment Contract. Thus, if the jury finds that Mr. Luck was terminated without Cause, there is no fact finding required as to the amounts owed of Base Salary and Guaranteed Annual Bonuses and they may be computed as a matter of law according to the Employment Contract's terms.

---

[1] Although the Employment Contract does not explicitly define the amounts of insurance premiums, it does clearly define how to calculate the insurance premiums owed to Mr. Luck in the event of a termination without Cause (*i.e.*, 24 months of insurance premiums for the coverage Mr. Luck was receiving immediately prior to termination).

1

### A. The Aggregate Amount of Base Salary

The Employment Contract states that Mr. Luck will be paid a yearly Base Salary of $5,000,000 per Contract Year. The Employment Contract further states that upon termination without Cause, Mr. Luck is entitled to "the aggregate amount of Base Salary . . . that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations . . .." Ex. 1 at 3.

The aggregate amount of Base Salary owed to Mr. Luck upon termination without Cause can be determined as a matter of law. Specifically, there is no dispute that Mr. Luck's Base Salary was $5,000,000 per Contract Year. There is no dispute that Mr. Luck was paid his base salary owed in 2018 (a half year), his full base salary in 2019, and was paid only $1,597,699.11 in Base Salary in 2020 (based on 2020 W-2s) and no amounts thereafter. Thus, the aggregate amount of Base Salary remaining of the total $25,000,000 Base Salary is:

- $3,402,300.89 for 2020,
- $5,000,000 for 2021,
- $5,000,000 for 2022, and
- $2,500,000 for 2023 (like 2018, Mr. Luck's final year under his contract was a half year).

Accordingly, if the jury finds that Mr. Luck was terminated without Cause, then the aggregate amount of Base Salary that is owed to Mr. Luck is $15,902,300.89.

### B. The Guaranteed Annual Bonuses

The Employment Contract states that Mr. Luck will be paid a guaranteed annual bonus of $2,000,000. Again, upon termination without Cause, Mr. Luck "will be entitled to receive . . . the

2

aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations . . . ." Ex. 1 at 3. Thus, as a matter of law, even if Mr. Luck was not employed on the scheduled payment date, he still is entitled to receive the Guaranteed Annual Bonuses through the remaining scheduled term of the contract should the jury find that Mr. Luck was terminated without Cause. Defendants previously have argued to the contrary and Plaintiff anticipates that Defendants will continue to advance that position. Namely, Defendants contend that Mr. Luck is not entitled to the remaining bonus payments because the Employment Contract provides that Mr. Luck will be paid a Guaranteed Annual Bonus "on the last day of each Contract Year, subject to his continued employment on the scheduled payment date" and Mr. Luck was terminated before that date. Defendants' interpretation of the Employment Contract is not supported by the plain language of that agreement.

The provision detailing the payments to which Mr. Luck is entitled upon a termination without Cause clearly and unambiguously provides for payment of Guaranteed Annual Bonuses through June 30, 2023, without qualification. The inclusion of the entire term of the Employment Contract – "through June 30, 2023" – extends the payments owed to Mr. Luck upon termination without Cause beyond what has only previously accrued, and well past the dates upon which Mr. Luck is actually employed. To construe the Employment Contract in the manner argued by Defendants would render meaningless and superfluous the inclusion of Guaranteed Annual Bonus and the extension through June 30, 2023, which is contrary to Connecticut law. *Off. Of Lab. Rels. v. New England Health Care Emps. Union, Dist. 1199, AFL-CIO*, 288 Conn. 223, 231-32 (2008) (contract interpretation should give operative effect to every provision to reach a reasonable result); *Reid v. Landsberger*, 123 Conn. App. 260, 272 (2010) (contracts should be construed so

3

that, if possible, no term is superfluous or ineffective).

Likewise, to construe the Employment Contract's termination without cause provision to exclude payments solely because Mr. Luck was not employed on the date due would render superfluous the provision that Mr. Luck was entitled to "(ii) all Accrued Obligations." Namely, the "Accrued Obligations" are only previously accrued salary and vested employee benefits. Thus, the inclusion of "Guaranteed Annual Bonuses," which are different from previously accrued salary, means that Mr. Luck is entitled to more than just accrued salary upon termination without Cause. Further reason to reject Defendants' position that the bonuses are due only if Mr. Luck is actually employed on the scheduled payment date is the inherent bad faith result from incentivizing a termination immediately prior to the "scheduled payment date" in order to avoid paying the Guaranteed Annual Bonuses. *See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004) ("every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement").

There is no dispute that Mr. Luck's Guaranteed Annual Bonus was $2,000,000 on the last day of each Contract Year and that Mr. Luck was paid a Guaranteed Annual Bonus in 2019 only. Accordingly, if the jury finds that Mr. Luck was terminated without Cause, then Mr. Luck is entitled to the Guaranteed Annual Bonuses remaining through June 30, 2023 – $8,000,000 of the total $10,000,000. Thus, the aggregate amount of remaining Base Salary ($15,902,300.89) and remaining Guaranteed Annual Bonuses ($8,000,000) owed to Mr. Luck for a termination without Cause is $23,902,300.89.[2]

---

[2] This amount is exclusive of prejudgment interest and offer of compromise interest, as well as the aggregate amount of premiums for coverage, which Mr. Luck seeks either $48,667 as the aggregate amount of premiums for coverage of benefits that he was receiving immediately prior to termination or $124,712.05, which represents Mr. Luck's cost to obtain benefits on the open market like those he received immediately prior to his termination.

4

Thus, Plaintiff Oliver Luck requests that, should the jury find that he was terminated without Cause, the Court calculate the aggregate amount of Base Salary and Guaranteed Annual Bonuses owed to him as a matter of law.

Respectfully submitted,

**PLAINTIFF OLIVER LUCK**

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski (phv10563)
Vanessa L. Pierce (phv10561)
Jared A. McHazlett (phv10650)
DOBROWSKI STAFFORD, LLP.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
Email: pjd@doblaw.com
Email: vpierce@doblaw.com
Email: jmchazlett@doblaw.com

AND

*/s/ Andrew M. Zeitlin*
Andrew M. Zeitlin (Fed. Bar No. ct21386)
Joette Katz (Fed. Bar No. ct30935)
Sarah E. Gleason (Fed. Bar No. ct30906)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel.: (203) 324-8100
Fax: (203) 324-8199
Email: azeitlin@goodwin.com
Email: jkatz@goodwin.com
Email: segleason@goodwin.com

**HIS ATTORNEYS**

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Andrew M. Zeitlin*